**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK LLP**
James M. Wagstaffe (#95535)
Frank Busch (#258288)
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone: (415) 357-8900
Facsimile: (415) 357-8910
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Proposed Liaison Counsel for the Class*

**LABATON SUCHAROW LLP**
Christopher J. Keller (*pro hac vice* forthcoming)
Eric J. Belfi (*pro hac vice* forthcoming)
Francis P. McConville (*pro hac vice* forthcoming)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for Proposed Lead Plaintiff*
*and Proposed Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

CITY OF GRAND RAPIDS GENERAL
RETIREMENT SYSTEM AND CITY OF
GRAND RAPIDS POLICE & FIRE
RETIREMENT SYSTEM, on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

BAYER AKTIENGESELLSCHAFT,
WERNER BAUMANN, WERNER
WENNING, LIAM CONDON,
JOHANNES DIETSCH, and WOLFGANG
NICKL,

Defendants.

Case No. 3:20-cv-04737-RS

**CLASS ACTION**

**NOTICE OF MOTION AND MOTION OF
OHIO CARPENTERS PENSION FUND AND
GREATER PENNSYLVANIA
CARPENTERS' PENSION FUND FOR
APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF SELECTION OF
LEAD COUNSEL; MEMORANDUM OF
LAW IN SUPPORT THEREOF**

**Date:** October 22, 2020
**Time:** 1:30 p.m.
**Courtroom:** 3 – 17th Floor
**Judge:** Richard Seeborg

1

## TABLE OF CONTENTS

2    NOTICE OF MOTION AND MOTION ....................................................................................... 1

3    STATEMENT OF ISSUES ....................................................................................................... 2

4    MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 2

5    I.    PRELIMINARY STATEMENT ..................................................................................... 2

6    II.   SUMMARY OF THE ACTION ...................................................................................... 4

7    III.  ARGUMENT ................................................................................................................. 7

8          A.    Ohio Carpenters and GPCPF Should Be Appointed Lead Plaintiff ..................... 7

9                1.    The PSLRA Standard for Appointing Lead Plaintiff.............................. 7

10         B.    Ohio Carpenters and GPCPF Are the "Most Adequate Plaintiff" ........................ 9

11               1.    Ohio Carpenters and GPCPF's Motion Is Timely ................................... 9

12               2.    Ohio Carpenters and GPCPF Have the Largest Financial
                       Interest in the Outcome of the Action........................................................ 9

13
                 3.    Ohio Carpenters and GPCPF Satisfiy Rule 23's Typicality
14                     and Adequacy Requirements .................................................................... 9

15                     (a)    Ohio Carpenters and GPCPF's Claims Are Typical of
                              Those of the Class........................................................................ 10
16
                       (b)    Ohio Carpenters and GPCPF Will Fairly and Adequately
17                            Protect the Interests of the Class................................................ 10

18               4.    Ohio Carpenters and GPCPF Are Precisely the Type of
                       Lead Plaintiff Congress Envisioned When It Passed the
19                     PSLRA ....................................................................................................... 11

20         C.    The Court Should Approve Ohio Carpenters and GPCPF's Choice
                 of Counsel .............................................................................................................. 13
21
     CONCLUSION.......................................................................................................................... 15
22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re Aqua Metals Sec. Litig.*,
5
    No. 17-cv-07142-HSG, 2018 WL 4860188 (N.D. Cal. May 23, 2018) ................................13

6
*Bruce v. Suntech Power Holdings Co.*,
    No. CV 12-04061- RS, 2012 WL 5927985 (N.D. Cal. Nov. 13, 2012) ..........................12, 13
7

*In re Cavanaugh*,
8
    306 F.3d 726 (9th Cir. 2002) .......................................................................................7, 8, 14

9
*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    No. 12-CV-06039-LHK, 2013 WL 2368059 (N.D. Cal. May 29, 2013) ...............................10
10

11
*In re Cohen v. United States District Court*,
    586 F.3d 703 (9th Cir. 2009) ................................................................................................14
12

13
*Doherty v. Pivotal Software, Inc.*,
    No. 3:19-cv-03589-CRB, 2019 WL 5864581 (N.D. Cal. Nov. 8, 2019)................................13

14
*Felix v. Symantec Corp.*,
15
    No. C 18-02902 WHA, 2018 WL 4029053 (N.D. Cal. Aug. 23, 2018) ..........................10, 11

16
*Hessefort v. Super Micro Comput., Inc.*,
    317 F. Supp. 3d 1056 (N.D. Cal. 2018) ..........................................................................9, 10, 11
17

18
*Lloyd v. CVB Fin. Corp.*,
    No. CV 10-06256 MMM, 2011 WL 13128303 (C.D. Cal. Jan. 21, 2011).............................10

19
*Stocke v. Shuffle Master, Inc.*,
    No. 2:07-cv-00715-KJD-RJJ, 2007 WL 4262723 (D. Nev. Nov. 30, 2007) .........................12
20

21
*Tanne v. Autobytel*,
    226 F.R.D. 659 (C.D. Cal. 2005) ...........................................................................................9
22

23
*In re Versata, Inc., Sec. Litig.*,
    No. 01-cv-1439-SI, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001) ...........................3, 11, 12

24

**Rules & Statutes**

25
Fed. R. Civ. P. 23 ............................................................................................................. *passim*

26
15 U.S.C. § 78u-4, *et seq.* ................................................................................................. *passim*

27

28

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    No. 04-cv-8141 (S.D.N.Y.)...................................................................................14

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    No. 08-md-1963 (S.D.N.Y.) ................................................................................14

*In re Broadcom Corp. Class Action Litig.*,
    No. 06-cv-05036 (C.D. Cal.) ..............................................................................14

*In re Celadon Grp., Inc. Sec. Litig.*,
    No. 17-cv-02828 (S.D.N.Y.)...............................................................................12

*In re Countrywide Fin. Corp. Sec. Litig.*,
    No. 07-cv-5295 (C.D. Cal.) ................................................................................14

*Greater Pa. Carpenters Pension Fund v. Chemed Corp.*,
    No. 12-cv-00028 (S.D. Ohio) .............................................................................12

*Hardeman v. Monsanto Co.*,
    No. 16-cv-525 (N.D. Cal.) .....................................................................................5

*Johnson v. Monsanto Co.*,
    No. CGC-16-550128 (Cal. Super. Ct. S.F. Cty.) ..........................................4, 5, 6

*In re Mercury Interactive Corp. Sec. Litig.*,
    No. 05-cv-3395 (N.D. Cal.) ................................................................................14

*In re Roundup Prods. Liab. Litig.*,
    No. 16-md-2741-VC (N.D. Cal.) ...........................................................................5

**Other Authorities**

H.R. Conf. Rep. No. 104-369, *reprinted in* 1995 U.S.C.C.A.N. 730 ......................................11, 12

1

## NOTICE OF MOTION AND MOTION

2  **TO:    ALL PARTIES AND THEIR COUNSEL OF RECORD**

3     **PLEASE TAKE NOTICE** that Lead Plaintiff movant Ohio Carpenters Pension Fund

4 ("Ohio Carpenters") and Greater Pennsylvania Carpenters' Pension Fund ("GPCPF") by and

5 through their counsel, hereby move this Court in Courtroom 3 – 17th Floor of the Honorable

6 Richard Seeborg at the United States District Court, Northern District of California, San

7 Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, on October

8 22, 2020 at 1:30 p.m., or as soon thereafter as the matter may be heard, for the entry of an Order:

9 (i) appointing Ohio Carpenters and GPCPF as Lead Plaintiff pursuant to the Private Securities

10 Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, *et seq*.; (ii) approving Ohio

11 Carpenters and GPCPF's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead

12 Counsel for the Class and Wagstaffe, Von Loewenfeldt, Busch & Radwick, LLP ("WVBR") as

13 Liaison Counsel for the Class (the "Motion"); and (iii) granting such other and further relief as

14 the Court may deem just and proper.

15     This Motion is made on the grounds that Ohio Carpenters and GPCPF believe they are

16 the "most adequate plaintiff" under the PSLRA, and should therefore be appointed Lead

17 Plaintiff.  Specifically, Ohio Carpenters and GPCPF believe they have the "largest financial

18 interest" in the relief sought by the Class in this litigation.  Ohio Carpenters and GPCPF also

19 otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule

20 23") because their claims are typical of other Class members' claims, and because they will

21 fairly and adequately represent the Class.

22     This Motion is based upon the accompanying Memorandum of Law in support thereof,

23 the Declaration of James M. Wagstaffe ("Wagstaffe Decl.") filed herewith, the pleadings and

24 other filings herein, and such other written or oral argument as may be permitted by the Court.

25     WHEREFORE, Ohio Carpenters and GPCPF respectfully request that the Court enter an

26 order: (i) appointing Ohio Carpenters and GPCPF as Lead Plaintiff; (ii) approve their selection of

27 Labaton Sucharow as Lead Counsel for the Class and WVBR as Liaison Counsel for the Class;

28 and (iii) grant any such further relief as the Court deems just and proper.

**STATEMENT OF ISSUES**

1.      Whether the Court should appoint Ohio Carpenters and GPCPF as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and

2.      Whether the Court should approve of Ohio Carpenters and GPCPF's selection of Labaton Sucharow as Lead Counsel for the Class and WVBR as Liaison Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      PRELIMINARY STATEMENT**

Presently pending before the Court is a securities class action (the "Action") brought on behalf of all persons or entities that purchased or otherwise acquired Bayer Aktiengesellschaft ("Bayer" or the "Company") American Depositary Receipts ("ADRs") between May 23, 2016 and March 19, 2019, inclusive (the "Class Period"), who were damaged thereby (the "Class"). The Action, which has been brought against Bayer and certain of the Company's current and former senior executives (collectively, "Defendants"), alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

Under the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is required to determine which member of the Class has the "largest financial interest" in the relief sought in this litigation, and also whether that movant has made a *prima facie* showing that it is a typical and adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Ohio Carpenters and GPCPF respectfully submit that they should be appointed Lead Plaintiff because they have the "largest financial interest" in this litigation and have made the requisite showing of typicality and adequacy required by the standards of the PSLRA.  As set forth in detail below, Ohio Carpenters and GPCPF incurred ***$1,512,763.72*** in losses as a result of

their relevant Class Period transactions in Bayer ADRs.[1]  In light of this significant loss, Ohio Carpenters and GPCPF have a substantial financial interest in the relief sought by this litigation—an interest believed to be greater than that of any competing movant.  In addition to asserting the largest financial interest, Ohio Carpenters and GPCPF readily satisfy the relevant requirements of Rule 23 because their claims are typical of those of all members of the Class and they will fairly and adequately represent the interests of the Class.

Moreover, Ohio Carpenters and GPCPF are a paradigmatic Lead Plaintiff under the PSLRA because they are sophisticated institutional investors with a pre-existing relationship and a substantial financial interest in the litigation.  *See* Joint Declaration of James R. Klein and Timothy Linville ("Joint Declaration"), attached as Exhibit C to the Wagstaffe Decl.  As set forth in greater detail in their Joint Declaration, Ohio Carpenters and GPCPF fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and they are willing and able to undertake those responsibilities to guarantee vigorous prosecution of this action.  Furthermore, prior to seeking a role as Lead Plaintiff, representatives from Ohio Carpenters and GPCPF participated in a conference call to discuss, among other things, the merits of the claims against Defendants, as well as their common goals in prosecuting this litigation.  Accordingly, Ohio Carpenters and GPCPF have the incentive and ability to supervise and monitor counsel.  Courts in the Ninth Circuit, including this District, appoint small, cohesive groups of investors that have demonstrated an ability to work together effectively on behalf of the class.  *See, e.g., In re Versata, Inc., Sec. Litig.*, No. 01-cv-1439-SI, 2001 WL 34012374, at *7 (N.D. Cal. Aug. 20, 2001) (appointing as lead plaintiff a group of three sophisticated investors).

Ohio Carpenters and GPCPF have also demonstrated their adequacy through the selection of Labaton Sucharow as proposed Lead Counsel on behalf of the Class.  Labaton Sucharow is a nationally recognized securities class action firm that has recovered billions of dollars for the

---

[1] A Copy of the PSLRA-required Certifications of Ohio Carpenters and GPCPF, signed by Timothy Linville, as Chairman of Ohio Carpenters, and James R. Klein, as Administrator of GPCPF, respectively, are attached as Exhibit A to the accompanying Wagstaffe Decl., which sets forth all transactions for Ohio Carpenters and GPCPF in Bayer ADRs during the Class Period. In addition, a chart reflecting the calculation of Ohio Carpenters and GPCPF's losses as a result of their Class Period transactions in Bayer ADRs is attached as Exhibit B to the Wagstaffe Decl.

1  benefit of injured investors, and has the expertise and resources necessary to handle litigation of

2  this complexity and scale.  Accordingly, Ohio Carpenters and GPCPF respectfully request that

3  the Court appoint them as Lead Plaintiff and otherwise grant its Motion.

4  **II.      SUMMARY OF THE ACTION**

5          Headquartered in Leverkusen, Germany, Bayer is a multinational pharmaceutical and life

6  science company.  On May 23, 2016, Bayer announced that it had made an unsolicited all-cash

7  offer to acquire Monsanto Company ("Monsanto"), a provider of agricultural chemicals and

8  other products based in St. Louis, Missouri.  After a protracted regulatory approval process, on

9  June 7, 2018, Bayer completed its all-cash acquisition of Monsanto for $128 per share, or $63

10  billion including debt (the "Acquisition"), representing a 44% premium to Monsanto's share

11  price on May 9, 2016—the day prior to Bayer's first written proposal to acquire Monsanto.

12          Before the Acquisition, Monsanto aggressively marketed and sold its flagship weed killer

13  product, Roundup.  Roundup is the most widely used weed killer around the world, which

14  generated nearly $5 billion in annual revenue for Monsanto.  The active ingredient in Roundup is

15  glyphosate, a toxic chemical long suspected of causing cancer, including non-Hodgkin's

16  lymphoma—a lethal blood cancer.

17          In March 2015, more than one year prior to Bayer's initial May 2016 offer to acquire

18  Monsanto, the International Agency for Research on Cancer ("IARC"), an arm of the World

19  Health Organization ("WHO"), found that there was strong evidence of an association between

20  exposure to glyphosate and non-Hodgkin's lymphoma and concluded that glyphosate was

21  "probably carcinogenic to humans."

22          In early 2016, after the IARC classified glyphosate as "probably carcinogenic to

23  humans," numerous lawsuits were filed against Monsanto by cancer-stricken plaintiffs, alleging

24  that exposure to Monsanto's glyphosate-based weed killer, Roundup, had caused their cancer and

25  that Monsanto failed to warn the public about the chemical's toxic effects.  One of the first

26  Roundup cancer lawsuits brought against Monsanto was filed on January 26, 2016, in the

27  Superior Court of the State of California for the County of San Francisco.  *See Johnson v.*

28  *Monsanto Co.*, No. CGC-16-550128 (Cal. Super. Ct. S.F. Cty.) (the "*Johnson* Case").  Days

1  later, on February 1, 2016, the first federal Roundup lawsuit was filed against Monsanto in the

2  U.S. District Court for the Northern District of California.  *See Hardeman v. Monsanto Co.*, No.

3  16-cv-525 (N.D. Cal.) (the "*Hardeman* Case").  Many more lawsuits followed.

4         On April 8, 2016, the Judge in the *Hardeman* Case refused to dismiss the lawsuit, giving

5  rise to a wave of new lawsuits that flooded courts across the country.  In October 2016, after

6  dozens more lawsuits were filed in federal courts, the Judicial Panel on Multidistrict Litigation

7  consolidated these cases in the MDL No. 2741.  These cases have been centralized in the

8  Northern District of California, overseen by the Honorable Judge Vince Chhabria.  *See In re*

9  *Roundup Prods. Liab. Litig.*, No. 16-md-2741-VC (N.D. Cal.).

10        In March 2017, the Environmental Protection Agency ("EPA") of California—a large

11 agricultural state and vast market for Monsanto's Roundup product—adopted the IARC's

12 classification of glyphosate as a probable carcinogen.  In July 2017, the State of California added

13 glyphosate to its list of chemicals known to cause cancer.

14        As a result of the March 2015 WHO study classifying glyphosate as "probably

15 carcinogenic to humans" and the California EPA's classification of glyphosate as "a known

16 carcinogen," individuals alleging that Roundup caused personal injury, including cancer, had a

17 greatly enhanced ability to sue Monsanto.  These findings provided support for the causation

18 element necessary for the Roundup cancer suits to succeed at trial and the number of Roundup

19 lawsuits filed against Monsanto continued to surge.

20        On September 14, 2016, Bayer entered into an agreement to purchase all of Monsanto's

21 shares for $128 per share, representing a 44% premium over Monsanto's closing share price on

22 May 9, 2016.  Due to a lengthy regulatory approval process, the Acquisition was not completed

23 until nearly two years later.

24        By June 2018, when Bayer finally consummated the Acquisition, not only had thousands

25 of personal injury lawsuits related to Roundup exposure been filed against Monsanto, but

26 plaintiffs in several of the first Roundup cancer cases had survived motions to dismiss, obtained

27 damaging discovery, and fended off challenges to expert testimony and pretrial motions.  Indeed,

28 around the same time, the *Johnson* Case was the first of the Roundup cancer cases set to go to

trial.  Despite the significant liability risks related to Monsanto's Roundup product, Bayer forged ahead and acquired Monsanto for $63 billion in cash—the largest acquisition in German corporate history—which the Company financed, in large part, with newly assumed debt.

Throughout the Class Period, Defendants touted the Acquisition as "a compelling transaction for shareholders" that would create "significant value" by generating "stronger growth, better profitability, and a more resilient business profile."  Defendants also highlighted that the combined business has "the potential to command a premium valuation" and assured investors that the Acquisition "will translate into attractive financial benefits for Bayer and its shareholders."  Defendants specifically downplayed the liability risks related to Monsanto's Roundup product, emphasizing that Bayer conducted a "thorough analysis" during the due diligence process and "undertook appropriate due diligence of litigation and regulatory issues throughout the process" which led Bayer to finalize the Acquisition.  These and similar statements made by Defendants during the Class Period were false and misleading.  In truth, Defendants knew or recklessly disregarded that the Acquisition would not result in the benefits for Bayer that Defendants had represented, due to Monsanto's significant exposure to liability risk related to Roundup.  As a result of Defendants' misrepresentations, Bayer ADRs traded at artificially inflated prices during the Class Period.

The truth began to emerge on August 10, 2018, when a jury in the *Johnson* Case found unanimously that Monsanto's glyphosate-based Roundup weed killer was a "substantial factor" in causing the plaintiff to develop non-Hodgkin's lymphoma and that Monsanto knew, or should have known, the risks associated with exposure to the chemical and failed to warn of this severe health hazard.  The jury also found that Monsanto acted with "malice or oppression" and should be punished for its conduct.  Accordingly, the jury ordered Monsanto to pay $39 million in compensatory damages and $250 million in punitive damages.  On this news, the price of Bayer ADRs declined over 11%, from $26.59 per ADR to $23.59 per ADR.

On October 22, 2018, although the court in the *Johnson* Case reduced the award of punitive damages from $250 million to $39 million to match the compensatory damages awarded to the plaintiff, the court otherwise denied Monsanto's motion for judgment notwithstanding the

1  verdict and Monsanto's motion for a new trial, and upheld the jury's verdict, ruling that "there is

2  no legal basis to disturb the jury's determination that plaintiff's exposure to [glyphosate-based

3  herbicides] was a substantial factor in causing his [non-Hodgkin's lymphoma]." On this news,

4  the price of Bayer ADRs declined nearly 9%, from $22.00 per ADR to $20.10 per ADR.

5  Then, on March 19, 2019, a jury in the *Hardeman* Case—the first federal Roundup

6  cancer lawsuit to proceed to trial—issued a verdict on causation in phase one of the bifurcated

7  trial, finding that plaintiff's "exposure to Roundup was a substantial factor in causing his

8  nonHodgkin's lymphoma." On this news, the price of Bayer ADRs declined over 9%, from

9  $19.67 per ADR to $17.85 per ADR.

10  As a result, Ohio Carpenters and GPCPF and the Class have been damaged from

11  Defendants' alleged violations of the U.S. securities laws.

12  **III.  ARGUMENT**

13  **A.  Ohio Carpenters and GPCPF Should Be Appointed Lead Plaintiff**

14  Ohio Carpenters and GPCPF respectfully submit that they should be appointed Lead

15  Plaintiff because they are the movants "most capable of adequately representing the interests of

16  class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA sets forth the procedure for

17  selecting the Lead Plaintiff in class actions arising under the federal securities laws and provides

18  a presumption in favor of the movant that has the "largest financial interest" in the relief sought

19  by the Class and satisfies the relevant requirements of Rule 23. 15 U.S.C. § 78u-

20  4(a)(3)(B)(iii)(I); *see also In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) ("The [PSLRA]

21  provides a simple . . . process for identifying the lead plaintiff pursuant to these criteria."). As

22  set forth below, Ohio Carpenters and GPCPF believe they are the "most adequate plaintiff" and

23  should be appointed as Lead Plaintiff.

24  **1.  The PSLRA Standard for Appointing Lead Plaintiff**

25  The PSLRA provides a straightforward, sequential procedure for selecting lead plaintiff

26  for "each private action arising under [the Exchange Act] that is brought as a plaintiff class

27  action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also*

28

15 U.S.C. § 78u-4(a)(3)(B).  First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class --
>
> (I)      of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)     that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, under the PSLRA, a court is to consider any motion made by class members and appoint the movant that the court determines to be most capable of adequately representing the interests of the class as lead plaintiff.  Specifically, the PSLRA provides that a court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (. . . the "most adequate plaintiff") . . . .

15 U.S.C. § 78u-4(a)(3)(B)(i).

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person who: (i) filed a complaint or made a motion to serve as lead plaintiff; (ii) has the largest financial interest in the relief sought by the class; and (iii) otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Cavanaugh*, 306 F.3d at 729-30 (discussing three-step competitive process for selecting a lead plaintiff).  This presumption "'may be rebutted only upon proof . . . that the presumptively most adequate plaintiff [ ] will not fairly and adequately protect the interests of the class'" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Cavanaugh*, 306 F.3d at 730.

### B.      Ohio Carpenters and GPCPF Are the "Most Adequate Plaintiff"

#### 1.      Ohio Carpenters and GPCPF's Motion Is Timely

Ohio Carpenters and GPCPF filed this motion to serve as Lead Plaintiff in a timely manner.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on July 15, 2020, counsel for the Plaintiff in the Action caused notice regarding the pending nature of this case to be published on *PRNewswire*, a widely circulated, national, business-oriented news reporting service.  *See* Notice, Wagstaffe Decl. Ex. D.  Thus, as permitted by the PSLRA, any person or group of persons may apply to be appointed Lead Plaintiff within sixty (60) days after publication of the notice, *i.e.*, on or before September 14, 2020.  Ohio Carpenters and GPCPF filed this motion within the required period.

#### 2.      Ohio Carpenters and GPCPF Have the Largest Financial Interest in the Outcome of the Action

Ohio Carpenters and GPCPF should be appointed Lead Plaintiff because they have the "largest financial interest in the relief sought by the Class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  As demonstrated herein, Ohio Carpenters and GPCPF suffered losses of approximately ***$1,512,763.72*** million on their relevant transactions in Bayer ADRs.  *See* Wagstaffe Decl., Exs. A & B. To the best of Ohio Carpenters and GPCPF's  knowledge, there is no other applicant seeking Lead Plaintiff appointment asserting a larger financial interest in the litigation. Accordingly, Ohio Carpenters and GPCPF have the largest financial interest of any qualified movant seeking Lead Plaintiff status and are the presumptive "most adequate plaintiff." 15 U.S.C. § 78u4(a)(3)(B)(iii)(I).

#### 3.      Ohio Carpenters and GPCPF Satisfiy Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, Ohio Carpenters and GPCPF satisfy the applicable requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  On a motion to serve as Lead Plaintiff, a movant "need only make a *prima facie* showing of its typicality and adequacy."  *Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-61 (N.D. Cal. 2018); *see also Tanne v. Autobytel*, 226 F.R.D. 659, 667 (C.D. Cal. 2005) (noting that a "preliminary showing" of typicality and adequacy is all that

is necessary at the lead plaintiff stage).  Here, Ohio Carpenters and GPCPF unquestionably

satisfy the typicality and adequacy requirements.

### (a)   Ohio Carpenters and GPCPF's Claims Are Typical of Those of the Class

"The typicality requirement is satisfied when the putative lead plaintiff has suffered the

same injuries as absent class members as a result of the same conduct by the defendants." *Felix

v. Symantec Corp.*, No. C 18-02902 WHA, 2018 WL 4029053, at *3 (N.D. Cal. Aug. 23, 2018)

(citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The claims need not be

"substantially identical" to support a finding of typicality.  *Lloyd v. CVB Fin. Corp.*, No. CV 10-

06256 MMM (PJWx), 2011 WL 13128303, at *5 (C.D. Cal. Jan. 21, 2011) (citation omitted).

Instead, "The test of typicality is whether other members have the same or similar injury,

whether the action is based on conduct which is not unique to the named plaintiffs, and whether

other class members have been injured by the same course of conduct." *Super Micro Comput.*,

317 F. Supp. 3d at 1061 (citation omitted).

Here, the claims that Ohio Carpenters and GPCPF assert are typical of the claims of the

other members of the putative Class because, like all other Class members, Ohio Carpenters and

GPCPF: (i) purchased or otherwise acquired Bayer ADSs during the Class Period; (ii) at prices

allegedly artificially inflated by Defendants' materially false and misleading statements and/or

omissions; and (iii) suffered damages as a result.  *See City of Dearborn Heights Act 345 Police

& Fire Ret. Sys. v. Align Tech., Inc.*, No. 12-CV-06039-LHK, 2013 WL 2368059, at *4 (N.D.

Cal. May 29, 2013) (finding typicality requirement met when proposed Lead Plaintiff "purchased

[defendant corporation] common stock during the Class Period, allegedly in reliance upon

Defendants' purported false and misleading statements, and alleged suffered damages as a

result").  Thus, Ohio Carpenters and GPCPF satisfy the typicality requirement of Rule 23.

### (b)   Ohio Carpenters and GPCPF Will Fairly and Adequately Protect the Interests of the Class

Ohio Carpenters and GPCPF will fairly and adequately represent the interests of the

proposed Class.  Under Rule 23(a)(4), a representative party must "fairly and adequately protect

the interests of the Class."  Fed. R. Civ. P. 23(a)(4).  The thrust of the adequacy inquiry is: "(1)

1    whether there are conflicts within the class; and (2) whether plaintiff and counsel will vigorously

2    fulfill their duties to the class." *Symantec Corp.*, 2018 WL 4029053, at *3 (citing *Ellis v. Costco*

3    *Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)); *see also Super Micro Comput.*, 317 F.

4    Supp. 3d at 1061 (same).

5          Here, no antagonism exists between Ohio Carpenters and GPCPF's interests and those of

6    the absent Class members; rather, the interests of Ohio Carpenters and GPCPF and Class

7    members are squarely aligned.  In addition, Ohio Carpenters and GPCPF have demonstrated

8    their adequacy through its selection of Labaton Sucharow as Lead Counsel to represent the Class

9    in this action.  As discussed more fully herein, Labaton Sucharow is highly experienced in

10   prosecuting securities class actions vigorously and efficiently, and timely submitted its choice to

11   the Court for approval, in accordance with the PSLRA.  *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II)

12   and (B)(v).  Accordingly, Ohio Carpenters and GPCPF satisfy the adequacy requirement.

13       **4.**    **Ohio Carpenters and GPCPF Are Precisely the Type of Lead Plaintiff
     Congress Envisioned When It Passed the PSLRA**

14

15         In addition to satisfying the requirements of Rule 23, Ohio Carpenters and GPCPF—

16   sophisticated institutional investors—are precisely the type of investor Congress envisioned,

17   through the enactment of the PSLRA, to encourage to assume a more prominent role in securities

18   litigation.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730,

19   733 ("The Conference Committee believes that increasing the role of institutional investors in

20   class actions will ultimately benefit shareholders and assist courts by improving the quality of

21   representation in securities class actions."); *see also In re Versata*, 2001 WL 34012374, at *6

22   (finding that a movant's "institutional status is given great weight in assessing its adequacy as a

23   plaintiff" because "Congress intended that the lead plaintiff procedures under the PSLRA would

24   'encourage institutional investors to take a more active role in securities class action lawsuits'")

25   (citation omitted).  Congress reasoned that increasing the role of institutional investors, which

26   typically have a large financial stake in the outcome of the litigation, would be beneficial

27   because institutional investors with a large financial stake are more apt to effectively manage

28

1   complex securities litigation.  *See* H.R. Conf. Rep. No. 104-369, at 34-35, *reprinted in* 1995

2   U.S.C.C.A.N. at 733-34.

3          It is no surprise, therefore that courts within the Ninth Circuit have repeatedly recognized

4   the propriety of appointing cohesive groups of institutional investors that demonstrate an ability

5   to represent the class's interests.  *See In re Versata*, 2001 WL 34012374, at *6-7 (appointing a

6   group composed of sophisticated investors as lead plaintiff because they "possess[ed] both

7   sophistication and business knowledge, as well as substantial individual losses which adds

8   meaningful incentive for a vigorous prosecution of the action"); *Stocke v. Shuffle Master, Inc.*,

9   No. 2:07-cv-00715-KJD-RJJ, 2007 WL 4262723, at *3 (D. Nev. Nov. 30, 2007) (appointing as

10  lead plaintiff a group of two institutional investors).  On this point, Ohio Carpenters and GPCPF,

11  a cohesive group of sophisticated investors, have already demonstrated their commitment to

12  working together cohesively in the prosecution of this action.

13         Based on their shared experience and pre-existing relationship as union pension funds for

14  eligible beneficiaries in the abutting states of Ohio and Pennsylvania, both Ohio Carpenters and

15  GPCPF, with combined assets under management of approximately $3 billion, together possess

16  the sophistication, resources, and experience necessary to oversee and supervise the Action

17  separate and apart from counsel.  *See* Joint Declaration ¶¶ 2-5.  Additionally, GPCPF has

18  firsthand experience successfully litigating securities class actions as part of a cohesive group of

19  institutional investors.  Specifically, GPCPF previously served as a lead plaintiff alongside

20  another institutional investor with Labaton Sucharow serving as lead counsel in *In re Celadon*

21  *Group, Inc. Securities Litigation*, No. 17-cv-02828 (S.D.N.Y.), which settled for $5.5 million,

22  and similarly served as lead plaintiff alongside another institutional investor with Labaton

23  Sucharow as co-lead counsel in *Greater Pennsylvania Carpenters Pension Fund v. Chemed*

24  *Corp.*, No. 12-cv-00028 (S.D. Ohio), which settled for $6 million.

25         Further, Ohio Carpenters and GPCPF have submitted sworn Certifications and a Joint

26  Declaration attesting to their willingness and ability to diligently fulfill all fiduciary duties they

27  will assume if appointed as Lead Plaintiff.  *See* Wagstaffe Decl., Exs. A & C; *see also Bruce v.*

28  *Suntech Power Holdings Co.*, No. CV 12-04061- RS, 2012 WL 5927985, at *3 (N.D. Cal. Nov.

13, 2012) (appointing group that "submitted a joint declaration attesting that each [group member] is knowledgeable about the litigation, that they are working together, and that they are committed to protecting the interests of the Class").  As indicated in the Joint Declaration, Ohio Carpenters and GPCPF have already taken measures to ensure the claims are vigorously and effectively prosecuted in the best interests of the Class.  For example, as part of their effort to formalize their oversight of this action and before seeking appointment as Lead Plaintiff, representatives of Ohio Carpenters and GPCPF held a conference call on September 10, 2020, in which they discussed the strength of the claims against Defendants, their strategy for prosecuting the action, the benefits the Class will receive from the leadership of institutional investors, and the measures the funds have implemented to ensure that the Class' claims will be zealously and efficiently litigated.  *See id.* ¶ 8.  Finally, the Joint Declaration attests to Ohio Carpenters' and GPCPF's pre-existing relationship as union funds in Ohio and Pennsylvania, respectively, thereby eliminating any "lawyer-driven" concerns which typically arise when examining proposed lead plaintiff groups.  *See id.* ¶ 4.

In sum, Ohio Carpenters and GPCPF have demonstrated their willingness, resources, experience, and commitment to working closely with one another to supervise their proposed Lead Counsel and obtain the best possible recovery for the Class.  Ohio Carpenters and GPCPF are precisely the type of institutional investors that Congress sought to empower as Lead Plaintiff when enacting the PSLRA.  *See, e.g., Doherty v. Pivotal Software, Inc.*, No. 3:19-cv-03589-CRB, 2019 WL 5864581, at *11-12 (N.D. Cal. Nov. 8, 2019) (appointing group of institutional investors as lead plaintiff); *In re Aqua Metals Sec. Litig.*, No. 17-cv-07142-HSG, 2018 WL 4860188, at *4 (N.D. Cal. May 23, 2018) (appointing a group of investors that demonstrated they are "fully capable of representing the class's interests effectively").

### C.   The Court Should Approve Ohio Carpenters and GPCPF's Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  As such, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests

1    of the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Cohen v. United States*

2    *District Court*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable

3    choice of counsel, the district court should generally defer to that choice.") (citing *In re Cendant*

4    *Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001)); *see also Cavanaugh*, 306 F.3d at 734 ("Selecting

5    a lawyer in whom a litigant has confidence is an important client prerogative and we will not

6    lightly infer that Congress meant to take away this prerogative from securities plaintiffs.  And,

7    indeed, it did not.  While the appointment of counsel is made subject to the approval of the court,

8    the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff.").

9         Here, Ohio Carpenters and GPCPF have selected Labaton Sucharow, highly-qualified

10   counsel, to serve as Lead Counsel for the proposed Class.  Labaton Sucharow has significant

11   experience in prosecuting securities class actions and has excelled as lead counsel in numerous

12   landmark securities class actions throughout the United States on behalf of defrauded investors.

13   Labaton Sucharow served as a lead counsel in *In re American International Group, Inc.*

14   *Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more

15   than $1 billion for injured investors, secured a $294.9 million recovery in *In re Bear Stearns*

16   *Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which it

17   served as co-lead counsel, and secured a $117.5 million settlement in *In re Mercury Interactive*

18   *Corp. Securities Litigation*, No. 05-cv-3395 (N.D. Cal.).  In addition, Labaton Sucharow was a

19   lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D.

20   Cal.), which achieved a settlement of $624 million—one of the largest securities fraud

21   settlements arising from the financial crisis of 2007 and 2008, and also secured a $160.5 million

22   settlement as lead counsel in *In re Broadcom Corp. Class Action Litigation*, No. 06-cv-05036

23   (C.D. Cal.).  Labaton Sucharow presently serves as lead and co-lead counsel in several

24   significant investor class actions.  *See* Labaton Sucharow Firm Resume, Wagstaffe Decl., Ex. E.

25        Likewise, WVBR is well qualified to represent the Class as Liaison Counsel.  WVBR

26   maintains an office in San Francisco, California, and James M. Wagstaffe has substantial

27   litigation experience in this court.  *See* Wagstaffe Decl., Ex. E.  Thus, the firm is well qualified to

28   represent the Class as Liaison Counsel.  *See* Manual for Complex Litigation (Fourth) § 10.221

1   (2004) (discussing role of liaison counsel and noting that "[l]iaison counsel will usually have

2   offices in the same locality as the court").

3        Thus, the Court may be assured that by granting this motion and approving Ohio

4   Carpenters and GPCPF's selection of counsel, the Class will receive the highest caliber of legal

5   representation.

6                                    **CONCLUSION**

7        For the foregoing reasons, Ohio Carpenters and GPCPF respectfully request that the

8   Court: (i) appoint Ohio Carpenters and GPCPF as Lead Plaintiff; (ii) approve the selection of

9   Labaton Sucharow as Lead Counsel for the Class and WVBR as Liaison Counsel for the Class;

10  and (iv) grant such other and further relief as the Court may deem just and proper.

11  DATED:  September 14, 2020                Respectfully submitted,

12                                           */s/ James M. Wagstaffe*

13

14                                           **WAGSTAFFE, VON LOEWENFELDT,**
                                             **BUSCH & RADWICK, LLP**
15                                           James M. Wagstaffe (#95535)
                                             Frank Busch (#258288)
16                                           100 Pine Street, Suite 725
                                             San Francisco, California 94111
17                                           Telephone: (415) 357-8900
                                             Facsimile: (415) 357-8910
18                                           wagstaffe@wvbrlaw.com
                                             busch@wvbrlaw.com

19                                           *Proposed Liaison Counsel for the Class*

20                                           **LABATON SUCHAROW LLP**
                                             Christopher J. Keller (*pro hac vice* forthcoming)
21                                           Eric J. Belfi (*pro hac vice* forthcoming)
                                             Francis P. McConville (*pro hac vice* forthcoming)
22                                           140 Broadway
                                             New York, New York 10005
23                                           Telephone: (212) 907-0700
                                             Facsimile: (212) 818-0477
24                                           ckeller@labaton.com
                                             ebelfi@labaton.com
25                                           fmcconville@labaton.com

26                                           *Counsel for Proposed Lead Plaintiff*
                                             *and Proposed Lead Counsel for the Class*

27

28

1

**CERTIFICATE OF SERVICE**

2        I HEREBY CERTIFY that on September 14, 2020, I electronically filed the foregoing

3   with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing

4   to all counsel of record.

5                                                          /s/ *James M. Wagstaffe*
                                                           James M. Wagstaffe
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28