Carol V. Gilden (*Pro Hac Vice* to be filed)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
190 South LaSalle Street
Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Email: cgilden@cohenmilstein.com

Steven J. Toll (*Pro Hac Vice* to be filed)
Molly Bowen (*Pro Hac Vice* to be filed)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave NW, Suite 500 East
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: stoll@cohenmilstein.com
        mbowen@cohenmilstein.com

Nicole Lavallee (SBN 165755)
Jeffrey Miles (SBN 293869)
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
        jmiles@bermantabacco.com

*Attorneys for Movants Sheet Metal Workers*
*National Pension Fund and International*
*Brotherhood of Teamsters Local No. 710*
*Pension Fund*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY OF GRAND RAPIDS GENERAL RETIREMENT SYSTEM AND CITY OF GRAND RAPIDS POLICE & FIRE RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated, | Case No: 3:20-cv-04737-RS <br><br> CLASS ACTION |
| Plaintiffs, <br><br> vs. <br><br> BAYER AKTIENGESELLSCHAFT, WERNER BAUMANN, WERNER WENNING, LIAM CONDON, JOHANNES DIETSCH, and WOLFGANG NICKL, <br><br> Defendants. | **NOTICE OF MOTION AND MOTION OF SHEET METAL WORKERS NATIONAL PENSION FUND AND INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 710 PENSION FUND FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:   October 22, 2020 <br> Time:   1:30 p.m. <br> Ctrm:  3 – 17th Floor <br> Judge: Richard Seeborg |

1

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION ........................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 3

    I.     STATEMENT OF ISSUES ............................................................... 3

    II.    PRELIMINARY STATEMENT ...................................................... 3

    III.   SUMMARY OF THE ACTION ....................................................... 5

    IV.   ARGUMENT ..................................................................................... 7

        A.    THE PENSION FUND INVESTORS SHOULD BE APPOINTED
            LEAD PLAINTIFF ........................................................... 7

            1.    The PSLRA's Standard for Appointing Lead Plaintiff ....................... 7

            2.    The Pension Fund Investors Are the "Most Adequate Plaintiff" .......... 8

        B.    THE COURT SHOULD APPROVE THE PENSION FUND
            INVESTORS' SELECTION OF COUNSEL .................................. 12

CONCLUSION ........................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*In re Aqua Metals Sec. Litig.*,
   No. 17-cv-07142-HSG, 2018 WL 4860188 (N.D. Cal. May 23, 2018) ........................10

*Bruce v. Suntech Power Holdings Co., Ltd.*,
   No. 12-cv-04061-RS, 2012 WL 5927985 (N.D. Cal. Nov. 13, 2012) (Seeborg, J.)...............10, 13

*In re Calpine Corp. Sec. Litig.*,
   No. 02-cv-1200-SBA, 2004 WL 3316309 (N.D. Cal. Feb. 5, 2004)...........................11

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ...................................................................7, 8

*Deinnocentis v. Dropbox, Inc.*,
   No. 19-cv-06348-BLF, 2020 WL 264408 (Jan. 16, 2020) ...................................9

*Doherty v. Pivotal Software, Inc.*,
   No. 3:19-cv-93589-CRB, 2019 WL 5864581 (N.D. Cal. Nov. 8, 2019).......................9

*GGCC, LLC v. Dynamic Ledger Solutions, Inc.*,
   No. 3:17-cv-06779-RS, 2018 WL 1388488 (N.D. Cal. Mar. 16, 2018)......................7, 9

*Inchen Huang v. Depomed, Inc.*,
   289 F. Supp. 3d 1050 (N.D. Cal. 2017) ......................................................3

*Mulligan v. Impax Labs., Inc.*,
   No. 13-CV-1037-EMC, 2013 WL 3354420 (N.D. Cal. July 2, 2013).........................13

*In re NVIDIA Corp. Sec. Litig.*,
   No. 18-cv-07669-HSG, 2019 WL 1960341 (N.D. Cal. May 2, 2019) ..........................8

*Tollen v. Geron Corp.*,
   No. 20-cv-00547-WHA, 2020 WL 2494570 (N.D. Cal. May 14, 2020)........................9

*Vataj v. Johnson*,
   No. 19-cv-06996-HSG, 2020 WL 532981 (N.D. Cal. Feb. 3, 2020)...........................10

Docketed

*In re 2008 Fannie Mae Sec. Litig.*,
   No. 08-civ-07831-PAC (S.D.N.Y) ............................................................13

*Barry v. Colony NorthStar, Inc., et al.*,
   No. 18-CV-002888 (C.D. Cal.)...............................................................11

*In re BP PLC Sec. Litig.*,
   No. 10-md-2185 (S.D. Tex.) ..................................................................................13

*City of Birmingham Ret. and Relief Sys., et al. v. Credit Suisse Grp. AG, et al.*,
   No. 1:17-cv-10014-LGS (S.D.N.Y.) .......................................................................10

*City of Westland Police and Fire Ret. Sys. v. Philip Morris Int'l Inc. et al.*,
   No. 18-CV-08049 (S.D.N.Y.) .................................................................................11

*In re Flint Water Cases*,
   No. 5:16-cv-14498-JEL-APP (E.D. Mich.) ............................................................12

*In re IndyMac Mortgage-Backed Sec. Litig.*,
   No. 09-cv-04583-LAK (S.D.N.Y.) ..........................................................................13

*Irizarry, et al. v. Orlando Utilities Comm'n, et al.*,
   No. 6:19-cv-00268-RBD-TBS (M.D. Fla) ..............................................................12

*In re LDK Solar Sec. Litig.*,
   No. 3:07-cv-05182-WHA (N.D. Cal.) .....................................................................13

*Maine State Ret. Sys., et al. v. Countrywide Fin. Corp., et al.*,
   Nos. 2:12-cv-05122-MRP, 2:12-cv-05125-MRP (MANx) (C.D. Cal.).....................12

*N.J. Carpenters Health Fund v. Residential Cap., LLC*,
   No. 08-cv-8781 (HB) (S.D.N.Y.) ...........................................................................12

*N.J. Carpenters Health Fund v. The Royal Bank of Scot. Grp., plc*,  No. 08-cv-05310-
   DAB-HBP (S.D.N.Y.) ............................................................................................12

*Ret. Sys. v. Hospira, Inc. et al*,
   No. 1:11-cv-08332 (ECF 206) (N.D. Ill.) ...............................................................10

*Rubin v. MF Glob., Ltd.*,
   No. 08-cv-2233 (VM) (S.D.N.Y.) ...........................................................................12

STATUTES

15 U.S.C. § 78u-4 .......................................................................................... *passim*

PSLRA ......................................................................................................... *passim*

OTHER AUTHORITIES

Federal Rules of Civil Procedure Rule 23 .......................................................1, 3, 9, 11

H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730
   (1995)....................................................................................................................11

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that at 1:30 p.m. on October 22, 2020, or on a date and at a time set by the Court, before the Honorable Richard Seeborg, at the United States District Court for the Northern District of California, located at the San Francisco Courthouse, 450 Golden Gate Avenue, Courtroom 3 – 17th Floor, San Francisco, California, the Sheet Metal Workers National Pension Fund ("SMW Pension Fund") and the International Brotherhood of Teamsters Local No. 710 Pension Fund ("710 Pension Fund") (together, the "Pension Fund Investors") will respectfully move this Court, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for entry of an Order: (i) appointing the Pension Fund Investors as Lead Plaintiff on behalf of themselves and all persons or entities that purchased or otherwise acquired Bayer Aktiengesellschaft ("Bayer" or the "Company") American Depositary Receipts ("ADRs") between May 23, 2016 and March 19, 2019, both dates inclusive (the "Class Period"); (ii) approving the Pension Fund Investors' selection of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Lead Counsel for the proposed Class and Berman Tabacco as Liaison Counsel for the proposed Class; and (iii) granting such other and further relief as the Court may deem just and proper.

This Motion is made on the grounds that the Pension Fund Investors believe they are the "most adequate plaintiff" under the PSLRA and should therefore be appointed Lead Plaintiff because they possess the "largest financial interest" in the relief sought by the Class in the above-captioned action (the "Action") by virtue of, among other things, the approximately $3.8 million in losses that they incurred on their purchases of 530,276 Bayer ADRs during the Class Period, and because they satisfy the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). Further, the Pension Fund Investors are the paradigmatic Lead Plaintiff under the PSLRA because they are sophisticated institutional investors with a substantial financial interest in the litigation and the proven ability to supervise and monitor counsel.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities in support thereof, the Declaration of Nicole Lavallee filed herewith (the "Lavallee

1    Decl.") and all exhibits attached thereto, the pleadings and other filings herein, and such other written

2    or oral argument as may be permitted by the Court.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether the Pension Fund Investors are the "most adequate plaintiff," pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(i).

2.    Whether to approve the Pension Fund Investors' selection of counsel, Cohen Milstein and Berman Tabacco, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

**II.    PRELIMINARY STATEMENT**

The Pension Fund Investors, the SMW Pension Fund and 710 Pension Fund, are two sophisticated institutional investors with collectively over $8 billion in assets under management, and respectfully submit that they should be appointed Lead Plaintiff on behalf of all persons or entities who purchased or otherwise acquired Bayer ADRs during the Class Period. The above-captioned action brought against Bayer and current and former executives Werner Baumann, Werner Wenning, Liam Condon, Johannes Dietsch, and Wolfgang Nickl (collectively, "Defendants"), alleges violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. Specifically, the Action alleges that in connection with its acquisition of the Monsanto Company ("Monsanto"), Bayer misrepresented the rigor of its due diligence and the nature of the risk presented by Monsanto's flagship product, Roundup weed killer. Bayer investors – including the Pension Fund Investors – incurred significant losses after jury trials against Monsanto found in favor of the plaintiffs, including finding that Roundup was a "substantial factor" in causing plaintiff's non-Hodgkin's lymphoma, and leading to jury awards totaling hundreds of millions of dollars.

The PSLRA governs the appointment of a lead plaintiff in class action lawsuits asserting violations of the federal securities laws and directs courts to appoint the "most adequate plaintiff" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA requires the Court to identify the movant that asserts the "largest financial interest" in the relief sought by the Class in this litigation, and to determine whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Inchen Huang v. Depomed, Inc.*, 289 F. Supp. 3d 1050, 1054 (N.D. Cal. 2017) ("Once a movant has demonstrated that it has the largest financial interest, it need only make a prima facie showing of its typicality and adequacy.").

1   As explained further below, the Pension Fund Investors are the "most adequate plaintiff" due to their

2   over $3.8 million in losses incurred on the purchase of 530,276 Bayer ADRs during the Class Period.

3   The Pension Fund Investors' certifications as required by the PSLRA are provided as Exhibit A to the

4   Lavallee Declaration. A chart setting forth the calculations of the Pension Fund Investors' losses is

5   provided as Exhibit B to the Lavallee Declaration. To the best of their knowledge, the Pension Fund

6   Investors have sustained the largest losses of any investor, or group of investors, seeking to be

7   appointed Lead Plaintiff in this Action.

8         In addition to possessing the largest-known financial interest in the litigation, the Pension Fund

9   Investors also meet Rule 23's typicality and adequacy requirements. The Pension Fund Investors'

10  claims are typical of the claims of absent Class members, and the Pension Fund Investors will fairly

11  and adequately represent the interests of the Class. Further, they are the type of sophisticated

12  institutional investors that Congress intended to empower to lead securities class actions. The Pension

13  Fund Investors have the ability, resources, and experience to oversee this complex litigation and ensure

14  that the Action is prosecuted vigorously and efficiently. As explained further below and in the Pension

15  Fund Investors' Joint Declaration, *see* Lavallee Decl., Ex. C, the SMW Pension Fund and 710 Pension

16  Fund are highly experienced in overseeing counsel in complex litigation and will bring that experience

17  to bear on behalf of the Class as Lead Plaintiff, *see id*. ¶¶ 2-11. The Pension Fund Investors have

18  already demonstrated their commitment to collaborative and vigorous prosecution of this action by

19  meeting, through a Zoom conference call, to discuss their motivation for participating in the litigation,

20  plan to oversee counsel, and shared commitment to achieve the best possible result for the Class.

21        Finally, the Pension Fund Investors request that the Court approve their choice of Cohen

22  Milstein as Lead Counsel and Berman Tabacco as Liaison Counsel. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v)

23  ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to

24  represent the class"). Cohen Milstein is a nationally recognized securities class action litigation firm

25  that has recovered billions of dollars for defrauded investors, including achieving significant

26  recoveries in this District. Berman Tabacco is also a renowned securities class action litigation firm.

27  Additionally, the firms have a history of successful collaboration, including as co-lead counsel

28  recovering $175 million in the securities litigation stemming from the BP oil spill.

1      For these reasons, the Pension Fund Investors respectfully request that the Court appoint them

2  as Lead Plaintiff and approve their selection of Cohen Milstein as Lead Counsel for the Class and

3  Berman Tabacco as Liaison Counsel for the Class.

4  **III.     FACTUAL AND PROCEDURAL BACKGROUND[1]**

5      Bayer is a multi-national pharmaceutical and life sciences corporation. On May 23, 2016,

6  Bayer announced it had made an unsolicited offer to acquire Monsanto. Monsanto is a provider of

7  agricultural and other chemicals. One of Monsanto's flagship products was the weed killer Roundup,

8  which generated nearly $5 billion annually in revenue for Monsanto. In March 2015, the International

9  Agency for Research on Cancer deemed the active ingredient in Roundup, glyphosate, "probably

10  carcinogenic to humans" and by early 2016, Monsanto faced numerous lawsuits from individuals who

11  alleged that Roundup had caused their cancer.

12      In the nearly two years between the announcement and Bayer's ultimate completion of its all-

13  cash acquisition of Monsanto on June 7, 2018, for $63 billion, Bayer and its executives repeatedly

14  made claims to investors regarding the expected benefits of Bayer's acquisition of Monsanto and their

15  due diligence and analysis of potential exposure to risks stemming from Roundup cancer litigation

16  (for which Bayer assumed liability when it acquired Monsanto). Bayer claimed to investors that the

17  investment was expected "to create substantial value for our shareholders"; was "a highly attractive

18  value proposition" that "would have a positive impact on our earnings and margin development"; and

19  was "a highly value accretive transaction." Defendants downplayed the liability risks related to

20  Roundup, claiming Bayer "undertook appropriate due diligence of litigation and regulatory issues

21  throughout the process" leading to finalization of the acquisition and in response to specific questions

22  from analysts regarding glyphosate, claiming that they "understand the risk and the exposure that does

23  exist" and that "[i]t would not affect the overall offer and proposal to acquire Monsanto." These and

24  similar Class Period statements by Defendants were false and misleading because at that time

25  Defendants knew or recklessly disregarded that Roundup created significant exposure to liability.

26

27

28      [1] Allegations referenced in this section are derived from the Complaint For Violations of The Federal Securities Laws, filed herein on July 15, 2020, ECF No. 1.

1   Defendants' false and misleading statements and omissions caused Bayer ADRs to trade at artificially
2   inflated prices throughout the Class Period.

3          The truth began to emerge on August 10, 2018, when the jury in the first Roundup cancer case
4   to go to trial found in favor of the plaintiff, including finding that Roundup was a "substantial factor"
5   in causing the plaintiff's non-Hodgkin's lymphoma and that Monsanto had acted with "malice or
6   oppression." The plaintiff, Mr. Dewayne Johnson, was awarded $39 million in compensatory damages
7   and $250 million in punitive damages. In response to this news, the price of Bayer ADRs dropped by
8   over 11%, falling from $26.59 per ADR to $23.59 per ADR.

9          On October 22, 2018, the judge overseeing the Johnson case reduced the punitive damages
10  award from $250 million to $39 million, but denied Monsanto's motions for judgment notwithstanding
11  the verdict and for a new trial, ruling that "there is no legal basis to disturb the jury's determination
12  that plaintiff's exposure to [glyphosate-based herbicides] was a substantial factor in causing his [non-
13  Hodgkin's lymphoma]." On this news, the price of Bayer ADRs fell from $22.00 per ADR to $20.10
14  per ADR.

15         Finally, on March 19, 2019, the final day of the Class Period, a jury in the first federal roundup
16  cancer suit to go to trial (the "Hardeman case") issued a verdict on causation in the first phase of a
17  bifurcated trial. The jury found that plaintiff's "exposure to Roundup was a substantial factor in
18  causing his non-Hodgkin's lymphoma." On this news, Bayer ADRs fell again, from $19.67 per ADR
19  to $17.85 per ADR, a decline of approximately 9.3%.

20         As a result of Defendants' false and misleading statements and omissions and the dramatic
21  decline in the value of Bayer ADRs as the truth was revealed, Defendants caused the Pension Fund
22  Investors and other Class members to suffer significant loss and damages.

23         This Action is the first lawsuit against Defendants alleging these particular facts and asserting
24  securities fraud class action claims, and was filed in this Court on July 15, 2020. *See* ECF No. 1. That
25  same day, counsel for the plaintiffs in the first-filed action published in *PR Newswire* a press release
26  announcing the pendency of the Action, the claims asserted therein, the purported class period, and
27  the lead plaintiff deadline (the "PSLRA Notice"). *See* ECF No. 7, 7-1; Lavallee Decl., Ex. D.

28

## IV.     ARGUMENT

### A.     THE PENSION FUND INVESTORS SHOULD BE APPOINTED LEAD PLAINTIFF

The Pension Fund Investors respectfully submit that they should be appointed Lead Plaintiff because they timely filed the instant motion, believe they have the largest financial interest in the litigation of any qualified movant, satisfy Rule 23's typicality and adequacy requirements, and are sophisticated institutional investors with the experience, skills, and resources to oversee counsel and vigorously and efficiently prosecute this Action.

### 1.     The PSLRA's Standard for Appointing Lead Plaintiff

The PSLRA sets forth the procedure for selecting a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B). The Ninth Circuit has set forth a three-part test for determining whether a movant meets the PSLRA's criteria for lead plaintiff. *GGCC, LLC v. Dynamic Ledger Solutions, Inc.*, No. 3:17-cv-06779-RS, 2018 WL 1388488, at *3 (N.D. Cal. Mar. 16, 2018) (citing *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002)).

First, a court must determine whether the plaintiff or plaintiffs in the first-filed action issued a notice publicizing the pendency of the lawsuit. 15 U.S.C. § 78u-4(a)(3)(A).

Second, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The most adequate plaintiff is presumed to be the "person or group" that has the largest financial interest in the litigation and satisfies Rule 23's adequacy and typicality requirements. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Third, a court must determine whether the presumption of the most adequate plaintiff was rebutted, which can occur only through the presentation of "proof" that the presumptively most adequate plaintiff or plaintiffs "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

---

1

2.      The Pension Fund Investors Are the "Most Adequate Plaintiff"

2

(1)      The PSLRA's Notice Requirement Was Met, and the Pension Fund
Investors' Motion is Timely

3

4

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within sixty

5

days of the publication of notice that the first action asserting substantially the same claims has been

6

filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). On July 15, 2020, plaintiffs City of Grand Rapids General

7

Retirement System and City of Grand Rapids Police & Fire Retirement System ("City of Grand Rapids

Retirement System") filed this Action against Defendants. *See* ECF No. 1. That same day, counsel for

8

the City of Grand Rapids Retirement System published in *PR Newswire* a press release announcing

9

the pendency of the Action, the claims asserted therein, the purported class period, and the lead

10

plaintiff deadline (the "PSLRA Notice"). *See* ECF No. 7, 7-1; Lavallee Decl., Ex. D. Thus, the

11

PSLRA's notice requirement was satisfied. *See In re NVIDIA Corp. Sec. Litig.*, No. 18-cv-07669-

12

HSG, 2019 WL 1960341, at *2 (N.D. Cal. May 2, 2019) (holding that publication of notice in PR

13

Newswire on the same day that the complaint was filed satisfies the PSLRA's 20-day filing deadline).

14

The Pension Fund Investors' motion for appointment as Lead Plaintiff was filed within sixty

15

days of the notice's publication. Thus, the Pension Fund Investors have timely moved for appointment

16

as Lead Plaintiff.

17

(2)      The Pension Fund Investors Have the Largest Financial Interest

18

The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the

19

movant with the largest financial interest in the relief sought by the class, as long as that movant also

20

satisfies Rule 23's adequacy and typicality requirements. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The Court

21

"must compare the financial stakes of the various plaintiffs and determine which one has the most to

22

gain from the lawsuit." *Cavanaugh*, 306 F.3d at 729-30.

23

As evidenced by the accompanying signed Certifications, the Pension Fund Investors incurred

24

substantial losses of approximately $3,896,994.92 million on their purchase of 530,276 Bayer ADRs

25

during the Class Period. *See* Lavallee Decl., Ex. A. The Pension Fund Investors are unaware of any

26

other movant with a larger financial interest in the outcome of the Action.

27

28

### (3)   The Pension Fund Investors Satisfy Rule 23's Requirements

The movant with the largest financial interest – the Pension Fund Investors – is considered the most adequate plaintiff as long as it also "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also GGCC, LLC*, 2018 WL 1388488, at *3 (Seeborg, J.) ("As long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he or she is entitled to lead plaintiff status."). On a motion to serve as Lead Plaintiff, a movant need only make a preliminary showing that the adequacy and typicality requirements have been met. *See Deinnocentis v. Dropbox, Inc.*, No. 19-cv-06348-BLF, 2020 WL 264408, at *4 (Jan. 16, 2020). Here, the Pension Fund Investors unquestionably satisfy both requirements.

Rule 23's typicality requirement is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is satisfied when the putative lead plaintiff has suffered the same injuries as absent class members as a result of the same conduct by the defendants." *Tollen v. Geron Corp.*, No. 20-cv-00547-WHA, 2020 WL 2494570, at *3 (N.D. Cal. May 14, 2020). Like all Class members, the Pension Fund Investors purchased Bayer ADRs during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements and omissions, and suffered damages when the truth was revealed. As such, the Pension Fund Investors satisfy Rule 23's typicality requirement.

Rule 23's "adequacy" requirement is satisfied when the proposed class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The test for adequacy is whether the presumptive lead plaintiff and its counsel have any conflicts of interest with other class members, and whether they will prosecute the action vigorously on behalf of the class." *Doherty v. Pivotal Software, Inc.*, No. 3:19-cv-93589-CRB, 2019 WL 5864581, at *7 (N.D. Cal. Nov. 8, 2019). The Pension Fund Investors have no conflict with other Class members; their interests are aligned with the other members of the Class. In addition, because of the Pension Fund Investors' substantial financial interest in this Action, Class members can be assured that they have the incentive to vigorously represent the Class' interests. Further, as discussed further below, the Pension Fund Investors have demonstrated their adequacy through their selection of highly qualified and

experienced counsel in Cohen Milstein to serve as lead counsel to represent the Class, along with Berman Tobacco, another experienced firm, to serve as liaison counsel.

Courts in this District regularly appoint small, cohesive groups of investors with a demonstrated commitment to collaborative prosecution of the case as lead plaintiff, recognizing that such groups are adequate representatives. *See Vataj v. Johnson*, No. 19-cv-06996-HSG, 2020 WL 532981, at *2 n.1 (N.D. Cal. Feb. 3, 2020) (appointing a pair of investors and noting their attestation of commitment to supervise counsel's conduct of the litigation and collaborative work on filing a stipulation for appointment as lead plaintiff); *In re Aqua Metals Sec. Litig.*, No. 17-cv-07142-HSG, 2018 WL 4860188, at *4 (N.D. Cal. May 23, 2018) (appointing a pair of investors and noting their attestation of commitment to maximizing the class recovery, ensuring that lead counsel works expeditiously and effectively, working collaboratively, and communicating regularly); *Bruce v. Suntech Power Holdings Co., Ltd.*, No. 12-cv-04061-RS, 2012 WL 5927985, at *3 (N.D. Cal. Nov. 13, 2012) (Seeborg, J.) (finding declaration from movant attesting that it is "committed to protecting the interests of the Class" and will "vigorously prosecute the action on behalf of the class" supports appointment).

As detailed in their Joint Declaration, the Pension Fund Investors are a pair of sophisticated institutional investors with deep experience overseeing counsel in complex litigation. The Pension Fund Investors have combined assets under management of over $8 billion. They have significant experience and success serving as members of lead plaintiff groups under the PSLRA. *See* Joint Decl., Lavallee Decl., Ex. C ¶¶ 2-7. For example, the SMW Pension Fund has recovered tens of millions of dollars for investors in cases in which it served as lead or co-lead plaintiff. *See In re Synovus Financial Corp.*, No. 1:09-cv-01811-WCO (ECF 157-1) (N.D. Ga. Oct. 14, 2014) (settled for $11,750,000); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc., et al*, No. 1:11-cv-08332 (ECF 206) (N.D. Ill. Aug. 5, 2014) (settled for $60,000,000). Additionally, the 710 Pension Fund as Co-Lead Plaintiff recently secured a recovery of $15.5 million for investors allegedly harmed by global bank Credit Suisse AG's false and misleading statements regarding its risk controls and risk limits. *See City of Birmingham Ret. and Relief Sys., et al. v. Credit Suisse Grp. AG, et al.*, No. 1:17-cv-10014-LGS (ECF 141) (S.D.N.Y. Aug. 24, 2020) (granting preliminary approval of settlement). The 710 Pension Fund

1    has been appointed Co-Lead Plaintiff in other significant securities class actions including *Barry v.*

2    *Colony NorthStar, Inc., et al.*, No. 18-CV-002888 (C.D. Cal.) and *City of Westland Police and Fire*

3    *Ret. Sys. v. Philip Morris Int'l Inc. et al.*, No. 18-CV-08049 (S.D.N.Y.).

4        The Pension Fund Investors are committed to working collaboratively to achieve the best

5    possible result for the Class. *See* Joint Decl., Lavallee Decl., Ex. C ¶¶ 8-19. The Pension Fund

6    Investors believe that working together as a pair will benefit the Class by offering diverse perspectives

7    within a small, manageable, cohesive group. *See id.* ¶¶ 9-15. They have taken, and will continue to

8    take measures to ensure the claims are vigorously and efficiently prosecuted to serve the interests of

9    the Class. Before seeking appointment as Lead Plaintiff, representatives of the Pension Fund Investors

10   held a conference call in which they discussed the claims against Defendants, case strategy, the

11   benefits to the Class of their joint prosecution of this Action, and procedures to oversee litigation of

12   the case and ensure its vigorous prosecution. *See id.* ¶ 14.

13       Accordingly, the Pension Fund Investors satisfy Rule 23's adequacy requirement.

14                   **(4)    The Pension Fund Investors Are Precisely the Type of Lead**
                              **Plaintiff Envisioned by the PSLRA**

15

16       In addition to possessing the largest financial interest and satisfying the requirements of Rule

17   23, the Pension Fund Investors are precisely the type of investor Congress sought through the

18   enactment of the PSLRA to encourage to lead securities class actions. *See* H.R. Conf. Rep. No. 104-

19   369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) ("The Conference Committee

20   believes that increasing the role of institutional investors . . . will ultimately benefit shareholders and

21   assist courts by improving the quality of representation in securities class actions."). Courts in this

22   District recognize the value of sophisticated investors leading securities class actions, and regularly

23   appoint institutional investors to that role. *See In re Calpine Corp. Sec. Litig.*, No. 02-cv-1200-SBA,

24   2004 WL 3316309, at *3 (N.D. Cal. Feb. 5, 2004) ("The PSLRA generally favors institutional

25   investors over individual investors because institutional investors are presumed to be sophisticated,

26   experienced in the securities business, and enjoy greater resources (such as an in-house legal team).").

27

28

**B.   THE COURT SHOULD APPROVE THE PENSION FUND INVESTORS' SELECTION OF COUNSEL**

The PSLRA states that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court may disturb a proposed lead plaintiff's choice only if "necessary to protect the interests of the plaintiff class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). The Court should approve Cohen Milstein as the Pension Fund Investors' selection for Lead Counsel and Berman Tabacco for Liaison Counsel.

As detailed further in its firm résumé, Cohen Milstein is a firm with undisputed skill in litigating securities fraud class actions with deep experience serving as lead counsel in securities class actions, including in this District. *See* Cohen Milstein Firm Résumé, Lavallee Decl., Ex. E. Cohen Milstein has worldwide expertise as counsel for U.S. and non-U.S. institutional investors who have been the victims of securities fraud. By applying innovative legal theories and litigation strategies, it has recovered billions of dollars for its clients in some of the largest and most complex securities class actions. Notable recoveries include a $500 million settlement in a mortgage-backed securities class action against Countrywide Financial Corp. and others (*Maine State Ret. Sys.*, *et al. v. Countrywide Fin. Corp.*, *et al.*, Nos. 2:12-cv-05122-MRP (MANx), 2:12-cv-05125-MRP (MANx) (C.D. Cal.)); a $275 million settlement in a mortgage-backed securities class action against the Royal Bank of Scotland (*N.J. Carpenters Health Fund v. The Royal Bank of Scot. Grp., plc*, No. 08-cv-05310-DAB-HBP (S.D.N.Y.)); $335 million in settlements in a class action against Residential Accredit Loans, Inc. and various investment banks (*N.J. Carpenters Health Fund v. Residential Cap., LLC*, No. 08-cv-8781 (HB) (S.D.N.Y.)); and a $90 million settlement in a class action against MF Global (*Rubin v. MF Glob., Ltd.*, No. 08-cv-2233 (VM) (S.D.N.Y.)), among others. Additionally, Cohen Milstein has a renowned environmental toxic tort practice, including serving as court-appointed interim Co-Lead Counsel in the Flint water crisis class action litigation and representing a putative class of individuals harmed by toxic byproducts from a coal-fired power plant. *See In re Flint Water Cases*, No. 5:16-cv-14498-JEL-APP (ECF No. 96) (E.D. Mich. July 27, 2017); *Irizarry, et al. v. Orlando Utilities Comm'n, et al.*, No. 6:19-cv-00268-RBD-TBS (ECF No. 43) (M.D. Fla. Mar. 27, 2019). Cohen

1   Milstein's skill and experience litigating environmental toxic tort cases is highly relevant to this matter
2   and strengthens its ability to effectively prosecute the claims at issue here.

3          Due to its qualifications and vigorous advocacy for investors, courts in this District have
4   regularly recognized Cohen Milstein as adequate and qualified class counsel in securities class actions,
5   including: *Mulligan v. Impax Labs., Inc.*, No. 13-CV-1037-EMC, 2013 WL 3354420, at *9 (N.D. Cal.
6   July 2, 2013) (appointing Cohen Milstein to serve as co-lead counsel and noting the firm's "extensive
7   experience in securities class action cases"); *Suntech Power Holdings*, 2012 WL 5927985, at *3
8   (Seeborg, J.) (appointing Cohen Milstein to serve as co-lead counsel); *In re LDK Solar Sec. Litig.*,
9   No. 3:07-cv-05182-WHA, Dkt. 575 at 1 (N.D. Cal. June 22, 2010) (appointing Cohen Milstein to
10  serve as lead counsel).

11         Berman Tabacco is also highly experienced in the area of securities litigation and class actions
12  and has successfully prosecuted numerous matters on behalf of investors, throughout the United States,
13  including cases in this District, as detailed in the firm's resume. *See* Berman Tabacco Firm Résumé,
14  Lavallee Decl., Ex. F. Berman Tabacco has recovered billions of dollars on behalf of defrauded
15  investors, including *In re IndyMac Mortgage-Backed Sec. Litig.*, No. 09-cv-04583-LAK (S.D.N.Y.)
16  (as sole lead counsel representing the Wyoming State Treasurer and the Wyoming Retirement System,
17  the firm reached settlements worth $346 million); *In re 2008 Fannie Mae Sec. Litig.*, No. 08-civ-
18  07831-PAC (S.D.N.Y) (as co-lead counsel representing the Massachusetts Pension Reserves
19  Investment Management Board, the firm achieved a $170 million settlement).

20         Additionally, Cohen Milstein and Berman Tabacco have a history of successful collaboration,
21  including achieving a $175 million settlement in securities litigation stemming from the BP oil spill.
22  *See In re BP PLC Sec. Litig.*, No. 10-md-2185 (ECF 79) (S.D. Tex. Dec. 28, 2010).

23         Thus, the Court can be confident that the Class will receive excellent legal representation from
24  the Fund's chosen counsel and the Court should approve the Pension Fund Investors' selection of
25  Cohen Milstein as Lead Counsel for the Class and Berman Tabacco as Liaison Counsel for the Class.

26                                        **CONCLUSION**

27         For the foregoing reasons, the Pension Fund Investors respectfully requests that the Court enter
28  an Order: (i) appointing it as Lead Plaintiff; (ii) approving its selection of Cohen Milstein as Lead

1  Counsel for the Class and Berman Tabacco as Liaison Counsel; and (iii) granting such other and

2  further relief as the Court may deem just and proper.

3  Dated: September 14, 2020                    **BERMAN TABACCO**

4                                               By: */s/ Nicole Lavallee*

5                                                      Nicole Lavallee (SBN 165755)

6                                               Jeffrey Miles (SBN 293869)
                                                44 Montgomery Street, Suite 650
7                                               San Francisco, CA 94104
                                                Telephone: (415) 433-3200
8                                               Facsimile: (415) 433-6382
                                                Email: nlavallee@bermantabacco.com
9                                                      jmiles@bermantabacco.com

10                                              Carol V. Gilden
11                                              **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                                190 South LaSalle Street, Suite 1705
12                                              Chicago, IL 60603
                                                Telephone: (312) 357-0370
13                                              Facsimile: (312) 357-0369
                                                Email: cgilden@cohenmilstein.com
14

15                                              Steven J. Toll
16                                              Molly Bowen
                                                **COHEN MILSTEIN SELLERS & TOLL PLLC**
17                                              1100 New York Ave NW, Suite 500 East
                                                Washington, DC 20005
18                                              Telephone: (202) 408-4600
                                                Facsimile: (202) 408-4699
19                                              Email: stoll@cohenmilstein.com
                                                       mbowen@cohenmilstein.com
20

21                                              *Attorneys for Movants Sheet Metal Workers National*
                                                *Pension Fund and International Brotherhood of*
22                                              *Teamsters Local No. 710 Pension Fund*

23

24

25

26

27

28