1   Jordan Eth (CA SBN 121617)
    JEth@mofo.com
2   Mark R.S. Foster (CA SBN 223682)
    MFoster@mofo.com
3   **MORRISON & FOERSTER LLP**
    425 Market Street
4   San Francisco, CA  94105
    Telephone:  (415) 268-7126
5   Facsimile:  (415) 268-7522

6   William Savitt (*pro hac vice*)
    John F. Lynch (*pro hac vice*)
7   Noah B. Yavitz (*pro hac vice*)
    John R. Rady (*pro hac vice*)
8   **WACHTELL, LIPTON, ROSEN & KATZ**
    51 West 52nd Street
9   New York, NY  10019
    Telephone:  (212) 403-1000
10  Facsimile:  (212) 403-2000

11  *Attorneys for defendants Bayer*
    *Aktiengesellschaft, Werner Baumann,*
12  *Werner Wenning, Liam Condon,*
    *Johannes Dietsch, and Wolfgang Nickl*

13

14                **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
15                   **SAN FRANCISCO DIVISION**

16  SHEET METAL WORKERS' NATIONAL          Case No.:  3:20-cv-04737-RS
    PENSION FUND and INTERNATIONAL
17  BROTHERHOOD OF TEAMSTERS LOCAL          **DEFENDANTS' NOTICE OF MOTION**
    NO. 710 PENSION FUND, individually and as   **AND MOTION TO DISMISS THE**
18  Lead Plaintiffs on behalf of all others similarly   **AMENDED CLASS ACTION**
    situated, and                            **COMPLAINT; MEMORANDUM OF**
19                                           **POINTS AND AUTHORITIES IN**
    INTERNATIONAL UNION OF OPERATING         **SUPPORT THEREOF**
20  ENGINEERS PENSION FUND OF EASTERN
    PENNSYLVANIA AND DELAWARE,               CLASS ACTION
21  individually and as Named Plaintiff, on behalf of
    all others similarly situated,           Date:   July 22, 2021
22                                           Time:   1:30 p.m.
                   Plaintiffs,               Judge:  Richard Seeborg
23                                           Courtroom:  3 — 17th Floor
              v.
24
    BAYER AKTIENGESELLSCHAFT, WERNER
25  BAUMANN, WERNER WENNING, LIAM
    CONDON, JOHANNES DIETSCH, and
26  WOLFGANG NICKL,

27                 Defendants.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 22, 2021, at 1:30 p.m., or at such other time as the matter may be heard, in the courtroom of the Honorable Richard Seeborg, located at 450 Golden Gate Avenue, San Francisco, California, Courtroom 3, 17th Floor, attorneys for defendants Bayer Aktiengesellschaft, Werner Baumann, Werner Wenning, Liam Condon, Johannes Dietsch, and Wolfgang Nickl will, and hereby do, move to dismiss plaintiffs' amended class action complaint (the "Complaint") (Dkt. No. 47) pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, as well as the Private Securities Litigation Reform Act of 1995.

The motion is based upon this notice and the accompanying memorandum of points and authorities, the accompanying declaration of John F. Lynch and the exhibits submitted therewith, the accompanying request for consideration and judicial notice, the reply brief that will be filed, the papers on file in the action, the argument of counsel, and such other matters as may be considered by the Court before it takes the motion under submission.

**ISSUES TO BE DECIDED**

1.      Whether plaintiffs' claim under Section 10(b) of the Securities Exchange Act of 1934 should be dismissed for failure to plead falsity, scienter, and loss causation.

2.      Whether plaintiffs' claim under Section 20(a) of the Exchange Act should be dismissed because the Section 10(b) claim fails.

1

Dated:   March 22, 2021

2

By: _____/s/ Jordan Eth_____
Jordan Eth (CA SBN 121617)
JEth@mofo.com
Mark R.S. Foster (CA SBN 223682)
MFoster@mofo.com
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA  94105
Telephone:  (415) 268-7126
Facsimile:  (415) 268-7522

3

4

5

6

7

William D. Savitt (*pro hac vice*)
John F. Lynch (*pro hac vice*)
Noah B. Yavitz (*pro hac vice*)
John R. Rady (*pro hac vice*)
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, NY  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000

8

9

10

11

12

*Attorneys for defendants Bayer Aktiengesellschaft,*
*Werner Baumann, Werner Wenning, Liam*
*Condon, Johannes Dietsch, and Wolfgang Nickl*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ....................................................................................................................... 5

I.    THE COMPLAINT FAILS TO PLEAD FALSITY WITH PARTICULARITY ................... 5

   A.  The Complaint Does Not Allege with Particularity that Defendants Made False
       Statements About Due Diligence on Monsanto. ................................................. 6

   B.  The Complaint Does Not Allege with Particularity that Defendants Made False
       Statements About Evidence of Glyphosate Safety........................................... 11

   C.  The Complaint Does Not Allege with Particularity that Defendants Made False
       Statements Relating to Bayer's Accounting for Glyphosate Legal Risks........................ 14

II.   THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER. ......... 16

III.  THE COMPLAINT FAILS TO PLEAD LOSS CAUSATION. ........................................... 21

IV. THE COMPLAINT FAILS TO PLEAD A VIOLATION OF SECTION 20(A). ................. 24

CONCLUSION ................................................................................................................... 24

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                                                                                    **Page(s)**

3
4
*Basic, Inc.* v. *Levinson*,
    485 U.S. 224 (1988) ................................................................................................ 11 n.5

5
*Bonanno* v. *Cellular Biomedicine Grp., Inc.*,
    2016 WL 4585753 (N.D. Cal. Sept. 2, 2016) ........................................................... 22

6
7
*Brown* v. *Brewer*,
    2010 WL 2472182 (N.D. Cal. 2010) ......................................................................... 7

8
*Bruce* v. *Suntech Power Holdings Co.*,
    2013 WL 6843610 (N.D. Cal. Dec. 26, 2013) ..................................................... 5, 10

9
10
*City of Austin Police Ret. Sys.* v. *Kinross Gold Corp.*,
    957 F. Supp. 2d 277 (S.D.N.Y. Mar. 22, 2013) ............................................... 10 n.4, 18

11
12
*City of Dearborn Heights* v. *Align Tech., Inc.*,
    65 F. Supp. 3d 840 (N.D. Cal. 2014),
    *aff'd*, 856 F.3d 605 (9th Cir. 2017) ...................................................................... 16 n.8

13
14
*City of Dearborn Heights* v. *Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017) ........................................................................ 10, 15, 16

15
16
*Curry* v. *Yelp Inc.*,
    875 F.3d 1219 (9th Cir. 2017) ................................................................................. 18

17
*DSAM Glob. Value Fund* v. *Altris Software, Inc.*,
    288 F.3d 385 (9th Cir. 2002) ................................................................................... 19

18
19
*Dura Pharms., Inc.* v. *Broudo*,
    544 U.S. 336 (2005) ........................................................................................... 21, 24

20
21
*Feola* v. *Cameron*,
    2015 WL 12644566 (C.D. Cal. Nov. 24, 2015) ....................................................... 20

22
*Gavaldon* v. *Standard Chartered Bank Int'l (Am.) Ltd.*,
    2020 WL 835311 (S.D. Cal. Feb. 20, 2020) ....................................................... 10 n.4

23
24
*Grigsby* v. *BofI Holding, Inc.*,
    979 F.3d 1198 (9th Cir. 2020) .................................................................. 21, 22 n.10, 23

25
*GSC Partners CDO Fund* v. *Washington*,
    368 F.3d 228 (3d Cir. 2004) ................................................................................. 20-21

26
27
*In re Bank of America Corp.*,
    2012 WL 1353523 (S.D.N.Y. Apr. 12, 2012) ..................................................... 10-11

28

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010)................................................................................ 23

*In re Daou Sys., Inc. Sec. Litig.*,
   411 F.3d 1006 (9th Cir. 2005)........................................................................... 5, 16

*In re Hansen Nat. Corp. Sec. Litig.*,
   527 F. Supp. 2d 1142 (C.D. Cal. 2007) .............................................................. 19

*In re HP Sec. Litig.*,
   2013 WL 6185529 (N.D. Cal. Nov. 26, 2013)..................................................... 21

*In re Huffy Corp. Sec. Litig.*,
   577 F. Supp. 2d 968 (S.D. Ohio 2008) ............................................................... 17

*In re Levi Strauss & Co. Sec. Litig.*,
   527 F. Supp. 2d 965 (N.D. Cal. 2007) ......................................................... 15 n.7

*In re Medicis Pharm. Corp. Sec. Litig.*,
   2010 WL 3154863 (D. Ariz. Aug. 9, 2010)........................................................ 19

*In re Nvidia Corp. Sec. Litig.*,
   2010 WL 4117561 (N.D. Cal. Oct. 19, 2010) ..................................................... 15

*In re Omnicom Grp., Inc. Sec. Litig.*,
   597 F.3d 501 (2d Cir. 2010)................................................................................ 22

*In re Sanofi Sec. Litig.*,
   87 F. Supp. 3d 510 (S.D.N.Y. 2015).................................................................. 13

*In re Sanofi-Aventis Sec. Litig.*,
   774 F. Supp. 2d 549 (S.D.N.Y. 2011)................................................................ 13

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999)................................................................................ 1

*In re Sunpower Corp. Sec. Litig.*,
   2018 WL 1863055 (N.D. Cal. Apr. 18, 2018) .................................................... 21

*Inchen Huang* v. *Higgins*,
   2019 WL 1245136 (N.D. Cal. Mar. 18, 2019)................................................... 23

*Lake* v. *Zogenix, Inc.*,
   2020 WL 3820424 (N.D. Cal. Jan. 27, 2020) ............................................... 5, 17

*Lentell* v. *Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005)................................................................................ 23

*Lloyd* v. *CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016)....................................................................... 19, 21

*Luna* v. *Marvell Tech. Grp. Ltd.*,
   2016 WL 5930655 (N.D. Cal. Oct. 12, 2016) ................................................................ 15, 20, 23

*May* v. *KushCo Holdings, Inc.*,
   2020 WL 6587533 (C.D. Cal. Sept. 25, 2020) ......................................................................... 19

*Metzler Inv. GmbH* v. *Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ................................................................................................ 5-6

*Nathanson* v. *Polycom, Inc.*,
   87 F. Supp. 3d 966 (N.D. Cal. 2015) ......................................................................................... 7

*Nguyen* v. *Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ...................................................................................... 16, 18, 20

*Omnicare, Inc.* v. *Laborers Dist. Council*,
   575 U.S. 175 (2015) .................................................................................... 10, 14 n.6, 16

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund* v. *Hewlett-Packard Co.*,
   845 F.3d 1268 (9th Cir. 2017) ................................................................................................. 13

*Salim* v. *Mobile Telesystems PJSC*,
   2021 WL 796088 (E.D.N.Y. Mar. 1, 2021) ........................................................................ 15, 16

*Santa Fe Industries* v. *Green*,
   430 U.S. 462 (1977) ..................................................................................................................... 7

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ................................................................................................................... 17

*Thor Power Tool Co.* v. *C.I.R.*,
   439 U.S. 522 (1979) ................................................................................................................... 15

*Wochos* v. *Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) ............................................................................................. 8, 21

*Xiaojiao Lu* v. *Align Tech., Inc.*,
   417 F. Supp. 3d 1266 (N.D. Cal. 2019) ...................................................................................... 9

*Yaron* v. *Intersect ENT, Inc.*,
   2020 WL 6750568 (N.D. Cal. June 19, 2020) ......................................................................... 23

*Yourish* v. *California Amplifier*,
   191 F.3d 983 (9th Cir. 1999) .................................................................................................... 19

*Zucco Partners, LLC* v. *Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) .............................................................................................. 17, 19

1

**Rules and Statutes**

2    15 U.S.C. § 78j(b) ................................................................................................ 4

3    15 U.S.C. § 78t(a) ................................................................................................ 4

4    15 U.S.C. § 78u–4(b)(1) ...................................................................................... 5

5    15 U.S.C. § 78u–4(b)(2) ................................................................................. 5, 16

6    17 C.F.R. § 240.10b-5 .......................................................................................... 4

7    28 U.S.C. § 1658(b)(1) ................................................................................. 22 n.10

8    Fed. R. Civ. P. 9(b) ....................................................................................... 5, 16, 21

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

This case is a textbook example of an attempt to plead securities fraud by hindsight.  Bayer acquired Monsanto in a transaction that was signed in 2016 and completed in 2018.  Soon after the closing, Monsanto began to lose California jury trials in personal-injury cases involving glyphosate, an ingredient in Monsanto's Roundup products.  Bayer's stock price dropped.  Plaintiffs then dredged up dozens of disclosures that Bayer and its senior officials made over a period of almost four years — statements beginning in May 2016, weeks before the deal was signed, continuing through the first jury verdict in August 2018, and extending through April 2020, as Bayer discussed Monsanto's glyphosate litigation in financial reports.  The Complaint alleges that all these statements were later revealed as fraudulent by adverse litigation outcomes, which supposedly showed investors that defendants had deceived them about three different things:  alleged lapses in Bayer's due diligence on Monsanto, the safety of glyphosate, and Bayer's accounting for glyphosate risks.

Congress enacted the Private Securities Litigation Reform Act to "put an end to the practice of pleading 'fraud by hindsight.'"  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 988 (9th Cir. 1999).  The statute requires securities-fraud complaints to detail contemporaneous statements or conditions showing why alleged misrepresentations were false when they were made.  Plaintiffs have not done this.  The crux of their theory of falsity — their allegations that defendants' disclosures about due diligence and glyphosate were false when made — reduces to the fact that juries later found Monsanto liable to personal-injury plaintiffs.  That does not suffice under the PSLRA, and it is not the only defect in plaintiffs' pleading of falsity.  The claim that defendants misled the market about the quality of Bayer's due diligence on Monsanto reflects an effort to bootstrap alleged mismanagement into securities fraud, which is impermissible, and many of the statements they challenge concerning due diligence, glyphosate safety, and accounting for litigation risks are statements of opinion, which are subject to an even higher pleading standard that the Complaint does not meet.  *See* Point I, *infra*.

The Complaint also fails the heightened standard that the PSLRA established for the pleading of scienter, which requires particularized facts that give rise to a strong inference that

1  defendants either knew their statements were false or were deliberately reckless as to truth or

2  falsity.  The Complaint contains no such facts at all — no claim of any motive to lie, no suspicious

3  sales of stock, no statements or documents reflecting intentional recklessness on the part of any

4  defendant as to the truth of statements concerning due diligence on Monsanto, glyphosate risks, or

5  anything else.  At bottom, plaintiffs' scienter case amounts to little more than conclusory

6  allegations of knowledge or recklessness appended to their hindsight claims of faulty diligence and

7  misjudgment of medical evidence.  *See* Point II, *infra*.

8       Nor does the Complaint adequately allege loss causation, which requires particularized

9  pleading that the allegedly misleading statements, as opposed to something else, caused plaintiffs'

10  alleged losses.  Plaintiffs do not come close to alleging with particularity that the stock drops that

11  followed the adverse litigation results were caused by the correction of defendants' allegedly false

12  statements about due diligence and glyphosate risks — rather than the market's surprise at the

13  outcomes of an unpredictable trial process.  *See* Point III, *infra*.

14       Defendants respectfully submit that the Complaint should be dismissed with prejudice.

### STATEMENT OF FACTS[1]

16       Bayer is a German corporation that develops and sells agricultural, pharmaceutical, and

17  healthcare products.  ¶ 49.  In May 2016, it made a $62 billion all-cash offer to acquire Monsanto,

18  an agrochemical company based in St. Louis.  ¶¶ 56, 62.  On September 14, 2016, after four months

19  of spirited negotiation, the parties signed a merger agreement.  ¶ 97; *see* ¶¶ 87-89, 91-96.  The

20  acquisition closed on June 7, 2018.  ¶ 111.  During this lengthy process, Bayer's advisors

21  conducted due diligence on Monsanto's operations, which included a review of legal and

22  reputational risks posed by the merger.  ¶ 81.  Among the topics of this diligence was litigation

23  against Monsanto alleging that the chemical glyphosate causes cancer.  ¶¶ 80-81.

---

[1] These facts are drawn from the Complaint, Dkt. No. 47, and documents subject to the accompanying request for consideration and judicial notice.  Defendants dispute the allegations in the Complaint but assume they are true for purposes of this motion.  All references to "¶ __" are to paragraphs in the Complaint.  All references to "Ex. __" are to exhibits attached to the declaration of John F. Lynch.

1    Glyphosate is the active ingredient in Roundup, a Monsanto herbicide.  Regulators in the

2    United States and Europe have approved glyphosate (and Roundup) for general use, ¶ 80, and there

3    is an extensive body of research supporting its safety, ¶ 176.  Nevertheless, in March 2015 the

4    International Agency for Research on Cancer ("IARC") released a monograph concluding that

5    glyphosate is "probably carcinogenic to humans." ¶ 80.  The publication prompted dozens of

6    plaintiffs to file highly publicized lawsuits.  *Id.*  That litigation led to the public release, in March

7    and August 2017, of a large volume of internal Monsanto documents analyzing glyphosate,

8    eliciting heavy press scrutiny and still more lawsuits.  ¶¶ 102, 104, 106, 109.

9    After the Monsanto merger closed in June 2018, several developments caused the

10   glyphosate litigation to expand further in scope and severity.  On August 10, 2018, just months

11   after the closing, a California Superior Court jury in the first case to reach trial ruled in favor of the

12   plaintiff, Dewayne Johnson, awarding him $39 million in compensatory damages and $250 million

13   in punitive damages.  ¶¶ 18, 117, 348.  On October 22, 2018, the court in the *Johnson* case reduced

14   the punitive damages award to $39 million, but rejected Monsanto's requests for a new trial and for

15   judgment notwithstanding the verdict.  ¶¶ 24, 136, 350.  Next, on March 19, 2019, a second jury

16   verdict was handed down, awarding $80 million in damages to Edwin Hardeman, who claimed

17   Roundup caused his cancer.  ¶¶ 25, 351.

18   These trial successes prompted a boom in new lawsuits, with the volume of glyphosate

19   claims soaring to roughly 125,000, much of it consolidated into multi-district litigation in the

20   Northern District of California before Judge Vince Chhabria.  ¶ 333.  Although Bayer continued

21   (and continues) to maintain that glyphosate is safe and non-carcinogenic, on June 24, 2020, the

22   company announced that it had agreed to pay up to $10.9 billion to settle and establish a

23   mechanism to resolve current and future Roundup cases, with the goal of "return[ing] the

24   conversation about the safety and utility of glyphosate-based herbicides to the scientific and

25   regulatory arena and mov[ing] it away from the jury trial setting." ¶ 190.  On July 6, 2020, Judge

26   Chhabria issued an order indicating that he was unlikely to approve the proposed settlement of

27   future Roundup claims, prompting the parties to withdraw that part of the settlement.  ¶¶ 30-31,

28   186-90, 354-55.

1       During this post-merger period, the price of Bayer's American depositary receipts, or

2   ADRs, suffered a significant decline.  ¶ 33.  Shortly after the proposed settlement of future

3   glyphosate claims was withdrawn, on July 15, 2020, plaintiffs City of Grand Rapids General

4   Retirement System and City of Grand Rapids Police & Fire Retirement System filed a complaint.

5   Dkt. No. 1.  Their complaint alleged securities fraud by Bayer, along with current officers Werner

6   Baumann, Wolfgang Nickl, and Liam Condon, former CFO Johannes Dietsch, and former chair of

7   the Bayer Supervisory Board Werner Wenning.  As subsequently amended, plaintiffs' complaint[2]

8   alleges that defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule

9   10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, as well as a claim under Section 20(a) of the

10  Exchange Act, § 78t(a), for control person liability against each of the individual defendants.  Dkt.

11  No. 47.  The Complaint alleges that over a four-year class period running from May 2016 to July

12  2020, defendants made dozens of false or misleading statements falling into three categories:

      1.  statements that allegedly misrepresented the extent and effectiveness of Bayer's due

13

14            diligence, *see* ¶¶ 219-20, 224-29, 232-35, 238-41, 244-47;

15        2.  statements that allegedly misrepresented the state of the scientific evidence on

16            glyphosate, *see* ¶¶ 250, 252-66; and

17        3.  alleged accounting misstatements made after the Monsanto acquisition closed, during

18            which period Bayer disclosed the glyphosate litigation as a contingent liability but did

19            not reserve for potential damages, *see* ¶¶ 210-13, 268-313, 321-25.

20      Plaintiffs contend that through these alleged misrepresentations, defendants "falsely led

21  investors to believe that Bayer's extensive due diligence confirmed there was no material risk

22  from" glyphosate litigation and that "unequivocal scientific and regulatory evidence" favored

23  Monsanto's position in that litigation.  ¶¶ 346, 349.  They allege that this inaccurate impression was

24  dispelled by a news report about the glyphosate litigation, the adverse jury verdicts in the *Johnson*

25  and *Hardeman* trials, the denial of Bayer's post-trial motions in the *Johnson* case, the

26

27  _____

28  [2] Sheet Metal Workers' National Pension Fund and International Brotherhood of Teamsters Local
    No. 710 Pension Fund were appointed as lead plaintiffs on October 21, 2020.  Dkt. No. 44.

1   announcement of the glyphosate litigation settlement, and the news that Judge Chhabria would not

2   approve the part of that settlement directed to future claims, causing a significant decline in Bayer's

3   share price during the two years after its acquisition of Monsanto.  ¶¶ 347-48, 350-51, 354.

4   Defendants now move to dismiss the Complaint.

5                                           **ARGUMENT**

6          To state a claim for securities fraud under Section 10(b) and Rule 10b-5, plaintiffs must

7   allege "(1) a material misrepresentation or omission of fact [*i.e.*, falsity], (2) scienter, (3) a

8   connection with the purchase or sale of a security, (4) transaction and loss causation, and (5)

9   economic loss." *Lake* v. *Zogenix, Inc.*, 2020 WL 3820424 (N.D. Cal. Jan. 27, 2020) (alteration in

10  original) (quoting *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1014 (9th Cir. 2005)).

11         Ordinary notice-pleading standards do not apply.  Under Fed. R. Civ. P. 9(b), a complaint

12  must plead fraud "with particularity," and under the PSLRA must detail each misleading statement.

13  15 U.S.C. § 78u–4(b)(1).  Furthermore, under a PSLRA provision designed to weed out spurious

14  allegations of "fraud by hindsight," *Bruce* v. *Suntech Power Holdings Co.*, 2013 WL 6843610, at

15  *5 (N.D. Cal. Dec. 26, 2013), a plaintiff must plead "with particularity facts giving rise to a strong

16  inference that the defendant acted with" scienter.  15 U.S.C § 78u–4(b)(2)(A).

17         The Complaint fails this standard on multiple independent grounds.  Plaintiffs do not

18  adequately allege any material misrepresentations, do not allege particularized facts giving rise to a

19  strong inference of scienter, and do not allege defendants' supposed misrepresentations caused their

20  loss.  The Complaint should be dismissed with prejudice.

21  **I.      THE COMPLAINT FAILS TO PLEAD FALSITY WITH PARTICULARITY.**

22         To plead falsity under the PSLRA's heightened pleading standards, a complaint must allege

23  particularized information showing that the disputed statements were materially false at the time

24  they were made.  15 U.S.C. § 78u–4(b)(1); Fed. R. Civ. P. 9(b).  This requires plaintiffs to specify

25  in their pleadings "each statement alleged to have been misleading" and the "reason or reasons *why*

26  the statement is misleading."  15 U.S.C. § 78u–4(b)(1) (emphasis added).  A complaint must set out

27  "specific contemporaneous statements or conditions" that demonstrate the "false or misleading

28  nature of the statements when made."  *Metzler Inv. GmbH* v. *Corinthian Colls., Inc.*, 540 F.3d

1049, 1066 (9th Cir. 2008) (internal quotation omitted).  Securities-fraud plaintiffs cannot satisfy these stringent pleading standards with a "litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false."  *Id.*

That kind of litany is all the Complaint pleads, however, running through years' worth of statements by Bayer executives and financial reports.  None are ever materially contradicted by any well-pleaded fact from the time the statement was made.  Instead, in keeping with plaintiffs' fraud-by-hindsight approach, the Complaint alleges that virtually all were *later* revealed as false when California state-court juries concluded that glyphosate caused individuals' cancer.  ¶¶ 347-54.  This is so for each category of statements that plaintiffs claim is false:  (A) statements that plaintiffs characterize as exaggerating Bayer's due diligence on glyphosate litigation risks; (B) statements describing the evidence or lack thereof connecting glyphosate or Roundup to cancer; and (C) statements about Bayer's accounting for the risk of glyphosate litigation losses.

### A.    The Complaint Does Not Allege with Particularity that Defendants Made False Statements About Due Diligence on Monsanto.

The statements that plaintiffs challenge as misrepresenting the quality of Bayer's due diligence on Monsanto begin on May 23, 2016, when news emerged of a potential transaction with Monsanto, ¶ 219, and continue through a conference call that Bayer executives had with investors on August 23, 2018, soon after the jury rendered its verdict in the *Johnson* case.  ¶ 234.  After reciting these statements at length, plaintiffs characterize them as giving investors a "false impression" that "Bayer had undertaken *sufficient due diligence* of the Roundup liability risks in accordance with *relevant requirements, standards, and best practices*."  ¶ 231 (emphasis added) (citing ¶¶ 69-70, 82); *see also* ¶¶ 237, 243.  Plaintiffs refer to a "due diligence expert" that they appear to have enlisted to illuminate what those best practices are.  ¶ 70.  This expert is not alleged to believe that diligence requires review of a target company's internal documents, but plaintiffs nevertheless insist that best practices required Bayer to "investigat[e] and examin[e] Monsanto's internal documents and correspondence concerning the safety and legal risks" of Monsanto's glyphosate and Roundup products — including, as a matter of pure hindsight pleading, internal emails that plaintiffs say later swayed jurors to find against Monsanto in personal-injury trials.

1  ¶¶ 82, 141-42, 348.  Plaintiffs theorize that investors concluded on their own, without expert help,

2  that Bayer had performed that kind of investigation and internal document review, based on

3  statements by defendants that never say that.  *See, e.g.*, ¶ 231.

4       As a threshold matter, the United States Supreme Court held in *Santa Fe Industries* v.

5  *Green* that allegations of "corporate mismanagement" like these cannot support claims under

6  Section 10(b).  430 U.S. 462, 477 (1977).  Following *Santa Fe*, it is "clearly established" that

7  plaintiffs "may not 'bootstrap' a claim for internal corporate mismanagement or breach of fiduciary

8  duty by alleging that the corporation or its directors failed to disclose that mismanagement or

9  breach."  *Nathanson* v. *Polycom, Inc.*, 87 F. Supp. 3d 966, 977 (N.D. Cal. 2015).  But that is what

10  plaintiffs allege — a failure to disclose "deficiencies" in due diligence that allegedly came to light

11  with Monsanto's adverse litigation results.  ¶ 249.  Assuming deficiencies existed, plaintiffs would

12  require defendants to announce them as part of their disclosures before and after jury verdicts came

13  down in order to avoid claims of securities fraud.  The Exchange Act does not demand such "self-

14  flagellation."  *Brown* v. *Brewer*, 2010 WL 2472182, at *24 (N.D. Cal. June 17, 2010).

15       Even if plaintiffs' claims about due diligence sounded under the Exchange Act, they are not

16  adequately pleaded as false.  None of the challenged statements conveyed to the market that Bayer

17  had conducted the due diligence that plaintiffs say was required, and none are materially

18  contradicted by any contemporaneous fact.

19       Plaintiffs point to comments that Bayer CEO Werner Baumann and former Supervisory

20  Board Chairman Werner Wenning made in April 2017, July 2017, and May 2018 as allegedly

21  giving investors a "false impression" in the pre-*Johnson* period that Bayer's due diligence had

22  included a review of Monsanto's internal documents on glyphosate.  ¶¶ 227-29, 231 (citing ¶¶ 69-

23  70, 82).  But the statements from Messrs. Baumann and Wenning that plaintiffs challenge do not

24  say that.  For example, when Mr. Wenning said during Bayer's annual general meeting in April

25  2017 that "all of the most important aspects of a possible transaction were discussed at length"

26  during a Supervisory Board meeting in May 2016, and that "[a]ll in all, the Supervisory Board

27  fulfilled its supervisory and consultative duties in relation to this transaction in a very thorough and

28  exhaustive manner," the "aspects" he highlighted did not include consideration of the legal risks of

1   glyphosate — much less a review of Monsanto's internal documents.  ¶ 227.  *See Wochos* v. *Tesla,*

2   *Inc.*, 985 F.3d 1180, 1194 (9th Cir. 2021) (affirming dismissal where complaint failed to "plead

3   sufficient facts to establish that the actual term used had the distinctive, and false, meaning that

4   Plaintiffs claim").

5        Likewise with respect to Mr. Wenning's comments during the next annual meeting on May

6   25, 2018, roughly two weeks before the merger closed:  he described "in-depth" exchanges with

7   Mr. Baumann and discussions of the transaction at the Supervisory Board level.  The particular

8   "topics in this connection" that Mr. Wenning mentioned were "merger control proceedings," the

9   "financing concept" for the transaction, the "valuation of Monsanto and the effects of the

10  transaction on the rating of Bayer," as well as whether expectations of the profitability of the

11  transaction had changed.  ¶ 229.  Again, nothing to give investors any "false impression" about

12  glyphosate due diligence or the review of Monsanto's internal emails.  ¶ 231.

13       Plaintiffs suggest these comments by Messrs. Wenning and Baumann were later

14  contradicted when Mr. Baumann stated after the *Johnson* verdict that Bayer's "access to

15  information was limited, as is usual in such scenarios."  ¶¶ 230, 245.  But to state that the

16  Supervisory Board analyzed the transaction in depth, or that Monsanto cooperated in answering the

17  "most critical questions [Bayer] had that also related to value and the composition of our business

18  case," ¶ 228, does not convey to investors that Bayer had unfettered access to Monsanto's internal

19  documents before the merger closed.

20       Plaintiffs' attempts to allege falsity in these statements by Messrs. Wenning and Baumann

21  otherwise rest on unsupported speculations concerning the "only information" that Bayer received

22  from Monsanto about Roundup litigation and the claim that Bayer's "remaining available

23  information" on the topic was limited to four legal memoranda that plaintiffs say failed to address

24  certain considerations they should have included.  ¶ 230.  These claims about Bayer's "only

25  information" and the contents of legal memoranda are not supported by the particularized facts that

26  the PSLRA requires.  *See* ¶ 182 (citing a summary of a report by Linklaters LLP as supporting the

27  allegation about Bayer's "only information," but the summary does not say that); Ex. 5 (February 7,

28  2020 summary of Linklaters LLP report) at 6.  And even if they were, they create no factual

1   inconsistency with the statements they challenge.  *See Xiaojiao Lu* v. *Align Tech., Inc.*, 417 F.

2   Supp. 3d 1266, 1277 (N.D. Cal. 2019) (no falsity where the allegedly contradictory allegations are

3   "almost entirely untethered to the actual statements made by Defendants").

4          After the Monsanto transaction closed on June 7, 2018, and the jury rendered its verdict in

5   the *Johnson* trial on August 10, Bayer and its officials began to speak to the issue of Bayer's pre-

6   closing diligence concerning glyphosate litigation risks.  The Complaint alleges that a number of

7   defendants' comments on the subject were false, including Mr. Baumann's statements on August

8   23, 2018, that "Bayer, through counsel, undertook appropriate due diligence of litigation and

9   regulatory issues throughout the process leading to the finalisation of the merger," ¶ 245, and

10  "carried out due diligence within the framework that is customary for the takeover of a listed

11  company," ¶ 245; and statements from Mr. Wenning in February 2019 and Messrs. Baumann and

12  Wenning in April 2019 concerning the Bayer Supervisory Board's conclusion that the Management

13  Board had fulfilled its statutory duties in connection with the Monsanto merger, ¶¶ 238-39, where

14  Messrs. Baumann and Wenning said the Management Board had "diligently and extensively

15  reviewed the risks connected with Monsanto's glyphosate business" and "assessed the legal risks in

16  connection with the use of glyphosate as low."  ¶ 239.[3]

17         These falsity allegations for post-*Johnson* statements fail for the same reasons as the earlier

18  statements discussed above — the same lack of particularized allegations showing that the

19  statements in question were false when made.  Plaintiffs do not point to anything from that

20  timeframe that shows the Board of Management had found glyphosate litigation risks to be

21  _____

22  [3] For the period before the *Johnson* verdict, the Complaint alleges only one statement that refers to
    glyphosate.  ¶¶ 219, 222.  Thus, on a conference call in May 2016, Mr. Baumann was asked, "[i]n
23  terms of Monsanto, . . . whether there's any political considerations here given that there is
    opposition to GMs in Europe, for example," and "a decision to be made" concerning a "renewal of
24  the glyphosate license in Europe," and whether that was a "material risk to the deal." Ex. 2 (S&P
    Global transcript of May 23, 2016 Bayer AG "M&A Call") at 13-14.  He responded, "[Y]es, as you
25  would expect us to do, we have looked at it," "we do understand the risk and the exposure that does
    exist, also in different grades of potential renewal or nonrenewal," and that "[i]t would not affect
26  the overall offer and proposal to acquire Monsanto." *Id.* at 14.  The Complaint omits the question
    Mr. Baumann was asked and alters his answer, presenting it in a way that suggests it refers to
27  diligence on potential personal-injury liability, ¶ 219, which it does not, *id.*, but alleges no
    particularized or contemporaneous facts to contradict what he said.
28

1    anything other than low, for example.  Here again, the Complaint alleges nothing more to explain

2    the alleged falsity of defendants' statements than the same unsupported and insufficient

3    suppositions about how Bayer's diligence fell short of what plaintiffs consider best practices,

4    including a review of internal Monsanto documents.  ¶¶ 242-43.  *See Bruce* v. *Suntech Power*

5    *Holdings Co. Ltd.*, 2013 WL 6843610 (N.D. Cal. Dec. 26, 2013) (rejecting attempt to plead "fraud

6    by hindsight" through unparticularized allegations of insufficient due diligence).[4]

7            In addition, the subjective comments from Messrs. Wenning and Baumann both before and

8    after the *Johnson* verdict concerning Bayer's due diligence, *see* ¶¶ 235, 245, 246 ("customary,"

9    "appropriate"), and the work of the Management and Supervisory Boards, *see* ¶¶ 227, 238-40

10   ("diligent[]," "extensive[]," "very thorough and exhaustive"), are statements of opinion.

11   Accordingly, plaintiffs must allege specific facts that either show defendants "d[id] not honestly

12   hold [those] beliefs," or else "identify[] particular (and material) facts going to the basis for the

13   issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a

14   reasonable person reading the statement fairly and in context."  *City of Dearborn Heights Act 345*

15   *Police & Fire Ret. Sys.* v. *Align Tech., Inc.*, 856 F.3d 605, 615 (9th Cir. 2017) (quoting *Omnicare,*

16   *Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015)).  Plaintiffs

17   have not done this.  They allege no specific facts concerning defendants' subjective beliefs, and

18   their thinly pleaded conjectures about the limits of Bayer's due diligence, ¶ 249, do not undermine

19   the bases for the opinions.

20           The decision in *In re Bank of America Corp.*, 2012 WL 1353523 (S.D.N.Y. Apr. 12, 2012),

21   is directly on point.  Bank of America acquired Countrywide, then suffered a 27% stock drop

22   months later when Countrywide settled a long-running government investigation into predatory

23

24   _____

25   [4] These subjective descriptions of Bayer's diligence are also inactionable because they were
     immaterial puffery.  *See Gavaldon* v. *Standard Chartered Bank Int'l (Am.) Ltd.*, 2020 WL 835311,
26   at *7 (S.D. Cal. Feb. 20, 2020) (holding that characterization of diligence as "robust" was puffery
     because it "impl[ied] opinions or value judgments, not verifiable factual assertions"); *City of Austin*
27   *Police Retirement Sys.* v. *Kinross Gold Corp.*, 957 F. Supp. 2d 277, 297 (S.D.N.Y. 2013) (holding
     that characterization of pre-acquisition diligence as "detailed," "in-depth," and "extensive" was
28   inactionable puffery).

lending practices.  A shareholder claimed securities fraud, alleging, as here, that the bank "failed to conduct sufficient diligence" and made materially misleading statements about the scope of its diligence, *id.* at *3, including comments at the time of the closing that the bank had done "extensive due diligence" and was "clearly focused" on "potential litigation exposure." *Id.* at *5.  The court dismissed the complaint because the plaintiff had not alleged with particularity that the defendants disbelieved their characterization of the diligence as "extensive," and described the claim as "only a retrospective critique" of Bank of America's analysis. *Id.* at *6 (citing cases).  The same result should apply to plaintiffs' claims of falsity with respect to Bayer's due diligence.[5]

### B.    The Complaint Does Not Allege with Particularity that Defendants Made False Statements About Evidence of Glyphosate Safety.

As noted above, the Complaint alleges next to nothing in terms of statements that Bayer made about glyphosate before the Monsanto transaction closed and the *Johnson* jury handed down its verdict.  But after Monsanto lost the *Johnson* trial, Bayer and its officials made multiple statements expressing the view that the verdict was wrong and that glyphosate is safe to use. ¶¶ 252, 255, 260.  Again, these are statements of opinion — and again, the Complaint nowhere alleges facts to demonstrate that these opinions were subjectively or objectively false.  Instead it tries to conjure inconsistencies from broad allegations about the state of research on glyphosate's safety. *See, e.g.* ¶ 267 (citing ¶¶ 80, 136, 216).  These allegations do not withstand analysis.

**800 studies.**  The Complaint recites a series of statements by Bayer and its officials that refer to "800 studies" confirming the safety of glyphosate. *See, e.g.*, ¶¶ 253, 256-58, 260-61.

---

[5] After faulting Bayer for supposedly concealing that its diligence did not involve a review of internal emails about glyphosate, plaintiffs allege that investors were defrauded again when Mr. Baumann indicated on a post-closing investor call that the "hold separate" order governing the transaction had prevented Bayer from reviewing those documents or other non-public information. ¶¶ 248-49.  Plaintiffs have not adequately alleged that this was materially misleading.  Under *Basic, Inc.* v. *Levinson*, there is no substantial likelihood that a post-merger misstatement concerning Bayer's pre-merger access to non-public information under a court order "would have been viewed by [a] reasonable investor as having significantly altered the total mix of information made available," 485 U.S. 224, 231 (1988) (internal quotation omitted) — not when both the order and the merger agreement (with provisions on information access) were publicly available, ¶ 101, and prior disclosures showed that Monsanto did share internal information, ¶¶ 87, 91, 93, 240.

1    Plaintiffs claim these statements were revealed as "materially false and misleading" by responses

2    that Bayer gave to questions during its 2020 annual general meeting.  ¶ 267 (citing ¶¶ 174-78, 216).

3          Bayer's answers do not contradict defendants' statements about the studies, however.  *First*,

4    when Bayer stated that it was "not possible to determine a definitive number of studies that confirm

5    the non-carcinogenicity of glyphosate and glyphosate-based formulations," ¶ 267, Bayer did *not*

6    say there were fewer than 800 studies.  To the contrary, the Complaint itself includes a table that

7    Bayer presented at the 2019 and 2020 annual meetings that breaks down studies by time period, and

8    the total exceeds 800.  ¶ 176.  *Second*, when Bayer, in response to an investor's question, declined

9    to quantify and summarize the evaluations of glyphosate safety that Bayer considered

10   "scientifically sound," that was not an "admi[ssion]" that Bayer had "no basis" to state that

11   "scientifically sound evaluations" confirm that "glyphosate does not cause cancer," as plaintiffs

12   allege.  ¶¶ 178, 267.  *Third*, Bayer did not "admit" in answering investor questions that the "vast

13   majority" of the 800 studies were "not related to carcinogenicity," as the Complaint alleges.  ¶ 175.

14   Rather, Bayer stated that safety assessments "are not *limited* to carcinogenicity" but include

15   "additional data" such as toxicity and neurotoxicity.  *Id.* (emphasis added).

16         **Glyphosate versus Roundup.**  Plaintiffs allege that Mr. Baumann misled investors during a

17   post-*Johnson* conference call on August 23, 2018, when, in response to an analyst's question about

18   the role of surfactants and whether "different formulations of Roundup" might have "different

19   properties" relative to glyphosate, he responded to the effect that, "based on the studies that are out

20   there," "in general, there is no difference . . . between the assessment of glyphosate as an active

21   [ingredient] and then glyphosate-based formulations that are being used."  ¶ 250; *see* Ex. 3 (S&P

22   Global transcript of Aug. 23, 2018 Bayer AG "Special Call") at 9-10.

23         Plaintiffs insist this response was false because "Monsanto's own researchers had

24   recognized that the Roundup formulation was potentially more toxic than glyphosate alone."  ¶ 251

25   (citing ¶ 141).  Here again, the alleged contradiction dissolves under scrutiny.  Mr. Baumann's

26   comments from August 2018 relate to the "carcinogenicity of glyphosate as an active [ingredient]"

27   in relation to the "formulations out there," and he said the "data that is out there appears to be very,

28   very consistent."  ¶ 250.  The supposedly conflicting statements of "Monsanto's own researchers"

1  were from an email exchange in *2002*, and plaintiffs' assertion that the researchers "recognized"

2  Roundup "was potentially more toxic than glyphosate alone," ¶ 251, mischaracterizes the

3  document.  As the document itself makes clear, the Monsanto researchers were discussing studies

4  that they believed to have "no currency with regulatory or serious scientists" because they were "ad

5  hoc non-standard, unvalidated models using unrealistic dose levels." Ex. 1 (Apr. 25, 2002 email

6  from Donna Farmer to Richard Dirks) at 2.  Sixteen-year-old emails that plaintiffs have to twist out

7  of context are not the particularized and contemporaneous facts that the PSLRA requires for the

8  pleading of falsity.  And the emails, in any event, were publicly disclosed and described in the *New*

9  *York Times* in August 2017, ¶ 109 — before the Monsanto transaction closed, before the *Johnson*

10  trial began, and more than a year before Mr. Baumann answered the analyst's question about

11  Roundup and glyphosate.

12        In any event, Mr. Baumann's description of studies and his view that the "data that is out

13  there appears to be very, very consistent" are statements of opinion that plaintiffs do not allege he

14  subjectively disbelieved.  *See In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 543 (S.D.N.Y. 2015)

15  ("Courts have repeatedly held 'publicly stated interpretations of the results of various clinical

16  studies' to be 'opinions' because '[r]easonable persons may disagree over how to analyze data and

17  interpret results, and neither lends itself to objective conclusions.'") (quoting *In re Sanofi-Aventis*

18  *Sec. Litig.*, 774 F. Supp. 2d 549, 567 & n.20 (S.D.N.Y. 2011)).

19        **Internal documents.**  The Complaint alleges that defendants' statements about the

20  evidence of glyphosate safety "gave investors a false impression that the Roundup liability risk was

21  unaffected by Monsanto's internal documents."  ¶ 267.  The notion that defendants concealed from

22  the market that Monsanto documents might bear upon glyphosate personal injury trials is

23  essentially a claim of fraudulent omission, but a "duty to provide information exists only where

24  statements were made which were misleading in light of the context surrounding the statements."

25  *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund* v. *Hewlett-Packard Co.*, 845 F.3d

26  1268, 1278 (9th Cir. 2017).  The fact that Monsanto internal documents would be admissible in

27

28

trials against Monsanto did not make it misleading for defendants to state their opinions about the safety of glyphosate and Monsanto's "meritorious defenses" to personal-injury claims.  ¶ 256.[6]

## C.      The Complaint Does Not Allege with Particularity that Defendants Made False Statements Relating to Bayer's Accounting for Glyphosate Legal Risks.

The Complaint's allegations of accounting misstatements fare no better.  Plaintiffs assert that Bayer repeatedly violated accounting guidelines after the merger by failing to report and reserve billions in provisions related to glyphosate litigation, rendering false defendants' certifications of compliance with the International Financial Reporting Standards (IFRS).  *See* ¶¶ 194-209 (discussing applicable accounting standards).  This claim fails at the outset because the Complaint does not establish any accounting violation.  Beyond that, IFRS liability disclosures and provisions reflect an inherently subjective exercise of management judgment, so they are statements of opinion that cannot support a claim because the Complaint does not plead that any defendant subjectively disbelieved Bayer's accounting.

The Complaint insists that, beginning in June 2018, Bayer should have accrued or disclosed "billions of dollars in litigation provisions" for glyphosate under International Accounting Standard (IAS) 37 because that liability was "probable" and "reliably estimable."  *See, e.g.*, ¶¶ 269, 312.  It fails to explain, however, *why* Bayer's contrary accounting determinations were wrong.  Instead, plaintiffs simply point with minimal explanation to adverse trial verdicts, a "dramatic increase in filed cases," and Bayer's eventual control over "damaging internal Monsanto documents that were used" in the initial trials.  ¶ 301.  The unspoken theory appears to be that Monsanto's losses in a handful of early trials compelled the accounting conclusion that future juries would likely deliver the same outcome in the same dollar amount.

That theory is unsupported and unsustainable.  As the Supreme Court has explained, accounting guidelines like IFRS "are far from being a canonical set of rules that will ensure

---

[6] With respect to Monsanto's internal documents, the Complaint repeatedly quotes Mr. Baumann stating after the *Johnson* verdict that there was "no communication out there that would 'qualify as a smoking gun.'"  ¶¶ 21, 128, 247.  Plaintiffs do not allege that Mr. Baumann's characterization of the internal communications was false, they do not identify anything they view as a smoking gun, and they allege no facts to suggest Mr. Baumann's opinion of Monsanto's documents was not honestly held or adequately informed, as *Omnicare* would require.  *Omnicare*, 575 U.S. at 194.

1    identical accounting treatment of identical transactions."  *Thor Power Tool Co.* v. *C.I.R.*, 439 U.S.

2    522, 544 (1979) (discussing generally accepted accounting principles (GAAP), the U.S. analogue to

3    IFRS); *see also City of Dearborn Heights*, 856 F.3d at 621 ("GAAP tolerates a range of reasonable

4    accounting treatments, leaving the choice among alternatives to management.") (internal quotation

5    and alteration omitted).  Plaintiffs never set out why their preferred accounting treatment of

6    glyphosate litigation risks was mandated, and the proposition runs squarely contrary to precedent

7    observing that "the existence of an adverse judgment alone does not imply that a litigation loss is

8    'probable.'"  *Luna* v. *Marvell Tech. Grp. Ltd.*, 2016 WL 5930655, at *5 (N.D. Cal. Oct. 12, 2016);

9    *see also In re Nvidia Corp. Sec. Litig.*, 2010 WL 4117561, at *5 (N.D. Cal. Oct. 19, 2010)

10   (dismissing claim attacking non-accrual of an allegedly "probable loss" from defective

11   manufacturing process despite detailed allegations on defendant's knowledge of the defects).

12         Moreover, even supposing that plaintiffs had pleaded facts to show that glyphosate liability

13   was necessarily "probable," their allegations of accounting violations would nevertheless fail

14   because the Complaint nowhere suggests how or why "billions of dollars" was a "reliabl[e]

15   estima[te]" of glyphosate liability beginning in June 2018.  As in *Nvidia*, plaintiffs' non-accrual

16   claim should be dismissed because the Complaint pleads "no averments as to what a 'reasonably

17   estimable' amount would have been . . . , whether [the defendant] ever attempted to calculate that

18   amount, or even how such a calculation could have been made."  2010 WL 4117561, at *8.[7]

19         Even if plaintiffs could allege accounting missteps, the assessment of contingent liabilities

20   "necessitates management judgment" concerning estimability and the likelihood of loss, ¶ 208, and

21   courts thus routinely hold that accruals and disclosure of contingent liabilities are protected

22   statements of opinion.  *See, e.g.*, *Salim* v. *Mobile Telesystems PJSC*, 2021 WL 796088, at *8

23

24   _____

25   [7] Regardless, any inferences of accounting error would be implausible given that Bayer received
     unqualified opinions from its outside auditor and never restated its books.  *See* Ex. 4 (Bayer 2018
26   Annual Report) at 16-17, 22, 264-73; Ex. 6 (Bayer 2019 Annual Report) at 18, 23, 227-33; *In re
     Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 985-86 (N.D. Cal. 2007) ("[I]n light of the
27   unqualified opinions issued [by the outside auditor] . . . the complaint fails to raise a plausible
     inference that the financial statements were misstated . . . .").
28

1  (E.D.N.Y. Mar. 1, 2021).[8]  Such statements are "not misleading just because external facts show

2  the opinion to be incorrect."  *Omnicare*, 575 U.S. at 188, 194.  Instead, they are actionable where

3  the maker of the statement did "not honestly hold the stated belief."  *City of Dearborn Heights*, 856

4  F.3d at 615 (affirming dismissal for failure to allege falsity of accounting opinion); *see also Salim*,

5  2021 WL 796088, at *8 (agreeing that "because ASC 450 and IAS 37 require entities to make a

6  judgment about whether the amount of potential loss can be reasonably estimated, the plaintiffs

7  cannot plead a violation unless they establish that [defendant's] subjective judgment in this regard

8  was false").  Plaintiffs' claim thus fails because the Complaint does not even attempt to allege that

9  any of the individual defendants *subjectively* doubted the appropriateness of Bayer's accounting

10  determination.  *See also* Point II, *infra*.

11      In sum, plaintiffs' falsity allegations with regard to statements about due diligence, the

12  safety of glyphosate, and the accounting for glyphosate legal risks fall well short of the pleading

13  requirements of the PSLRA and Rule 9(b).

14  **II.    THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER.**

15      A plaintiff asserting securities fraud must plead that each defendant "made false or

16  misleading statements either intentionally or with deliberate recklessness."  *In re Daou Sys., Inc.*,

17  411 F.3d 1006, 1015 (9th Cir. 2005); *see* 15 U.S.C. § 78u–4(b)(2).  As the Ninth Circuit has

18  explained, "deliberate recklessness" is "a form of intentional or knowing misconduct" that reflects

19  "an extreme departure from the standards of ordinary care . . . that is either known to the defendant

20  or is so obvious that the actor must have been aware of it."  *Nguyen* v. *Endologix, Inc.*, 962 F.3d

21  405, 414 (9th Cir. 2020) (internal quotation omitted).  The PSLRA further heightens plaintiffs'

22  burden in pleading scienter, requiring plaintiffs to "state with particularity facts giving rise to a

23  strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u–4(b)(2).

24  Under this standard, courts "compare the malicious and innocent inferences cognizable from the

25  facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the

26

27  ―――――――――――――――――

[8] *See also City of Dearborn Heights Act 345 Police & Fire Ret. Sys.* v. *Align Tech., Inc.*, 65 F.
Supp. 3d 840, 850 (N.D. Cal. 2014), *aff'd*, 856 F.3d 605 (9th Cir. 2017) (goodwill valuations are

28  "inherently subjective and involve management's opinion regarding fair value").

1   malicious inference is at least as compelling as any opposing innocent inference." *Zucco Partners,*

2   *LLC* v. *Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009); *see Tellabs, Inc.* v. *Makor Issues &*

3   *Rights, Ltd.*, 551 U.S. 308, 326 (2007).

4        Plaintiffs have not satisfied that elevated standard.  Far from setting out detailed facts giving

5   rise to a strong inference of scienter, the Complaint is conspicuously lacking in any allegations

6   concerning defendants' state of mind at the time of the alleged misrepresentations.  As this Court

7   has explained, the absence of a plausible motive to deceive investors "goes directly to the strength

8   of th[e] inference" of scienter.  *Zogenix*, 2020 WL 3820424, at *11 (citing *Tellabs*, 551 U.S. at

9   324).  The Complaint alleges no motive at all.  It does not present confidential witness allegations;

10  it does not identify suspicious stock sales; it does not allege accounting restatements or actual

11  defendant admissions.  Instead, with respect to each category of alleged falsehoods, the Complaint

12  relies exclusively on hindsight bias, unsupported inference, and conclusory pleading — none of

13  which supports the necessary inference of fraudulent intent.  *Id.*

14     **Due diligence.**  Plaintiffs' central theory of scienter is that, based on the size of the merger

15  and prior litigation against Monsanto concerning other chemicals, defendants "knew or recklessly

16  disregarded that the only meaningful way to assess Monsanto's [glyphosate] exposure . . . would be

17  to examine Monsanto internal documents," ¶ 328(d), and given the individual defendants' personal

18  involvement in the transaction, they "knew, or at least recklessly disregarded, that Bayer had not

19  performed adequate diligence," ¶¶ 337, 338, 339, 340.

20       This chain of conclusory assertions cannot support an inference of scienter.  Even supposing

21  plaintiffs had pleaded that Bayer *should* have reviewed some unspecified set of internal Monsanto

22  communications, the Complaint does not allege with specificity that any defendant actually knew

23  of or recklessly disregarded the existence of that purported diligence requirement.  There is nothing

24  in the record to suggest that any of the individual defendants were diligence experts or that they

25  were warned at the time of any deficiencies in the glyphosate diligence undertaken by Bayer's legal

26  advisors.  *See In re Huffy Corp. Sec. Litig.*, 577 F. Supp. 2d 968, 999 (S.D. Ohio 2008) (no scienter

27  for statement that company had conducted "extensive due diligence" where company had retained

28  professional entities to conduct due diligence).  On those facts, plaintiffs cannot create a strong

inference that any defendant intentionally mischaracterized the effectiveness of the merger diligence or that their purported disregard for diligence marked "an extreme departure from the standards of ordinary care . . . so obvious that [they] must have been aware of it." *Nguyen*, 962 F.3d at 414 (internal quotation omitted).

The decision in *City of Austin Police Ret. Sys.* v. *Kinross Gold Corp.*, 957 F. Supp. 2d 277 (S.D.N.Y. Mar. 22, 2013), is illustrative. There, the defendant CEO had inaccurately represented on a shareholder call that his company did "far more homework than one would typically see in a significant acquisition," a statement in conflict with confidential witness testimony that the company's diligence was "woefully inadequate." *Id.* at 299. The court nevertheless dismissed the complaint for failure to plead scienter because it did not allege with particularity that the defendants "knew, or had reason to know, that [the company] had done materially less homework than was customary." *Id.* The same reasoning applies here. Even if Bayer's statements about due diligence were contradicted by anything, the Complaint contains no particularized facts showing that any defendant knew, or had reason to know, that Bayer's diligence was insufficient.

Plaintiffs' threadbare allegations concerning the "size and scope" of the transaction, ¶ 333, and the individual defendants' "personal[] involve[ment]" in it, ¶¶ 334, 337, 338, 339, 340, cannot compensate for these pleading deficiencies. To be sure, the Monsanto merger was a significant transaction in which each of the individual defendants had some role. But the Complaint alleges no detail whatsoever concerning these defendants' participation in or contemporaneous insight into the diligence process, instead confining itself to vague descriptions of their general involvement in the transaction. ¶¶ 334, 337-40. Absent particularized allegations setting out how each defendant's high-level role with the company translated into his discovery of or reckless disregard for diligence deficiencies, plaintiffs cannot establish the requisite "nexus between the [allegedly] wrongful behavior and [their] knowledge." *Curry* v. *Yelp Inc.*, 875 F.3d 1219, 1228 (9th Cir. 2017).

**Evidence of glyphosate safety.** Plaintiffs also suggest that defendants' public statements about the scientific evidence on glyphosate support an inference of scienter, because defendants purportedly "admitted" they could not "determine a definitive number of studies that confirm the non-carcinogenicity of glyphosate" and "knew or recklessly disregarded that there was considerable

1  scientific evidence concluding that glyphosate could cause cancer." ¶ 331.  As explained above,

2  however, the Complaint itself refutes any notion of an admission as to the accuracy of defendants'

3  references to "800 studies," *see supra* at 11-12 — as in *Yourish* v. *California Amplifier*, plaintiffs

4  allege no statement "along the lines of 'I knew it all along.'" 191 F.3d 983, 996 (9th Cir. 1999).

5  And the Complaint contains no particularized facts to support its conclusory assertion that

6  defendants recklessly disregarded supposed links between glyphosate and cancer.

7      **Accounting for glyphosate legal risks.**  As for Bayer's supposedly faulty accounting

8  statements, the Ninth Circuit has held that "[t]he mere publication of inaccurate accounting figures,

9  or a failure to follow GAAP, without more, does not establish scienter." *DSAM Glob. Value Fund*

10  v. *Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002) (internal quotation omitted).  Rather, a

11  complaint "must allege facts demonstrating that defendants knowingly and recklessly engaged in an

12  improper accounting practice, for example, that a company's external auditors counseled against a

13  practice or that a company's CFO was aware that the practice was improper." *Lloyd* v. *CVB Fin.*

14  *Corp.*, 811 F.3d 1200, 1207 (9th Cir. 2016) (internal quotation omitted).  This requires not only

15  allegations that "[d]efendants were aware of the relevant GAAP principle and . . . how [it] was

16  being interpreted," but also that defendants' "incorrect interpretation was so unreasonable or

17  obviously wrong that it should give rise to an inference of deliberate wrongdoing." *May* v. *KushCo*

18  *Holdings, Inc.*, 2020 WL 6587533, at *5 (C.D. Cal. Sept. 25, 2020) (quoting *In re Medicis Pharm.*

19  *Corp. Sec. Litig.*, 2010 WL 3154863, at *5 (D. Ariz. Aug. 9, 2010)).

20      The Complaint alleges none of that.  Nor does it allege — as it must — "the role of the

21  individual defendants in preparing the company's accounting statements," *Lloyd*, 811 F.3d at 1207.

22  Plaintiffs instead rely entirely on the fact that several of the defendants signed quarterly

23  certifications confirming that Bayer's financial statements complied with accounting standards.

24  ¶ 268.  These "[b]oilerplate" certifications "add nothing substantial to the scienter calculus." *Zucco*

25  *Partners*, 552 F.3d at 1003-04; *see also In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142,

26  1159 (C.D. Cal. 2007) (if signatures on public filings were sufficient, it would "eviscerate[e] the

27  [PSLRA's] pleading requirements for scienter") (internal quotation omitted).

28

1   Furthermore, the limited facts in the record negate any inference of fraudulent intent with

2   respect to these certifications.  To begin, the individual defendants, far from being "counseled

3   against" Bayer's accounting treatment, were specifically reassured of its soundness by unqualified

4   audit opinions.[9]  *See id.* at 1158 (holding an "unqualified opinion highly probative of an absence of

5   scienter" where GAAP violations alleged); *Feola* v. *Cameron*, 2015 WL 12644566, at *8 (C.D.

6   Cal. Nov. 24, 2015) (same).  And any inference of scienter is further refuted by Bayer's copious

7   cautionary statements about litigation risk, *see, e.g.*, Ex. 4 (Bayer 2018 Annual Report) at 192,

8   254-56; Ex. 6 (Bayer 2019 Annual Report) at 152, 215-17, together with the full disclosure of its

9   decision to reserve *only* for the defense costs of glyphosate litigation, and not potential liability, due

10  to its inability to estimate damages.  *See* ¶¶ 276, 282, 289, 321-25; *Luna*, 2016 WL 5930655, at *8

11  ("[A]ny inference that defendants intended to deceive investors is negated by Marvell's full

12  disclosure of the CMU judgment and the company's decision not [to] accrue a reserve").  Plaintiffs

13  have thus presented no basis to infer that any defendant acted with fraudulent intent.

14                          *          *          *

15  There is also a final, even simpler reason why plaintiffs' scienter allegations fail:  "The[ir]

16  theory does not make a whole lot of sense."  *Nguyen*, 962 F.3d at 415.  The 151-page, 385-

17  paragraph Complaint never explains *why* defendants would ignore and then minimize the

18  supposedly "obvious" litigation risks, ¶ 27, save for a suggestion that "Bayer was gripped by fear of

19  missing out during a frenzy of consolidation by its agrochemical competitors," ¶ 2.  This is not a

20  plausible, let alone compelling, rationale for defendants' supposed misconduct.  Courts have

21  repeatedly rejected the notion that companies would purposely neglect diligence to engage on

22  "suicide mission" acquisitions.  *GSC Partners CDO Fund* v. *Washington*, 368 F.3d 228, 244 (3d

[9] *See* Ex. 4 (Bayer 2018 Annual Report) at 16-17, 22, 264-73; Ex. 6 (Bayer 2019 Annual Report) at 18, 23, 227-33.  As disclosed in Bayer's annual reports, Bayer's auditor specifically scrutinized and approved "the process established by [Bayer] to recognize the outcome of the judicial and extrajudicial proceedings and the presentation of a legal dispute in the balance sheet," holding "regular discussions" with Bayer's legal department to assess the Company's accounting rationale concerning glyphosate liability, and even obtaining "external attorney confirmations" of Bayer's assessments of legal risk.  Ex. 4 at 267; *see also* Ex. 6 at 230

1   Cir. 2004); *see In re HP Sec. Litig.*, 2013 WL 6185529, at *6 (N.D. Cal. Nov. 26, 2013)

2   (dismissing for failure to plead scienter where complaint "failed to establish any coherent motive as

3   to why Defendants would knowingly purchase a company for several times its actual value). The

4   more compelling inference is that Bayer undertook what it understood to be appropriate due

5   diligence on Monsanto and concluded that the evidence supported glyphosate's safety — but failed

6   to predict the significant jury verdicts that arose in the future. Such allegations of inaccurate

7   prognostication cannot supply the strong inference of fraudulent intent necessary to support a claim

8   for securities fraud. *See In re Sunpower Corp. Sec. Litig.*, 2018 WL 1863055, at *3 (N.D. Cal. Apr.

9   18, 2018) (dismissing where "even if some inference of possible wrongdoing could be drawn, it is

10  outweighed by the cogent and compelling inference that this was merely an innocent failure to

11  predict the future with complete accuracy").

12  **III.     THE COMPLAINT FAILS TO PLEAD LOSS CAUSATION.**

13           To allege loss causation, a plaintiff must plead with particularity that the "defendant's

14  misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss." *Lloyd*, 811

15  F.3d at 1210; *see also Grigsby* v. *BofI Holding, Inc.*, 979 F.3d 1198, 1206 (9th Cir. 2020) (Rule

16  9(b) requires particularized pleading of loss causation). As the Ninth Circuit recently explained,

17  this inquiry "focuses on whether a loss can be attributed to the *very facts* about which the defendant

18  lied." *Wochos* v. *Tesla, Inc.*, 985 F.3d 1180, 1197 (9th Cir. 2021) (emphasis added, internal

19  quotation omitted); *see also Dura Pharms., Inc.* v. *Broudo*, 544 U.S. 336 (2005).

20           Plaintiffs seek to satisfy this standard by pointing to stock drops following a CBS News

21  report on June 19, 2018, ¶ 347, three adverse decisions in glyphosate personal-injury trials between

22  August 2018 and March 2019, ¶¶ 348, 350, 351, and Bayer's announcement and the court's partial

23  rejection of a proposed Bayer settlement of glyphosate litigation in June and July 2020, ¶ 353. The

24  Complaint fails to present particularized allegations linking any of these events to defendants'

25  alleged misrepresentations.

26           **CBS News report.** Plaintiffs assert that the falsity of defendants' statements about the

27  adequacy of its due diligence "began to emerge" when CBS News reported that Dewayne Johnson,

28  a glyphosate plaintiff, "stated he could show scientific evidence that his exposure to Roundup

1   caused his cancer and that Monsanto allegedly knew about the link, failed to warn people and

2   buried evidence from the public."  ¶ 347.  But the Complaint itself alleges that internal documents

3   produced in Roundup litigation were publicly disclosed in March 2017, supposedly "reveal[ing]

4   that Monsanto had known about glyphosate's potential toxicity for years and had aggressively

5   fought to conceal the risks from regulators and the public," ¶ 14, and that the *New York Times*,

6   *Bloomberg*, and *Reuters* had all run stories on these so-called "Monsanto Papers."  ¶ 106.  The CBS

7   News report thus cannot serve as a corrective disclosure.  *See Bonanno* v. *Cellular Biomedicine*

8   *Grp., Inc.*, 2016 WL 2937483, at *5 (N.D. Cal. May 20, 2016) ("New information is critical to

9   demonstrating loss causation . . . .");  *cf. In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d

10  Cir. 2010) ("A negative journalistic characterization of previously disclosed facts does not

11  constitute a corrective disclosure of anything but the journalists' opinions.").[10]

12          **Adverse glyphosate decisions.**  Plaintiffs next point to the adverse jury verdicts in the

13  *Johnson* and *Hardeman* cases and the denial of Bayer's post-trial motions in *Johnson* as corrective

14  disclosures that "raised concerns that the Defendants' due diligence may have been inadequate, that

15  the due diligence did not encompass Monsanto's emails heavily relied upon by [plaintiffs], and that

16  the financial exposure and risks from the Roundup Litigation were substantial."  ¶ 348; *see* ¶¶ 349-

17  51.  Again, however, the Monsanto emails that supposedly revealed defendants' alleged diligence

18  lapses had to have become public before the *conclusion* of the trials, when the evidence was

19  presented in open court, and the Complaint alleges that "news outlets and analysts widely covered

20  the *Johnson* trial."  ¶ 112.  The jury verdicts thus were not corrective disclosures, because they did

---

22  [10] Moreover, if CBS's report *were* a corrective disclosure, then plaintiffs' claims as to statements
23  made before July 17, 2018 would be untimely because they were filed more than "2 years after the
    discovery of the facts constituting the violation."  28 U.S.C. § 1658(b)(1).  By definition, a plaintiff
24  asserting corrective disclosure "allege[s] that the defendant's fraud was revealed to the market" by
    that disclosure.  *Grigsby*, 979 F.3d at 1205(internal quotation omitted).  Yet plaintiffs waited until
25  July 17, 2020 — more than two years — to file suit.  They cannot maintain that they did not
    discover the alleged fraud in June 2018 but that the market did, prompting a large stock drop.  *See*
26  ¶ 102 ("During the Pre-Closing Period [*i.e.*, prior to June 7, 2018], evidence of Monsanto's massive
    exposure in the Roundup Litigation was slowly revealed publicly for the first time, as the first
27  Roundup lawsuits progressed through discovery and then trial."); ¶ 14 (noting that the "Monsanto
28  Papers" were released in March 2017).

1   not "relate back to the misrepresentation," but instead to "other negative information about the

2   company" — namely, the fact that significant damages had been awarded against Monsanto.

3   *Grigsby*, 979 F.3d at 1208 (internal quotation omitted).

4           Nor can plaintiffs paper over this causal disconnect by recasting the jury verdicts as a

5   "materialization" of any risk allegedly concealed by defendants.  To prevail under that theory,

6   plaintiffs must present particularized pleadings that show defendants' alleged "misstatements and

7   omissions concealed [a] price-volatility risk (or some other risk) that materialized and played some

8   part in diminishing the market value of a security."  *Inchen Huang* v. *Higgins*, 2019 WL 1245136,

9   at *16 (N.D. Cal. Mar. 18, 2019) (internal quotation omitted) (noting that the Ninth Circuit has not

10  had occasion to adopt "materialization of risk" as a theory of loss causation).  Defendants did not

11  and could not have "concealed" the risk that they would suffer losses in public trials.  *See, e.g.*,

12  *Yaron* v. *Intersect ENT, Inc.*, 2020 WL 6750568, at *10 (N.D. Cal. June 19, 2020) (dismissing for

13  failure to allege loss causation where plaintiff failed to plead that misstatements "concealed any

14  *hidden* risk . . . as opposed to known risks"); *see also* ¶¶ 113-16 (describing public record of

15  *Johnson* trial).

16          **Glyphosate settlement.**  Lastly, plaintiffs rely upon the June 2020 announcement of a

17  $10.9 billion settlement of glyphosate claims and the court's later rejection of the proposed

18  mechanism for resolving future claims.  ¶ 353.  Again, these were not corrective disclosures, not

19  least because subsequent disclosure (or accrual) of litigation liability does "not reveal any

20  inaccuracy in [a company's] prior financial statements."  *Luna*, 2016 WL 5930655, at *8.  Nor was

21  either a "materialization" of any risk concealed by defendants — Bayer had consistently disclosed

22  glyphosate litigation as a contingent liability throughout the alleged class period, thus announcing

23  to the market that it believed the possibility of damages to be more than remote.  ¶ 207; *see Lentell*

24  v. *Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) (materialized risk demonstrates probable

25  loss where it "would be perceived as remote or highly unlikely by one believing the fraud")

26  (internal quotation omitted).

27          To be sure, Bayer's ADR price declined after the announcement of the settlement and its

28  rejection by the court, just as it had fallen in reaction to the earlier adverse litigation outcomes.  But

1  the securities laws exist to protect investors "against those economic losses that misrepresentations

2  actually cause" — "not to provide investors with broad insurance against market losses." *Dura*,

3  544 U.S. at 345.

4  **IV.    THE COMPLAINT FAILS TO PLEAD A VIOLATION OF SECTION 20(A).**

5     Because the Complaint pleads no underlying violation of the Exchange Act, plaintiffs'

6  Section 20(a) claims must also be dismissed. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1113 n. 6

7  (9th Cir. 2010).

8  **CONCLUSION**

9     The Court should dismiss the Complaint with prejudice for the reasons stated above.

10

11  Dated:    March 22, 2021

12                                       By:    _____*/s/ Jordan Eth*_____
                                              Jordan Eth (CA SBN 121617)
13                                            JEth@mofo.com
                                              Mark R.S. Foster (CA SBN 223682)
14                                            MFoster@mofo.com
                                              **MORRISON & FOERSTER LLP**
15                                            425 Market Street
                                              San Francisco, CA  94105
16                                            Telephone:  (415) 268-7126
                                              Facsimile:  (415) 268-7522
17
                                              William Savitt (*pro hac vice*)
18                                            John F. Lynch (*pro hac vice*)
                                              Noah B. Yavitz (*pro hac vice*)
19                                            John R. Rady (*pro hac vice*)
                                              **WACHTELL, LIPTON, ROSEN & KATZ**
20                                            51 West 52nd Street
                                              New York, NY  10019
21                                            Telephone:  (212) 403-1000
                                              Facsimile:  (212) 403-2000
22
                                              *Attorneys for defendants Bayer*
23                                            *Aktiengesellschaft, Werner Baumann, Werner*
                                              *Wenning, Liam Condon, Johannes Dietsch, and*
24                                            *Wolfgang Nickl*

25

26

27

28