1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHEET METAL WORKERS NATIONAL
PENSION FUND, et al.,

Plaintiffs,

v.

BAYER AKTIENGESELLSCHAFT, et al.,

Defendants.

Case No. 20-cv-04737-RS

**ORDER DENYING DEFENDANTS'
MOTION TO DISMISS**

This putative class action alleges violations of the Securities Exchange Act of 1934 (the "Exchange Act") in relation to Bayer's acquisition of Monsanto. Plaintiffs aver that Defendants made misstatements concerning the acquisition and concerning glyphosate, the active ingredient in Monsanto's herbicide Roundup. Defendants move to dismiss for failure to plead falsity, scienter, and loss causation. Defendants' alleged misleading statements fall into three categories: statements about Bayer's due diligence when acquiring Monsanto, statements concerning the safety of glyphosate, and the accounting for legal risks related to Roundup.

Although Plaintiffs have adequately pled falsity and scienter as to Bayer's due diligence efforts, they have not done so as to statements concerning the safety of glyphosate and accounting for legal risks related to Roundup. Further, Plaintiffs have adequately pled loss causation, but not all of the pled corrective disclosures qualify as such. Despite these shortcomings, the Plaintiffs have successfully pled claims under Sections 10(b) and 20(a) of the Exchange Act, so the motion to dismiss is denied.

United States District Court
Northern District of California

United States District Court
Northern District of California

## I. Factual and Procedural Background[1]

On July 15, 2020, City of Grand Rapids General Retirement System and City of Grand Rapids Police & Fire Retirement System filed a class complaint in this court against Bayer Aktiengesellschaft ("Bayer") and individual defendants, all of whom serve or previously served as executives and as members of Bayer's Board of Management or Supervisory Board (collectively, the "Defendants"). (Dkt. 1). On October 21, 2020, the court appointed the Sheet Metal Workers National Pension Fund and International Brotherhood of Teamsters Local No. 710 Pension Fund as Lead Plaintiff pursuant to the PSLRA. (Dkt. 44). On January 19, 2021, Plaintiffs filed an Amended Class Action Complaint ("Complaint").[2] (Dkt. 47). The Complaint asserted claims under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated under the Exchange Act, including Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Rule 10b-5").

These claims stem from Bayer's acquisition of Monsanto. Bayer made an offer to acquire Monsanto in May 2016 and signed a merger agreement with Monsanto in September 2016. The two companies closed the acquisition in June 2018. Acquiring Monsanto expanded Bayer's agrochemical business, but also came with risks. Before, during, and after the acquisition, Monsanto was, and remains today, embroiled in litigation alleging that the chemical glyphosate, the active ingredient in Monsanto's Roundup product, causes cancer. Bayer maintains that it conducted due diligence as to Monsanto's operations, including the legal risks associated with the acquisition.

In the months after the acquisition closed, lawsuits against Monsanto concerning glyphosate reached trial, resulting in verdicts against Monsanto and damages of $78 million and

---

[1] The factual background is based on the averments in the Complaint (which must be taken as true for purposes of this motion) and documents of which the Court may take judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Plaintiffs' request to substitute Exhibits 1A and 1B to the Declaration of Carol V. Gilden in Support of Plaintiffs' Motion for Administrative Relief Under Local Rule 7-11, (Dkt. 83), and for the Court to consider these exhibits when ruling on Defendants' motion to dismiss is **GRANTED**.

[2] References to "¶__" are to the Amended Class Action Complaint ("Complaint"). (Dkt. 47).

United States District Court
Northern District of California

1  $80 million in the first two trials. These verdicts spurred more lawsuits, and many were

2  consolidated via the multi-district litigation process in the Northern District of California. When

3  Bayer announced in June 2020 that it would pay up to $10.9 billion in a global settlement for

4  current and future Roundup claims, the presiding judge indicated that he was unlikely to approve

5  the settlement as to future claims.

6       Following the merger, Bayer's American deposit receipts dropped in price significantly.

7  This complaint was filed on July 15, 2020, just days after the judge indicated he would likely not

8  approve the settlement, and avers that over a four-year period, from May 2016 to June 2020, the

9  Defendants made dozens of false or misleading statements. In their complaint, Plaintiffs aver that

10  Defendants deceived investors about lapses in Bayer's due diligence before pursuing a merger

11  with Monsanto, the safety of glyphosate, and Bayer's accounting for legal liability concerning

12  glyphosate.

13       **II. Legal Standard**

14       Rule 12(b)(6) governs motions to dismiss for failure to state a claim. A complaint must

15  contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R.

16  Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient

17  factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

18  U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A Rule

19  12(b)(6) motion tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of*

20  *Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Thus, dismissal under Rule 12(b)(6)

21  may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient

22  facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners*

23  *LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (internal quotation marks and citation omitted). When

24  evaluating such a motion, courts generally "accept all factual allegations in the complaint as true

25  and construe the pleadings in the light most favorable to the nonmoving party.*" Knievel v. ESPN*,

26  393 F.3d 1068, 1072 (9th Cir. 2005). However, "[t]hreadbare recitals of the elements of a cause of

27  action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In

28

1   actions governed by the PSLRA, such as this one, these general standards are subject to further

2   refinement, as discussed in more detail below.

3                                    **III. Discussion**

4           Section 10(b) of the Exchange Act makes it unlawful for "any person ... [t]o use or

5   employ, in connection with the purchase or sale of any security registered on a national securities

6   exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules

7   and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for

8   the protection of investors." 15 U.S.C. § 78j(b). Pursuant to Section 10(b), the SEC has

9   promulgated Rule 10b–5, which provides, *inter alia*, that "[i]t shall be unlawful for any person ...

10  [t]o engage in any act, practice, or course of business which operates or would operate as a fraud

11  or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. §

12  240.10b–5(c).

13          To establish a violation of Rule 10b–5, a plaintiff must demonstrate "(1) a material

14  misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a

15  security, (4) transaction and loss causation, and (5) economic loss." *In re Daou Systems, Inc. Sec.*

16  *Litig.*, 411 F.3d 1006, 1014 (9th Cir. 2005). To survive a motion to dismiss, "a complaint stating

17  claims under section 10(b) and Rule 10b–5 must satisfy the dual pleading requirements of Federal

18  Rule of Civil Procedure 9(b) and the PSLRA." *Zucco Partners v. Digimarc Corp.*, 552 F.3d 981,

19  990 (9th Cir. 2009).

20          Defendants argue that Plaintiffs' claims are grounded in fraud-by-hindsight, and that

21  Plaintiffs' claim under Section 10(b) of the Exchange Act should be dismissed for failure to plead

22  falsity, scienter, and loss causation. Defendants also argue that Plaintiffs' claim under Section

23  20(a) of the Exchange Act should be dismissed because the Section 10(b) claim fails. As explained

24  below, Defendants' motion is denied.

25      **A. Falsity**

26          To allege falsity under the PSLRA, a complaint must "specify each statement alleged to

27  have been misleading, the reason or reasons why the statement is misleading, and, if an allegation

28

United States District Court
Northern District of California

1    regarding the statement or omission is made on information and belief, . . . state with particularity

2    all facts on which that belief is formed." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir.

3    2002) (quoting 15 U.S.C. § 78u–4(b)(1)) (quotation marks omitted). A statement is misleading "if

4    it would give a reasonable investor the 'impression of a state of affairs that differs in a material

5    way from the one that actually exists.'" *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985

6    (9th Cir. 2008) (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).

7        Defendants argue that the Plaintiffs have not pled falsity because their averments for each

8    of the three categories of misstatements are dependent on later jury verdicts against Monsanto,

9    which do not have a bearing on whether statements were false when made. Plaintiffs argue that

10   they have pled sufficient facts supporting their claims that the statements were false when made.

11       i. Due Diligence

12       Plaintiffs have adequately pled that Defendants made misleading statements and omissions

13   concerning Bayer's due diligence efforts prior to the Monsanto acquisition. In September 2016,

14   Werner Baumann, Bayer's CEO, stated Bayer had "confirmed in due diligence" the deal's

15   "significant potential for sales and cost synergies" of $1.5 billion. ¶¶ 97, 224-25. The following

16   year, in July 2017 Baumann stated in an earnings call that "the Monsanto people went out of their

17   way to provide us with transparency, data and visibility to the most critical questions we had." ¶

18   228. Plaintiffs allege that these statements were misleading, because Bayer had not reviewed any

19   internal Monsanto documents and had accepted at face value Monsanto's characterization of its

20   litigation risks. ¶ 230.

21       Plaintiffs aver that Bayer continued to provide misleading statements to investors as

22   closing approached. Baumann stated at Bayer's 2018 Annual General Meeting that "[t]he

23   acquisition is as just attractive today as we assessed it to be 2 years ago[,]" ¶ 234, and in August

24   2018 stated "[a]ll I can say about this is that internal documents are sometimes cited out of context

25   on the plaintiff's side" when asked by a journalist about Monsanto's internal documents. ¶ 235.

26       Here, Defendants' statements concerning its due diligence could have "give[n] a

27   reasonable investor the 'impression of a state of affairs that differs in a material way from the one

United States District Court
Northern District of California

that actually exists,'" namely that Bayer had assessed Monsanto's litigation risks, and had reviewed non-public information to inform that review. *Berson v. Applied Signal Tech.,* 527 F.3d at 985 (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d at 1006). Defendants correctly argue that the mere failure to conduct due diligence is a claim of mismanagement that is not by itself an actionable securities fraud claim. *See Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 476 (1977). Plaintiffs, though, do more than just aver that Defendants did not fully conduct due diligence; instead, they aver that Defendants assured investors about their diligence, even though their diligence was less than what an investor would believe their statement meant. Deception concerning mismanagement is actionable under § 10(b), *see, e.g.*, *In re Wells Fargo Sec. Litig.*, 12 F.3d 922, 927 (9th Cir. 1993), *superseded by statute on other grounds*, 15 U.S.C. § 78u-4(b)(1), and misleading statements concerning due diligence may be actionable in securities fraud litigation, *see In re RAIT Fin. Tr. Sec. Litig.*, 2008 WL 5378164, at *6 (E.D. Pa. Dec. 22, 2008); *In re Cendant Corp. Litig.*, 60 F. Supp. 2d 354, 371–72 (D.N.J. 1999); *Freedman v. Value Health, Inc.*, 958 F. Supp. 745, 757 (D. Conn. 1997).

    ii. Statements about glyphosate safety

    Defendants argue that any statements concerning glyphosate safety were statements of opinion, and that the Complaint alleges no facts to demonstrate that these opinions were false. Plaintiffs argue that the Defendants' false statements stemmed not from statements about whether or not glyphosate is safe, but rather that Defendants made statements saying "the scientific evidence unequivocally shows glyphosate is non-carcinogenic," Opp. to Motion to Dismiss, Dkt. 73 at p. 15, when the scientific evidence was mixed. Plaintiffs aver two key types of misstatements concerning glyphosate safety: (1) that Bayer falsely represented the nature of 800 studies, indicating that they all confirmed that glyphosate did not cause cancer, when in reality many of those studies did not do so, and (2) that the glyphosate alone was no different in terms of carcinogenicity than the Roundup formulation.

    As for the studies, Plaintiffs have not adequately pled falsity as to Defendants' statements about the nature of the 800 studies. Plaintiffs point to statements in which Baumann and Bayer

tout the existence of 800 studies confirming that glyphosate is safe and does not cause cancer. ¶¶ 131, 174, 240, 253, 256, 257–58, 260–61. Plaintiffs argue that these statements were misleading because "the vast majority" of those studies did not address carcinogenicity. ¶ 175. Plaintiffs have failed, though, to plead facts to establish that most of the studies did not address carcinogenicity. Contrary to Plaintiffs' interpretation, when Bayer stated that the 800 studies were "not limited to carcinogenicity," ¶ 175, it is not tantamount to an admission that the studies were unrelated to carcinogenicity. Further, Plaintiffs aver that many of the studies were discussed in the International Agency for Research on Cancer's ("IARC") report on glyphosate, and "supported IARC's conclusion that glyphosate was a probable cause of cancer in humans." ¶ 23. Plaintiffs, however, do not point to any specific studies that were discussed in the IARC report as supporting its conclusion on carcinogenicity and that were also included in Defendants' references to "800 studies." Further, that Baumann revealed in 2020 that "629 of these [studies] were carried out by Monsanto," ¶ 177, does not establish falsity, because Plaintiffs do not aver that Defendants made misleading statements about the origins or impartiality of the 800 studies.

As for the differences between glyphosate and Roundup, Plaintiffs have pled that Monsanto was aware the Roundup formulation was possibly more dangerous than glyphosate, ¶ 141, and that Baumann stated during a conference call, "there is no difference" between glyphosate and the Roundup formulation, ¶ 250. By showing that an executive's statement was in contradiction to Monsanto's own assessment of the science, Plaintiffs have adequately pled a material misstatement concerning the safety risks of Roundup as compared to glyphosate.

### iii. Accounting for Risk of Litigation Losses

Plaintiffs aver in their Complaint that Bayer violated accounting guidelines by failing to report and reserve provisions related to possible future liability for glyphosate litigation, which rendered their certifications of compliance with the International Financial Reporting Standards (IFRS) inaccurate. Defendants argue that (1) Plaintiffs cannot prove any accounting violation, and (2) that the IFRS liability disclosures are statements of opinions, and the Complaint does not aver

1    that any defendant disbelieved the accounting.

2         A false or misleading certification that statements complied with applicable accounting

3    standards can establish §10(b) liability. *See Ponce v. S.E.C.*, 345 F.3d 722, 734 (9th Cir. 2003). A

4    plaintiff, however, must put forth factual allegations to establish that a statement was fraudulent,

5    rather than "a permissible judgment call." *Luna v. Marvell Tech. Group Ltd.*, 2016 WL 5930655,

6    *5 (N.D. Cal. Oct. 12, 2016). The Complaint explains that International Accounting Standard

7    ("IAS") 37 required Bayer to account for litigation risks when an "economic outflow" was

8    "probable" and a reliable estimate could be made. Although an economic outflow due to litigation

9    may have likely been probable, it is unclear whether a reliable estimate could be made until the

10   formulation of the proposed global settlement. Plaintiffs provide no support for their assertion that

11   Defendants were required to account for at least some measure of liability, even if they could not

12   reliably estimate the total litigation liability. Thus, Plaintiffs have failed adequately to plead falsity

13   as to Defendants' accounting for litigation risks.

14   **B.  Scienter**

15        Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *See*

16   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (internal quotation marks

17   and citation omitted). "[T]he complaint must allege that the defendants made false or misleading

18   statements either intentionally or with deliberate recklessness." *In re Daou Systems*, 411 F.3d at

19   1015. To plead scienter adequately under the PSLRA, the complaint must "state with particularity

20   facts giving rise to a strong inference that the defendant acted with the required state of mind." 15

21   U.S.C. § 78u–4(b)(2)(A); *see also Zucco Partners,* 552 F.3d at 991. To qualify as a "strong

22   inference," the Supreme Court has held, "an inference of scienter must be more than merely

23   plausible or reasonable[.]" *Tellabs*, 551 U.S. at 314. When determining whether there are

24   sufficient allegations of scienter, courts "must consider the complaint in its entirety" and inquire

25   "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not

26   whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 322–23

27   (emphasis in original). Moreover, courts must take into account plausible opposing inferences. *Id.*

28

United States District Court
Northern District of California

1    at 323. A complaint will survive a motion to dismiss "only if a reasonable person would deem the

2    inference of scienter cogent and at least as compelling as any opposing inference one could draw

3    from the facts alleged." *Id.* at 324. "Falsity and scienter in private securities fraud cases are

4    generally strongly inferred from the same set of facts[.]." *In re Daou Systems*, 411 F.3d at 1015

5    (internal quotation marks and citation omitted). The existence of a motive is relevant, but not

6    dispositive, to establishing scienter. *See Matrixx Initiatives*, *Inc. v. Siracusano*, 563 U.S. 27, 48

7    (2011). Defendants argue that Plaintiffs have not pled scienter as to each of the three types of

8    misleading statements because the complaint contains no facts indicating knowledge of falsity or

9    deliberate recklessness as to truth or falsity.

10           i. Due Diligence and Statements about Glyphosate Safety

11           Plaintiffs have pled a motive for the alleged false statements from Defendants: that Bayer

12   and its executives desired to remain competitive in the agrochemical business by acquiring

13   Monsanto, despite serious risks associated with the merger.  ¶¶ 2, 58–59. Although this motive is

14   not dispositive, *Matrixx Initiatives*, 563 U.S. at 48, the statements in conjunction with the motive

15   adequately plead scienter.

16           Plaintiffs have alleged with particularity that the Defendants "knew, or had reason to

17   know, that [the company] had done materially less homework than was customary." *City of Austin*

18   *Police Ret. Sys.* v. *Kinross Gold Corp.*, 957 F. Supp. 2d 277, 299 (S.D.N.Y. Mar. 22, 2013). The

19   Complaint alleges that Baumann had a history of reckless due diligence practices, including the

20   failed acquisition of Merck OTC. ¶¶ 12, 73. The Complaint also alleges that Baumann was

21   focused on acquiring Monsanto, despite known reputational risks, before he became CEO. ¶¶ 59,

22   61. Defendants also had an opportunity to review additional information; the Roundup litigation

23   was already pending while the merger was underway, and Monsanto produced internal documents

24   in discovery before the merger closed. Given the "magnitude of the problems with the merger

25   [and] the rapidity with which those problems became apparent," *Freedman,* 958 F. Supp. at 758,

26   Plaintiffs have raised an inference that Defendants knew their statements were misleading, or were

27

28                                                                    ORDER DENYING MOTION TO DISMISS
                                                                      CASE NO.  20-cv-04737-RS

deliberately reckless to the possibility.

Defendants argue that Plaintiffs' pled motive is not plausible, because they cannot explain why Defendants would choose to fool investors about risks of the acquisition rather than making an informed judgment about them. Defendants' argument, though, is undercut by the array of negative opinions on the acquisition at the time of the deal, not just in hindsight following Monsanto's litigation losses. Plaintiffs point to analysts who, at the time of the acquisition, saw the deal as a "value destructive process" and "unconvincing from a strategic angle," ¶ 65, and that shareholders doubted the merger so much that they called for a shareholder vote, ¶ 66–67. The Complaint alleges more than that the Monsanto deal was bad in hindsight; instead, it alleges that the Defendants advanced in pursuit of the merger despite being aware that acquiring Monsanto brought significant risks, all the while assuring investors they had fully assessed those risks themselves.

### ii. Statements About Glyphosate Safety

Defendants argue that (1) there was no admission by Bayer conceding that not all its referenced studies address carcinogenicity, and (2) there are no particularized facts to support the allegation that Defendants recklessly disregarded links between glyphosate and cancer. Plaintiffs offer no response to Defendants' arguments concerning scienter as to statements about glyphosate safety risks. The Complaint does not "state with particularity facts giving rise to a strong inference" that Defendants acted intentionally or with deliberate recklessness when making statements about glyphosate safety. 15 U.S.C. § 78u–4(b)(2).

### iii. Accounting for Risk of Litigation Losses

Plaintiffs have not alleged with particularity the falsity of Bayer's accounting for the risk of litigation losses, as Bayer could not have calculated with a reasonable certainty the extent of litigation losses. Given this failure, Plaintiffs have also not alleged with particularity an intent to "deceive, manipulate, or defraud," *Tellabs*, 551 U.S. at 319, when accounting for litigation risk.

### C. Whether Plaintiffs Have Adequately Pled Loss Causation

Defendants argue that Plaintiffs have not alleged with particularity that drops in stock price

United States District Court
Northern District of California

1    following the adverse litigation results were due to the false statements about due diligence and

2    glyphosate risks, as opposed to the market's reaction to the trial results. Plaintiffs argue that the

3    trial verdicts, along with other events, were corrective disclosures that informed the public about

4    the risks in acquiring Monsanto, and thus they have adequately pled loss causation.

5        Loss causation is "a causal connection between the material misrepresentation and the

6    loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). A plaintiff may plead loss

7    causation by identifying a "corrective disclosure," in which the "practices that the plaintiff

8    contends are fraudulent were revealed to the market and caused the resulting losses." *Metzler Inv.*

9    *GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008).[3]

10       Plaintiffs plead six corrective disclosures: (1) a June 19, 2018 CBS news report that

11   described Mr. Johnson's trial as a bellwether and stated that the court would permit Mr. Johnson

12   to introduce evidence Monsanto concealed links between Roundup and cancer; (2) the *Johnson*

13   verdict; (3) the trial court's denial of Monsanto's request for new trial in *Johnson*; (4) the

14   *Hardeman* verdict; (5) Bayer's announcement of the $10.9 billion settlement; and (6) the judge's

15   indication that he would not approve the settlement. Plaintiffs argue that these events are

16   corrective disclosures because they showed that Bayer's exposure in litigation was greater than

17   they portrayed. Defendants argue that none of these events are corrective disclosures.

18       First, Defendants argue that the CBS news report cannot constitute a corrective disclosure

19   because the news story only revealed information from internal Monsanto documents that had

20   been disclosed weeks earlier. Plaintiffs argue that this report "assembled for the first time several

21   critical facts suggesting that Monsanto's exposure in the Roundup litigation was greater than

22   Defendants had claimed[.]" Opp. to Motion to Dismiss, Dkt. 73 at 26. Other news outlets,

23   however, had already reported on these documents. "New information is critical to demonstrating

---

[3] Plaintiffs also plead "materialization of the risk," which means that the alleged
misrepresentations concealed the risk "that materialized and played some part in diminishing the
market value of a security." *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730
F.3d 1111, 1120 (9th Cir. 2013). Although other circuits have recognized materialization of the
risk as a method to plead loss causation, the Ninth Circuit has not. *Id.* at 1122 n.5.

*United States District Court*
*Northern District of California*

loss causation because it is assumed that the 'market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations.'" *Bonanno v. Cellular Biomedicine Grp., Inc.*, No. 15-CV-01795-WHO, 2016 WL 2937483, at *5 (N.D. Cal. May 20, 2016) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988)). As there is not an indication that the information in the CBS report was new, as opposed to an assembly of previously available information, the news report is not a properly pled corrective disclosure.

The other events, however, are properly pled corrective disclosures. An adverse decision at trial—such as the *Johnson* and *Hardeman* verdicts, and the denial of Monsanto's request for a new trial in *Johnson*—may constitute a corrective disclosure.[4] Until a verdict in one of the cases, investors would have viewed the links between Roundup and cancer as "unproven, untested allegations," *Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*, 496 F. Supp. 3d 952, 970 (E.D. Va. 2020), especially when Monsanto had denied any link between cancer and its product. Defendants argue that a jury verdict not containing factual findings cannot serve as a corrective disclosure, citing a footnote in *Jeld-Wen* explaining that the district judge's opinion, not the jury verdict, disclosed the facts underpinning an antitrust violation. *See id.* at 969 n.18. In this case, however, Plaintiffs allege not just that Bayer misled investors as to the links between cancer and Roundup, but also misled investors as to the litigation risks related to Monsanto. Further, a verdict implies that a link between Roundup and cancer was sufficiently credible to find in favor of the plaintiff, even if the jury did not make a specific factual finding. Adverse litigation decisions disclosed to investors that Monsanto faced a serious risk in litigation.

Similarly, the settlement developments provided new information to investors. The global settlement announcement provided an estimate of future liability, which stood in contrast to Monsanto and Bayer's early statements that it did not expect significant legal liability related to Roundup. The judge's indication that he may reject the settlement provided further information,

---

[4] While the trial verdicts constitute corrective disclosures, they do not support the Defendants' proposition that they render this case an attempt to plead fraud by hindsight. Plaintiffs' claims will rise or fall on whether the statements were false when made.

that the expected total liability in the proposed settlement was not, in fact, the total liability Bayer could face. These developments provided new information to investors concerning Bayer's litigation exposure related to its acquisition of Monsanto.

### IV. Conclusion

For the foregoing reasons, Defendants' motion is denied. Although not all of Plaintiffs' pled misstatements meet the pleading standards for falsity or scienter, Plaintiffs have adequately stated a claim under Section 10(b) of the Exchange Act. As Plaintiffs have adequately pled an underlying violation of the Exchange Act, the motion to dismiss as to Plaintiffs' Section 20(a) claims is also denied. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1113 n.6 (9th Cir. 2010). While the motion to dismiss is denied, certain theories Plaintiffs have advanced under the 10(b) claim are not viable, and therefore unless and until Plaintiffs successfully amend the Complaint those theories are foreclosed as the case moves forward.

**IT IS SO ORDERED**.

Dated: October 19, 2021

RICHARD SEEBORG
Chief United States District Judge