Jordan Eth (CA SBN 121617)
JEth@mofo.com
Mark R.S. Foster (CA SBN 223682)
MFoster@mofo.com
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA  94105
Telephone:  (415) 268-7126
Facsimile:  (415) 268-7522

William Savitt (*pro hac vice*)
John F. Lynch (*pro hac vice*)
Noah B. Yavitz (*pro hac vice*)
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, NY  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000

*Attorneys for Defendants Bayer
Aktiengesellschaft, Werner Baumann,
Werner Wenning, Liam Condon,
Johannes Dietsch, and Wolfgang Nickl*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| SHEET METAL WORKERS' NATIONAL PENSION FUND and INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 710 PENSION FUND, individually and as Lead Plaintiffs on behalf of all others similarly situated, and<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS PENSION FUND OF EASTERN PENNSYLVANIA AND DELAWARE, individually and as Named Plaintiff, on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>     v.<br><br>BAYER AKTIENGESELLSCHAFT, WERNER BAUMANN, WERNER WENNING, LIAM CONDON, JOHANNES DIETSCH, and WOLFGANG NICKL,<br><br>         Defendants. | Case No.:  3:20-cv-04737-RS<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF DENIAL OF MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br><u>CLASS ACTION</u><br><br>Hearing:  No hearing set per L.R. 7-9(d)<br>Judge:  Richard Seeborg |

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants Bayer Aktiengesellschaft, Werner Baumann, Werner Wenning, Liam Condon, Johannes Dietsch, and Wolfgang Nickl will, and hereby do, move pursuant to Northern District of California Civil Local Rule 7-9(b) for leave to file a motion for reconsideration of the Court's October 19, 2020, Order Denying Defendants' Motion to Dismiss (the "Order," Dkt. No. 90).  Pursuant to Local Rule 7-9(d), no response to this Motion for Leave need be filed and no hearing held unless ordered by the Court.

As discussed in the Memorandum of Points and Authorities submitted herewith, the Court should grant leave to file a motion for reconsideration because the Order manifestly fails to consider material facts and dispositive legal arguments that were presented to the Court before the Order issued.  Civil L.R. 7-9(b)(3).  The Motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities and accompanying appendix, the papers and pleadings on file in the action, and such other written or oral argument as may be presented before the Court takes the Motion under submission.

Dated:    November 2, 2021

By:    _/s/ Jordan Eth_
Jordan Eth (CA SBN 121617)
JEth@mofo.com
Mark R.S. Foster (CA SBN 223682)
MFoster@mofo.com
**MORRISON & FOERSTER**
425 Market Street
San Francisco, CA  94105
Telephone:  (415) 268-7126
Facsimile:  (415) 268-7522

William Savitt (*pro hac vice*)
John F. Lynch (*pro hac vice*)
Noah B. Yavitz (*pro hac vice*)
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, NY  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000

*Attorneys for Defendants Bayer Aktiengesellschaft, Werner Baumann, Werner Wenning, Liam Condon, Johannes Dietsch, and Wolfgang Nickl*

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ............................................................................................................................... 1

I.   THE ORDER'S CONCLUSIONS WITH RESPECT TO THE ALLEGED FALSITY OF DEFENDANTS' STATEMENTS ABOUT DUE DILIGENCE FAIL TO CONSIDER MATERIAL FACTS AND DISPOSITIVE LAW ............................................. 1

   A.   The Complaint does not adequately plead the falsity of statements about diligence that Bayer made before the *Johnson* verdict. .................................................... 2

   B.   The Complaint does not adequately plead the falsity of statements about diligence that Bayer made after the *Johnson* verdict. ...................................................... 4

II.  THE ORDER'S CONCLUSION WITH RESPECT TO SCIENTER FAILS TO CONSIDER DISPOSITIVE LAW. ............................................................................. 5

CONCLUSION .......................................................................................................................... 7

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys.* v. *Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017)........................................................................... 4, 5 n.3

*Freedman* v. *Value Health, Inc.*,
958 F. Supp. 745 (D. Conn. 1997) ...................................................................... 7 n.6

*In re HP Sec. Litig.*,
2013 WL 6185529 (N.D. Cal. Nov. 26, 2013)............................................................ 6

*Lake* v. *Zogenix, Inc.*,
2020 WL 3820424 (N.D. Cal. Jan. 27, 2020) ............................................................ 6

*Lipton* v. *Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002)............................................................................... 5

*Omnicare, Inc.* v. *Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175, 194 (2015)..................................................................................... 4

*Prodanova* v. *H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021).............................................................................. 6

*S. Ferry LP, No. 2* v. *Killinger*,
542 F.3d 776 (9th Cir. 2008)............................................................................ 5 n.4

*Wochos* v. *Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021)............................................................................... 2

*Zucco Partners, LLC* v. *Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009)............................................................................ 5 n.4

**Rules**

Civil L.R. 7-9(b)(3) ........................................................................................... 1

**INTRODUCTION**

Defendants respectfully submit this motion for leave to seek reconsideration of the Court's Order denying their Motion to Dismiss.  They submit it notwithstanding the strict standard set out in Civil Local Rule 7-9(b)(3), which requires a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court."  The relief is warranted in this rare instance for two principal reasons:

*First*, the Order concludes that Defendants' statements about pre-merger diligence falsely implied that Bayer had reviewed Monsanto internal documents relating to glyphosate.  Under Ninth Circuit precedent, however, Defendants' general references to diligence cannot take on this meaning.  Statements made before the transaction closed and Monsanto lost its first Roundup trial, whether considered in isolation or in context, did not address glyphosate litigation risk at all.  And when Defendants began to discuss diligence on glyphosate liability after the initial jury verdict in August 2018, their statements could not have misled investors about a pre-merger review of Monsanto documents, because all the post-verdict statements were either preceded or accompanied by statements in which Bayer allegedly admitted it had done no such review.

*Second*, and independently, as to scienter, the Order accepts the pleading that Bayer and its executives had a motive to pursue the Monsanto transaction despite known risks.  This conclusion contradicts Ninth Circuit authority holding that a motive to pursue business advantages — in the absence of personal financial motives not alleged here — does not support an inference of scienter.  Nor does the Complaint contain the compelling and particularized facts that would be necessary to show fraudulent intent or deliberate recklessness in the absence of a cognizable motive.

On the basis of these errors, Defendants respectfully request that the Court grant leave to move for reconsideration of the Order.

**ARGUMENT**

**I.   THE ORDER'S CONCLUSIONS WITH RESPECT TO THE ALLEGED FALSITY OF DEFENDANTS' STATEMENTS ABOUT DUE DILIGENCE FAIL TO CONSIDER MATERIAL FACTS AND DISPOSITIVE LAW.**

In sustaining Plaintiffs' pleading of falsity with respect to statements about Bayer's due diligence on Monsanto, the Order identifies four statements by Defendant Werner Baumann,

Bayer's CEO: three that pre-dated the closing of the Monsanto transaction and the announcement of the verdict against Monsanto in the *Johnson* litigation; and a fourth that followed shortly after. The Order concludes that these statements could have given reasonable investors a misimpression that Bayer had reviewed Monsanto internal documents to inform an assessment of Monsanto's glyphosate litigation risks. Order 5-6. This ruling overlooks material facts concerning the content and context of the statements. It also departs from controlling law that requires a pleading of particularized facts to demonstrate that investors would understand Mr. Baumann's words to have the "special or nuanced" meaning that Plaintiffs ascribe to them about a review of Monsanto documents. *Wochos* v. *Tesla, Inc.*, 985 F.3d 1180, 1193 (9th Cir. 2021).

      **A.**      **The Complaint does not adequately plead the falsity of statements about diligence that Bayer made before the *Johnson* verdict.**

The three statements identified in the Order that pre-dated the *Johnson* verdict are like all the pre-*Johnson* statements alleged in the Complaint: not one mentions glyphosate litigation or any steps that Bayer took to assess the risks it posed; and none supports Plaintiffs' theory that reasonable investors would hear in statements that did not address those subjects an assurance that Bayer had reviewed Monsanto's internal documents on glyphosate.

**1. "Significant potential for sales and cost synergies."** The Order first describes Mr. Baumann as stating on September 14, 2016, that Bayer had "'confirmed in due diligence' the deal's 'significant potential for sales and cost synergies.'" Order 5 (citing ¶¶ 97, 224-25).[1] But potential sales and cost synergies, by definition, refer to a possibility that the "combined value and performance of two companies will be greater than the sum of the separate individual parts." Adam Barone, *Investopedia*, available at https://www.investopedia.com/terms/s/synergy.asp. A target company's liability risk is not a synergy that arises from a combination, and an acquired company's litigation loss does not diminish whatever synergies the acquisition may have created. Nor have Plaintiffs pleaded the particularized facts that the Ninth Circuit would require to support the claim that investors would interpret a statement about synergy diligence as describing a review of non-public documents to assess unmentioned litigation risks. *Wochos*, 985 F.3d at 1193.

---

[1]   Citations in the form "¶ __" refer to paragraphs of the Amended Complaint (ECF No. 47).

**2. "Transparency, data and visibility."**  The Order next refers to a statement on July 27, 2017, where Mr. Baumann said that "'the Monsanto people went out of their way to provide us with transparency, data and visibility to the most critical questions we had.'"  Order 5 (quoting ¶ 228).  Again, this does not speak to glyphosate litigation, and the Complaint alleges nothing to support any unspoken assurance that Bayer had analyzed Monsanto emails relating to it.  Plaintiffs appear to infer that Bayer's "most critical questions" up to the time of this statement must have included questions about risks posed by Roundup litigation (*see* ¶¶ 230-31) — with the *Johnson* verdict still more than a year in the future — but the Complaint contains no particularized facts to support this speculation and therefore does not plead falsity consistent with the PSLRA.

The context of Mr. Baumann's statement likewise suggests nothing about glyphosate litigation.  His comments were directed instead to a Monsanto "management presentation and the confirmatory due diligence," with no indication that the presentation or confirming diligence touched on glyphosate litigation.  ¶ 228.  Mr. Baumann further stated that the "most critical questions" "also related to value and the composition of our business case"; and he compared the "transparency, data and visibility" that Monsanto provided on those questions to Bayer's experience buying Merck's consumer health business, where due to different negotiating dynamics Bayer "did not get a full transparency on the new product development pipeline and some of the newly launched products in the U.S."  *Id.*  Whether Mr. Baumann's statement about "transparency, data and visibility" is considered in isolation or in context, Plaintiffs have not adequately pleaded that it misled investors about Bayer's diligence on glyphosate litigation or the steps it entailed.[2]

**3. "The acquisition is as just attractive today as we assessed it to be 2 years ago."**  The last of the three pre-*Johnson* statements identified in the Order quotes Mr. Baumann at Bayer's Annual General Meeting on May 25, 2018 — less than two weeks before the Monsanto acquisition closed but more than two months before the *Johnson* verdict was announced — where he said, "The acquisition is as just attractive today as we assessed it to be 2 years ago."  Order 5 (quoting from ¶ 234).  Here again, nothing in the statement or the surrounding context relates to diligence on

---

[2]  For the Court's convenience, Defendants have arranged the alleged statements about due diligence chronologically in the accompanying appendix.

glyphosate litigation, or even diligence at all; and no facts in the Complaint support Plaintiffs' view that investors would understand the statement as code for an internal email review.  The excerpts quoted in the Complaint refer instead to "efforts . . . focused on concluding this acquisition," "diligently preparing for the integration that lies ahead," what Bayer "will look like following the acquisition," and the "new and very attractive businesses" that Mr. Baumann expected to "take us forward to become a leading agriculture company."  ¶ 234.  The pleading here also makes clear that Mr. Baumann's comment on the continued "attractive[ness]" of the transaction was an expression of opinion, with no particularized facts to indicate that he subjectively disbelieved it or lacked a basis to express it, as controlling authority requires.  *Omnicare, Inc.* v. *Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 194 (2015); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys.* v. *Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017).

### B.    The Complaint does not adequately plead the falsity of statements about diligence that Bayer made after the *Johnson* verdict.

The only statement mentioned in the Order that post-dates the *Johnson* verdict is the following response that Mr. Baumann gave in an interview that was published on August 23, 2018, to a reporter's comment about the use of Monsanto internal documents at trial:  "All I can say about this is that internal documents are sometimes cited out of context on the plaintiff's side."  Order 5 (quoting from ¶ 235).  The Complaint pleads no facts to explain why this limited comment about internal documents would lead reasonable investors to believe Bayer had reviewed those documents as part of its pre-merger diligence.  Instead, the Complaint demonstrates that investors by this time could not have harbored a misimpression on that issue.  Plaintiffs allege that Bayer revealed it had not reviewed Monsanto's internal documents when Bayer referred to a Department of Justice "hold separate order" and limits on Bayer's access to Monsanto information.  ¶¶ 20, 230. Bayer referred to both in a press release on August 16, 2018 — one week *before* Mr. Baumann's interview with the reporter was published on August 23 — and again during an investor call the same day the interview ran.  ¶¶ 244, 245-46.  The Complaint thus refutes the claim that Mr.

Baumann's reference to documents taken out of context (or any other statements made after the *Johnson* verdict) could have misled investors about a pre-merger review of internal documents.[3]

## II. THE ORDER'S CONCLUSION WITH RESPECT TO SCIENTER FAILS TO CONSIDER DISPOSITIVE LAW.

The Order's conclusion that the Complaint adequately pleads scienter rests largely on a finding of motive, but the motive the Court identifies does not create a strong inference of scienter as a matter of Ninth Circuit law. As the Order describes it, "Bayer and its executives desired to remain competitive in the agrochemical business by acquiring Monsanto, despite serious risks associated with the merger." Order 9. This is insufficient under *Lipton* v. *Pathogenesis Corp.*, which states that "[i]f scienter could be pleaded merely by alleging that officers and directors possess motive and opportunity to enhance a company's business prospects, virtually every company . . . that experiences a downturn in stock price could be forced to defend securities fraud actions." 284 F.3d 1027, 1038 (9th Cir. 2002) (internal quotation omitted).[4]

The fact that the Monsanto acquisition involved what the Order calls "serious risks" does not make the alleged motive to pursue it any more cognizable as a basis to plead scienter. The Complaint contains no particularized allegations that Defendants viewed the risks of Monsanto's glyphosate litigation as any more serious than the transaction terms accounted for. If they did, then without personal incentives not pleaded here, any motive to pursue the transaction would not make

---

[3]  In other post-*Johnson* statements, Bayer expressed opinions about its diligence on glyphosate litigation, describing it as "appropriate," "extensive[]," "diligent[]," and carried out in a "customary" framework. ¶¶ 235, 239, 245. Plaintiffs have not alleged with particularity that any Defendant subjectively disbelieved these opinions or lacked a basis to offer them, as controlling law requires, *e.g.*, *Align Tech.*, 856 F.3d at 615-16, and the Order does not identify any such allegations.

[4]  If a motive to remain competitive by acquiring Monsanto could suffice to plead scienter, the Complaint does not allege with particularity that any such motive affected any individual Defendant other than Mr. Baumann. In discussing the alleged motive, the Order refers to the Complaint's Paragraph 2, which discusses only Bayer generally, and Paragraphs 58 and 59, which identify only Mr. Baumann as advocating a Monsanto acquisition. Order 9. For the remaining individual Defendants, Plaintiffs' pleading of scienter rests on their positions in the company and their involvement in the Monsanto transaction, ¶¶ 337-40, which is insufficient under controlling law. *Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009); *S. Ferry LP, No. 2* v. *Killinger*, 542 F.3d 776, 785 (9th Cir. 2008).

sense and could not outweigh the inference of innocent states of mind. *See Prodanova* v. *H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021) (scienter theory does not make sense where defendant "would stand to lose more from its allegedly fraudulent actions than it would gain"); *In re HP Sec. Litig.*, 2013 WL 6185529, at *6 (N.D. Cal. Nov. 26, 2013) (scienter claim rejected for lack of "any coherent motive as to why Defendants would knowingly purchase a company for several times its actual value"); *Lake* v. *Zogenix, Inc.*, 2020 WL 3820424, at *11 (N.D. Cal. Jan. 27, 2020) (allegation that defendants consciously took a "reckless gamble" on FDA submission does not overcome "benign explanation" that Zogenix had "every incentive to get it right the first time").[5]

The absence of a legally cognizable motive makes it "much less likely" that a complaint can adequately plead scienter, *Prodanova*, 993 F.3d at 1108 (citations omitted); and the remaining allegations mentioned in the Order are not the kind of "compelling and particularized facts" that would make up the difference, *id*. Thus, the Order notes that Roundup litigation was pending and Monsanto had produced internal documents before the merger closed. Order 9. Those facts are the predicate for Plaintiffs' view that Bayer should have done more to gauge glyphosate litigation risk in pre-merger diligence (which is not a fraud claim), but they do not weigh in favor of any inference regarding Defendants' state of mind in speaking of potential synergies, Monsanto's transparency, the attractiveness of the merger, or due diligence more generally. The same is true for Plaintiffs' allegations that Mr. Baumann had a "history of reckless due diligence practices, including the failed acquisition of Merck OTC." *Id*. The Complaint quotes him as explaining why the bidding process for Merck's consumer health business was "quite different" from the lead-up to the Monsanto merger. ¶ 228. But experience on an earlier deal, whether different or not, does not

---

[5] The Order finds the benign explanation here "undercut by the array of negative opinions on the acquisition at the time of the deal." Order 10. Those opinions criticize Bayer's business judgment to acquire Monsanto, ¶¶ 63-68; they do not support an inference that Defendants pursued the deal in anything less than good faith or that they acted with scienter in communicating with investors about diligence on glyphosate litigation.

make it any more or less plausible that Bayer's diligence on Monsanto was insufficient, much less that Mr. Baumann described it in a deliberately reckless way.[6]

**CONCLUSION**

For the reasons discussed above, Defendants respectfully request that the Court grant leave to file a motion for reconsideration of the denial of the Motion to Dismiss.

Dated:    November 2, 2021

By:    */s/ Jordan Eth*
Jordan Eth (CA SBN 121617)
JEth@mofo.com
Mark R.S. Foster (CA SBN 223682)
MFoster@mofo.com
**MORRISON & FOERSTER**
425 Market Street
San Francisco, CA  94105
Telephone:  (415) 268-7126
Facsimile:  (415) 268-7522

William Savitt (*pro hac vice*)
John F. Lynch (*pro hac vice*)
Noah B. Yavitz (*pro hac vice*)
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, NY  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000

*Attorneys for Defendants Bayer Aktiengesellschaft, Werner Baumann, Werner Wenning, Liam Condon, Johannes Dietsch, and Wolfgang Nickl*

---

[6]    The Order quotes a 1997 decision from the District of Connecticut in finding that the "'magnitude of the problems with the merger [and] the rapidity with which those problems became apparent'" support an inference of scienter.  Order 9-10 (quoting *Freedman* v. *Value Health, Inc.*, 958 F. Supp. 745, 758).  *Freedman* does not apply the PSLRA; it upholds a pleading of scienter on a bare recklessness standard that the Ninth Circuit has rejected; and its reasoning was based not only on the size and timing of losses, but also on diligence "shortcomings" that the CEO expressly admitted when he conceded that Value Health "blew it."  958 F. Supp. at 758.  The timing of the losses here, in any event, is merely a function of the *Johnson* trial calendar and the jury's verdict there.  This aspect of the Order suggests the conclusion on scienter might differ if the *Johnson* jury had found no liability — as a Los Angeles jury has since done, *Clark* v. *Monsanto Co.*, No. 20STCV46616 (Cal. Super. Ct. L.A. Cty.) (min. order, Oct. 5, 2021) — and adverse verdicts were not announced until later. Inferences about Defendants' states of mind cannot fairly be drawn from jury outcomes.