**APPENDIX**

| | Diligence-Related Statements Referenced in Amended Complaint[1] | Speaker | Compl. Para. |
|---|---|---|---|
| 1. | **Bayer AG, Acquisition Call (May 23, 2016)**<br><br>So, as you can see, this combination would bring significant short and long-term benefits to farmers across the globe.  Hence, they would translate into attractive financial benefits for Bayer and its shareholders.  The primary analysis, which we expect to verify through the due diligence shows that the combination would generate substantial sales and cost synergies. | Johannes M. Dietsch | 220; Ex. A |
| 2. | **Bayer AG, Acquisition Call (May 23, 2016)**<br><br>We are very confident we will maintain this strong integration track record, which we have built in the past.  We assume that integrating Monsanto from a business perspective would be no more complex than some of our previous acquisitions, such as the Schering acquisition in 2006.  For instance, total headcount in both cases is about the same size. And in terms of legal entities, this combination is far less complex than the Schering acquisition. Here we are talking about 37 major subsidiaries compared to 154 subsidiaries in the case of Schering. | Johannes M. Dietsch | 220; Ex. A |

---

[1] Shading indicates text that was omitted from the Amended Complaint but included in exhibits to the Declaration of John F. Lynch in Support of Defendants' Motion to Dismiss (Dkt. No. 63, the exhibits to which are referenced herein as "Ex.").  Bold text (other than headings) is referenced in the Court's Order Denying Defendants' Motion to Dismiss (Dkt. No. 90).

| | **Diligence-Related Statements Referenced in Amended Complaint** (cont'd) | | **Speaker** | **Compl. Para.** |
|---|---|---|---|---|
| 3. | **Bayer AG, Acquisition Call (May 23, 2016)**<br><br>Question:　In terms of Monsanto, just so if I could check whether there's any political considerations here given that there is opposition to GMs in Europe, for example? And I believe there is a renewal of the glyphosate license in Europe, a decision to be made. Just wondering whether that's any – a material risk to the deal?<br><br>Baumann:　So now let me come to major political considerations. There is a political aspect to Monsanto actually in a number of different aspects. The U.S. presidential elections are ongoing. It may well be that this topic is going to be picked up. We don't know that. At the same time, looking at political and regulatory environment and with that also coming to the topic of glyphosate and the pending renewal of the glyphosate authorization in Europe, yes, as you would expect us to do, we have looked at it. We do understand the risk and the exposure that does exist, also in different grades of potential renewal or non-renewal. And it would not affect the overall offer and proposal to acquire Monsanto. | | Werner Baumann | 219; Ex. A |
| 4. | **Bayer AG, Acquisition Call (May 23, 2016)**<br><br>Okay. So thank you very much on the question on regulatory and I don't want to preempt any of the discussions we will have with regulatory authorities. But we'll just highlight again the high complementarity of this deal both from a product and from a geographic point of view. So we don't foresee any major issues with regulatory authorities, but we will be going through a diligent process and I think we have a very good track record of dealing with regulatory authorities and ensuring any and all of their concerns are taken into account, so that we consummate this deal.<br><br>There is one element unique to the U.S., which we will also take into account, which is CFIUS, the Committee on Foreign Investment in the U.S., which looks at national security issues. Here, we don't see any issues at this point in time. It's maybe of interest to note that Bayer actually has more employees than Monsanto in the U.S. today and that we've actually been in the U.S. for a longer period of time than Monsanto. I think we're a very trusted company in the U.S., but also | | Liam Condon | 221; Ex. A |

| | **Diligence-Related Statements Referenced in Amended Complaint** (cont'd) | **Speaker** | **Compl. Para.** |
|---|---|---|---|
| | here we'll go through a diligent process and ensure that any and all concerns of regulatory authorities are taken fully into account and that we can consummate this deal. | | |
| 5. | **Bayer AG, *Bayer and Monsanto to Create a Global Leader in Agriculture* (September 14, 2016)**<br><br>• Bayer has confirmed sales and cost synergies assumptions in due diligence.<br><br>• Bayer has extensive experience in successfully integrating acquisitions from a business, geographic and cultural perspective. | Bayer AG | 224 |
| 6. | **Bayer AG, M&A Call (September 14, 2016)**<br><br>This transaction is a compelling opportunity for the shareholders of both companies. Following receipt of additional information and thorough analysis conducted during the due diligence process, we have raised our initial offer and have agreed on an all cash consideration of $128.00 per Monsanto share, representing a premium of 44% to the Monsanto share price of $89.03 on May 9, 2016, the day prior to our first proposal.<br><br>* * *<br><br>In combining our two companies, . . . [w]e have identified **significant potential for sales and cost synergies**, which was **confirmed during due diligence**. | Werner Baumann | 225 |
| 7. | **Bayer AG, M&A Call (September 14, 2016)**<br><br>[W]e've gotten extensive, of course, advice from antitrust experts and law firms. . . . And because of the high complementarity, again from a portfolio and geographic point of view, we see very minor issues, which we think can be taken care of relatively speedily. | Liam Condon | 226 |
| 8. | **Bayer AG, Annual Shareholders Meeting (April 28, 2017)**<br><br>We are, of course, aware that Monsanto does not have a good reputation in some countries, especially in Europe. And you can argue about whether the company has always acted wisely in | Werner Baumann | 232 |

| | Diligence-Related Statements Referenced in Amended Complaint (cont'd) | Speaker | Compl. Para. |
|---|---|---|---|
| | its dealings with the public. However, that's not the Monsanto we know at all. Monsanto is a modern, highly innovative and extremely well-managed biotech company.<br><br>. . . Monsanto's image is also the result of massive campaigns, whose organizers have managed to make the company a symbol of what many see as epitomizing a form of farming they oppose. The main focus of this criticism is green genetic engineering. However, let me stress once again at this point that there is no evidence whatsoever to support the fears that are being stoked by opponents of this technology.<br><br> * * * <br>Monsanto's image does, of course, represent a major challenge for us, and it's not an aspect that I wish to play down, yet we are facing this challenge with all those qualities that have made us what we are today: openness, expertise and responsibility. This means . . . after closing, we will manage the combined business in line with our standards as we do with all our other businesses. No ifs or butts about it. | | |
| 9. | **Bayer AG, Annual Shareholders Meeting (April 28, 2017)**<br><br>At the extraordinary Supervisory Board meeting in May, all of the most important aspects of a possible acquisition were discussed at length. These included, for example, issues relating to financing, such as a venture, potential synergies, the situation under antitrust law and possible risks to Bayer's reputation.<br><br> * * * <br>Mr. Baumann kept me constantly up-to-date on the progress of these negotiations. All of the other members of the Supervisory Board were also informed several times in writing as to the progress of the negotiations. At its meeting in September 2016, the Supervisory Board once again had a detailed discussion on the acquisition and the conditions, which by then have been agreed for the merger agreement. With – extensive information was also provided in writing in advance to this meeting, too, including an analysis of antitrust considerations. . . . All in all, the Supervisory | Werner Wenning | 227 |

| | Diligence-Related Statements Referenced in Amended Complaint (cont'd) | Speaker | Compl. Para. |
|---|---|---|---|
| | Board fulfilled its supervisory and consultative duties in relation to this transaction in a very thorough and exhaustive manner.<br><br>All of the essential aspects, which Mr. Baumann also referred to in his speech, was scrutinized and reviewed by us in detail and are supported by us unreservedly. | | |
| 10. | **Bayer AG, Earnings Call (July 27, 2017)**<br><br>Let me maybe elaborate a little bit more on that. First of all, if we go back to the acquisition of the Consumer Health business, the due diligence process was quite different with Consumer compared to what we experienced with Monsanto. So the management presentation and the confirmatory due diligence with Monsanto, **the Monsanto people went out of their way to provide us with transparency, data and visibility to the most critical questions we had** that also related to value and the composition of our business case because they wanted to convince us to pay a higher price compared to what was on the table and the process was different in terms of competitive pressure compared to what we saw with Merck.<br><br>With Merck, we were one of the bidding parties. . . . So having said that, the issue was that we did not get a full transparency on the new product development pipeline and some of the newly launched products in the U.S. already,<br><br>. . . . [W]hen we took over the business, so we signed in May and we actually closed quarter 4, it was already eroding compared to our assumption, which was already substantially discounted to the case that was presented by Merck and that has continued.<br><br>Last and I will also say this, I think in some areas, we could have seen a little bit more and should not have had the same level of surprise we are talking about right now, . . . . Some of it could have potentially been seen. We did not see it, but that was only one contributing factor.<br><br>So now let's switch to the situation with Monsanto. While all of us are anxious to close the transaction as soon as possible, the good thing of having to wait more than a year is that we see stand-alone performance of the company we are interested in. And I can only say with a lot of respect that Hugh and his entire team and the entire organization at Monsanto do a fabulous job. They have just upgraded their guidance to the upper end of what their guidance was for fiscal – for | Werner Baumann | 228, 233 |

| | Diligence-Related Statements Referenced in Amended Complaint (cont'd) | Speaker | Compl. Para. |
|---|---|---|---|
| | the year fiscal 2017. Things are going well at their end, they have solid growth, very, very strong also improvement in their profitability. So you can see on a stand-alone basis that the value we saw when we inked the deal obviously in the early, let's say, early days, which is always very important going forward, kind of is represented in the numbers that they report.<br><br>Secondly, it is all about people who have to make it happen afterwards and also alignment. I've been through a number of those situations as some of my colleagues, also Liam has, in the past. And what we see here is somewhat unusual, but very pleasing . . . .  What it also turns into is we also see a very, very good level of cooperation and collaboration. We see people that actually share the same values, also the same perspective on the market and then, of course, drives also execution going forward. So we are very confident that what is going to come together here is a business that will run and operate very well both in terms of the value creation we see going forward. So it is somewhat different. Although the question, of course, is I think very appropriate. And of course, as always in life, we don't know what we don't know. But given the perspective we have today with what I've just shared with you in terms of existing evidence, we have a very high level of comfort. | | |
| 11. | **Bayer AG, Annual Shareholders Meeting (May 25, 2018)**<br><br>Since May 2016, exactly two years ago in fact, when we made our first offer to acquire Monsanto, many of our efforts have been focused on concluding this acquisition . . . .<br><br> * * * <br>We've been diligently preparing for the integration that lies ahead and look forward to putting our plans into action.<br><br>So what will Bayer look like following the acquisition of Monsanto? . . .  [W]e are acquiring new and very attractive businesses that will take us forward to become a leading agriculture company. **The acquisition is as just attractive today as we assessed it to be two years ago**. And ladies and gentlemen, I have been involved in a lot of acquisitions during my career. Due to various aspects and overall, I'm convinced that this acquisition has very great potential for creating value for our company, our shareholders and our customers. | Werner Baumann | 234 |

| | **Diligence-Related Statements Referenced in Amended Complaint** (cont'd) | **Speaker** | **Compl. Para.** |
|---|---|---|---|
| 12. | **Bayer AG, Annual Shareholders Meeting (May 25, 2018)**<br><br>In 2017, the Supervisory Board convened 9 times. Center stage of the Supervisory Board's work was taken, as last year, by the planned acquisition of Monsanto, which the Supervisory Board discussed in ordinary and extraordinary meetings in depth once again. In-between the meetings of the Supervisory Board, I met regularly and conducted indepth exchanges with Mr. Baumann. In treating the Monsanto transaction, the Supervisory Board also concerned itself with the merger control proceedings in detail, as it did with the sales of business activities in order to comply with the requirements of the antitrust authorities. Further topics in this connection on which the Supervisory Board debated intensively on the basis of detailed reports submitted by the Board of Management were the financing concept for the Monsanto transaction, the valuation of Monsanto and the effects of the transaction on the rating of Bayer, as well as the question as to whether and the extent to which the assessment of the profitability of the transaction may differ compared to the original assessment once the authorization has been granted by the Supervisory Board. They also concerned themselves in detail with the planning for the period after the implementation of the transaction, most recently in its extraordinary meeting at the end of April 2018. | Werner Wenning | 229 |
| 13. | ***Handelsblatt, Bayer boss criticizes judgment in glyphosate trial – "We will defend ourselves very decisively"* (August 23, 2018)**<br><br>Baumann: Nothing has changed at all in the compelling logic behind the takeover of Monsanto, in the value creation potential for our shareholders, in the attractiveness of the agricultural market and in our communicated goals.[2]<br><br>* * *<br><br>Question: Investors and the general public are asking themselves the important question of whether Bayer misjudged the additional legal risks resulting from the takeover.<br><br>Baumann: In the course of the acquisition, we carried out due diligence within the framework that is customary for the takeover of a listed company. Of course, we also | Werner Baumann | 235 |

---

[2] The Complaint inaccurately alleges that this statement was given in response to the question "Do you need to reassess the legal risks posed by glyphosate now."

| | **Diligence-Related Statements Referenced in Amended Complaint** (cont'd) | **Speaker** | **Compl. Para.** |
|---|---|---|---|
| | considered the legal risks. But you also have to see that at the time, the scope of the lawsuits that we are now dealing with could not be foreseen.<br><br>Question:    Do you need to reassess the legal risks posed by glyphosate now?<br><br>* * *<br><br>Question:    The plaintiffs' attorneys work with Monsanto's internal documents. They are supposed to prove that the group allegedly sees glyphosate itself as a cancer risk, but has not warned about it on the products.<br><br>Baumann:    **All I can say about this is that internal documents are sometimes cited out of context on the plaintiff's side.** We stick to the fact that there is no causal connection between cancer and glyphosate and that it is a safe product to use from the perspective of regulators. | | |
| 14. | **Bayer AG, Special Call (August 23, 2018)**<br><br>There have also been questions on the assessment of the litigation risk prior to Bayer and Monsanto signing the merger agreement. As the acquisition structure was a takeover of a publicly listed company, access to information was limited, as is usual in such scenarios. Bayer, through counsel, undertook appropriate due diligence of litigation and regulatory issues throughout the process leading to the finalisation of the merger. | Werner Baumann | 245-46 |
| 15. | **Bayer AG, Special Call (August 23, 2018)**<br><br>[A]s far as our access to Monsanto internal documentation is related, also communication you suggested that might have been a problem in the Johnson case, we have been under a complete hold separate other than your being allowed to put together our quarter 2 financials during the last 2, 2.5 months since the closing of the transaction. So we have not had any access that goes beyond the information that is out there in the public domain. | Werner Baumann | 246-47 |

| Diligence-Related Statements Referenced in Amended Complaint (cont'd) | Speaker | Compl. Para. |
|---|---|---|
| Since we have had access, we could reassure ourselves that there is no communication out there that would "qualify as smoking gun." Things have been used as usual by plaintiff lawyers taken out of context. And as it has been the case for Monsanto before, that we, as a company, a joint company, stand firmly behind the science and the conduct related to, a, glyphosate and what we are doing as a company.<br><br>* * *<br><br>Question: It's just a couple of quick follow-ups now actually. And the first one is on the internal communications question. You said, initially, you didn't have sufficient access to those, but you do now. Did I correctly understand you say you've now reviewed those and you're sufficiently satisfied that there is no meaningful adversities and information that will emerge from the internal communications at Monsanto?<br><br>Baumann: I think there's not a lot I can add to my prior answer. The internal communication that has been quoted in the Johnson case is – actually has been used out of context on purpose. There's nothing that we see related to that communication that would lead to us talking about the combined company now. Having misrepresented or withheld relevant data, or actually, has said that glyphosate could probably cause cancer, none of that is actually the case. So we can, solidly with everything we know, stand behind our communication.<br><br>* * *<br><br>Baumann: I think you also related it back to the due diligence or the time when we decided to acquire Monsanto. Yet, to put things into perspective, very few cases had been filed at the time in 2016, and the situation was quite different in terms of where this entire complex stood in the very early stage in 2016 and where we are now, still at a very early stage, but with the first case tried. | | |

| | **Diligence-Related Statements Referenced in Amended Complaint** (cont'd) | **Speaker** | **Compl. Para.** |
|---|---|---|---|
| 16. | **Bayer AG, Annual Report (February 19, 2019)**<br><br>The deliberations of the Supervisory Board focused on questions relating to Bayer's strategy, portfolio, business activities and personnel matters. The work of the Supervisory Board focused particularly on two main areas that were each addressed at several meetings: First, the Monsanto transaction, including the progress of the merger control proceedings, the performance of the Monsanto business, the related risks and the integration of the business. And second, the further development of Bayer's strategy and the portfolio, efficiency and structural measures required to implement it. Between the meetings of the Supervisory Board, these issues were also the subject of an extensive dialogue between the Chairman of the Supervisory Board and the Chairman of the Management Board.<br><br>The discussions at the meetings held in 2018 centered on the following topics. At its February meeting, the Supervisory Board dealt with the Annual Report 2017, the agenda for the Annual Stockholders' Meeting 2018, the status of the merger control proceedings relating to the Monsanto acquisition and the Group's risk management system, and adopted resolutions on the compensation of the Management Board. At an extraordinary meeting convened in April, the Supervisory Board looked in detail at the required divestment of parts of the Crop Science business in connection with the merger control proceedings for the Monsanto transaction. The Supervisory Board also approved a further reduction of Bayer's interest in Covestro.<br><br>. . . At its September meeting, the Supervisory Board extended the service contract of Liam Condon by five years and that of Hartmut Klusik by one year, and appointed Stefan Oelrich to the company's Management Board for a three-year term commencing November 1, 2018. The Supervisory Board also approved Dieter Weinand's departure from the company by mutual agreement with effect as of [October] 31, 2018. In addition, the Supervisory Board adjusted the performance targets for the Management Board for 2018 in view of the closing of the Monsanto acquisition. The Supervisory Board discussed the status of the glyphosate-related litigations in detail. The Supervisory Board then examined in great detail the further development of the strategy of the Bayer Group and its individual divisions. It was established that the Supervisory Board explicitly supports the strategy of the Management Board. | Werner Wenning | 238 |

| Diligence-Related Statements Referenced in Amended Complaint (cont'd) | Speaker | Compl. Para. |
|---|---|---|
| At an extraordinary meeting in November, the Supervisory Board dealt in detail with the status of the Monsanto integration and the integrated financial planning. The Supervisory Board also once again looked closely at the status of the litigations in connection with glyphosate. The discussion also addressed the extent to which these risks had been analyzed and assessed prior to the Monsanto acquisition. Following the related discussion at the previous meeting, the Supervisory Board once again conferred about the further development of the strategy and adopted resolutions on a series of portfolio, efficiency and structural measures. Specifically, it discussed the planned divestment of the Animal Health business, the sunscreen and foot care businesses of the Consumer Health Division and the 60 percent interest in the German site services provider Currenta. In connection with the planned efficiency and structural measures, the Supervisory Board examined the increased alignment of the pharmaceutical research activities toward external innovation and the reduction of inhouse capacities in this area, the concentration of production for all recombinant Factor VIII products at the Berkeley, California, site, the decision not to utilize the Factor VIII facility built in Wuppertal, and adjustments to the corporate and central functions, service functions and country platforms. The Supervisory Board also discussed the updated financial planning of the Bayer Group and was briefed on the planned Capital Markets Day. | | |
| At its meeting in December 2018, the Supervisory Board undertook the routine review of the fixed compensation of the members of the Management Board and the pension amounts of the former members of the Management Board. Also at this meeting, the Management Board presented its planning for the business operations in the years 2019 through 2022 and its expectations for the company's future rating. The Supervisory Board approved the proposed financing framework for 2019 and the securing of a new credit facility. At this meeting, the Supervisory Board took a detailed look at the efficiency audit, which had been conducted with external support. Building on the discussions at previous meetings and a detailed examination of the relevant documents undertaken in the meantime, the Supervisory Board also dealt once again with the risks arising from Monsanto's glyphosate business. This discussion also focused on a comprehensive expert report by a prominent law firm that examined compliance with audit obligations and duty of care responsibilities in this regard when the Monsanto transaction was prepared and implemented. The report came to the conclusion that the members of the Management Board had fulfilled their statutory duties in connection with the Monsanto transaction, particularly with regard to the | | |

| | **Diligence-Related Statements Referenced in Amended Complaint** (cont'd) | **Speaker** | **Compl. Para.** |
|---|---|---|---|
| | examination and assessment of the liability risks related to the glyphosate business. The Supervisory Board concurred with the report's findings. Finally, the Supervisory Board resolved to issue an unqualified declaration of future compliance with the German Corporate Governance Code. Following the December meeting, an information and discussion forum was held for the members of the Supervisory Board on the topic of innovation at Crop Science. | | |
| 17. | **Bayer AG, Letter to Shareholders (April 26, 2019)**<br><br>Bayer's Supervisory Board as well as the Board of Management recommend that shareholders grant the Board of Management a discharge for 2018. This reflects that both Boards are convinced that the members of the Board of Management have acted in full accordance with their obligations and duties. Before Bayer entered into the merger agreement with Monsanto, the Board of Management diligently and extensively reviewed the risks connected with Monsanto's glyphosate business.<br><br> * * * <br>Based on the views held by regulatory authorities worldwide and scientists, the Board of Management assessed the legal risks in connection with the use of glyphosate as low. When doing so, it also based its assessment on a detailed expert opinion prepared and updated regularly by a renowned U.S. law firm before the merger agreement was entered into. Compliance of the Board of Management with its legal duties has been confirmed by an external expert opinion prepared by the renowned international law firm Linklaters which – after an extensive review – came to the firm conclusion that the members of the Board of Management had complied with their legal duties in every respect with regard to the acquisition of Monsanto, and in particular with regard to the Board of Management's risk assessment of Monsanto's glyphosate-related business.<br><br>This risk assessment was also confirmed by the fact that when the merger agreement was entered into in September 2016, glyphosate-related lawsuits from only approximately 120 plaintiffs were pending and in none of them the courts had decided on the merits of the case. While the jury verdicts in the courts of first instance in the U.S. in August 2018 and March 2019 with respect to Glyphosate are disappointing, they are not final decisions but subject to appeal. Regardless of the outcome, the jury verdicts have no impact on future cases and trials because each one has its own | Werner Baumann; Werner Wenning | 239 |

| | Diligence-Related Statements Referenced in Amended Complaint (cont'd) | Speaker | Compl. Para. |
|---|---|---|---|
| | factual and legal circumstances. We continue to believe firmly in the scientific assessments that glyphosate-based herbicides do not cause cancer. Bayer will continue to defend its glyphosate-based herbicides vigorously. | | |
| 18. | **Statement of the Board of Management and the Supervisory Board of Bayer AG on the Published Countermotions (April 26, 2019)**<br><br>In the context of the acquisition of Monsanto, the Board of Management discussed the opportunities and risks of the acquisition very extensively and in numerous meetings and carefully weighed them against each other before making its decision to enter into the merger agreement in September 2016. The Board of Management performed this risk assessment based on an information and update process which was in all respects adequate for an acquisition of such a scale and highly professional and verified this risk assessment with Monsanto in a confirmatory due diligence before entering into the merger agreement.<br><br>Of course, in the context of the acquisition, the Board of Management also reviewed the risks connected with Monsanto's glyphosate business. This risk assessment clearly showed that, when used as directed, the products of Monsanto containing glyphosate are safe. There are more than 800 studies available which come to this conclusion, which has, to this day, also been continuously confirmed by the competent regulatory authorities worldwide. Another assessment of the risk of cancer performed in 2017 by the U.S. environmental agency EPA, for example, took into account more than 100 studies considered relevant and came to the conclusion that a carcinogenic effect of glyphosate was "not likely", which is the most harmless assessment according to the EPA nomenclature. Particularly relevant is a large state-funded U.S. observational study which was conducted in the agricultural sector over a period of twenty years and which comes to the conclusion that glyphosate is not carcinogenic.<br><br>Following an intensive review, the Canadian ministry of health as recently as January 2019 clearly confirmed again that glyphosate was safe and emphasised that – based on the amount of glyphosate people come into contact with – there was currently no regulatory authority in the world that sees a risk of cancer. Only an assessment by a sub-organisation of the World Health Organization classifies glyphosate as "probably carcinogenic." However, in this assessment only | Bayer AG's Board of Management and Supervisory Board | 240 |

| Diligence-Related Statements Referenced in Amended Complaint (cont'd) | Speaker | Compl. Para. |
|---|---|---|
| the general hazard of glyphosate was assessed but not the risk of actual occurrence. Therefore, glyphosate was assessed to be as carcinogenic as the consumption of red meat and hot beverages. | | |
| Based on the views held by regulatory authorities worldwide and scientists, the Board of Management assessed the legal risks in connection with the use of glyphosate as low. When doing so, it also based its assessment on a detailed expert opinion prepared and updated regularly by a renowned U.S. law firm before the merger agreement was entered into. This risk assessment was also confirmed by the fact that when the merger agreement was entered into in September 2016, only approximately 120 glyphosate-related lawsuits were pending and in none of them the courts of the first instance had decided on the merits of the case. Accordingly, the allegation made in one of the countermotions that the Board of Management informed itself about the risks in connection with Monsanto's glyphosate business only in August 2018 is inaccurate.<br><br>* * *<br><br>Compliance of the Board of Management with its duties is confirmed by an external expert opinion<br><br>From the very beginning, the Supervisory Board was highly involved in the acquisition of Monsanto and in this context also intensively discussed the risks connected therewith – including the risks arising from Monsanto's glyphosate business. In contrast to what is alleged in one of the countermotions, immediately after the first jury decision became known in August 2018 and after the resulting share price losses, the Supervisory Board decided to review whether the members of the Board of Management had complied with their legal duties in the context of the acquisition of Monsanto. In early September 2018, the Supervisory Board instructed the renowned law firm Linklaters to prepare an expert opinion on this.<br><br>After an extensive review, Linklaters came to the clear conclusion that the members of the Board of Management had complied with their legal duties in every respect with regard to both the conclusion of the merger agreement with Monsanto in September 2016 and the closing of the acquisition of Monsanto in August 2018. The Supervisory Board extensively discussed this expert opinion and based on this also comes to the conclusion that the Board of Management acted in compliance with its duties. Against this backdrop, the Board of Management and the Supervisory | | |

| Diligence-Related Statements Referenced in Amended Complaint (cont'd) | Speaker | Compl. Para. |
|---|---|---|
| Board are firmly convinced that, in the context of the acquisition of Monsanto, they acted in compliance with their duties in every respect and at any time.<br><br>Convincing strategy of the Board of Management / Ratification of the actions for the fiscal year 2018<br><br>Irrespective of the above, the Board of Management and the Supervisory Board are disappointed at the current evaluation of Bayer by the capital market since such evaluation does not reflect the actual value of the company and the impact of the effects of the non-binding U.S. court decisions made so far on the pricing is too high.<br><br>At the same time, the Board of Management and the Supervisory Board are firmly convinced that the acquisition of Monsanto was the right decision. By acquiring Monsanto, Bayer became by far the leading company in the area of agriculture. Against this backdrop and with the objective of being able to acquire Monsanto, the Board of Management also agreed to the disposals required by the competition authorities, which were more extensive than originally intended. The disposed businesses generated attractive disposal proceeds of around € 7.4 B and significant disposal gains in the amount of € 4.1 B before taxes. The reduced volume of synergies that was a result of these disposals was offset by other, positive effects, such as the reduction of U.S. tax rates and the operational debt reduction of Monsanto during the long period of the review of the competition authorities; hence, on balance, a significant potential for value creation with respect to the overall acquisition existed.<br><br>Bayer is a perfectly healthy company with excellent growth opportunities, high profitability, a strong portfolio and a clear strategy. Also, the announced portfolio, efficiency and structural measures at the divisional and group level, which were decided by the Board of Management in November 2018 and agreed to unanimously by the Supervisory Board, are in line with this strategy. As leading innovator in the area of life sciences, Bayer is currently in an optimal position to profit from global megatrends in the areas of diet and health. | | |

| | Diligence-Related Statements Referenced in Amended Complaint (cont'd) | Speaker | Compl. Para. |
|---|---|---|---|
| | In its latest meeting, the Supervisory Board expressly confirmed again that it unanimously supports the Board of Management and its strategy, including the acquisition of Monsanto. This strategy is the right way for Bayer and Bayer will be very successful with it.<br><br>Against this backdrop, the Board of Management and the Supervisory Board unanimously uphold their resolution proposal to ratify the actions of the members of the Board of Management who held office in the fiscal year 2018 under agenda item number 2 of this year's Annual Stockholders' Meeting.<br><br>Prior to the signing of the acquisition agreement with Monsanto in September 2016, the Management Board discussed the transaction in great detail at numerous meetings and carefully weighed the opportunities and risks involved. Of course, this also includes an assessment of the risks associated with the glyphosate business. This assessment was based firstly on publicly available documents from the regulatory authorities, which Bayer analyzed internally; secondly, on statements and documents that Monsanto provided during due diligence; and thirdly, on a detailed and regularly updated external expert opinion on the legal risks relating to glyphosate, which Bayer had commissioned from a leading law firm and which was compiled before the acquisition agreement was signed. Based on all this information, the Management Board considered the liability risk in connection with glyphosate to be low. | | |
| 19. | **Address by Werner Baumann (April 26, 2019)**<br><br>The Board of Management acted conscientiously in every respect. That is the conclusion reached in an expert opinion from the leading law firm, Linklaters, which the Supervisory Board commissioned in September 2018 immediately after the first verdict in the Johnson case. A second independent opinion given by Professor Habersack of Munich University in the spring of 2019 comes to the same conclusion. | Werner Baumann | 241 |

APPENDIX TO DEFS.' P&A IN SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION
CASE NO.:  3:20-CV-04737-RS