1   Jordan Eth (CA SBN 121617)
    JEth@mofo.com
2   Mark R.S. Foster (CA SBN 223682)
    MFoster@mofo.com
3   **MORRISON & FOERSTER LLP**
    425 Market Street
4   San Francisco, CA  94105
    Telephone:  (415) 268-7126
5   Facsimile:  (415) 268-7522

6   William Savitt (*pro hac vice*)
    Noah B. Yavitz (*pro hac vice*)
7   Emily R. Barreca (*pro hac vice*)
    **WACHTELL, LIPTON, ROSEN & KATZ**
8   51 West 52nd Street
    New York, NY  10019
9   Telephone:  (212) 403-1000
    Facsimile:  (212) 403-2000

10

11  *Attorneys for defendants Bayer*
    *Aktiengesellschaft, Werner Baumann,*
    *Werner Wenning, Liam Condon,*
12  *Johannes Dietsch, and Wolfgang Nickl*

13

14              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
15                 **SAN FRANCISCO DIVISION**

16  SHEET METAL WORKERS' NATIONAL          Case No.:  3:20-cv-04737-RS
    PENSION FUND and INTERNATIONAL
17  BROTHERHOOD OF TEAMSTERS LOCAL         **DEFENDANTS' NOTICE OF MOTION**
    NO. 710 PENSION FUND, individually and as  **AND MOTION TO DISMISS THE**
18  Lead Plaintiffs on behalf of all others similarly  **SECOND AMENDED CLASS ACTION**
    situated, and                          **COMPLAINT; MEMORANDUM OF**
                                           **POINTS AND AUTHORITIES IN**
19  INTERNATIONAL UNION OF OPERATING       **SUPPORT THEREOF**
    ENGINEERS PENSION FUND OF EASTERN
20  PENNSYLVANIA AND DELAWARE,             CLASS ACTION
    individually and as Named Plaintiff, on behalf of
21  all others similarly situated,         Date:   April 14, 2022
                                           Time:  1:30 p.m.
22                Plaintiffs,
                                           Judge:  Richard Seeborg
23         v.                              Courtroom:  3 — 17th Floor

24  BAYER AKTIENGESELLSCHAFT, WERNER
    BAUMANN, WERNER WENNING, LIAM
25  CONDON, JOHANNES DIETSCH, and
    WOLFGANG NICKL,
26
                  Defendants.
27

28

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 14, 2022, at 1:30 p.m., or at such other time as the matter may be heard, in the courtroom of the Honorable Richard Seeborg, located at 450 Golden Gate Avenue, San Francisco, California, Courtroom 3, 17th Floor, attorneys for defendants Bayer Aktiengesellschaft, Werner Baumann, Werner Wenning, Liam Condon, Johannes Dietsch, and Wolfgang Nickl will, and hereby do, move to dismiss plaintiffs' Second Amended Class Action Complaint (Dkt. No. 107, "Complaint") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, as well as the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

The motion is based upon this notice and the accompanying memorandum of points and authorities, the accompanying declaration of Noah B. Yavitz and the exhibits submitted therewith, the accompanying request for consideration and judicial notice, the reply brief that will be filed, the papers on file in the action, the argument of counsel, and such other matters as may be considered by the Court before it takes the motion under submission.

**ISSUE TO BE DECIDED**

1.      Whether the Complaint pleads misstatements concerning the scientific and regulatory record supporting glyphosate's safety that are actionable under Section 10(b) or Section 20(a) of the Securities Exchange Act of 1934.

1  Dated:   January 31, 2022

By: _____/s/ Jordan Eth_____

2
Jordan Eth (CA SBN 121617)
JEth@mofo.com
3
Mark R.S. Foster (CA SBN 223682)
MFoster@mofo.com
4
**MORRISON & FOERSTER LLP**
425 Market Street
5
San Francisco, CA  94105
Telephone:  (415) 268-7126
6
Facsimile:  (415) 268-7522

7
William Savitt (*pro hac vice*)
Noah B. Yavitz (*pro hac vice*)
8
Emily R. Barreca (*pro hac vice*)
**WACHTELL, LIPTON, ROSEN & KATZ**
9
51 West 52nd Street
New York, NY  10019
10
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
11

12
*Attorneys for defendants Bayer Aktiengesellschaft, Werner Baumann, Werner Wenning, Liam Condon, Johannes Dietsch, and Wolfgang Nickl*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT .......................................................................................................................... 7

I.    THE COMPLAINT FAILS TO PLEAD FALSITY WITH PARTICULARITY ..................... 7

II.   THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER. ......... 14

III.  THE COMPLAINT FAILS TO PLEAD A VIOLATION OF SECTION 20(a). .................. 17

CONCLUSION ...................................................................................................................... 17

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                    <u>Page(s)</u>

*City of Dearborn Heights* v. *Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017)......................................................................8-9 & n.6, 10

*Curry* v. *Yelp Inc.*,
  875 F.3d 1219 (9th Cir. 2017)......................................................................... 17

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)....................................................................................3-4

*In re AnaptysBio, Inc. Sec. Litig.*,
  2021 WL 4267413 (S.D. Cal. Sept. 20, 2021) ............................................ 16

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010)......................................................................... 17

*In re Daou Sys., Inc. Sec. Litig.*,
  411 F.3d 1006 (9th Cir. 2005)....................................................................... 7, 14

*In re Ferrellgas Partners, L.P., Sec. Litig.*,
  2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018), *aff'd*,
  764 Fed. App'x 127 (2d Cir. 2019)................................................................ 15

*In re Invision Techs., Inc. Sec. Litig.*,
  2006 WL 538752 (N.D. Cal. Jan. 24, 2006) ................................................ 11

*In re Roundup Prod. Liab. Litig.*,
  390 F. Supp. 3d 1102 (N.D. Cal. 2018) ..............................................3-4, 11, 13 n.11

*In re Sanofi Sec. Litig.*,
  87 F. Supp. 3d 510 (S.D.N.Y. 2015)..........................................................10-11, 13

*In re Silicon Graphics Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999)........................................................................ 14

*In re Silicon Storage Tech, Inc. Shareholder Deriv. Litig.*,
  2009 WL 1974535 (N.D. Cal. 2009) ............................................................ 16

*Kim* v. *Advanced Micro Devices, Inc.*,
  2019 WL 2232545 (N.D. Cal. May 23, 2019) ............................................. 15

*Lake* v. *Zogenix, Inc.*,
  2020 WL 3820424 (N.D. Cal. Jan. 27, 2020) ............................................... 7

*Metzler Inv. GmbH* v. *Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008)........................................................................ 7

*Nat'l Ass'n of Wheat Growers* v. *Becerra*,
    468 F. Supp. 3d 1247 (E.D. Cal. 2020) ............................................................. 3, 11

*Nat'l Ass'n of Wheat Growers* v. *Zeise*,
    309 F. Supp. 3d 842 (E.D. Cal. 2018) ........................................................ 3, 9, 11

*Nguyen* v. *Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ............................................................................ 14

*Omnicare, Inc.* v. *Laborers Dist. Council*,
    575 U.S. 175 (2015) ............................................................................. 9 & n.6, 10

*S. Ferry LP, No. 2* v. *Killinger*,
    542 F.3d 776 (9th Cir. 2008) ............................................................................ 16

*Tadros* v. *Celladon Corp.*,
    2016 WL 5870002 (S.D. Cal. Oct. 7, 2016), *aff'd*,
    738 F. App'x 448 (9th Cir. 2018) ..................................................................... 15

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .......................................................................................... 14

*Tongue* v. *Sanofi*,
    816 F.3d 199 (2d Cir. 2016) ............................................................................. 11

*Wochos* v. *Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) .......................................................................... 11

*Zucco Partners, LLC* v. *Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ...................................................................... 14, 15

**Rules and Statutes**

15 U.S.C. § 78u–4(b)(1) ............................................................................................. 7, 8

15 U.S.C. § 78u–4(b)(2) ..................................................................................... 7, 14, 15

Fed. R. Civ. P. 9(b) ....................................................................................................... 7

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 7 n.4

**INTRODUCTION**

In their prior complaint, plaintiffs claimed that Bayer and its leadership violated the Exchange Act through misstatements on three topics:  (1) Bayer's pre-merger diligence on Monsanto; (2) the cancer risk purportedly posed by the chemical glyphosate; and (3) Bayer's accounting for tort lawsuits alleging that glyphosate caused cancer.  When defendants moved to dismiss, the Court held that plaintiffs had stated a claim only as to statements about pre-merger diligence.  Plaintiffs were barred from proceeding against defendants' other statements, with leave to amend.

Plaintiffs' amended pleading abandons the position that Bayer's accounting statements misstated the risk of tort liability.  Instead, plaintiffs seek only to resurrect their claim that defendants deceived the market by echoing a point of global regulatory consensus:  Glyphosate is safe and non-carcinogenic.  According to plaintiffs, it was fraud to cite that regulatory approval — together with the science that supports it — as a factor that cut against lawsuits claiming glyphosate is carcinogenic.  Plaintiffs have again failed to plead this proposition, for two reasons:

*First*, the Complaint does not allege falsity.  Under the PSLRA, plaintiffs must detail contemporaneous statements or conditions showing why each alleged misrepresentation was false when made.  The Complaint does not seriously attack the regulatory findings or the science behind them.  It cannot.  Instead, plaintiffs construct a strawman, alleging that defendants falsely represented the evidence on glyphosate as "unequivocal."  Defendants never made any such representation, and plaintiffs cannot plead fraud by distorting their statements.

*Second*, the Complaint fails the heightened standard for pleading scienter, which requires particularized facts that give rise to a strong inference that defendants either knew their statements were false or were deliberately reckless as to truth or falsity.  The pleadings on this point reduce to the allegation that defendants were high-ranking Bayer representatives who signed disclosures and opined on glyphosate's safety.  Under Ninth Circuit precedent, that does not support any inference of fraudulent intent.  And even if it did, the more cogent inference is that defendants credited the regulatory findings on glyphosate and believed it to be safe and non-carcinogenic.

Because the Complaint does not plead actionable misstatements about the regulatory and scientific support for glyphosate, plaintiffs should once again be foreclosed from advancing that theory.

## STATEMENT OF FACTS[1]

Bayer is a German corporation that develops and sells agricultural, pharmaceutical, and healthcare products.  ¶ 48.  In June 2018, it acquired Monsanto, an agrochemical company based in Missouri.  At the time, Monsanto was a defendant in roughly 5,000 personal-injury lawsuits alleging that the company's herbicide Roundup caused cancer through its active ingredient glyphosate.  ¶ 101.

Regulators throughout the developed world have approved glyphosate for general use, based on an extensive body of research supporting its safety.  ¶¶ 79, 194.  In December 2017, for example, the U.S. Environmental Protection Agency ("EPA") published a comprehensive "weight-of-evidence evaluation of data from animal toxicity, genotoxicity, and epidemiological studies" in which it concluded that glyphosate is "not likely to be carcinogenic to humans."  Ex. 1 (EPA, *Glyphosate:  Draft Human Health Risk Assessment in Support of Registration Review* (Dec. 12, 2017)) at 3.  Health authorities in the European Union, Germany, Australia, Canada, New Zealand, and Japan have issued equivalent findings.[2]

---

[1] These facts are drawn from the Second Amended Complaint, Dkt. No. 107, and documents subject to the accompanying request for consideration and judicial notice.  Defendants dispute the allegations in the Complaint but assume they are true for purposes of this motion.  All references to "¶ __" are to paragraphs in the Complaint.  All references to "Ex. __" are to exhibits attached to the Declaration of Noah B. Yavitz.

[2] *See, e.g.*, Ex. 2 (European Food Safety Authority, *Conclusion on the Peer Review of the Pesticide Risk Assessment of the Active Substance Glyphosate* (Nov. 12, 2015)) at 2 (concluding that "glyphosate is unlikely to pose a carcinogenic hazard to humans and the evidence does not support classification with regard to its carcinogenic potential . . . ."); Ex. 3 (Letter from Michael L. Goodis, P.E., EPA (Aug. 7, 2019)) at 1 (noting that the EPA's classification of glyphosate is "consistent with other international expert panels and regulatory authorities, including the Canadian Pest Management Regulatory Agency, Australian Pesticide and Veterinary Medicines Authority, European Food Safety Authority, European Chemicals Agency, German Federal Institute for Occupational Safety and Health, New Zealand Environmental Protection Authority, and the Food Safety Commission of Japan").

1       The lone outlier is the International Agency for Research on Cancer ("IARC"), which

2 released a monograph in March 2015 concluding that glyphosate is "probably carcinogenic to

3 humans." ¶ 79.  Glyphosate thus joined an IARC hazard classification that includes "very hot"

4 drinks and red meat.[3]  Following that report, plaintiffs began to file lawsuits alleging that

5 glyphosate exposure caused cancerous non-Hodgkin's lymphoma ("NHL").  Many of these cases

6 were consolidated into multi-district litigation in the Northern District of California before Judge

7 Vince Chhabria.  *See In re Roundup Prod. Liab. Litig.*, No. 16-MD-02741-VC (N.D. Cal.).

8       The IARC classification also triggered a California statute that purported to require

9 Monsanto and other sellers of glyphosate-based herbicides to apply carcinogen warning labels to

10 their products.  In February 2018, the Eastern District of California issued a preliminary injunction

11 blocking the statute's application, after finding that such a warning would be "false and

12 misleading" because "virtually all other government agencies and health organizations that have

13 reviewed studies on the chemical had found there was no evidence that it caused cancer." *Nat'l*

14 *Ass'n of Wheat Growers* v. *Zeise*, 309 F. Supp. 3d 842, 851, 853 (E.D. Cal. 2018) (granting

15 preliminary injunction); *see Nat'l Ass'n of Wheat Growers* v. *Becerra*, 468 F. Supp. 3d 1247, 1259

16 (E.D. Cal. 2020) (granting permanent injunction).  This ruling tracked EPA guidance sent to

17 producers of glyphosate-based herbicides, which advised that the agency "consider[ed] the

18 [carcinogenicity] warning language based on the chemical glyphosate to constitute a false and

19 misleading statement" in violation of federal labelling requirements and ordered that any such

20 warning be removed.  Ex. 3 (Letter from Michael L. Goodis, P.E., EPA (Aug. 7, 2019)) at 1.

21       Several months later, in July 2018, Judge Chhabria issued a heavily publicized decision

22 holding that plaintiffs would be permitted to submit expert evidence on the alleged association

23 between glyphosate and NHL.  *In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102 (N.D. Cal.

24 2018) ("*Daubert* Decision").  Applying the standard announced in *Daubert* v. *Merrell Dow*

---

[3] *See* Ex. 4 (IARC, *IARC Monographs Evaluate Drinking Coffee, Maté, and Very Hot Beverages* (June 15, 2016)) at 1 (concluding that "drinking very hot beverages probably causes cancer"); Ex. 5 (IARC, *IARC Monographs Evaluate Consumption of Red Meat and Processed Meat* (Oct. 26, 2015)) at 1 (classifying the "consumption of red meat as probably carcinogenic to humans" and imposing a higher "carcinogenic to humans" classification to processed meats).

1    *Pharms., Inc.*, 509 U.S. 579 (1993), the Court concluded that although evidence of a causal link

2    between glyphosate and NHL appeared "rather weak" and "[t]he evidence, viewed in its totality,

3    seems too equivocal to support any firm conclusion that glyphosate causes NHL," it could not "go

4    so far as to say [the plaintiffs'] experts [had] served up the kind of junk science that requires

5    exclusion from trial." *Daubert* Decision at 1108-09.  The opinion warned, moreover, that even the

6    question of admissibility was "very close," and that "[g]iven how close the question is at the

7    general causation phase, the plaintiffs appear to face a daunting challenge at the next phase." *Id.*

8         One month later, on August 10, 2018, a California Superior Court jury in the first

9    glyphosate case to reach trial ruled in favor of the plaintiff, Dewayne Johnson, awarding him $39

10   million in compensatory damages and $250 million in punitive damages.  ¶¶ 18, 128.  On October

11   22, 2018, the *Johnson* court reduced the punitive damages award to $39.25 million, but rejected

12   Monsanto's requests for a new trial and for judgment notwithstanding the verdict.  ¶¶ 24, 148, 306.

13        Prior to the *Johnson* verdict, Bayer had made no public statements about the scientific and

14   regulatory record supporting glyphosate's safety.  This changed on August 16, 2018, when the

15   company issued a press release announcing its "belie[f] that the [*Johnson*] jury's decision [wa]s at

16   odds with the weight of scientific evidence, decades of real world experience and the conclusions

17   of regulators around the world that all confirm glyphosate is safe and does not cause [NHL]."

18   ¶ 250.  The following week, on August 23, 2018, the company convened a conference call with

19   market analysts on which its chief executive officer — Werner Baumann — discussed the

20   litigation.  ¶ 256.  Mr. Baumann expressed his view that "the data, the facts and the regulatory

21   standing clearly stand in favor of glyphosate" and explained "that's why we've been very

22   outspoken on . . . the verdict being inconsistent with [the] facts, data, science and regulatory

23   standing of the product."  *Id.*  He also noted that "[t]he safety of glyphosate is substantiated by

24   more than 800 scientific studies and reviews conducted over the course of many decades."  ¶ 251.

25        Over the coming months, Mr. Baumann and others in Bayer's leadership continued to opine

26   on the science concerning glyphosate.  These statements included further references to the "800

27   scientific studies and regulatory authorities all over the world confirming that glyphosate is safe for

28   use when used according to label instructions," ¶ 261, with particular emphasis on a comprehensive

study funded by the U.S. government that "followed more than 50,000 licensed pesticide applicators and farm workers and their spouses for more than 20 years [and] found no association between glyphosate-based herbicides and cancer." ¶ 267; *see* Ex. 6 (EPA, *Glyphosate:  Proposed Interim Registration Review Decision* (Apr. 23, 2019)) at 19 (citing and discussing study).

In March 2019, Monsanto lost a second glyphosate lawsuit.  ¶¶ 25, 307.  Two months later, a third jury found against Monsanto.  ¶ 26.  Although Monsanto is continuing to pursue an appeal as to the latter proceeding, these trial results prompted a boom in new lawsuits.  The volume of glyphosate claims soared to roughly 125,000, many consolidated before Judge Chhabria.  ¶ 280.

Notwithstanding these adverse jury verdicts, public health authorities continued to reaffirm that glyphosate is safe and non-carcinogenic.  In April 2019 and January 2020, for example, the EPA published updated analyses of glyphosate in which the agency reiterated that it had "thoroughly evaluated potential human health risk associated with exposure to glyphosate and determined that there are no risks to human health from the current registered uses of glyphosate and that glyphosate is not likely to be carcinogenic to humans." Ex. 7 (EPA, *Glyphosate:  Interim Registration Review Decision* (Jan. 22, 2020)) at 10; *see* Ex. 6 (EPA, *Glyphosate:  Proposed Interim Registration Review Decision* (Apr. 23, 2019)).  Similar guidance has been issued by foreign regulators.  *See* Ex. 8 (Health Canada, *Statement from Health Canada on Glyphosate* (Jan. 11, 2019)) at 2 ("No pesticide regulatory authority in the world currently considers glyphosate to be a cancer risk to humans at the levels at which humans are currently exposed.").

Although Bayer continued (and continues) to agree with this regulatory guidance, the company announced in June 2020 that it had agreed to pay up to $10.9 billion to settle and establish a mechanism to resolve current and future glyphosate cases, with the goal of "return[ing] the conversation about the safety and utility of glyphosate-based herbicides to the scientific and regulatory arena and mov[ing] it away from the jury trial setting."  ¶¶ 206, 207.  One month later, Judge Chhabria issued an order indicating that he was unlikely to approve the proposed settlement of future glyphosate claims, prompting the parties to withdraw that part of the settlement.  ¶¶ 29-30.

Since that order, the consensus scientific view on glyphosate's safety has twice been endorsed by favorable verdicts in glyphosate lawsuits.  In October 2021, a California jury found

that a child's repeated exposure to Roundup had not caused his cancer.  *See* Ex. 9 (Notice of

Completed Verdict Form, *Clark* v. *Monsanto Co.*, No. 20STCV46616 (Cal. Super. Ct., Los

Angeles Cnty. Oct. 5, 2021)) at 3.  Next, in December 2021, a second California jury agreed that

Roundup is not carcinogenic.  *See* Ex. 10 (Special Verdict Form, *Stephens* v. *Monsanto Co.*, No.

CIVSB2014801 (Cal. Super. Ct., San Bernardino Cnty. Dec. 9, 2021)) at 6 (rejecting the

proposition that "Roundup ha[d] a potential cancer risk that was known or knowable in light of

scientific and medical knowledge that was generally accepted in the scientific community at the

time of its manufacture or sale").  Monsanto has not lost a glyphosate verdict since May 2019.

Shortly after the proposed settlement of future glyphosate claims was withdrawn, plaintiffs

City of Grand Rapids General Retirement System and City of Grand Rapids Police & Fire

Retirement System filed a complaint.  Dkt. No. 1.  Their complaint alleged securities fraud by

Bayer, current officers Werner Baumann and Wolfgang Nickl, former president of Bayer's Crop

Sciences Division Liam Condon, former chief financial officer Johannes Dietsch, and former chair

of Bayer's Supervisory Board Werner Wenning.  As subsequently amended, plaintiffs' complaint

claimed that over a four-year class period running from May 2016 to July 2020, defendants violated

the Exchange Act by purportedly misstating the extent of Bayer's pre-merger diligence,

misrepresenting management's views concerning the scientific and regulatory evidence on

glyphosate, and making inaccurate accounting disclosures about pending glyphosate litigation.

Dkt. No. 47 ("First Amended Complaint").

Defendants moved to dismiss the First Amended Complaint for failure to plead falsity,

scienter, or loss causation.  Dkt. No. 61.  The Court denied defendants' motion, holding that

plaintiffs had adequately stated claims under the Exchange Act concerning defendants' statements

about Bayer's pre-merger diligence.  Dkt. No. 90 ("Dismissal Order").  The Court also concluded,

however, that because plaintiffs had otherwise failed to plead actionable misstatements, they would

be foreclosed from proceeding on the balance of their complaint absent successful amendment.  *Id.*

at 13.

Plaintiffs responded with the Second Amended Complaint, Dkt. No. 107, which reasserts

that defendants falsely claimed "unequivocal" scientific and regulatory evidence favored

1    Monsanto's position.  ¶ 22.  Plaintiffs have thus abandoned their contention that defendants

2    fraudulently misstated Bayer's accounting of the glyphosate litigation.  Defendants now move to

3    dismiss with respect to their alleged misrepresentations about glyphosate.

4                                          **ARGUMENT**

5         To state a claim for securities fraud under Section 10(b) and Rule 10b-5, plaintiffs must

6    allege "(1) a material misrepresentation or omission of fact [*i.e.*, falsity], (2) scienter, (3) a

7    connection with the purchase or sale of a security, (4) transaction and loss causation, and

8    (5) economic loss."  *Lake* v. *Zogenix, Inc.*, 2020 WL 3820424, at *7 (N.D. Cal. Jan. 27, 2020)

9    (alteration in original) (quoting *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1014 (9th Cir.

10   2005)).  Ordinary notice-pleading standards do not apply.  Under Federal Rule of Civil Procedure

11   9(b), a complaint must plead fraud "with particularity," and, under the PSLRA, must detail facts

12   establishing the falsity of each purported misstatement.  Fed. R. Civ. P. 9(b); 15 U.S.C. § 78u-

13   4(b)(1).  Furthermore, a plaintiff must plead "with particularity facts giving rise to a strong

14   inference that the defendant acted with" scienter.  15 U.S.C. § 78u–4(b)(2)(A).

15        The Complaint is plaintiffs' second effort at pleading that defendants committed securities

16   fraud by referencing the global regulatory and scientific consensus on glyphosate's safety.

17   Plaintiffs still cannot muster particularized facts establishing falsity or scienter.  No such facts exist.

18   The Court should once again hold that plaintiffs are foreclosed from proceeding on that unviable

19   theory.[4]

20   **I.      THE COMPLAINT FAILS TO PLEAD FALSITY WITH PARTICULARITY.**

21        To allege falsity under the PSLRA's heightened pleading standards, a complaint must

22   supply "specific contemporaneous statements or conditions" showing that each disputed statement

23   was "false or misleading . . . when made."  *Metzler Inv. GmbH* v. *Corinthian Colls., Inc.*, 540 F.3d

24   1049, 1066 (9th Cir. 2008); *see* 15 U.S.C. § 78u–4(b)(1); Fed. R. Civ. P. 9(b).  This requires

25   _____

26   [4] The present motion does not challenge the Court's Dismissal Order.  However, to the extent the
     Court concludes that Federal Rule of Civil Procedure 12(b)(6) does not permit a party to file a
27   motion directed to specific allegations, defendants seek a complete dismissal of the Complaint on
     the grounds briefed herein and in support of their prior motion to dismiss.  Dkt. Nos. 61, 78.
28   Defendants otherwise preserve the arguments presented in support of their prior motion to dismiss.

plaintiffs to specify in their pleadings "each statement alleged to have been misleading" and the "reason or reasons *why* the statement is misleading," 15 U.S.C. § 78u–4(b)(1) (emphasis added).

Plaintiffs have not satisfied this demanding standard.  Instead, the Complaint loosely asserts that defendants misrepresented "the evidentiary basis for Monsanto's science-based trial defenses" when they opined on (1) the broad regulatory approval for glyphosate; (2) the "weight" of the scientific evidence supporting those regulatory findings; (3) "800 studies" supporting glyphosate's safety; and (4) the "general" tenor of research specifically addressing the carcinogenicity of Roundup.  ¶ 273.  According to plaintiffs, the Complaint pleads fraud as to each category because Monsanto's trial lawyers ultimately decided to highlight only a subset of the scientific evidence referenced by defendants in their public statements and because the glyphosate plaintiffs planned to present contrary evidence.  *Id.*  None of that shows the challenged statements to be false or misleading.

**Regulatory approval.**  The Complaint challenges several statements in which defendants expressed the view that the near-unanimous regulatory approval of glyphosate supported Bayer's position in the glyphosate litigation.  *See, e.g.*, ¶ 250 ("Bayer believes that the jury's decision is at odds with . . . the conclusions of regulators around the world that all confirm glyphosate is safe and does not cause non-Hodgkin's lymphoma.").[5]  These were statements of opinion.  To plead falsity, plaintiffs must present specific facts that either show defendants "did not hold the belief [they] professed" or that "the supporting fact[s] [they] supplied were untrue."  *City of Dearborn Heights*

---

[5] *See, e.g.*, ¶ 261 ("In view of . . . regulatory authorities all over the world confirming that glyphosate is safe for use when used according to label instructions, including . . . the U.S. Environmental Protection Agency's 2018 risk assessment which examined more than 100 studies and concluded that glyphosate is 'not likely to be carcinogenic to humans,' we continue to believe that we have meritorious defenses and intend to defend ourselves vigorously in all of these lawsuits."); ¶ 264 ("[T]he most recent reanalysis that was done by all major regulatory bodies around the world, ranging from Australia, New Zealand, Japan to the U.S. EPA and the European agencies . . . have reconfirmed the safety of the product and, at the same time, that it is not carcinogenic."); ¶ 269 ("Based on the views held by regulatory authorities worldwide and scientists, the Management Board assessed the legal risks in connection with the use of glyphosate as low."); ¶ 271 ("Regulatory authorities around the world consider glyphosate-based herbicides as safe when used as directed.").

1   *Act 345 Police & Fire Ret. Sys.* v. *Align Tech., Inc.*, 856 F.3d 605, 615 (9th Cir. 2017) (quoting

2   *Omnicare* v. *Laborers Dist. Council*, 575 U.S. 175, 185-86 (2015)).[6]

3          Plaintiffs have made neither showing.  The Complaint does not even make a conclusory

4   allegation that defendants subjectively disbelieved their statements.  Nor do plaintiffs plead

5   anything at all to refute defendants' account of the regulatory record.  They cannot.  As the Eastern

6   District of California recently noted, with the exception of IARC, "virtually all other government

7   agencies and health organization that have reviewed studies on [glyphosate] have found there was

8   no evidence that it caused cancer."  *Nat'l Ass'n of Wheat Growers*, 309 F. Supp. 3d at 851; *see*

9   *supra* at 2 & n.2, 5.

10          Because plaintiffs cannot plead falsity, they instead argue that defendants' references to the

11   regulatory record were misleading, for two reasons.  *First*, the Complaint alleges that certain

12   glyphosate plaintiffs planned to "present evidence" that "Monsanto procured regulatory approvals

13   for glyphosate in part by withholding adverse scientific evidence from regulators and ghostwriting

14   research."  ¶ 273.  Even assuming that defendants were contemporaneously aware of this

15   "evidence" — an assumption that is not well pleaded, *see infra* Point II — it is not fraudulent to

16   cite a regulatory decision simply because it has been criticized by adverse litigants.  As the

17   Supreme Court has instructed, "[r]easonable investors understand that opinions sometimes rest on a

18   weighing of competing facts," and do "not expect that *every* fact known to an issuer supports its

19   opinion statement."  *Omnicare*, 575 U.S. at 189-90; *see also City of Dearborn*, 856 F.3d at 615

20   ("[L]iability is not necessarily established by demonstrating that an issuer knows, but fails to

21   disclose, some fact cutting the other way." (internal quotation omitted)).[7]

22

---

23   [6] Under *Omnicare*, a plaintiff can also plead that an opinion statement was misleading by

24   "identify[ing] particular (and material) facts going to the basis for the issuer's opinion . . . whose
     omission makes the opinion statement at issue misleading to a reasonable person reading the

25   statement fairly and in context."  *City of Dearborn*, 856 F.3d at 615 (quoting *Omnicare*, 575 U.S. at
     194).  The Supreme Court has cautioned that this is "no small task for an investor."  *Omnicare*, 575

26   U.S. at 194.  The Complaint does not appear to articulate such a theory — nor could it.

27   [7] Regulators have likewise accorded little weight to the evidence presented in the glyphosate

28   litigation.  Indeed, Canadian regulators specifically explained that the documents cited by plaintiffs
     "did not create doubt or concern regarding the scientific basis" for their conclusion about the

*Second*, plaintiffs claim that falsity is pleaded because "regulators had approved glyphosate (the chemical itself) and not Roundup (the formulated [herbicide])." ¶ 273.  But the challenged statements were likewise directed to glyphosate.  *See, e.g.*, ¶ 250 ("conclusions of regulators around the world . . . all confirm *glyphosate* is safe and does not cause non-Hodgkin's lymphoma" (emphasis added)).  Moreover, as both the Supreme Court and the Ninth Circuit have cautioned, alleged misstatements must be analyzed "in context." *Omnicare*, 575 U.S. at 190, 194; *City of Dearborn*, 856 F.3d at 615 (same).  Here, defendants made clear that their opinions were based on regulatory findings with respect to the safety of glyphosate.  *See* ¶ 254 (quoting Mr. Baumann as stating on August 23, 2018:  "I know that there's a lot of talk out there that what the EPA has said in terms of carcinogenicity of glyphosate as an active [ingredient] does not necessarily relate to the formulations out there but I think, if you have such strong, robust evidence, the data that is out there appears to be very, very consistent.").[8]  Investors were not deceived by this transparent discussion of the overwhelming regulatory approval for glyphosate.

**The "weight" of scientific evidence.**  Defendants also repeatedly opined that the scientific evidence favored Monsanto's position in the glyphosate litigation.  *See, e.g.*, ¶ 250 ("Bayer believes that the jury's decision [in the *Johnson* trial] is at odds with the weight of scientific evidence . . . .").[9]  These were statements of opinion twice over, first with respect to the potential outcome of the glyphosate litigation and second with respect to defendants' views on the overall state of the science.  *See In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 543 (S.D.N.Y. 2015) ("Courts have

---

absence of any link between glyphosate and cancer.  Ex. 8 (Health Canada, *Statement from Health Canada on Glyphosate* (Jan. 11, 2019)) at 1.

[8] *See also* ¶ 272 ("Some plaintiffs say that the interplay between glyphosate and the surfactant represent a danger for the user of the product.  Regulatory authorities, however, have assessed the safety of the surfactant category, which are used in glyphosate-based herbicides.  The U.S. Environmental Protection Agency concluded in 2009 that these surfactants are not carcinogenic.").

[9] *See, e.g.*, ¶ 253 ("We will rigorously defend this case . . . .  We have strong science supporting, across the board, the fact that there is no relation between the application of the product or products or herbicide-based formulations of glyphosate and cancer causes."); ¶ 256 ("[T]he data, the facts and the regulatory standing clearly stand in favor of glyphosate . . . that's why we've been very outspoken on . . . the verdict being inconsistent with facts, data, science and regulatory standing of the product.").

1  repeatedly held publicly stated interpretations of the results of various clinical studies to be

2  opinions because reasonable persons may disagree over how to analyze data and interpret results,

3  and neither lends itself to objective conclusions.") (internal quotation and alteration omitted);

4  *Tongue* v. *Sanofi*, 816 F.3d 199, 214 (2d Cir. 2016) ("a dispute about the proper interpretation of

5  data" cannot serve as the basis for a securities fraud claim).

6      Once again, there are no well-pleaded allegations in the Complaint suggesting that

7  defendants subjectively disbelieved any part of the challenged statements.  This is unsurprising,

8  because defendants' statements were closely aligned with both the regulatory findings on

9  glyphosate, *see supra* at 2 & n.2, 5, and Judge Chhabria's conclusion that the plaintiffs' evidence

10  was "rather weak" and "too equivocal to support any firm conclusion that glyphosate causes NHL."

11  *Daubert* Decision at 1108-09.  Indeed, given the regulatory findings on the scientific literature, it

12  would have been "false and misleading" for defendants to suggest that glyphosate *is* a carcinogen.

13  *Nat'l Ass'n of Wheat Growers*, 309 F. Supp. 3d at 851, 853; *see also Nat'l Ass'n of Wheat*

14  *Growers*, 468 F. Supp. 3d at 1261 (noting "the heavy weight of authority stating that glyphosate

15  does not cause cancer").

16      Plaintiffs ignore all of that, instead citing contrary testimony by hired experts in the

17  glyphosate litigation, which they call "considerable scientific evidence concluding that glyphosate

18  could cause cancer."  ¶ 273.  This is simply a retread of plaintiffs' failed theory that defendants

19  misleadingly represented that "unequivocal evidence" supported glyphosate's safety.  *Compare*

20  First Amended Complaint ¶ 22 ("Defendants claimed that there was certain unequivocal

21  evidence"), *with* ¶ 22 ("Defendants claimed that there was certain unequivocal scientific

22  evidence")*.*  As plaintiffs have already conceded, defendants consistently spoke about the "weight

23  of the scientific evidence" — statements that (accurately) implied broad consensus in the scientific

24  world, but not unanimity.  *See* First Amended Complaint ¶ 267 (collectively characterizing

25  defendants' comments on glyphosate research as statements "concerning the weight of the

26  scientific evidence").  Plaintiffs' allegations "must be based upon what [d]efendants *actually* said,

27  not upon [p]laintiffs' desired interpretation of what [d]efendants said."  *In re Invision Techs., Inc.*

28  *Sec. Litig.*, 2006 WL 538752, at *6 (N.D. Cal. Jan. 24, 2006) (emphasis in original); *see Wochos* v.

1    *Tesla, Inc.*, 985 F.3d 1180, 1193 (9th Cir. 2021) (rejecting plaintiffs' attempt to "rewrite[]"

2    disclosure to suit its claim).

3        **"800 studies."**  In addition to attacking defendants' general opinions on the "weight" of the

4    scientific evidence, the Complaint also challenges a series of statements by Bayer and its officials

5    that refer to "800 studies" supporting the safety of glyphosate.  *See, e.g.*, ¶¶ 253, 256-58, 260-61.

6    Plaintiffs claim these were revealed as "false and misleading" when Bayer's chief financial officer

7    Wolfgang Nickl "admitted" in an April 28, 2020 statement that — per plaintiffs' paraphrase — the

8    "vast majority of these studies did not assess either glyphosate's carcinogenicity or Roundup's

9    carcinogenicity."  ¶ 273 (citing ¶¶ 127, 158, 183, 193-94).  Mr. Nickl made no such admission.

10   Here is what he actually said:  "[T]here have been more than 100 studies *that were carried out by*

11   *the EPA* when it comes to cancer risk analysis and a total of more than 800 safety studies, which

12   have been submitted to the regulatory authorities."  ¶ 272 (emphasis added).  That statement

13   addresses the large subset of studies that the EPA focused on during its review; it was not an

14   admission that the balance of the "800 safety studies" were unrelated to carcinogenicity.[10]

15       Plaintiffs' fallback position is that it was fraudulent for defendants to reference "800

16   scientific studies . . . confirming that glyphosate is safe for use," ¶ 267, because "Monsanto was

17   unable to and never would present evidence at trial of 800 or more scientific studies showing

18   glyphosate does not cause cancer," but instead based its trial defenses "primarily on approximately

19   63 epidemiological studies."  ¶ 273.  This again misses the mark.  Defendants never represented to

20   the market that Bayer's trial strategy would be to litter the dockets with hundreds of studies.  The

21   company's trial strategy of focusing the jury's attention on certain evidence does not render false or

22   misleading their references to the existence of *still more* evidence that defendants believed

23   supported their views that glyphosate is a safe product.[11]

24   ───────────────

25   [10] Plaintiffs similarly maintain that Bayer "admitted" its statements were false through responses
     that the company gave to questions during a 2020 stockholder meeting.  ¶¶ 193-95.  The Court has

26   already rejected this inference.  Dismissal Order at 7 ("[W]hen Bayer stated that the 800 studies
     were 'not limited to carcinogenicity,' . . . it is not tantamount to an admission that the studies were

27   unrelated to carcinogenicity.").

28   [11] Plaintiffs focus particular attention on a government-funded long-term epidemiological study of
     more than 50,000 licensed pesticide applicators, which found no link between glyphosate use and

**Glyphosate versus Roundup.**  Lastly, plaintiffs allege that Mr. Baumann misled investors during the post-*Johnson* conference call on August 23, 2018, when, in response to an analyst's question about whether "different formulations of Roundup" might have "different properties" relative to glyphosate, he opined to the effect that, "based on the studies that are out there," "in general, there is no difference . . . between the assessment of glyphosate as an active [ingredient] and then glyphosate-based formulations that are being used."  ¶ 254; *see* Ex. 11 (S&P Global transcript of Aug. 23, 2018 Bayer AG "Special Call") at 9-10.

The Court previously held that plaintiffs pleaded falsity with respect to this characterization of the scientific record because it was "in contradiction to Monsanto's own assessment of the science," relying on a 2002 email exchange between Monsanto researchers.  Dismissal Order at 7.  However, plaintiffs present no particularized allegation to show that Mr. Baumann was contemporaneously aware of that 16-year-old correspondence.  To the contrary, plaintiffs directly allege that this document "[w]as never reviewed or even requested by [d]efendants as part of their due diligence." ¶ 9.  Mr. Baumann's opinion on the available research "in general" could not have been rendered false by an alternative opinion that he is not alleged to have seen, expressed by an employee at a company that Bayer had acquired only months before.  *See In re Sanofi Sec. Litig.*, 87 F. Supp. 3d at 543.

In any event, plaintiffs no longer even point to that stale email exchange as a basis for alleging falsity.  ¶ 273.  Instead, plaintiffs now insist Mr. Baumann's statement was false because of "considerable scientific evidence that glyphosate was more likely to be carcinogenic and more likely to cause NHL when contained in a formulation with a surfactant such as Roundup."  ¶ 273.  But Mr. Baumann was providing his "general" interpretation of the studies "that are out there" as

---

cancer.  According to the Complaint, defendants' public reliance on that study was "false and misleading" because glyphosate plaintiffs would present evidence that the study was "deeply flawed."  ¶ 273.  Yet Judge Chhabria saw that same evidence, and concluded that Monsanto's trial experts "reasonably consider[ed]" publications from that study "to be the most powerful evidence regarding the relationship between glyphosate and NHL."  *Daubert* Decision at 1126.  Regulators have likewise cited it to support their findings on glyphosate's safety.  Ex. 6 (EPA, *Glyphosate: Proposed Interim Registration Review Decision* (Apr. 23, 2019)) at 19.  Plaintiffs cannot explain how it was misleading for defendants to adopt the same reading of the scientific literature as the courts and the federal government.

1   he understood them, not assuring the public that the glyphosate plaintiffs would be unable to

2   present any evidence on the point.  Moreover, Mr. Baumann made clear that his opinion was based

3   primarily on the latest research conducted under the auspices of the U.S. government, which he

4   correctly explained was "actually done on the application of glyphosate-based formulations."  ¶ 254

5   (referencing the "2017 U.S. ag study" discussed *supra* at 4-5).  And that opinion was consistent

6   with regulatory findings.  *See* Ex. 2 (European Food Safety Authority, *Conclusion on the Peer*

7   *Review of the Pesticide Risk Assessment of the Active Substance Glyphosate* (Nov. 12, 2015)) at 11

8   ("From the wealth of epidemiological studies, the majority of experts concluded that there is very

9   limited evidence for an association between glyphosate-based formulations and non-Hodgkin

10   lymphoma, overall inconclusive for a causal or clear associative relationship between glyphosate

11   and cancer in human studies.").  Mr. Baumann could not have misled the market by expressing

12   well-founded opinions that closely followed the published government guidance.

13   **II.   THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER.**

14          A plaintiff asserting securities fraud must also plead particularized facts giving rise to a

15   strong inference that each defendant "made false or misleading statements either intentionally or

16   with deliberate recklessness."  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005); *see*

17   15 U.S.C. § 78u–4(b)(2).  "[D]eliberate recklessness" is "a form of intentional or knowing

18   misconduct" reflecting "an extreme departure from the standards of ordinary care . . . that is either

19   known to the defendant or is so obvious that the actor must have been aware of it."  *Nguyen* v.

20   *Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020) (internal quotation omitted); *In re Silicon*

21   *Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999).  In assessing whether a plaintiff has

22   pleaded scienter, courts consider "whether all of the facts alleged, taken collectively, give rise to"

23   an inference that is not "merely plausible or reasonable," but "at least as compelling as any

24   opposing inference of nonfraudulent intent."  *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S.

25   308, 314, 322-23 (2007) (emphasis omitted); *see also Zucco Partners, LLC* v. *Digimarc Corp.*, 552

26   F.3d 981, 991-92 (9th Cir. 2009).  As the Ninth Circuit has observed, "[t]he PSLRA's strong

27   inference requirement has teeth" and "is an exacting pleading obligation."  *Nguyen*, 962 F.3d at 414

28   (internal quotation omitted).

Plaintiffs were unable to point to anything in the First Amended Complaint satisfying this "exacting" standard.  Dismissal Order at 10.  Their new complaint is no improvement, adding only superficial allegations that are either irrelevant or facially insufficient to plead scienter under settled Ninth Circuit law.  The far more cogent inference is that defendants — like virtually every regulator and health authority — reasonably believed that the science showed glyphosate to be safe and non-carcinogenic.

The Complaint's first pass at pleading scienter is an exercise in copy-and-paste:  Plaintiffs assert that "[d]efendants knew or recklessly disregarded" the same laundry list of "facts" that supposedly rendered their statements false.  ¶ 278.  This contributes nothing to the scienter analysis, because plaintiffs nowhere explain — as they must — which defendants were apprised of these purported facts, or when or how they learned of them.  15 U.S.C. § 78u–4(b)(2); *Tadros* v. *Celladon Corp.*, 2016 WL 5870002, at *14 (S.D. Cal. Oct. 7, 2016), *aff'd*, 738 F. App'x 448 (9th Cir. 2018) (scienter not pleaded where complaint failed to "provide specific details about each Defendants' access to information, what Defendants knew, nor how they knew it"); *In re Ferrellgas Partners, L.P., Sec. Litig.*, 2018 WL 2081859, at *17 (S.D.N.Y. Mar. 30, 2018) (rejecting a scienter pleading based on a conclusory assertion that defendants "knew or recklessly disregarded" certain information), *aff'd*, 764 F. App'x 127 (2d Cir. 2019).

Plaintiffs next allege that certain of the individual defendants *must* have acted with scienter because they signed or certified documents containing purported falsehoods.  ¶¶ 285, 286, 288, 294, 297.  This reduces to the vacuous proposition that scienter is pleaded when a defendant signs a false statement.  That standard would "eviscerate the pleading requirements for scienter set forth in the PSLRA." *Zucco*, 552 F.3d at 1004.  For that reason, the Ninth Circuit has held that "boilerplate language" and certifications "add nothing substantial to the scienter calculus." *Id*. at 1003-04. Equivalent efforts to evade the PSLRA are routinely rejected. *See, e.g.*, *Kim* v. *Advanced Micro Devices, Inc.*, 2019 WL 2232545, at *10 (N.D. Cal. May 23, 2019).

The Complaint's remaining scienter allegations are restricted to Messrs. Baumann and Wenning.  Plaintiffs ask the Court to infer that Mr. Baumann had fraudulent intent because of two generic statements he made about Bayer's litigation strategy.  According to the Complaint, on

August 23, 2018, Mr. Baumann said that "Bayer and the joint litigation team are working to ensure that, going forward," the scientific evidence supporting the safety of glyphosate "will get the full consideration it deserves."  ¶¶ 251, 284.  The Complaint next points to a magazine article published on January 21, 2019, in which Mr. Baumann was paraphrased as saying that "Bayer had adjusted the preparation for the next round of court battles," and he was "hopeful" Bayer's "new approach" would see the "question of causation analysed and assessed in a substantially more objective manner than was the case in the *Johnson* trial."  ¶¶ 134, 265, 284.

At most, these statements indicate that Mr. Baumann had high-level knowledge of Bayer and Monsanto's litigation strategy.  But merely alleging awareness of litigation strategy falls well short of pleading knowledge of or deliberate recklessness concerning the specific evidence and scientific literature that plaintiffs point to as evidence of falsity.  Courts have repeatedly rejected the notion that strategic involvement by an executive satisfies the PSLRA's scienter pleading standard, absent allegations of specific information conveyed to the executive that made their statements false or misleading.  *See, e.g.*, *In re AnaptysBio, Inc. Sec. Litig.*, 2021 WL 4267413, at *11 (S.D. Cal. Sept. 20, 2021) (finding an allegation that a CEO was "heavily involved" in clinical trials insufficient to show he knew information inconsistent with his statements about the results of those trials).

That leaves Mr. Wenning, for whom plaintiffs contend that scienter is pleaded because he was Chairman of Bayer's Supervisory Board and its Glyphosate Litigation Committee.  ¶¶ 289-92.  Mr. Wenning did not join the litigation committee until June 2019.  ¶ 289.  The only purported misstatements attributed to him are found in two *April* 26, 2019 letters to stockholders.  ¶¶ 269, 288.  Mr. Wenning's committee membership is thus irrelevant to this litigation.

Furthermore, board and "committee membership, without more, fall[] far short of establishing that [a] director[] acted with scienter."  *In re Silicon Storage Tech, Inc. Shareholder Deriv. Litig.*, 2009 WL 1974535, at *11 (N.D. Cal. 2009).  To plead scienter under that theory, plaintiffs must supply specific allegations that are "particular and suggest that [Mr. Wenning] had actual access to the disputed information" showing his statements to be false.  *S. Ferry LP, No. 2* v. *Killinger*, 542 F.3d 776, 785-86 (9th Cir. 2008).  The Complaint contains no such allegations.

1    Instead, it points to a Bayer annual report in which the company disclosed that its board twice

2    discussed the "status" of the litigation "in detail" in late 2018. ¶ 238 (referenced in ¶ 292).  Absent

3    particularized allegations setting out how Mr. Wenning's discussion of litigation "status" translated

4    into his discovery of or reckless disregard for the evidence that purportedly proved his statements

5    about glyphosate false, plaintiffs cannot establish the requisite "nexus between the [allegedly]

6    wrongful behavior and [his] knowledge." *Curry* v. *Yelp Inc.*, 875 F.3d 1219, 1228 (9th Cir. 2017).

7             Even viewed collectively, these makeweight allegations do not support an inference of

8    fraudulent intent as to any defendant.  The opposing inference, meanwhile, is not just cogent but

9    overwhelming.  Defendants' statements about glyphosate's safety closely tracked the findings of

10   the federal courts and health authorities the world over — as well as the litigation posture that

11   Monsanto's lawyers had taken in trial and appellate courts for many years.  *See supra* Point I.

12   Against that backdrop, the far more plausible conclusion is that defendants reasonably believed

13   what they said.

14   **III.    THE COMPLAINT FAILS TO PLEAD A VIOLATION OF SECTION 20(a).**

15            Because the Complaint pleads no underlying violation of the Exchange Act with respect to

16   defendants' characterizations of the science and the regulatory findings on glyphosate, plaintiffs

17   cannot pursue Section 20(a) claims premised on those statements.  *In re Cutera Sec. Litig.*, 610 F.3d

18   1103, 1113 n.6 (9th Cir. 2010).

19                                      **CONCLUSION**

20            The Complaint fails to plead violations of the Exchange Act with respect to defendants'

21   statements concerning the scientific and regulatory support for glyphosate's safety.  Accordingly,

22   plaintiffs should be barred from proceeding on those inactionable statements.

23

24

25

26

27

28

Dated:   January 31, 2022

By:      /s/ Jordan Eth
         Jordan Eth (CA SBN 121617)
         JEth@mofo.com
         Mark R.S. Foster (CA SBN 223682)
         MFoster@mofo.com
         **MORRISON & FOERSTER LLP**
         425 Market Street
         San Francisco, CA  94105
         Telephone:  (415) 268-7126
         Facsimile:  (415) 268-7522

         William Savitt (*pro hac vice*)
         Noah B. Yavitz (*pro hac vice*)
         Emily R. Barreca (*pro hac vice*)
         **WACHTELL, LIPTON, ROSEN & KATZ**
         51 West 52nd Street
         New York, NY  10019
         Telephone:  (212) 403-1000
         Facsimile:  (212) 403-2000

         *Attorneys for defendants Bayer*
         *Aktiengesellschaft, Werner Baumann, Werner*
         *Wenning, Liam Condon, Johannes Dietsch, and*
         *Wolfgang Nickl*