Jordan Eth (CA SBN 121617)
JEth@mofo.com
Mark R.S. Foster (CA SBN 223682)
MFoster@mofo.com
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA  94105
Telephone:  (415) 268-7126
Facsimile:  (415) 268-7522

William Savitt (*pro hac vice*)
Noah B. Yavitz (*pro hac vice*)
Emily R. Barreca (*pro hac vice*)
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, NY  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000

*Attorneys for defendants Bayer
Aktiengesellschaft, Werner Baumann,
Werner Wenning, Liam Condon,
Johannes Dietsch, and Wolfgang Nickl*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| SHEET METAL WORKERS' NATIONAL PENSION FUND and INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 710 PENSION FUND, individually and as Lead Plaintiffs on behalf of all others similarly situated, and<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS PENSION FUND OF EASTERN PENNSYLVANIA AND DELAWARE, individually and as Named Plaintiff, on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>     v.<br><br>BAYER AKTIENGESELLSCHAFT, WERNER BAUMANN, WERNER WENNING, LIAM CONDON, JOHANNES DIETSCH, and WOLFGANG NICKL,<br><br>        Defendants. | Case No.:  3:20-cv-04737-RS<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**<br><br><u>CLASS ACTION</u><br><br>Date:  April 14, 2022<br>Time:  1:30 p.m.<br><br>Judge:  Richard Seeborg<br>Courtroom:  3 — 17th Floor |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.    THE COMPLAINT FAILS TO PLEAD FALSITY WITH PARTICULARITY.................... 2

II.   THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER. ......... 10

III. THE COMPLAINT FAILS TO PLEAD A VIOLATION OF SECTION 20(a). .................. 15

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Brody* v. *Transitional Hosps. Corp.*,
   280 F.3d 997 (9th Cir. 2002)............................................................................................ 3

*Cambridge Ret. Sys.* v. *Jeld-Wen Holding, Inc.*,
   496 F. Supp. 3d 952 (E.D. Va. 2020)............................................................................ 3

*City of Dearborn Heights* v. *Align Tech., Inc.*,
   856 F.3d 605 (9th Cir. 2017)................................................................................*passim*

*Crutchfield* v. *Match Grp., Inc.*,
   529 F. Supp. 3d 570 (N.D. Tex. 2021)........................................................................... 3

*Haideri* v. *Jumei Int'l Holding Ltd.*,
   2021 WL 4170791 (N.D. Cal. Sept. 14, 2021) .................................................... 14 n.10

*Hunt* v. *Bloom Energy Corp.*,
   2021 WL 4461171 (N.D. Cal. Sept. 29, 2021) .................................................... 14 n.10

*In re Alphabet, Inc. Sec. Litig.*,
   1 F.4th 687 (9th Cir. 2021) .......................................................................................... 11

*In re AnaptysBio, Inc. Sec. Litig.*,
   2021 WL 4267413 (S.D. Cal. Sept. 20, 2021) ............................................................ 13

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010).................................................................................... 15

*In re Genworth Fin. Inc. Sec. Litig.*,
   103 F. Supp. 3d 759 (E.D. Va. 2015)......................................................................... 13

*In re Invision Techs., Inc. Sec. Litig.*,
   2006 WL 538752 (N.D. Cal. Jan. 24, 2006) ................................................................ 2

*In re Quality Systems, Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017)............................................................................... 12-13

*In re RAIT Fin. Tr. Sec. Litig.*,
   2008 WL 5378164 (E.D. Pa. Dec. 22, 2008) ............................................................. 13

*In re Rigel Pharms., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012)...................................................................................... 15

*In re Roundup Prod. Liab. Litig.*,
   390 F. Supp. 3d 1102 (N.D. Cal. 2018) ........................................................ 6 & n.3, 9

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999)...................................................................................... 14

DEFS.' REPLY P&A IN FURTHER SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.:  3:20-CV-04737-RS

ii

*In re Silver Wheaton Corp. Sec. Litig.*,
  2016 WL 3226004 (C.D. Cal. June 6, 2016) ................................................................. 14

*In re VeriFone Holdings, Inc. Sec. Litig.*,
  704 F.3d 694 (9th Cir. 2012) ............................................................................... 11, 14

*In re Yahoo! Inc. Sec. Litig.*,
  611 F. App'x 387 (9th Cir. 2015) ............................................................................ 4

*Khoja* v. *Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) .......................................................................... 5 n.2

*Klein* v. *Altria Grp., Inc.*,
  525 F. Supp. 3d 638 (E.D. Va. 2021) ...................................................................... 3

*Lewis* v. *Straka*,
  535 F. Supp. 2d 926 (E.D. Wis. 2008) ................................................................... 13

*Lipton* v. *Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) .............................................................................. 15

*Loftus* v. *Primero Mining Corp.*,
  230 F. Supp. 3d 1209 (C.D. Cal. 2017) ................................................................... 4

*Matrixx Initiatives, Inc.* v. *Siracusano*,
  563 U.S. 27 (2011) ..................................................................................... 12 n.7

*Metzler Inv. GmbH* v. *Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) .............................................................................. 3

*Musacchio* v. *United States*,
  577 U.S. 237 (2016) ......................................................................................... 8

*Nat'l Ass'n of Wheat Growers* v. *Becerra*,
  468 F. Supp. 3d 1247 (E.D. Cal. 2020) ............................................................... 6, 8 n.4

*Nat'l Ass'n of Wheat Growers* v. *Zeise*,
  309 F. Supp. 3d 842 (E.D. Cal. 2018) .................................................................... 4

*Nguyen* v. *Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020) ............................................................................... 14

*Omnicare, Inc.* v. *Laborers Dist. Council*,
  575 U.S. 175 (2015) ..................................................................................... 3, 5

*Prodanova* v. *H.C. Wainwright & Co., LLC*,
  993 F.3d 1097 (9th Cir. 2021) .......................................................................... 4, 11

*Ronconi* v. *Larkin*,
  253 F.3d 423 (9th Cir. 2001) .......................................................................... 13 n.9

DEFS.' REPLY P&A IN FURTHER SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.:  3:20-CV-04737-RS

iii

*Rubke* v. *Capitol Bancorp Ltd.*,
  551 F.3d 1156 (9th Cir. 2009)................................................................................ 14 n.10

*Schueneman* v. *Arena Pharms., Inc.*,
  840 F.3d 698 (9th Cir. 2016).......................................................................................... 12

*Smallen* v. *W. Union Co.*,
  2019 WL 1382823 (D. Colo. Mar. 27, 2019),
  *aff'd*, 950 F.3d 1297 (10th Cir. 2020) ...................................................................... 3, 9

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ........................................................................................................ 11

*Webb* v. *Solarcity Corp.*,
  884 F.3d 844 (9th Cir. 2018)......................................................................................... 15

*Wochos* v. *Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021)......................................................................................... 2

*Zucco Partners, LLC* v. *Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009)................................................................... 13-14 & n.10

# INTRODUCTION

In opposing dismissal, plaintiffs maintain that Bayer and members of its leadership committed securities fraud by opining on the regulatory and scientific evidence supporting glyphosate's safety. Defendants believed that this evidence favored the conclusion that glyphosate is not carcinogenic. Plaintiffs do not deny that this belief closely tracked the published findings of global regulators and multiple federal courts — they just insist that it was fraudulent for defendants to cite those findings as support for Monsanto's position in glyphosate-related tort litigation.

Because the Complaint cannot plead falsity on this theory, plaintiffs resort to rewriting defendants' statements into a blanket assurance that Monsanto's "defenses were supported by such overwhelming, unequivocal scientific evidence that [it] faced little risk of ultimate liability" in the glyphosate litigation. Pls.' P&A in Opp'n to Defs.' Motion to Dismiss ("Opp.") at 2. Defendants never said that. To the contrary, they acknowledged that the litigation posed a "challenge" and a "material" risk to Bayer's balance sheet. And while defendants did not attempt to detail the evidence that tort plaintiffs would advance in future trials, the Exchange Act did not require them to undertake that public guesswork.

Plaintiffs also cannot identify anything in their pleadings that gives rise to a "strong" inference of knowing or deliberately reckless misrepresentation. Instead, plaintiffs contend only that defendants signed Bayer disclosures and could have accessed scientific evidence that supposedly proved their statements false. Those unparticularized allegations do not support an inference of fraudulent intent. Nor can plaintiffs even offer any cognizable motive for defendants' purported deception. Absent any of that, the more compelling inference is that defendants — just like regulators the world over — expressed confidence in glyphosate's safety because they reasonably believed it was safe.

Once again, plaintiffs have failed to plead actionable misstatements about the regulatory and scientific support for glyphosate. The Court should reaffirm its prior order and foreclose plaintiffs from pursuing that flawed theory.

DEFS.' REPLY P&A IN FURTHER SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.:  3:20-CV-04737-RS

1

**ARGUMENT**

**I.    THE COMPLAINT FAILS TO PLEAD FALSITY WITH PARTICULARITY.**

To state a Section 10(b) claim, plaintiffs must identify false representations and set out with particularity the "reasons why [each] statement is misleading." *Wochos* v. *Tesla, Inc.*, 985 F.3d 1180, 1188 (9th Cir. 2021) (internal quotation omitted).  Here, because all of the challenged statements concerning glyphosate were expressions of opinion, plaintiffs must present particularized allegations showing that defendants did not believe their own words, supplied untrue supporting facts, or affirmatively misled the market through the omission of material facts.  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys.* v. *Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017).  Plaintiffs' opposition briefing makes clear that the Complaint does not satisfy this standard.  Instead, plaintiffs seek to shift the goal posts.

*First*, plaintiffs insist that because the Complaint now seeks to characterize defendants' statements as "misrepresentations regarding the evidentiary basis for Monsanto's science-based trial defenses," the Court must follow suit.  Opp. 9 n.8.  But as the Ninth Circuit recently re-emphasized, securities plaintiffs cannot plead fraud by "rewriting" disclosures to suit their claims. *Wochos*, 985 F.3d at 1193.  Plaintiffs' allegations "must be based upon what [d]efendants actually said, not upon [p]laintiffs' desired interpretation of what [d]efendants said." *In re Invision Techs., Inc. Sec. Litig.*, 2006 WL 538752, at *6 (N.D. Cal. Jan. 24, 2006).  As the Complaint itself shows, defendants were not purporting to detail the "evidentiary basis" for Monsanto's defenses — they were explaining to the public why they believed the scientific and regulatory evidence supported Monsanto's position in the glyphosate litigation.  *See, e.g.*, Lynch Ex. 3 (S&P Global transcript of Aug. 23, 2018 Bayer AG "Special Call") at 5 ("Looking at the verdict in the *Johnson* trial, we think it is inconsistent with the robust science-based conclusions of regulators and health authorities worldwide, and we believe it is wrong.").[1]

---

[1] Capitalized terms have the meanings specified in defendants' opening brief, Dkt. No. 110 ("MTD Br.").  All references to "¶ __" are to paragraphs in the Complaint.  All references to "Yavitz Ex. __" and "Lynch Ex. ___" are to the exhibits attached to the Declaration of Noah B. Yavitz, Dkt. No. 111, and the Declaration of John F. Lynch, Dkt. No. 63, respectively.

*Second*, citing two decisions from the Eastern District of Virginia, plaintiffs suggest that because defendants expressed opinions on the science supporting glyphosate's safety, they "had a duty to tell the entire truth" by forecasting the arguments and evidence that would be presented by glyphosate plaintiffs in future cases.  Opp. 10 (quoting *Klein* v. *Altria Grp., Inc.*, 525 F. Supp. 3d 638, 663 (E.D. Va. 2021) and citing *Cambridge Ret. Sys.* v. *Jeld-Wen Holding, Inc.*, 496 F. Supp. 3d 952 (E.D. Va. 2020)).  But the Ninth Circuit has rejected any such "completeness requirement." *Brody* v. *Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  Instead, an omission is actionable only if it "affirmatively creates an impression of a state of affairs that differs in a material way from the one that actually exists." *Id.* at 1006; *accord Metzler Inv. GmbH* v. *Corinthian Colls.,* 540 F.3d 1049, 1071 (9th Cir. 2008) (non-disclosure of pending federal investigation was not misleading because issuer did not make any "affirmative statement" that "suggested it was not under any regulatory scrutiny").

In its foundational decision in *Omnicare, Inc.* v. *Laborers District Council Construction Industry Pension Fund*,  557 U.S. 175 (2014), the Supreme Court cautioned that pleading fraud under this standard is "no small task," because "[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts." *Id.* at 189-90, 194.  As such, "liability is not necessarily established by demonstrating that an issuer knows, but fails to disclose, some fact cutting the other way," *City of Dearborn*, 856 F.3d at 615 (quoting *Omnicare*, 557 U.S. at 189) — and "nothing in [*Omnicare*] mandates that [a] company must fully lay out the opposing view's arguments and reasoning." *Smallen* v. *W. Union Co.*, 2019 WL 1382823, at *14 (D. Colo. Mar. 27, 2019), *aff'd*, 950 F.3d 1297 (10th Cir. 2020).  For that reason, "district courts have routinely found that a company-issued statement regarding its belief that a pending lawsuit is unfounded or without merit is an opinion that is generally not actionable as a misstatement of fact." *Crutchfield* v. *Match Grp., Inc.*, 529 F. Supp. 3d 570, 593 (N.D. Tex. 2021) (collecting cases).

Ignoring controlling cases like *Brody*, plaintiffs press their "completeness" theory because they cannot point to anything false or misleading about defendants' actual statements.  Their opposition runs through a laundry list of disclosures that accurately described the global regulatory

DEFS.' REPLY P&A IN FURTHER SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.:  3:20-CV-04737-RS

3

support for glyphosate and the science undergirding that regulatory guidance. None are pleaded false.

**Regulatory approval.** It is undisputed that, with the exception of the IARC, "virtually all other government agencies and health organizations that have reviewed studies on [glyphosate] have found there was no evidence that it caused cancer." *Nat'l Ass'n of Wheat Growers* v. *Zeise*, 309 F. Supp. 3d 842, 851, 853 (E.D. Cal. 2018). Defendants repeatedly opined that this near-unanimous regulatory assessment supported Monsanto's position in the glyphosate litigation, because it did.

Plaintiffs' opposition does not deny that these were statements of opinion, nor that defendants subjectively believed them. Instead, plaintiffs claim that the statements were fraudulent because the Exchange Act compelled defendants to disclose that "Monsanto had procured regulatory approvals for glyphosate in part by withholding adverse scientific evidence from regulators and ghostwriting research." Opp. 18. To begin, the Complaint does not plead that defendants were contemporaneously aware of the supposed evidence behind that accusation. Recognizing this pleading defect, plaintiffs argue that if defendants *subsequently* learned of information revealing that their prior statements were potentially misleading, they would have had "a duty to correct." Opp. 22 n.12. Plaintiffs have not pleaded subsequent discovery either, but more importantly "[n]either this circuit nor the Supreme Court has recognized a duty to correct." *Prodanova* v. *H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1112 (9th Cir. 2021); *see also In re Yahoo! Inc. Sec. Litig.*, 611 F. App'x 387, 389 (9th Cir. 2015) (same); *see also Loftus* v. *Primero Mining Corp.*, 230 F. Supp. 3d 1209, 1233 (C.D. Cal. 2017) (citing *Yahoo!* and declining to imply a "duty to correct").

In any event, Bayer has vigorously disputed the inference of regulatory impropriety that plaintiffs seek to draw, an inference that has never been endorsed by any court or regulator. It is well settled that federal securities law does not require "companies to engage in 'self-flagellation' by disclosing unproven allegations." *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1023-24 (N.D. Cal. 2020) (collecting cases). That rule applies with even greater force here, where Canadian officials have announced that the documents cited by plaintiffs "did not create doubt or concern

DEFS.' REPLY P&A IN FURTHER SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.: 3:20-CV-04737-RS

regarding the scientific basis" for their conclusion about the absence of any link between glyphosate and cancer. Yavitz Ex. 8 (Health Canada, *Statement from Health Canada on Glyphosate* (Jan. 11, 2019)) at 1.[2] Section 10(b) did not require defendants to highlight an unfounded critique of the global regulatory consensus on glyphosate's safety.

Plaintiffs' fallback argument is that defendants' statements misled the market into believing that regulators had approved Roundup, rather than glyphosate. But defendants were very clear on this distinction. *See, e.g.*, ¶ 250 ("regulators around the world all confirm that *glyphosate* is safe") (emphasis added); ¶ 261 ("regulatory authorities all over the world confirm[] that *glyphosate* is safe") (emphasis added); ¶ 269 ("[b]ased on the views held by regulatory authorities worldwide . . . the Management Board assessed the legal risks in connection with the use of *glyphosate* as low") (emphasis added). Plaintiffs attempt to muddy the waters by mischaracterizing defendants' statements, claiming, for example, that "Mr. Baumann went so far as to claim that 'everybody' who 'has studied the product . . . for regulatory and other purposes' had concluded that there is no relation between the application of glyphosate-based herbicides and cancer." Opp. 17. In fact, Mr. Baumann described a comprehensive study that found no "relation between the people that are applicating and using *glyphosate* on one side and then the occurrence of cancer," and then added that "everything we know, not only for the studies that were undertaken by Monsanto, but everybody else who has studied the product also for regulatory and other purposes, suggest that this is a very, very robust assessment," Lynch Ex. 3 (S&P Global transcript of Aug. 23, 2018 Bayer AG "Special Call") at 9 (emphasis added).

Moreover, as both the Supreme Court and the Ninth Circuit have cautioned, alleged misstatements must be analyzed "in context." *Omnicare*, 575 U.S. at 190, 194; *City of Dearborn*, 856 F.3d at 615 (same). Here, defendants directly acknowledged the distinction between regulatory

---

[2] Plaintiffs suggest that the Court cannot "construe any statements in [defendants'] exhibits in such a manner as to conflict with or undermine Plaintiffs' allegations or claims." Opp. 7 n.5. That is not the law. While it is improper to "assume the truth" of such exhibits, courts routinely take notice of documents to ascertain publicly available information that was available to defendants at the time of their purported misstatements. *See, e.g.*, *Khoja* v. *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1001 (9th Cir. 2018). This standard practice is not improper simply because a public document exposes deficiencies in a plaintiff's claims.

DEFS.' REPLY P&A IN FURTHER SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.: 3:20-CV-04737-RS

5

approvals of glyphosate and Roundup.  *See* ¶ 254 ("I know that there's a lot of talk out there that what the EPA has said in terms of carcinogenicity of glyphosate as an active [ingredient] does not necessarily relate to the formulations out there but I think, if you have such strong, robust evidence, the data that is out there appears to be very, very consistent.").  Stockholders and jurors were entitled to disagree with defendants' opinion that the near-unanimous regulatory support for Roundup's active ingredient bolstered Monsanto's position in the glyphosate litigation — but it was not securities fraud for defendants to advance that view.

**The "weight" of scientific evidence.**  Defendants also opined that the weight of the scientific evidence favored Monsanto in the glyphosate litigation.  These were statements of opinion both as to the state of the science and the impact that this evidence might have on jurors.  MTD Br. 10.  And those opinions had firm foundation in guidance from both regulators and the federal courts.  Indeed, months before any defendant spoke about the science on glyphosate, Judge Chhabria found that the tort plaintiffs' evidence was "rather weak" and "too equivocal to support any firm conclusion that glyphosate causes NHL."  *In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102, 1108-09 (N.D. Cal. 2018) ("*Daubert* Decision").[3]  *See also Nat'l Ass'n of Wheat Growers* v. *Becerra*, 468 F. Supp. 3d 1247, 1261 (E.D. Cal. 2020) (recognizing "the heavy weight of authority stating that glyphosate does not cause cancer").

Plaintiffs respond with strawmen, asserting that "[d]efendants' statements amounted to: 'the Roundup plaintiffs have virtually no evidence supporting their case.'"  Opp. 13.  This is just a reprise of their failed argument that defendants misrepresented the evidence on glyphosate's safety as "unequivocal."  That contention is belied not only by the actual words of defendants' statements, but also contemporaneous analyst commentary showing that the market understood defendants to be summarizing their views on the "weight of the science."  ¶ 132 (quoting an analyst as writing,

---

[3] Plaintiffs claim that Judge Chhabria held that the "issue of general causation in the Roundup litigation was 'very close.'"  Opp. 3.  This is just not true, as defendants have already explained.  In fact, Judge Chhabria held that it was a "very close question" whether plaintiffs could present even "*one* reliable expert opinion in support of their position" *Daubert* Decision at 1108 (emphasis added); *see also id.* (noting that "given how close the question is at the general causation phase, the plaintiffs face a daunting challenge" in their effort to "present enough evidence to warrant a jury trial on whether glyphosate caused the NHL they developed").

DEFS.' REPLY P&A IN FURTHER SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.:  3:20-CV-04737-RS

6

after an August 23, 2018 investor call: "we agree with Bayer that the *weight of the science supports the safety of glyphosate*" (emphasis added)).  Indeed, plaintiffs themselves echoed the market's understanding of defendants' statements, until they realized that it undermined their claims in this litigation.  *See* First Amended Complaint ¶ 267 (collectively characterizing defendants' comments on glyphosate research as statements "concerning the weight of the scientific evidence").

Nor can plaintiffs' "unequivocal" interpretation of defendants' statements be reconciled with Bayer's repeated cautionary statements about the potential for adverse verdicts in the glyphosate litigation.  For example, during the same conference call in which Mr. Baumann was purportedly touting Monsanto's "unassailable" and "unequivocal" scientific evidence, Opp. 4, 13, he frankly acknowledged that while Bayer believed that Monsanto had "meritorious defenses," victory on appeal was "far from certain[]" and Monsanto would face "challenges in [its] effort" to "vigorously defend these lawsuits and the products."  Lynch Ex. 3 (S&P Global transcript of Aug. 23, 2018 Bayer AG "Special Call") at 6.  Consistent with those cautionary statements, Bayer disclosed the glyphosate litigation as among its "material legal risks," warning that it was "possible that judgments or future settlements . . . could significantly affect [its] revenues and earnings."  Lynch Ex. 6 (Bayer 2019 Annual Report) at 152.  Moreover, the Court has already held that the *Johnson* verdict — which preceded all of defendants' statements on glyphosate safety — "disclosed to investors that Monsanto faced a serious risk in litigation."  Dismissal Order at 12 ("Until [the] verdict . . . investors would have viewed the links between Roundup and cancer as unproven, untested allegations." (internal quotation omitted)).  As such, even if investors otherwise could have inferred from omission that "the Roundup plaintiffs ha[d] virtually no evidence," Opp. 13, the *Johnson* decision and defendants' clear warnings about the risk of liability would have prevented any confusion.  And while defendants did not specifically itemize the evidence that gave rise to this "material legal risk," they had no duty to do so.  *See supra* at 3.[4]

---

[4] Plaintiffs also accuse defendants of "affirmatively misrepresent[ing] that the plaintiffs in the Roundup litigation would be unable to present evidence to support their claims beyond the IARC publication."  Opp. 14.  This is based on selective quotation of statements correctly explaining that the IARC is the only "regulatory authorit[y]" to classify glyphosate as even potentially carcinogenic.  ¶ 270 ("Following an intensive review, the Canadian ministry of health as recently as January 2019 clearly confirmed again that glyphosate was safe and emphasised that – based on the

DEFS.' REPLY P&A IN FURTHER SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.:  3:20-CV-04737-RS

7

**"800 studies."** Plaintiffs maintain that Bayer "admitted" in an April 28, 2020 response to a stockholder's question that the "vast majority" of the "800 safety studies" referenced by defendants in connection with the glyphosate litigation were "not actually studies of glyphosate's or Roundup['s] carcinogenicity." Opp. 11 (citing ¶ 194). The Court has already rejected this mischaracterization of Bayer's disclosure, which instead explained that the safety assessments "are not *limited* to carcinogenicity" but include "additional data" such as toxicity. ¶ 194 (emphasis added); *see* Dismissal Order at 7 ("[W]hen Bayer stated that the 800 studies were 'not limited to carcinogenicity,' . . . it is not tantamount to an admission that the studies were unrelated to carcinogenicity.").

In opposition, plaintiffs deny the plain language of the Court's decision and, in the same breath, suggest that the Court should reverse itself because the Complaint "provides additional factual detail to explain why the vast majority of the studies were . . . unrelated to carcinogenicity." Opp. 11 n.9. The operative pleadings on this point are nearly verbatim copies of plaintiffs' prior allegations. *See* Dkt. No. 102-4 (redline of First Amended Complaint against Complaint) at pp. 67, 68. Plaintiffs do not even attempt to explain why the Court should depart from its prior finding. *See Musacchio* v. *United States*, 577 U.S. 237, 245 (2016).[5]

Plaintiffs also ask the Court to infer fraud from the fact that Monsanto did not enter all 800 studies as evidence in the glyphosate litigation, but instead focused "primarily on approximately 63 epidemiological studies." ¶ 273. According to plaintiffs, this "blatantly misled investors about Monsanto's odds of success at trial," because defendants' statements led the market to believe that the studies "would at least be summarized by Monsanto at trial." Opp. 12. But even if it were

---

amount of glyphosate people come into contact with – there was currently no regulatory authority in the world that sees a risk of cancer. Only an assessment by a sub-organisation of the World Health Organization classifies glyphosate as 'probably carcinogenic.'"). That was accurate; the IARC *is* the only regulatory authority to describe glyphosate as potentially carcinogenic. *Nat'l Ass'n of Wheat Growers*, 468 F. Supp. 3d at 1261.

[5] Plaintiffs separately allege that during Monsanto's opening statement in the *Hardeman* litigation, one of its attorneys admitted that "not all" of the 800 studies "are dealing with cancer." ¶ 158. This tracked Bayer's April 2020 response, in which it likewise explained that not all of the 800 studies were limited to carcinogenicity. ¶ 193. As the Court has already observed, such statements are not admissions of securities fraud. Dismissal Order at 7.

DEFS.' REPLY P&A IN FURTHER SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.:  3:20-CV-04737-RS

8

appropriate to draw that relationship between the volume of authority cited and the "odds of success at trial," plaintiffs' theory would fail because defendants never purported to diagram Monsanto's trial strategy — they were instead stating the bases for their confidence in glyphosate's safety. As the Complaint acknowledges, the Monsanto trial team ultimately cited more than 217 favorable studies in its opening statement alone. ¶ 127. This was consistent with defendants' belief that the science favors the conclusion that glyphosate is not carcinogenic — an opinion fully supported by the findings of regulators and the courts.

**The Agricultural Health Study.** Throughout the class period, defendants made clear they believed the best evidence on glyphosate's safety was a government-funded, long-term epidemiological study of more than 50,000 licensed pesticide applications, which found no link between the use of glyphosate-based herbicides and cancer (the "Agricultural Health Study"). Plaintiffs say it was fraudulent for defendants to cite this study without setting out its potential vulnerability to "attacks by plaintiffs in the Roundup litigation." Opp. 12.

Defendants were under no such obligation to "lay out the opposing view's arguments and reasoning" on that study, *Smallen*, 2019 WL 1382823, at *14 — particularly when Judge Chhabria had already weighed the parties' competing claims and characterized the study as "the most powerful evidence regarding the relationship between glyphosate and NHL." *Daubert* Decision at 1126. Regulators have referenced the same research in support of their findings that glyphosate is not carcinogenic. Yavitz Ex. 6 (EPA, *Glyphosate: Proposed Interim Registration Review Decision* (Apr. 23, 2019)) at 19. It was not fraud for defendants to adopt those conclusions and cite the government-sponsored study as an important factor in their assessment of the overall scientific evidence on glyphosate.

**Glyphosate versus Roundup.** Plaintiffs claim that on two occasions, defendants stated there was "no evidence that [glyphosate-based herbicides] were more dangerous than glyphosate alone." Opp. 14. But defendants never said that. In August 2018, Mr. Baumann opined that "based on the studies that are out there," " in general, there is no difference . . . between the assessment of glyphosate as an active [ingredient] and then glyphosate based formulations." ¶ 254. Subsequently, in April 2020, Mr. Nickl observed that while "[s]ome plaintiffs say that the

DEFS.' REPLY P&A IN FURTHER SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.: 3:20-CV-04737-RS

9

interplay between glyphosate and the surfactant represent a danger for the user of the product," "[l]eading regulatory authorities came to the conclusion, again and again, that glyphosate-based herbicides from Bayer, when used appropriately, are safe and that glyphosate is not carcinogenic." ¶ 272 (noting that "[r]egulatory authorities . . . have assessed the safety of the surfactant category" and that the EPA "concluded in 2009 that these surfactants are not carcinogenic").

Plaintiffs insist these statements were false because of "considerable scientific evidence that glyphosate was more likely to be carcinogenic and more likely to cause NHL when contained in a formulation with a surfactant such as Roundup." Opp. 15. But they do not plead that any defendant was contemporaneously aware of this "evidence" — the bulk of which is not even alleged to have been presented by glyphosate plaintiffs until 2019, long after Mr. Baumann's August 2018 statement. ¶ 154. In any event, Mr. Baumann was providing his "general" interpretation of studies "that [we]re out there," not assuring the public that the glyphosate plaintiffs would be unable to present any evidence on the point. Mr. Baumann made clear that this opinion was based primarily on the Agricultural Health Study, which he correctly explained was "actually done on the application of glyphosate-based formulations." ¶ 254. And both his opinion and Mr. Nickl's were consistent with regulatory guidance. *See* Yavitz Ex. 2 (European Food Safety Authority, *Conclusion on the Peer Review of the Pesticide Risk Assessment of the Active Substance Glyphosate* (Nov. 12, 2015)) at 11 ("From the wealth of epidemiological studies, the majority of experts concluded that there is very limited evidence for an association between glyphosate-based formulations and non-Hodgkin lymphoma, overall inconclusive for a causal or clear associative relationship between glyphosate and cancer in human studies.").

**II.    THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER.**

The Complaint's failure to plead a "strong inference" of scienter provides a second, independent basis for dismissal. MTD Br. 14-17.[6] Plaintiffs were unable to locate anything in the First Amended Complaint supporting any inference of fraudulent intent. Dismissal Order at 10.

---

[6] Plaintiffs suggest that "[d]efendants do not dispute" that the Complaint adequately pleads loss causation. Opp. 8 n.6. Defendants expressly preserved their challenge to the adequacy of plaintiffs' allegations on loss causation, though they have not repeated that argument in light of the Court's Dismissal Order. MTD Br. 7 n.4.

The Complaint tries to paper over the problem with a series of conclusory, superficial allegations that do nothing to alter the Court's holding. Whether viewed individually or holistically, these allegations fail to support an inference of scienter "at least as compelling" as the straightforward opposing inference that defendants reasonably believed what they said. *See Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 322-23 (2007) (emphasis omitted).

Because the Complaint does not and cannot allege that defendants actually had knowledge of anything demonstrating falsity, plaintiffs instead devote pages of argument to the claim that two of the defendants — Messrs. Baumann and Wenning — had *access* to such information. To survive dismissal on that theory, however, plaintiffs must identify particularized allegations establishing not merely the theoretical possibility of access, but that both men personally accessed specific documents undermining their public statements. The Ninth Circuit's recent decision in *City of Dearborn Heights Act 345 Police & Fire Ret. Sys.* v. *Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017) demonstrates the high bar for such pleading. In that case, the plaintiffs similarly attempted to plead scienter by alleging that defendants had "actual access" to information that revealed the falsity of their statements. Despite detailed allegations from confidential informants who confirmed that the defendants actually had "direct access" to a data room that would have made the undisclosed misconduct "readily apparent," the Ninth Circuit still held that scienter was not pleaded because there were no allegations that the defendants "personally accessed the data room, or that the confidential informants personally disclosed [the misconduct]" to the defendants. *Id.* at 620. *See also Prodanova*, 993 F.3d at 1109 (requiring particularized allegations showing "how [a CEO's] position establishes that he had detailed and contemporaneous knowledge").

Plaintiffs' authorities confirm the difficulty of establishing scienter through "access." In *In re Alphabet, Inc. Securities Litigation*, for example, the plaintiffs "allege[d] with particularity that [a] memo informed senior executive leadership at Google of the scope of the problem, warned of the consequences of disclosure, and presented Google leadership with a clear decision on whether to disclose those problems." 1 F.4th 687, 706 (9th Cir. 2021) (cited at Opp. 20-21). Similarly, in *In re VeriFone Holdings, Inc. Securities Litigation*, the defendants were alleged to have reviewed internal reports revealing financial performance significantly below projections, despite telling

investors the company was meeting its targets. *See* 704 F.3d 694, 708-10 (9th Cir. 2012) (cited at Opp. 23). And in *Schueneman* v. *Arena Pharms., Inc.*, the complaint established that the defendants knew of an adverse study that was "*the* sticking point with the FDA," but told investors that "all the animal studies that [had] been completed" supported FDA approval. 840 F.3d 698, 708 (9th Cir. 2016) (cited at Opp. 23-24).[7]

The Complaint does not come close to satisfying the Ninth Circuit's standard. According to plaintiffs, Mr. Baumann had the "ability to access . . . all of Bayer's and Monsanto's internal documents and regulatory filings" because he was Bayer's chief executive, and because during a magazine interview he generally referenced the fact that "Bayer and the joint litigation team are working to ensure that, going forward" the scientific evidence supporting the safety of glyphosate "will get the full consideration it deserves." ¶¶ 134, 251, 265, 284.[8] None of that supports an inference that Mr. Baumann "personally accessed" any scientific evidence from the glyphosate litigation. To the contrary, his interview describes only high-level, strategic involvement.

Plaintiffs cannot compensate for this deficient pleading by alleging that Mr. Baumann "inform[ed] the market" of his "access to the information showing [his] statements were false or misleading." Opp. 22. Mr. Baumann did not purport to have personal access; instead he said that *Bayer* had access to Monsanto documents, and noted only that the company had identified no "smoking gun[s]" among Monsanto's internal documents. ¶ 140. Plaintiffs do not offer anything to support their implausible inference that Bayer's chief executive personally undertook a review of Monsanto's documents, nor do they allege any specifics concerning the information that Mr. Baumann received from his subordinates on that topic. This distinguishes the Complaint from the pleadings in *In re Quality Systems, Inc. Securities Litigation*, where the plaintiffs presented

---

[7] Plaintiffs' reliance on *Matrixx Initiatives, Inc.* v. *Siracusano*, 563 U.S. 27 (2011), is likewise misplaced. *See* Opp. 23 n.15 (citing *Matrixx*). There, the defendants made representations for which they had insufficient scientific evidence. *See* 563 U.S. at 49. Here, ample scientific studies and regulatory decisions supported defendants' statements.

[8] The Complaint incorrectly quotes Mr. Baumann as saying that he personally was working with the litigation team. ¶ 284. Despite being alerted to this error, MTD Br. 16, plaintiffs have persisted in their misquotation because it is essential to their theory of scienter. Opp. 21.

confidential witnesses who confirmed that the defendants themselves had real-time access to and knowledge of the data they allegedly misrepresented. 865 F.3d 1130, 1145-46 (9th Cir. 2017).

Plaintiffs fare no better with their allegations about Mr. Wenning's positions on Bayer's Supervisory Board and Glyphosate Litigation Committee. *See* Opp. 21-22 (citing ¶¶ 289-92). Their brief concedes that Mr. Wenning did not join the litigation committee until well *after* the statements challenged in the Complaint. Opp. 22 n.12. His committee membership thus cannot support scienter.[9] The Complaint's pleading of fraudulent intent by Mr. Wenning thus rests on two Supervisory Board meetings in late 2018 during which the "status" of the glyphosate litigation was discussed "in detail." *See* ¶ 238 (referenced in ¶ 292). But alleging that Mr. Wenning was present for a discussion of the "status" of the glyphosate litigation falls well short of showing that he had access to specific information disproving his statements that scientific evidence supported glyphosate's safety. *See In re AnaptysBio, Inc. Sec. Litig.*, 2021 WL 4267413 (S.D. Cal. Sept. 20, 2021) (insufficient to allege that defendant was "heavily involved" in clinical trials, absent pleadings establishing knowledge of specific information contradicting defendant's public statements). The cases cited by plaintiffs, in which the defendants' committee memberships involved regular, "intimate" engagement with the business information they misrepresented, simply demonstrate the deficiency of their pleadings. *In re Genworth Fin. Inc. Sec. Litig.*, 103 F. Supp. 3d 759, 785 (E.D. Va. 2015); *see also Lewis* v. *Straka*, 535 F. Supp. 2d 926, 930 (E.D. Wis. 2008) (defendants gained "intimate knowledge"); *In re RAIT Fin. Tr. Sec. Litig.*, 2008 WL 5378164, at *13 (E.D. Pa. Dec. 22, 2008) (confidential witnesses confirmed that defendants met twice weekly to monitor relevant information).

Aside from alleging "access," plaintiffs also argue that scienter is pleaded whenever a defendant signs or certifies a document containing purported falsehoods. Opp. 24-25. As the Ninth Circuit has cautioned, however, "boilerplate language" and certifications "add nothing substantial

---

[9] Plaintiffs argue that even if Mr. Wenning did not have access to information showing his statements to be false when made, he had a "duty to correct or update his statements" that gave rise to retroactive scienter. Opp. 22 n.12. Again, the Ninth Circuit does not recognize any such duty. *See supra* at 4. Instead, it requires "allegations of specific *contemporaneous* statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements *when made*." *Ronconi* v. *Larkin*, 253 F.3d 423, 432 (9th Cir. 2001).

DEFS.' REPLY P&A IN FURTHER SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.: 3:20-CV-04737-RS

13

to the scienter calculus." *See Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981, 1003-04 (9th Cir. 2009). Even plaintiffs' own authorities recognize that signatures cannot support an inference of scienter unless paired with facts demonstrating that defendants were contemporaneously aware of specific information revealing the falsity of their statements. *See In re Silver Wheaton Corp. Sec. Litig.*, 2016 WL 3226004, at *12 n.9 (C.D. Cal. June 6, 2016) (cited at Opp. 25). Plaintiffs thus cannot use defendants' routine certifications to resurrect their scienter pleading.

Unable to present specific allegations that show any defendant made misstatements with knowledge or deliberate recklessness, plaintiffs resort to accusations of motive. But motive alone is insufficient to establish scienter. *See In re VeriFone Holdings*, 704 F.3d at 701 (citing *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999)).[10] And even if securities fraud could be pleaded through allegations of nefarious motive, the Complaint would still miss the mark.

According to plaintiffs, defendants lied in order to "continue with their controversial plan to keep Bayer competitive in a consolidating market through the Monsanto acquisition." Opp. 20. That makes no sense. Bayer's acquisition of Monsanto closed in June 2018. ¶ 116. Defendants did not begin speaking about glyphosate's safety until August 2018. ¶ 250. Plaintiffs cannot plausibly allege that defendants lied to safeguard the implementation of a "plan" that had been implemented months earlier. *See Nguyen* v. *Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020) (scienter not pleaded where plaintiff's "theory does not make a whole lot of sense").

Plaintiffs separately postulate that defendants defrauded the market to "prop up" Bayer's share price and "maintain their high-profile jobs." Opp. 20. All plaintiffs point to for support,

---

[10] The Court previously held that allegations of falsity "in conjunction with . . . motive adequately plead scienter." Dismissal Order at 10. Respectfully, this holding was inconsistent with Ninth Circuit law. *See City of Dearborn,* 856 F.3d at 619 ("[f]acts showing mere recklessness or a motive to commit fraud . . . are not sufficient to establish a strong inference of deliberate recklessness"); *Zucco*, 552 F.3d at 991 (same); *Rubke* v. *Capitol Bancorp Ltd.*, 551 F.3d 1156, 1166 (9th Cir. 2009) ("Motive and opportunity [are] not enough to create a strong inference of scienter."); *Hunt* v. *Bloom Energy Corp.*, 2021 WL 4461171, at *17 (N.D. Cal. Sept. 29, 2021) (same); *Haideri* v. *Jumei Int'l Holding Ltd.*, 2021 WL 4170791, at *16 (N.D. Cal. Sept. 14, 2021) (same). The element of scienter is relevant only where a complaint has pleaded that defendants made false or misleading statements. As such, if a plaintiff could plead a strong inference of scienter through allegations of falsity and motive alone, it would negate the black-letter rule that allegations of motive, standing alone, cannot satisfy the heightened scienter standard. *Rubke*, 551 F.3d at 1166.

DEFS.' REPLY P&A IN FURTHER SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.: 3:20-CV-04737-RS

14

however, is Mr. Baumann's "concern[] about the valuation of the company and share price." ¶ 134. That is a concern shared by all executives. What the Complaint lacks is any allegation that Mr. Baumann or any other defendant had a personal incentive for inflating the share price. Absent any of that, Mr. Baumann's concern reflects the type of "routine business objective[]" that courts have repeatedly found insufficient to plead scienter. *Lipton* v. *Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002); *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) (same). As the Ninth Circuit has consistently held, a general motive to "keep stock price high" is not enough to plead scienter, because such concerns are common to all companies and executives. *Webb* v. *Solarcity Corp*., 884 F.3d 844, 856 (9th Cir. 2018) (motive to "keep stock price high in the months immediately preceding and following a company's IPO" was "unhelpful" to plaintiff because it spoke "precisely to the routine corporate objectives . . . that we have rejected in the past") (internal quotation omitted).

Plaintiffs' opposition thus confirms what was already apparent — the Complaint does not supply any inference of scienter. The far more cogent inference is that defendants believed that Monsanto could vigorously defend the glyphosate litigation on the strength of sound science. That was a reasonable belief — validated by courts, regulators, and most recently by two juries. MTD Br. 6. It was not fraud for defendants to share their honest opinion with Bayer stockholders.

## III.   THE COMPLAINT FAILS TO PLEAD A VIOLATION OF SECTION 20(a).

Because the Complaint pleads no underlying violation of the Exchange Act with respect to defendants' characterizations of the science and regulatory findings on glyphosate, plaintiffs cannot pursue Section 20(a) claims premised on those statements. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1113 n.6 (9th Cir. 2010).

## CONCLUSION

For the reasons set out above and in defendants' opening brief, plaintiffs should be barred from proceeding with respect to defendants' statements on the scientific and regulatory support for glyphosate's safety.

Dated:   March 16, 2022

By:   _/s/ Jordan Eth_

Jordan Eth (CA SBN 121617)
JEth@mofo.com
Mark R.S. Foster (CA SBN 223682)
MFoster@mofo.com
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA  94105
Telephone:  (415) 268-7126
Facsimile:  (415) 268-7522

William Savitt (*pro hac vice*)
Noah B. Yavitz (*pro hac vice*)
Emily R. Barreca (*pro hac vice*)
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, NY  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000

*Attorneys for defendants Bayer Aktiengesellschaft, Werner Baumann, Werner Wenning, Liam Condon, Johannes Dietsch, and Wolfgang Nickl*

DEFS.' REPLY P&A IN FURTHER SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.:  3:20-CV-04737-RS

16