UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEET METAL WORKERS NATIONAL PENSION FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BAYER AKTIENGESELLSCHAFT, et al.,<br><br>Defendants. | Case No. 20-cv-04737-RS<br><br>**ORDER DENYING MOTION TO DISMISS** |

**I. Introduction**

This putative class action avers violations of the Securities Exchange Act of 1934 (the "Exchange Act") in relation to Bayer Aktiengesellschaft's ("Bayer") acquisition of Monsanto. The Court previously denied a motion to dismiss from Bayer and the individual defendants because Plaintiffs had stated a claim under Sections 10(b) and 20(a) of the Exchange Act, but noted that Plaintiffs could not proceed on all their theories of liability. After Plaintiffs amended their complaint, seeking to remedy shortcomings in one of their theories of liability, Defendant brought this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] As explained below,

---

[1] The Court notes that Bayer's motion to dismiss cannot seek to dismiss a claim, as the Court concluded in its prior order that Plaintiffs had adequately pled claims under Sections 10(b) and 20(a) of the Exchange Act as to one of Plaintiffs' theories of liability. Evaluation of whether Plaintiffs may proceed on their theory of liability concerning misstatements about the science-based litigation defenses will streamline the litigation, and thus the Court addresses Defendant's arguments concerning the sufficiency of Plaintiffs' pleading as to this theory of liability.

Plaintiffs have not pleaded with particularity misrepresentations concerning Monsanto's science-based trial defenses. Plaintiffs thus cannot proceed on this theory of liability. The Court previously determined that Plaintiffs could proceed on a different theory of liability for the Sections 10(b) and 20(a) claims, and thus the motion to dismiss is denied. This motion is suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and the hearing set for May 26, 2022 is vacated.

## II. Procedural Background[2]

Defendants previously moved to dismiss Plaintiffs' First Amended Class Action Complaint ("FAC") for failure to plead falsity, scienter, and loss causation. The alleged misrepresentations in the FAC fell into three categories: statements about Bayer's due diligence when acquiring Monsanto, statements concerning the safety of glyphosate (the active ingredient in Monsanto's herbicide product, Roundup), and the accounting for legal risks related to Roundup. On October 19, 2021, the Court denied the motion to dismiss but noted that although Plaintiffs had adequately pled falsity and scienter as to Bayer's due diligence efforts, they have not done so as to statements concerning the safety of glyphosate and accounting for legal risks related to Roundup and thus could not proceed on those theories of liability without successfully amending their complaint. On November 15, 2021, Defendants' motion for leave to file a motion for reconsideration of the order on the motion to dismiss was denied.

On December 29, 2021, the Court granted the parties' stipulation for Plaintiff to file a Second Amended Class Complaint ("SAC"). Plaintiffs have reframed their theory of liability as to misstatements concerning glyphosate safety as a theory that Defendants made material misrepresentations concerning the evidentiary basis for Monsanto's science-based trial defenses in the Roundup litigation. Plaintiffs have removed allegations concerning misrepresentations about Bayer's accounting for legal risks related to Roundup and no longer seek to proceed on this theory of liability. On January 31, 2022, Defendants filed this motion to dismiss, arguing Plaintiffs have

---

[2] A more fulsome description of the factual background underlying this lawsuit can be found in the Court's October 19, 2021 order denying Bayer's motion to dismiss.

failed to plead misrepresentations concerning the evidentiary basis for Monsanto's science-based trial defenses.

### III. Legal Standard and Background

#### A. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) governs motions to dismiss for failure to state a claim. A complaint must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A Rule 12(b)(6) motion tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When evaluating such a motion, courts generally "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). In actions governed by the Private Securities Litigation Reform Act ("PSLRA"), such as this one, these general standards are subject to further refinement, as discussed in more detail below.

#### B. Applicable Securities Laws

Section 10(b) of the Exchange Act makes it unlawful for "any person ... [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Pursuant to Section 10(b), the SEC has promulgated Rule 10b–5, which provides, *inter alia*, that "[i]t shall be unlawful for any person . . . [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5(c).

To establish a violation of Rule 10b–5, a plaintiff must demonstrate "(1) a material

1   misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a
2   security, (4) transaction and loss causation, and (5) economic loss." *In re Daou Systems, Inc. Sec.*
3   *Litig.*, 411 F.3d 1006, 1014 (9th Cir. 2005). To survive a motion to dismiss, "a complaint stating
4   claims under section 10(b) and Rule 10b–5 must satisfy the dual pleading requirements of Federal
5   Rule of Civil Procedure 9(b) and the PSLRA." *Zucco Partners v. Digimarc Corp.*, 552 F.3d 981,
6   990 (9th Cir. 2009).

7   To allege falsity under the PSLRA, a complaint must "specify each statement alleged to
8   have been misleading, the reason or reasons why the statement is misleading, and, if an allegation
9   regarding the statement or omission is made on information and belief, . . . state with particularity
10  all facts on which that belief is formed." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir.
11  2002) (quoting 15 U.S.C. § 78u–4(b)(1)) (internal quotation marks omitted). A statement is
12  misleading "if it would give a reasonable investor the 'impression of a state of affairs that differs
13  in a material way from the one that actually exists.'" *Berson v. Applied Signal Tech., Inc.*, 527
14  F.3d 982, 985 (9th Cir. 2008) (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006
15  (9th Cir. 2002)).

16  Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *See*
17  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (internal quotation marks
18  and citation omitted). "[T]he complaint must allege that the defendants made false or misleading
19  statements either intentionally or with deliberate recklessness." *In re Daou Systems*, 411 F.3d at
20  1015. To plead scienter adequately under the PSLRA, the complaint must "state with particularity
21  facts giving rise to a strong inference that the defendant acted with the required state of mind." 15
22  U.S.C. § 78u–4(b)(2)(A); *see also Zucco Partners,* 552 F.3d at 991. To qualify as a "strong
23  inference," the Supreme Court has held, "an inference of scienter must be more than merely
24  plausible or reasonable[.]" *Tellabs*, 551 U.S. at 314. A complaint will survive a motion to dismiss
25  "only if a reasonable person would deem the inference of scienter cogent and at least as
26  compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324. "Falsity
27  and scienter in private securities fraud cases are generally strongly inferred from the same set of

facts[.]." *In re Daou Systems*, 411 F.3d at 1015 (internal quotation marks and citation omitted).

## IV. Discussion

### A. Falsity

Within the ambit of misrepresentations concerning the evidentiary basis for Monsanto's science-based trial defenses, Plaintiffs aver that Defendants made the following five types of misstatements: (1) Defendants falsely told investors the defenses were supported by over 800 studies; (2) Defendants falsely claimed a key agricultural study concerning Roundup does not cause cancer and failed to inform investors of the study's shortcomings; (3) Defendants falsely claimed that the scientific evidence clearly shows Roundup does not cause cancer; (4) Defendants falsely claimed that scientific evidence clearly showed that Roundup was not more likely than glyphosate alone to cause cancer; and (5) Defendants misled investors about regulators' views on glyphosate safety.

Two of these types of misrepresentations were pled in the FAC and addressed in the prior order denying Defendants' motion to dismiss. First, the prior order concluded that Plaintiffs had not adequately pled falsity concerning statements about the 800 studies.[3] The Plaintiffs' amendments do not change that conclusion, and thus Plaintiffs have not adequately pled falsity concerning the 800 studies. Second, the order found that Plaintiffs had "adequately pled a material misstatement concerning the safety risks of Roundup as compared to glyphosate[,]" and there is no reason to revisit this conclusion, given that the same misrepresentations appear in the SAC. Thus, there are three types of misstatements that require more detailed evaluation: (1) misrepresentations concerning a key agricultural study, (2) misrepresentations concerning the weight of the scientific evidence on whether Roundup causes cancer, and (3) misrepresentations concerning regulators' views.

---

[3] The prior order emphasized that an admission that the 800 studies were not limited to carcinogenicity "is not tantamount to an admission that the studies were unrelated to carcinogenicity" and that as to the question of bias in the studies, "Plaintiffs d[id] not aver that Defendants made misleading statements about the origins or impartiality of the 800 studies." Order Denying Motion to Dismiss First Amended Class Complaint, p.7.

ORDER DENYING MOTION TO DISMISS
CASE NO. 20-cv-04737-RS

5

Plaintiffs have not pled with particularity misrepresentations concerning a key agricultural study. Plaintiffs argue that Defendants touted the Agricultural Health Study ("AHS"), a long term study of pesticide applicators, farmworkers, and their spouses, as "strong support for Monsanto's litigation defenses." Opposition to Motion to Dismiss SAC, p.12. Plaintiffs argue that statements touting the AHS were misleading "because Defendants omitted to disclose to investors that the AHS was vulnerable to strong attacks by the plaintiffs in the Roundup litigation." *Id.* Any scientific study may be vulnerable to attacks, however, and the nature of litigation of scientific issues entails full-throated attacks on the methodology and shortcomings of studies by the opposing side. Notably, in the *Daubert* order in the Roundup MDL, the presiding judge noted "Monsanto's experts reasonably consider the most recent AHS publication to be the most powerful evidence regarding the relationship between glyphosate and NHL." *In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102, 1126 (N.D. Cal. 2018). The court noted "potential flaws in the data from the AHS study[,]" and that an expert could reasonably "place less weight on the AHS study[,]" but these are standard criticisms of scientific studies in high-stakes litigation. *Id.* In short, Plaintiffs have failed to state with particularity misrepresentations concerning the AHS.

Next, Plaintiffs have failed to plead with particularity misrepresentations concerning the weight of the scientific evidence. Plaintiffs aver that statements from Defendants "that the scientific evidence clearly and unambiguously showed that glyphosate and glyphosate-based herbicides such as Roundup are safe and do not cause cancer" were misstatements because "they omitted to disclose that there was considerable scientific evidence that could potentially be presented by the plaintiffs in the Roundup litigation trials through expert testimony that glyphosate and Roundup can cause cancer[.]" Opposition to Motion to Dismiss SAC, p.13. Defendants' opinions concerning the strength and weight of the scientific evidence are opinions that are unactionable in securities fraud cases. *See In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 543 (S.D.N.Y. 2015) ("Courts have repeatedly held publicly stated interpretations of the results of various clinical studies to be opinions because reasonable persons may disagree over how to analyze data and interpret results, and neither lends itself to objective conclusions." (internal quotation marks, alterations, and citation omitted)).

Order Denying Motion To Dismiss
Case No. 20-cv-04737-RS

6

Finally, Plaintiffs have not adequately pled misstatements concerning regulators' views. Plaintiffs list a variety of statements from Defendants concerning regulatory approval of Roundup and argues these statements were misleading for two reasons: (1) "Monsanto had procured regulatory approvals for glyphosate in part by withholding adverse scientific evidence from regulators and ghostwriting research[,]" and (2) "regulators had approved glyphosate (the chemical itself) and not Roundup[.]" Opposition to Motion to Dismiss SAC, p.18. First, Plaintiffs do not cite to any authority for the proposition that a failure to provide information to regulators then transforms a statement concerning regulatory approval into a misrepresentation for purposes of the Exchange Act. The chain of reasoning Plaintiffs propose is too tenuous. Addressing the second argument, the alleged misrepresentations do not indicate that Defendants obfuscated what regulatory bodies had approved. Thus, Plaintiffs have not pled with particularity misrepresentations concerning regulators' views.

**B. Scienter**

As Plaintiffs have only adequately pled misrepresentations concerning the safety risks of Roundup as opposed to glyphosate, scienter is only addressed as to this category of misstatements.[4] In reaching the earlier conclusion that Defendants made misrepresentations that there was no difference in safety between Roundup and glyphosate, the prior order relied on a 2002 internal Monsanto email in which Monsanto's head of Product Safety Strategy stated "[g]lyphosate is OK but the formulated product (and thus the surfactant) does the damage." *See* FAC ¶ 141, SAC ¶ 154. Although this email demonstrated that Monsanto employees were aware that Roundup and Monsanto were not one and the same in terms of their safety risks, Plaintiffs have presented scant support for their arguments that statements Bayer executives made in 2018 and later were made with "either intentionally or with deliberate recklessness." *In re Daou Systems*, 411 F.3d at 1015. Even if it was possible that Bayer executives had access to the relevant

---

[4] The Court did not address scienter concerning statements about glyphosate safety in the prior order denying Defendants' motion to dismiss the FAC, as "Plaintiffs offer[ed] no response to Defendants' arguments concerning scienter" as to those statements. *See* Order Denying Motion to Dismiss FAC, p.10.

emails, possible access is not enough under Ninth Circuit's caselaw concerning scienter, as Plaintiffs needed to allege facts to explain why the relevant executives would have had actual access or exposure to the information in the emails. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 620 (9th Cir. 2017). Plaintiffs have therefore failed to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A). Scienter is not established as to misrepresentations concerning the differences in safety risks between Roundup and glyphosate.

## V. Conclusion

Plaintiffs have failed to plead the elements for a violation of Rule 10b–5 as to statements concerning the evidentiary basis for Monsanto's science-based trial defenses in the Roundup litigation. As the Court has previously determined that "Plaintiffs have adequately pled a[] . . . violation of the Exchange Act" based on another theory of liability, *see* Order Denying Motion to Dismiss FAC, p.13, the motion to dismiss is denied. Plaintiffs, however, cannot proceed on their theories of liability concerning statements about the evidentiary basis for Monsanto's science-based trial defenses.

**IT IS SO ORDERED**.

Dated: May 18, 2022

RICHARD SEEBORG
Chief United States District Judge