Carol V. Gilden (*pro hac vice*)
**Cohen Milstein Sellers & Toll PLLC**
190 South LaSalle Street
Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
Email: cgilden@cohenmilstein.com

Nicole Lavallee (SBN 165755)
Alexander S. Vahdat (SBN 284963)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
       avahdat@bermantabacco.com

*Attorneys for Lead Plaintiffs and Additional Named Plaintiff*
[Additional Counsel on Signature Page]

William Savitt (*pro hac vice*)
Noah B. Yavitz (*pro hac vice*)
Emily R. Barreca (*pro hac vice*)
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

Jordan Eth (SBN 121617)
Mark R.S. Foster (SBN 223682)
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
Email:  JEth@mofo.com
        MFoster@mofo.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SHEET METAL WORKERS' NATIONAL PENSION FUND and INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 710 PENSION FUND, individually and as Lead Plaintiffs on behalf of all others similarly situated, and<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS PENSION FUND OF EASTERN PENNSYLVANIA AND DELAWARE, individually and as Named Plaintiff, on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>    vs.<br><br>BAYER AKTIENGESELLSCHAFT, WERNER BAUMANN, WERNER WENNING, LIAM CONDON, JOHANNES DIETSCH, and WOLFGANG NICKL,<br><br>      Defendants. | Case No: 3:20-cv-04737-RS<br><br>CLASS ACTION<br><br>**STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS**<br><br>Ctrm:  3 – 17th Floor<br>Judge:  Richard Seeborg |

**STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS**

WHEREAS, counsel for Plaintiffs and Defendants (collectively, the "Parties," and each, a "Party") have met and conferred regarding discovery of electronically stored information ("ESI") of the Parties;

WHEREAS, the Parties have reached agreement on certain of the issues discussed regarding such discovery;

WHEREAS, the Parties have entered into this Stipulated Forms and Format for Document Productions ("Protocol") to govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules;

1.    General Stipulations

a.    The Parties have entered into this Protocol to, consistent with Federal Rule of Civil Procedure 1, facilitate the just, speedy, and inexpensive determination of this action. Nothing herein shall be construed to limit the scope of discovery available to the Parties pursuant to Federal Rule of Civil Procedure 26(b).

b.    Paper documents and ESI should be produced in accordance with the Federal Rules of Civil Procedure. The proportionality standard set forth in Federal Rule of Civil Procedure 26(b)(1) shall be applied in all matters related to discovery of ESI, including without limitation the preservation, collection, and production of such information. The Parties recognize and take into consideration the unique ability of each Party to evaluate its own ESI and determine the appropriate procedures, methodologies, and technologies for the preservation, collection, and production of documents.

c.    Each Party will identify an e-discovery liaison who is and will be knowledgeable

about and responsible for discussing matters related to its ESI. Any attorney representing a Party, including the e-discovery liaison, may participate in meet-and-confer conferences, and it is not required that the e-discovery liaison be present for the Parties to meet and confer about matters involving ESI. However, the Parties agree to work in good faith to schedule e-discovery conferences when the e-discovery liaisons are available to aid in resolving disputes involving ESI without court intervention.

The procedures and protocols outlined herein govern the production of all documents and ESI, including all computer-generated information or data of any kind, by the Parties. This Protocol governs all Parties to these proceedings, whether they are currently involved or become so in the future. All disclosures and productions made pursuant to this Protocol are subject to the Stipulated Confidentiality and Protective Order entered in this matter.

2.    Production Format Protocols

    a.    Except as provided in Section 4 or elsewhere in this Order, all production images will be produced as single page Group IV Tagged Image File Format (.TIF or .TIFF) files at 300 x 300 dpi resolution and 8.5 x 11 inch page size, unless a document requires a higher resolution in order to be appropriately viewed.

    b.    Documents or ESI containing color need not be produced initially in color and may be produced in black and white. If an original color image is produced in black and white, the receiving Party may for good cause request the producing Party to produce the image in color. Following a request for color production, the Parties will meet and confer on a reasonable, cost-effective means of providing the requested document in color. The default for color images will be TIFF format or as single page JPEG format.

c.   A unique Bates number shall be assigned to each page, and branded in the lower right-hand corner of the page, but the Parties shall make reasonable efforts not to obscure any part of the underlying image. All Bates numbering will be sequential within a given document and document family. Bates numbers must be applied with consistent formatting throughout the production with no special characters or embedded spaces included in the Bates.

d.   Any confidentiality or other endorsements shall be branded on the lower left-hand corner of the page. The Parties shall use reasonable measures to ensure that any such branding does not obscure any part of the underlying image. No additional branding or designation made in reference to the document request to which a document may be responsive is required.

e.   A searchable, document-level text file shall be provided for each paper document or ESI file produced as TIFF images. Each such file will have a filename matching the Bates number applied to the first page of the corresponding static image file or placeholder file, followed by the .TXT extension. For ESI, the Parties agree that the searchable, document-level text file shall be created directly from the native file. Programmatically extracted text will include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden worksheets, slides, columns and rows. Programmatically extracted text from e-mails will include all header information that would be visible if the e-mail was viewed natively including: (1) the individuals to whom the communication was directed, (2) the author of the e-mail communication, (3) who was copied and blind copied on such e-mail, (4) the subject line of the e-mail, (5) the date and time of the e-mail and (6) the names of any attachments. For ESI

from which text cannot be extracted, for redacted documents, or for paper documents, the Parties agree that they will produce legible document-level OCR text, where reasonably practicable, for each such document.  To the extent practicable, the Parties will consider producing searchable text in ANSI format.

f.    **Load/Unitization File:** The Parties agree that the producing Party will provide the following load files for all productions:

- **Metadata Import File**:  DAT format, in ASCII format (e.g., .txt, .dat, or .csv), using Concordance default delimiters to separate the fields and records.

- **Image Cross-Reference File**:  Standard Opticon delimited file in .OPT format,  containing the corresponding image information and indicating page breaks.

g.    Only one Metadata Import File and (if appropriate) one Image Cross-Reference File should  be included with each production.  The Metadata Import File should contain the metadata fields detailed and described in  Exhibit A and/or Exhibit B of this Protocol, as appropriate.  To the extent possible, the Parties agree to populate the CUSTODIAN field for all produced ESI and paper documents, if known and reasonable.

h.    **Production Media:**  The Parties agree that documents shall be produced preferably through a secure File Transfer Protocol ("FTP") provided via email or otherwise on encrypted physical media ("Physical Media") sent by a method no slower than overnight delivery via USPS, UPS, or FedEx.  Acceptable Physical Media includes external hard drives or other electronic media agreed to by the Parties.  Each piece of Physical Media shall identify a production number

corresponding to the production volume, as well as the volume of the material in that production.  Each piece of Physical Media shall also identify: (1) the matter name and case number; (2) the producing Party's name; (3) the production date; (4) the Bates number range of the materials contained on the Physical Media; and (5) a short description of the categories of information within the production and the type of materials on the media.  The password to decrypt the Physical Media will be conveyed concurrently with but separately from the media itself.

i.     **Production Letter:** Each production of documents, whether by FTP or Physical Media, shall be accompanied by a transmittal letter containing a table specifying the following information:

| | |
|---|---|
| Production Date | |
| Producing Party | |
| FTP or Physical Media | |
| Production Volume | |
| Starting Bates Number | |
| Ending Bates Number | |
| Short Description of Information and Materials in Production | |

Additionally, if the production is via FTP, the transmittal letter shall specify the means for accessing the FTP.

j.     **Language:**  A hard-copy document or ESI containing a natural language other than English, in whole or in part, shall be produced in the original language.  A producing Party is under no obligation to prepare or provide English translations of non-English language documents or ESI, except that a producing party must produce documents that have been previously translated by or for the producing party to the extent otherwise identified through the parties' agreed-upon search protocol.

3.     Electronic Production of Paper Documents as Static Images

The Parties agree that to the extent that the producing Party elects to produce hard copy documents in electronic format, such documents will be produced as single page Group IV Tagged Image File Format (.TIF or .TIFF) files as described above.  Additionally:

a.     In scanning paper documents, distinct documents should not be merged into a single record, and single documents should be merged into multiple records (*i.e.*, paper documents should be logically unitized).  The Parties will use reasonable efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

b.     The Parties agree that any file folders and/or documents affixed to hard copy documents will be scanned as separate documents.

c.     The Parties agree to provide the appropriate load/unitization files in accordance with attached Exhibit A and  consistent with the specifications for such files set forth in Section 2, above.

d.     The Parties agree that the producing Party also produce searchable optical character recognition ("OCR") text of scanned paper documents consistent with the specifications for searchable text set forth in Section 2, above.

4.   Production of ESI in Native File Format

The Parties agree that ESI shall be produced as TIFFs with accompanying load file except that certain documents will be produced in native format, specifically:

- Spreadsheet-formatted document files (e.g., Microsoft Excel files)

- Presentation-formatted document files (e.g., PowerPoint files)

- Multimedia audio or visual files such as voice and video recordings (e.g., .wav and .mpeg)

The Parties may discuss additional production in native format on a document-by-document or category-by-category basis. Any documents produced in native format should be produced in accordance with the following specifications:

a.   A unique document number, matching the document's Bates number, shall be used as the file name, and the original file name and file extension shall be preserved in the corresponding load file.

b.   For each produced native file, the producing Party will provide a static image slipsheet indicating that the document was produced in native format and providing the unique Bates number and confidentiality designation for the corresponding native file.   Any confidentiality designation will also be provided in the corresponding load file.

c.   Prior to a trial or other proceeding at which the receiving Party may use a native document produced by a producing Party, the receiving Party agrees to advise the producing Party if the native document has been produced without a corresponding TIFF image file.

d.   If a document that otherwise would be produced in native format requires redaction, and if it is not practicable for the producing Party to redact a native-format version

of the document, such document may be produced in TIFF format in accordance with this Protocol.

e.    For each document produced in native format, the producing Party will provide all metadata contained in the fields identified in Exhibit B.

5.    Production of ESI as Static Images

Except for those documents produced in native format pursuant to Section 4, above, the Parties agree that ESI will be produced in TIFF format with accompanying load file as describe in Section 2, above.  Additionally:

a.    The Parties agree to meet and confer regarding file types that are not amenable to conversion into TIFF images and which may not be easily produced in native file format.  If necessary, any such relevant and responsive, but non-convertible files, may be temporarily produced in the form of a placeholder TIFF image.

b.    When processing ESI, the Parties agree to use Coordinated Universal Time (UTC) as the time zone.

c.    When processing ESI for production as a static image, the Parties agree that "Auto Date" be forced off, and "hidden columns or rows", "hidden worksheets", "speaker notes",  "track changes", "comments" and other similar information viewable in the native file be forced on such that the information is preserved to the extent practical and appears on the produced image file.

d.    Parent-Child Relationships (*i.e.*, the association between an attachment and its parent conveying document) that have been maintained in the ordinary course of business shall be preserved at processing and production, such that the attachments appear in order behind the conveying email.  A non-responsive attachment within an otherwise produced family shall be represented in the production by a single

page slipsheet indicating the attachment is non-responsive and appearing in order behind the conveying responsive email.

e.    The Parties are not obligated to manually populate any fields in Appendices A or B that cannot be extracted from the document using automated processes with the exception of CUSTODIAN, BEGBATES, ENDBATES, BEGATTACH, and ENDATTACH.

f.    Known software files identified in the National Software Reference Library database maintained by the National Institute of Standards and Technology ("NIST") need not be collected, processed, reviewed, or produced.

g.    In order to reduce the burden of collecting and producing irrelevant and non-substantive material, the Parties are not obligated to collect or produce contact files.

h.    To the extent that the Parties request information from enterprise or relational databases or other structured data (e.g., Oracle, SQL Server, DB2), responsive information contained within a database may be produced by querying the database and generating a flat file report or exportable electronic file (e.g., .CSV) of such data along with relevant fields for review by requesting Party.

i.    Embedded Objects in an ESI file are to be extracted at processing. Some file types may contain embedded objects, typically found in the following productivity types: MS Excel, MS Word, MS PowerPoint, MS Project, MS Outlook, MS Access, as well as Adobe Acrobat (PDF). Objects within those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded if the file in which these objects are embedded is produced.

j.    Documents that are associated by hyperlink or otherwise linked to another location or file without being embedded will not be treated as attached files and will not be

produced as if attachments in order behind the document in which they were referenced by link.  Such documents will be treated in accordance with their originating location and collected, processed, and produced as governed by the relevant procedures and protocols as outlined in this order for each document's file type and data source.

k.  Exception Files. The Parties will use commercially reasonable efforts to address documents that present processing or production problems (including encrypted, unsupported, and/or protected files) ("Exception Files").  A Party is not required in the first instance to produce Exception Files it has been unable to resolve through commercially reasonable efforts, except that, upon reasonable request, the Party will undertake reasonable efforts to locate passwords for specifically identified documents and to provide such passwords within thirty (30) calendar days of the request.  Exception Files that are attached to produced documents will be produced as a Bates-stamped placeholder TIFF bearing a legend indicating the document is unable to be processed.

l.  Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure the compressed file within a compressed file is decompressed into the lowest possible compressing resulting in individual files.

m.  The producing Party will take reasonable steps to unencrypt any discoverable ESI that exists in encrypted format (e.g., password-protected) and that can be reasonably unencrypted based on industry standards for production.

6.  Format of Prior-Production Format of Documents

a.  Documents produced for other litigation or court proceedings in the United States

outside of this litigation may be produced to the requesting Party in this litigation in the production format from the prior production.  The receiving Party may thereafter request a meet-and-confer regarding the form, content or adequacy of any such production including this provision.

7.    Redactions

The Parties agree that ESI and paper documents may need to be redacted.  To the extent that a responsive document contains information that is protected from disclosure by applicable privilege or immunity, information that is subject to trade secret protection (such as chemical formulae, proprietary techniques, and technological processes), information that is governed by applicable privacy law or regulation, such as private or personally identifying information, or other information that the Stipulated Confidentiality and Protective Order entered allows to be redacted, the producing Party may produce that document in redacted form.  Each portion of the document from which information is redacted shall bear a designation that it has been redacted and an indication of the basis for redaction (e.g. "Redacted – Privileged"), or when the document has been redacted in full, a single page slipsheet may be produced to provide designation indicating the reason it was withheld from an otherwise produced family.  Any confidentiality designation will also be provided in the corresponding load file.  For avoidance of doubt, no redactions based on relevancy or responsiveness are permitted under this Order.

To the extent that any document contains information that is redacted, those documents shall be produced in the form of a redacted .TIFF image.  Documents otherwise produced natively, such as Spreadsheets, may be redacted and produced in native format and the Parties will ensure that the original data in the redacted spreadsheets will be preserved.

8.      Search Methodology and Data Reduction

The Parties expect to employ one or more search methodologies in order to reduce discovery burdens, including possibly but without limitation the use of search terms, predictive coding, statistical-based sampling, and other advanced search and retrieval technologies to identify potentially relevant ESI, including email. All meet-and-confer sessions regarding search methodologies will give appropriate consideration to proportionality and the producing Party's ability to best evaluate and determine appropriate procedures, methodologies, and technologies for preserving, collecting, and producing ESI and other documents.

With the objective of limiting the scope of review and production to that which is proportional to the case, the Parties agree to meet and confer to try to develop a mutually agreeable list of custodians, data sources, and key search terms for each Party and to identify the time period that may contain responsive documents. Nonetheless, the use of terms does not require production of non-responsive, irrelevant materials or content merely due to the presence of a search term or search terms, which will be applied to all in-scope data sources as a default. Nor does the use of search terms imply that a Party may not also have an obligation to conduct reasonable, targeted non-term-based searches for responsive materials. All documents within the responsive time period for the agreed-upon custodians and data sources that contain an agreed upon search term for that Party will be analyzed to determine responsiveness and, if responsive and not otherwise protected from disclosure, produced as required per this Protocol. During fact discovery, the Parties may agree to modify the agreed-upon search queries or methodologies if the results of those search queries or methodologies appear under-inclusive or over-inclusive.

When negotiating search terms, the Parties will provide reasonable "hit" counts of documents (including total number of hits, total number of hits including families, and total number

of unique hits).

Any search for potentially relevant documents and ESI shall involve searching for such documents in data sources within which such documents and ESI are likely to be most readily accessible.  If data sources are identified that are not readily accessible, the Parties shall meet-and-confer to discuss the necessity of searching such data sources.

9.    Deduplication

The Parties shall make reasonable efforts to deduplicate ESI.  Parties may deduplicate stand-alone documents or entire document families vertically within each custodian or horizontally (also referred to as globally) across custodians.  ESI will be considered duplicative if it has matching MD5 or SHA-1 hash values.  Documents with the same content but different metadata can also be identified through the use of near-duplication technology, provided that only documents identified by such technology as 100% near-duplicates shall be considered duplicates for purposes of this paragraph.

When comparing document families, if a parent document is an exact duplicate but one or more attachments or embedded files are not exact duplicates, neither the attachments or embedded files, nor the parent document, will be deduplicated.

Attachments to emails shall not be eliminated from their parent emails by deduplication. Where a responsive stand-alone document is an exact duplicate of an email attachment, the email attachment must be produced and the stand-alone document may be deduplicated.

10.    Email Threading

In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize email thread identification and suppression or "email threading" on the review population.  As used in this Protocol, email threading means employing commercially acceptable methods to reduce production of duplicative email threads by producing only the inclusive email

messages and their attachments, if any, from each email thread. An email message is inclusive when it contains any non-duplicative content or has a document or set of documents attached that does not appear elsewhere within the email thread. Typically, inclusive emails are (a) emails for which no other emails within the email population contain the entirety of the text; (b) emails which have a value in the BCC field (whether or not the text of that email is fully included in another email in the email population); or (c) emails which have attachments and no other email within the email population has both the entirety of the text and the attachment. Non-inclusive emails are (a) emails whose text is fully included in another email within the email population; or (b) emails with attachments whose text is fully included in another email within the email population and that other email also has the identical attachments. Accordingly, exact duplicates of emails as well as email messages comprised of text identical to text contained within an inclusive email in the same conversation will be suppressed and not produced, however responsive, non-duplicative attachments will be produced along with their conveying email message even when the text of that parent email message is fully represented in a longer, later in time email thread. If predictive coding is used to determine documents' responsiveness, the predictive-coding methodology shall be applied prior to using email thread identification and suppression. Hit reports and any hit counts employed to make an argument concerning discovery burden shall be reasonably calculated to reflect the number of documents identified for review by the specified search terms. An inclusive email chain shall not be withheld in its entirety as privileged (meaning for attorney-client privilege or attorney work-product protection) unless every constituent email independently qualifies as privileged in its own right; if not all of the constituent emails are independently privileged, but one or more of the constituent emails are privileged, then the privileged emails may be redacted for privilege, but the non-privileged emails shall be produced.

11.     Privileged Documents

A Party must produce a privilege log of all the responsive documents withheld from production for privilege, attorney work-product protection, or any other applicable privilege. However, a Party has no obligation to log non-inclusive emails as described in Section 10, or to produce or log information generated after the date of the commencement of this lawsuit.

The privilege log must provide a document-by-document listing for each item withheld containing the following information, which may be drawn directly from file metadata, with all capitalized terms as defined in Exhibits A and B, provided such information is sufficient to independently support a claim of privilege or work-product protection:    BEGBATES, ENDBATES,    BEGATTACH,    ENDATTACH,    CUSTODIAN,    ALLCUSTODIANS, DATESENT,    DATERCVD,    LASTMODDATE,    FAMILYDATE,    DOCUMENTTYPE, AUTHOR, FROM, TO, CC, BCC, SUBJECT, TITLE, FILENAME, Basis for Withholding (*e.g.*, Attorney-Client Communication), and Document Description. To allow efficient logging and limit cost, burden, and delay, when asserting privilege on the same basis with respect to multiple documents, it is agreed that a Party may group the items withheld by category and provide a single Document Description applicable to all documents in a category.

The privilege log shall be provided in Microsoft Excel format.  All names and email addresses of counsel who appear on the privilege log and whose involvement with respect to a document supports a claim of privilege or work-product protection shall be indicated in the log by bold text and by appending the text "(^^)" following the name and/or email address in question. The privilege log shall contain a worksheet listing the name, title, company or firm, and email address of each attorney who appears on the log, as well as a list of all of the law firms and companies with which those attorneys were associated at the time of the creation of the documents on the log concerning those attorneys, provided that for threaded emails, a Party is not required to itemize every attorney appearing on inclusive emails.

12.    <u>Preservation of ESI</u>

Each Party shall be responsible for taking reasonable and proportional steps to preserve potentially relevant documents and ESI within its possession, custody, or control.

The Parties are not required to modify or suspend, on a going forward basis, the procedures used by them in the ordinary course of business to back up data and systems for disaster recovery and similar purposes related to continuity of operations.  The Parties have not taken, and are not required to take, any such backup media out of ordinary rotation.

Pursuant to this Protocol, the Parties have no obligation to preserve, collect or produce the following information or data sources:

a.    "Deleted," "slack," "fragmented," or "unallocated" data on hard drives;

b.    Random access memory (RAM) or other system-level ephemeral data automatically created by a computer or file system;

c.    Online access data such as temporary internet files, history, cache, cookies, etc.;

d.    Data in metadata fields that are frequently updated automatically, such as the "Date Accessed" value in Microsoft Windows operating systems;

e.    Backup tapes or media which are not readily accessible because of undue burden or cost or other "Backup Systems" that periodically store electronic information to permit recovery of the information in the event of a system failure;

f.    Personal non-business-related electronic data (e.g., email, calendars, contacts, notes, and text messages) stored on mobile devices that is not stored in the ordinary course of business (e.g., iPhone, iPad, Android, and BlackBerry devices);

g.    Voicemail messages that are not preserved in the ordinary course of business;

h.    Legacy data contained on computers or information storage systems or software that is no longer used or supported by a Party and no longer reasonably accessible;

i.   Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report;

j.   Known junk files from the NIST list or unimportant data files;

k.   Network, server, or software application logs;

l.   Structural files not material to individual document contents (e.g. .CSS, .XSL, .XML, .DTD, etc.);

m.   System files and files not actively saved by user;

n.   Automated emails not generated by a human author, including but not limited to automated out of office replies;

o.   Custodial data outside of named document custodians collection in Section 8, as agreed upon and delineated in the meet-and-confer process; and

p.   Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business, as agreed upon and delineated in the meet-and-confer process.

13.   <u>Third-Party Documents and ESI</u>

A Party that issues a subpoena upon any third party ("Issuing Party") after the execution of this ESI Protocol shall include a copy of this ESI Protocol and the Stipulated Confidentiality and Protective Order with the subpoena and state that third parties must produce documents in accordance with the specifications set forth herein.

The Issuing Party shall request that third parties produce the same documents to all Parties simultaneously.  In the event that the third party fails to do so (as indicated by, among other means, failing to address both Parties in its production cover letter), the Issuing Party shall produce a copy to all other Parties of any documents and ESI (including any metadata) obtained under subpoena to

a third party in the same form and format as produced by that third party within three (3) business days of receipt from the third party, and may not use those documents in this Action until such production has been made.

If a third-party production is not Bates-stamped, the Issuing Party will endorse its production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

14.    Cost-Shifting

Generally, ESI production costs under this Protocol shall be borne by the producing Party. The Parties expressly waive any right to seek reimbursement of reasonable costs related to producing documents, except those that the Court may order under the Federal Rules of Civil Procedure or its inherent authority.

A Party's nonresponsive or dilatory discovery tactics will be cost-shifting considerations. Likewise, a Party's meaningful compliance with this Protocol and efforts to promote efficiency and reduce costs are cost-shifting considerations.

15.    Limitation

Nothing in this Protocol shall be interpreted to require disclosure of relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.

This Protocol does not address, limit, or determine the authenticity, admissibility, relevance, discoverability, or agreement to produce any document or ESI.  The Parties are not waiving the right to seek any discovery and are not waiving any objections to any discovery requests.

All documents produced hereunder are fully protected and covered by the Parties' confidentiality agreements, by any clawback agreements entered into by the Parties, and by the Stipulated Confidentiality and Protective Order and any other applicable orders entered by this

Court in this matter.  If the producing Party is producing a Document subject to a claim that it is protected from disclosure under the Stipulated Confidentiality and Protective Order executed by the Parties on October 4, 2022, the producing Party shall make the designation as described in the Stipulated Confidentiality and Protective Order.

**IT IS SO STIPULATED AND AGREED, THROUGH COUNSEL OF RECORD.**


Dated:   October 4, 2022

By:   */s/ Mark R.S. Foster*
Mark R.S. Foster (CA SBN 223682)
MFoster@mofo.com
Jordan Eth (CA SBN 121617)
JEth@mofo.com
**MORRISON & FOERSTER**
425 Market Street
San Francisco, CA  94105
Telephone:  (415) 268-7126
Facsimile:  (415) 268-7522

William Savitt (*pro hac vice*)
Noah B. Yavitz (*pro hac vice*)
Emily R. Barreca (*pro hac vice*)
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, NY  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000

*Attorneys for Defendants*


By:   */s/ Carol V. Gilden*
Carol V. Gilden (*pro hac vice*)
cgilden@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369

Steven J. Toll (*pro hac vice*)
stoll@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave NW, Suite 500 East
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Chris Lometti (*pro hac vice*)
clometti@cohenmilstein.com
Benjamin F. Jackson (*pro hac vice*)
bjackson@cohenmilstein.com
Norhan Bassiouny (*pro hac vice*)

nbassiouny@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, Fourteenth Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

*Lead Counsel*

Nicole Lavallee (SBN 165755)
nlavallee@bermantabacco.com
Alexander S. Vahdat (SBN 284963)
avahdat@bermantabacco.com
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

*Liaison Counsel*

*Attorneys for Lead Plaintiffs Sheet Metal
Workers' National Pension Fund and
International Brotherhood of Teamsters Local
No. 710 Pension Fund, and Named Plaintiff
International Union of Operating Engineers
Pension Fund of Eastern Pennsylvania And
Delaware Local No. 542*

## CERTIFICATE PURSUANT TO LOCAL RULE 5-1(i)(3)

I, Carol V. Gilden, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories.

By:  ___*/s/ Carol V. Gilden*___

Carol V. Gilden

**ORDER GRANTING STIPULATION**

PURSUANT TO STIPULATION, IT IS SO ORDERED.


  October 6, 2022

Date:

_____

HONORABLE RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

**EXHIBIT A**

**<u>Fields for Production of Paper Documents Converted to Static Images</u>**

Note: The chart below describes the fields to be produced with the Load / Unitization Files in generic, commonly used terms.  Field names may vary from the below.

| Field | Definition |
|---|---|
| CUSTODIAN | Name of person or non-custodial data source from whose files the document is produced. |
| ALLCUSTODIANS | The Custodian value of the Document as well as the Custodian value for all copies of the Document that were removed as a result of de-duplication. |
| BEGBATES | Beginning Bates Number (production number). |
| ENDBATES | Ending Bates Number (production number). |
| BEGATTACH | First Bates number of family range (i.e., Bates number of the first  page of the first document). |
| ENDATTACH | Last Bates number of family range (i.e., Bates number of the last  page of the last attachment). |
| PGCOUNT | Number of pages in the document. |
| CONFIDENTIALITY | Confidentiality designation for documents produced in native format. |
| REDACTED | Yes/No field indicating whether a document has redactions. |
| PLACEHOLDER | Yes/No field indicating whether a document has been produced as a placeholder image (e.g., a slipsheet indicating the document was withheld as privileged). |
| PLACEHOLDERTEXT | The text shown on a placeholder image. |
| TEXTPATH | File path for OCR or Extracted Text files. |

**EXHIBIT B**

**Fields for Production of ESI**

Note:  The chart below describes the fields to be produced with  the Load / Unitization Files in generic, commonly used terms.  Field names may vary from the below.

| Field | Doc Type[1] | Definition |
|---|---|---|
| CUSTODIAN | All | Name of person or non-custodial data source from whose files the document is produced. |
| ALLCUSTODIANS | All | The Custodian value of the Document as well as the Custodian value for all copies of the Document that were removed as a result of de-duplication. |
| BEGBATES | All | Beginning Bates Number (production number). |
| ENDBATES | All | Ending Bates Number (production number). |
| BEGATTACH | All | First Bates number of family range (i.e., Bates number of the first page of the first document). |
| ENDATTACH | All | Last Bates number of family range (i.e., Bates number of the last page of the last attachment). |
| PGCOUNT | All | Number of pages in the document. |
| FAMILYDATE | | Date of the Parent Document (mm/dd/yyyy hh:mm:ss AM). |
| FOLDER | All | Folder location of the e-mail within the PST/OST. |
| FILEEXT | All | File extension of the native file (e.g., XLS, DOC, PDF). |
| FILENAME | eDoc | File name of the original electronically collected document. |
| HASHVALUE | All | MD5 Hash or SHA Value created during processing. |
| FROM | Email | Sender of email. |
| TO | Email | Recipient of email. |
| CC | Email | Additional recipients of email. |

---

[1] "eDoc" refers to an electronic document that is not an email.

| BCC | Email | Blind additional recipients of email. |
|---|---|---|
| SUBJECT | Email | Subject line of email. |
| DATESENT (mm/dd/yyyy hh:mm) | Email | Date and Time Sent. |
| DATERCVD (mm/dd/yyyy hh:mm) | Email | Date and Time Received. |
| TITLE | eDoc | Title field value extracted from the metadata of the native file. |
| AUTHOR | eDoc | Creator of a document. |
| DATECREATED | eDoc | Creation Date (mm/dd/yyyy hh:mm:ss AM). |
| MODIFIEDBY | eDoc | Last person who modified the document. |
| LASTMODDATE | All | Date the item was last modified (mm/dd/yyyy hh:mm:ss AM). |
| DOCUMENTTYPE | All | Descriptor for the type of Document: "E-Document" for electronic Documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Hard Copy" for Hard-Copy Documents. |
| PRODVOL | All | Name of media that data was produced on. |
| CONFIDENTIALITY | All | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation. |
| TIMEZONE | All | Time zone of data used during processing of data. |
| REDACTED | All | Yes/No field indicating whether a document has redactions. |
| PLACEHOLDER | All | Yes/No field indicating whether a document has been produced as a placeholder image (e.g., a slipsheet indicating the document was withheld as privileged). |

| PLACEHOLDERTEXT | All | The text shown on a placeholder image. |
|---|---|---|
| NATIVEFILELINK | All | For documents provided in native format. |
| FILEPATH | eDoc | Document's original file path. |
| TEXTPATH | All | File path for OCR or Extracted Text files. |