Jordan Eth (CA SBN 121617)
JEth@mofo.com
David J. Wiener (CA SBN 291659)
DWiener@mofo.com
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA  94105
Telephone:  (415) 268-7126
Facsimile:  (415) 268-7522

William Savitt (*pro hac vice*)
Noah B. Yavitz (*pro hac vice*)
Emily R. Barreca (*pro hac vice*)
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, NY  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000

*Attorneys for Defendants Bayer
Aktiengesellschaft, Werner Baumann,
Werner Wenning, Liam Condon,
Johannes Dietsch, and Wolfgang Nickl*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| SHEET METAL WORKERS' NATIONAL PENSION FUND and INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 710 PENSION FUND, individually and as Lead Plaintiffs on behalf of all others similarly situated, and<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS PENSION FUND OF EASTERN PENNSYLVANIA AND DELAWARE, individually and as Named Plaintiff, on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BAYER AKTIENGESELLSCHAFT, WERNER BAUMANN, WERNER WENNING, LIAM CONDON, JOHANNES DIETSCH, and WOLFGANG NICKL,<br><br>Defendants. | Case No.:  3:20-cv-04737-RS<br><br>CLASS ACTION<br><br>**DEFENDANTS' ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUPPLEMENTAL EXPERT REPORT UNDER CIVIL LOCAL RULE 7-11** |

**NOTICE OF MOTION AND MOTION**

Pursuant to Civil Local Rule 7-11, Defendants Bayer Aktiengesellschaft, Werner Baumann, Werner Wenning, Liam Condon, Johannes Dietsch, and Wolfgang Nickl (collectively, "Defendants") respectfully submit this Administrative Motion for Leave to File a Supplemental Expert Report addressing new evidence in the Rebuttal Expert Report of Professor Joshua Mitts, Ph.D. on Plaintiffs' Motion for Class Certification, Dkt. No. 164-1 ("Mitts Reply"). This motion is accompanied by the following Memorandum of Points and Authorities, as well as the Declaration of Emily R. Barreca ("Barreca Declaration") and a Proposed Order filed concurrently herewith. The proposed supplemental expert report of Cristian Zarcu is attached to the Barreca Declaration as Exhibit A ("Proposed Report").

**MEMORANDUM OF POINTS AND AUTHORITIES**

In moving for class certification, Plaintiffs had the burden to demonstrate typicality by showing that they acquired their Bayer American Depositary Receipts (ADRs) in domestic transactions. Plaintiffs likewise needed to present a class-wide methodology for establishing that other putative class members purchased their Bayer ADRs in the United States. *See Halliburton Co.* v. *Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014); *Morrison* v. *Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010). Plaintiffs instead chose to gloss over the issue, relegating it to a footnote and submitting an expert report with cursory analysis of a fraction of the trades pleaded. Nearly five months later, Plaintiffs submitted the Mitts Reply — a lengthy report that applies a newly minted methodology to ten of the omitted trades, relying heavily on never-before-considered documents.

Defendants have objected to the Mitts Reply, and respectfully submit that Plaintiffs' late-breaking evidence should not be considered. *See* Dkt. No. 165. If the Court finds it proper to consider Plaintiffs' new evidence, however, Defendants should be given an opportunity to respond. *See Provenz* v. *Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). Accordingly, to avert prejudice, Defendants respectfully request leave to submit the Proposed Report, which addresses the following new points in the Mitts Reply:

*First*, Mr. Zarcu examines the Mitts Reply's core assertion — based on newly cited broker terms and conditions — that Plaintiffs were entitled to cancel their Bayer ADR orders even after their brokers had committed capital to execute those orders through the purchase of overseas shares. *See* Mitts Reply ¶¶ 64, 71, 88, 90, 105. As Mr. Zarcu explains, Prof. Mitts's opinion has no support in the text of the brokerage documents upon which he relies, none of which purports to displace the industry custom and practice described in Mr. Zarcu's initial report. To the contrary, the broker terms and conditions lend further support to Mr. Zarcu's opinion that Plaintiffs lost any right to cancel their ADR orders the moment their brokers acted upon their instructions by purchasing Bayer ordinary shares abroad. *See* Proposed Report ¶¶ 9-11, 19-20, 37 n.41, 47 n.59.

*Second*, Mr. Zarcu documents how the Mitts Reply mistakes the beneficiaries of "step-out" allocations — who play no operational rule in trade execution — for the actual brokers that executed Plaintiffs' trades through overseas purchases. This systemic error undermines Prof. Mitts's new-on-reply analysis of each trade alleged by Lead Plaintiff Sheet Metal Workers' National Pension Fund, analysis resting on the premise that those trades were executed by Morgan Stanley. *See* Mitts Reply ¶¶ 76-77, 116-20. As Mr. Zarcu explains, the record shows that Morgan Stanley became a "step-out" beneficiary *after* other brokers executed the trades through the overseas purchase of foreign shares. *See* Proposed Report ¶¶ 14-16, 21, 24, 57.

*Third*, Mr. Zarcu details how the Mitts Reply both misunderstands the term "market order" and misstates its relevance. In an effort to distinguish Judge Pregerson's denial of class certification in *Stoyas* v. *Toshiba Corp.*, 2022 WL 220920 (C.D. Cal. Jan. 25, 2022) — which happened to involve a market order — Prof. Mitts claims that Plaintiffs' trades were not "market orders" because they were not executed "immediately." Mitts Reply ¶¶ 66-68. But as Mr. Zarcu shows, immediate execution is neither a necessary nor a sufficient attribute of such orders. Instead, a market order is simply "an order to buy or sell a security at the prevailing market price."[1] As such, market orders can be placed before the market opens and are often accompanied by instructions for execution over the course of a trading day — as was the case in

---

[1] SEC, *Special Study: Report Concerning Display of Customer Limit Orders* (May 4, 2000), available at https://www.sec.gov/news/studies/limitorder.htm.

*Toshiba* and for many of Plaintiffs' alleged trades.  In any event, as Mr. Zarcu explains, whether Plaintiffs' orders were market orders has no relevance to the question of when Plaintiffs became obligated to take and pay for their Bayer ADRs under the norms and conventions of ADR trading. *See* Proposed Report ¶¶ 12-13.

*Fourth*, Mr. Zarcu discusses the Mitts Reply's repeated reliance on FINRA records concerning irrelevant trades executed at prices widely diverging from those alleged by Plaintiffs. *See, e.g.*, Mitts Reply ¶ 95.  As Mr. Zarcu explains, those records have nothing to do with Plaintiffs' alleged purchases, and thus have no bearing upon when or where Plaintiffs became obligated to acquire their ADRs.  *See* Proposed Report ¶¶ 26-27, 35-37, 41-42, 48-49, 56-57.

*Fifth*, Mr. Zarcu explains how the Mitts Reply misinterprets contemporaneous trade communications to justify its conclusions.  For example, Prof. Mitts construes brokers' routine updates concerning execution as "confirmations" in which Plaintiffs' investment managers were invited to cancel trades.  *See* Mitts Reply ¶¶ 111-14.  As Mr. Zarcu sets out in the Proposed Report, Prof. Mitts's reading of these messages has no foundation in industry custom or practice. *See* Proposed Report ¶¶ 39, 45-46, 55.[2]

*Finally*, Mr. Zarcu explains why Prof. Mitts's newly announced "methodology to evaluate whether irrevocable liability for the purchase of newly issued Bayer sponsored ADRs occurred within the United States" cannot be used to resolve the issue on a class-wide basis.  Mitts Reply ¶ 30.  In "Step 1" of his proffered methodology, Prof. Mitts asserts that unless clearing records indicate that an investor received newly issued ADRs, it should be assumed that the investor traded in the United States.  *Id.* ¶ 30(i).  As Mr. Zarcu explains, this assumption cannot be

---

[2] Mr. Zarcu is well-qualified to opine on these topics based upon his decades of experience conducting ADR purchases and conversions as a trading professional, which included extensive first-hand experience assessing when clients and brokers became obligated to take and pay for securities.  *See* Zarcu Dep. Tr., Dkt. 164-4, at 321-22.  Courts in this Circuit and beyond accept expert testimony on industry practice, custom, and terminology with respect to specialized contracts.  *See, e.g.*, *Manhattan Re-Insurance Co.* v. *Safety Nat'l Cas. Corp.*, 83 F. App'x 861, 863 (9th Cir. 2003); *GIC Real Estate, Inc.* v. *ACE Am. Ins. Co.*, 2018 WL 5310832, at *5 (N.D. Cal. Aug. 20, 2018) (collecting cases); *S.E.C.* v. *U.S. Env't, Inc.*, 2002 WL 31323832, at *2 (S.D.N.Y. Oct. 16, 2002) ("[F]ederal courts have admitted expert testimony to assist the trier of fact in understanding trading patterns, securities industry regulations and complicated terms and concepts inherent in the practice of the securities industry.").

reconciled with the common circumstance in which delayed ADR issuance leads brokers to implement alternate settlement arrangements for overseas "cross" trades. And "Step 2" of Prof. Mitts's new methodology expressly relies upon an individualized inquiry into trading records:

> Step 2: If the purchaser bought newly issued ADRs, did the purchase of foreign shares automatically trigger the purchase of ADRs, such that the purchaser was "logically and legally bound" to take ADRs upon buying foreign shares? This condition could be satisfied by an ADR execution occurring simultaneously with the purchase of foreign shares or *other records indicating that the ADR conversion was automatically triggered by the purchase of the foreign shares rather than subject to additional approval*.

Mitts Reply ¶ 30(ii) (emphasis added). The parties' experts thus agree that resolution of extraterritoriality requires an individualized assessment of trading records. As Mr. Zarcu discusses — and the Mitts Reply itself demonstrates — this analysis cannot be performed on a class-wide basis because it requires expert review of non-public records specific to each trade. *See* Proposed Report ¶¶ 58-62.

Based on these pervasive defects, among others, Mr. Zarcu concludes that Prof. Mitts's new analysis is unfounded and inaccurate. Mr. Zarcu's opinions thus remain unchanged: There is insufficient evidence to conclude that Plaintiffs incurred liability to take and pay for any of their Bayer ADR purchases in the United States, and it is not possible to determine on a class-wide basis whether members of the proposed class incurred liability here.

*                    *                    *

Plaintiffs failed to establish the prerequisites for class certification in their opening papers. They should not be permitted an unanswered opportunity to address that failure with last-minute, new-on-reply evidence. Defendants respectfully request that the Court grant Defendants leave to file the Proposed Report.[3]

---

[3] To streamline the papers before the Court, Defendants are not seeking leave to file supplemental briefing on the deficiencies of the new analyses presented in the Mitts Reply. If the Court grants leave to file the Proposed Report, Defendants respectfully request that this Memorandum of Points and Authorities be considered as a submission in further opposition to Plaintiffs' Motion for Class Certification.

Dated:   April 3, 2023

By: */s/ Jordan Eth*

Jordan Eth (CA SBN 121617)
JEth@mofo.com
David J. Wiener (CA SBN 291659)
DWiener@mofo.com
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA  94105
Telephone:  (415) 268-7126
Facsimile:  (415) 268-7522

William Savitt (*pro hac vice*)
Noah B. Yavitz (*pro hac vice*)
Emily R. Barreca (*pro hac vice*)
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, NY  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000

*Attorneys for Defendants Bayer Aktiengesellschaft, Werner Baumann, Werner Wenning, Liam Condon, Johannes Dietsch, and Wolfgang Nickl*

Defendants separately reserve the right to assert waiver with respect to the many new legal arguments on extraterritoriality raised in Plaintiffs' reply briefing in support of class certification. *See, e.g.*, Dkt. No. 163 at 5 (citing and applying the governing *Toshiba* standard for the first time); *id.* at 7 & n.4 (arguing for the first time that passage of title in securities is sufficient to establish domesticity); *id.* at 10 (arguing for the first time that the point of obligation is determined by brokerage agreements).  Counsel will be prepared to address these points at oral argument, but Defendants respectfully submit that Plaintiffs should not be permitted to expand their affirmative legal arguments on reply.