# EXHIBIT A

61 F.4th 1053
United States Court of Appeals, Ninth Circuit.

Katie VAN, individually and on behalf of all others similarly situated, Plaintiff-Appellee,

v.

LLR, INC., dba LuLaRoe; and LuLaRoe, LLC, Defendants-Appellants.

No. 21-36020
|
Argued and Submitted December 07, 2022 Pasadena, California
|
Filed March 13, 2023

**Synopsis**

**Background:** Buyer brought class action against multilevel-marketing company under Alaska's Unfair Trade Practices and Consumer Protection Act (UTPCPA) to recover interest on refunds of improperly paid sales taxes. The United States District Court for the District of Alaska, H. Russel Holland, United States District Judge, 2021 WL 4238988, certified class. Company's petition for permission to appeal was granted.

**Holdings:** The Court of Appeals, Bea, Circuit Judge, held that:

presence of class members who suffered only a fraction of a cent of harm did not create an individualized issue that could predominate over class issues;

it had jurisdiction to consider issue of voluntary payment, even though motion to strike resolved defense of voluntary payment;

company presented insufficient evidence that individualized issue of voluntary payment barred recovery on at least some claims; and

remand was necessary for District Court to reassess whether buyer met burden of proving that common issues predominated.

Vacated and remanded.

Christen, Circuit Judge, concurred in part, concurred in judgment, and filed opinion.

**Procedural Posture(s):** Interlocutory Appeal; Motion to Certify Class.

**\*1057** Appeal from the United States District Court for the District of Alaska, H. Russel Holland, District Judge, Presiding, D.C. No. 3:18-cv-00197-HRH

**Attorneys and Law Firms**

Andrew M. Jacobs (argued), Snell & Wilmer LLP, Phoenix, Arizona; Jing (Jenny) Hua, Steven T. Graham, Randolph T. Moore, and Colin R. Higgins, Snell & Wilmer LLP, Costa Mesa, California; Michael Baylous and Brewster H. Jamieson, Lane Powell PC, Anchorage, Alaska; for Defendants-Appellants.

Kelly K. Iverson (argued) and Jamisen A. Etzel, Lynch Carpenter LLP, Pittsburgh, Pennsylvania; Ronald B. Carlson, Carlson Brown, Sewickley, Pennsylvania; James J. Davis Jr., Northern Justice Project LLC, Anchorage, Alaska; Goriune Dudukgian, California Justice Project, Pasadena, California; for Plaintiff-Appellee.

Shelby H. Leighton and Karla Gilbride, Public Justice, Washington, D.C., for Amicus Curiae Public Justice.

Before: Carlos T. Bea, Sandra S. Ikuta, and Morgan Christen, Circuit Judges.

Opinion by Judge Bea;

Partial Concurrence by Judge Christen

## OPINION

BEA, Circuit Judge:

**\*1058** Defendants LLR, Inc., and LuLaRoe, LLC (collectively "LuLaRoe"), appeal the district court's certification of a class of Alaska purchasers pursuant to Rule 23(f) of the Federal Rules of Civil Procedure. LuLaRoe allegedly charged sales tax to these purchasers based on the location of the retailer, rather than the location of the purchaser, which resulted

in some online purchasers being charged, and having paid, sales tax when none was owed.

LuLaRoe eventually refunded all the improper sales tax it collected, but it did not pay interest on the refunded amounts. Plaintiff Katie Van, an Alaska resident who paid the improperly charged sales tax to LuLaRoe, brought this class action under Alaska law on behalf of herself and other Alaskans who were improperly charged by, and paid sales tax to LuLaRoe for recovery of the interest on the now-refunded amounts collected and for recovery of statutory damages in the amount of $36 million ($500 per transaction). The district court certified the class under Rule 23(b)(3) and LuLaRoe appealed under Rule 23(f).

On appeal, LuLaRoe raises various arguments attacking the district court's certification order. Only one of LuLaRoe's arguments has merit: In its class certification decision, the district court clearly erred in its assessment of whether the individualized issues generated by the retailer discounts—some of which were provided to offset the improper sales tax—defeat the predominance of class issues. To afford the district court a new opportunity to weigh the predominance of class issues against this individualized issue, we vacate the district court's order certifying the class and remand for further proceedings.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Factual Background

LuLaRoe is a multilevel-marketing company that sells clothing to purchasers across the United States through "fashion retailers" located in all fifty states. These fashion retailers are not typical brick-and-mortar retail outlets. Instead, LuLaRoe's fashion retailers are generally lone individuals who sell LuLaRoe merchandise through word-of-mouth or social media sales. The fashion retailers purchase merchandise from LuLaRoe and are responsible for managing all aspects of their independently owned businesses, including inventory control, advertising, pricing, collection of payment from purchasers, and delivery.

Nevertheless, LuLaRoe provides certain support systems to the fashion retailers, including, from 2014 to 2017, a "point-of-sale" system called "Audrey" through which retailers could input discounts, calculate tax, process payments, and generate invoices and receipts. When transactions were processed through Audrey, the sales tax portion of the payment on the invoice paid to Audrey was transmitted to LuLaRoe. LuLaRoe then forwarded the amount of tax paid to the relevant jurisdiction. The fashion retailers were not required to use Audrey, and many fashion retailers processed payments through other platforms, such as Square, PayPal, or Mercari.

Audrey was meant to have—and was initially believed by LuLaRoe to have—the ability to calculate sales tax based on either the location of the fashion retailer or the location to which the fashion retailer shipped the merchandise. However, this proved incorrect. Audrey would always collect sales tax based on the location of the fashion retailer, even though normal rules of tax law require the calculation and collection of sales tax to be based on the **\*1059** location of the purchaser. Thus, Audrey's calculation of the sales tax was correct only if the purchaser and the fashion retailer were located in the same jurisdiction or jurisdictions with the same sales tax rate.[1]

[1] The sales tax rate can depend on the state, county, and/or municipality of the purchaser. "Over 10,000 jurisdictions levy sales taxes, each with different tax rates, different rules governing tax-exempt goods and services, different product category definitions, and different standards for determining whether an out-of-state seller has a substantial presence in the jurisdiction." *South Dakota v. Wayfair Inc.*, ––– U.S. ––––, 138 S. Ct. 2080, 2103, 201 L.Ed.2d 403 (2018) (Roberts, C.J., dissenting) (internal citations omitted).

At some point in Audrey's infancy, LuLaRoe implemented a toggle switch to ameliorate this problem. The toggle switch allowed fashion retailers using Audrey to override the automatic calculation of sales tax and to input the retailer's calculation of the amount of sales tax, including zero. However, there

is no evidence in the record that fashion retailers had training in calculating sales tax, and there is evidence that fashion retailers frequently misused the toggle switch to remove properly assessed sales tax or to add an unnecessary additional sales tax.

In January 2016, LuLaRoe discovered that the toggle switch had caused LuLaRoe to pay more sales tax to local jurisdictions than was being collected from purchasers because Audrey was programmed to send the same amount of sales tax to local jurisdictions whether or not the toggle switch was used to charge a different amount to the purchaser. In April 2016, LuLaRoe responded by disabling the toggle switch. As a result, all fashion retailers who used Audrey were required to use Audrey's calculation of the sales tax even if the purchaser was located in a jurisdiction with a different sales tax rate or no tax at all.

All told, the 10,606 Alaskan plaintiffs in this case [2] made 72,373 separate purchases in which sales tax was improperly assessed, with LuLaRoe collecting a total of $255,263.72 in purported sales tax.

[2]  This number is calculated using the number of unique email addresses used in purchases of LuLaRoe products in which the product was shipped to a jurisdiction in Alaska where the sales tax should have been zero, but nonetheless Audrey had added a sales tax amount, not zero.

LuLaRoe identifies two factual complications which arose in the administration of Audrey's sales tax regime and which LuLaRoe believes require an individualized consideration of each transaction.

First, LuLaRoe asserts that a significant number of fashion retailers—who retained full control over pricing and discounts—provided a discount to purchasers in an amount equal to or greater than the amount of improperly assessed sales tax, or provided purchasers with coupons for future LuLaRoe purchases in an amount equal to or greater than the amount of improperly assessed sales tax. As a result, those customers did not suffer any injury from LuLaRoe's sales tax practice.

It is unclear how widespread this practice was. Fashion retailers discounted 13,680 of the 72,373 Alaskan transactions at issue, but it is not clear whether or to what extent the discounts were intended to, and had, offset any improperly assessed sales tax. Some fashion retailers annotated the Audrey receipt with language stating that the discount was intended to offset the sales tax, some fashion retailers annotated the Audrey receipt with language acknowledging the improper invoicing of sales tax but not explicitly stating that the discount was intended to offset the sales tax, and some fashion retailers applied a discount **\*1060** without providing any explanation for the discount. Some of these unexplained discounts discounted the price by the exact amount, or nearly the exact amount, of the improperly assessed sales tax.

Second, LuLaRoe asserts that a significant number of fashion retailers explained the improper collection of sales tax to purchasers *before* the purchasers made any purchase. LuLaRoe claims that a significant number of class members thus do not have a meritorious claim under Alaska law because they were not deceived by LuLaRoe's business practices. The extent of this practice is likewise unclear.

Some invoices submitted by LuLaRoe include notations seeming to indicate that the consumer discussed the sales tax issue with the fashion retailer. However, every invoice which includes such a notation involved a discounted transaction. LuLaRoe also submitted four declarations from fashion retailers, each of which included the following language or similar language:

> [S]ome consumers who reside in states that do not charge sales tax on clothing, such as Alaska, complained about or objected to sales tax being added to their purchases. When this occurred, I usually informed them that it was LuLaRoe's policy to calculate, collect, and remit sales tax on all Audrey online purchases based on the Retailer's state and local tax laws .... I generally

recall that some customers did not complete their purchase because of the sales tax, while others completed their purchase and paid the sales tax despite their objection to being charged sales tax. On some occasions, the customer either asked for a discount to offset the sales tax or I provided the discount to offset the sales tax on my own.

In February 2017, LuLaRoe purchasers filed a lawsuit in the United States District Court for the Western District of Pennsylvania on behalf of a putative class of purchasers who were charged sales tax on LuLaRoe purchases. The putative class included purchasers who resided in various jurisdictions across eleven states, including Alaska, where there existed no sales tax on LuLaRoe products.

In May 2017, LuLaRoe transitioned to a new point-of-sale system, which resolved the sales-tax issues. Beginning in March 2017 and through June 2017, LuLaRoe issued refunds for all charges improperly collected as sales tax. However, LuLaRoe did not pay any interest that might have accrued between the time of the purchase to the time of refund.

In August 2018, the Pennsylvania court denied class certification because of the variations in state laws applicable across the putative class.

### B. Procedural History

In September 2018, Katie Van filed this class action on behalf of all Alaskans who were improperly charged a sales tax on LuLaRoe purchases. Van is an Alaskan and was a prolific purchaser of LuLaRoe products. From Spring 2016 to Fall 2017, Van purchased about $10,000 worth of LuLaRoe merchandise and paid $531.25 in improperly collected sales tax.

Van filed an amended complaint within days of her original complaint. LuLaRoe moved to dismiss Van's amended complaint on various grounds. The district court granted the motion to dismiss on the grounds that

the class members lacked standing—reasoning that, because the class has already been compensated for the improperly collected sales tax, the remaining injury suffered by the class was "too trifling of an injury to support constitutional standing." *Van v. LLR, Inc.*, No. 3:18-CV-0197-HRH, 2019 WL 1005181, at *6 (D. Alaska Mar. 1, 2019) (quoting **\*1061** *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 840 (9th Cir. 2007) (per curiam)). The district court, using an interest rate of 4.35% per year, calculated that Van's purchases of about $10,000 of LuLaRoe merchandise and improper payment of $531.25 in sales tax had resulted in only $3.76 in lost interest as Van's remaining injury. *Id.*

Van appealed and we reversed, holding that "[t]he district court erred by concluding that $3.76 is too little to support Article III standing." *Van v. LLR, Inc.*, 962 F.3d 1160, 1162 (9th Cir. 2020) (quotation marks omitted). We reasoned that, "[f]or standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'" *Id.* (quoting *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464, 137 S.Ct. 973, 197 L.Ed.2d 398 (2017)). We remarked that "[a]ny monetary loss suffered by the plaintiff satisfies the injury in fact element; even a small financial loss suffices." *Id.* (alterations adopted) (quotation marks omitted) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016)).

On remand, the district court vacated its order and addressed the remaining grounds in the motion to dismiss. The district court dismissed one of the two claims in the complaint but granted Van leave to amend. Van subsequently filed a second amended complaint, which is now the operative pleading.

Van brings two claims in her second amended complaint. Van's first claim alleges that LuLaRoe violated the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.* ("UTPCPA"). The UTPCPA prohibits, *inter alia*, unfair or deceptive acts or practices in the conduct of trade or commerce. § 45.50.471(a). The UTPCPA authorizes a private right of action for any

person "who suffers an ascertainable loss of money or property" as a result of an unfair or deceptive act or practice, and sets statutory damages "for each unlawful act or practice [at] three times the actual damages or $500, whichever is greater." § 45.50.531(a). Van's second claim asserts that LuLaRoe's business practices amounted to conversion and misappropriation under Alaska common law.

LuLaRoe moved to dismiss Van's second amended complaint, but the district court denied the motion to dismiss. LuLaRoe then answered Van's complaint, asserting various affirmative defenses.

In January 2021, Van moved to strike the twentieth affirmative defense asserted in LuLaRoe's complaint, which defense asserted that Van's and the class's claims were barred "under the voluntary payment doctrine." Van argued that the voluntary payment doctrine is not recognized under Alaska law and is contrary to the provisions of the UTPCPA. The district court granted the motion and struck the defense as it pertains to the UTPCPA claims.

Van then moved for class certification. Van proposed the following class definition: "All persons who paid 'tax' on a purchase of LuLaRoe products and whose purchase was delivered into a location in Alaska that does not assess a sales or use tax on the clothing that LuLaRoe sells." Van's motion for class certification sought to pursue only the UTPCPA claims in a class setting. After oral argument, the district court granted the motion, certified the proposed class, and appointed Van's attorneys as class counsel.

LuLaRoe petitioned the Ninth Circuit pursuant to Rule 23(f) of the Federal Rules of Civil Procedure for permission to appeal the certification order. A motions panel granted permission to appeal.

### *1062  II. STANDARD OF REVIEW

A district court's grant or denial of class certification is reviewed for abuse of discretion. *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 515 (9th Cir. 2018). A class certification order is an abuse of discretion if the district court applied an incorrect legal rule or if

its application of the correct legal rule was based on a "factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc); *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1164 (9th Cir. 2014).

Any underlying determinations of law are reviewed de novo, *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010), and any underlying determinations of fact are reviewed for clear error. *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 926 (9th Cir. 2019).

We generally accord more deference to a district court's grant of class certification as opposed to a district court's denial of class certification. *Id.*; *Parsons v. Ryan*, 754 F.3d 657, 673 (9th Cir. 2014).

### III. DISCUSSION

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. Under Rule 23, a class action may be maintained if the four prerequisites of Rule 23(a) are met, and the action meets one of the three kinds of actions listed in Rule 23(b). The parties here primarily debate whether "the questions of law or fact common to class members predominate over any questions affecting only individual members," as required for the action to be brought under Rule 23(b)(3).[3] Specifically, LuLaRoe argues that class certification was improper because individualized issues predominate over class issues.

[3]    No party argues that this case meets the requirements of Rule 23(b)(1) or (b)(2).

LuLaRoe identifies the following individualized issues that LuLaRoe believes predominate over class issues and made class adjudication improper: (1) LuLaRoe's refunding the improperly assessed sales tax leaves most of the class with only a miniscule remaining injury, which is "too trifling" to support Article

III standing for many class members; (2) some purchasers knew that the sales tax charge was improper but nevertheless voluntarily paid the invoice which contained the improperly assessed sales tax amount, and thus, under applicable Alaska law, no deceptive practice caused any injury for these purchasers; and (3) some purchasers received discounts from retailers to offset the improperly assessed sales tax and thus suffered no loss. [4] We address each argument in turn.

[4] LuLaRoe's opening brief contained a fourth argument, which LuLaRoe declined to press at oral argument: LuLaRoe's brief argued that its voluntary refund program was a superior method of resolving the class members' claims, and that Van is accordingly an inadequate representative for pursuing class litigation on behalf of the class. *See* ⚑Fed. R. Civ. P. 23(a)(4), (b)(3). We reject this argument. ⚑Rule 23 asks whether the class action format is superior to other methods of *adjudication*, not whether a class action is superior to other methods of compensating victims. Because a voluntary refund program, such as that undertaken by LuLaRoe, is not a method for "adjudicating" the controversy between LuLaRoe and its customers, it is irrelevant to the superiority analysis under ⚑Rule 23(b)(3). Further, Van did not have a choice between "accepting" the refund or pursuing class litigation because the refund was complete before Van filed suit.

First, a word on the Alaska statute at issue here: The UTPCPA has a fairly simple **\*1063** structure. The first section declares certain trade practices, including "using or employing ... fraud," to be unlawful. ⚑Alaska Stat. § 45.50.471. Subsequent sections empower the Alaska Attorney General to regulate, § 45.50.491, and to investigate such conduct, § 45.50.495. The Alaska Attorney General can also bring suit against individuals who engage in prohibited trade practices, seeking injunctive relief, § 45.50.501, and/or civil penalties, § 45.50.551. *See, e.g.,* ⚑*State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 534 (Alaska 1980) (a suit by the Alaska Attorney General under the UTPCPA).

Other sections of the statute permit individual and class actions for money damages and injunctive relief. Prior rejection of suit on the claim by the Alaska Attorney General is not a prerequisite. Private suits for injunctive relief are available to "any person who was the victim of the unlawful act, whether or not the person suffered actual damages." § 45.50.535. However, private plaintiffs seeking money damages must demonstrate that they "suffer[ed] an ascertainable loss of money or property as a result of another person's act or practice declared unlawful by [the first section of the UTPCPA.]" § 45.50.531. In suits for money damages, private plaintiffs can "recover for each unlawful act or practice three times the actual damages or $500, whichever is greater." *Id.*

### A. Whether Class Members Who Suffered Small Injuries Lack Standing

To establish standing under Article III of the Constitution, a plaintiff must show that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." ⚑*Gill v. Whitford*, ⸺ U.S. ⸺, 138 S. Ct. 1916, 1929, 201 L.Ed.2d 313 (2018) (quoting ⚑*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016)). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." ⚑*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations and internal quotation marks omitted). At issue here is whether the small amount of money currently owed to some class members is sufficiently concrete to support standing. The key issue for concreteness is whether the injury "actually exist[s]"—whether it can be described as "real." ⚑*Spokeo*, 578 U.S. at 340, 136 S.Ct. 1540.

"Article III standing requires a concrete injury even in the context of a statutory violation." ⚑*Id.* at 341, 136 S.Ct. 1540. In other words, even though the plaintiffs in

2023 Daily Journal D.A.R. 2009

this case are seeking $36 million in statutory damages, we must still ensure that plaintiffs are seeking to vindicate a concrete injury.

After LuLaRoe refunded all money that was improperly collected as sales tax, the only remaining injury suffered by class members for which they remain uncompensated is "the lost time value of money" for the period between the improper charge and the refund. Interest is used as a proxy for and method of quantifying this injury. *See* ⚑ *Van*, 962 F.3d at 1165 ("Interest is simply a way of measuring and remedying Van's injury, not the injury itself.").

It is not disputed that a significant number of class members were deprived of a negligible amount of money and/or were deprived of money for only a negligible amount of time. It is not disputed that 101 class members are owed less than $0.01 in interest, 230 are owed $0.01 in interest, 447 are owed $0.02 in interest, 457 are **\*1064** owed $0.03 in interest, 434 are owed $0.04 in interest, and 357 are owed $0.05 in interest. This represents 2,041 of the 10,369 class members. LuLaRoe argues that these class members lack standing under Article III of the Constitution and their presence in the class makes individualized issues predominate over class issues.

In our previous decision, we held that "the temporary loss of use of one's money constitutes an injury in fact for purposes of Article III." ⚑ *Id.* at 1164. The question now is whether the loss can be for such a short amount of time or involving such a small amount of money that the loss is "too trifling" to be a concrete injury. We answer that question: No. As we held in our previous decision, "a loss of even a small amount of money is ordinarily an 'injury,' " ⚑ *id.* at 1162 (quoting ⚑ *Czyzewski*, 580 U.S. at 464, 137 S.Ct. 973), and "[a]ny monetary loss suffered by the plaintiff satisfies the injury in fact element," ⚑ *id.* (quoting ⚑ *Carter*, 822 F.3d at 55) (alteration adopted). Today, we reaffirm this language. Any monetary loss, even one as small as a fraction of a cent, is sufficient to support standing. *See* ⚑ *TransUnion LLC v. Ramirez*, —— U.S. ——, 141 S.Ct. 2190, 2204, 210 L.Ed.2d 568 (2021) ("If a defendant has caused physical

or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."). [5] Thus, the presence of class members who suffered only a fraction of a cent of harm does not create an individualized issue that could predominate over class issues. [6]

[5]     Our decision in ⚑ *Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.3d 832 (9th Cir. 2007) (per curiam), is inapposite because it did not address whether a small *financial* injury is a legally cognizable harm.

[6]     LuLaRoe suggests in its opening brief (and argues in its reply brief) that the small losses suffered by some class members may be insufficient for statutory standing under Alaska law because the UTPCPA permits a private right of action to be brought under its terms only by individuals who have suffered "an ascertainable loss." ⚑ Alaska Stat. § 45.50.531(a). However, the Alaska Supreme Court has held that a loss can be "ascertainable" for UTPCPA purposes even if it is nominal or speculative. *See* ⚑ *Jones v. Westbrook*, 379 P.3d 963, 970 n.39 (Alaska 2016).

### B. Whether Class Certification Should Be Reversed Because Some Class Members Voluntarily Paid the Sales Tax

LuLaRoe argues that some fashion retailers explained the sales tax situation to purchasers before the purchasers paid the improperly assessed sales tax. LuLaRoe argues that some purchasers therefore lack a meritorious claim because they were not deceived by LuLaRoe's sales tax practices and instead voluntarily completed the transaction and paid the improperly assessed sales tax. LuLaRoe argues that the purchaser-by-purchaser assessment of the voluntariness of the payments makes individualized issues predominate over class issues.

Van provides two alternative reasons for rejecting this argument. First, Van argues that the voluntary payment doctrine defense was resolved in the motion to strike,

not the motion for class certification, and the district court's rejection of the defense is thus outside the scope of the Ninth Circuit's current appellate jurisdiction. Second, Van argues that the district court's rejection of the voluntary payment doctrine defense was correct.

### 1. *We Have Jurisdiction to Consider the Issue of Voluntary Payment*

"Federal courts are courts of limited jurisdiction. They possess only that **\*1065** power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (citations omitted). The courts of appeals are no exception. Not only are we constrained in the types of cases we may decide, but we are also constrained in the types of orders we may review.

"In general, we may review only final judgments of a district court on appeal." *Cunningham v. Gates*, 229 F.3d 1271, 1283 (9th Cir. 2000). However, Congress has permitted a limited category of nonfinal orders, called "interlocutory" orders, to be appealed before entry of final judgment. In 28 U.S.C. § 1292(e), Congress permitted the Supreme Court to prescribe rules defining interlocutory orders that may be immediately appealed. Rule 23(f) of the Federal Rules of Civil Procedure, which permits an appeal from an order granting or denying class certification, is one such rule. The district court's order which granted class certification in this case meets the requirements for immediate appeal. [7]

[7] Rule 23(f) requires a party seeking appeal under its provisions to receive permission from the court of appeals before doing so, a precondition which LuLaRoe satisfied.

So the issue properly before us is whether the district court was correct to grant class certification against LuLaRoe. Under certain circumstances, an appellate court reviewing an interlocutory decision may also extend its reach to other orders that are "inextricably intertwined with" or "necessary to ensure meaningful

review of" the properly appealable decision. *See K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 975 (9th Cir. 2015). However, an exercise of such "pendent appellate jurisdiction" is not necessary in this case.

We have jurisdiction to review issues "that form part of the district court's class certification decision," *Moser v. Benefytt, Inc.*, 8 F.4th 872, 875 (9th Cir. 2021), and "anything that properly enters the determination whether to certify a class is bound up with the order," *id.* (quoting 16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3931.1 (3d ed. Apr. 2021 Update)). The issue raised by LuLaRoe on appeal is both factually and legally part of the district court's class certification decision.

As a factual matter, LuLaRoe re-raised the issue in the certification briefing and the issue was re-addressed by the district court at the certification stage, albeit cursorily and by reference to its previous decision. Thus, the issue formed a part of the class certification decision, even though it also formed a part of the decision resolving Van's motion to strike.

As a legal matter, the Supreme Court has made clear that the predominance question "trains on the legal and factual questions that qualify each class member's case." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The Supreme Court has specifically noted that varying applicability of state law defenses can defeat predominance. *Id.* at 625, 117 S.Ct. 2231; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). The validity and prevalence of state law defenses must be considered in the predominance inquiry.

Thus, the validity and prevalence of state law defenses are not " 'pendent' to the class certification decision, but simply the class certification decision itself." *Moser*, 8 F.4th at 876; [8] *see also* **\*1066** *Ashcroft v. Iqbal*, 556 U.S. 662, 673, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (holding that appellate jurisdiction extends to issues "directly implicated by" the ruling under review); *Hartman v. Moore*, 547

U.S. 250, 257, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) (same).

8　　See also ⚑id. at 875 ("If the district court lacked personal jurisdiction over non-California plaintiffs, that presents obvious reasons why, under the ⚑Rule 23 requirements, certification of a nationwide class would be improper.... The personal jurisdiction and waiver questions are thus not ancillary to class certification, but central to the nationwide classes that the district court certified and, again, part of the very class certification decision we permitted [the defendant] to appeal.").

Because an assessment of the validity and prevalence of state law issues, including the defense raised by LuLaRoe here, is a necessary part of a class certification decision, the mere fact that a district court addressed the issue in ruling on a Rule 12 motion does not insulate the issue from appellate review if the issue was re-briefed at the class certification stage and therefore formed a part of the class certification decision.[9] Because we have jurisdiction to review the class certification decision, we have jurisdiction to review LuLaRoe's voluntary payment defense.

9　　The concurrence argues that we reached a contrary conclusion in ⚑Ruiz Torres v. Mercer Canyons Inc., 835 F.3d 1125 (9th Cir. 2016). However, ⚑Ruiz Torres reaffirmed that "we consider merits questions at the class certification stage ... to the extent they are relevant to whether ⚑Rule 23 requirements have been met." ⚑Id. at 1133. The question of whether LuLaRoe defeated predominance through its invocation of the voluntary payment defense is undoubtedly relevant to the ⚑Rule 23 analysis. ⚑Ruiz Torres is distinguishable from this case because the defendants in ⚑Ruiz Torres did not re-raise the issue at the class certification stage. Compare ECF

No. 47 at 18–19, Ruiz Torres v. Mercer Canyons, Inc., No. 1:14-CV-3032 (E.D. Wash. November 17, 2014) (arguing, at the summary judgment stage, that the defendants did not have a disclosure duty), with ECF No. 99, Ruiz Torres v. Mercer Canyons, Inc., No. 1:14-CV-3032 (E.D. Wash. February 20, 2015) (not making any such argument at the class certification stage). An issue cannot "form part of the district court's class certification decision," ⚑Moser, 8 F.4th at 875, if it was never raised at the class certification stage.

## 2. *LuLaRoe Did Not Substantiate the Individualized Issue of Voluntary Payment.*

It is questionable whether a purchaser's voluntary payment of an improperly charged sales tax is a defense—affirmative or otherwise—to a UTPCPA claim under Alaska law. However, we need not delve into this murky area of state law. Even assuming, *arguendo*, that such a defense is valid under Alaska law, applies to the UTPCPA, and that the communications by some retailers were sufficient to make the defense applicable, LuLaRoe's minimal proffers of evidence supporting this defense were insufficient to raise individualized questions that could predominate over the common questions raised by Van.

It is the plaintiff's burden to prove that class issues predominate.[10] See ⚑Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC, 31 F.4th 651, 664–65 (9th Cir. 2022) (en banc). However, a plaintiff need not rebut every individualized issue that could possibly be raised. To demand such proof would be akin to demanding proof "that plaintiffs would win at trial." ⚑Id. at 667.

10　　In this opinion, we write with the assumption that the plaintiff is the party seeking class certification and the defendant is the party opposing class certification. However, this analysis applies with equal force in the unusual circumstances where

a different party seeks or opposes class certification.

Instead, a plaintiff must merely demonstrate by a preponderance of the **\*1067** evidence that a common question of law or fact exists—an issue that is capable of class-wide resolution. In *Olean*, for example, we held that an expert economist's statistical regression model was "capable of resolving a class-wide question in one stroke" in an antitrust case because the statistical model was sufficient to be used "as evidence of the conspiracy's impact on similarly situated class members." *Id.* at 666, 675. Thus, the statistical model and expert's testimony generated common issues of fact.

If the plaintiff demonstrates that class issues exist, the defendant must invoke individualized issues and provide sufficient evidence that the individualized issues bar recovery on at least some claims, thus raising the spectre of class-member-by-class-member adjudication of the issue. *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018) ("[W]e do not consider ... defenses that [the defendant] *might* advance or for which it has presented no evidence." (emphasis added)).

If the defendant provides evidence that a valid defense—affirmative or otherwise—will bar recovery on some claims, then the district court must determine, based on the particular facts of the case, "whether individualized questions ... 'will overwhelm common ones and render class certification inappropriate under Rule 23(b)(3).' " *Olean*, 31 F.4th at 669 (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276, 134 S.Ct. 2398, 189 L.Ed.2d 339 (2014)). [11]

11    The question is not whether a great number of plaintiffs will win or lose at trial on the individualized issue. *Olean*, 31 F.4th at 667. Rather, the district court must assess the necessity and manageability of the potential class-member-by-class-member discovery process and trial. *See generally Sandusky Wellness Ctr., LLC*

*v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017); *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008). On the one hand, if the discovery and trial process must assess thousands of claims one claim at a time, then the individualized issue will weigh heavy in the predominance balancing. On the other hand, if the district court determines that the individualized issue is limited to a small number of class members or will otherwise be simple to investigate and present at trial, the district court might reasonably certify the class in the face of the individualized issue. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016). When making this assessment, the district court should keep in mind that the plaintiff bears the burden of proving that class issues predominate over individualized issues. *See Olean*, 31 F.4th at 664–65.

As pertains to the voluntary payment issue raised by LuLaRoe, LuLaRoe failed to provide sufficient evidence that any class member would lack a meritorious claim on this basis. Only a handful of Alaskan invoices submitted to the district court demonstrate that the purchaser knew of the sales tax issue before completing the purchase. And on each of these invoices, the purchaser was provided a discount on the transaction equal to or greater than the amount of improper sales tax, with at least some of the discounts provided for the express purpose of offsetting the sales tax. As LuLaRoe has vigorously argued in this appeal, any purchaser who received a discount, especially those purchasers who discussed the sales tax issue with the fashion retailer, may have received the discount for the purpose of offsetting the improper sales tax. And, as discussed below, any purchaser who received a discount in an amount greater than or equal to the improper sales tax for the purpose of offsetting the sales tax never paid the improper tax at all.

Because these purchasers did not pay the sales tax, or at least their invoices do not demonstrate that they paid the sales **\*1068** tax, their invoices are not sufficient evidence that any class member knew of the sales tax *and then paid it.* The invoices, then, are not sufficient

evidence that the individualized issue of voluntary payment bars recovery on at least some claims.

The fashion retailer declarations suffer from the same problem. Although the declarations generally assert that some consumers across the country were told of the sales tax issue, the declarations do not state with certainty that any member of this Alaska class was informed of the nature of the improper sales tax, was not provided a discount, and paid the sales tax nonetheless.

We do not permit a defendant to support its invocation of individualized issues with mere speculation. *See* *True Health*, 896 F.3d at 932. LuLaRoe's scant evidence of voluntary payment is not sufficient to defeat predominance.

### C. Whether Class Certification Should Be Reversed Because Some Fashion Retailers Offset the Tax Via Individual Discounts

Both parties and the district court agree that any class member who received a discount in an amount greater than or equal to the improper sales tax for the purpose of offsetting the improper sales tax has no claim against LuLaRoe. [12] LuLaRoe provided evidence that at least eighteen of the 13,680 discounts provided to class members were provided for the purpose of offsetting the improperly assessed sales tax. However, the district court certified the class nonetheless because it held that "the number of proposed class members for whom it can presently be determined received a discount to offset the sales tax being billed is de minim[i]s." [13]

[12] At first glance, this issue might seem to be one of state law: Because these class members received a discount to offset the improperly assessed sales tax, they lack a claim under the UTPCPA because the UTPCPA requires an "ascertainable loss." Even if a class contains some individuals who lack a meritorious claim for damages under state law, the class may still be certified so long as the class issues predominate over the administrability burden that will be required to identify such

individuals. *See* *Olean*, 31 F.4th at 669; *see also* *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276, 134 S.Ct. 2398, 189 L.Ed.2d 339 (2014). However, this issue also takes on a constitutional dimension: If these class members have not suffered any loss or injury, they also lack Article III standing. "The Supreme Court expressly held open the question 'whether every class member must demonstrate standing before a court certifies a class.' " *Olean*, 31 F.4th at 682 n.32 (quoting *TransUnion*, 141 S. Ct. at 2208 n.8) (emphasis omitted). We need not answer that question in this appeal, but the district court may be required to address the issue on remand.

[13] The district court failed to cite or discuss one of LuLaRoe's exhibits, which included at least eighteen examples where an Alaska customer was provided a discount for the express purpose of offsetting the improperly assessed sales tax. Because the exhibit included more than two examples where the discount was provided for the express purpose of offsetting the sales tax, the district court's conclusion that "only two [invoices] expressly stated that the discount being provided was to offset the sales tax being billed" was clearly erroneous. Nonetheless, the factual error is insignificant compared to the legal error; whether LuLaRoe provided two or eighteen examples, LuLaRoe had substantiated the individualized issue—that is, LuLaRoe's exhibits demonstrated that at least some purchasers lack meritorious claims because they were provided a discount that left them uninjured. The district court was required to assess whether Van had met her burden of proving that the questions of law or fact common to class members predominate over any questions affecting only individual members.

The district court's analysis rests on a misunderstanding of the Rule 23 inquiry. Rule

23 does not demand proof of who will **\*1069** win or lose at trial. *See* ⚑*Olean*, 31 F.4th at 667. LuLaRoe invoked an individualized issue—that retailer discounts left some class members uninjured —and provided evidence that at least some class members lack meritorious claims because of this issue, thus summoning the spectre of class-member-by-class-member adjudication.

13,680 discounts were provided to class members. LuLaRoe's evidence, even though it consisted of only a small number of invoices, was sufficient to prove that an inquiry into the circumstances and motivations behind each of the 13,680 discounts might be necessary. This inquiry, which could potentially involve up to 13,680 depositions and months of trial, certainly cannot be described as de minimis.

When a defendant substantiates such an individualized issue in this way, the district court must determine whether the plaintiff has proven by a preponderance of the evidence that the questions of law or fact common to class members predominate over any questions affecting only individual members—that is, whether a class-member-by-class-member assessment of the individualized issue will be unnecessary or workable. *See, e.g., Bowerman v. Field Asset Services, Inc.*, 60 F.4th 459, 469 (9th Cir. 2023) (ordering the de-certification of a class action where the trial of the individualized issues would be "prohibitively cumbersome" and the plaintiff had failed to prove that the class issues nevertheless predominated over the individualized issues).

### IV. CONCLUSION

For the reasons stated above, we vacate the district court's order granting class certification and remand for further proceedings. On remand, the district court should re-assess whether Van has met her burden of proving by a preponderance of the evidence that common issues predominate over questions affecting only individual members.

Each party shall bear its own costs for this appeal.

**VACATED AND REMANDED.**

CHRISTEN, Circuit Judge, concurring in part and concurring in the judgment:

I agree with my colleagues that class members who suffered negligible losses of money, or who were deprived of their money for negligible periods of time, suffered concrete injuries sufficient for Article III standing. I also agree with the majority that LuLaRoe did not show that individualized questions related to its voluntary payment defense will predominate over common questions, and that remand is necessary because it appears the district court may have overlooked LuLaRoe's Exhibit E. That exhibit showed eighteen transactions with customers in Alaska who received discounts for the express purpose of offsetting LuLaRoe's improperly assessed sales tax.

I write separately to briefly address the majority's conclusion that we have interlocutory jurisdiction to consider the voluntary payment issue merely because LuLaRoe re-briefed this previously rejected defense at the class certification stage, and to address the majority's impression that the district court somehow misunderstood the way ⚑Rule 23 operates when it considered LuLaRoe's evidence that some fashion retailers offset the sales tax with discounts. In my view, it is plain the district court was aware that retailers gave discounts for many reasons and that the relevant issue for purposes of class certification concerned the number of uninjured prospective class members, not the number of transactions. I agree that remand is required, but only because the district court appears to have **\*1070** overlooked an exhibit, and we cannot say that the failure to consider it was harmless.

### A.

Pre-class certification, the district court granted Van's motion to strike LuLaRoe's "voluntary payment" defense. LuLaRoe re-raised the voluntary payment doctrine in its opposition to class certification and argued that plaintiffs who knowingly paid LuLaRoe's unwarranted sales tax did not suffer an "ascertainable loss" within the meaning of the Alaska Unfair Trade Practices and Consumer Protection Act (UTPCPA). In its order granting class certification, the district court reasoned that LuLaRoe's ascertainable loss argument was "largely a recast" of the voluntary payment

defense that the court had previously considered and rejected. In the process of rejecting all of LuLaRoe's arguments in opposition to class certification, the court reiterated its prior ruling striking the voluntary payment defense.

Our jurisdiction on interlocutory appeal from an order granting or denying class certification is limited to the class certification order. *See, e.g.,* *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1113 (9th Cir. 2014) ("We must police the bounds of our jurisdiction vigorously here as elsewhere, and so may not ourselves venture into merits issues unnecessary to the Rule 23 issue before us." (citation omitted)). We have previously rejected litigants' attempts to slip prior rulings into a Rule 23(f) appeal through the backdoor. For example, in *Ruiz Torres v. Mercer Canyons Inc.*, we declined an invitation to review a party's recycled arguments:

> Mercer argues that the district court "committed a per se abuse of discretion by misinterpreting the substantive law governing plaintiffs' claims, which led it to divine common issues." This is essentially the same argument made by Mercer in its motion for summary judgment .... To resolve this question at the class certification stage would provide Mercer the sort of interlocutory review of the summary judgment order that the district court had declined to certify.

835 F.3d 1125, 1133 (9th Cir. 2016). *Ruiz Torres* explained that on interlocutory review from a class certification order, we reach merits issues "*only to the extent they are relevant to whether* Rule 23 requirements have been met." *Id.* (emphasis added). We are not alone in narrowly construing our interlocutory jurisdiction in Rule 23(f) appeals. *See, e.g.,* *CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076, 1098 (10th Cir. 2014) ("Rule 23 does not permit a party to shoehorn every decision that went against it into its petition for interlocutory review."); *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 107 (D.C. Cir. 2002) ("Mylan's effort to recast its Rule 12(b)(6) arguments as a challenge to

class certification on the ground that a class of direct purchasers lacks antitrust standing, is to no avail.... [R]eview of such issues would expand Rule 23(f) interlocutory review to include review of any question raised in a motion to dismiss that may potentially dispose of a lawsuit as to the class as a whole.").

The majority invokes our decision in *Moser v. Benefytt, Inc.*, 8 F.4th 872 (9th Cir. 2021), but *Moser* does not expand our interlocutory review beyond the class certification order. In *Moser*, a defendant opposing class certification argued that the district court could not certify a class of the requested scope because the court lacked personal jurisdiction over the non-California residents. *Id.* at 874. There was no dispute the district court had personal jurisdiction over the named plaintiff, so the defendant never filed a motion to dismiss at the 12(b)(2) stage. *Id.* The district court **\*1071** certified the requested class and ruled that the defendant waived its personal jurisdiction argument by not raising it in its Rule 12(b)(2) motion. *Id.* We reversed. In doing so, *Moser* explained that consideration of the waiver and personal jurisdiction issues was permissible on interlocutory appeal in that case because "we [we]re not being asked to review anything 'pendent' to the class certification decision, but simply the class certification decision itself." *Id.* at 876. Indeed, on the merits, we concluded that the defendant could not have raised its personal jurisdiction objection concerning the non-resident putative class members until the plaintiff moved to certify a class that included them. *Id.* at 877–78.

An issue is not "bound up" within a class certification order merely because a party re-raises a previously litigated issue in its class certification briefing and the district court addresses that issue "cursorily and by reference to its previous decision." Here, although it is a close question, I conclude we have interlocutory jurisdiction to review the voluntary payment defense because the district court's order was not entirely limited to reiterating its prior ruling when rejecting LuLaRoe's ascertainable loss argument—even if that argument was, per the district court's description,

"largely a recast" of the voluntary payment defense. Nevertheless, as the majority opinion explains, the evidence LuLaRoe proffered in support of this defense was insufficient because it showed only that an unspecified number—"some"—individuals voluntarily paid LuLaRoe's improperly assessed tax. [1]

[1]    The majority suggests it is questionable whether a purchaser's voluntary payment of an improperly charged sales tax is a defense to a UTPCPA claim under Alaska law. The majority's description is charitable. There is no indication that the voluntary payment doctrine has ever been applied in a case involving the Alaska UTPCPA, and as far as I can tell, no other state that has adopted this uniform code has recognized the voluntary payment doctrine as a defense.

## B.

I agree with my colleagues that remand is required. LuLaRoe submitted two exhibits with invoices reflecting discounts that retailers gave to purchasers. Invoices in the first exhibit show transactions in which fashion retailers provided discounts to customers and expressly noted that the discounts were intended to offset LuLaRoe's improperly assessed sales tax. Invoices in the second exhibit reflected transactions in which the retailers provided discounts that were equal, or roughly equal, to the amount of sales tax that had been improperly assessed, but the retailers did not expressly note on the invoices that the discounts were meant to offset the sales tax. The district court found that LuLaRoe retailers gave discounts "for a variety of reasons" and many of the discounts may not have been to "offset the sales tax ... being billed, but they may have been for another reason entirely." We defer to the district court's factual findings unless they are clearly erroneous. *See* Sali v. Corona Reg'l Med. Ctr., 909 F.3d 996, 1002 (9th Cir. 2018).

Because the district court did not cite or discuss LuLaRoe's first exhibit, the record suggests that the court may have considered only the second exhibit,

which contained two examples in which an Alaska customer was provided a discount to offset the improperly charged sales tax. The first exhibit appears to contain at least eighteen instances in which an Alaska customer was provided a discount for the express purpose of offsetting the improperly assessed sale tax. Assuming the district court overlooked this exhibit, I cannot say that the **\*1072** district court's error was harmless, and I agree with my colleagues that remand is required so the district court may consider it.

I do not agree with the majority's suggestion that the trial court misunderstood the Rule 23 inquiry or that LuLaRoe's evidence suggested up to 13,680 depositions and months of trial might be required. The evidence LuLaRoe submitted in opposition to class certification showed that roughly 10,000 Alaska class members made 72,373 separate purchase transactions with improper sales tax charges. But 4,295 class members made only one purchase—meaning that 94 percent of the 72,373 transactions with improper sales tax charges involved purchasers who entered into multiple transactions. The fact that 13,680 transactions were discounted does not mean that a significant number *of putative class members* received discounts to offset improper sales tax charges. The district court concluded "the number of proposed class members for whom it can presently be determined received a discount to offset the sales tax being billed is *de minimus*," but we cannot tell whether the court considered Exhibit E when it made this determination. That said, the district court has already found that discounts were given for many reasons, and consumers who received express discounts may nevertheless have other, non-discounted transactions that make them eligible members of the class. Contrary to the majority's suggestion, the district court recognized that individualized determinations might be necessary.

Because the district court may have overlooked Exhibit E, I concur in the remand and judgment.

## All Citations

61 F.4th 1053, 2023 Daily Journal D.A.R. 2009

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.