**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SHEET METAL WORKERS' NATIONAL PENSION FUND and INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 710 PENSION FUND, individually and as Lead Plaintiffs on behalf of all others similarly situated, and<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS PENSION FUND OF EASTERN PENNSYLVANIA AND DELAWARE, individually and as Named Plaintiff, on behalf of all others similarly situated,<br><br>          Plaintiffs,<br>          vs.<br>BAYER AKTIENGESELLSCHAFT, WERNER BAUMANN, WERNER WENNING, LIAM CONDON, JOHANNES DIETSCH, and WOLFGANG NICKL,<br>          Defendants. | Case No: 3:20-cv-04737-RS<br><br>CLASS ACTION<br><br>**JOINT LETTER REGARDING DISCOVERY DISPUTES**<br><br>Ctrm:  3 – 17th Floor<br>Judge:  Richard Seeborg<br><br>Ctrm:  C – 15th Floor<br>Magistrate Judge:  Sallie Kim |

## **ATTESTATION OF COUNSEL**

Prior to the filing of this joint letter, the parties met and conferred telephonically and complied with Section 9 of the Guidelines for Professional Conduct of the United States District Court for the Northern District of California.

Dated: December 1, 2023

**COHEN MILSTEIN SELLERS & TOLL PLLC**

By:  */s/ Carol V. Gilden*
       Carol V. Gilden (admitted *pro hac vice*)

190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
Email: cgilden@cohenmilstein.com

*Lead Counsel for Plaintiffs and the Class*

**WACHTELL, LIPTON, ROSEN & KATZ**

By:  */s/ Noah B. Yavitz*
       Noah B. Yavitz (admitted *pro hac vice*)

51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000
Email: NBYavitz@wlrk.com

*Attorneys for Defendants Bayer Aktiengesellschaft, Werner Baumann, Werner Wenning, Liam Condon, Johannes Dietsch, and Wolfgang Nickl*

[No: 3:20-cv-04737-RS] JOINT LETTER REGARDING DISCOVERY DISPUTES

## I.    RELEVANT BACKGROUND

This is a securities fraud class action centering on Defendants' allegedly false and misleading statements about Bayer's due diligence on the potential liability arising from toxic tort litigation over whether the herbicide Roundup causes cancer (the "Roundup Litigation") in connection with Bayer's acquisition of Monsanto (the "Merger"). The parties have reached impasse as to: (1) whether Defendants must remove privilege redactions on documents identified in an interrogatory response as supporting their position that they relied in good faith on the representations, reports, expert opinions, and advice of advisors in connection with any public statements concerning Bayer's due diligence on the Roundup Litigation; and (2) whether Defendants must produce 63 documents for which Plaintiffs have otherwise challenged Defendants' assertions of privilege.

After receiving Defendants' revised privilege log on August 4, 2023 and their interrogatory responses on September 7, 2023, Plaintiffs raised these issues with Defendants in letters dated September 11, 2023 and September 13, 2023; Defendants responded on September 22, 2023 and September 25, 2023; Plaintiffs responded on October 24, 2023; and Defendants responded on November 10, 2023. The parties met-and-conferred telephonically on October 27, 2023 and continued their meet-and-confer on November 16–17, 2023 and November 28, 2023 but were unable to resolve the disputes. Non-expert discovery ends on March 29, 2024 (ECF No. 185 § 1).

## II.    WHETHER DEFENDANTS HAVE IMPLICITLY WAIVED PRIVILEGE OVER CERTAIN DOCUMENTS IDENTIFIED IN THEIR INTERROGATORY RESPONSES RELATING TO BAYER'S DUE DILIGENCE

### A.    Plaintiffs' Position

Plaintiffs' Interrogatory No. 3 asked Defendants to "[i]dentify all witnesses and documents supporting Defendants' position that Defendants relied in good faith on the representations, reports, expert opinions, and advice of others whom Defendants believed to be reliable and competent in the matters presented," as expressed in Defendants' Fifteenth Defense (ECF No. 127 at 152). Defendants' response (attached as **Exhibit A**) identified seven witnesses—*all* of whom are lawyers—and 386 documents in which ***nearly all*** content relating to Bayer's due diligence on the Roundup Litigation is redacted for privilege. For example, 101 of the 386 documents are copies of memoranda prepared by the law firms Sidley Austin and Bartlit Beck in which all substantive

content relating to the due diligence process is redacted for privilege, aside from some limited summaries of publicly available information. In the other documents, ***virtually all*** content concerning the details of Bayer's due diligence on the Roundup Litigation has been redacted.[1]

Defendants have argued they need not produce the redacted content because they only intend to rely on portions of these documents purportedly concerning "factual reports" about the "operational details" of the "process undertaken to conduct due diligence."[2] But Plaintiffs' claims are not so limited, notwithstanding Defendants' repeated attempts to recast them with out-of-context snippets from the record. Plaintiffs have alleged Defendants made false and misleading statements both about ***how*** the due diligence on the Roundup Litigation was performed, and ***what*** that due diligence showed. *See* Second Am. Compl. (ECF No. 107) ¶¶ 219–49. For instance, Plaintiffs allege Bayer's former CEO Werner Baumann falsely or misleadingly stated that as part of the "due diligence process," Bayer conducted a "thorough analysis" and "identified significant potential for sales and cost synergies." *Id.* ¶ 225. Plaintiffs also allege that Baumann falsely or misleadingly told investors that Bayer's executives had "reassure[d] [them]selves that there is no communication out there that would 'qualify as smoking gun'" in the Roundup Litigation. *Id.* ¶ 247. These alleged misrepresentations (which are but two examples of several) do not concern the nuts-and-bolts steps in Bayer's due diligence process—they are about ***what Bayer learned*** from the due diligence process. And Defendants' good-faith reliance defense, as asserted in their Answer, is broad and not limited only to a subset of the allegedly false and misleading statements.

In any event, regardless of what they call it, Defendants are effectively asserting an advice-of-counsel defense.[3] *See, e.g.*, *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2018 WL 6138160, at *5 (C.D. Cal. Jan. 24, 2018) (courts "have found implied waiver of attorney-client privilege in

---

[1] Only 23 of the 386 documents contain unredacted content that arguably sheds light on how Bayer conducted its pre-closing due diligence on the Roundup Litigation. But even in these documents, content that appears to relate to the Roundup Litigation is redacted for privilege. And over half of these documents appear to be duplicates of the others.

[2] Plaintiffs dispute the Individual Defendants' contention they "did not directly oversee this legal diligence," and this is the subject of ongoing discovery.

[3] Defendants' reliance on *U.S. Ethernet Innovations LLC v. Acer Inc.*, 2014 WL 3570749 (N.D. Cal. July 17, 2014) is misplaced, because there the Defendant had not asserted a good-faith reliance defense, nor had they cited specific due diligence materials in support of their defenses.

instances in which the magic words 'advice of counsel' are not used but where the circumstances underlying an affirmative defense necessarily rely on otherwise privileged material"). Their defense is they are relying on what their lawyers told them about the due diligence on the Roundup Litigation. But they are using privilege to prevent Plaintiffs—and the finder-of-fact—from finding out **what exactly their lawyers told them**. And knowing what their lawyers told them is essential to determining whether they actually relied on their counsel's representations, and, if so, whether that reliance was in good faith. *See, e.g.*, *Van Straaten v. Shell Oil Prods. Co.,* 2010 WL 11586386, at *6 (N.D. Ill. June 8, 2010) ("To make a sufficient showing, Defendants would need to show . . . not only that they consulted with an attorney but also the nature of the advice that they received, whether it was advice on which they could have reasonably relied, and the most important (and obvious), whether they followed their counsel's advice."); *Vitamin Energy, Inc. v. Evanston Ins. Co.*, 2023 WL 5162178, at *4 (E.D. Pa. July 28, 2023) (plaintiff must have access to materials supporting good-faith reliance defense to test it, because if defendant's actions contradicted what the lawyer said, that would show "bad faith; not good"), *approved and adopted by* 2023 WL 6035678 (E.D. Pa. Aug. 9, 2023).

Defendants are thus using privilege as both a sword and a shield, which is unfair and not allowed. *See, e.g.*, *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (a party "may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials"); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (privilege waived where "a party raises a claim which in fairness requires disclosure of the protected communication"). Accordingly, Defendants should be ordered to re-produce the 386 documents— which they have put at issue by citing them in support of their good-faith reliance defense—with any content relating to their due diligence on the Roundup Litigation un-redacted. Alternatively, Plaintiffs propose that this Court review the documents *in camera* to determine whether the redacted content is privileged[4] and, if so, whether Defendants waived their claims of privilege over any of the redacted content such that it must be produced.

---

[4] Merger due diligence materials containing assessments of "legal risk" are not privileged even where "legal people . . . assess the legal questions" because, "in the end, the purpose is business

B.    Defendants' Position

Plaintiffs' surviving theory of liability is that Defendants overstated what Bayer did to assess Monsanto's risk of liability from the Roundup Litigation. To rebut this claim, Defendants plan to present evidence showing what Bayer did to assess that risk. This will include documents establishing the fact that Bayer retained two law firms to analyze and monitor the Roundup Litigation, and that lawyers from those firms prepared legal memoranda documenting their analysis. Because the individual Defendants are high-ranking executives who did not directly oversee this legal diligence, they also intend to assert their good-faith reliance on contemporaneous factual reports from their colleagues concerning what was done.

Plaintiffs call this an "advice-of-counsel" defense and argue that it waives privilege, entitling them to full access to Bayer's legal analysis concerning still-pending tort litigation. To justify that sweeping relief, Plaintiffs assert that this case is not just about "how the due diligence" was performed, but also "what Bayer learned from the due diligence process."

Plaintiffs misstate their claims. Prior to this letter, they have never before alleged that Bayer misrepresented its lawyers' legal conclusions concerning the Roundup Litigation. This is clear from the Complaint, which accuses Defendants of misrepresenting "the extensiveness and detail of information reviewed," and thus misleading the market into believing that "Bayer had undertaken sufficient due diligence of the Roundup liability risks." *E.g.*, Second Am. Compl. ¶ 230.  In opposing dismissal, Plaintiffs accurately characterized their pleadings as directed to Defendants' alleged "misrepresent[ion of] the thoroughness of the diligence process" and "false statements about the extent of Bayer's due diligence."  ECF No. 73 at 14, 25. And the Court adopted that characterization, allowing Plaintiffs to proceed only on a narrow theory: Defendants had "assured investors about their diligence, even though their diligence was less than what an investor would believe their statement meant." *Sheet Metal Workers Nat'l Pension Fund* v. *Bayer AG*, 2021 WL 4864421, at *3 (N.D. Cal. Oct. 19, 2021); *id.* (holding that Plaintiffs pleaded "misleading statements and omissions concerning Bayer's due diligence *efforts*" (emphasis added)). Indeed, Plaintiffs

and the advice is business advice." *United States ex rel. Gill v. CVS Health Corp.*, 2023 WL 2771166, at *6 (N.D. Ill. Apr. 4, 2023).

acknowledged as much just last month, when they sought approval to inform the Class that their claims are directed to alleged misrepresentations about the "exten[t]" of diligence.[5] They should not be permitted to amend their pleadings three years post-filing, under the guise of a discovery letter.

Given the narrow scope of Plaintiffs' claims, Defendants need not and will not assert reliance on any privileged communications concerning the legal conclusions developed through Bayer's diligence process. Instead, Defendants will rely upon — and have already produced, at Plaintiffs' insistence — non-privileged communications concerning the operational details of that process. Disclosing the process undertaken to conduct due diligence, but not the underlying substance or legal conclusions of that diligence, does not undermine a party's assertion of privilege. *U.S. Ethernet Innovations LLC* v. *Acer Inc.*, 2014 WL 3570749, at *2-3 (N.D. Cal. July 17, 2014) (no waiver where testimony described the diligence "process," but not the "legal advice or confidential information" provided by counsel). And as the Ninth Circuit has made clear, there can be no waiver where a party has not "resort[ed] to privileged communications" in its defense. *Home Indem. Co.* v. *Lane Powell Moss & Miller*, 43 F.3d 1322, 1327 (9th Cir. 1995). Plaintiffs' authorities are not contrary. *See, e.g.*, *Nat.-Immunogenics Corp.*, 2018 WL 6138160, at *5-6 (waiver where defendants "reserve[d] an unrestricted right to introduce privileged information in support of" their defense).

Moreover, even if Plaintiffs could recast their claims at this late date, the relief that they seek cannot be squared with the "fairness principle" that circumscribes the doctrine of implied waiver. *Bittaker*, 331 F.3d at 719-21. If Plaintiffs' argument were adopted, Defendants would be presented with an impossible choice — either (a) litigate Plaintiffs' claims without presenting any evidence concerning Bayer's diligence or (b) waive privilege over their attorneys' internal assessment of material tort litigation that continues to this day. Because it would be Plaintiffs, not Defendants, who placed any attorney-client communications concerning Bayer's diligence at issue, there is no cause for a finding of waiver.[6] Defendants have already logged and produced in redacted form all factual

---

[5] *See* ECF No. 197 ("Lead Plaintiffs allege that Defendants made false and misleading statements and omissions to promote the Merger, assuring investors that Bayer had conducted an extensive due diligence investigation on Monsanto and its exposure in the Roundup litigation when Bayer had not reviewed or requested any internal Monsanto documents relating to Roundup's legal risks as part of the due diligence process.")

[6] *See Laser Indus., Ltd.* v. *Reliant Techs., Inc.*, 167 F.R.D. 417, 446 (N.D. Cal. 1996) (a finding of implied waiver is appropriate only where "the party asserting the privilege acts

information concerning Bayer's diligence process that was identified through the parties' agreed-upon search protocol, and will permit testimony from its witnesses concerning the operational details of that process (*i.e.*, what the lawyers did). This is more than sufficient for Plaintiffs to pursue their claims. Fairness requires no more.

## III.    PRIVILEGE LOG DISPUTE

### A.    Plaintiffs' Position

Plaintiffs believe they have a reasonable basis for challenging Defendants' claims of privilege over thousands of the 4,770 documents they have withheld for privilege.[7] Nevertheless, to avoid burdening the Court, in **Exhibit B** Plaintiffs have identified 63 challenged documents of core relevance to Plaintiffs' claims and for which Defendants have failed to support their claims of privilege. Plaintiffs respectfully request that Defendants be ordered to produce these documents.

The challenged documents are public statements, media interviews, press releases, investor call scripts, talking points, transaction communications, due diligence questionnaires, and Board meeting minutes. The ***primary*** purpose of these documents was business-related, not the "giv[ing] or receiv[ing of] legal advice," and as such the documents are not privileged. *In re Grand Jury*, 23 F.4th 1088, 1091–92 (9th Cir. 2021). Nor are the documents entitled to work-product protection, because they were prepared "in the ordinary course of business." *Ahmer Bilal, Inc. v. Nationwide Ins. Co. of Am.*, 2022 WL 18284927, at *3 (E.D. Cal. Dec. 30, 2022); *see also, e.g.*, *In re Grand Jury*, 23 F.4th at 1093–94 (work-product protection applies only to litigation documents to be used in adversarial process). Notably, Defendants' log does not claim that these documents "convey" legal advice from any particular attorney, as it does for other documents, and any legal advice actually "contained" in these documents can be redacted before the documents are produced.

affirmatively [] to place the privileged communications in issue" such that the assertion is "manifestly unfair"); *J.R. Simplot Co.* v. *McCain Foods USA, Inc.*, 2021 WL 7451378, at *6 (D. Idaho Apr. 2, 2021) (rejecting effort to assert waiver in a patent infringement suit, concluding that "[a] party should be able to present a defense to an accusation of willful infringement *without* exposing itself to intrusive discovery").

[7] The terms "privilege" and "privileged" as used herein refer both to attorney-client privilege and attorney work-product protection.

Defendants' arguments to the contrary lack merit. First, it is implausible that draft public statements and investor communications—which by definition are prepared for distribution outside the company—consist of confidential legal advice and primarily serve a legal purpose. *See, e.g.*, *In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *9 (D.N.J. Dec. 5, 2016) ("[A] public relations campaign and media strategy to bolster a party's public image and reputation is . . . not privileged"). Second, that a business document was "circulated" for legal review does not render it privileged. *See, e.g.*, *Garcia v. Serv. Emps. Int'l Union*, 2019 WL 8723916, at *2 (D. Nev. May 23, 2019) ("Merely copying an attorney on a communication does not, standing alone, render it privileged."). Third, that a lawyer at one point weighed in on a draft of a document, such that it "reflects" prior attorney input, is insufficient to establish privilege. *See, e.g.*, *Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 350641, at *3 (N.D. Cal. Feb. 2, 2008) ("A vague declaration that states only that the document 'reflects' an attorney's advice is insufficient to demonstrate" that the document is privileged.). Finally, drafts of documents that were ***not*** created for the ***primary*** purpose of giving or receiving ***legal*** advice are not privileged—even if they were sent to or from a lawyer. *See City of Roseville Emp.s' Ret. Sys. v. Apple Inc.*, 2022 WL 3083000, at *19 (N.D. Cal. Aug. 3, 2022); *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 644–45 (D. Nev. 2013).

Plaintiffs respectfully request that the Court review these privilege log entries and order Defendants to produce those documents for which Defendants have failed to support their privilege claims, or that the Court review the identified documents *in camera* to determine whether Defendants have appropriately withheld them.

B.     Defendants' Position

Plaintiffs seek to compel production of 63 documents because their "***primary*** purpose" was "business-related." But the ultimate purpose of the documents is irrelevant — what matters is the purpose for which they were provided to and commented upon by counsel. *See In re Grand Jury*, 23 F.4th at 1091-93 ("the client must consult the lawyer for the purpose of obtaining legal assistance and not predominantly for another purpose" (internal quotation omitted)). Defendants have served privilege logs and produced cover emails showing that the purpose of the challenged communications was clearly legal: The documents were sent to or received by counsel as part of

their legal review and edited in connection with the provision of that legal advice. For example, Plaintiffs seek production of 32 draft public statements, each of which received iterative legal comment throughout its preparation. These drafts are privileged because lawyers exercised their legal judgment to advise on Bayer's public disclosures in connection with a major transaction. *See In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 329 F.R.D. 656, 662 (D. Or. 2019) (draft document "prepared by [the defendant] or a third-party vendor and sent to counsel for review and legal advice is subject to the attorney-client privilege"). This distinguishes them from the documents at issue in Plaintiffs' cases, which were circulated to facilitate "[o]rdinary public relations advice" rather than legal input or merely conveyed a non-attorney's "opinions" and "business strategy." *In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *9; *Hynix Semiconductor Inc.*, 2008 WL 350641, at *3; *cf. Garcia*, 2019 WL 8723916, at *2-3 (communications were privileged where counsel was copied "so that he could provide 'advice regarding any legal ramifications for planned courses of action'"). In like circumstances, courts within this Circuit have rejected production "because the plaintiffs could compare [the draft documents] to the final public version and determine the underlying legal advice provided or incorporated." *Tsantes* v. *BioMarin Pharm. Inc.*, 2022 WL 17974487, at *2 (N.D. Cal. Dec. 7, 2022).

The enclosed excerpt of Defendants' privilege log details why it was proper to withhold each of these documents, as well as the other materials challenged by Plaintiffs. Defendants respectfully request that the Court reject Plaintiffs' effort to set aside these valid assertions of privilege, and submit that it is unnecessary for the Court to assume the burden of *in camera* review.

Dated: December 1, 2023

**COHEN MILSTEIN SELLERS & TOLL PLLC**

By:   */s/ Carol V. Gilden*
        Carol V. Gilden (admitted *pro hac vice*)

190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
Email: cgilden@cohenmilstein.com

Steven J. Toll (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave NW, Suite 500 East
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: stoll@cohenmilstein.com

Chris Lometti (*pro hac vice* forthcoming)
Benjamin F. Jackson (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, Fourteenth Flour
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: clometti@cohenmilstein.com
       bjackson@cohenmilstein.com

*Lead Counsel for Plaintiffs and the Class*

Nicole Lavallee (SBN 165755)
Alexander S. Vahdat (SBN 284963)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
       avahdat@bermantabacco.com

*Liaison Counsel for Plaintiffs and the Class*

*Attorneys for Lead Plaintiffs Sheet Metal Workers' National Pension Fund and International Brotherhood of Teamsters Local No. 710 Pension Fund, and Additional Named Plaintiff International Union of Operating Engineers Pension Fund of Eastern Pennsylvania And Delaware Local No. 542*

**WACHTELL, LIPTON, ROSEN & KATZ**


By:   */s/ Noah B. Yavitz*
        Noah B. Yavitz (admitted *pro hac vice*)

William Savitt (admitted *pro hac vice*)
Emily R. Barreca (admitted *pro hac vice*)
51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000
Email: WDSavitt@wlrk.com
        NBYavitz@wlrk.com
        ERBarreca@wlrk.com

Jordan Eth (SBN 121617)
David J. Wiener (SBN 291659)
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
Email:  JEth@mofo.com
        DWiener@mofo.com

*Attorneys for Defendants Bayer Aktiengesellschaft, Werner Baumann, Werner Wenning, Liam Condon, Johannes Dietsch, and Wolfgang Nickl*

**CERTIFICATE PURSUANT TO LOCAL RULE 5-1(i)(3)**

I, Carol V. Gilden, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories.

By: <u>*/s/ Carol V. Gilden*</u>
Carol V. Gilden