UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEET METAL WORKERS NATIONAL PENSION FUND, et al., | Case No. 20-cv-04737-RS  (SK) |
| Plaintiffs, | **ORDER ON DISCOVERY DISPUTE** |
| v. | Regarding Docket No. 198 |
| BAYER AKTIENGESELLSCHAFT, et al., | |
| Defendants. | |

Now before the Court is the joint letter discovery brief filed by the parties on December 1, 2023, to address their dispute about whether the attorney-client privilege prevents disclosure of information responsive to requests that Plaintiffs have issued.

**Background**

Plaintiffs allege in this class action that Defendants Bayer Aktiengesellschaft ("Bayer"), Werner Baumann, Werner Wenning, Liam Condon, Johannes Dietsch, and Wolfgang Nickl (collectively, "Defendants") misrepresented the due diligence that Bayer undertook before it acquired Monsanto.  Plaintiffs bring claims under sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  The District Court certified a class of plaintiffs defined, in relevant part, as follows: "All persons or entities that purchased or otherwise acquired Bayer's publicly traded American Depositary Receipts from May 23, 2016 to July 6, 2020, inclusive (the "Class Period")."  (Dkt. No. 175.)  The sole remaining theory of liability is "that Defendants made misleading statements and omissions concerning Bayer's due diligence efforts prior to the Monsanto acquisition."  (Dkt. No. 90.)  Specifically, in 2016 when Bayer began the process of acquiring Monsanto, Monsanto was "embroiled in over 120 toxic tort cases, in which the plaintiffs alleged that exposure to

Roundup—Monsanto's flagship and best-selling herbicide—caused non-Hodgkin's lymphoma ("NHL"), and that Monsanto had knowingly concealed Roundup's toxicity (the "Roundup Litigation")."  (Dkt. No. 107 at ¶ 4.)  The Roundup Litigation "struck at the core of Monsanto's value" and thus posed a "potential financial risk to Bayer," and therefore "it was essential that Bayer conduct meaningful due diligence as to the reputation and financial risk of the Roundup Litigation by examining Monsanto's files to determine if Monsanto had—as it had with its other products—known of a concealed Roundup's health and cancer risks."   (Dkt. No. 107 at ¶¶ 6-8.)

The District Court denied Defendants' motion to dismiss and found that "Plaintiffs have adequately pled that Defendants made misleading statements and omissions concerning Bayer's due diligence efforts prior to the Monsanto acquisition." (Dkt. No. 90.)  The District Court found that Plaintiffs adequately pled that the following statements by Defendant Baumann, Bayer's CEO, were false and misleading:  that Bayer had "confirmed in due diligence" the deal's "significant potential for sales and cost synergies" of $1.5 billion and that "the Monsanto people went out of their way to provide us with transparency, data and visibility to the most critical questions we had." (*Id*.)  The District Court concluded:  "Plaintiffs allege that these statements were misleading, because Bayer had not reviewed any internal Monsanto documents and had accepted at face value Monsanto's characterization of its litigation risks." (*Id*.)

In responding to the Second Amended Complaint, Defendants asserted under the label of "Defenses" that "Plaintiffs' claims are barred, in whole or in part, because Defendants relied in good faith on the representations, reports, expert opinions, and advice of others whom Defendants believed to be reliable and competent in the matters presented." (Dkt. No. 127.)

Plaintiffs then issued Interrogatory No. 3:  "Identify all witnesses and documents supporting Defendants' position that Defendants relied in good faith on the presentations, reports, expert opinions, and advice of others whom Defendants believed to be reliable and competent in the matters presented." (Dkt. No. 198-1.)  In response, Defendants identified seven people, all lawyers, and 386 documents.  (*Id*.)  Of the 386 documents, Defendants, asserting the protection of the attorney-client privilege, redacted most content relating to the Roundup Litigation. (*Id*.)

/ / /

**Analysis**

**A.  Claim of Privilege for Due Diligence Documents**

Plaintiffs seek to compel production of the unredacted documents cited in response to Interrogatory No. 3 because Defendants have waived any claim of attorney-client privilege by asserting a defense that is essentially an "advice of counsel" defense.  Defendants argue that their defense is based solely on process and not content; in other words, they plan to argue that their process of conducting due diligence was adequate and thus that Plaintiffs cannot delve into the substance of the process of due diligence.  The District Court's finding that Plaintiffs have adequately pled a claim for challenging the sufficiency of the process for conducting due diligence with respect to the Roundup Litigation shows, though, that Plaintiffs' claim goes to the heart of analysis and substance—not simply the process of due diligence.

Defendants waived their attorney-client privilege, under the doctrine of implied waiver, with respect to communications with their lawyers identified in response to Interrogatory No. 3 regarding the analysis of the Roundup Ligation during due diligence.  As the Ninth Circuit has explained, the "rule that a litigant waives the attorney-client privilege by putting the lawyer's performance at issue during the course of litigation dates back to at least" 1888, when the Supreme Court ruled on this matter.  *Bittaker v. Woodford*, 331 F.3d 715, 718-19 (9th Cir. 2003).  The principle is based on the well-known axiom that a party cannot use privilege as both a sword and a shield.  *Id.* at 719 (citing *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1167, 1162 (9th Cir. 1992)).  There is an implicit waiver of the attorney-client privilege when the party asserts "claims the opposing party cannot adequately dispute unless it has access to the privileged materials."  *Id*.

The test of whether there is an implicit waiver has three parts:  (1) whether the party is asserting the privilege "as a result of some affirmative act, such as filing suit," (2) whether the affirmative act "puts the privileged information at issue," and (3) whether "allowing the privilege would deny the opposing party access to information vital to its defense."  *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (internal citation and quote omitted).  A defendant who merely denies an allegation does not put the privileged information at issue, as "the holder of the privilege must inject a new factual or legal issue into the case," which happens "[m]ost often

3

United States District Court
Northern District of California

. . . through the use of an affirmative defense." *Natural-Immunogenics Corp. v. Newport Trial Group*, 2018 WL 6138160, at *4 (C.D. Cal. Jan. 24, 2018) (internal citation and quote omitted). Here, Defendants have done exactly this by claiming in their 15th Affirmative Defense, noted above, that they "relied in good faith" on representations, reports, and opinions of people later identified to be lawyers. (Dkt. No. 127.) Thus, the first prong of the test is satisfied.

With respect to the second prong, Defendants have also put the privileged information at issue because the people upon whom they relied are lawyers, and the documents upon which they relied are allegedly privileged. Having asserted that they relied upon these lawyers' advice, Defendants cannot now refuse to divulge those communications. Finally, Plaintiffs satisfy the third prong because denying Plaintiffs access to this information would make it impossible for them to prove their case. Plaintiffs allege that Defendants made false statements about the adequacy of their investigation into the risks of the Roundup Litigation, and to prove that, they must be able to see what Defendants saw and what Defendants thought about the Roundup Litigation at the time Defendants were conducting due diligence and made the allegedly false representations.

For these reasons, Defendants have impliedly waived the attorney-client privilege with respect to the documents and communications referenced in their response to Interrogatory No. 3. The Court thus GRANTS Plaintiffs' motion to compel production of those documents identified in response to Interrogatory No. 3.

Because the information is sensitive, the Court can devise a narrow method to address disclosure. Defendants may designate the materials previously withheld as privileged as "Highly Confidential – Attorneys' Eyes Only." Although the Stipulated Protective Order filed on October 6, 2022 (Dkt. No. 138) contains a designation for "Highly Confidential – Attorneys' Eyes Only" documents, it does not currently allow for designation under this category for these types of documents. But given their sensitivity, the undersigned orders that these documents can be designated as such.

/ / /

/ / /

4

**B. Claim of Privilege for Drafts**

Plaintiffs also seek production of 63 documents listed on the privilege log provided by Defendants. (Dkt. No. 198-2.) These documents are drafts that were sent to Bayer's lawyers. Plaintiffs claim that the attorney-client privilege does not protect those documents because they are simply drafts of documents, but Defendants argue that the drafts were included in communications with lawyers for the purpose of seeking legal advice. The attorney-client privilege protects a communication including a draft to a lawyer seeking legal advice because, as one court noted, "the plaintiffs could compare [the draft documents] to the final public version and determine the underlying legal advice provided or incorporated." *Tsantes v. BioMarin Pharm. Inc.*, 2022 WL 17974487, at *2 (N.D. Cal. Dec. 7, 2022). For this reason, the Court DENIES the motion to compel the production of the 63 documents listed on the privilege log.

**IT IS SO ORDERED**.

Dated: January 5, 2024

_____

SALLIE KIM
United States Magistrate Judge

United States District Court
Northern District of California

5