**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SHEET METAL WORKERS' NATIONAL PENSION FUND and INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 710 PENSION FUND, individually and as Lead Plaintiffs on behalf of all others similarly situated, and<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS PENSION FUND OF EASTERN PENNSYLVANIA AND DELAWARE, individually and as Named Plaintiff, on behalf of all others similarly situated,<br>                    Plaintiffs,<br>          vs.<br>BAYER AKTIENGESELLSCHAFT, WERNER BAUMANN, WERNER WENNING, LIAM CONDON, JOHANNES DIETSCH, and WOLFGANG NICKL,<br>                    Defendants. | Case No: 3:20-cv-04737-RS<br><br>CLASS ACTION<br><br>**JOINT LETTER REGARDING DISCOVERY DISPUTES**<br><br>Ctrm:   3 – 17th Floor<br>Judge:  Richard Seeborg |

## ATTESTATION OF COUNSEL

Prior to the filing of this joint letter, the parties met and conferred telephonically and complied with Section 9 of the Guidelines for Professional Conduct of the United States District Court for the Northern District of California.

Dated: April 2, 2024

**COHEN MILSTEIN SELLERS &**
  **TOLL PLLC**

By:   */s/ Carol V. Gilden*
      Carol V. Gilden (admitted *pro hac vice*)

190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
Email: cgilden@cohenmilstein.com

*Lead Counsel for Plaintiffs and the Class*

**WACHTELL, LIPTON, ROSEN &**
  **KATZ**

By:   */s/ Noah Yavitz*
      Noah B. Yavitz (admitted *pro hac vice*)

51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000
Email: NBYavitz@wlrk.com

*Attorneys for Defendants Bayer Aktiengesellschaft, Werner Baumann, Werner Wenning, Liam Condon, Johannes Dietsch, and Wolfgang Nickl*

[No: 3:20-cv-04737-RS] JOINT LETTER REGARDING DISCOVERY DISPUTES

## I.    RELEVANT BACKGROUND

This is a securities fraud class action centering on Defendants' allegedly false and misleading statements about Bayer's due diligence on the potential liability arising from litigation alleging the herbicide Roundup causes cancer (the "Roundup Litigation") in connection with Bayer's acquisition of Monsanto. The parties have reached impasse as to: (1) whether Defendants may withhold as privileged a portion of a letter to Bayer's Supervisory Board; and (2) whether Plaintiffs may take the deposition of Dr. Roland Hartwig, Bayer's former general counsel, which would require an order from the Court (a) increasing the non-expert deposition limit to a total of eleven depositions, and (b) granting Plaintiffs a four-month extension of the deadline for non-expert discovery for the limited purpose of serving Dr. Hartwig through the Hague Convention on Obtaining Evidence Abroad in Civil and Commercial Matters (the "Hague Convention") and taking his deposition.

On February 22, 2024, Defendants notified Plaintiffs via email of their intent to claw back the letter. On March 1, 2024, Plaintiffs sent Defendants a letter disputing the withholding of the letter and all other versions of it. Defendants sent Plaintiffs a response letter on March 8, 2024.

The parties met and conferred telephonically on March 20, 2024, during which Plaintiffs raised the issue of Dr. Hartwig's deposition. The parties then continued their meet-and-confer on March 22 and March 26, 2024, and conferred by email on April 1, 2024, but were unable to resolve the disputes. Non-expert discovery ends on May 10, 2024 (ECF No. 205 at 2:14).

## II.    WHETHER DEFENDANTS MAY WITHHOLD AS PRIVILEGED A PORTION OF A LETTER TO BAYER'S SUPERVISORY BOARD

### A.    Plaintiffs' Position

Defendants are wrongly withholding two paragraphs in BAYER_SEC_LIT00031463 (the "Draft Board Letter") that contain a ***non-legal business analysis*** of the capital market's reaction to the first jury verdict in the Roundup Litigation. Defendants should be ordered to produce the Draft Board Letter—as well as any other version submitted to Bayer's Supervisory Board—with these paragraphs unredacted. Plaintiffs propose submitting the Draft Board Letter, its parent email, and certified German-to-English translations of the same for *in camera* review.

The Draft Board Letter is a German-language document that Defendants initially produced in unredacted form. Plaintiffs obtained a certified translation of both the Draft Board Letter and its

German-language parent email after Defendants initially produced them. On February 23, 2024, Defendants informed Plaintiffs that the Draft Board Letter had been inadvertently produced, and they intended to assert privilege over it and were clawing it back.

The parent email indicates that the Draft Board Letter was originally drafted by **non-lawyer** corporate communications specialist David Lerch, with input from Bayer's **non-lawyer** CEO Werner Baumann and **non-lawyer** CFO Wolfgang Nickl. The Draft Board Letter consists of two constituent letters: a cover letter signed by Baumann and Nickl, and an attached letter slated to later be "finalized" by Raphael Oen or Gabriel Harnier, who were in-house lawyers at Bayer at the time. The attached letter is divided into three parts: an introduction; Section I, titled "Legal Evaluation"; and Section II, titled "Evaluation of the Market Reaction."

The disputed paragraphs fall in Section II, which summarizes investors' reactions to the first jury verdict in the Roundup Litigation and Bayer's prior and planned follow-up communications with investors, lenders, securities analysts, journalists, and ratings agencies regarding the same. Section II does not contain **any** legal analysis or legal advice[1]—rather, it consists entirely of a **business analysis** of how the capital markets reacted to the verdict and summarizes Bayer's past and planned communications to market participants. Section II is not privileged because it discusses "business needs and business strategy," and the transmission of legal advice is not its "primary purpose." *Metricolor LLC v. L'Oreal USA, Inc.*, 2023 WL 2628108, at *2 (C.D. Cal. Jan. 26, 2023).

Until just yesterday, it was Defendants' position that Section II was privileged in its entirety. Defendants then changed their position and agreed to produce the portions of Section II challenged by Plaintiffs **except** for Section II's first two paragraphs. And why those paragraphs? Because they contain an important admission by Defendants concerning the issue of loss causation, and specifically on whether the stock price drop following the Roundup trial verdict revealed that Bayer's public statements about its due diligence on Monsanto were false or misleading. Neither paragraph contains any legal advice; they simply recap a fall in Bayer's share price following a jury verdict in the Roundup Litigation, and reasons given by market participants for that stock price drop.

---

[1] Plaintiffs have not disputed Defendants' claims of privilege over three paragraphs of Section II that concern a potential legal dispute between Bayer and the German magazine *Wirtschaftswoche*, and two short sections concerning a "Hold Separate" order.

The arguments Defendants have advanced for why these paragraphs are privileged are baseless. First, that the Draft Board Letter states that the "attorney-client privilege" applies is not dispositive of whether it is privileged. *See, e.g.*, *Marceau v. Int'l Bhd. Of Elec. Workers Local 1269*, 246 F.R.D. 610, 613 (D. Ariz. 2007). Second, that the Draft Board Letter was intended to be "finalized" by an in-house lawyer is of no moment, because ***"in-house counsel often act in both a legal and non-legal business capacity, and communications made in this latter capacity are not privileged."*** *Chandola v. Seattle Hous. Auth.*, 2014 WL 5023518, at *1 (W.D. Wash. Oct. 7, 2014) (emphasis added); *see also United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 & n.1 (9th Cir. 2020) (collecting cases). Accordingly, Defendants should be ordered to produce the Draft Board Letter and any other version of submitted to Bayer's Supervisory Board with the two challenged paragraphs unredacted. Plaintiffs would be happy to submit the Draft Board Letter, its parent email, and certified translations of the same for *in camera* review to facilitate the resolution of this dispute.

B.    Defendants' Position

This dispute concerns a letter that Bayer's general counsel, Dr. Gabriel Harnier, sent to Bayer's Supervisory Board, analyzing and opining on an adverse jury verdict in the Roundup Litigation. When it was circulated — following extensive drafting and editing by others in Bayer's legal department — Dr. Harnier's analysis was marked "PRIVILEGED AND CONFIDENTIAL" and accompanied by a cover note from Bayer's CEO and CFO, which explained that the letter contained a detailed, privileged, and highly confidential legal assessment. Defendants withheld the document because it falls at the core of the attorney-client privilege: It conveyed confidential legal advice from Bayer's chief counsel on pending litigation, the direct and collateral consequences of a significant development in that litigation, and the company's strategy for defending the litigation.

Plaintiffs target a six-paragraph subsection of Dr. Harnier's letter, which contained a legal assessment of the stock market reaction to the Roundup Litigation verdict.[2] In connection with that assessment, the letter (1) provided the opinion of Bayer's legal department on whether the decline in Bayer's trading price was justified by the prospective legal risk, (2) described an emerging legal

---

[2] To narrow the disputes before the Court, Defendants have agreed to produce two other subsections of the Draft Board Letter, which described Bayer's communications with several of its investors.

dispute with a German magazine, (3) opined on pending litigation against Monsanto involving another chemical, and (4) analyzed the legal effect of Bayer's "hold separate" agreement with the Department of Justice. Plaintiffs concede that the latter three topics — three quarters of the subsection — are privileged and were properly withheld. Their challenge is directed solely to Dr. Harnier's discussion of Bayer's price movement relative to its litigation exposure.[3]

In an effort to evade privilege, Plaintiffs characterize it as a "summary of investors' reactions to the first jury verdict" drafted by a non-lawyer with input from non-lawyers. This is not accurate. Plaintiffs gloss over the fact that the letter was drafted in collaboration with Bayer's Head of Litigation in Germany, Raphael Oen, at the request of Dr. Harnier, and then circulated to Bayer's legal department for further review before its transmission by Dr. Harnier to the Supervisory Board. Nor could it have been otherwise, given that the disputed paragraphs weigh an assessment of litigation risk against the market's reaction — legal analysis that required input from Bayer's investor relations team, but which could not have been provided by those non-lawyers because it relied upon legal judgment concerning potential litigation outcomes.

Plaintiffs acknowledge that even if their characterization of the disputed passages were accurate, withholding would still be proper so long as the "primary purpose" of the communication was the obtaining, the giving, or the receiving of an attorney's legal advice. *Metricolor*, 2023 WL 2628108, at *2. Under this test, "legal advice is implicated if the nonlegal aspects of the consultation are integral to the legal assistance given and the legal assistance is the primary purpose of the consultation." *Skyline Wesleyan Church* v. *California Dep't of Managed Health Care*, 322 F.R.D. 571, 585 (S.D. Cal. 2017) (quoting *N. Pacifica, LLC* v. *City of Pacifica*, 274 F.Supp.2d 1118, 1127 (N.D. Cal. 2003)). Here, the primary purpose of the disputed subsection was indeed legal — to provide analysis from Bayer's legal department on the legal issues implicated by Bayer's share price reaction following a significant litigation development. This purpose is reinforced by the explanatory note accompanying the letter, which emphasizes that its stated purpose was to convey legal advice concerning the recent jury verdict to the Supervisory Board. *Marceau*, 246 F.R.D. at 613 (relying in

---

[3] Plaintiffs characterize this discussion as containing an "important admission . . . concerning the issue of loss causation." This misstates the document, but makes clear why Plaintiffs are seeking to invade the privilege.

part on the stated goal of a document to determine its primary purpose). While this legal analysis inevitably incorporated some discussion of the decline in Bayer's share price, that context was integral to the legal advice conveyed and did not dilute the legal purpose of the communication.

Plaintiffs propose that the letter be submitted to the Court for *in camera* review, together with its parent email. "In [c]amera review is not generally favored." *Sacramento Downtown Arena LLC* v. *Factory Mut. Ins. Co.*, 2023 WL 5516288, at *2 (E.D. Cal. Aug. 25, 2023) (quoting *Nishika, Ltd.* v. *Fuji Photo Film Co., Ltd.*, 181 F.R.D. 465, 467 (D. Nev. 1998)). To preserve the resources of the Court, such review is permitted "*only if* the party that is opposing the assertion of privilege has shown, through *nonprivileged* evidence, a factual basis sufficient to support a reasonable, good faith belief that in camera inspection may reveal evidence that information in the materials is not privileged." *Dickson* v. *Century Park E. Homeowners Ass'n*, 2021 WL 3148878, at *11 (C.D. Cal. Mar. 9, 2021) (internal quotation omitted). As discussed above, Plaintiffs offer only a partial account of the challenged document's drafting history and a self-serving recasting of its contents. While Defendants are confident that *in camera* review would support redaction of the disputed paragraphs, it is unjustified here and unnecessary to reject Plaintiffs' challenge.[4]

Defendants had every right to withhold the disputed paragraphs, which provided a legal assessment of litigation risk, were drafted, reviewed, and edited by in-house lawyers, were signed and sent by Bayer's general counsel, and were reasonably understood by its recipients to convey legal advice. Defendants respectfully request that the Court uphold their valid assertion of privilege.

**III.    WHETHER AND WHEN PLAINTIFFS MAY DEPOSE BAYER'S FORMER GENERAL COUNSEL, DR. ROLAND HARTWIG**

A.    <u>Plaintiffs' Position</u>

In complex cases such as this one, courts routinely grant requests for additional depositions beyond the Federal Rules' presumptive limit of ten. *See, e.g.*, *Couch v. Wan*, 2011 WL 4499976, at *2–3 (E.D. Cal. Sept. 27, 2011); *Del Campo v. Am. Corrective Counseling Servs. Inc.*, 2007 WL 3306496, at *5–6 (N.D. Cal. Nov. 6, 2007). Courts also frequently extend non-expert discovery deadlines for the limited purpose of conducting an additional deposition. *See, e.g.*, *Rattie v. Balfour*

---

[4] If *in camera* review is permitted — which it should not be — Defendants request that the Court also review a copy of the final, English language version of the letter, signed by Dr. Harnier.

*Beatty Infrastructure, Inc.*, 2023 WL 5507174, at *1 n.1 (N.D. Cal. Aug. 25, 2023); *Thissel v. Murphy*, 2017 WL 2462316, at *1 & n.2 (N.D. Cal. June 7, 2017). Here, Plaintiffs seek the Court's leave to take one additional deposition so that they can depose Bayer's former general counsel, Dr. Roland Hartwig, who recent deposition testimony confirmed was directly involved in Bayer's due diligence on the Roundup Litigation and served as a crucial link between the lawyers conducting that due diligence and the senior Bayer executives named as Individual Defendants. Plaintiffs also seek a limited four-month extension of the non-expert discovery deadline for the purpose of serving Dr. Hartwig through the Hague Convention and taking his deposition.

Perhaps because of his controversial post-Bayer political career, Defendants have long sought to obscure Dr. Hartwig's involvement in this case. Defendants did not identify Dr. Hartwig in their Initial Disclosures, nor did they initially propose Dr. Hartwig as a document custodian. Rather, Dr. Hartwig first came to Plaintiffs' attention through Defendants' response to Plaintiffs' Interrogatory No. 3, which asked Defendants to "[i]dentify all witnesses . . . supporting Defendants' position that Defendants relied in good faith on the representations, reports, expert opinions, and advice of advisors in analyzing the potential acquisition of Monsanto." Dr. Hartwig was just one of seven witnesses identified by Defendants in their responses dated September 7, 2023. After weeks of negotiations, Defendants grudgingly agreed to produce Dr. Hartwig's documents. But for reasons that remain unknown to Plaintiffs, Defendants did not produce ***any*** documents from Dr. Hartwig— preventing Plaintiffs from assessing his importance as a potential deposition witness—until recently, on February 22, 2024, when after months of purported effort, they finally produced 51 documents from his custodial files (including 31 documents withheld for privilege or non-responsiveness).[5]

Although Defendants may argue this production suggests Dr. Hartwig was not directly involved in Bayer's due diligence on Monsanto, recent deposition testimony confirmed otherwise. On March 19, 2024, Plaintiffs deposed Jan Heinemann, who was Bayer's Head of Legal and Mergers and Acquisitions when Bayer was conducting its due diligence on Monsanto. Mr. Heinemann testified that during the due diligence process, he reported to Dr. Hartwig, who was then

---

[5] It is unclear how many of Dr. Hartwig's custodial documents were removed from the production as the result of de-duplication against Defendants' earlier productions.

serving as Bayer's global general counsel and who was later succeeded in that role by Mr. Gabriel Harnier, whose deposition Plaintiffs have already noticed. Ex. A (Heinemann Dep. Tr.) at 22:12-23:2, 44:4-7. Mr. Heinemann explained that Dr. Hartwig in turn reported to Defendants Baumann or Dietsch and that he presented to Bayer's Supervisory Board about the Monsanto acquisition. *Id.* at 23:3-12, 70:19-24. Crucially, Mr. Heinemann testified that he worked with Dr. Hartwig on the Monsanto acquisition, that Dr. Hartwig was "involved" in "the assessment . . . of the litigation risk," and that Dr. Hartwig was "kept in the loop" about the due diligence. *Id.* at 46:22-47:13. This testimony finally established that Dr. Hartwig—far from being an above-the-fray senior legal officer who possessed few relevant documents—was in fact directly involved in the due diligence at issue.

To date, Plaintiffs have noticed the depositions of the five Individual Defendants; the three Bayer in-house lawyers primarily responsible for the due diligence on the Roundup Litigation; Bayer's head of corporate communications; and former general counsel Gabriel Harnier. But it is now clear that Dr. Hartwig and Mr. Harnier each have unique, non-cumulative testimony to offer. We now know that Dr. Hartwig was involved in the due diligence itself, whereas Mr. Harnier was not—in fact, he was not even working for Bayer at the time. Instead, Mr. Harnier was involved in the later reassessments of that due diligence and in advising the Individual Defendants at the time some of the alleged misrepresentations were made, at a time when Dr. Hartwig had left Bayer to pursue his political career. It therefore makes sense for Plaintiffs to depose both Dr. Hartwig ***and*** Mr. Harnier, to ensure full coverage of the general counsel position across the Class Period. Further, as it is now clear that Dr. Hartwig was a crucial link between Bayer's legal team (which was primarily responsible for that due diligence) and the Individual Defendants, deposition testimony from Dr. Hartwig will be important for establishing the Individual Defendants' scienter and Bayer's corporate scienter. Plaintiffs' request is reasonable and proportionate in this case, which concerns a $63 billion merger and in which hundreds of millions of dollars' worth of damages are at stake.

B.    Defendants' Position

As the parties seeking leave to exceed the presumptive limit of ten depositions set by the Federal Rules of Civil Procedure, Plaintiffs "bear[] the burden of making a particularized showing of the need for additional depositions." *Epicentrx, Inc.* v. *Carter*, 2022 WL 2196877, at *1 (S.D. Cal.

Jan. 6, 2022) (internal quotation omitted). Plaintiffs have failed to carry that burden with respect to their belated request to depose Dr. Roland Hartwig, a marginally relevant witness who had peripheral involvement in disputed events eight years ago.

In their interrogatory responses, Defendants identified Dr. Hartwig as one of seven potential witnesses supporting their good-faith reliance defense. Over six months later, after having already identified ten fact witnesses for deposition — including four of the seven witnesses listed in Defendants' interrogatory responses — Plaintiffs now seek a four-month extension to depose Dr. Hartwig, too. Plaintiffs offer no cogent explanation for their delay, and there is none. Plaintiffs have had ample information on Dr. Hartwig's role for months, including documents showing his peripheral participation in the Monsanto merger diligence, but waited until deep into the already-extended deposition period to seek his testimony. This delay alone warrants denial of Plaintiffs' request, because it threatens the orderly disposition of the litigation. *See Aristocrat Techs.* v. *Int'l Game Tech.*, 2010 WL 3060162, at *2 (N.D. Cal. Aug. 3, 2010) (denying request for depositions made one month prior to fact discovery cut-off where depositions could have been sought earlier).

The requested deposition should also be denied as unduly cumulative, because Plaintiffs have already taken or noticed the depositions of other Bayer lawyers at all levels of seniority. This includes Dr. Harnier (Dr. Hartwig's successor as general counsel), Dr. Jan Heinemann (Bayer's former U.S. head of acquisitions law), Malini Moorthy (Bayer's former head of global litigation, who led the merger diligence on the Roundup Litigation), and Christopher Guth (who also directly oversaw the Roundup Litigation diligence as part of Ms. Moorthy's team). Plaintiffs make much of the fact that Dr. Heinemann reported to Dr. Hartwig — but omit to mention that Dr. Heinemann himself had no direct knowledge of Bayer's due diligence on the Roundup Litigation. And far from confirming that Dr. Hartwig was "in fact directly involved in the due diligence at issue," Dr. Heinemann testified that Dr. Hartwig "*didn't* perform the due diligence, although [Dr. Heinemann] *think[s]* he was kept in the loop." Ex. A at 46:22-47:13 (emphasis added). In other words, Dr. Hartwig was, in fact, an "above-the-fray senior legal officer" who merely received reports.

Plaintiffs have failed to carry their burden of making a particularized showing that Dr. Hartwig's deposition is necessary to this litigation. Leave should be denied.

Dated: April 2, 2024

**COHEN MILSTEIN SELLERS & TOLL PLLC**

By:  */s/ Carol V. Gilden*
    Carol V. Gilden (admitted *pro hac vice*)

190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
Email: cgilden@cohenmilstein.com

Steven J. Toll (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave NW, Suite 500 East
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: stoll@cohenmilstein.com

Chris Lometti (*pro hac vice* forthcoming)
Benjamin F. Jackson (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, Fourteenth Flour
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: clometti@cohenmilstein.com
      bjackson@cohenmilstein.com

*Lead Counsel for Plaintiffs and the Class*

Nicole Lavallee (SBN 165755)
Alexander S. Vahdat (SBN 284963)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
avahdat@bermantabacco.com

*Liaison Counsel for Plaintiffs and the Class*

*Attorneys for Lead Plaintiffs Sheet Metal Workers' National Pension Fund and International Brotherhood of Teamsters Local No. 710 Pension Fund, and Additional Named Plaintiff International Union of Operating Engineers Pension Fund of Eastern Pennsylvania And Delaware Local No. 542*

**WACHTELL, LIPTON, ROSEN & KATZ**


By: ____/s/ Noah Yavitz_____
Noah B. Yavitz (admitted *pro hac vice*)

William Savitt (admitted *pro hac vice*)
Emily R. Barreca (admitted *pro hac vice*)
51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000
Email: WDSavitt@wlrk.com
NBYavitz@wlrk.com
ERBarreca@wlrk.com

Jordan Eth (SBN 121617)
David J. Wiener (SBN 291659)
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
Email: JEth@mofo.com
DWiener@mofo.com

*Attorneys for Defendants Bayer Aktiengesellschaft, Werner Baumann, Werner Wenning, Liam Condon, Johannes Dietsch, and Wolfgang Nickl*

**<u>CERTIFICATE PURSUANT TO LOCAL RULE 5-1(i)(3)</u>**

I, Carol V. Gilden, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories.

By: ___*/s/ Carol V. Gilden*___
        Carol V. Gilden