United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHEET METAL WORKERS NATIONAL PENSION FUND, et al.,

Plaintiffs,

v.

BAYER AKTIENGESELLSCHAFT, et al.,

Defendants.

Case No. 20-cv-04737-RS  (SK)

**ORDER ON DISCOVERY DISPUTE**

Regarding Docket No. 207

Now before the Court is the dispute raised by the parties in their joint letter discovery brief. Plaintiffs seek production of a portion of a letter, two paragraphs in BAYER_SEC_LIT00031463 (the "Draft Board Letter"). Plaintiff also seeks to depose more than ten (10) witnesses in order to depose Roland Hartwig ("Hartwig"), and seek to extend the deadline for factual discovery to allow them to pursue Hartwig through the Hague Convention.

**BACKGROUND**

Plaintiffs allege in this class action that Defendants Bayer Aktiengesellschaft ("Bayer"), Werner Baumann, Werner Wenning, Liam Condon, Johannes Dietsch, and Wolfgang Nickl (collectively, "Defendants") misrepresented the due diligence that Bayer undertook before it acquired Monsanto. Plaintiffs bring claims under sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. The District Court certified a class of plaintiffs defined, in relevant part, as follows: "All persons or entities that purchased or otherwise acquired Bayer's publicly traded American Depositary Receipts from May 23, 2016 to July 6, 2020, inclusive (the "Class Period")." (Dkt. No. 175.) The sole remaining theory of liability is "that Defendants made misleading statements and omissions concerning Bayer's due diligence efforts prior to the Monsanto acquisition." (Dkt.

No. 90.)  Specifically, in 2016 when Bayer began the process of acquiring Monsanto, Monsanto was "embroiled in over 120 toxic tort cases, in which the plaintiffs alleged that exposure to Roundup – Monsanto's flagship and best-selling herbicide – caused non-Hodgkin's lymphoma ("NHL"), and that Monsanto had knowingly concealed Roundup's toxicity (the "Roundup Litigation")."  (Dkt. No. 107 at ¶ 4.)  The Roundup Litigation "struck at the core of Monsanto's value" and thus posed a "potential financial risk to Bayer," and therefore "it was essential that Bayer conduct meaningful due diligence as to the reputation and financial risk of the Roundup Litigation by examining Monsanto's files to determine if Monsanto had—as it had with its other products—known of a concealed Roundup's health and cancer risks."   (Dkt. No. 107 at ¶¶ 6-8.)

The District Court denied Defendants' motion to dismiss and found that "Plaintiffs have adequately pled that Defendants made misleading statements and omissions concerning Bayer's due diligence efforts prior to the Monsanto acquisition."  (Dkt. No. 90.)  The District Court found that Plaintiffs adequately pled that the following statements by Defendant Baumann, Bayer's CEO, were false and misleading:  that Bayer had "confirmed in due diligence" the deal's "significant potential for sales and cost synergies" of $1.5 billion and that "the Monsanto people went out of their way to provide us with transparency, data and visibility to the most critical questions we had."  (*Id*.)  The District Court concluded:  "Plaintiffs allege that these statements were misleading, because Bayer had not reviewed any internal Monsanto documents and had accepted at face value Monsanto's characterization of its litigation risks."  (*Id*.)

## ANALYSIS

### A.    Attorney-Client Privilege and the Draft Board Letter.

Defendants initially produced the Draft Board Letter but later informed Plaintiffs that the production had been inadvertent and that the attorney-client privilege protected it from disclosure. Defendants asked for the return of the letter.  After meeting and conferring, the parties reached agreement on the application of the attorney-client privilege to the Draft Board Letter except for the first two paragraphs in Section 2.  The Court ordered Bayer to provide a copy of the Draft Board Letter for *in camera* review, and Bayer did so on April 17, 2024.

A cover letter dated August 17, 2018, from Werner Baumann, Bayer's CEO and Wolfgang

United States District Court
Northern District of California

Nicki, Bayer's CFO, to Bayer's "supervisory board" attaches the Draft Board Letter. The cover letter states that, "[i]n order to preserve the attorney client privilege, we have asked Dr. Harnier, as head of our legal department, to compose the letter[.]" The Draft Board Letter states that it is from Gabriel Harnier. The disputed section of the Draft Board Letter discusses an analysis of the drop in the price of Bayer's shares and the potential reasons for the drop. The disputed portion of the Draft Board Letter does not constitute legal advice. The attorney-client "privilege does not protect an attorney's business advice." *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002). As the Ninth Circuit explained:

> That a person is a lawyer does not, *ipso facto,* make all communications with that person privileged. The privilege applies only when legal advice is sought "from a professional legal advisor *in his capacity as such.*"

*United States v. Chen*, 99 F.3d 1495, (9th Cir. 1996) (citing 8 John H. Wigmore, *Evidence* at §2295 at 554 (McNaughton rev. ed. 1961) (emphasis added in original). Here, the analysis of the reasons for the decrease in price does not constitute legal advice and thus, the attorney-client privilege does not apply. For this reason, the Court ORDERS Bayer to produce a copy of the document BAYER_SEC_LIT00031463 with the first two paragraphs of Section 2 unredacted, by April 22, 2024. Because the parties reached agreement with regard to other areas of the document, Bayer may maintain the redactions which Plaintiffs agreed were appropriate.

**B.      Potential Deposition of Roland Hartwig.**

Plaintiffs seek to depose Hartwig because they now have evidence that he was involved in assessing the risk of the Roundup litigation during the time that he was the General Counsel for Bayer. Plaintiffs did have some early information that Hartwig was involved in this process, but it was only until February 2024 and March 2024 that they learned of the extent of his involvement. Defendants on September 7, 2023, identified Hartwig as a witness in response to Interrogatory No. 3 asking for witnesses who support "Defendants' position that they relied in good faith on the presentations, reports, expert opinions, and advice of others." (Dkt. No. 198-1.) After receiving the response, Plaintiffs noticed the deposition of at least four of the people listed but did not list Hartwig. Defendants then produced documents from Hartwig's files on February 22, 2024.

United States District Court
Northern District of California

Plaintiffs claim that those documents alerted them to the role Hartwig played in the Monsanto acquisition.

Then, during a deposition of Jan Heinemann on March 19, 2024, he discussed Hartwig's role in the acquisition of Monsanto:

> Q.  And what was Mr. Hartwig's role with respect to the Monsanto acquisition?
> A.  He was -- he was the group general counsel at the time.  He was, to some degree, involved in the -- in the assessment of the -- of the litigation -- of the litigation risk.
> Q.  Okay.
> A.  He didn't -- he didn't perform the due diligence, but I think he was kept in the loop.

(Dkt. No. 207-1 (Depo. of Jan Heinemann) at 47: 3-13).  In addition, Heinemann testified that he and Hartwig attended at least one meeting with Bayer's supervisory board to discuss the Monsanto acquisition.  (*Id.* at 70: 5-24.)

Although Federal Rule of Civil Procedure 30(a)(2) limits parties to ten depositions, the Court has the authority to order more depositions.  A party seeking to exceed Rule 30(a)(2)'s presumptive ten deposition "limit bears the burden of making a 'particularized showing' of the need for additional depositions." *Canton v. U.S. Foods, Inc.*, 2023 WL 5496482, at *2 (N.D. Cal. Aug. 24, 2023) (quoting *X One, Inc. v. Uber Techs., Inc.*, 2019 WL 2207645, at *2 (N.D. Cal. May 22, 2019)).  "Pursuant to Rule 26(b)(2)(C), courts have found it proper to deny additional depositions where they would be cumulative, without proper purpose, *e.g.*, there is no evidence they would reveal anything other than what a party had already obtained, the party had ample opportunity to obtain the information by discovery in the action, or they would create an unreasonable burden or expense." *Canton*, 2023 WL 5496482, at *2 (quoting *Rounds v. Bd. of Trustees of California State Univ.*, 2022 WL 17978501, at *2 (E.D. Cal. Dec. 28, 2022)).  "By imposing a presumptive ten-deposition limit, the Rule's 'objective is to emphasize that counsel have a professional obligation to develop a mutual cost-effective plan for discovery in the case.'" *Jones v. Sunbelt Rentals, Inc.*, 2023 WL 10691302, at *2 (quoting Fed. R. Civ. P. 30, Adv. Comm'ee Notes 1993 Amendment.).

The Court finds that in a case of this magnitude, allowing Plaintiffs to take 11 depositions,

only one more than allowed, is appropriate.  Moreover, the Court finds that the deposition would not be cumulative and that Plaintiffs acted diligently.  Notably, Plaintiffs acted quickly to try to take Hartwig's deposition once they had information from the combination of the responses to Interrogatory No. 3, the documents, and the deposition, of the extent of Hartwig's involvement in the Monsanto acquisition.  For these reasons, the Court GRANTS the motion to allow Plaintiffs to take the deposition of Hartwig and GRANTS the motion by Plaintiffs to extend factual discovery by four months only to allow the deposition of Hartwig to take place.

**IT IS SO ORDERED**.

Dated: April 18, 2024



SALLIE KIM
United States Magistrate Judge