Carol V. Gilden (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Email: cgilden@cohenmilstein.com

*Lead Counsel for Plaintiffs and the Class*
[Additional Counsel on Signature Page]

Nicole Lavallee (SBN 165755)
Alexander S. Vahdat (SBN 284963)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
         avahdat@bermantabacco.com

*Liaison Counsel for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SHEET METAL WORKERS' NATIONAL PENSION FUND and INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 710 PENSION FUND, individually and as Lead Plaintiffs on behalf of all others similarly situated, and<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS PENSION FUND OF EASTERN PENNSYLVANIA AND DELAWARE, individually and as Named Plaintiff, on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>BAYER AKTIENGESELLSCHAFT, WERNER BAUMANN, WERNER WENNING, LIAM CONDON, JOHANNES DIETSCH, and WOLFGANG NICKL,<br><br>        Defendants. | Case No: 3:20-cv-04737-RS<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND THE CASE MANAGEMENT SCHEDULE TO SUBSTITUTE EXPERT WITNESS**<br><br>Date:   March 13, 2025<br>Time:  1:30 p.m.<br>Ctrm:  3 – 17th Floor<br>Judge:  Richard Seeborg |

[No. 3:20-CV-04737-RS] PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND THE CASE MANAGEMENT SCHEDULE TO SUBSTITUTE EXPERT WITNESS

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 13, 2025, at 1:30 p.m., or as soon as the Court determines this matter may be heard, before The Honorable Richard Seeborg, United States District Court for the Northern District of California, Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, Lead Plaintiffs Sheet Metal Workers' National Pension Fund and International Brotherhood of Teamsters Local No. 710 Pension Fund ("Lead Plaintiffs") and additional named plaintiff International Union of Operating Engineers Pension Fund of Eastern Pennsylvania and Delaware (collectively, "Plaintiffs") will, and hereby do, respectfully move this Court pursuant to Civil Local Rules 7 and 16-2(d) and Federal Rule of Civil Procedure 16(b) for entry of an Order amending the existing case management schedule to permit Plaintiffs to substitute an expert witness in place of Plaintiffs' previously designated expert witness Jeffrey Martin.

This motion is based on this Notice and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Benjamin F. Jackson in support of this Motion ("Jackson Decl."), any reply memorandum Plaintiffs file, the pleadings and records on file in this action, and such further arguments and matters as the Court may consider.

## STATEMENT OF THE ISSUE TO BE DECIDED

The issue to be decided on this Motion is whether the existing case management schedule should be amended to permit Plaintiffs to substitute an expert witness in place of Plaintiffs' previously designated expert witness Jeffrey Martin, who is now facing life-threatening health conditions requiring surgery and ongoing treatment that prevent him from continuing to serve as a testifying expert.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PRELIMINARY STATEMENT

As Plaintiffs have indicated in previous court filings (ECF Nos. 228, 230), Plaintiffs' main expert on due diligence customs and practices, Jeffrey Martin, has been experiencing continuing health challenges, which have now developed into life-threatening health conditions requiring surgery and ongoing treatment. Plaintiffs have promptly informed Defendants, and the Court, of Mr. Martin's health issues and have provided timely updates as his condition evolved. *See* ECF Nos. 222, 228, 230. On February 2, 2025, Plaintiffs learned that Mr. Martin's condition has deteriorated to the point that it will be impossible for him to continue serving as a testifying expert. Plaintiffs have secured a qualified substitute expert who is prepared to offer substantially the same conclusions as in Mr. Martin's expert reports. Plaintiffs now respectfully request that the Court modestly extend the existing case management schedule to allow for the substitution of this expert and to provide Defendants the opportunity to depose him or her.

The Court should grant Plaintiffs' motion because Plaintiffs have "good cause" to amend the schedule under Federal Rule of Civil Procedure 16(b). The unfortunate developments in Mr. Martin's health were unexpected and out of Plaintiffs' control. Plaintiffs promptly notified Defendants and the Court of Mr. Martin's condition (*see* ECF Nos. 228, 230), and upon learning that Mr. Martin might no longer be able to serve, Plaintiffs acted swiftly to secure a qualified replacement and file this motion.

Defendants will suffer no prejudice from this substitution. The substitute expert will issue a report and provide testimony substantially similar to Mr. Martin's, and Defendants will have the opportunity to depose and, if they so choose, challenge the substitute expert. By contrast, denying this request would severely prejudice Plaintiffs by depriving them of the opportunity to present expert testimony on due diligence customs and practices—an issue central to this case—due to circumstances beyond their control.

For these reasons and those stated below, Plaintiffs respectfully request a modest extension

of the current case management schedule to permit Plaintiffs to make this substitution.[1]

## II.    STATEMENT OF FACTS

Pursuant to Federal Rule of Civil Procedure 16 and Civil Local Rule 16-10, on June 25, 2023, the Court issued a scheduling order setting an expert disclosure deadline of April 30, 2024. ECF No. 185. On February 15, 2024, the Court granted the parties' joint stipulation to extend the expert disclosure deadline to June 11, 2024 and the close of expert discovery to August 23, 2024. ECF No. 205. On June 11, 2024, Plaintiffs designated Jeffrey Martin as an expert witness and served his opening expert report. Jackson Decl. ¶ 5.

On June 28, 2024, the Court granted the parties' joint stipulation to extend the deadline for the close of expert discovery by approximately eight weeks due to an upcoming settlement mediation. ECF No. 218. The parties did not reach a settlement. On September 9, 2024, Plaintiffs learned that Mr. Martin had an urgent medical condition requiring emergency treatment and approximately one week of recovery time. Jackson Decl. ¶ 7. Plaintiffs notified Defendants the same day. *Id.* On September 13, 2024, the parties jointly sought an extension to allow Mr. Martin "additional time to complete his rebuttal expert report." ECF No. 222. The Court granted the parties' request on September 13, 2024, extending expert discovery until December 6, 2024. ECF No. 223.

Merits expert discovery continued with the parties serving five opening expert reports, four rebuttal reports, and four reply reports, totaling thirteen reports. Mr. Martin issued a rebuttal and supplemental expert report on October 18, 2024, and a reply report on November 8, 2024. Jackson Decl. ¶ 9.

On November 12, 2024, the Court granted the parties' joint stipulation to extend the expert discovery deadline to December 20, 2024 because it "[was] not possible to schedule three of the seven expert depositions on mutually agreeable dates" before the close of expert discovery. ECF No. 227. On December 4, 2024, Mr. Martin informed Plaintiffs' counsel that he was bedridden and required urgent orthopedic surgery, which was scheduled for December 18, 2024. Jackson Decl. ¶ 11.

---

[1] Plaintiffs have met and conferred with Defendants in an attempt to reach agreement, but Defendants have not agreed to substituting Mr. Martin and object to this motion.

As a result, he likely would be unable to sit for a deposition until after the current deadline for expert discovery, unless Defendants were willing to depose him from a hospital-like-bed. Plaintiffs' counsel notified Defendants' counsel of these developments the same day. *Id.* On December 13, 2024, the parties filed a joint stipulation requesting that the deadline for expert discovery be extended to January 10, 2025 in order to give Mr. Martin time to recover ahead of his deposition, which the Court granted. ECF Nos. 228, 229. Plaintiffs continued to work with Mr. Martin to prepare for his deposition—which Defendants noticed for January 9, 2025 by agreement—conducting a preparation session on December 16, 2024. Jackson Decl. ¶¶ 13, 16.

On December 17, 2024, Mr. Martin informed Plaintiffs' counsel that he would need to undergo a biopsy after his orthopedic surgery. *Id.* ¶ 14. On December 18, 2024, Mr. Martin had the surgery and informed Plaintiffs' counsel that his doctors believed that the biopsy would not result in a new diagnosis. *Id.* ¶ 15. On December 25, 2024, Mr. Martin informed Plaintiffs' counsel that he had been hospitalized again due to apparent side effects from his surgery. *Id.* ¶ 17. He was discharged on December 27, 2024, *id.* ¶ 18, and participated in another deposition-preparation session on December 30, 2024, *id.* ¶ 19.

On January 2, 2025, Mr. Martin informed Plaintiffs' counsel that he had been hospitalized again for additional symptoms. *Id.* ¶ 20. Nevertheless, he told Plaintiffs' counsel that he felt "fine" and was not in pain. *Id.* On January 3, 2025, Mr. Martin informed Plaintiffs' counsel that he was having ongoing cardiovascular and neurological issues. *Id.* ¶ 21. Plaintiffs' counsel informed Defendants' counsel the same day. *Id.* On January 6, 2025, Mr. Martin informed Plaintiffs' counsel that he now needed vascular surgery and was believed to have cancer. *Id.* ¶ 22. On January 7, 2025, Plaintiffs met and conferred with Defendants to inform them of the developments in Mr. Martin's health issues and to discuss the issue further. *Id.* ¶ 23. On January 8, 2025, Mr. Martin informed Plaintiffs' counsel that he had been diagnosed with a form of cancer that would require extensive ongoing treatments. *Id.* ¶ 24.

On January 9, 2025, the parties filed a joint case management statement informing the Court that Mr. Martin was still "experiencing major health issues that require full-time hospitalization and

several upcoming surgical procedures," so it would not be possible to complete his deposition by the current discovery deadline "or likely in the weeks immediately following that deadline." ECF No. 230. In light of Mr. Martin's medical issues and that the parties had scheduled a second mediation session on January 31, 2025, the parties stipulated to extending all case deadlines by four weeks and agreed to provide the Court with a further status update on or before February 6, 2025. *Id.*; *see also* ECF No. 229. The Court granted the stipulation. ECF No. 233.

In light of Mr. Martin's continuing health issues, Plaintiffs began considering a replacement and commenced a search for a potential substitute expert in case retaining one became necessary. Jackson Decl. ¶ 22. On January 19, 2025, Mr. Martin provided Plaintiffs' counsel with an update on his health issues, confirming that his cancer diagnosis still stood and that he continued to experience symptoms that would likely prevent him from serving as a testifying expert witness. *Id.* ¶ 26. Mr. Martin told Plaintiffs' counsel that he was awaiting test results to determine the appropriate treatment plan and that the timing of his return was highly uncertain. *Id.*

On January 23–24, 2025, Plaintiffs' counsel reached out to several potential expert witness candidates and inquired about their availability to serve as an expert in Mr. Martin's stead. At that time, Plaintiffs' counsel began corresponding with, interviewing, and vetting potential candidates. *Id.* ¶ 27.

On January 30, 2025, Plaintiffs informed Defendants of their view that Mr. Martin would unfortunately be unable to continue serving as Plaintiffs' main due diligence expert due to his medical issues, and that they now intended to secure a substitute expert. *Id.* ¶ 28.

On February 2, 2025, Mr. Martin indicated to Plaintiffs' counsel that he believed obtaining a substitute expert was appropriate. *Id.* ¶ 29. On February 4, 2025, the parties met and conferred about the instant motion, and Defendants indicated they oppose it. *Id.* ¶ 30. On February 5, 2025, Plaintiffs retained a substitute expert. *Id.* ¶ 31. This motion followed.

## III.    LEGAL STANDARD

Courts in the Ninth Circuit routinely treat motions to substitute an expert witness as motions to amend the scheduling order under Federal Rule of Civil Procedure 16(b). *See, e.g.*, *In re Northrop*

*Grumman Corp. ERISA Litig.*, 2016 WL 6826171, at \*2 (C.D. Cal. Apr. 7, 2016); *Fujifilm Corp. v. Motorola Mobility LLC*, 2014 WL 8094582, at \*1 (N.D. Cal. Nov. 19, 2014); *Park v. CAS Enters., Inc.*, 2009 WL 4057888, at \*2–3 (S.D. Cal. Nov. 19, 2009).[2]  Under Rule 16(b), the Court may modify the pretrial schedule "for good cause." *Fujifilm*, 2014 WL 8095482, at \*1 (quoting Fed. R. Civ. P. 16(b)(4)). The "'good cause' standard primarily considers the diligence of the party seeking the amendment." *Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, 2017 WL 11629880, at \*1 (C.D. Cal. Aug. 3, 2017) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson*, 975 F.2d at 609.

**IV.    GOOD CAUSE EXISTS TO AMEND THE CASE MANAGEMENT SCHEDULE TO PERMIT PLAINTIFFS TO REPLACE THEIR MAIN DUE DILIGENCE EXPERT**

The Court should grant Plaintiffs' request to amend the case management schedule because good cause exists to permit Mr. Martin's replacement. *See, e.g.*, *Bagwell v. CBS Broad. Inc.*, 2021 WL 9145409, at \*2 (C.D. Cal. Oct. 19, 2021) (collecting cases); *Deckers*, 2017 WL 11629880, at \*1 (severe medical condition precluding further work); *Novalk, LLC v. Evanston Ins. Co.*, 2023 WL 8458250, at \*3–4 (S.D. Cal. Dec. 6, 2023) (expert's spouse's serious medical emergency). Plaintiffs have diligently communicated Martin's unavailability to Defendants and the Court and have promptly pursued a replacement expert. Defendants will face minimal, if any, prejudice from an additional four-week delay in the dispositive motion schedule. By contrast, Plaintiffs will be severely prejudiced if they are unable to present the expert testimony Mr. Martin planned to offer on merger due diligence customs and practices—an issue at the heart of Plaintiffs' case.

Plaintiffs acted swiftly upon learning the full extent of Mr. Martin's serious medical issues.

---

[2] Other courts in the Ninth Circuit have applied Rule 37(c) to evaluate a request to substitute an expert witness. Rule 37(b) prohibits a party from presenting testimony at trial from a witness who was not designated under Rule 26 "unless the failure was substantially justified or is harmless." The standards under Rules 16(b) and 37(c) are "largely coextensive." *Gbarabe v. Chevron Corp.*, 2017 WL 956628, at \*17 n.19 (C.D. Cal. Mar. 13, 2017). Accordingly, even if Rule 37(c) applied here, the Court's analysis would be the same.

They promptly informed Defendants and the Court of Mr. Martin's health issues and have provided timely updates as his condition evolved. *See* ECF Nos. 222, 228, 230. Plaintiffs began searching for a potential replacement expert upon learning it was reasonably likely Mr. Martin might be unable to testify at a deposition or at trial. Once it became clear he would not be able to do so for the foreseeable future, Plaintiffs moved quickly to secure a substitute. *See In re Northrop Grumman*, 2016 WL 6826171, at *3 (plaintiffs showed diligence by moving to substitute within a month of the court's ruling on summary judgment, even though the original expert died four years earlier); *Park*, 2009 WL 4057888, at *3 (plaintiff acted diligently to substitute expert despite over three months of "early warnings that [the expert] might not be . . . competent" because of worsening memory loss). Plaintiffs also met and conferred with Defendants about the motion on February 4, 2025, two days after Mr. Martin indicated he believed he could no longer serve as an expert and five days after Plaintiffs' counsel informed Defendants counsel that they believed substitution would be necessary, but Defendants refused to agree to Plaintiffs' scheduling proposal. Plaintiffs thus acted quickly to seek a stipulated extension to substitute a replacement expert and to file this motion.

Defendants will suffer minimal prejudice, if any, if the Court allows Plaintiffs to substitute a new expert for Mr. Martin. The voluminous fact and expert discovery in this case is otherwise complete. Indeed, the other six experts' reports have all been served and all six have been deposed. Plaintiffs' proposed schedule provides Defendants sufficient time to review and rebut the substitute expert's report, depose the expert, and, if they believe it necessary, incorporate that discovery into a summary judgment motion or *Daubert* motion. The only cost to Defendants will be the "additional time and expense [they] will be required to invest," which courts have deemed "minimal" prejudice insufficient to outweigh a moving party's diligence in moving to amend the case schedule. *Woodward v. Cnty. of San Diego*, 2020 WL 1820265, at *4–5 (S.D. Cal. Apr. 10, 2020); *see also In re Northrop Grumman*, 2016 WL 6826171, at *3 (granting Rule 16(b) motion where "the Court has not yet engaged in significant pretrial case management, and reopening discovery to allow for the single deposition of a replacement expert will not likely upend the parties' trial preparations, particularly where the Court can tailor the new trial date to avoid this result"). Moreover, because the substitute

expert will offer substantially the same conclusions as Mr. Martin, Defendants can rely on much of their prior work in rebutting Mr. Martin and preparing for his deposition. *Cf. Stephenson v. Wyeth LLC*, 2011 WL 4553051, at *3 (D. Kan. Sept. 29, 2011) (opposing party not prejudiced by expert substitution when already "familiar" with the testimony substituting expert's testimony). Plaintiffs also notified Defendants of the worsening developments in Mr. Martin's health as they learned of them, including indicating to Defendants on January 30, 2025 that they believed a replacement expert would be necessary. Accordingly, Defendants could not have been surprised that Plaintiffs were likely to seek Mr. Martin's substitution, and thus could not have suffered any real prejudice.

By contrast, Plaintiffs will be severely prejudiced if they cannot replace Mr. Martin. He was set to testify on a central issue—that Bayer's due diligence on the risks posed by the Roundup Litigation was inconsistent with industry custom and practice given the known red flags. Preventing Plaintiffs from substituting Mr. Martin would significantly damage their case due to circumstances beyond their control, which is unduly prejudicial. *See, e.g.*, *Novalk, LLC*, 2023 WL 8458250, at *4 (finding plaintiff would be "significantly prejudiced" without the expert witnesses it sought to replace "because the proposed expert opinions concern . . . key contested issues in this case").

Defendants' position that Plaintiffs should be forced to present testimony from their rebuttal expert Christopher Kelly in Mr. Martin's stead disregards the case law permitting expert substitutions in these circumstances. *See, e.g.*, *Deckers*, 2017 WL 11629880, at *1; *Novalk, LLC*, 2023 WL 8458250, at *3–4. Defendants also overlook key distinctions between the two experts' opinions. Mr. Kelly is a rebuttal witness focused on countering improper legal conclusions that Defendants' purported due diligence expert plans to offer about the scope of attorney-client privilege and how it affects the due diligence process. Mr. Kelly reviewed different materials, reached different conclusions, and has not been deposed on Mr. Martin's opinions. Allowing Defendants to choose which expert Plaintiffs must present in their case-in-chief at trial would undoubtedly unduly prejudice Plaintiffs.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court amend the existing

case management schedule by extending the current deadlines as follows:

a. Plaintiffs shall serve the substitute expert's report on or before February 28, 2025.

b. Defendants shall serve a rebuttal report (if any) on or before March 14, 2025.

c. Plaintiffs shall serve a reply report (if any) on or before March 28, 2025.

d. All discovery of expert witnesses pursuant to Federal Rule of Civil Procedure 26(b)(4) shall be completed on or before April 4, 2025.

e. The parties shall file any dispositive motions on or before April 22, 2025.

f. The parties shall file any opposition to dispositive motions on or before May 27, 2025.

g. The parties shall file any replies to dispositive motions on or before June 17, 2025.

h. All pretrial motions shall be heard no later than July 7, 2025, or such other date as the Court deems appropriate.

Pursuant to Civil Local Rules 7 and 16, Defendants' opposition, if any, will be due February 19, 2025, and Plaintiffs' reply will be due February 26, 2025. Plaintiffs' proposed amended case management schedule sets the substitute expert's report to be due two days after the motion will be fully briefed. Plaintiffs will proceed with working with the substitute expert to prepare their report while the motion is pending so as not to cause further delay.

Dated:   February 6, 2025

By:   /s/ Carol V. Gilden
Carol V. Gilden (*pro hac vice*)
cgilden@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369

Steven J. Toll (*pro hac vice*)
stoll@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Chris Lometti (*pro hac vice*)

clometti@cohenmilstein.com
Benjamin F. Jackson (*pro hac vice*)
bjackson@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, Fourteenth Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

*Lead Counsel for Plaintiffs and the Class*

Nicole Lavallee (SBN 165755)
nlavallee@bermantabacco.com
Alexander S. Vahdat (SBN 284963)
avahdat@bermantabacco.com
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

*Liaison Counsel for Plaintiffs and the Class*

*Attorneys for Lead Plaintiffs Sheet Metal
Workers' National Pension Fund and
International Brotherhood of Teamsters Local
No. 710 Pension Fund, and Named Plaintiff
International Union of Operating Engineers
Pension Fund of Eastern Pennsylvania and
Delaware Local No. 542*