William Savitt (*pro hac vice*)
Noah B. Yavitz (*pro hac vice*)
Emily R. Barreca (*pro hac vice*)
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

Jordan Eth (CA SBN 121617)
David J. Wiener (CA SBN 291659)
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
Email:  JEth@mofo.com
        DWiener@mofo.com

*Attorneys for Defendants Bayer*
*Aktiengesellschaft, Werner Baumann,*
*Werner Wenning, Liam Condon,*
*Johannes Dietsch, and Wolfgang Nickl*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| SHEET METAL WORKERS' NATIONAL PENSION FUND and INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 710 PENSION FUND, individually and as Lead Plaintiffs on behalf of all others similarly situated, and<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS PENSION FUND OF EASTERN PENNSYLVANIA AND DELAWARE, individually and as Named Plaintiff, on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BAYER AKTIENGESELLSCHAFT, WERNER BAUMANN, WERNER WENNING, LIAM CONDON, JOHANNES DIETSCH, and WOLFGANG NICKL,<br><br>Defendants. | Case No.:  3:20-cv-04737-RS<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE CASE MANAGEMENT SCHEDULE TO SUBSTITUTE EXPERT WITNESS**<br><br>CLASS ACTION<br><br>Judge:  Richard Seeborg<br>Courtroom:  3 — 17th Floor |

**PRELIMINARY STATEMENT**

Plaintiffs seek the Court's permission to substitute a new, yet-to-be-identified expert witness to replace Jeffrey Martin, one of two witnesses Plaintiffs have offered to opine on whether Bayer's due diligence on the Roundup Litigation was consistent with industry norms.  Because Plaintiffs' requested substitution would require a further extension of the Court-ordered case schedule, Plaintiffs must show "good cause."  Fed. R. Civ. P. 16(b)(4).  While Mr. Martin's recent illness is unfortunate — and Defendants wish him a swift recovery — the Court should not allow this development to benefit Plaintiffs to Defendants' detriment.  And that is exactly what would happen if Plaintiffs' request is granted.  Allowing Plaintiffs to bring in a third due diligence witness at this late date would not only delay the case by weeks, it would hand Plaintiffs an unnecessary advantage:  A free option to select and cultivate an expert with the benefit of having already seen Defendants' detailed critique of the opinions offered by both Mr. Martin and Plaintiffs' "rebuttal" due diligence witness, Christopher Kelly.  This windfall is particularly unwarranted here, since it is Plaintiffs' failure to make Mr. Martin available for deposition last year that has placed Defendants in this prejudicial bind.

The solution is obvious:  Mr. Kelly, whom Plaintiffs have already proposed as an alternative witness on the same topic, should serve as Plaintiffs' substitute.  Defendants offered Plaintiffs this option, but they rejected it.  Plaintiffs have identified no legitimate reason for their refusal, nor any plan to avert prejudice to Defendants.  Plaintiffs thus fail to show good cause for their requested carte blanche.  The Court should grant Plaintiffs leave to designate a replacement for Mr. Martin, but order that only Mr. Kelly may serve as that substitute.

**BACKGROUND**

The parties exchanged opening expert reports last June.  Plaintiffs served a report from Mr. Martin, a semi-retired banker who believes that Bayer's due diligence on Monsanto's Roundup Litigation was insufficiently "thorough" and "failed to follow" what he regards as "widely recognized fundamental principles and best practices for due diligence."  Defendants offered analysis from Prof. Gary Lawrence, a renowned expert on legal due diligence and the author of *Due*

DEFS.' P&A IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
THE CASE MANAGEMENT SCHEDULE TO SUBSTITUTE EXPERT WITNESS
CASE NO.:  3:20-CV-04737-RS

1

*Diligence in Business Transactions*, a text that Plaintiffs have lauded as a "leading treatise" in the field. *See* ECF No. 107 ¶ 68.

After the exchange of opening reports, Defendants stipulated to an extension of the expert discovery schedule to accommodate an emergency medical procedure for Mr. Martin. Under this revised schedule, expert rebuttal reports would be served on October 18, expert reply reports on November 8, and expert discovery would close on December 6. ECF No. 223. In advance of this stipulation, the parties also agreed that expert depositions would be taken during the four-week period following service of expert reply reports. Yavitz Decl. ¶ 2.[1]

The parties exchanged rebuttal reports from Prof. Lawrence and Mr. Martin in October. In rebuttal, Prof. Lawrence identified numerous flaws in Mr. Martin's methodology and conclusions. For their part, Plaintiffs introduced a second witness on merger due diligence, Christopher Kelly, who opined affirmatively on whether Bayer's due diligence of the potential risk posed by the Roundup Litigation was consistent with "custom and practice among M&A practitioners." The parties then served expert reply reports on November 8, including another detailed critique from Prof. Lawrence.

In the weeks before the exchange of reply reports, the parties turned to the topic of expert depositions. On October 25, Plaintiffs issued notices for the deposition of Defendants' experts. Ex. 1 at 15. Defendants immediately requested a meet and confer on deposition scheduling. *Id.* at 14-15. When the parties spoke on October 28, Defendants came prepared with dates when their experts were available to be deposed. Plaintiffs were unprepared to discuss scheduling, instead asking that Defendants propose dates for the deposition of Mr. Martin and Plaintiffs' other witnesses. Yavitz Decl. ¶ 4. Defendants promptly emailed eight potential dates for Mr. Martin's deposition in late November and early December. *See* Ex. 1 at 13-14.

After a delay of five days, Plaintiffs' responded on November 5 rejecting all of the dates proposed for Mr. Martin. *See id.* at 12-13. Pressed by Defendants, Plaintiffs revealed that they had

---

[1] References to "Yavitz Decl. ¶ __" are to the enclosed Declaration of Noah B. Yavitz in Support of Defendants' Opposition to Plaintiffs' Motion for Leave to Amend; references to "Ex. __" are to the exhibits to that declaration.

DEFS.' P&A IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
THE CASE MANAGEMENT SCHEDULE TO SUBSTITUTE EXPERT WITNESS
CASE NO.: 3:20-CV-04737-RS

2

neglected to reserve time with three of their five expert witnesses — including Mr. Martin and Mr. Kelly — such that those witnesses were not available for deposition on any date before the Court-ordered close of discovery. *See id* at 10-12. As a result, Defendants' counsel was unable to depose Mr. Martin by early December, as previously agreed. At Plaintiffs' insistence, the parties agreed to a two-week extension of the expert deposition period, to December 20. *See* ECF No. 227. During this extended deposition period, Defendants deposed Mr. Kelly, exposing further flaws in the opinions offered by him and Mr. Martin.

On December 4, Plaintiffs' counsel informed Defendants that Mr. Martin required orthopedic surgery and would be unable to sit for deposition before the new expert discovery cut-off. ECF No. 234 ("Mot.") at 3-4. Defendants were thus forced to stipulate to yet another amendment of the case schedule, extending the expert deposition period through January 10, 2025. *See* ECF No. 229. On January 3, however, Plaintiffs' counsel informed Defendants that Mr. Martin was experiencing continuing health issues. ECF No. 234-1 ¶ 21. At this point, Defendants' counsel raised concerns about Mr. Martin's ability to sit for deposition and emphasized the importance of maintaining a prompt trial schedule. Yavitz Decl. ¶ 5. Over the next week, counsel continued to discuss the expert discovery schedule in light of Mr. Martin's medical setbacks. Mot. at 4. The parties stipulated to a further extension of the case schedule on January 9. *See* ECF Nos. 230, 232, 233.

On January 30 — 11 days after Plaintiffs learned that Mr. Martin "continued to experience symptoms that would likely prevent him from serving as a testifying expert witness" and on the eve of a private mediation session — Plaintiffs' counsel notified Defendants that Mr. Martin would not sit for deposition after all, and in fact would need to withdraw from the case. *See* ECF No. 234-1 ¶¶ 26, 28. The parties held a meet and confer on February 4 to discuss Plaintiffs' anticipated motion for leave to amend the case schedule. *Id.* ¶ 30. Plaintiffs proposed to identify a new witness on due diligence and extend the schedule yet again, pushing dispositive motion briefing four months beyond the deadlines agreed to before Mr. Martin first became unavailable. *See* Mot. at 9; ECF No. 218. Defendants notified Plaintiffs of their opposition later that day. Ex. 2 at 1. As a compromise and to mitigate prejudice, Defendants proposed that Mr. Kelly serve as Mr. Martin's

DEFS.' P&A IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
THE CASE MANAGEMENT SCHEDULE TO SUBSTITUTE EXPERT WITNESS
CASE NO.: 3:20-CV-04737-RS

3

substitute, enabling the parties to conclude expert discovery with expedition and maintain the (already much delayed) schedule for dispositive motion practice. *Id.*

Plaintiffs rejected Defendants' proposal on the evening of February 5. They now move the Court, seeking leave to substitute in a new witness on due diligence and extend expert discovery into the spring, delaying trial by at least another month. Plaintiffs have yet to disclose their proposed replacement expert or serve this substitute's report. They have offered no excuse for their delay.

## ARGUMENT

Plaintiffs' proposal to substitute a new expert would necessitate another extension of the Court-ordered case schedule. *See* Mot. at 8-9. They thus bear the burden to show "good cause" for their request. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). In deciding this motion, the Court may consider "the diligence of the party seeking the amendment" as well as "the existence or degree of prejudice to the party opposing the modification." *Johnson* v. *Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992). Both factors weigh against a finding of good cause here.

## I. PLAINTIFFS FAILED TO ACT DILIGENTLY TO PRESERVE MR. MARTIN'S TESTIMONY.

Plaintiffs aver that they acted swiftly to avoid unnecessary extensions of the case schedule, *see* Mot. at 6-8, but they do not tell the full story. In fact, it is Plaintiffs' failure to comply with the expert discovery schedule and delay in proposing a replacement for Mr. Martin that has landed the parties in this unfortunate and avoidable predicament. This lack of diligence cannot be reconciled with the showing of "good cause" necessary to justify the proposed extension. *See Johnson*, 975 F.2d at 609.

As set out above, Plaintiffs neglected to secure three of their experts' availability for deposition within the Court-ordered discovery period. By consequence, they were unable to offer Mr. Martin for deposition on any date within the four-week expert deposition window. Ex. 1 at 10-13. That negligence necessitated an extension of the expert deposition schedule into late December. *See* ECF No. 227. And this extension had significant consequences: If Plaintiffs had

DEFS.' P&A IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
THE CASE MANAGEMENT SCHEDULE TO SUBSTITUTE EXPERT WITNESS
CASE NO.: 3:20-CV-04737-RS

4

honored their obligation to make their witnesses available during the agreed-upon timeframe, Defendants would have deposed Mr. Martin — who had already reported health concerns — before he began to experience serious medical issues. With Mr. Martin's deposition complete, there would have been no need to replace him, as the parties could have introduced his deposition testimony at trial should that have become necessary. *See* Fed. R. Civ. P. 32(a)(4). And to make matters worse, once Plaintiffs knew that Mr. Martin would need to withdraw, they sat on this information for 11 days, declining to notify Defendants until the eve of mediation. *See* ECF No. 234-1 ¶¶ 26, 28. This is hardly diligence.

Plaintiffs have provided no justification for their failure to meet the prior expert discovery deadline. Nor have they offered a reasonable explanation for waiting nearly two weeks to inform Defendants' counsel of their expert's need to withdraw and for declining to disclose their proposed substitute expert concurrently with their motion. Defendants should not be forced to bear the harm from Plaintiffs' unexcused delays. *See Natto Iyela Gbarabe* v. *Chevron Corp.*, 2017 WL 956628, at *17-18 (N.D. Cal. Mar. 13, 2017) (denying leave to substitute expert, noting that "plaintiff ha[d] been given numerous extensions" and finding that "allowing plaintiff to retain a new . . . expert at this time would cause considerable prejudice to defendant and disruption to the schedule in this case").

## II.    DEFENDANTS WILL SUFFER PREJUDICE IF PLAINTIFFS ARE ALLOWED TO SUBSTITUTE A NEW DUE DILIGENCE EXPERT AT THIS LATE STAGE.

As Plaintiffs acknowledge, they seek to introduce a new witness very late in this litigation: Save for the deposition of Mr. Martin, "[t]he voluminous fact and expert discovery in this case is otherwise complete" and "the other six experts' reports have all been served and all six have been deposed." Mot. at 7. This "voluminous" expert discovery included three reports by Defendants' due diligence expert, Prof. Lawrence, highlighting key deficiencies in Mr. Martin's methodologies, processes, and conclusions. And among the six expert depositions that have already taken place were those of Prof. Lawrence, who further elaborated on his opinions, and Mr. Kelly, who revealed additional shortcomings in both his and Mr. Martin's analyses.

DEFS.' P&A IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
THE CASE MANAGEMENT SCHEDULE TO SUBSTITUTE EXPERT WITNESS
CASE NO.: 3:20-CV-04737-RS

5

Armed with this fully developed expert record, Plaintiffs now ask the Court for an opportunity to select a new expert and submit two freshly drafted reports. "The purpose of allowing substitution of an expert is to put the movant in the same position it would have been in but for the need to change experts; it is not an opportunity to designate a better expert." *Bagwell* v. *CBS Broad. Inc.*, 2021 WL 9145409, at *3 (C.D. Cal. Oct. 19, 2021) (denying leave to substitute expert witness). Plaintiffs' proposal seeks an after-the-buzzer opportunity to recalibrate their expert case, defying this blackletter principle and working obvious prejudice on Defendants. *See Fujifilm Corp.* v. *Motorola Mobility LLC*, 2014 WL 8094582, at *2 (N.D. Cal. Nov. 19, 2014) (finding that "[defendant] is likely to suffer substantial prejudice as a result of this substitution"); *PacifiCorp* v. *Gas Transmission Northwest Corp.*, 2013 WL 12433260, at *2 (D. Or. Nov. 26, 2013) ("The death of an expert witness, however, should not result in a 'windfall' for either party.").

Though Plaintiffs profess that their substitute will offer "substantially the same conclusions as Mr. Martin," Mot. at 7-8, this assertion is impossible to verify, because Plaintiffs have neither identified the replacement nor served Defendants with his report. And it is highly dubious, since Plaintiffs have sought nearly four weeks in which to prepare this "substantially the same" report. Defendants have thus been put in the inherently prejudicial position of responding to Plaintiffs' motion without any confirmation that Plaintiffs' chosen substitute will confine themself to the bounds of Mr. Martin's prior opinions, as he or she must to minimize additional prejudice to Defendants. *See Fujifilm Corp.*, 2014 WL 8094582, at *2 (ordering multiple limitations to "minimize this prejudice," including that "the new expert must limit his or her opinions to the subject matter covered in [the former expert's] report and may not testify in any manner that is contrary to or inconsistent with [the former expert's report]" (internal quotation marks omitted)); *Jones* v. *Nat'l R.R. Passenger Corp.*, 2022 WL 689000, at *3 (N.D. Cal. Feb. 23, 2022) (same); *U.S. ex rel. Agate Steel, Inc.* v. *Jaynes Corp.*, 2015 WL 1546717, at *2 (D. Nev. Apr. 6, 2015) ("[T]he Court will not allow a *carte blanche* substitution.").

And even if Plaintiffs' yet-to-be-disclosed replacement were to present testimony "substantially similar" to Mr. Martin's, this testimony would be heavily duplicative of the opinions already offered by Plaintiffs' other due diligence witness, Mr. Kelly — heaping further prejudice

on Defendants. Seeking to obscure this fact, Plaintiffs insist that Mr. Kelly provides purely "rebuttal" testimony "focused on countering improper legal conclusions that Defendants' purported due diligence expert plans to offer about the scope of attorney-client privilege and how it affects the due diligence process." Mot. at 8. However, as Mr. Kelly himself acknowledged on the opening page of his report — in which he set out the scope of his assignment without once mentioning the expert he was purportedly hired to rebut — the primary question put to him by Plaintiffs was "whether buy-side diligence on material litigation risks customarily includes requests for and review of the target company's non-public documents and information." Consistent with this direction, Mr. Kelly's report makes plain his intention to testify broadly concerning custom and practice in merger due diligence.

*       *       *

Fortunately, there is a reasonable accommodation that will permit Plaintiffs to substitute Mr. Martin while averting further prejudice to Defendants and denying Plaintiffs a windfall borne of their own negligence: Mr. Kelly, who has already been identified as a witness on merger due diligence, should serve as Mr. Martin's replacement. In like circumstances, courts have embraced this solution to avoid gifting a party an undue advantage. *See Nijjar* v. *General Star Indem. Co.*, 2014 WL 271630, at *3 (C.D. Cal. Jan. 23, 2014) (permitting substitution, but only allowing a "timely designated rebuttal witness" to "serve as [a] primary expert witness"); *cf. Fujifilm Corp.*, 2014 WL 8094582, at *2 (allowing the movant to substitute expert, but finding that "[the non-movant] is likely to suffer substantial prejudice as a result of this substitution" and imposing several "limitations" on the substitution "[to] minimize this prejudice"). The same logic applies here. Plaintiffs would suffer no prejudice from this result, as they have already deemed Mr. Kelly fit to opine on the topics addressed by Mr. Martin. While Plaintiffs complain that this proposal is not workable because "Mr. Kelly reviewed different materials, reached different conclusions, and has not been deposed on Mr. Martin's opinions," Mot. at 8, they nowhere explain why Mr. Kelly cannot submit a supplemental report, providing him the opportunity to review the same materials as Mr. Martin and offer non-duplicative conclusions substantially similar to those previously offered by Mr. Martin. *See* Ex. 2 at 1.

DEFS.' P&A IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
THE CASE MANAGEMENT SCHEDULE TO SUBSTITUTE EXPERT WITNESS
CASE NO.: 3:20-CV-04737-RS

7

This targeted approach to substitution would avoid giving Plaintiffs an undeserved third try at selecting a diligence expert.  Moreover, it would permit the parties to mitigate any delay from the proposed replacement, because Mr. Kelly is a known quantity who has already been exhaustively examined on his background and opinions.  Thus, Defendants anticipate that any further deposition of Mr. Kelly would be brief and could be conducted on a highly expedited timeline.

## CONCLUSION

While it is understandable that Plaintiffs would prefer to bolster their expert line-up with a fresh recruit, calibrated against the discovery record developed over the past year, neither equity nor efficiency favors that result.  Because Plaintiffs have failed to show good cause for this proposed modification to the schedule, the Court should grant Plaintiffs leave to designate a replacement for Mr. Martin, but impose the limitation that only Mr. Kelly may serve as Plaintiffs' substitute.

DEFS.' P&A IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
THE CASE MANAGEMENT SCHEDULE TO SUBSTITUTE EXPERT WITNESS
CASE NO.:  3:20-CV-04737-RS

8

Dated:  February 12, 2025

By:  ___/s/ David J. Wiener___
       David J. Wiener

William Savitt (*pro hac vice*)
Noah B. Yavitz (*pro hac vice*)
Emily R. Barreca (*pro hac vice*)
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, NY  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
Email:  WDSavitt@wlrk.com
            NBYavitz@wlrk.com
            ERBarreca@wlrk.com

Jordan Eth (CA SBN 121617)
David J. Wiener (CA SBN 291659)
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA  94105
Telephone:  (415) 268-7126
Facsimile:  (415) 268-7522
Email:  JEth@mofo.com
            DWiener@mofo.com

*Attorneys for Defendants Bayer
Aktiengesellschaft, Werner Baumann, Werner
Wenning, Liam Condon, Johannes Dietsch, and
Wolfgang Nickl*

DEFS.' P&A IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
THE CASE MANAGEMENT SCHEDULE TO SUBSTITUTE EXPERT WITNESS
CASE NO.:  3:20-CV-04737-RS

9