Carol V. Gilden (*admitted pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
Email: cgilden@cohenmilstein.com

*Lead Counsel for Plaintiffs and the Class*
[Additional Counsel on Signature Page]

Nicole Lavallee (SBN 165755)
Alexander S. Vahdat (SBN 284963)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
         avahdat@bermantabacco.com

*Liaison Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SHEET METAL WORKERS' NATIONAL PENSION FUND and INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 710 PENSION FUND, individually and as Lead Plaintiffs on behalf of all others similarly situated, and<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS PENSION FUND OF EASTERN PENNSYLVANIA AND DELAWARE, individually and as Named Plaintiff, on behalf of all others similarly situated,<br><br><div align=center>Plaintiffs,</div><br><div align=center>vs.</div><br>BAYER AKTIENGESELLSCHAFT, WERNER BAUMANN, WERNER WENNING, LIAM CONDON, JOHANNES DIETSCH, and WOLFGANG NICKL,<br><br><div align=center>Defendants.</div> | Case No: 3:20-cv-04737-RS<br><br>CLASS ACTION<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:       June 12, 2025<br>Time:       1:30 p.m.<br>Judge:      Richard Seeborg<br>Courtroom:  3 — 17th Floor |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... I

TABLE OF AUTHORITIES ............................................................................................... II

NOTICE OF MOTION ....................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................. 2

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

PRELIMINARY STATEMENT ......................................................................................... 2

    A.    Overview of the Litigation ........................................................................ 3

    B.    Settlement Discussions ............................................................................. 7

    C.    Terms of the Proposed Settlement ........................................................... 7

        1.    Settlement Amount ....................................................................... 7

        2.    Releases ........................................................................................ 8

        3.    No Second Opportunity to Opt Out of the Class .......................... 9

    D.    Plan of Allocation .................................................................................... 9

    E.    Proposed Schedule of Events ................................................................. 10

ARGUMENT ................................................................................................................... 11

I.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............................ 11

    A.    Plaintiffs and Lead Counsel Have Adequately Represented the Class ................ 12

    B.    The Settlement Resulted from Good Faith, Arm's-Length Negotiations ............ 13

    C.    The Relief Provided by the Settlement Is Adequate ............................. 14

        1.    The Challenges of Further Litigation Support Preliminary Approval of the Settlement .......................................................................... 14

        2.    The Plan of Allocation Prescribes an Effective Method of Distributing Relief to the Class ..................................................... 16

        3.    Anticipated Attorneys' Fees ....................................................... 17

        4.    Other Agreements Between the Parties ....................................... 18

    D.    Class Members Are Treated Equitably Relative to One Another ......................... 18

II.    THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, PSLRA REQUIREMENTS, AND THE COURT'S GUIDANCE ................ 19

    A.    Notice Procedures .................................................................................. 19

    B.    Form and Substance of Proposed Settlement Notices ......................... 20

    C.    Claims Administration ........................................................................... 21

CONCLUSION ................................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Inc. Device Perf. Litig.*,
   2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) ........................................................17

*In re Banc of Calif. Sec. Litig.*,
   2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ........................................................13

*Boston Ret. Sys. v. Uber Techs., Inc.*,
   No. 19-cv-6361 (N.D. Cal.) ..................................................................*passim*

*In re Celera Corp. Sec. Litig.*,
   2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ........................................................14

*Chavez v. Converse, Inc.*,
   2020 WL 4047863 (N.D. Cal. July 8, 2020)........................................................13

*In re CV Therapeutics, Inc. Sec. Litig.*,
   2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) ........................................................17

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
   No. 12-cv-2389 (S.D.N.Y.)........................................................21

*Fleming v. Impax Lab'ys Inc.*,
   2022 WL 2789496 (N.D. Cal. July 15, 2022)........................................................ 16, 18

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................13

*Haussmann, et al. v. Baumann, et al.*,
   Appeal No. APL-2024-00017 (N.Y. Ct. App.)........................................................9

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)........................................................ 12, 18

*In re HP Sec. Litig.*,
   2015 WL 4477936 (N.D. Cal. July 20, 2015)........................................................19

*Hunichen v. Atonomi LLC*,
   2021 WL 5854964 (W.D. Wash. Nov. 12, 2021) ........................................................13

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ........................................................11

*In re James River Grp. Holdings, Ltd. Sec. Litig.*,
    No. 21-cv-444 (E.D. Va.) ................................................................................21

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ...........................................................................19

*In re LinkedIn User Priv. Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) ......................................................................16

*Low v. Trump Univ., LLC*,
    881 F.3d 1111 (9th Cir. 2018) ...........................................................................9

*Luna v. Marvell Tech. Grp.*,
    2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) .................................................14

*In re Lyft Inc. Sec. Litig.*,
    No. 19-cv-2690 (N.D. Cal.) ..............................................................................21

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ...........................................................................17

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ...........................................................................11

*Moorer v. StemGenex Med. Grp.*,
    2021 WL 4993054 (S.D. Cal. Oct. 26, 2021) ...................................................9

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .................................................14

*In re Nuvelo, Inc. Sec. Litig.*,
    2011 WL 2650592 (N.D. Cal. July 6, 2011) ...................................................17

*In re NVIDIA Corp. Deriv. Litig.*,
    2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) .................................................13

*In re OCZ Tech. Grp. Sec. Litig.*,
    No. 12-cv-5265 (N.D. Cal.) ..............................................................................9

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..........................................................17

*Redwen v. Sino Clean Energy, Inc.*,
    2013 WL 12129279 (C.D. Cal. Mar. 13, 2013) ...............................................14

*In re Resistors Antitrust Litig.*,
    2020 WL 2791922 (N.D. Cal. Mar. 24, 2020) .................................................19

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................ 11, 19

*Satchell v. Fed. Express Corp.*,
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .......................................... 13

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ................................................................ 11

*In re Twitter Inc. Sec. Litig.*,
    No. 16-cv-5314 (N.D. Cal.) ...................................................................... 9

*Vancouver Alumni Asset Holdings Inc. v. Daimler AG*,
    No. 16-cv-2942 (C.D. Cal.) .................................................................... 10

*Vataj v. Johnson*,
    2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) .......................................... 19

*Vinh Nguyen v. Radient Pharms. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................................ 17

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2019 WL 2077847 (N.D. Cal. May 10, 2019) .......................................... 12

*Weeks v. Kellogg Co.*,
    2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) .......................................... 16

*Wong v. Arlo Techs., Inc.*,
    2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) .......................................... 12

*In re Zynga Inc. Sec. Litig.*,
    2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .......................................... 12

**Other Authorities**

15 U.S.C. § 77z-1 ............................................................................................ 20

15 U.S.C. § 78u-4(a)(4) ................................................................................... 18

California Civil Code § 1542 ............................................................................. 8

Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.* .................................... 19

Fed. R. Civ. P. 23 .................................................................................. *passim*

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on June 12, 2025 at 1:30 p.m., or as soon thereafter as counsel may be heard before the Honorable Richard Seeborg, United States District Judge, at the United States District Court, Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, Courtroom 3 – 17th Floor, San Francisco, California 94102, plaintiffs Sheet Metal Workers' National Pension Fund and the International Brotherhood of Teamsters Local No. 710 Pension Fund (collectively, "Lead Plaintiffs") and additional plaintiff International Union of Operating Engineers Pension Fund of Eastern Pennsylvania and Delaware (collectively with Lead Plaintiffs, "Plaintiffs"), on behalf of themselves and the other members of the certified Class will and do hereby move for an order, pursuant to Federal Rule of Civil Procedure 23(e)(1): (1) preliminarily approving the proposed Settlement of the above-captioned certified class action (the "Action"); (2) approving the form and manner of notice of the proposed Settlement and related relief to the Class; (3) scheduling a final settlement hearing before the Court to determine whether the proposed Settlement, proposed Plan of Allocation for the proceeds of the Settlement, and Class Counsel's motion for attorneys' fees and Litigation Expenses should be approved; and (4) granting such other and further relief as may be required.[1]

The Motion is supported by the following memorandum of points and authorities, the Stipulation of Settlement ("Settlement Agreement" or "Stipulation") dated April 23, 2025, and exhibits thereto which embody the terms of the proposed Settlement between the parties, submitted herewith, the previous filings and orders in this case, and such other and further representations as may be made by Counsel at any hearing on this matter.

A proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") is also submitted with this Motion.

Defendants do not oppose the Motion, and the Parties agree that it may be decided on the papers, should the Court conclude that a hearing is not required.

---

[1] Unless otherwise indicated, capitalized terms shall have their meaning as defined in the Stipulation.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the proposed $38,000,000 settlement of this Action is within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the dissemination of notice of its terms to members of the certified Class.

2.      Whether the Court should approve the form and substance of the proposed Notice of (I) Proposed Class Action Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses ("Settlement Notice"), Summary Notice of (I) Proposed Class Action Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses ("Summary Notice"), and Proof of Claim and Release Form ("Claim Form"), attached as Exhibits A-2 through A-4 to the Settlement Agreement, as well as the manner of notifying the Class of the Settlement and related relief.

3.      Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's motion for attorneys' fees and Litigation Expenses (the "Settlement Hearing").

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Plaintiffs respectfully submit this memorandum of points and authorities, on behalf of themselves and the certified Class, in support of preliminary approval of the proposed Settlement in the amount of $38 million in cash, pursuant to the terms set forth in the Settlement Agreement. The Settlement is with all defendants: Bayer Aktiengesellschaft ("Bayer"), Werner Baumann, Werner Wenning, Liam Condon, Johannes Dietsch, and Wolfgang Nickl (collectively, "Defendants").

The decision to settle was informed by a comprehensive investigation into the claims and defenses in the Action, intensive motion practice and written and deposition discovery, including depositions taking place in New York, the United Kingdom, Belgium, and the Netherlands, as well as in Germany through the Hague Convention, certification of the Class, and extensive arm's-length negotiations overseen by a highly respected mediator. Plaintiffs submit that the Settlement represents an excellent result for the Class and ultimately should be approved by this Court.

Plaintiffs respectfully request that this Court enter the proposed Preliminary Approval Order, attached as Exhibit A-1 to the Settlement Agreement. The Preliminary Approval Order, among other things: (i) preliminarily approves the Settlement as being fair, just, reasonable, and adequate to the Class, pending a final hearing on the Settlement; (ii) schedules a hearing (the "Fairness Hearing" or "Final Approval Hearing") to consider the fairness, reasonableness, and adequacy of the proposed Settlement, the Plan of Allocation of the Net Settlement Fund ("Plan of Allocation" or "Plan"), and Lead Counsel's application for an award of attorneys' fees and Litigation Expenses; (iii) approves the forms and methods of disseminating notice to the Class, and directs that such notice be issued; (iv) appoints the Claims Administrator recommended by Lead Counsel to implement the notice procedures, administer the Settlement, and assist with its implementation; (v) establishes procedures and the deadline for Persons who previously opted out of the Class in connection with the Class Notice to opt back into the Class; (vi) establishes procedures and the deadline for Class Members to object to the terms of the Settlement, Plan of Allocation, or requested fees and Litigation Expenses; and (vii) establishes procedures and the deadline for Class Members to submit Claim Forms for payments from the Net Settlement Fund.

### A.     Overview of the Litigation

The allegations and claims in this Action are familiar to the Court; therefore, Plaintiffs provide only a brief overview at this stage. Additional details regarding Plaintiffs' extensive prosecution of this case for nearly five years—including issuing 47 subpoenas to non-parties; exchanging and responding to extensive written discovery and analyzing document productions; serving or analyzing a total of 20 expert reports, including 13 reports from Plaintiffs' five expert witnesses and seven reports from Defendants' three expert witnesses; taking and defending a total of 24 depositions in New York, the United Kingdom, Belgium, the Netherlands, and Germany, with the one in Germany secured through the Hague Convention and administered by a German court; opposing two motions to dismiss; and moving successfully for class certification—will be provided in Plaintiffs' motion for final approval of the Settlement in the event the Court grants preliminary approval such that notice of the proposed Settlement may be sent to Class Members, as requested herein.

1    The fundamental allegation in this case is that Defendants made false and misleading
2  statements and omissions to investors regarding their due diligence in connection with Bayer's
3  acquisition of Monsanto, which caused the price of Bayer ADRs to be artificially inflated during
4  the Class Period and caused damages to investors when they ultimately learned the truth about
5  Defendants' prior alleged misrepresentations. Specifically, Plaintiffs allege that Defendants
6  misrepresented the extent of Bayer's pre-merger due diligence on the risks associated with
7  Monsanto, including the risks posed by a wave of litigation against Monsanto alleging that
8  Roundup, one of Monsanto's flagship products, caused cancer (the "Roundup Litigation").

9    In the months after the acquisition closed, certain cases in the Roundup Litigation reached
10 trial, resulting in verdicts against Monsanto of $289.25 million and $80.27 million in the first two
11 trials. These verdicts, which caused Bayer's ADR price to plummet, spurred more lawsuits. When
12 Bayer announced in June 2020 that it would pay up to $10.9 billion in a global settlement for
13 current and future Roundup claims, Bayer's ADR price dropped further. The price dropped again
14 in July 2020 when the presiding judge indicated that he was unlikely to approve the settlement as
15 to future claims, meaning that Bayer might need to pay even more money to resolve those claims.

16    On July 15, 2020, this Action was commenced with the filing of a class action complaint
17 alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act") against
18 Defendants. ECF No. 1. On October 21, 2020, the Court appointed Sheet Metal Workers' National
19 Pension Fund and International Brotherhood of Teamsters Local No. 710 Pension Fund as Lead
20 Plaintiffs and approved Cohen Milstein Sellers & Toll PLLC as Lead Counsel pursuant to the
21 Private Securities Litigation Reform Act of 1995 (the "PSLRA"). ECF No. 44.

22    On January 19, 2021, Lead Plaintiffs, along with additional plaintiff International Union
23 of Operating Engineers Pension Fund of Eastern Pennsylvania and Delaware, filed an Amended
24 Complaint on behalf of themselves and a proposed class of all persons and entities that purchased
25 or otherwise acquired Bayer ADRs between May 23, 2016 and July 6, 2020 and suffered damages.
26 ECF No. 47. The Amended Complaint alleged that Defendants made false and misleading
27 statements and omissions regarding Bayer's acquisition of Monsanto, including Bayer's due
28 diligence, access to Monsanto's internal documents, and the evidence concerning whether

Roundup and glyphosate cause human health effects including cancer. *Id.* The complaint further alleged that Bayer fraudulently understated liabilities and overstated profits in its financial reports by failing to account for potential Roundup-related legal liabilities and failing to disclose litigation risks as contingent liabilities. *Id.*

On March 22, 2021, Defendants moved to dismiss the Amended Complaint. ECF No. 61. On October 19, 2021, the Court issued an order denying the motion as to Defendants' alleged misrepresentations regarding Bayer's due diligence on the Monsanto merger. ECF No. 90 ("1st MTD Order"). On November 15, 2021, the Court denied Defendants' request to file a motion for reconsideration of the order. ECF No. 97.

On December 17, 2021, Plaintiffs filed a motion for leave to file a Second Amended Class Complaint ("SAC") to (a) clarify, strengthen, and refine their claims relating to the statements about the evidence on whether Roundup and glyphosate cause human health effects, including cancer, which were dismissed without prejudice by the Court in the 1st MTD Order; and (b) remove their claims concerning Bayer's allegedly misleading accounting for litigation risks. ECF No. 102. The Court granted the request (ECF No. 105), and Plaintiffs filed the SAC on December 30, 2021 (ECF No. 107).

On January 31, 2022, Defendants moved to dismiss the SAC. ECF No. 110. On May 18, 2022, the Court denied Defendants' motion to dismiss as to the claims based on Defendants' alleged misstatements regarding Bayer's due diligence but granted the motion on the remaining claims. ECF No. 122. On June 22, 2022, Defendants filed an Answer to the SAC, denying all allegations of wrongdoing or damages and asserting affirmative defenses. ECF No. 127.

On October 28, 2022, Plaintiffs moved to certify the Class. ECF No. 140. Following briefing and discovery, including seven expert reports and seven depositions, on May 19, 2023, the Court granted the motion, certifying the Class, appointing Plaintiffs as Class Representatives, and designating Cohen Milstein as Class Counsel. ECF No. 175.

Pursuant to Court order (ECF No. 197), Plaintiffs coordinated with A.B. Data Ltd. ("A.B. Data"), the Class Administrator that Plaintiffs selected through a competitive bidding process, to disseminate the Notice of Pendency of Class Action ("Class Notice"), Summary Notice, Postcard

Notice, and website text (ECF No. 200). Beginning November 7, 2023, A.B. Data caused the Class Notice and Postcard Notices to be sent to potential Class Members and provided a copy of the Class Notice to the Depository Trust Company for posting on its Legal Notice System. ECF No. 200. A.B. Data established a website for the Action, www.BayerADRSecuritiesLitigation.com, that became operational on November 14, 2023. *Id.* Copies of the Class Notice and other documents related to the Action were posted on the website and available to download. *Id.* On November 28, 2023, A.B. Data published the summary notice in *The Wall Street Journal* and distributed it on the internet using *PR Newswire*. *Id.* The notices summarized the Action and provided potential class members the opportunity to request exclusion from the Class (*i.e.*, to "opt out"), explained that right, and set forth procedures for doing so, including requiring that opt-out requests be postmarked no later than January 29, 2023. *Id.* Only 11 requests for exclusion from the Class were received. *Id.*

Merits discovery spanned three years (2022–2025) and was both exhaustive and complex. From the outset, discovery was shaped by complex negotiations over foreign data privacy laws, ultimately resulting in Court-approved protocols governing confidentiality, production formats, and remote procedures. *See* ECF Nos. 137, 138, 146. The parties exchanged multiple rounds of extensive requests for production, admissions, and interrogatories addressing highly sensitive and technically complex issues, including Bayer's acquisition of Monsanto and its associated litigation risks. These efforts led to prolonged meet-and-confer negotiations and over two dozen dispute letters, culminating in two contested discovery motions. The Court issued key rulings compelling the production of privileged due diligence materials, authorizing a high-level deposition, and extending fact discovery to facilitate cross-border testimony. *See* ECF Nos. 198–99, 207, 210. Plaintiffs also issued subpoenas to 47 non-parties.

Fact discovery included depositions of 11 senior Bayer officials, conducted throughout the U.S. and Europe under logistically and linguistically challenging conditions. Securing the deposition of Bayer's former General Counsel, Dr. Hartwig, required months of coordination with German authorities under the Hague Convention. That deposition, held before a German judge, involved certified translations, live interpretation, and the physical presence of both parties' legal

teams. Expert discovery comprised 13 expert reports on the merits addressing topics such as ADR transaction structures, due diligence standards, merger incentives, loss causation, and damages. Each report was followed by expert depositions, except for one, totaling six expert depositions.

### B.    Settlement Discussions

In July 2024, the Parties agreed to engage in private mediation in an attempt to resolve the Action and retained Miles N. Ruthberg, Esq., of Phillips ADR Enterprises, P.C., to act as mediator (the "Mediator"). On August 22, 2024, Lead Counsel, along with Plaintiffs, Defendants' Counsel, representatives of Bayer, and representatives of Defendants' insurers participated in a full-day mediation session with the Mediator. No settlement was reached at that time. The parties resumed expert discovery with the exchange of reports and expert depositions.

Over five months later, the Parties agreed to attend a second private mediation session with Mr. Ruthberg to attempt to resolve the Action. On January 31, 2025, Lead Counsel, Plaintiffs, Defendants' Counsel, representatives of Bayer, and representatives of Defendants' insurers participated in a full-day mediation session. Despite extensive discussion and negotiation, the Parties did not reach a settlement.

The Parties continued to engage in extensive negotiations through the mediator over the course of several weeks. On February 20, 2025, the Mediator issued a $38 million mediator's proposal to resolve all claims subject to the negotiation of non-financial terms for the Settlement and Court approval. The Parties accepted the Mediator's proposal and executed a Term Sheet on March 25, 2025. The Parties then executed the Stipulation of Settlement on April 23, 2025.

### C.    Terms of the Proposed Settlement

#### 1.    Settlement Amount

The Settlement provides that Defendants will pay, or will cause to be paid, $38 million in cash (the "Settlement Amount") into an interest-bearing escrow account. *See* Stipulation ("Stip.") ¶ 8. The Settlement Amount, plus accrued interest, after the deduction of Court-awarded attorneys' fees and Litigation Expenses, Notice and Administration Expenses, Taxes, and any other costs or fees approved by the Court (the "Net Settlement Fund"), will be distributed to Class Members who submit timely and valid Claims in accordance with a plan of allocation approved by the Court. *See*

*id.* ¶¶ 13, 30–34. The Settlement is not a claims-made settlement and there is no reversion. *Id.* ¶ 17. If approved, Defendants and/or any other person(s) funding the Settlement Amount on a Defendant's behalf will have no right to the return of the Settlement Fund, or any portion thereof, for any reason. *Id.*; *see also N.D. Cal. Procedural Guidance for Class Action Settlements* ("Guidance") ¶ 1(g) (requiring disclosure of any reversions).

### 2. Releases

In exchange for the payment of the Settlement Amount, upon the Effective Date of the Settlement, Plaintiffs on behalf of themselves and all members of the Class, in his, her, or its capacity as a purchaser or acquirer of Bayer ADRs, together with their successors, assigns, executors, administrators, representatives, attorneys, and agents, in their capacities as such, shall release and dismiss the "Released Plaintiffs' Claims" against Defendants' released Persons. *See* Stip. ¶ 4.[2] The definition of Released Plaintiffs' Claims has been tailored to provide Defendants and Defendants' Released Persons with "complete peace." It releases claims that (a) arise out of, concern, are based upon, or relate in any way to the claims, allegations, transactions, facts, matters or occurrences, representations, or omissions asserted, involved, set forth, or referred to in the December 30, 2021 Second Amended Class Action Complaint or in any prior complaints in the Action; and (b) relate to the purchase, acquisition, sale, or holding of Bayer ADRs during the Class Period, including the conversion of Bayer ordinary shares to Bayer ADRs or the redemption of Bayer ADRs for Bayer ordinary shares. The release will also waive any rights under California Civil Code § 1542 and any similar provisions. *Id.* ¶¶ 1(rr), 6; *see* Guidance ¶ 1(b).

The proposed release is therefore tailored to the conduct at issue in the Action and is consistent with release provisions approved by this Court and other courts in this District. *See, e.g.*, *Boston Ret. Sys. v. Uber Techs., Inc.*, No. 19-cv-6361, ECF Nos. 459-2, 468 (N.D. Cal. Aug. 9,

---

[2] Defendants are also releasing any claims that "have been asserted, could have been asserted, or could be asserted in the future" against Plaintiffs' Released Persons "in any forum that concern, are based upon, arise out of, or relate in any way to the institution, prosecution, or settlement of the claims in the Action against Defendants." Stip. ¶ 1(ff). The release will not "cover, include, or release: (i) any claims relating to the enforcement of the Settlement; or (ii) any claims between Defendants' Released Persons and their respective insurers." *Id.* ¶ 5.

2024) (Seeborg, J.) (approving similar release of claims); *In re OCZ Tech. Grp. Sec. Litig.*, No. 12-cv-5265, ECF Nos. 97-1, 114 (N.D. Cal. Sept. 21, 2015) (Seeborg, J.) (same).

The Settlement does not release "(i) any claims asserted in the pending capital market litigation against Bayer or its directors and officers in the courts of Cologne; (ii) any claims asserted derivatively in *Haussmann, et al. v. Baumann, et al.*, Appeal No. APL-2024-00017 (N.Y. Ct. App.) or any pending ERISA action against Bayer or its directors and officers; or (iii) any claims relating to the enforcement of the Settlement." Stip. ¶¶ 1(gg), 4. The Parties are not aware of any other pending cases that will be affected by the Settlement or the proposed release. *See* Guidance ¶ 1(d) (requiring disclosure of other cases affected by Settlement).

Pursuant to Rule 23(e)(3), the only agreements made by the Parties in connection with the Settlement are the Term Sheet, the Stipulation, and the Supplemental Agreement, dated April 23, 2025, which sets forth the circumstances under which Defendants may terminate the Settlement where the number of exclusion requests hits a specified threshold. However, the Supplemental Agreement will not take effect if the Court agrees with Plaintiffs that Class Members will not have a second opportunity to opt out of the Class.

### 3.    No Second Opportunity to Opt Out of the Class

In light of the extensive notice of pendency provided to Class Members last year, Plaintiffs respectfully submit that no second opportunity to request exclusion should be provided, and the proposed notices do not provide for one. The Ninth Circuit, as well as courts in this District, support this approach. *See, e.g.*, *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) ("[There is] no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out. We think it does not." (citation omitted); *Uber Techs.*, No. 19-cv-6361, ECF No. 468 at 10 ¶ 13; *In re Twitter Inc. Sec. Litig.*, No. 16-cv-5314, ECF No. 658 at 3 ¶ 2 (N.D. Cal. Aug. 5, 2022); *Moorer v. StemGenex Med. Grp.*, 2021 WL 4993054, at *6 (S.D. Cal. Oct. 26, 2021).

### D.    Plan of Allocation

Under the Plan of Allocation, A.B. Data, an independent settlement and claims administrator ("Claims Administrator"), will calculate the claim amount for each Class Member

who timely submits acceptable Proof of Claim Forms ("Authorized Claimants") based on the information in each Person's Claim Form. A.B. Data was selected by Plaintiffs after a rigorous, competitive proposal process. *See* Declaration of Benjamin F. Jackson ("Jackson Decl.") ¶ 3. The Net Settlement Fund will be allocated on a *pro rata* basis based on the amount of each Authorized Claimant's claim amount as calculated by the Claims Administrator under the Plan of Allocation.

The structure of the Plan, which is appended in full to the Notice, is comparable to plans of allocation that have been used in numerous securities class actions. The Plan allocates the Net Settlement Fund based on Lead Counsel's estimate (after consultation with Plaintiffs' damages expert) of the amounts by which Plaintiffs allege the market prices of the Bayer ADRs were artificially inflated at various points during the Class Period, and takes into consideration when an Authorized Claimant purchased his, her, or its Bayer ADRs and, if the claimant sold the ADRs, when the ADRs were sold. Plaintiffs submit that the Plan is fair and reasonable and should be approved together with the Settlement.

When it is no longer feasible or economical to make additional distributions, Plaintiffs propose that the unclaimed balance of the Net Settlement Fund be contributed to the Council for Institutional Investors ("CII")[3] or such other *cy pres* recipient approved by the Court. *See* Ex. A-3, Appendix A ¶ 15.

### E. Proposed Schedule of Events

Plaintiffs respectfully propose the following schedule for Settlement-related events, each of which is in the proposed Preliminary Approval Order:

| | |
|---|---|
| Deadline for commencing mailing copies of the Notice and the Claim Form | ***No later than 15 business days after entry of the Preliminary Approval Order (the "Notice Date")*** |
| Deadline for publication of the Notice and the Claim Form on the case website | ***By the Notice Date*** |
| Deadline for publication of Summary Notice | ***No later than 10 business days after the Notice Date*** |

---

[3] CII is a nonprofit, nonpartisan association of benefit funds, foundations, and endowments that seeks to educate its members, policymakers, and the public about corporate governance, shareowner rights, and related investment issues. *See, e.g., Uber Techs.*, No. 19-cv-6361, ECF No. 482 (granting plan of allocation that designates CII as *cy pres* recipient in securities class action); *Vancouver Alumni Asset Holdings Inc. v. Daimler AG*, No. 16-cv-2942, ECF No. 346 (C.D. Cal. Mar. 13, 2023) (same). Lead Counsel is a member at large of CII.

| Deadline for Lead Counsel to serve and file proof of mailing and publication | *No later than 7 calendar days prior to the Settlement Hearing* |
| Deadline for filing motions in support of the Settlement, the Plan of Allocation, and Lead Counsel's request for an award of attorneys' fees and expenses | *No later than 35 calendar days prior to the Settlement Hearing* |
| Deadline for requests to opt in to the Class, and for objections | *Received no later than 21 calendar days prior to the Settlement Hearing* |
| Deadline for filing reply papers in further support of Plaintiffs' and Lead Counsel's motions | *No later than 7 calendar days prior to the Settlement Hearing* |
| Deadline for submission of Claim Forms | *No later than 120 calendar days after the Notice Date* |
| Settlement Hearing | *June 12, 2025, or another date at the Court's convenience* |

This schedule is similar to those used and approved by numerous courts, including this one, in securities class action settlements. *See, e.g.*, *Uber Techs.*, No. 19-cv-6361, ECF No. 468. This schedule also complies with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010) (fee motion must be available before the objection deadline).

## ARGUMENT

## I.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The Ninth Circuit has a "strong judicial policy" in favor of settlement of class actions, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008), "particularly where complex class action litigation is concerned," *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). The Ninth Circuit also recognizes that courts should defer to "the private consensual decision of the parties" to settle and advance the "overriding public interest in settling and quieting litigation." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Federal Rule of Civil Procedure 23(e) requires judicial approval of any class action settlement. Preliminary approval depends on a court's determination of whether it "will likely be able to" approve the proposed settlement "after a hearing and only on a finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1), (2).[4] Specifically, the Court considers whether:

    (A)    the class representatives and class counsel have adequately represented the class;

---

[4] Rule 23(e)(1) also requires the Court to consider whether it "will likely be able to . . . certify the class for purposes of the judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). The Court need not determine whether it could certify a Class here because it has already certified the Class. *See* ECF No. 175.

(B)     the proposal was negotiated at arm's length;
(C)     the relief provided for the class is adequate, taking into account:
    (i)     the costs, risks, and delay of trial and appeal;
    (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)     the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv)     any agreement required to be identified under Rule 23(e)(3); and
(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[5]

The proposed Settlement easily satisfies each of the Rule 23(e)(2) factors, as well as the Ninth Circuit factors. Accordingly, the Court should preliminarily approve the Settlement and order that notice of the proposed Settlement be sent to the Class ahead of the Settlement Hearing.

## A.     Plaintiffs and Lead Counsel Have Adequately Represented the Class

Plaintiffs and Lead Counsel have adequately represented the class pursuant to Rule 23(e)(2)(A) because they have diligently prosecuted this Action for nearly five years, through dispositive motion practice, extensive discovery, class certification motion practice, and settlement negotiations, as discussed in detail above. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (finding securities class settlement procedurally fair where "Lead Counsel vigorously litigated this action during motion practice and discovery, and the record supports the continuation of that effort during settlement negotiations"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) (granting final approval and stating that at preliminary approval "the Court found that Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation" and that "given this prosecution of the action, counsel possessed sufficient information to make an informed decision about settlement").

---

[5] Alongside the Rule 23(e) factors, the Court also looks to factors previously adopted by courts to evaluate settlements. *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *5 (N.D. Cal. Apr. 19, 2021). In the Ninth Circuit, these factors include "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members of the proposed settlement." *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *8 (N.D. Cal. Oct. 27, 2015).

1    Plaintiffs are sophisticated institutional investors with significant experience serving as

2    lead plaintiffs under the PSLRA and overseeing counsel in complex litigation, including in

3    securities class actions. *See* ECF No. 23 at 14–15. Representatives of Plaintiffs played active roles

4    in the formal mediation sessions and in informal settlement discussions with Lead Counsel and the

5    Mediator. Plaintiffs agreed to the Settlement with an informed understanding of the facts of the

6    case and merits of the claims. Moreover, Plaintiffs' interests are entirely aligned with those of the

7    Class, including the interest in obtaining the largest possible recovery. *Hanlon v. Chrysler Corp.*,

8    150 F.3d 1011, 1026 (9th Cir. 1998)

9    In addition, Lead Counsel is highly experienced in securities class actions and has had a

10   long and successful track record in prosecuting these cases. Plaintiffs benefited from the advice

11   and experience of Lead Counsel in obtaining the substantial monetary recovery that the Settlement

12   provides. Courts attribute "significant weight" to "counsel's belief that settlement is in the best

13   interest of those affected by the settlement." *In re NVIDIA Corp. Deriv. Litig.*, 2008 WL 5382544,

14   at *4 (N.D. Cal. Dec. 22, 2008). Plaintiffs submit that the Court should do so here.

15   **B.    The Settlement Resulted from Good Faith, Arm's-Length Negotiations**

16   Rule 23(e)(2)(B) requires that the proposed Settlement have been "negotiated at arm's

17   length." In making this determination, courts recognize that "one important factor [to consider] is

18   that the parties reached the settlement . . . with a third-party mediator." *In re Banc of Calif. Sec.*

19   *Litig.*, 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019); *see also Chavez v. Converse, Inc.*, 2020

20   WL 4047863, at *2 (N.D. Cal. July 8, 2020) ("The assistance of an experienced neutral mediator

21   during the settlement process supports the Court's conclusion that the Agreement is non-

22   collusive."); *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

23   As explained above, the Parties reached a settlement following two mediations, five

24   months apart, during which time extensive discovery took place of seven experts and was nearly

25   complete. *See, e.g.*, *Hunichen v. Atonomi LLC*, 2021 WL 5854964, at *6 (W.D. Wash. Nov. 12,

26   2021) ("A breakdown in settlement negotiations can tend to display the negotiation's arms-length

27   and non-collusive nature." (citation omitted)), *report and recommendation adopted*, 2022 WL

28   4131590 (W.D. Wash. Sept. 12, 2022). Before each mediation, the Parties exchanged mediation

statements and, before the second mediation, Plaintiffs provided an *ex parte* statement for the Mediator to review. During the two full-day mediations, Lead Counsel and Defendants' Counsel vigorously asserted arguments about liability and damages but were unable to bridge the gap between their respective settlement positions. Over the course of the month following the second mediation, the Parties continued to engage in vigorous negotiations through multiple one-on-one discussions with the Mediator, who ultimately issued a $38 million mediator's proposal to resolve all claims. The Parties accepted the Mediator's proposal on February 23, 2025. Throughout this process, Plaintiffs were actively involved, attending the mediations remotely and/or in person, and participating in numerous telephone calls with Lead Counsel and the Mediator.

The contentious and burdensome settlement negotiation process demonstrates that the negotiations were adversarial, in good faith, and at arm's length, which affords the Settlement a "presumption of fairness and reasonableness." *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) (applying presumption to settlements that were "the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel").

**C.    The Relief Provided by the Settlement Is Adequate**

**1.    The Challenges of Further Litigation Support Preliminary Approval of the Settlement**

The proposed Settlement represents "adequate" relief for the Class taking into account "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). The $38 million cash settlement provides the Class with a significant and immediate benefit, whereas continuing to prosecuting the case would present significant costs and risks. Courts "routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear," *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12129279, at *5 (C.D. Cal. Mar. 13, 2013), particularly the hurdles of proving scienter, loss causation, and damages at trial, *Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *3 (N.D. Cal. Apr. 20, 2018); *see also, e.g.*, *In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015) ("As with any securities litigation case, it would be difficult for Lead Plaintiff to prove loss causation and damages at trial. . . . Lead Plaintiff would risk recovering nothing without a settlement.").

Indeed, Defendants vehemently asserted various arguments disputing scienter, loss causation, and damages, and challenged the materiality and falsity of the alleged misstatements. For example, Defendants argued that the record does not support Plaintiffs' contention that investors interpreted Defendants' statements as providing an implied assurance about the scope of Bayer's due diligence on the Roundup Litigation, and that the statements that did address due diligence provided only that Bayer had conducted "customary" diligence. Defendants also argued that Plaintiffs would not be able to prove scienter because the Individual Defendants testified that they lacked a detailed understanding of Bayer's legal due diligence, they relied on their lawyers' guidance to make statements about the due diligence, and such reliance was not reckless, but rather reasonable and necessary. In addition, Defendants challenged Plaintiffs' theory of loss causation, disputing that the market did not discover the alleged deficiencies in Bayer's diligence until Monsanto began losing jury trials in Roundup litigation cases. Rather, Defendants contended, evidence concerning that diligence became public long before the jury verdicts.

Finally, Defendants challenged Plaintiffs' damages expert's damages calculation, maintaining that the correct calculation would substantially reduce Plaintiffs' damages calculation. Plaintiffs' damages expert estimated that based on a standard constant-dollar out-of-pocket damages methodology, Plaintiffs' maximum damages in the case was approximately $417 million. Defendants argued, however, that Plaintiffs' damages expert's methodology was unreliable and inappropriate because, among other reasons, it relied on implausible assumptions and improperly omitted the price impact of certain events. Defendants also argued that a significant percentage of the Class suffered no actual out-of-pocket loss because they acquired Bayer ADRs in exchange for equally valued Bayer stock. Rather than Plaintiffs' expert's estimate of $417 million, Defendants planned to assert that the total damages if liability were otherwise proven was instead $24.5 million. Based on this significantly reduced amount, a Class recovery of $38 million represents an extremely successful result.

Defendants' aggressive, multifaceted attack on Plaintiffs' case would be challenging to overcome at trial, where Plaintiffs would have to prove all elements of their claims to prevail while Defendants would only need to prevail on one core defense to defeat the entire Action. Plaintiffs'

potential for success at trial was also in jeopardy because Defendants retained expert witnesses to testify against Plaintiffs' experts on these issues, which "suggests that [P]laintiffs' ability to prove [their case] was somewhat unclear" and "favors a finding that the settlement is fair." *Weeks v. Kellogg Co.*, 2013 WL 6531177, at *13 (C.D. Cal. Nov. 23, 2013). Plaintiffs would also face the risk that the Class would be decertified before trial or on appeal. *See, e.g.*, *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *6 (N.D. Cal. July 15, 2022) ("[T]here is always a risk of decertification—especially when . . . Plaintiffs must overcome causation and damages defenses.").

In addition, continuing to prosecute the action would require the Parties to expend substantial additional amounts of time and money at trial and potentially on appeals. It is quite possible that both sides would appeal a jury verdict, in the event that the jury found for the Class but substantially reduced the damages sought. Without a settlement, the Class would have to wait substantially longer before obtaining any relief, even assuming that Plaintiffs would be successful and overcame every obstacle. Moreover, Plaintiffs would have no guarantee that further litigation would result in a higher recovery, or any recovery at all.

Accordingly, Plaintiffs, having considered the myriad risks of continued litigation, respectfully submit that the Settlement is fair, just, reasonable, and adequate. *See, e.g.*, *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

### 2.     The Plan of Allocation Prescribes an Effective Method of Distributing Relief to the Class

As explained *infra* in Part II, the Plan of Allocation, which is appended to the Notice, is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among the eligible Claimants. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Plan was prepared with the assistance of Plaintiffs' damages expert and is based on the expert's estimation of the amount of artificial inflation in the prices of Bayer ADRs. The Plan allocates the Net Settlement Fund based on Lead Counsel's estimate (after consultation with Plaintiffs' damages expert) of the amounts by which Plaintiffs allege the market prices of the Bayer ADRs were artificially inflated at various points

during the Class Period, and takes into consideration when an Authorized Claimant purchased his, her, or its Bayer ADRs and, if the claimant sold the ADRs, when the ADRs were sold.

### 3.    Anticipated Attorneys' Fees

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment." Lead Counsel intends to seek an award of attorneys' fees not to exceed 27% of the Settlement Amount and expenses not to exceed $3,550,000,[6] plus accrued interest as earned by the Settlement Fund. Stip. ¶ 20. This fee request—which is a preliminary estimate—reflects the successful result achieved for the Class and is consistent with fee awards granted in common fund settlements with comparable, greater, and lesser settlements in courts throughout the Ninth Circuit. In many securities class actions, the award has exceeded the 25% "benchmark," which "may be adjusted depending on the circumstances of a case." *In re Apple Inc. Device Perf. Litig.*, 2023 WL 2090981, at *12 (N.D. Cal. Feb. 17, 2023); *see also, e.g.*, *Uber Techs.*, No. 19-cv-6361, ECF No. 481 ¶ 5 (approving fee award of 29% of the settlement fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (33.33%); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (28%); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *3 (N.D. Cal. July 6, 2011) (30%); *In re CV Therapeutics, Inc. Sec. Litig.*, 2007 WL 1033478, at *1 (N.D. Cal. Apr. 4, 2007) (30%); *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *10 (C.D. Cal. May 6, 2014) (28 percent). Lead Counsel will request that any award of fees and expenses be paid at the time the Court makes its award.

Lead Counsel's lodestar to date is approximately $12,352,237, reflecting 13,499 total hours, which further affirms the reasonableness of the requested attorneys' fees. Further, liaison counsel Berman Tabacco's lodestar is $709,512.50, reflecting 934.3 total hours. The 27% fee would amount to $10,260,000, which would provide a negative "multiplier" on Plaintiffs' Counsel's lodestar of $13,061,749.50. If the Court grants preliminary approval, Lead Counsel will present their and liaison counsel's total lodestar in connection with their fee application at the final

---

[6] This expense amount includes both Lead Counsel's and Liaison Counsel's expenses, which includes $2,588,250.93 in expert expenses.

approval stage, after further detailed review. Accordingly, the final figures presented in Lead Counsel's motion for attorneys' fees and expenses may differ.

Plaintiffs also intend to seek reimbursement of their costs, expenses, and/or lost wages related to their efforts on behalf of the class, pursuant to the PSLRA, in an award of no more than $31,485.14 in the aggregate for all three Plaintiffs. 15 U.S.C. § 78u-4(a)(4); *see, e.g.*, *Fleming*, 2022 WL 2789496, at *10 ("Under the PSLRA, a class representative may seek an award of reasonable costs and expenses, including lost wages, directly relating to the representation of the class.").[7] This amount is fully supported by the effort and time that Plaintiffs expended throughout the Action. Plaintiffs will provide greater detail on their applications for reimbursement in Lead Counsel's fee and expense motion.

### 4.    Other Agreements Between the Parties

In the event that the Court requires a second opportunity for Class Members to opt out of the Settlement, the Parties have entered into a standard supplemental agreement that allows Defendants to terminate the Settlement if a specific, agreed-upon number of Class Members opt out of the Settlement. Stip. ¶ 46. Such agreements are common and do not undermine the fairness or reasonableness of the Settlement. *See, e.g.*, *Hefler*, 2018 WL 6619983, at *7.

### D.    Class Members Are Treated Equitably Relative to One Another

Nothing in the course of the settlement negotiations or the terms of the Settlement itself discloses grounds to doubt that it treats any Class Member preferentially. As discussed above, the $38 million recovery constitutes a significant and certain benefit for Class Members. Plaintiffs will receive a distribution from the Net Settlement Fund in accordance with the Plan of Allocation in the same manner as distributions to all other Class Members, on a *pro rata* basis. Courts have

---

[7] As provided in the Stipulation, any award of attorneys' fees or expenses "(including Plaintiffs' reimbursements under 15 U.S.C. § 78u-4(a)(4)) will be separate and apart from the Settlement, and any issues, objections, or appeals with respect to the fee and expense request or award will not affect the validity or finality of the Settlement (including the releases contained therein)." Stip. ¶ 21. In addition, "[a]n award of attorneys' fees and/or Litigation Expenses is not a necessary term of this Stipulation and is not a condition of the Settlement embodied herein. Neither Plaintiffs nor Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses." *Id.* ¶ 18.

previously found plans that award *pro rata* shares to each class member to be fair and reasonable. *See, e.g.*, *Vataj v. Johnson*, 2021 WL 1550478, at \*10 (N.D. Cal. Apr. 20, 2021) (approving plan of allocation using *pro rata* basis of distribution); *In re Resistors Antitrust Litig.*, 2020 WL 2791922, at \*2 (N.D. Cal. Mar. 24, 2020) (same).

## II. THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, PSLRA REQUIREMENTS, AND THE COURT'S GUIDANCE

### A. Notice Procedures

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also* Fed. R. Civ. P. 23(e)(1). The Ninth Circuit has clarified that "[n]otice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563 F.3d at 962; *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (same).

Lead Counsel proposes to provide Class Members notice by: (i) first-class mail or emailing of the Notice and Claim Form to all Class Members who may be identified through reasonable effort; (ii) posting copies of the Notice and Claim Form on the website established for the Action, www.BayerADRSecuritiesLitigation.com (the "Case Website"); and (iii) publishing the Summary Notice in *The Wall Street Journal* and transmitting the Summary Notice over *PR Newswire*.

Notice to the Class in this manner complies with the Federal Rules of Civil Procedure, the PSLRA, due process, and the Northern District's Guidance ¶ 3. *See In re HP Sec. Litig.*, 2015 WL 4477936, at \*2 (N.D. Cal. July 20, 2015) (finding that similar procedures satisfy Rule 23 and the PSLRA and "constitute the best notice practicable under the circumstances").

Additionally, no later than 10 calendar days after the filing of the Stipulation with the Court, Defendants will serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.* ("CAFA"), and will be solely responsible for any related costs and administration. Stip. ¶ 29. At least seven calendar days before the Settlement Hearing, Defendants will file with the Court proof of compliance with CAFA § 1715(b). *Id.* The Parties have agreed that any delay by Defendants in timely serving the CAFA notice will not provide grounds for delay of the

Settlement Hearing or entry of the Judgment. *Id.*

**B.    Form and Substance of Proposed Settlement Notices**

The Court should approve the form and content of the proposed Notice and Summary Notice. The Summary Notice will provide important information regarding the Settlement and the rights of Class Members in connection therewith, and will direct recipients to the Case Website for additional information and access to the Notice, Claim Form, and other case documents.

The Notice is written in plain language and features a question-and-answer format that sets out clearly the relevant information and answers most questions that Class Members may have. Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notice objectively and neutrally apprises all Class Members of (among many other disclosures): (i) the nature, history, and status of the Action; (ii) the definition of the Class and who is excluded; (iii)  the Class's claims and issues; (iv) that a Class Member may enter an appearance through an attorney if the member so requires; (v) that a Class Member who previously opted out of the Class may opt back in, and the time and manner for doing so; and (vi) the binding effect of the Judgment on Class Members.

The Notice also complies with the PSLRA's requirements by informing Class Members of (i) the amount of the settlement; (ii) that the Parties do not agree on the amount of damages that Plaintiffs could recover if they prevailed in the litigation; (iii) that Lead Counsel intends to apply to the Court for an award of attorneys' fees and expenses, including the amount sought and a brief explanation supporting the application; (iv) the name, telephone number, and address of a representative of Lead Counsel who will be reasonably available to answer questions from Class Members about any matter contained in the Notice;[8] and (v) the reasons why the parties are proposing the Settlement. *See* 15 U.S.C. § 77z-1.

Finally, the Notice complies with the Northern District's Procedural Guidance by including contact information for Lead Counsel; the URL for the Case Website, which lists key deadlines and links to relevant documents; instructions on how to access the case docket via PACER or in

---

[8] The office address of Lead Counsel, Carol V. Gilden, is scheduled to change in the coming weeks. Accordingly, the Stipulation, Notice, and Summary Notice contain the new address for notice purposes.

person at any of the Court's locations; the date and time of the Final Approval Hearing, including that the date may change without further notice; and a note advising Class Members to check the Case Website or PACER to confirm the date has not been changed. Guidance ¶ 3.

### C.    Claims Administration

Plaintiffs respectfully request that the Court appoint A.B. Data as the Claims Administrator to provide all notices approved by the Court, process Claim Forms, and administer the Settlement. *See* Guidance ¶ 2(a). Earlier in this litigation, the Court appointed A.B. Data to administer the Class Notice, which A.B. Data did successfully. *See* ECF No. 200. A.B. Data has over 40 years of experience in administering class action settlements in securities, antitrust, discrimination, financial services, product liability, privacy, and ERISA class action cases. A.B. Data's comprehensive data security procedures are sufficient to securely handle class member data. *See* Declaration of Adam D. Walter ("Walter Decl.") ¶ 3 & Ex. C-2; Guidance ¶ 2(b).

Lead Counsel selected A.B. Data to administer the Settlement after a competitive bidding process in which five firms submitted cost proposals. A.B. Data had the most competitive proposal. Jackson Decl. ¶ 3; Guidance ¶ 2(a). All cost proposals involved comparable methods of providing notice and claims processing, including use of first-class mail and identification of potential Class Members through third-party brokers and nominee owners. Jackson Decl. ¶ 3. A.B. Data is an experienced and diligent settlement and claims administrator in securities class action cases, as well as other kinds of complex class actions. Lead Counsel has previously worked with A.B. Data to administer other class action settlements and has been satisfied with A.B. Data's work and competitive pricing, including in two cases over the past two years. *Id.* ¶ 4.

A.B. Data estimates that it will mail approximately 412,782 Notice Packets, which will include the Notice and Claim Form, and that it will receive approximately 124,000 to 165,000 claims, based on an estimated 30% to 40% response rate. *See* Walter Decl. ¶ 19. A.B. Data based this estimate on three recent cases: *In re Lyft Inc. Sec. Litig.*, No. 19-cv-2690 (N.D. Cal.) (claims received represented 21% of notices mailed); *In re James River Grp. Holdings, Ltd. Sec. Litig.*, No. 21-cv-444 (E.D. Va.) (51%); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, No. 12-cv-2389 (S.D.N.Y.) (35%). *Id.* ¶ 19 n.2. A.B. Data used these cases, which they administered, because they

involved similarly sized settlements, similar alleged claims, and/or similar company profiles. *Id.*

A.B. Data estimates that its fees and expenses for administering the Settlement will total approximately $755,000. Walter Decl. ¶ 28; Guidance ¶ 2(b). This number is based on A.B. Data's estimate of the number of Notice Packets it will mail and the number of claims it will receive. If these assumptions prove incorrect, A.B. Data's administrative fees and expenses will differ from this estimate. Walter Decl. ¶ 29. Notice and Administration Costs will be paid from the Settlement Fund. Stip. ¶ 13; Guidance ¶ 2(b).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion.

Dated: April 23, 2025

Respectfully submitted,

*/s/ Carol V. Gilden*

Carol V. Gilden (*pro hac vice*)
cgilden@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369

Steven J. Toll (*pro hac vice*)
stoll@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Chris Lometti (*pro hac vice*)
clometti@cohenmilstein.com
Benjamin F. Jackson (*pro hac vice*)
bjackson@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, Fourteenth Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

*Lead Counsel for Plaintiffs and the Class*

Nicole Lavallee (SBN 165755)
nlavallee@bermantabacco.com
Alexander S. Vahdat (SBN 284963)
avahdat@bermantabacco.com
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

*Liaison Counsel for Plaintiffs*

*Attorneys for Lead Plaintiffs Sheet Metal Workers' National Pension Fund and International Brotherhood of Teamsters Local No. 710 Pension Fund, and Named Plaintiff International Union of Operating Engineers Pension Fund of Eastern Pennsylvania and Delaware*

**APPENDIX A**

**United States District Court for the Northern District of California**
**Procedural Guidance for Class Action Settlements – Preliminary Approval**

| Procedural Guidance | Where Guidance Is Addressed |
|---|---|
| **1) Information About the Settlement** | |
| a) Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate. | N/A; Stipulation ¶ 1(h) |
| b) Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate. | Motion at 8:7–9:9; Stipulation ¶ 1(ff), (gg) |
| c) The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims. | Motion at 7:23-28, Part I(C)(1) |
| d) Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval. If there are no such cases, counsel should so state. | N/A; Motion at 9:10-15 |
| e) The proposed allocation plan for the settlement fund. | Motion at Part I(C)(2); Settlement Notice App'x A |
| f) If there is a claim form, an estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples. | Motion at 21:22–22:1; Walter Decl. ¶ 19 & n.2; *id.* Ex. C-3 |
| g) In light of Ninth Circuit case law disfavoring class settlements, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate. | Motion at 8:1-5 |
| **2) Settlement Administration** | |
| a) Identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead class counsel's firms' history of engagements with the settlement administrator over the last two years. | Motion at Part II(C); Jackson Decl. ¶¶ 3–4 |
| b) Address the settlement administrator's procedures for securely handling class member data (including technical, administrative, and physical controls; retention; | Motion at Part II(C); Walter Decl. ¶¶ 3–5, 28; *id.* Ex. C-2 |

| Procedural Guidance | Where Guidance Is Addressed |
|---|---|
| destruction; audits; crisis response; etc.), the settlement administrator's acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs. | |
| **3) Notice** | |
| The parties should ensure that the class notice is easily understandable, in light of the class members' communication patterns, education levels and language needs. The notice should include the following information: | *See generally* Settlement Notice & Summary Notice |
| a) Contact information for class counsel to answer questions. | Settlement Notice ¶ 65; Summary Notice at 3−4 |
| b) The address for a website, maintained by the claims administrator or class counsel, that lists key deadlines and has links to the notice, claim form (if any), preliminary approval order, motions for preliminary and final approval and for attorneys' fees, and any other important documents in the case. | *See generally* Settlement Notice & Summary Notice |
| c) Instructions on how to access the case docket via PACER or in person at any of the court's locations. | Settlement Notice ¶ 59 |
| d) The date and time of the final approval hearing, clearly stating that the date may change without further notice to the class. | Settlement Notice at 2 ¶¶ 49, 55; Summary Notice at 2 |
| e) A note to advise class members to check the settlement website or the Court's PACER site to confirm that the date has not been changed. | Settlement Notice ¶ 55 |
| The parties should explain how the notice distribution plan is effective. Class Counsel should consider the following ways to increase notice to class members: identification of potential class members through third-party data sources; use of text messages and social media to provide notice to class members; hiring a marketing specialist; providing a settlement website that estimates claim amounts for each specific class member and updating the website periodically to provide accurate claim amounts based on the number of participating class members; and distributions to class members via direct deposit. | Motion at Part II(A), (B) |
| The notice distribution plan should rely on U.S. mail, email, and/or social media as appropriate to achieve the best notice that is practicable under the circumstances, consistent with Federal Rule of Civil Procedure 23(c)(2). If U.S. mail is part of the notice distribution plan, the notice envelope should be designed to enhance the chance that it will be opened. | Motion at Part II(A) |
| **4) Opt-Outs** | |
| The notice should instruct class members who wish to opt out of the settlement to send a letter, setting forth their name and information needed to be properly identified and to opt out of the settlement, to the settlement administrator and/or the person or entity designated to receive opt outs. It should require only the information needed to opt out of the settlement and no extraneous information or hurdles. The notice should clearly advise class members of the deadline, methods to opt out, and the consequences of opting out. | N/A; Motion at 9:17-25 |

| Procedural Guidance | Where Guidance Is Addressed |
|---|---|
| **5) Objections** | |
| Objections must comply with Federal Rule of Civil Procedure 23(e)(5). | Settlement Notice ¶ 51 |
| The notice should instruct class members who wish to object to the settlement to send their written objections only to the court. All objections will be scanned into the electronic case docket, and the parties will receive electronic notices of filings. The notice should make clear that the court can only approve or deny the settlement and cannot change the terms of the settlement. The notice should clearly advise class members of the deadline for submission of any objections. | Settlement Notice ¶¶ 49–50 |
| Below is suggested language for inclusion in class notices: "You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out, and the lawsuit will continue. If that is what you want to happen, you should object. Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number (_____ v. _____, Case No. _____), (b) be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for the Northern District of California or by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, [insert appropriate Court location here], and (c) be filed or postmarked on or before _____." | *See* Settlement Notice ¶¶ 49–51 |
| **6) Attorneys' Fees and Costs** | |
| Although attorneys' fee requests will not be approved until the final approval hearing, class counsel should include information about the fees and costs (including expert fees) they intend to request, their lodestar calculation (including total hours), and resulting multiplier in the motion for preliminary approval. | Motion at Part I(C)(3) |
| In a common fund case, the parties should include information about the relationship between the amount of the common fund, the requested fee, and the lodestar. | Motion at Part I(C)(3) |
| To the extent counsel base their fee request on having obtained injunctive relief and/or other non-monetary relief for the class, counsel should discuss the benefit conferred on the class. | N/A |
| **7) Service Awards** | |
| Although service award requests will not be approved until the final approval hearing, the parties should include information about the service awards they intend to request as well as a summary of the evidence supporting the awards in the motion for preliminary approval. The parties should ensure that neither the size nor any conditions placed on the incentive awards undermine the adequacy of the named plaintiffs or class | Motion at 18:3-10 |

| Procedural Guidance | Where Guidance Is Addressed |
|---|---|
| representatives. In general, unused funds allocated to incentive awards should be distributed to the class pro rata or awarded to cy pres recipients. | |
| **8) Cy Pres Awardees** | |
| If the settlement contemplates a cy pres award, the parties should identify their chosen cy pres recipients, if any, and how those recipients are related to the subject matter of the lawsuit and the class members' claims. The parties should also identify any relationship they or their counsel have with the proposed cy pres recipients. In general, unused funds allocated to attorneys' fees, service awards, settlement administration costs, and class member payments should be distributed to the class pro rata if feasible, or else awarded to cy pres recipients or to the relevant government authorities. | Motion at 10:14-17 & n.3; Settlement Notice App'x A ¶ 15 |
| **9) Timeline** | |
| The parties should ensure that class members have at least thirty-five days to opt out or object to the settlement and the motion for attorneys' fees and costs. | Motion at 10:19–11:9 |
| **10) Class Action Fairness Act (CAFA) and Similar Requirements** | |
| The parties should address whether CAFA notice is required and, if so, when it will be given. | Motion at 19:22–20:1; Stipulation ¶ 29 |
| In addition, the parties should address substantive compliance with CAFA. For example, if the settlement includes coupons, the parties should explain how the settlement complies with 28 U.S.C. § 1712. | N/A |
| In addition, the parties should address whether any other required notices to government entities or others have been provided, such as notice to the Labor & Workforce Development Agency (LWDA) pursuant to the Private Attorneys General Act (PAGA). | N/A |
| **11) Comparable Outcomes** | |
| Lead class counsel should provide information about comparable cases, including settlements and litigation outcomes. Lead class counsel should provide the following information for as many as feasible (and at least one) comparable class settlements (i.e., settlements involving the same or similar claims, parties, issues): | Motion at 21:24–22:1; Walter Decl. ¶ 19 & n.2; *id.* Ex. C-3 |
| (a) The claims being released, the total settlement fund, the total number of class members, the total number of class members to whom notice was sent, the method(s) of notice, the number and percentage of claim forms submitted, the average recovery per class member or claimant, the amounts distributed to cy pres recipients, the administrative costs, the attorneys' fees and costs, the total exposure if the plaintiffs had prevailed on every claim. | Walter Decl. ¶ 19 & n.2; *id.* Ex. C-3 |
| (b) Where class members are entitled to non-monetary relief, such as discount coupons or debit cards or similar instruments, the number of class members availing themselves of such relief and the aggregate value redeemed by the class members and/or by any assignees or transferees of the class members' interests. | N/A |
| (c) Where injunctive and/or other non-monetary relief has been obtained, discuss the benefit conferred on the class. | N/A |

| Procedural Guidance | Where Guidance Is Addressed |
|---|---|
| Counsel should summarize this information in easy-to-read charts that allow for quick comparisons with other cases, supported by analysis in the text of the motion. | Walter Decl. Ex. C-3 |
| **12) Electronic Versions** | |
| Electronic versions (Microsoft Word or WordPerfect) of all proposed orders and notices should be submitted to the presiding judge's Proposed Order (PO) email address when filed. Most judges in this district use Microsoft Word, but counsel should check with the individual judge's Courtroom Deputy. | To be done upon filing |
| **13) Overlapping Cases** | |
| Within one day of filing the preliminary approval motion, the defendants should serve a copy on counsel for any plaintiffs with pending litigation, whether at the trial court or appellate court level, whether active or stayed, asserting claims on a representative (e.g., class, collective, PAGA, etc.) basis that defendants believe may be released by virtue of the settlement. | N/A |