Robin Greenwald (*pro hac vice* anticipated)
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
Tel: 212-558-5802
rgreenwald@weitzlux.com

Robert J. Quigley, CA Bar No. 302879
**WEITZ & LUXENBERG, P.C.**
1800 Century Park E., Suite 700
Los Angeles, CA 90067
Tel: 212-558-5829
rquigley@weitzlux.com

David Dickens (*pro hac vice* anticipated)
**THE MILLER FIRM LLC**
108 Railroad Ave.
Orange, VA
Tel: 540-672-4224
ddickens@millerfirmllc.com

*Counsel for Proposed Intervenors*
*Co-Lead Counsel in MDL No. 2741*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SHEET METAL WORKERS' NATIONAL PENSION FUND and INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 710 PENSION FUND, individually and as Lead Plaintiffs on behalf of all others similarly situated, and<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS PENSION FUND OF EASTERN PENNSYLVANIA AND DELAWARE, individually and as Named Plaintiff, on behalf of all others similarly situated,<br><br>        Plaintiffs,<br>     vs.<br><br>BAYER AKTIENGESELLSCHAFT, WERNER BAUMANN, WERNER WENNING, LIAM CONDON, JOHANNES DIETSCH, and WOLFGANG NICKL,<br><br>        Defendants,<br><br>WEITZ & LUXENBERG, P.C. and THE MILLER FIRM LLC, as Co-Lead Counsel in MDL No. 2741 and on behalf of certain clients,<br><br>        Proposed Intervenors. | Case No: 3:20-cv-04737-RS<br><br>CLASS ACTION<br><br>**PROPOSED INTERVENORS' NOTICE OF MOTION AND MOTION TO INTERVENE AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER (DKT. 138); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: August 14, 2025<br><br>Time: 1:30 p.m.<br><br>Judge: Richard Seeborg<br><br>Courtroom: 3 — 17th Floor |

PROPOSED INTERVENORS' P&A I/S/O MOT. TO INTERVENE AND MODIFY PROTECTIVE ORDER
CASE NO: 3:20-CV-04737-RS

## NOTICE OF MOTION AND MOTION

TO PLAINTIFFS, DEFENDANTS, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 14, 2025, at 1:30 p.m. or at such other time as the matter may be heard, in the courtroom of the Honorable Richard Seeborg, Courtroom 3, 17th Floor, located at 450 Golden Gate Avenue, San Francisco, California 94102, Proposed Intervenors Weitz & Luxenberg, P.C. and the Miller Firm LLC will and hereby do move for an order, pursuant to Federal Rule of Civil Procedure 24, the Stipulated Confidentiality and Protective Order entered October 6, 2022 (Dkt. 138), and the Court's inherent authority:

(1)    to permit Proposed Intervenors to intervene in this action for the limited purpose of seeking modification of the Stipulated Confidentiality and Protective Order, and pursuing discovery already developed in this case; and

(2)    to modify the Stipulated Confidentiality and Protective Order.

The Motion is supported by the following memorandum of points and authorities, the accompanying declaration of Robin Greenwald and exhibits thereto, the previous filings and orders in this case, the advocacy of counsel, and such other matters as the Court may consider.

## STATEMENT OF ISSUES TO BE DECIDED

1.    Whether proposed intervenors Weitz & Luxenberg, P.C. and the Miller Firm LLC should be permitted to intervene in this action for the limited purpose of seeking modification of the protective order and pursuing discovery already developed in this case.

2.    Whether the operative protective order in this matter should be modified to permit the use of certain designated materials, subject to reasonable safeguards, in the Roundup MDL and in actions alleging injuries or damages caused by Roundup.

Dated: June 23, 2025

Respectfully submitted,

/s/ Robert J. Quigley
Robert J. Quigley
rquigley@weitzlux.com
Weitz & Luxenberg, P.C.
1880 Century Park East, Suite 700
Los Angeles, CA 90067

Robin Greenwald
(*pro hac vice* anticipated)
rgreenwald@weitzlux.com
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003

/s/ David Dickens
David Dickens
(*pro hac vice* anticipated)
ddickens@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave
Orange, VA 22960

*Counsel for Proposed Intervenors Co-Lead
Counsel in MDL No. 2741*

iii

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...........................................2

    I.  The Roundup MDL and Litigation ..............................................2

    II.  The Securities Litigation Discovery at Issue ..............................4

    III. The Proposed Amendment to the Protective Order ....................5

ARGUMENT .......................................................................................................7

    I.  Motion to Intervene........................................................................7

        A.  Legal Standard. ......................................................................7

        B.  Analysis...................................................................................7

            1.  Jurisdiction Is Proper Because the Court Can Modify Its Own Protective Order. ................................................7

            2.  Intervention Is Timely Following the Recent Preliminary Approval Motion.......................................8

            3.  Proposed Intervenors Raise Common Questions of Law or Fact....9

    II.  Motion to Modify Protective Order .............................................11

        A.  Legal Standard. ....................................................................11

        B.  Analysis.................................................................................12

            1.  The Discovery Materials in This Case Are on Their Face Highly Relevant to Roundup Cases. ..............................12

            2.  The Need for the Materials Sought Outweighs Any Countervailing Desire for Secrecy, Which Reasonable Safeguards in the Proposed Order Would Address.......................16

CONCLUSION...................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Monsanto Co.*, ___ S.W.3d ___,
   2025 WL 1497539 (Mo. Ct. App. May 27, 2025) ....................................................................3

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992). ................................................................................ passim

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*,
   712 F.3d 1349 (9th Cir. 2013). ...............................................................................................8

*Callahan v. Brookdale Senior Living Communities, Inc.*,
   42 F. 4th 1013 (9th Cir. 2022) ...............................................................................................7

*Caranci v. Monsanto Co.*,
   2025 PA Super. 101, ___ A.3d ___ (Pa. Super. Ct. May 8, 2025) ...........................................3

*E.E.O.C. v. Nat'l Children's Ctr., Inc.*,
   146 F.3d 1042, 1047 (D.C. Cir. 1998) ...................................................................................10

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
   331 F.3d 1122 (9th Cir. 2003). .............................................................................. passim

*Hardeman v. Monsanto Co.*,
   997 F.3d 941 (9th Cir. 2021) ...............................................................................3, 4, 14, 15

*Hernandez v. Cnty. of Monterey*,
   No. 13-CV-02354-BLF, 2021 WL 2166211 (N.D. Cal. May 27, 2021) .................................17

*Johnson v. Monsanto Co.*,
   No. CGC-16-550128 (Cal. Super. Ct.), *aff'd in relevant part*, 52 Cal. App. 5th 434 (2020) ....4

*Optronics Techs., Inc. v. Ningbo Sunny Elec. Co.*,
   No. 16-cv-06370-EJD (VKD), 2021 WL 2645804 (N.D. Cal. June 28, 2021) .......................17

*Pansy v. Borough of Stroudsburg*,
   23 F. 3d 772 (3d Cir. 1994)...................................................................................................10

*Pilliod v. Monsanto Co.*,
   282 Cal. Rpt. 3d 679 (Cal. Ct. App. 2021) .........................................................................3, 4

*Pilliod v. Monsanto Co.*,
   67 Cal. App. 5th 591 (2021) .................................................................................................15

v

*Pub. Citizen v. Liggett Grp., Inc.*,
  858 F.2d 775 (1st Cir. 1988)........................................................................................7

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.--N. Dist. (San Jose)*,
  187 F. 3d 1096 (9th Cir. 1999) ..................................................................................10

*Sherwin-Williams Co. v. JB Collision Servs., Inc.*,
  No. 13:CV-1946-LAB (WVG), 2017 WL 6027005 (S.D. Cal. Dec. 5, 2017) ........................17

*United Nuclear Corp. v. Cranford Ins. Co.*,
  905 F.2d 1424 (10th Cir. 1990) ..............................................................................10, 16

*W. Watersheds Project v. Haaland*,
  22 F. 4th 828 (9th Cir. 2022) ...................................................................................8, 9

**Rules**

Fed. R. Civ. P. 26(b)(1)................................................................................................14

Federal Rule of Civil Procedure 24(b) .......................................................................7, 11

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This securities case concerns what Bayer knew, investigated, said, and did not say to investors about the risk that when Bayer acquired Monsanto, it was taking on "significant legal liability related to Roundup." Order Denying Mot. to Dismiss, Dkt. 90, at 12. Monsanto faced this liability because tens of thousands of people, who developed non-Hodgkin's lymphoma after using Roundup, brought lawsuits that sought to hold the company accountable for selling them a defective and dangerous product that Monsanto falsely assured them was safe. Many of those lawsuits are ongoing, both within the Roundup multidistrict litigation pending before Judge Chhabria, MDL No. 2741, and in state court.

Proposed Intervenors are the co-lead counsel appointed by the MDL Court to coordinate and oversee plaintiffs' activities in that action. Greenwald Decl. at ¶ 1. Proposed Intervenors also represent hundreds of plaintiffs in ongoing Roundup cases in state court, and have represented thousands more plaintiffs in Roundup cases that have settled. *Id.*

The unopposed motion for preliminary class action settlement approval recently filed in this matter and its supporting papers (Dkt. 253) reveal that discovery in this litigation has yielded materials that on their face are both new and relevant to the Roundup litigation. Bayer, an overseas entity, did not participate in the MDL and has largely evaded discovery in Roundup litigation, and Monsanto has objected to and refused to comply with requests for Bayer-related documents. Greenwald Decl. at ¶ 8. The due diligence that Bayer conducted when it acquired Monsanto and what it learned during and after the acquisition bear on the knowledge and culpability of Monsanto – and, potentially, Bayer – at issue in the Roundup litigation that Proposed Intervenors prosecute behalf of their clients.

Ninth Circuit precedent is clear that where, as here, discovery material produced under a protective order is highly relevant to claims in other proceedings, it is not only appropriate but "strongly favor[ed]" to modify the protective order so that litigants in those proceedings may access and use that discovery material. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122,

1131 (9th Cir. 2003). Ninth Circuit precedent is similarly clear that a nonparty seeking to modify a protective order to pursue discovery may properly intervene to seek this relief under Rule 24(b). *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992).

Proposed Intervenors respectfully request that the Court permit them to intervene, and that it modify the protective order so that the newly revealed discovery materials from this action that are relevant to Roundup cases may be used in those cases, subject to reasonable safeguards.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The Roundup MDL and Litigation

In October 2016, the Judicial Panel on Multidistrict Litigation transferred to the Northern District of California the first cases in MDL No. 2741, which "relat[ed] to the allegedly carcinogenic qualities of the glyphosate-based herbicide Roundup." Greenwald Decl., Ex. A. In December 2016, Judge Chhabria appointed as MDL co-lead counsel attorneys from Weitz & Luxenberg, The Miller Firm, and a third firm that resigned from leadership earlier this year. Greenwald Decl., Ex. B.[1] The Court "vest[ed] co-lead counsel with the responsibility for coordinating and overseeing MDL activities for the plaintiffs," including the authority and duty to "[c]oordinate and conduct discovery on behalf of the plaintiffs," and to "coordinate the work of all plaintiffs' counsel, and perform such other duties as the co-lead counsel deem necessary, in order to advance the litigation[.]" Greenwald Decl., Ex. B at 1–3.

In September 2017, the MDL Court entered what remains the operative protective order in that case (the "MDL Protective Order"). Greenwald Decl., Ex. C. Among other things, the MDL Protective Order provides that "Confidential Material shall be used (if otherwise relevant and admissible) solely for the litigation of this action, including any appeals, ***and*** for any other action brought by or on behalf of a former user of Monsanto glyphosate-containing products alleging injuries or other damages therefrom[.]" Greenwald Decl., Ex. C at ¶ 11 (emphasis

---

[1] Robin Greenwald of Weitz & Luxenberg was appointed as co-lead counsel at this time and continues to serve in this role. The Court appointed Michael Miller of the Miller Firm as co-lead counsel, and substituted David Dickens in this role after Mr. Miller unexpectedly passed away. Greenwald Decl. at ¶ 5.

added). This provision, to which Monsanto stipulated and agreed,[2] has remained in force and has facilitated the use of MDL discovery materials in thousands of Roundup personal injury actions in state court.

Roundup litigation has been hard fought over many years in the federal MDL and in state court. Beginning in the MDL, Roundup plaintiffs have developed strong general causation evidence that glyphosate and formulated Roundup cause non-Hodgkin's lymphoma. Document discovery in the early Roundup cases also revealed internal Monsanto documents showing that, over many decades, Monsanto knew that glyphosate caused or could potentially cause cancer, falsified and covered up science, and knowingly hid the truth from regulators and the public. Bayer did not produce discovery in the consolidated MDL proceedings, and it has largely avoided being named or participating in discovery in non-MDL cases. Greenwald Decl. at ¶ 8.

Juries around the country have found that Monsanto caused people to develop non-Hodgkin's lymphoma, and that its conduct warranted punitive damages. And numerous trial and appellate courts have upheld these verdicts.[3] Despite these results, Monsanto and Bayer have continued to deny liability, and many Roundup cases remain pending, primarily in state court – tens of thousands of cases, according to Bayer.[4] Fact discovery is ongoing or has not even yet started in many of these cases. And new cases continue to be filed as more former Roundup users continue to develop non-Hodgkin's lymphoma.

---

[2] Monsanto stipulated to this provision in the initial version of the MDL Protective Order, Case No. 3:16-md-02741-VC, Dkt. 59 (N.D. Cal. Dec. 5, 2016), and did not seek its modification when the MDL Protective Order was amended into its current, operative form. *Id.*, Dkt. 485, 485-1 (N.D. Cal. Aug. 31, 2017).

[3] *Hardeman v. Monsanto Co.*, 997 F.3d 941, 971–72 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2834 (2022) (upholding *Hardeman* verdict discussed in ¶¶ 151–161 of operative Second Amended Complaint in this action); *Pilliod v. Monsanto Co.*, 282 Cal. Rpt. 3d 679 (Cal. Ct. App. 2021) (affirming *Pilliod* verdict discussed in ¶¶ 178–185 of operative Second Amended Complaint); *see also*, *e.g.*, *Anderson v. Monsanto Co.*, ___ S.W.3d ___, 2025 WL 1497539 (Mo. Ct. App. May 27, 2025) (affirming recent jury verdict); *Caranci v. Monsanto Co.*, 2025 PA Super. 101, ___ A.3d ___ (Pa. Super. Ct. May 8, 2025) (affirming recent jury verdict).

[4] Bayer Global, *Managing the Roundup Litigation*, https://www.bayer.com/en/managing-the-roundup-litigation (last visited June 19, 2025).

3

## II.   The Securities Litigation Discovery at Issue

The operative Second Amended Complaint in this case was filed in December 2021. Dkt. 107. It describes at length scientific and documentary evidence that arose in the Roundup MDL, as well as early jury verdicts holding Monsanto liable in the *Johnson*,[5] *Hardeman*, and *Pilliod* cases. *Id*. §§ IV.C.2, IV.G, IV.H.[6] The Court held that Plaintiffs could move forward on claims that Bayer had made misleading statements and omissions to investors "concerning Bayer's due diligence efforts prior to the Monsanto acquisition," relating specifically to "Monsanto's litigation risks, and [that Bayer] had reviewed non-public information to inform that review." Dkt. 90 at 5–6. The Court did not permit Plaintiffs to move forward with securities claims concerning Monsanto's science-based trial defenses in the Roundup litigation. Dkt. 122. In May 2023, the Court certified a class over Bayer's objection. Dkt. 175.

On April 23, 2025, Plaintiffs filed an unopposed motion for preliminary approval of class action settlement and supporting documents. Dkt. 253. One of these documents was a Stipulation and Agreement of Settlement jointly executed by the Plaintiffs and Defendants in this action, which describes the discovery that was conducted. Dkt. 253-2 at ¶¶ R–CC. This discovery included:

- "60 requests for documents related to Bayer's acquisition of Monsanto, due diligence, and litigation risks associated with Monsanto's Roundup product," which "encompassed internal communications, board minutes, advisory reports, acquisition agreements, financial and reputational risk assessments, and documents on Bayer's . . . investor communications," *id*. at ¶ T;

- Interrogatories seeking "information on Bayer's review of documents concerning glyphosate and Roundup during due diligence for the Monsanto acquisition," *id*. at ¶ U;

---

[5] *Johnson v. Monsanto Co.*, No. CGC-16-550128 (Cal. Super. Ct.), *aff'd in relevant part*, 52 Cal App. 5th 434 (2020).

[6] Proposed Intervenors do not necessarily adopt the operative complaint's factual characterizations in all respects. They refer to the operative complaint for purposes of this general background discussion because the Court has already carefully considered it, and because it is notable in itself that the operative complaint devotes dozens of paragraphs to describing the Roundup litigation.

4

- The Court-ordered production, over Bayer's objection, of "certain due diligence documents identified in [Defendants'] interrogatory responses," *id*. ¶ W, which related to Bayer's defense that "Plaintiffs' claims are barred, in whole or in part, because Defendants relied in good faith on the representations, reports, expert opinions, and advice of others whom Defendants believed to be reliable and competent in the matters presented," *see* Dkt. 199 at 2;

- The depositions of "eleven fact witnesses, including Bayer's current and former senior executives, board members, and general counsels," Dkt. 253-2 at ¶ X;

- The translation pursuant to the parties' stipulation of certain German-language documents and testimony, *id*. at ¶ Z; and

- Several expert reports and depositions. *Id*. at ¶¶ AA–CC.

On May 9, 2025, after reviewing these submissions, Proposed Intervenors emailed counsel for the parties to ask whether they would support, oppose, or take no position on their requests to intervene in this action and seek modification of the protective order, and enclosed for Bayer's review and comment a draft stipulation and proposed amendment to the protective order to this effect. Greenwald Decl. at ¶ 11. On May 16, 2025, defense counsel informed Proposed Intervenors that Bayer would oppose each of these requests. *Id*. at ¶ 12.[7] After further email correspondence, the parties met and conferred on June 6, 2025. *Id*. at ¶ 13. Proposed Intervenors' further efforts to resolve this matter without Court intervention were unsuccessful, necessitating this Motion.

### III.   The Proposed Amendment to the Protective Order

Proposed Intervenors respectfully request that the Protective Order in this matter be modified so that discovery materials designated as Protected Material in this action may be used in Roundup litigation, subject to reasonable safeguards. To this end, Proposed Intervenors submit for the Court's consideration a Proposed Order that would append to the Protective Order an Addendum intended to further this goal. This would not rewrite the Protective Order at scale,

---

[7] Plaintiffs' counsel informed Proposed Intervenors that their clients took no position on these requests. Greenwald Decl. at ¶ 12.

5

but rather would specify procedures for Roundup litigants to efficiently and securely use discovery materials from this case to prosecute, defend, or settle Roundup cases.

To summarize, the Proposed Order would define the types of "Glyphosate Injury Actions" – or Roundup cases – in which Protected Material from this action can be used, and would require parties to those cases to agree to be bound by the relevant terms of the Protective Order in this case to make use of such Protected Material. The "Glyphosate Injury Action" definition would encompass: (1) the Roundup MDL; (2) cases that have been or will be originally filed in, removed to, or transferred to the Roundup MDL; (3) actions brought in state or federal court by or on behalf of a former user of Monsanto glyphosate-containing products, such as Roundup, alleging injuries or other damages therefrom; and (4) certain actions, claims, causes of action, or adversary proceedings brought by former Roundup users in connection with a possible bankruptcy, insolvency, or similar proceeding of Monsanto or its affiliates. Proposed Order, Ex. A at § 15.2. The third of these categories, concerning actions brought in state or federal court by former Roundup users, is modeled on the provision in the Roundup MDL Protective Order that has successfully facilitated the use of MDL discovery materials over many years in many non-MDL cases. The fourth of these categories, concerning certain bankruptcy or insolvency-related claims, is included strictly as a precaution due to recent news reporting that Bayer is considering placing Monsanto in bankruptcy.[8] In order to use Protected Material in these actions, litigants and certain related individuals (such as attorneys and expert witnesses) would need to agree to the pertinent Protective Order terms governing the treatment of that material. Proposed Order, Ex. A at §§ 15.3–15.7.

In short, this case appears to have yielded relevant and potentially significant discovery materials that have not yet seen the light of day in any Roundup litigation. Despite the many years these cases have been ongoing, plaintiffs whose claims have not yet been adjudicated are entitled to these materials. The Proposed Order, and this Motion, aim to set forth a fair and

---

[8] Reuters, *Bayer seeks Roundup settlement, explores Monsanto bankruptcy, WSJ reports* (May 15, 2025), https://www.reuters.com/business/healthcare-pharmaceuticals/bayer-seeks-roundup-settlement-explores-monsanto-bankruptcy-wsj-reports-2025-05-15/.

6

efficient procedure based upon the protective orders entered in this litigation and the Roundup MDL so that Roundup litigants may use these materials to prosecute their cases.

## ARGUMENT

### I.      Motion to Intervene

#### A.      Legal Standard.

The Ninth Circuit has recognized that there is "wide approval of Rule 24(b) intervention as a method for seeking to modify a protective order." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). Federal Rule of Civil Procedure 24(b) provides that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." In order to intervene in a case, a movant must show that three requirements are met: "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022) (citation omitted).

#### B.      Analysis.

##### 1.      Jurisdiction Is Proper Because the Court Can Modify Its Own Protective Order.

A proposed intervenor who seeks to modify a protective order need not show an independent jurisdictional basis. This is because the proposed intervenor "ask[s] the court only to exercise that power which it already has, *i.e.*, the power to modify the protective order. For that reason, no independent jurisdictional basis is needed." *Beckman Indus., Inc.*, 966 F.2d at 473; *see also Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 782 (1st Cir. 1988) (stating that a protective order is a form of "injunction entered by consent of the parties," and "is always modifiable.") (citations omitted).

Here, the Protective Order and the Court's inherent authority provide the necessary grounds for jurisdiction. Indeed, the Protective Order provides expressly that "[n]othing in this Order abridges the right of any person to seek its modification by the Court in the future." Dkt.

7

138 at 25 § 12.1. The Court has jurisdiction to provide Proposed Intervenors' requested relief by modifying the Protective Order.

### 2. Intervention Is Timely Following the Recent Preliminary Approval Motion.

Intervention is timely under the "three primary factors" that courts assess to determine timeliness: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 836 (9th Cir. 2022) (citation omitted).

*First*, Proposed Intervenors seek to intervene at an appropriate stage of the proceeding. The parties have submitted for the Court's approval a stipulated settlement agreement after litigating the case and conducting discovery. Dkts. 253, 253-2. This is not a case where intervention would hinder ongoing litigation in the thick of discovery. Conversely, if Proposed Intervenors were required to wait until the administration of the requested settlement was completed, this would not only prejudice the Roundup plaintiffs whose interests Proposed Intervenors represent by denying them relevant discovery for months or years, but it would potentially invite the argument that Proposed Intervenors had waited too long to seek relief.

*Second*, the proposed intervention would not meaningfully prejudice the parties to the existing litigation. The existing parties have agreed to settle their dispute pending Court approval and the conducting of settlement administration, and so the requested intervention would have "little effect on the original parties' underlying rights." *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1354 (9th Cir. 2013). While Bayer might prefer that the discovery it has produced in this case never come to light in Roundup cases, this is not enough to establish prejudice. Bayer cannot show, for example, that it relied on the Protective Order as a condition of agreeing to settle this action, *see id*. at 1354, and in any event, such reliance would have been unreasonable given the Court's ongoing jurisdiction to modify the Protective Order. Where, as here, the parties stipulated to a blanket protective order, "[r]eliance [of the producing party] will

be less with a blanket order, because it is by nature overinclusive." *Beckman Indus., Inc.*, 966 F.2d at 476.

Further, "legitimate interests in privacy can be protected by putting the intervenors under the same restrictions as those contained in the original protective order[,]" including in actions brought in state court. *Id*. at 475.[9] Consistent with this guidance, Proposed Intervenors' proposed order modifying the Protective Order would require Proposed Intervenors to agree to be bound by the terms of the Protective Order as a condition of gaining access to any putatively protected materials. Accordingly, the parties would not be prejudiced by intervention.

*Third*, Proposed Intervenors have been diligent in seeking intervention at an appropriate time and have not engaged in undue delay. Proposed Intervenors first learned of the new discovery materials through the preliminary settlement approval motion papers filed on April 23, 2025. Greenwald Decl. at ¶ 11. After investigating further, they reached out to the parties in this matter on May 9, and sought their consent to intervention and modification of the protective order without the need for disputed motion practice. *Id*. When it became clear that a resolution without Court intervention would not be possible, this Motion promptly followed. The Motion is timely, which favors granting intervention. *W. Watersheds Project*, 22 F.4th at 836.

### 3.   Proposed Intervenors Raise Common Questions of Law or Fact.

This case concerns the truthfulness of Bayer's representations regarding its due diligence into Monsanto's "significant legal liability related to Roundup." Order Denying Mot. to Dismiss, Dkt. 90 at 12. Proposed Intervenors assert the interests of people who have been harmed by Roundup, and whose claims against Monsanto expose the company to legal liability. The relief that Proposed Intervenors seek – modification of the protective order so that evidence developed in this case may be used in Roundup litigation – raises the "common question[s] of law or fact" necessary to warrant permissive intervention under Rule 24(b).

---

[9] Of note, Monsanto Company was one of the parties that sought intervention in *Beckman Industries* and contended that its "agree[ment] to use the information in accordance with protective orders in the state actions" provided adequate protection. 966 F.2d at 471, 475.

9

A "strong nexus of fact or law [is] not required where [an] intervenor merely seeks to challenge a protective order." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.--N. Dist. (San Jose)*, 187 F.3d 1096, 1100 (9th Cir. 1999) (citing *Beckman Indus., Inc.*, 966 F.2d at 473–74). The Ninth Circuit and numerous Courts of Appeal have afforded the common question requirement "considerable breadth when the movant seeks to intervene for the collateral purpose of challenging a confidentiality order." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1047 (D.C. Cir. 1998) (collecting cases). Indeed, the Third Circuit has held that a challenge to a confidentiality order entered in the main action ***necessarily*** raises a "'question of law or fact in common' with the main action." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994). All that is needed to make the necessary showing is a "sufficient common issue between the underlying suit and the intervenors' suits." *Beckman Indus., Inc.*, 966 F.2d at 473 (citing *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990)).

Here, Proposed Intervenors easily satisfy this flexible requirement. What Bayer knew, investigated, said, and did not say to investors about Monsanto's potential legal liability related to Roundup raises numerous common legal and factual issues with the underlying Roundup litigation. The Court's order denying Bayer's motion to dismiss recognized that Plaintiffs' due diligence claim is closely intertwined with the outcomes in Roundup cases, which the Court held constituted "properly pled corrective disclosures":

> Plaintiffs allege not just that Bayer misled investors as to the links between cancer and Roundup, but also misled investors as to the litigation risks related to Monsanto. Further, a verdict implies that a link between Roundup and cancer was sufficiently credible to find in favor of the plaintiff, even if the jury did not make a specific factual finding. Adverse litigation decisions disclosed to investors that Monsanto faced a serious risk in litigation.

Order Denying Mot. to Dismiss, Dkt. 90, at 12.

What Monsanto shared with Bayer during due diligence about its legal exposure in Roundup cases has a clear and obvious connection to the merits of those cases, and to Monsanto's and Bayer's knowledge and culpability. *Id*. at 5 (finding adequately pled misleading statements and omissions regarding due diligence, including Bayer CEO Baumann's statement

that "the Monsanto people went out of their way to provide us with transparency, data and visibility to the most critical questions we had."). What Bayer might have learned about Monsanto's Roundup exposure from other sources, and what it told and did not tell investors, likewise bears on the merits of the cases and Monsanto's and Bayer's knowledge and culpability. *See id*. at 5–6 (finding adequately pleaded misstatements regarding whether "Bayer had assessed Monsanto's litigation risks, and had reviewed non-public information to inform that review.").

Proposed Intervenors show "sufficient common issue[s]" between this case and the Roundup litigation to warrant intervention. *Beckman Indus., Inc.*, 966 F.2d at 473. Proposed Intervenors satisfy the requirements for intervention under Rule 24(b), and their motion to intervene should be granted.

## II.  Motion to Modify Protective Order

### A.  Legal Standard.

"Ninth Circuit precedent strongly favors disclosure to meet the needs of parties in pending litigation." *Beckman Indus., Inc.*, 966 F.2d at 475. When a party to related, or collateral, litigation requests modification of a protective order to use the relevant material in that litigation subject to "reasonable restrictions," the modification request "should generally be granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003) (citations omitted). "Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Id*. at 1131.

The *Foltz* decision sets forth a framework for district courts evaluating protective order modification requests of this kind. First, the party seeking modification must make an initial showing of "the relevance of the protected discovery to the collateral proceedings and its general discoverability therein[,]" such that "modifying the order will eliminate the potential for duplicative discovery." *Id*. at 1132–33. At this stage, the protective order Court makes only a "rough estimate of relevance," and it need not decide "disputes over the ultimate discoverability of specific materials covered by the protective order[,]" which are left to be resolved by the court overseeing the related litigation. *Id*. at 1133.

11

Second, the court must "weigh the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Id*. A party opposing modification on the basis of a reliance interest of this kind bears the burden of "making a 'particular showing' of good cause" and establishing "specific prejudice or harm now." *Id*. at 1131 (citation omitted). Any reliance interest "will be less with a blanket [protective] order, because it is by nature overinclusive[,]" *id*. at 1133, and therefore "[a]ny legitimate interest . . . in continued secrecy as against the public at large can be accommodated by placing [the collateral litigants] under the same restrictions on use and disclosure contained in the original protective order." *Id*. (alterations in original) (citations omitted). Thus, where the discovery materials sought are "relevant to the collateral suit" and any interest in confidentiality may be protected by placing intervenors "under the same use and disclosure restrictions contained in the original protective order[,]" modification of the protective order should be granted.  *Id*. at 1134.

**B.      Analysis.**

### 1.  The Discovery Materials in This Case Are on Their Face Highly Relevant to Roundup Cases.

Proposed Intervenors more than meet their burden to show that materials currently covered by the Protective Order in this matter are "sufficiently relevant to" Roundup litigation "that a substantial amount of duplicative discovery will be avoided by modifying the protective order." *Foltz*, 331 F.3d at 1132. For many of the same reasons that inform the intervention analysis above, this securities case and the Roundup cases raise an intertwined set of factual and legal issues.[10] Several categories of evidence described in connection with the Stipulation and Agreement of Settlement, Dkt. 253-2, appear likely to be highly relevant to Roundup cases, including:

---

[10] This discussion overlaps with that in Section I.B.3 regarding common questions of law and fact bearing on permissive intervention. Each of these discussions incorporates by this reference the analysis and argument in the other.

12

- Materials, such as "internal communications, board minutes, advisory reports, acquisition agreements, financial and reputational risk assessments, and documents on Bayer's . . . investor communications" produced in response to "requests for documents related to Bayer's acquisition of Monsanto, due diligence, and litigation risks associated with Monsanto's Roundup product" (Dkt. 253-2 at ¶ T);

- Responses served in response to interrogatories seeking "information on Bayer's review of documents concerning glyphosate and Roundup during due diligence for the Monsanto acquisition" (*id.* at ¶ U);

- Documents "regarding the analysis of the Roundup [l]itigation during due diligence" that Bayer believed related to its defense that it "relied in good faith on the representations, reports, expert opinions, and advice of others whom Defendants believed to be reliable and competent" when conducting due diligence, and which Bayer was ordered by Magistrate Judge Kim to produce (*id.* at ¶ W; Dkt. 199 at 2–3);

- The depositions of "eleven fact witnesses, including Bayer's current and former senior executives, board members, and general counsels" (Dkt. 253-2 at ¶ X, and any exhibits thereto); and

- Any expert materials that may have considered or analyzed the above. *Id.* at ¶¶ AA–CC.

While Proposed Intervenors cannot know with precision what these documents contain when they have not had the opportunity to view them, these descriptions appear quite unlike documents that have previously been produced in the Roundup MDL or Roundup litigation with which Proposed Intervenors are familiar. Bayer did not participate in the MDL and has largely evaded discovery in Roundup litigation, and Monsanto has objected to numerous Bayer-related document requests and refused to produce responsive documents. Greenwald Decl. at ¶¶ 7–8. Further, when invited to identify any overlap between the materials produced in this action and those produced in the Roundup MDL or other Roundup litigation, defense counsel declined or was unable to do so. Greenwald Decl. at ¶ 9. Modifying the protective order to permit these

13

documents to be used in Roundup cases would therefore "advance[] the interests of judicial economy by avoiding the wasteful duplication of discovery." *Foltz*, 331 F.3d at 1131.

These materials also appear facially relevant to claims at issue in Roundup litigation, and discoverable in that litigation. *See id.* at 1132 (requiring a threshold showing of "relevance" and "general discoverability" to modify a protective order).[11] Thus, documents and testimony bearing on Bayer's due diligence into Monsanto and both company's assessments of the potential litigation exposure in Roundup litigation, as well as public statements and omissions and the knowledge with which these statements or omissions were made, are probative of factual and legal issues material to these cases. These issues include what Monsanto and Bayer knew whether Monsanto (and after the acquisition, Bayer) complied with its duties and responsibilities to consumers under various theories of liability, and the availability of punitive damages and other relief.

For example, many Roundup cases assert claims for failure to warn, defective design, and negligence, among other causes of action. Greenwald Decl. at ¶ 10. As to failure to warn claims, Monsanto and Bayer's knowledge, motives, and assessment of the exposure associated with potential Roundup litigation before, during, and after merger due diligence bears directly on whether they knew of risks about which they were obligated to warn plaintiffs in Roundup cases. *See Hardeman v. Monsanto Co.*, 997 F.3d 941, 969–70 (9th Cir. 2021) (finding that, under California law, the plaintiff was "required to prove that the link between Roundup and cancer was 'known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution[,]'" and rejecting Monsanto's argument that it was entitled to judgment as a matter of law because it "did not know and could not have known that glyphosate caused cancer in 2012"), *cert. denied*, 142 S. Ct. 2834 (2022). For similar reasons, Monsanto and Bayer's knowledge, motives, and assessment of the exposure associated with potential Roundup litigation directly inform their

---

[11] *See generally* Fed. R. Civ. P. 26(b)(1) (describing the scope of discovery in federal litigation, which, similar to state litigation, does not require information "within [the] scope of discovery [to] be admissible in evidence to be discoverable").

14

potential liability for defective design and negligence. *See Pilliod v. Monsanto Co.*, 67 Cal. App. 5th 591, 619 & n.14 (2021) (finding that "the question [of] whether Monsanto knew or should have known that Roundup or glyphosate were carcinogenic" is probative of whether they are defectively designed); *Hardeman*, 997 F.3d 955 ("California common law requires a manufacturer to warn . . . [of] those risks 'a reasonably prudent manufacturer would have known and warned about' (in negligence).").

Additionally, many Roundup cases seek punitive damages. Greenwald Decl. at ¶ 10. With some variations across jurisdictions, this commonly requires or can be supported by a showing that "Monsanto consciously disregarded Roundup's potential harm." *Hardeman*, 997 F.3d at 971–72 (9th Cir. 2021) (applying California law).[12] Once again, securities litigation discovery involving what Monsanto and Bayer knew before, during, and after the acquisition, and what information was exchanged between them and communicated or not communicated to others, bears directly on whether a finder of fact in Roundup litigation would conclude that their behavior was unconscionable, malicious, and/or in flagrant disregard of Roundup plaintiffs' health and safety, such that punitive damages are warranted in those cases.

While it is true that different Roundup cases have been filed and resolved over many years, apparently without obtaining these materials, that does not defeat their facial relevance. Many plaintiffs harmed by Roundup and glyphosate-containing products have not yet had their day in court. It would neither be fair nor warranted to curtail the discovery to which these plaintiffs are entitled in their own cases based on the proceedings in other cases to which they were not parties.

The requested discovery is relevant and novel to Roundup litigation, and modification of the protective order to facilitate its use in Roundup litigation would promote judicial economy and reduce wasteful duplication. *Foltz*, 331 F.3d at 1131–32. Proposed Intervenors respectfully

---

[12] *See also Hardeman*, 997 F.3d at 971 ("Punitive damages are permissible under California law when there is 'clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice.' Cal. Civ. Code § 3294(a). As relevant here, 'malice' means 'despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.' § 3294(c)(1).").

request that the Protective Order be modified so that they and their clients may access and use designated materials in Roundup litigation.[13]

### 2. The Need for the Materials Sought Outweighs Any Countervailing Desire for Secrecy, Which Reasonable Safeguards in the Proposed Order Would Address.

Any claimed interest of Bayer or its co-defendants in refusing to modify the Protective Order is outweighed by Proposed Intervenors' need for the discovery materials to prosecute their cases.[14] As *Foltz* recognizes, "[r]eliance will be less with a blanket [protective] order, because it is by nature overinclusive," since Bayer has been able to shield from public scrutiny documents and testimony without "mak[ing] the 'good cause' showing required by Rule 26(c) with respect to any particular document." *Foltz*, 331 F.3d at 1133.

Any concerns that Bayer may raise are addressed by the willingness of Proposed Intervenors to be bound to the "same restrictions on use and disclosure contained in the original protective order" as the parties to this litigation. *Foltz*, 331 F.3d at 1133 (recognizing that adopting these restrictions is sufficient to accommodate "[a]ny legitimate interest … in continued secrecy") (quoting *United Nuclear*, 905 F.2d at 1428). Here, as a condition of using putatively protected material in Roundup litigation, the proposed protective order modification would require parties, attorneys, and expert witnesses, among others, to agree to the pertinent Protective Order terms governing the treatment of that material. Proposed Order at §§ 15.3–15.7.

Other courts evaluating protective order modification requests of this kind have similarly concluded that the receiving party's agreement to the terms of the existing protective order in a

---

[13] Proposed Intervenors interpret *Foltz* to favor a general modification of the protective order once this threshold showing has been made, rather than an item-by-item modification limited to particular pieces of evidence. This approach would be consistent with the Ninth Circuit's statement that, "If **any** properly protected *Foltz* discovery is relevant to the collateral suits, the district court should have modified the protective order in the interest of avoiding duplicative discovery; the courts overseeing the collateral litigation can settle any disputes as to whether particular documents are discoverable in the collateral litigation." *Foltz*, 331 F.3d at 1134 (emphasis added).

[14] Proposed Intervenors limit their request to discovery materials produced by Bayer and its co-defendants, rather than Plaintiffs or third parties for whom the analysis of pertinent reliance interests may be different. Proposed Order at § 15.4.

16

litigation is sufficient to address any reliance concerns raised by the producing party. *See, e.g.*, *Sherwin-Williams Co. v. JB Collision Servs., Inc.*, No. 13:CV-1946-LAB(WVG), 2017 WL 6027005, at *5 (S.D. Cal. Dec. 5, 2017) ("[The producing party] did not make a particularized showing of good cause with respect to any individual document produced under the blanket Protective Order, therefore any argument of reliance on the Protective Order is an insufficient reason not to modify it. . . . Any information [the producing party] wants protected can be protected by placing [the intervenor] under the same use and disclosure restrictions contained in the Protective Order."); *Hernandez v. Cnty. of Monterey*, No. 13-CV-02354-BLF, 2021 WL 2166211, at *4 (N.D. Cal. May 27, 2021) (finding that "any interest Defendants may have in non-disclosure is outweighed by the policy of avoiding duplicative discovery" and noting that the intervenors "will be subject to the restrictions of the [applicable] Protective Order."); *Optronics Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 16-cv-06370-EJD (VKD), 2021 WL 2645804, Order Provisionally Granting Celestron and Indirect Purchaser Plaintiffs' Motion to Modify Protective Order, at *3–4 (N.D. Cal. June 28, 2021), available at https://www.govinfo.gov/content/pkg/USCOURTS-cand-5_16-cv-06370/pdf/USCOURTS-cand-5_16-cv-06370-49.pdf (modifying protective order and finding any reliance interests addressed by treating subject documents "in accordance with the confidentiality designations with which they were produced"), *as finalized* (N.D. Cal. Aug. 10, 2021).

During the parties' meet-and-confer discussion of June 6, 2025, Bayer's counsel raised two additional concerns regarding the proposed modification of the Protective Order. First, that Proposed Intervenors' request is more intrusive on Bayer's reliance interests than modification requests at issue in other cases because it would permit the use of materials produced in this litigation in a number of Roundup cases, rather than another single case. Second, that many materials produced in this case had been designated as "Foreign Confidential Personal Data," which implicates additional sensitivities under the data privacy law of the European Union, and requires additional special treatment under the Protective Order. *See* Protective Order, Dkt. 138 at § 13 ("Provisions Governing Foreign Confidential Personal Data").

Proposed Intervenors disagree that either of these concerns override *Foltz*'s core holding that, subject to "reasonable restrictions on collateral disclosure," "a collateral litigant's request to the issuing court to modify an otherwise proper protective order so that collateral litigants are not precluded from obtaining relevant material should generally be granted," 331 F.3d 1132, or dictate a different result here.

*First*, even if a number of litigants in Roundup cases seek access to the discovery materials from this case, their use of the materials would remain subject to the Protective Order, and would be limited to prosecuting, defending, or attempting to settle Roundup litigation. This is the same safeguard that *Foltz* found adequate to address legitimate reliance or privacy concerns, and its adequacy does not change even if numerous litigants agree to it. Indeed, the MDL Protective Order, to which Monsanto had stipulated, contemplates the use of protected material in numerous individual actions in state and federal court, as do many protective orders in multi-district or mass litigation. Greenwald Decl. at ¶ 6, Greenwald Decl., Ex. C at ¶¶ 11–12 (outlining use of protected materials in actions "brought by or on behalf of a former user of Monsanto glyphosate-containing products alleging injuries or other damages therefrom"). As the company that acquired Monsanto and its litigation risks arising from the Roundup litigation, it is not unreasonable or unduly prejudicial, nor should it be unexpected by Bayer, that it should be subject to a similar requirement here.

*Second*, as to materials designated as "Foreign Confidential Personal Data" in this case, the Protective Order already specifies "restrictions on use and disclosure" to which Roundup litigants could be bound as a condition of using these materials. *See Foltz*, 331 F.3d at 1133. Proposed Intervenors observe that many of the restrictions on handling of these data specified in the Protective Order overlap with the restrictions applicable to ordinary protected materials (*e.g.*, Dkt. 138 at § 7). The provisions specific to Foreign Confidential Personal Data, such as ensuring their security and taking remedial action if they are inadvertently disclosed (*id*. at § 13.2(b), (d)), treating notes and copies that identify Foreign Confidential Personal Data with the same status of confidentiality (*id*. at § 13.2(c), (e)), notifying the producing party of law

18

enforcement requests, or the intent to use these data in court submissions (*id.* at §§ 13.2(j), 13.4), are not dissimilar from obligations that parties and counsel regularly undertake when entering protective orders concerning purely domestic documents and information. Nor do they impose obligations that require specialized expertise in foreign law, or with which parties and counsel acting with due care could not comply.

Because Proposed Intervenors have shown that discovery material in this case is relevant to their claims and they are willing to agree to "reasonable restrictions on collateral disclosure," their request to modify the Protective Order should be granted. *Foltz*, 331 F.3d at 1132.

<u>**CONCLUSION**</u>

For the foregoing reasons, Proposed Intervenors respectfully request that the Court (1) permit them to intervene, and (2) modify the protective order so that parties in Roundup litigation may access relevant discovery material in this case.

Dated: June 23, 2025

Respectfully submitted,

/s/ Robert J. Quigley
Robert J. Quigley
rquigley@weitzlux.com
Weitz & Luxenberg, PC
1880 Century Park East, Suite 700
Los Angeles, CA 90067

Robin Greenwald
(*pro hac vice* anticipated)
rgreenwald@weitzlux.com
Weitz & Luxenberg, PC
700 Broadway
New York, NY 10003

/s/ David Dickens
David Dickens
(*pro hac vice* anticipated)
ddickens@millerfirmllc.com
The Miller Firm LLC
108 Railroad Ave
Orange, VA 22960

*Counsel for Proposed Intervenors Co-Lead Counsel in MDL No. 2741*

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2025, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system, which sent notice of the filing to all appearing parties of record.

/s/ Robert J. Quigley
Robert J. Quigley

20

**ATTESTATION OF COUNSEL PURSUANT TO LOCAL RULE 5-1(i)(3)**

I hereby attest, pursuant to Local Rule 5-1(i)(3), that I obtained the concurrence in the filing of this document from the signatory indicated by the conformed signature (/s/) of David Dickens and Robin Greenwald within this electronically filed document and its enclosures.

/s/ Robert J. Quigley
Robert J. Quigley

21