1  Jordan Eth (CA SBN 121617)
2  David J. Wiener (CA SBN 291659)
   **MORRISON & FOERSTER LLP**
3  425 Market Street
   San Francisco, CA 94105
4  Telephone:   (415) 268-7000
   Facsimile:    (415) 268-7522
5  Email: JEth@mofo.com
            DWiener@mofo.com
6
7  *Attorneys for Defendants Bayer Aktiengesellschaft,*
   *Werner Baumann, Werner Wenning, Liam Condon,*
8  *Johannes Dietsch, and Wolfgang Nickl*
9  [Additional Counsel on Signature Page]
10
11              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
                    **SAN FRANCISCO DIVISION**
12
13 SHEET METAL WORKERS' NATIONAL          Case No: 3:20-cv-04737-RS
   PENSION FUND and INTERNATIONAL
   BROTHERHOOD OF TEAMSTERS               CLASS ACTION
14 LOCAL NO. 710 PENSION FUND,
   individually and as Lead Plaintiffs on behalf   **DEFENDANTS' POINTS AND**
15 of all others similarly situated, and   **AUTHORITIES IN OPPOSITION TO**
                                           **PROPOSED INTERVENORS' MOTION**
16 INTERNATIONAL UNION OF                  **TO INTERVENE AND TO MODIFY THE**
   OPERATING ENGINEERS PENSION            **CONFIDENTIALITY AND**
17 FUND OF EASTERN PENNSYLVANIA            **PROTECTIVE ORDER**
   AND DELAWARE, individually and as
18 Named Plaintiff, on behalf of all others   Ctrm:  3 – 17th Floor
   similarly situated,                     Judge:  Richard Seeborg
19
                     Plaintiffs,
20
              vs.
21
22 BAYER AKTIENGESELLSCHAFT, WERNER
   BAUMANN, WERNER WENNING, LIAM
   CONDON, JOHANNES DIETSCH, and
23 WOLFGANG NICKL,
24                   Defendants,
25 WEITZ & LUXENBERG, P.C. and THE MILLER
   FIRM LLC, as Co-Lead Counsel in MDL No.
26 2741 and on behalf of certain clients,
27                   Proposed Intervenors.
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT.......................................................................................... 1

BACKGROUND .................................................................................................................. 2

A.   Bayer agrees to acquire Monsanto after performing diligence on the Roundup
     litigation. ................................................................................................................ 2

B.   Proposed Intervenors are appointed to lead the Roundup MDL and gain intimate
     familiarity with the legal and factual issues in the litigation. ............................... 3

C.   The securities fraud action is filed, and Proposed Intervenors represent to Judge
     Chhabria that "discovery of Bayer and its knowledge of the litigation risks posed by
     the Roundup litigation" is "not relevant to the personal injury cases as against either
     Monsanto or Bayer." ............................................................................................... 4

D.   The parties litigate this action and make detailed public disclosures concerning
     ongoing discovery. ................................................................................................. 5

E.   Proposed Intervenors "first learn" of facts that have been available on the public
     docket for years, wait two months, and then seek intervention to vastly expand
     access to Defendants' confidential records. .......................................................... 7

ARGUMENT ....................................................................................................................... 8

I.    THE COURT SHOULD NOT PERMIT INTERVENTION............................................. 8

      A.   Intervention is not timely. ............................................................................... 9

      B.   Proposed Intervenors have not established common issues of fact that could
           justify intervention. ...................................................................................... 11

II.   THE COURT SHOULD NOT MODIFY THE PROTECTIVE ORDER ...................... 12

      A.   Proposed Intervenors have not shown that modification of the Protective
           Order would avert "a substantial amount of duplicative discovery" in the
           Roundup litigation........................................................................................ 13

      B.   Proposed Intervenors' newfound desire for Bayer's discovery materials does
           not outweigh the prejudice to Defendants.................................................... 16

CONCLUSION .................................................................................................................. 17

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE
AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.:  3:20-CV-04737-RS

i

1

# TABLE OF AUTHORITIES

2

<u>**Cases**</u>                                                                                           <u>**Page(s)**</u>

3
*Aronson* v. *McKesson HBOC, Inc.*,
4
   No. 5:99-cv-20743-RMW, 2005 WL 934331 (N.D. Cal. Mar. 31, 2005) ........................... 15-16

5
*Beckman Indus., Inc.* v. *Int'l Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992). ....................................................................................... 11
6

7
*Bittaker* v. *Woodford*,
   331 F.3d 715 (9th Cir. 2003) ................................................................................ 10-11, 14

8
*Callahan* v. *Brookdale Senior Living Communities, Inc.*,
9
   42 F.4th 1013 (9th Cir. 2022) ................................................................. 8 & n.9, 11

10
*Empire Blue Cross & Blue Shield* v. *Janet Greeson's A Place For Us, Inc.*,
   62 F.3d 1217 (9th Cir. 1995) ....................................................................................... 10
11

12
*Foltz* v. *State Farm Mutual Auto. Ins. Co.*,
   331 F.3d 1122 (9th Cir. 2003) ......................................................................... *passim*

13
*Hernandez* v. *Cnty. of Monterey*,
14
   No. 5:13-cv-02354-BLF, 2021 WL 2166211 (N.D. Cal. May 27, 2021) ....................... 16 n.14

15
*In re: Bard IVC Filters Prods. Liab. Litig.*,
   No. 2:15-md-02641-DGC, 2016 WL 537587 (D. Ariz. Feb. 11, 2016) ................................ 15
16

17
*In re Pac. Pictures Corp.*,
   679 F.3d 1121 (9th Cir. 2012) ........................................................................... 15

18
*In re SRAM Antitrust Litig.*,
19
   No. 4:07-md-01819-CW, 2011 WL 5193479 (N.D. Cal. Nov. 1, 2011) ........................... 16, 17

20
*Jordan* v. *United States*,
   No. 3:15-cv-01199-BEN-NLS, 2017 WL 2230008 (S.D. Cal. May 22, 2017) ................ 13 n.12

21
*Moreno* v. *AutoZone, Inc.*,
22
   No. 3:05-cv-04432-CRB, 2008 WL 1701871 (N.D. Cal. Apr. 10, 2008) ................................ 11

23
*Optronics Techs., Inc.* v. *Ningbo Sunny Elec. Co.*,
   No. 5:16-cv-06370-EJD, 2021 WL 2645804 (N.D. Cal. June 28, 2021) ........................ 16 n.14
24

25
*Quackenbush* v. *American Honda Motor Company, Inc.*,
   No. 3:20-cv-05599-WHA, 2023 WL 8360045 (N.D. Cal. Dec. 1, 2023),
26
   *aff'd*, 2025 WL 1009273 (9th Cir. Apr. 4, 2025) ...................................................... 17

27
*Sherwin-Williams Co.* v. *JB Collision Servs., Inc.*,
   No. 3:13-cv-01946-LAB-WVG, 2017 WL 6027005 (S.D. Cal. Dec. 5, 2017) ................ 16 n.14
28

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE
AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.: 3:20-CV-04737-RS

ii

*Stokes* v. *Life Ins. Co. of N. Am.*,
No. 1:06-cv-00411-BLW, 2009 WL 8397036 (D. Idaho Aug. 31, 2009) .......................... 9 n.10

*Transamerica Computer* v. *IBM*,
573 F.2d 646 (9th Cir.1978) ................................................................................................. 15

*United States* v. *de la Jara*,
973 F.2d 746 (9th Cir. 1992) ............................................................................................... 15

*Universal Ent. Corp.* v. *Aruze Gaming Am., Inc.*,
No. 2:18-cv-00585-RFB-NJK, 2020 WL 2308226 (D. Nev. May 8, 2020)..................... 11 n.11

*U.S. E.E.O.C.* v. *ABM Indus. Inc.*,
No. 1:07-cv-01428-LJO-JLT, 2013 WL 1455510 (E.D. Cal. Apr. 9, 2013) ............................. 9

*W. Watersheds Project v. Haaland*,
22 F.4th 828 (9th Cir. 2022) ............................................................................................ 9, 10

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE
AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.:  3:20-CV-04737-RS

iii

**PRELIMINARY STATEMENT**

Over the past decade, purchasers of Monsanto's popular herbicide Roundup have pursued nearly 200,000 lawsuits against the company, claiming without merit that its active ingredient causes cancer.  Those actions have spawned years of exhaustive discovery, in which Monsanto has produced millions of pages of documents.  The claims have also been tested in dozens of trials, most of which Monsanto has won.  Through that litigation, teams of lawyers have thoroughly examined every conceivable aspect of the dispute, over and again.  Yet at no point did any of those lawyers ask Bayer to produce records of the due diligence that it performed on the Roundup litigation when it agreed to acquire Monsanto back in 2015, because those documents were not pertinent.

Now, despite the comprehensive vetting of the issues in the personal injury litigation, two law firms ("Proposed Intervenors") that have spent the last 9 years steering the Roundup multidistrict litigation (the "Roundup MDL") seek to intervene in this securities fraud action, asserting that Bayer's diligence documents are so "highly relevant" to their clients' claims that the Court should rewrite a heavily negotiated protective order and allow access for all pending and future Roundup cases.  Urging this result, Proposed Intervenors omit one crucial detail — they have previously taken <u>exactly the opposite position</u>.  Specifically, after reviewing the original complaint in this action, Proposed Intervenors represented in a signed filing before the Roundup MDL court that Bayer's documents are <u>irrelevant</u> to the Roundup litigation, explaining that:

> The [Roundup MDL plaintiffs] did not take discovery of Bayer and its knowledge of the litigation risks posed by the Roundup litigation and/or its due diligence about the carcinogenicity of glyphosate and Roundup prior to its purchase of Monsanto.  That inquiry was <u>not relevant</u> to the personal injury cases as against either Monsanto or Bayer.

Ex. C (emphasis added).[1]  This concession alone dooms Proposed Intervenors' motion.  But that is not the only reason that the Court should deny the extreme relief they seek.

*First*, intervention here comes three years late.  Proposed Intervenors have watched for years as discovery in this action unfolded on the public docket, yet offer no credible excuse for

---

[1] "Ex. __" refers to the exhibits to the Declaration of Noah B. Yavitz, submitted herewith.

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE
AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.:  3:20-CV-04737-RS

1

1    why they waited until the eve of settlement in this matter to announce themselves. The burden of

2    this delay falls squarely on Defendants, which have produced highly confidential documents

3    under the expectation that access would be restricted to Plaintiffs and opposing counsel in this

4    action, not legions of litigants in jurisdictions around the country. *See* Point I.A, *infra*.

5        *Second*, Proposed Intervenors lack standing to intervene, because they are appearing in

6    their corporate capacities as law firms, not as counsel representing parties that would purportedly

7    benefit from access. Thus, even if there were a common issue between this securities fraud

8    lawsuit and the Roundup product-liability litigation — there is not — Proposed Intervenors would

9    not be the proper parties to pursue it here. *See* Point I.B, *infra*.

10        *Third*, Proposed Intervenors have failed to demonstrate that broad access to Bayer's

11    documents will avert duplicative discovery in the Roundup litigation, which has been proceeding

12    for a decade without need for those records. And this failure of proof is particularly acute with

13    respect to a core set of privileged diligence materials that Bayer was compelled to produce in this

14    litigation, but that remain privileged as against the Roundup plaintiffs. *See* Point II.A, *infra*.

15        *Finally*, Bayer would suffer significant prejudice if access to its documents were expanded

16    to an untold number of present and future Roundup plaintiffs, lawyers, and their staff. In addition

17    to upending Bayer's reliance on the carefully negotiated terms of the protective order, that

18    expansion of access would subject both Defendants and the Court to the ongoing burden of

19    policing compliance for non-parties scattered throughout the country. *See* Point II.B, *infra*.

20        Accordingly, as set forth in greater detail below, Defendants respectfully submit that

21    intervention should be denied and the protective order in this action should be sustained.

22                                **BACKGROUND**

23    **A.    Bayer agrees to acquire Monsanto after performing diligence on the Roundup
            litigation.**

24        In September 2016, Bayer agreed to acquire the agrochemical company Monsanto,

25    through a transaction informed by months of due diligence on all aspects of Monsanto's business.

26    Among the topics of this diligence was a growing number of lawsuits brought against Monsanto

27

28

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE
AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.: 3:20-CV-04737-RS

2

by customers who alleged that they had developed cancer from exposure to glyphosate — the active ingredient in the herbicide Roundup.

Regulators in the United States and around the world have approved and reapproved glyphosate (and Roundup) for general use, and there is an extensive body of research supporting its safety.  Nevertheless, in March 2015, the International Agency for Research on Cancer ("IARC") released a monograph concluding that glyphosate is "probably carcinogenic to humans."  The report prompted dozens of plaintiffs to file highly publicized lawsuits.  Proposed Intervenor Weitz & Luxenberg, P.C. led the charge, filing its first Roundup lawsuit in the months following publication of the IARC report.[2]  By late 2016, over 50 Roundup cases were pending against Monsanto, with more being filed every month and discovery in full swing.

**B.    Proposed Intervenors are appointed to lead the Roundup MDL and gain intimate familiarity with the legal and factual issues in the litigation.**

In October 2016, the Judicial Panel on Multidistrict Litigation consolidated the federal Roundup lawsuits into a new MDL in this District, presided over by Judge Chhabria.  Dkt. No. 256-2 ("Greenwald Decl.," Ex. A).  Shortly thereafter, Judge Chhabria appointed Proposed Intervenors as co-lead counsel for the Roundup MDL, with "responsibility for coordinating and overseeing MDL activities for the plaintiffs."  Dkt. No. 256-3 (Greenwald Decl., Ex. B) at 1.  In this capacity, Proposed Intervenors were required to, among other things, "[c]oordinate and conduct discovery on behalf of the plaintiffs" and "[c]onsult with and employ expert witnesses."  *Id.* §§ I.8, I.11.  Through this appointment, Proposed Intervenors also took a leadership role in the MDL Executive Committee, which was responsible for steering the litigation.  *Id.* § II.

In the months and years that followed, Proposed Intervenors oversaw an exhaustive campaign of discovery, through which Monsanto produced millions of pages of documents and plaintiffs' counsel deposed dozens of Monsanto witnesses.[3]  Bellwether trials followed in rapid succession.  In August 2018, just months after Bayer closed its acquisition of Monsanto, a

---

[2] *See* Complaint, *Fitzgerald* v. *Monsanto Company*, No. 2:15-cv-05494-SJF-GRB, ECF No. 1 (E.D.N.Y, Sept. 22, 2015).

[3] *See* Joint Trial Exhibit List, *Hardeman* v. *Monsanto Co.*, No. 3:16-md-02741-VC, ECF No. 2658-1 (N.D. Cal. Feb. 6, 2019) (listing witnesses and Bates numbers of Monsanto productions).

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE
AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.: 3:20-CV-04737-RS

3

California Superior Court jury in the first Roundup case to reach trial ruled in favor of the

plaintiff, Dewayne Johnson.[4]  The following March, the first of the MDL cases was tried to a

verdict, awarding damages to Edwin Hardeman.[5]  And in May 2019, a third jury decided against

Monsanto, finding in favor of plaintiffs Alberta and Alva Pilliod.[6]  The Proposed Intervenors

were intimately involved in these early proceedings, both through their oversight of the Roundup

MDL and because Proposed Intervenor The Miller Firm LLC served as co-lead trial counsel in

the *Johnson* and *Pilliod* trials.[7]  The trial losses prompted a boom in new lawsuits, with the

volume of Roundup claims soaring to roughly 125,000, many consolidated in the Roundup MDL

under the leadership of Proposed Intervenors.

      **C.**    **The securities fraud action is filed, and Proposed Intervenors represent to Judge Chhabria that "discovery of Bayer and its knowledge of the litigation risks posed by the Roundup litigation" is "not relevant to the personal injury cases as against either Monsanto or Bayer."**

     Amidst these setbacks in the Roundup litigation, Bayer's share price suffered significant

declines.  On July 15, 2020, two pension funds filed a complaint in this Court, claiming securities

fraud by Bayer and several of its current and former officers.  Dkt. No. 1.  This pleading alleged

that, over a period running from May 2016 to March 2019, Defendants made dozens of false or

misleading statements that misrepresented the risk posed by the Roundup litigation and the extent

of Bayer's pre-merger due diligence on the that risk.  *Id.* ¶ 11.

     Immediately after docketing their securities fraud complaint, the pension funds filed an

administrative motion in the Roundup MDL, requesting that this action be reassigned to Judge

Chhabria "given the substantially similar parties and events at issue in the action" and the

likelihood of "overlapping discovery."  Ex. A (*In re Roundup Products Liability Litig.*, No. 3:16-

---

[4] *See* Verdict Form, *Johnson* v. *Monsanto Company*, No. CGC-16-550128 (Cal. Super. Ct. Aug. 10, 2018).

[5] *Hardeman* v. *Monsanto Co.*, 997 F.3d 941, 950-52 (9th Cir. 2021) (discussing *Hardeman* verdict), *cert. denied*, 142 S. Ct. 2834 (2022).

[6] *Pilliod* v. *Monsanto Co.*, 67 Cal.App.5th 591, 612 (Cal. Ct. App. 2021) (discussing *Pilliod* verdict).

[7] *See Third Roundup Cancer Trial Begins on March 25 in Oakland, California* (Mar. 8, 2019), available at https://millerfirmllc.com/third-roundup-cancer-trial-begins-on-march-25-in-oakland-california/ (discussing The Miller Firm's co-lead representation in the *Johnson* and *Pilliod* trials).

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE
AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.: 3:20-CV-04737-RS

4

1   md-02741-VC, ECF No. 11257 (N.D. Cal. July 16, 2020)) at 2.  Bayer opposed reassignment,

2   noting that the securities plaintiffs had failed to identify "any area where discovery [would]

3   overlap." Ex. B (*In re Roundup Products Liability Litig.*, No. 3:16-md-02741-VC, ECF No.

4   11424 (N.D. Cal. July 27, 2020)) at 2.

5          Proposed Intervenors also filed a brief on the requested reassignment, in their role as co-

6   lead MDL counsel.  While that submission declined to take a position on the pending motion,

7   Proposed Intervenors emphasized that the proceedings were "materially different" in key respects.

8   Ex. C (*In re Roundup Products Liability Litig.*, No. 3:16-md-02741-VC, ECF No. 11289 (N.D.

9   Cal. July 20, 2020)) at 3.  In particular, drawing upon their deep experience in the Roundup

10  litigation, Proposed Intervenors represented that the "MDL Executive Committee did <u>not take</u>

11  <u>discovery of Bayer and its knowledge of the litigation risks posed by the Roundup litigation</u>

12  <u>and/or its due diligence</u> about the carcinogenicity of glyphosate" because "[t]hat inquiry <u>was **not**</u>

13  <u>**relevant**</u> to the personal injury cases as against either Monsanto or Bayer." *Id.* at 2 (emphasis

14  added).  Shortly after briefing concluded on the administrative motion, Judge Chhabria issued a

15  summary order denying reassignment.  *See In re Roundup Products Liability Litig.*, No. 3:16-md-

16  02741-VC, ECF No. 11516 at 1 (Aug. 10, 2020).

17          **D.    The parties litigate this action and make detailed public disclosures**
            **concerning ongoing discovery.**

18
    There followed five years of hard-fought litigation in the securities action before this

19
    Court, all detailed on the public docket.  After two successive motions to dismiss, Dkt. Nos. 61,

20
    110, the parties proceeded to fact discovery in late 2022.  From the outset, Plaintiffs disclosed on

21
    the docket that discovery would target "documents relating to the Roundup litigation" including

22
    "Supervisory Board" and "Board of Management materials."  Dkt. No. 130 at 5 (June 23, 2022).

23
          On October 6, 2022, the Court entered the Stipulated Confidentiality and Protective Order,

24
    (the "Protective Order"), which would govern the confidential treatment of documents produced

25
    in this case.  Dkt. No. 138.  As approved by the Court, the Protective Order imposed an unusually

26
    complex, four-tier confidentiality framework, the product of months of negotiation aimed at

27
    accommodating Bayer's concerns about the disclosure of highly sensitive internal documents.  *Id.*

28

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE
AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.:  3:20-CV-04737-RS

5

1  § 1.2 (permitting the designation of discovery materials as "Confidential," "Highly Confidential,"

2  "Highly Confidential – Attorneys' Eyes Only," and "Foreign Confidential Personal Data").

3  Among other provisions, the Protective Order included over seven pages of requirements

4  calibrated to ensure compliance with European data privacy law. *Id.* § 13.

5       On December 1, 2023, the parties filed the first of several joint letters seeking the

6  resolution of discovery disputes. Dkt. No. 198. In this first submission, Plaintiffs asked the Court

7  to find that by asserting a defense of good-faith reliance on contemporaneous representations by

8  the lawyers who performed pre-merger diligence on the Roundup litigation, Defendants had

9  impliedly waived the attorney-client privilege that otherwise protected a set of 386 documents and

10  legal memoranda created by those lawyers (the "Privileged Diligence Materials"). *Id.* at 1-3.

11  Defendants responded that they planned to rely solely on non-privileged communications

12  concerning the operational details of due diligence, not any of the substantive legal advice

13  provided. *Id.* at 4. Furthermore, Defendants noted that Plaintiffs had put those facts at issue,

14  because the Complaint alleged that Defendants had misled the public concerning the diligence

15  performed, forcing Defendants to produce evidence on that topic. *Id.*

16       On January 5, 2024, Judge Kim entered an order compelling production of the Privileged

17  Diligence Materials, concluding that "denying Plaintiffs access to" those documents "would make

18  it impossible for them to prove their case." Dkt. No. 199 at 4 (reasoning that to prove that

19  Defendants made false statements about the adequacy of Bayer's due diligence, Plaintiffs "must

20  be able to see what Defendants saw and what Defendants thought about the Roundup Litigation").

21  However, finding that "the information is sensitive," Judge Kim concluded it was necessary to

22  "devise a narrow method to address disclosure." *Id.* Accordingly, the order authorized

23  Defendants to produce the materials subject to the "Highly Confidential – Attorneys' Eyes Only"

24  designation set forth in the Protective Order, the highest level of protection available. *Id.*

25       Three months later, on April 2, 2024, the parties submitted another joint discovery letter,

26  in which Plaintiffs requested that Judge Kim permit the deposition of Bayer's former general

27  counsel, Dr. Roland Hartwig. Dkt. No. 207. Opposing that request, Defendants publicly

28  disclosed the identities of the four non-party fact witnesses deposed by Plaintiffs, as well as the

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE
AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.: 3:20-CV-04737-RS

6

1   fact that their depositions revealed details about Bayer's pre-merger due diligence on the

2   Roundup litigation.  *Id.* at 8.  After Judge Kim allowed the additional deposition, Dkt. No. 210,

3   Plaintiffs docketed a Letter of Request to the German authorities, asking that Dr. Hartwig be

4   compelled to testify in Germany, subject to the confidentiality provisions of the Protective Order.

5   Dkt. No. 214-1 at 9, 13  The letter also revealed the planned topics of his testimony.  *Id.* at 8-9.

6        Following a lengthy period of expert discovery, Dkt. No. 230, the parties announced on

7   February 25, 2025 that they had reached a settlement in principle.  Dkt. No. 244.  The Court

8   immediately vacated the case schedule and ordered the parties to file a motion for preliminary

9   approval of the settlement.  Dkt. No. 245.

10       **E.    Proposed Intervenors "first learn" of facts that have been available on the
         public docket for years, wait two months, and then seek intervention to vastly

11       expand access to Defendants' confidential records.**

12       On April 23, 2025, Plaintiffs filed an unopposed motion for preliminary approval of the

13  proposed settlement, which appended copies of the parties' settlement stipulation and its exhibits.

14  Dkt. No. 253.  The preamble to the settlement stipulation summarized facts that were already

15  public on the docket, including that Plaintiffs had sought extensive document production on

16  Bayer's "due diligence" on the "litigation risks associated with Monsanto's Roundup product,"

17  that Bayer had responded to interrogatories on its "review of documents concerning glyphosate

18  and Roundup during due diligence," that the Court had ordered production of "certain due

19  diligence documents," that Plaintiffs had deposed "eleven fact witnesses, including Bayer's

20  current and former senior executives, board members, and general counsels," and that the parties

21  had engaged in expert discovery.  Dkt. No. 253-2 at ¶¶ R-CC.

22       Proposed Intervenors claim that they "first learned of the new discovery materials"

23  through this April 23, 2025 filing, despite having been alerted to the pendency of the action in

24  July 2020.  Greenwald Decl. ¶ 11.  Two months later, on June 23, 2025, Proposed Intervenors

25  filed their motion to intervene and to modify the Protective Order (the "Motion"), seeking broad

26  access to the fact and expert discovery record developed over the prior three years.  Dkt. No. 256.

27       Through the instant Motion, Proposed Intervenors ask the Court to order that the

28  documents produced by Bayer in this litigation may be used in any "Glyphosate Injury Action," a

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE
AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.:  3:20-CV-04737-RS

7

1    term defined expansively to include: (a) the Roundup MDL; (b) "[a]ny action that has been or

2    will be originally filed in, removed to, or transferred to" the Roundup MDL; (c) "[a]ny action

3    brought in state or federal court by or on behalf of a former user of Monsanto glyphosate-

4    containing products, such as Roundup, alleging injuries or other damages therefrom"; and (d) any

5    such action brought in connection with a "bankruptcy petition, insolvency proceeding, or similar

6    proceeding of Monsanto or any of its parents, subsidiaries, affiliates, or other related entities."

7    Dkt. No. 256-5 ("Proposed Order") § 15.2.  As amended, the Protective Order would allow any

8    party to any Glyphosate Injury Action (along with their lawyers) to use any documents produced

9    by any Defendant to "prosecute, defend, or attempt to settle" such actions.  *Id.* § 15.4.  The

10    amended Protective Order would also permit any of those parties to exercise the rights granted by

11    the Protective Order, *id.* § 15.7, including the right to challenge confidentiality designations.

12        As Proposed Intervenors acknowledge, the universe of Roundup lawsuits captured by the

13    terms of the proposed amendment to the Protective Order is enormous, presently exceeding

14    67,000 pending cases in jurisdictions around the country.[8]

15                                    **ARGUMENT**

16    **I.    THE COURT SHOULD NOT PERMIT INTERVENTION**

17        To justify permissive intervention, a movant "must prove" it has met two conditions:

18    (1) its motion is "timely" and (2) there exists "a common question of law and fact between [its]

19    claim or defense and the main action."  *Donnelly* v. *Glickman*, 159 F.3d 405, 412 (9th Cir. 1998);

20    *Callahan* v. *Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022).

21    Even where these conditions are satisfied, however, the Court retains discretion to deny

22    intervention if it would "unfairly prejudice the existing parties."  *Donnelly*, 159 F.3d at 412.[9]

23        Proposed Intervenors have not carried their burden on either point.  The Motion is

24    untimely because Proposed Intervenors waited years to intervene in this action, substantially

25

26    _____

    [8] Bayer Global, *Managing the Roundup Litigation*, https://www.bayer.com/en/managing-the-

27    roundup-litigation (cited in Motion at 3 & n.4)

28    [9] A movant must also establish "an independent ground for jurisdiction."  *Callahan*, 42 F.4th at
    1022.  Defendants do not dispute the Court's jurisdiction to modify its own protective order.

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE
AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.: 3:20-CV-04737-RS

8

1    prejudicing Defendants.  And Proposed Intervenors have not established any common question of

2    law or fact, because they are law firms that lack standing to intervene and because they have

3    previously (and correctly) conceded that the documents they now target are "not relevant" to the

4    Roundup litigation.  Accordingly, Proposed Intervenors' belated effort to intervene in this case

5    should be denied.[10]

6              **A.      Intervention is not timely.**

7              Three factors govern the timeliness of intervention: "(1) the stage of the proceeding at

8    which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and

9    length of the delay."  *W. Watersheds Project* v. *Haaland*, 22 F.4th 828, 836 (9th Cir. 2022)

10   (internal quotation omitted).  None support intervention here.

11             Starting with the delay:  A declarant for the Proposed Intervenors avers, without

12   elaboration, that "Proposed Intervenors first learned of the new discovery materials through the

13   preliminary settlement approval motion papers filed on April 23, 2025."  Greenwald Decl. ¶ 11.

14   That is a dubious proposition, at best.  Proposed Intervenors have known for five years that this

15   litigation hinged on discovery into Bayer's knowledge of the supposed risks posed by the

16   Roundup litigation and its related due diligence.  Ex. C at 2.  *See U.S. E.E.O.C.* v. *ABM Indus.*

17   *Inc.*, No. 1:07-cv-01428-LJO-JLT, 2013 WL 1455510, at *3 (E.D. Cal. Apr. 9, 2013)

18   (intervention to modify protective order untimely where movant "ha[d] known about the materials

19   in question" for years prior to seeking access).  Proposed Intervenors' explanation seems to be

20   that they neglected to monitor the docket of this case, and thus did not notice <u>any</u> of the filings

21   publicizing discovery in this action.  *See supra* pp. 5-7.  But even if that were true, such sustained

22   negligence hardly justifies intervention at Defendants' expense.  *See W. Watersheds Project*, 22

23

24   [10] Proposed Intervenors' filing suggests that they request intervention not just to "seek[]
     modification of the protective order" but also to "pursu[e] discovery already developed in this
25   case."  Motion at ii.  The Motion does not attempt to justify the latter purpose, because it is cannot.
     "Even if the issuing court modifies the protective order, it does not decide whether the collateral
26   litigants will ultimately obtain the discovery materials."  *Foltz* v. *State Farm Mutual Auto. Ins. Co.*,
     331 F.3d 1122, 1133 (9th Cir. 2003).  Should intervention be granted, "[t]he only question before
27   the Court is 'whether the *protective order* will bar the collateral litigants from gaining access to the
     discovery already conducted.'"  *Stokes* v. *Life Ins. Co. of N. Am.*, No. 1:06-cv-00411-BLW, 2009
28   WL 8397036, at *3 (D. Idaho Aug. 31, 2009) (quoting *Foltz*, 331 F.3d at 1133).

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE
AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.: 3:20-CV-04737-RS

9

1    F.4th at 839 (delay is measured "by reference to the point at which the intervenor knew, <u>or</u>

2    <u>reasonably should have known</u>" of the basis for intervention (emphasis added)).

3            Hoping to distract from their years-long delay, Proposed Intervenors argue that now is the

4    opportune time for intervention, because it will not "hinder ongoing litigation in the thick of

5    discovery." Motion at 8. But that is precisely the problem with waiting until the conclusion of

6    litigation here. For three years, Defendants have produced confidential internal records in

7    reliance on the terms of the Protective Order. By swooping in at the last moment to scoop up this

8    fully developed record, Proposed Intervenors have, in fact, magnified the prejudice suffered by

9    Defendants, non-U.S. parties who thus received no notice that evidence exchanged in this

10   proceeding could become fodder in tens of thousands of tort cases to which no Defendant is a

11   party. *See Empire Blue Cross & Blue Shield* v. *Janet Greeson's A Place For Us, Inc.*, 62 F.3d

12   1217, 1220 (9th Cir. 1995) (affirming denial of intervention where proposed intervenors "laid

13   back purposefully, hoping to freeload upon the massive amounts of time and money the other

14   parties expended in pursuing discovery").

15           The prejudice from this sustained delay is substantial. Over years of discovery,

16   Defendants produced some of the most sensitive documents in their files, including records of

17   board meetings. And the harm from delay is particularly acute because, as discussed above,

18   Defendants were forced to choose between producing the Privileged Diligence Materials and

19   abandoning their reliance on the diligence performed by Bayer lawyers. Proposed Intervenors did

20   nothing as that discovery dispute played out on the public docket in late 2023. Now, 18 months

21   later, they seek to rewrite the Protective Order and expand access to these highly confidential

22   documents to an unknown number of participants in cases pending across the country. If the

23   Court endorses that result — which it should not, *see infra* pp. 14-15 — Proposed Intervenors'

24   delay will therefore have deprived Defendants of an informed choice with respect to the

25   consequences of asserting their good-faith reliance defense. *Bittaker* v. *Woodford*, 331 F.3d 715,

26   720 (9th Cir. 2003) (en banc) (examining protective order and finding that "the federal courts

27   must be able to guarantee the integrity of the bargain if petitioner chooses" to produce privileged

28   records under the doctrine of implied waiver).

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE
AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.: 3:20-CV-04737-RS

10

**B.**    **Proposed Intervenors have not established common issues of fact that could justify intervention.**

As Proposed Intervenors concede, intervention must be denied unless they can show "sufficient common issue between the underlying suit and the intervenors' suits."  Motion at 10 (quoting *Beckman Indus., Inc.* v. *Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)).

That inquiry is easy to resolve here.  Proposed Intervenors point to purported overlap with the Roundup litigation, but they are not parties to any Roundup lawsuit.  Instead, they are <u>counsel</u> to Roundup litigants.  While Proposed Intervenors have thus been charged with "responsibility for coordinating and overseeing MDL activities for the plaintiffs" in the Roundup MDL, Greenwald Decl., Ex. B at 1, they offer no explanation why that responsibility endows them with vicarious standing to personally intervene in collateral litigation.  This case is instead exactly like *Moreno* v. *AutoZone, Inc.*, No. 3:05-cv-04432-CRB, 2008 WL 1701871 (N.D. Cal. Apr. 10, 2008), where lawyers likewise attempted to intervene in place of their clients.  Denying intervention, Judge Chen found it dispositive that "the real parties in interest with respect to the motion to modify [were] the plaintiffs in the [collateral litigation], but they ha[d] not made any appearance in [*Moreno*] seeking to intervene . . . ."  *Id.* at *1.  So too here, where Proposed Intervenors are not parties to any Roundup litigation.[11]  *See also Callahan*, 42 F.4th at 1022 (identifying intervenors' "standing to raise relevant legal issues" as an additional discretionary factor relevant to the evaluation of motions for permissive intervention).

And even if law firms could personally intervene in collateral litigation on behalf of their clients, it would make no difference in this case, because Proposed Intervenors have already conceded that the documents they seek to access are "not relevant to the personal injury cases as against either Monsanto or Bayer."  Ex. C at 3.  Ignoring that express admission, Proposed Intervenors now argue that "what Monsanto shared with Bayer during due diligence" and "what

---

[11] Moreover, if Proposed Intervenors could stand in the shoes of their clients, they would still lack standing to seek access for all other "former user[s] of Monsanto glyphosate-containing products, such as Roundup, alleging injuries or other damages therefrom."  Proposed Order § 15.2(c).  "If those parties want access to protected discovery in this case, they will need to intervene and seek access." *Universal Ent. Corp.* v. *Aruze Gaming Am., Inc.*, No. 2:18-cv-00585-RFB-NJK, 2020 WL 2308226, at *3 (D. Nev. May 8, 2020).

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.: 3:20-CV-04737-RS

11

1  Bayer might have learned about Monsanto's Roundup exposure" <u>is</u> relevant to the Roundup

2  litigation, after all, because it might shed light on "Monsanto's and Bayer's knowledge and

3  culpability."  Motion at 10-11.  But Bayer's knowledge and culpability is not at issue in the

4  Roundup MDL, and Monsanto's knowledge and culpability are not at issue in this action.

5  Proposed Intervenors had it right the first time — there is no legal or factual nexus between

6  Roundup product-liability claims against Monsanto and securities fraud claims against Bayer.

7  And there is thus no basis for intervention.

8  **II.       THE COURT SHOULD NOT MODIFY THE PROTECTIVE ORDER**

9          Even if intervention were warranted, Proposed Intervenors have not established grounds for

10  modifying the Protective Order to permit parties in tens of thousands of pending and future lawsuits

11  around the country to access Defendants' documents.  To support that amendment, Proposed

12  Intervenors must first demonstrate "the relevance of the protected discovery to the collateral

13  proceedings and its general discoverability therein," in order to show that "a substantial amount of

14  duplicative discovery will be avoided by modifying the protective order." *Foltz* v. *State Farm Mut.*

15  *Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003).  Next, the Court must "weigh [Defendants']

16  countervailing reliance interest . . . against the policy of avoiding duplicative discovery." *Id*.

17          Proposed Intervenors fail at both steps of this analysis.  They have not and cannot show that

18  modification of the Protective Order would avert duplicative discovery — not when they have

19  previously disclaimed the relevance of the documents at issue, and not when a decade of Roundup

20  litigation has confirmed that irrelevance.  And Proposed Intervenors have not even attempted to

21  show that Defendants' documents are generally discoverable in the Roundup litigation.  With

22  respect to the Privileged Diligence Materials, Proposed Intervenors cannot make any such showing

23  of discoverability, because Ninth Circuit law and Judge Kim's narrowly tailored order have

24  preserved both privilege and work product protection outside the specific context of this litigation.

25          The prejudice of the proposed modification, meanwhile, would be severe — upending

26  years of reliance on the Protective Order and forcing Defendants to ensure that tens of thousands

27  of litigants in scores of jurisdictions comply with its stringent terms.  Because this significant

28

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE
AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.:  3:20-CV-04737-RS

12

1  prejudice outweighs any theoretical benefit identified by Proposed Intervenors, the Protective

2  Order should be maintained in the form negotiated by the parties and approved by the Court.

3        **A.**      **Proposed Intervenors have not shown that modification of the Protective Order would avert "a substantial amount of duplicative discovery" in the**

4                        **Roundup litigation.**

5        The central inquiry under *Foltz* is whether modification of the protective order would

6  serve to avoid "a substantial amount of duplicative discovery" by "eliminat[ing] the potential for"

7  such duplication in collateral litigation. *Foltz*, 331 F.3d at 1131, 1132. Typically, this inquiry

8  requires the Court to forecast the likelihood of a factual overlap through a rough evaluation of

9  relevance and discoverability. No such prognostication is necessary here: The Roundup

10 litigation has been ongoing for <u>ten years, th</u>rough <u>tens of thousands of cases and doz</u>ens of trials,

11 yet Proposed Intervenors do not identify a <u>single</u> instance in which any Roundup plaintiff has

12 sought access to the documents at issue on this motion. On that record, there can be no serious

13 argument that modification of the Protective Order is needed to prevent duplicative discovery.[12]

14       In any event, Proposed Intervenors cannot establish either relevance or discoverability.

15 As for relevance, Proposed Intervenors argue that "documents and testimony bearing on Bayer's

16 due diligence into Monsanto and both company's assessments of the potential litigation

17 exposure," along with related public statements, are "probative of factual and legal issues material

18 to" the Roundup litigation. Motion at 14. Specifically, Proposed Intervenors urge that

19 "Monsanto and Bayer's knowledge, motives, and assessment of the exposure associated with

20 potential Roundup litigation" are relevant to claims for failure to warn, defective design, and

21 negligence, as well as the availability of punitive damages. *Id.* at 14-15.

22       Again, however, Proposed Intervenors have already conceded that the opposite is true,

23 representing in a signed filing that discovery concerning Bayer's knowledge and its due diligence

24 on the Roundup litigation is "not relevant." *See supra* pp. 4-5. For that reason, Proposed

25 Intervenors <u>chose</u> not to seek documents from Bayer in the Roundup litigation, notwithstanding

---

26 [12] Proposed Intervenors advert to other, unnamed plaintiffs who might one day sue and desire

27 access to Defendants' documents, but they have "no standing to assert rights on behalf of unidentified future or collateral litigants." *Jordan* v. *United States*, No. 3:15-cv-01199-BEN-NLS,

28 2017 WL 2230008, at \*3 (S.D. Cal. May 22, 2017).

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER CASE NO.: 3:20-CV-04737-RS

13

1   their new claim that Bayer has "evaded" such discovery.  Motion at 1.  And while Monsanto's

2   knowledge about Roundup may be relevant to the claims against it, Proposed Intervenors have

3   had a decade to elicit documents on that topic.  They made ample use of that time, pursuing

4   discovery from every angle and amassing a copious record,[13] but apparently never obtaining

5   Monsanto's records about Bayer's due diligence.  Proposed Intervenors nowhere explain why

6   their decision not to pursue that discovery from Monsanto justifies access to documents from

7   Bayer, nor what evidence Bayer's files could possibly contribute to the detailed litigation record

8   concerning Monsanto's knowledge.

9       Proposed Intervenors do not even attempt to carry their burden of showing that

10  Defendants' records are "generally discoverable" in all pending and future Roundup cases.  Nor

11  could they.  As the Ninth Circuit acknowledged in *Foltz*, "a collateral litigant has no right to

12  obtain discovery materials that are privileged or otherwise immune from eventual discovery in the

13  collateral litigation," 331 F.3d at 1134.  Here, Proposed Intervenors seek broad access to

14  otherwise-privileged documents that Bayer was compelled to produce after a finding of implied

15  waiver.  Such "waivers by implication differ materially from the more traditional express

16  waivers," requiring access to be "closely tailored . . . to the needs of the opposing party in

17  litigating the [claim] in question."  *Bittaker* v. *Woodford*, 331 F.3d 715, 719 (9th Cir. 2003).

18  Under this principle, where "a party complies with the court's conditions and turns over

19  privileged materials, it is entitled to rely on the contours of the waiver the court imposes, so that it

20  will not be unfairly surprised in the future by learning that it actually waived more than it

21  bargained for in pressing its claims."  *Id.* at 721 (holding that the assertion of an ineffective

22  assistance of counsel claim in a habeas suit did not waive privilege beyond that proceeding).

23      As detailed above, Judge Kim ordered disclosure of the Privileged Diligence Materials

24  based on a finding that Plaintiffs could not fairly pursue their claims in this action without access

25  to those records.  *See supra* p. 6.  In compelling disclosure, however, Judge Kim acknowledged

26  the extraordinary "sensitivity" of those documents, and the corresponding need to "devise a

27

28  ---

[13] Joint Trial Exhibit List, *Hardeman* v. *Monsanto Co.*, No. 3:16-MD-02741-VC, ECF No. 2658-1 (N.D. Cal. Feb. 6, 2019) (listing hundreds of exhibits as "[r]elevant to Monsanto's knowledge").

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE
AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.: 3:20-CV-04737-RS

14

1   narrow method to address disclosure." Dkt. No. 199 at 4.  Accordingly, the order compelling

2   disclosure specifically authorized Bayer to produce the documents under an "Attorney Eyes

3   Only" designation, with the effect of restricting access to Plaintiffs' counsel, its advisors and —

4   should the matter have proceeded — the Court itself.  *Id.*; Protective Order § 7.4.  Bayer produced

5   the documents on that basis and in reliance on that protection, which was tailored to ensure that

6   disclosure was restricted to the needs of this case.

7        That limited and compelled disclosure did not "automatically waive the attorney-client

8   privilege" in any other forum.  *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012)

9   (distinguishing between the consequences of voluntary and compelled disclosure for the waiver of

10  the attorney-client privilege); *United States* v. *de la Jara*, 973 F.2d 746, 749 (9th Cir. 1992) ("[A]

11  party does not waive the attorney-client privilege for documents which he is compelled to

12  produce" (quoting *Transamerica Computer* v. *IBM*, 573 F.2d 646, 651 (9th Cir.1978)).).  Nor

13  does it support a broader waiver here, where Plaintiffs' theory of liability forced Defendants to

14  make at least partial disclosures concerning the diligence work undertaken by Bayer's counsel.

15  Indeed, a contrary rule would provide a roadmap for future invasions of the attorney-client

16  privilege — inviting plaintiffs to foment securities fraud litigation whenever an acquired company

17  faces pending mass-tort claims, to force the acquiror into a Hobson's choice between defending

18  its statements on due diligence and preserving the confidentiality of its lawyers' substantive legal

19  advice.

20       In addition, separate and apart from the attorney-client privilege, the Privileged Diligence

21  Materials also continue to be protected from broader disclosure because they are opinion work

22  product.  "Courts have been willing to preserve a document's work product protection where an

23  earlier disclosure of the document was compelled."  *In re: Bard IVC Filters Prods. Liab. Litig.*, No.

24  2:15-md-02641-DGC, 2016 WL 537587, at *8 (D. Ariz. Feb. 11, 2016).  And "[f]airness is not a

25  consideration . . . where the issue is whether disclosure of work product to one party waives

26  protection of that material to other adversaries."  *Aronson* v. *McKesson HBOC, Inc.*, No. 5:99-cv-

27  20743-RMW, 2005 WL 934331, at *10 (N.D. Cal. Mar. 31, 2005).  As such, the Privileged

28  Diligence Materials are not "generally discoverable" beyond this proceeding.

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE
AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.: 3:20-CV-04737-RS

15

**B.    Proposed Intervenors' newfound desire for Bayer's discovery materials does not outweigh the prejudice to Defendants.**

In this action, Defendants have produced large volumes of highly confidential materials, all in reliance on Protective Order provisions that restrict access and use to this litigation. Proposed Intervenors now seek to expand access to over 67,000 other pending lawsuits, yet more to-be-filed proceedings, and an untold number of participants in all that litigation, arguing that the expansion will work no prejudice because all these recipients will be bound by the "same restrictions on use and disclosure contained in the original protective order."  Motion at 16 (quoting *Foltz*, 331 F.3d at 1133).

That logic cannot sustain the expansive relief that Proposed Intervenors seek.  If Proposed Intervenors have their way, Bayer will be forced to bear the burden of policing — and the Court the burden of adjudicating — the ongoing compliance of an enormous population of dispersed litigants, in perpetuity.  This is an altogether different proposition from monitoring the docket of a single lawsuit, because it increases both the burden of supervision and the risk of non-compliance. *See In re SRAM Antitrust Litig.*, No. 4:07-md-01819-CW, 2011 WL 5193479, at *3 (N.D. Cal. Nov. 1, 2011) (denying modification of protective order that would "burden [the producing party] by requiring [it] to continue policing access to confidential information disclosed in the present case").  Proposed Intervenors identify no precedent for such a remarkable expansion of access.[14] Instead, Proposed Intervenors argue that it is justified because Monsanto stipulated to a protective order in the Roundup MDL that permits equivalent document-sharing.  But Monsanto stipulated to those protections long before it was acquired, Bayer is not Monsanto, and Bayer produced its documents subject to the Protective Order — not the much laxer stipulation that governs the Roundup MDL.  Thus, the terms that Monsanto agreed to years ago have no bearing on whether Bayer will suffer prejudice from modification of the Protective Order in this case.

---

[14] Motion at 17 (citing *Sherwin-Williams Co.* v. *JB Collision Servs., Inc.*, No. 3:13-cv-01946-LAB-WVG, 2017 WL 6027005 (S.D. Cal. Dec. 5, 2017) (expanding access to one additional lawsuit); *Hernandez* v. *Cnty. of Monterey*, No. 5:13-cv-02354-BLF, 2021 WL 2166211 (N.D. Cal. May 27, 2021) (same); *Optronics Techs., Inc.* v. *Ningbo Sunny Elec. Co.*, No. 5:16-cv-06370-EJD, 2021 WL 2645804 (N.D. Cal. June 28, 2021) (permitting documents produced in a class action to be reproduced in two related class actions)).

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.: 3:20-CV-04737-RS

16

1    Furthermore, as discussed above, the threatened prejudice to Bayer is particularly acute

2    with respect to the Privileged Diligence Materials.  While Proposed Intervenors correctly note

3    that a producing party's reliance is "less" for documents produced under a "blanket" protective

4    order, Motion at 9, that reasoning does not extend to Bayer's privileged documents, where Judge

5    Kim specifically found that heightened sensitivity merits "Attorneys Eyes Only" protection.

6    The burden is thus on Proposed Intervenors to "establish good cause to modify the protective

7    order to allow access" to those records.  *In re SRAM*, 2011 WL 5193479, at *6. They have not

8    attempted to meet that burden and cannot do so.  Given that both the attorney-client privilege

9    and the attorney work-product protection remain intact outside the confines of this action, *see*

10   *supra* pp. 14-15, Bayer would plainly suffer harm from the prospect of further compelled

11   disclosure of the Privileged Diligence Materials.  *See Quackenbush* v. *American Honda Motor*

12   *Company, Inc.*, No. 3:20-cv-05599-WHA, 2023 WL 8360045, at *11 (N.D. Cal. Dec. 1, 2023)

13   ("Because such records may implicate privileged information, good cause exists to seal").[15]

14                              **CONCLUSION**

15   For the reasons set forth above, the Court should deny Proposed Intervenors' motion to

16   intervene and to modify the Protective Order governing discovery in this case.

---

25   [15] Proposed Intervenors limit their request to discovery materials produced by Defendants, recognizing that "the analysis of pertinent reliance interests may be different" for third parties. Motion at 16 n.14.  Indeed it would be.  In this litigation, three former Bayer employees voluntarily submitted to depositions overseas in reliance on the terms of the Protective Order, and a fourth was compelled to testify in a German court subject to the same confidentiality provisions.  Dkt. No. 214-1.  If Proposed Intervenors were seeking access to this testimony — which it appears they are not — that would heap further prejudice on the reliance interests of third-party foreign nationals.

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE
AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.: 3:20-CV-04737-RS

17

1    Dated: July 14, 2025

2                                              By: */s/ Jordan Eth*

3                                              Jordan Eth (CA SBN 121617)
                                               David J. Wiener (CA SBN 291659)
                                               **MORRISON & FOERSTER LLP**
4                                              425 Market Street
                                               San Francisco, CA  94105
5                                              Telephone:  (415) 268-7126
                                               Facsimile:  (415) 268-7522
6                                              Email:   JEth@mofo.com
                                                        DWiener@mofo.com
7
                                               William Savitt (*pro hac vice*)
8                                              Noah B. Yavitz (*pro hac vice*)
                                               Emily R. Barreca (*pro hac vice*)
9                                              **WACHTELL, LIPTON, ROSEN & KATZ**
                                               51 West 52nd Street
10                                             New York, NY  10019
                                               Telephone:  (212) 403-1000
11                                             Facsimile:  (212) 403-2000
                                               Email:   WDSavitt@wlrk.com
12                                                      NBYavitz@wlrk.com
                                                        ERBarreca@wlrk.com
13
                                               *Attorneys for Defendants Bayer*
14                                             *Aktiengesellschaft, Werner Baumann, Werner*
                                               *Wenning, Liam Condon, Johannes Dietsch, and*
15                                             *Wolfgang Nickl*

DEFS.' P&A IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE
AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER
CASE NO.:  3:20-CV-04737-RS

18