Robin Greenwald (*pro hac vice* anticipated)
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
Tel: 212-558-5802
rgreenwald@weitzlux.com

Robert J. Quigley, CA Bar No. 302879
**WEITZ & LUXENBERG, P.C.**
1800 Century Park E., Suite 700
Los Angeles, CA 90067
Tel: 212-558-5829
rquigley@weitzlux.com

[Additional counsel on signature page]

*Counsel for Proposed Intervenors*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| SHEET METAL WORKERS' NATIONAL PENSION FUND and INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 710 PENSION FUND, individually and as Lead Plaintiffs on behalf of all others similarly situated, and<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS PENSION FUND OF EASTERN PENNSYLVANIA AND DELAWARE, individually and as Named Plaintiff, on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br>　　vs.<br><br>BAYER AKTIENGESELLSCHAFT, WERNER BAUMANN, WERNER WENNING, LIAM CONDON, JOHANNES DIETSCH, and WOLFGANG NICKL,<br><br>　　　　Defendants,<br><br>WEITZ & LUXENBERG, P.C. and THE MILLER FIRM LLC, as Co-Lead Counsel in MDL No. 2741 and on behalf of certain clients,<br><br>　　　　Proposed Intervenors. | Case No: 3:20-cv-04737-RS<br><br>CLASS ACTION<br><br>**PROPOSED INTERVENORS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE AND TO MODIFY THE CONFIDENTIALITY AND PROTECTIVE ORDER (DKT. 256)**<br><br>Date: August 14, 2025<br><br>Time: 1:30 p.m.<br><br>Judge: Richard Seeborg<br><br>Courtroom: 3 — 17th Floor |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

ARGUMENT...............................................................................................2

I. The Discovery Materials in This Case Are Relevant and Discoverable in Roundup Litigation. ..........................................................................2

II. The 2020 Submission Does Not Preclude Proposed Intervenors from Seeking the Discovery Materials, the Need for Which Has Grown Over Time. ............................................................................................5

III. Bayer's Purported Reliance Interests and Claims of Prejudice Can Be Easily Accommodated by Reasonable Restrictions on Disclosure..............8

IV. Intervention Is Timely..................................................................11

V. Proposed Intervenors May Properly Intervene to Seek Modification of the Protective Order in Their Roles as MDL Co-Lead Counsel................13

CONCLUSION.........................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Ah Quin v. County of Kauai Dep't of Transp.*,
733 F.3d 267 (9th Cir. 2013) ...............................................................................................6

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
966 F.2d 470 (9th Cir. 1992) ...............................................................................11, 14, 15

*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003) ...............................................................................................9

*Callahan v. Brookdale Senior Living Communities*,
42 F.4th 1013 (9th Cir. 2022) ...........................................................................................15

*Cordero v. Stemilt AG Servs., LLC*,
No. 23-3548, --- F.4th ---, 2025 WL 1902292 (9th Cir. July 10, 2025) ....................1, 9, 11, 14

*Davis v. Bayer Corp.*,
No. 1:23-cv-4800-JPB (N.D. Ga. May 23, 2025) .......................................................5

*Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*,
62 F.3d 1217 (9th Cir. 1995) ............................................................................................12

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
331 F.3d 1122 (9th Cir. 2003) ............................................................................... passim

*Hardeman v. Monsanto Co.*,
997 F.3d 941 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2834 (2022)........................................3

*Johnson v. Monsanto Co.*,
No. CGC-16-550128 (Cal. Super. Ct.), *aff'd in relevant part*, 52 Cal App. 5th 434 (2020).....3

*Moreno v. AutoZone, Inc.*,
No. 3:05-cv-04432-CRB, 2008 WL 1701871 (N.D. Cal. Apr. 10, 2008) ..............................14

*Pansy v. Borough of Stroudsburg*,
23 F.3d 772 (3d Cir. 1994)................................................................................................14

*Pilliod v. Monsanto Co.*,
282 Cal. Rpt. 3d 679 (Cal. Ct. App. 2021) ...............................................................................3

*Pub. Citizen v. Liggett Grp., Inc.*,
858 F.2d 775 (1st Cir. 1988)..............................................................................................11

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.*,
187 F.3d 1096 (9th Cir. 1999) ...........................................................................................11

*U.S. E.E.O.C. v. ABM Indus. Inc.*,
No. 1:07-CV-01428-LJO, 2013 WL 1455510 (E.D. Cal. Apr. 9, 2013) ...............................12

*United Nuclear Corp. v. Cranford Ins. Co.*,
905 F.2d 1424 (10th Cir. 1990) .........................................................................................14

*United States v. State of Wash.*,
   86 F.3d 1499 (9th Cir. 1996) ..........................................................................................................12

*Universal Entertainment Corp. v. Aruze Gaming America, Inc.*,
   No. 2:18-cv-00585-RFB-NJK, 2020 WL 2308226 (D. Nev. May 8, 2020)............................15

Proposed Intervenors, Co-Lead Counsel in MDL No. 2741, *In re: Roundup Products Liability Litigation*, respectfully submit this Reply in further support of their Motion to Intervene and to Modify the Confidentiality and Protective Order, Dkt. 256 (the "Motion").

## **INTRODUCTION**

Ninth Circuit law is clear: "a collateral litigant's request to the issuing court to modify an otherwise proper protective order so that collateral litigants are not precluded from obtaining relevant material ***should generally be granted***." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003) (emphasis added). Litigants seeking modification of a protective order must show that: (1) the materials protected by the order are relevant and generally discoverable in the other proceeding, which requires only a "rough estimate of relevance," *id.*; and (2) the strong policy interest in avoiding duplicative discovery is not outweighed by any reliance interest of the party opposing modification, *id.* at 1133. In a recent precedential opinion, the Ninth Circuit reiterated that *Foltz* remains good law, that "discovery is 'presumptively public,'" and that protective orders limiting the use of discovery in other cases should be scrutinized for breadth. *Cordero v. Stemilt AG Servs., LLC*, No. 23-3548, --- F.4th ---, 2025 WL 1902292, at *5 (9th Cir. July 10, 2025) (vacating portion of protective order that placed limits on use "in other advocacy [of] information obtained in discovery") (citation omitted).

Proposed Intervenors have made each of the required showings under *Foltz*. First, discovery in this case concerning Bayer's due diligence into Monsanto's risks in Roundup personal injury litigation is highly relevant to, and discoverable in, the Roundup personal injury litigation itself. This is true both at a high level, and as to central factual and legal issues that arise in Roundup cases, including knowledge, motive, defective design, negligence, and punitive damages. *See generally* Motion, Dkt. 256 at 12 – 16. Second, any reliance interest claimed by Bayer may be accommodated by placing parties seeking access to these materials "under the same restrictions on use and disclosure contained in the original protective order." *Foltz*, 331 F.3d at 1133 (citation omitted). Here, Proposed Intervenors agree to submit to these restrictions and have included them in their Proposed Order. Dkt. 256-5 at 6, § 15.5.

Bayer's Opposition fails to rebut Proposed Intervenors' strong showing that the materials sought are relevant and discoverable. Instead, Bayer relies heavily on a two-page submission filed by MDL leadership in July 2020 (the "2020 Submission"). The 2020 Submission stated, accurately as to that moment, that leadership believed an inquiry into these matters was "not relevant to the personal injury cases as against either Monsanto or Bayer." Dkt. 264-4 at 2. Since then, Bayer has made public statements and taken actions concerning Roundup that put its own conduct increasingly at issue in Roundup cases; the composition of the MDL docket has changed; and experience has shown the importance of this evidence. Accordingly, MDL Co-Lead Counsel have revised their prior assessment, and seek access to these due diligence-related materials. They do so through this Motion, not only for their own clients but for the benefit of other Roundup litigants, as is appropriate given Co-Lead Counsel's responsibilities under the MDL order appointing them. *See* Dkt. 256-3.

Bayer's other objections to intervention and modification of the protective order similarly lack merit. Bayer fails to show that its reliance interests are any different from those of any party that has produced discovery under a protective order, for whom the appropriate recourse is reasonable restrictions on use and disclosure. *See Foltz*, 331 F.3d at 1133. Intervention is timely: Proposed Intervenors promptly sought relief from the protective order after the parties' preliminary settlement approval motion disclosed for the first time the discovery conducted in this case. And Proposed Intervenors indeed have standing to seek modification of the Protective Order: they do not merely seek to intervene as lawyers or as law firms, but as MDL Co-Lead Counsel, charged with "[c]oordinat[ing] and conduct[ing] discovery on behalf of the plaintiffs" in the MDL. Dkt. 256-3 at 3 ¶ 8. The Motion should be granted.

## ARGUMENT

### I.    The Discovery Materials in This Case Are Relevant and Discoverable in Roundup Litigation.

Plaintiffs in the Roundup MDL and in Roundup cases in other forums allege that glyphosate, the active ingredient in Roundup, caused them or their family members to develop

a form of cancer called non-Hodgkin's lymphoma, and that Monsanto hindered regulators and the public from learning of these risks for many years even as it continued to falsely market Roundup as safe. Juries around the country have vindicated these claims, holding Monsanto liable and finding that its decades-long course of misconduct warrants punitive damages. Appellate courts, including the Ninth Circuit, have upheld these jury verdicts. Monsanto continues to deny liability and has vigorously contested these cases at every step – fact discovery, expert discovery, dispositive and *Daubert* motions, trial, and on appeal. In any one of these cases, Monsanto may advance new legal, scientific, and medical theories, disclose new experts, and develop new trial strategies, all while conducting thorough affirmative discovery of the plaintiffs and holding them to their burden to prove each element of their cases.

In short, these are hard-fought and evolving cases. It is true that substantial discovery has been conducted in the MDL, and that the dedicated plaintiffs and advocates who brought the early successful Roundup cases described in the operative Complaint in this case, such as *Johnson*, *Hardeman*, and *Pilliod*,[1] succeeded in overcoming this extraordinary resistance. But, as Bayer notes, many plaintiffs have not succeeded. Opp., Dkt. 262 at 1. There is no paint-by-numbers formula to win a Roundup case, certainly not through repetition of what has worked in the past. A plaintiff who files a Roundup case today should not be frozen in the MDL record as it existed some number of years ago – Monsanto obeys no such restrictions – and should be entitled to the full scope of discovery permitted by their jurisdiction, just like any other litigant.

The discovery developed in the *Sheet Metal Workers* case is relevant to, and discoverable in, Roundup personal injury litigation. This case concerns the truthfulness of Bayer's representations regarding its due diligence into Monsanto's "significant legal liability related to Roundup." Order Denying Mot. to Dismiss, Dkt. 90 at 12. Discovery encompassed documents

---

[1] *Johnson v. Monsanto Co.*, No. CGC-16-550128 (Cal. Super. Ct.), *aff'd in relevant part*, 52 Cal App. 5th 434 (2020); *Hardeman v. Monsanto Co.*, 997 F.3d 941, 971–72 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2834 (2022) ((upholding *Hardeman* verdict discussed in ¶¶ 151–161 of operative Second Amended Complaint in this action); *Pilliod v. Monsanto Co.*, 282 Cal. Rpt. 3d 679 (Cal. Ct. App. 2021) (upholding *Pilliod* verdict discussed in ¶¶ 178–185 of operative Second Amended Complaint).

"related to Bayer's acquisition of Monsanto, due diligence, and litigation risks associated with Monsanto's Roundup product," Dkt. 253-2 at ¶ T; interrogatories seeking "information on Bayer's review of documents concerning glyphosate and Roundup during due diligence for the Monsanto acquisition," *id.* at ¶ U; the depositions of knowledgeable fact witnesses, many located abroad, *id.* ¶ X; translations of German-language documents and testimony to which Bayer has stipulated, *id.* ¶ Z; and the due diligence documents evaluated by Judge Kim and further discussed in Part III, *id.* ¶ W; *see* Order on Discovery Dispute, Dkt. 199.

As set forth in the Motion, these materials are relevant and would be discoverable in Roundup litigation.[2] They bear on numerous legal and factual issues central to Roundup litigation, including knowledge, motive, defective design, negligence, and punitive damages. *See generally* Motion, Dkt. 256 at 12 – 16. Contrary to Bayer's arguments otherwise, *see* Opp., Dkt. 262 at 12, it would indeed avert a "substantial amount of duplicative discovery" for Roundup litigants to obtain discovery developed in this case rather than to recreate it from scratch. *See Foltz*, 331 F.3d at 1132. Re-deposing overseas witnesses, re-translating German documents and testimony to whose accuracy Bayer has already stipulated, and seeking anew documents and interrogatory responses that Bayer has already provided would be a "wasteful duplication" of the kind that should be averted by modifying the Protective Order. *Id.* at 1131.

In response, Bayer contends that "a decade of Roundup litigation has confirmed [the] irrelevance" of these materials, Opp., Dkt. 262 at 12, purportedly because "teams of lawyers have thoroughly examined every conceivable aspect of the dispute" and have not previously sought these materials. *Id.* at 1. Even assuming that this factual characterization of discovery

---

[2] Bayer contends that Proposed Intervenors "have not even attempted to show that Defendants' documents are generally discoverable in the Roundup litigation." Opp., Dkt. 262 at 12. This is not so. Though *Foltz* does not set forth specific criteria for evaluating general discoverability, the Motion submits that the criteria of Federal Rule of Civil Procedure 26 should govern. *See* Mot., Dkt. 256, at 14 & n.11 (citing Fed. R. Civ. P. 26(b)(1)); *see also* Mo. R. Civ. P. 56.01 (adopting similar standards in Missouri, where many Roundup cases are proceeding in state court, and providing that "Information within the scope of discovery need not be admissible in evidence to be discoverable if the information sought appears reasonably calculated to lead to the discovery of admissible evidence").

and litigation strategy in past cases is correct,[3] it does not undermine the showing that these materials remain relevant and discoverable as to Roundup cases still being litigated. For purposes of this Motion, the Court is tasked with "mak[ing] only a rough estimate of relevance," considering the "overlap in facts, parties, and issues between the suit covered by the protective order and the collateral proceedings." *Foltz*, 331 F.3d at 1132–33. Here, Proposed Intervenors have shown that the overlap is significant. And, as described below, the need for these materials has increased rather than diminished over time. The Court should accordingly modify the Protective Order so that Roundup plaintiffs may use these materials to prosecute their cases.

## II.    The 2020 Submission Does Not Preclude Proposed Intervenors from Seeking the Discovery Materials, the Need for Which Has Grown Over Time.

Instead of addressing the merits of why Bayer's due diligence into Monsanto's Roundup litigation risks should not be relevant and discoverable in the Roundup litigation itself, Bayer insists that the 2020 Submission "alone dooms Proposed Intervenors' motion." Opp., Dkt. 262 at 1. Bayer's brief repeatedly refers to the 2020 Submission in similar terms. *Id.* at 4, 5, 8–9, 11, 13. This reads far too much into a short response to a related-case administrative motion five years ago, and it reads it incorrectly. The assessment offered in the 2020 Submission is not binding on Proposed Intervenors in perpetuity, much less on litigants whose cases had not even been filed at that time. Developments since then confirm that there is a greater need for discovery concerning Bayer's due diligence into Monsanto's Roundup litigation risks than before.

Shortly after the initial complaint in the above-captioned case was filed in July 2020, counsel for the plaintiffs filed an administrative motion to consider whether this case should be

---

[3] Proposed Intervenors do not dispute Bayer's claim as to the MDL, but cannot evaluate it as to the "nearly 200,000 lawsuits" for which Bayer claims this is also true. Dkt. 262 at 1. Additionally, Proposed Intervenors are aware of at least one federal Roundup case, not brought by Proposed Intervenors, in which the court recently held that a plaintiff was "entitled to receive discovery concerning [his] alter ego theory of liability" against Bayer subsidiaries, after these defendants initially refused to produce this discovery absent a court order. Minute Sheet for Proceedings, *Davis v. Bayer Corp.*, No. 1:23-cv-4800-JPB, Dkt. 41 (N.D. Ga. May 23, 2025).

related to the Roundup MDL pursuant to Local Rules 3-12(b) and 7-11.[4] Dkt. 262-2. The MDL leadership at that time, including two of the undersigned attorneys, submitted the 2020 Submission, which "d[id] not take a position regarding whether the Court should decide that the case is, or is not, related to the personal injury cases pending in the MDL." Dkt. 262-4 at 2. This acknowledged that "in some respects the cases have related, overlapping issues, yet in other respects they are materially different." *Id.* at 3. The 2020 Submission also stated that no discovery had been conducted in the MDL concerning "Bayer and its knowledge of the litigation risks posed by the Roundup litigation and/or its due diligence about the carcinogenicity of glyphosate and Roundup prior to its purchase of Monsanto," and that, as of the date of the submission, MDL leadership believed "that inquiry was not relevant to the personal injury cases as against either Monsanto or Bayer." *Id.* at 2.

Proposed Intervenors do not disagree that this Motion takes a different position than expressed before. But Bayer fails to support its contention that the 2020 Submission is a "concession" or an "express admission" of a kind that cannot be revised in good faith five years later. Opp., Dkt. 262 at 1, 11. Importantly, MDL leadership took no position on whether the cases should be related, and stood to gain no advantage based on whether they were related. This is therefore not a case in which Proposed Intervenors or any MDL litigant "succeeded in getting the [MDL] court" to adopt a past advocacy position or "obtained an unfair advantage," as would be required for the equitable doctrine of judicial estoppel potentially to restrict a change in position. *See Ah Quin v. County of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013).[5]

Proposed Intervenors have changed their position in part due to changes in circumstances since 2020, and experience litigating Roundup cases. Most importantly, Bayer has not merely

---

[4] The case was initially filed by different plaintiffs and a different law firm than the Court would later appoint as class representatives and class counsel, respectively.

[5] Further, "[j]udicial estoppel is a discretionary doctrine, applied on a case-by-case basis," and a "court is not 'bound' to apply judicial estoppel, particularly when 'a party's prior position was based on inadvertence or mistake.'" *Ah Quin*, 733 F.3d at 272 (citation omitted). Even if the Court determines this doctrine could apply – Bayer has made no such showing – it should exercise its discretion not to deem Proposed Intervenors bound by the 2020 Submission.

been a passive owner of Monsanto as relates to the Roundup litigation, but has actively inserted itself into the fray. The CEO of Bayer has stated that addressing Roundup litigation is one of his top "strategic priorities" for Bayer as a whole.[6] Bayer has asserted that it "stand[s] fully behind the safety of our glyphosate products,"[7] and Bayer has engaged in an extensive public relations campaign to discredit Roundup litigation and call into question adverse jury verdicts and judicial decisions. Bayer has also aggressively lobbied legislators with the aim of granting Bayer and Monsanto unprecedented immunity from lawsuits aiming to hold them accountable for harm caused by Roundup and other herbicides.[8] The *Wall Street Journal* reports that Bayer is considering going so far as to strategically bankrupt Monsanto in order to limit its exposure to Roundup litigation, and has recently engaged professional advisors to develop these plans.[9]

Additionally, since 2020, the individual cases comprising the Roundup MDL have turned over almost entirely. There is no consolidated master complaint in the MDL, which is proceeding in "Waves" pursuant to the case management orders in effect. Substantially all of the cases active in 2020 have since resolved or have been remanded to their transferor courts. Because the current group of cases were filed later, they include a greater share of individuals whose exposure to Roundup continued after Bayer completed its acquisition of Monsanto, or for whom Bayer's post-merger actions are otherwise relevant. Further, Bayer's annual reports

---

[6] Jennifer Marston, *'Glyphosate is safe': Facing tens of thousands of lawsuits, Bayer names ongoing Roundup-related litigation a top priority*, AFN (Mar. 5, 2024), https://agfundernews.com/glyphosate-is-safe-facing-tens-of-thousands-of-lawsuits-bayer-names-ongoing-roundup-related-litigation-a-top-priority.

[7] Bayer Global, *Managing the Roundup Litigation*, https://www.bayer.com/en/managing-the-roundup-litigation (last visited July 25, 2025).

[8] *See* Colleen Kottke, *Pesticide Manufacturers Ask Lawmakers for Immunity from Lawsuits by Sick Farmers*, USA Today (July 22, 2025), https://www.usatoday.com/story/news/2025/07/22/should-lawmakers-protect-pesticide-makers-from-from-lawsuits-by-sick-farmers/85324182007/. As a result of Bayer's lobbying, two states, North Dakota and Georgia, have enacted legislation that purports to extend immunity of this kind to pesticide manufacturers.

[9] Reuters, *Bayer seeks Roundup settlement, explores Monsanto bankruptcy, WSJ reports* (May 15, 2025), https://www.reuters.com/business/healthcare-pharmaceuticals/bayer-seeks-roundup-settlement-explores-monsanto-bankruptcy-wsj-reports-2025-05-15/.

claim that, following the merger, Monsanto no longer holds any equity or generates any income, and so it is seemingly Bayer itself that now profits from Roundup sales on an ongoing basis.[10]

It also bears mention that one month before the 2020 Submission was filed, Bayer announced that it would pay over $10 billion to resolve many then-pending Roundup cases, as part of a broader effort to resolve all Roundup litigation with finality.[11] Of course, a global resolution has not come to pass. Co-Lead Counsel did not foresee as of mid-2020 that there would still be a significant volume of Roundup cases more than five years later, or that these future cases would need to address the changed reality on the ground of Bayer's ownership and active involvement in Monsanto's Roundup business in the years to come.

The discovery materials developed in this case and described in the parties' preliminary settlement materials, Dkt. 253-2 at ¶¶ R–CC, are relevant and discoverable in the Roundup MDL and in other "Glyphosate Injury Actions," as defined in the Proposed Order. Dkt. 256-5 at 5 ¶ 15.2. Their relevance has only grown over time. The Court should modify the Protective Order to permit the use of these materials in Glyphosate Injury Actions. *Foltz*, 331 F.3d at 1133.

### III.   Bayer's Purported Reliance Interests and Claims of Prejudice Can Be Easily Accommodated by Reasonable Restrictions on Disclosure.

Bayer's Opposition confirms that it lacks any cognizable reliance interest or claim of prejudice that would not be addressed by Proposed Intervenors' recommended modifications to the Protective Order. "[R]eliance on a blanket protective order in granting discovery and settling a case, without more, will not justify a refusal to modify," and may be "accommodated by placing [the collateral litigants] under the same restrictions on use and disclosure contained in the original protective order." *Foltz*, 331 F.3d at 1133. Proposed Intervenors are amenable to modifying the Protective Order to extend its restrictions on use and disclosure to Roundup cases,

---

[10] Bayer AG, Subsidiaries and Affiliated Companies, Bayer 2024 Annual Report (Dec. 31, 2024), https://www.bayer.com/sites/default/files/2025-03/bayer-shareownership-2024.pdf.

[11] *See* Maria Dinzeo, *Bayer Reaches $10 Billion Settlement in Roundup Cancer Suits*, Courthouse News (June 24, 2020), https://www.courthousenews.com/bayer-reaches-10-billion-settlement-in-roundup-cancer-suits/.

and have offered language to this effect in the Proposed Order, subject to any further modifications the Court may deem necessary.

Bayer repeatedly asserts prejudice or damaged reliance interests because it has "produced confidential internal records in reliance on the terms of the Protective Order," Opp., Dkt. 262 at 10; *see also id.* at 2, 12, 16 (same). But this is precisely the "reliance on a blanket protective order in granting discovery and settling" that ***cannot*** justify a refusal to modify under applicable law. *Foltz*, 331 F.3d at 1133; *see also Cordero*, --- F.4th ---, 2025 WL 1902292, at *5 (9th Cir. July 10, 2025) (stating that the party seeking a protective order "must show prejudice 'for each particular document it seeks to protect.'") (citation omitted).

The only claim of prejudice that Bayer arguably fleshes out with specificity concerns the documents over which it unsuccessfully asserted privilege in the discovery dispute before Judge Kim.[12] Opp., Dkt. 262 at 21; Order on Discovery Dispute, Dkt. 199. Bayer describes in detail its account of the discovery dispute over what it deems the "Privileged Diligence Materials," despite Judge Kim's ruling that Bayer had in fact waived privilege as to these documents. Opp., Dkt. 262 at 6, 10, 12–13, 14–15. While Proposed Intervenors believe that these documents are relevant and discoverable in Roundup litigation and that Bayer cannot walk back its waiver of privilege,[13] the Court need not reach these "specific relevance and privilege

---

[12] Bayer also asserts in a footnote that certain "former Bayer employees voluntarily submitted to depositions overseas in reliance on the terms of the Protective Order," and would be subject to additional prejudice if their testimony were deemed discoverable. Opp., Dkt. 262 at 17 n.15. This is another fact-specific dispute that the Court need not address to decide the Motion. *Foltz*, 933 F.3d at 1132. Proposed Intervenors otherwise reserve all rights as to this testimony.

[13] Judge Kim held that Bayer and its co-defendants had "waived their attorney-client privilege, under the doctrine of implied waiver" by asserting an affirmative defense in this case based on their reliance on the advice of lawyers. Dkt. 199 at 3. In response, Bayer cites a series of cases on compelled disclosure for the proposition that the waiver should not carry over to other actions. Opp, Dkt. 262 at 15. But these cited cases involve compelled disclosure in other contexts, not a court's specific finding that privilege had been waived. Nor does *Bittaker v. Woodford*, 331 F.3d 715, 721 (9th Cir. 2003), a death penalty habeas case, compel a different result. Opp., Dkt. 262 at 14. Here, extending the "contours of the waiver the court imposes," as counseled by *Bittaker*, 331 F.3d at 719, would require imposing the "Attorneys' Eyes Only" designation imposed by Judge Kim on certain documents as part of her ruling as a condition of their use in Glyphosate Injury Actions, not deeming nonprivileged documents privileged.

objections" to grant the Motion. *Foltz*, 331 F.3d at 1133. Because Proposed Intervenors have shown that modification of the protective order is warranted, any further "disputes over the ultimate discoverability of specific materials covered by the protective order must be resolved by the collateral courts," which is to say the courts supervising Roundup litigation. *Id.*

Bayer claims that modifying the Protective Order would cause it to suffer distinct prejudice from what is at issue in other cases granting this relief, because Proposed Intervenors have requested that the Protective Order be modified to permit use of discovery materials in Roundup litigation generally rather than in a single discrete case. Opp., Dkt. 262 at 16. But this is the regime under which Bayer's subsidiary, Monsanto, has operated for many years under the protective order in the Roundup MDL, to which it has stipulated and agreed. *See* Mot., Dkt. 256 at 2–3; Amended MDL Protective Order, Dkt. 256-4, at ¶ 11. While it is in some regards true that "Bayer is not Monsanto," Opp., Dkt. 262 at 16, it is not an unrelated third party, either: Bayer owns Monsanto and is the ultimate owner of its assets and liabilities related to Roundup. This case is in many respects based on the Roundup litigation, and on MDL proceedings specifically. Bayer discounts the MDL Protective Order as "much laxer" and having no bearing on discovery in this case, *id.*, but fails to articulate any actual prejudice that it would suffer if the Roundup-related discovery from this case is subject to the same protective order framework that has facilitated efficient and non-duplicative uses of discovery in the MDL, and which Bayer concedes were already in force when it acquired Monsanto. *Id.*

Bayer also contends that, beyond any asserted prejudice to itself, the Court will face the "burden of adjudicating" disputes related to protective order compliance. Opp., Dkt. 262 at 16. But under *Foltz*, discovery disputes are the responsibility of the courts overseeing discovery, not the court that entered the protective order. *Foltz*, 331 F.3d at 1133. Any further claim that the Court will be flooded with protective order violations is pure speculation and lacks support. The MDL docket, where many thousands of litigants have made use of protected discovery materials in federal and state court, does not reveal any such flood of contempt, sanctions, or similar

proceedings concerning the protective order. *See generally* MDL Docket, Case No. 3:16-md-02741-VC (N.D. Cal.).

Any evaluation of Bayer's claims of prejudice should also give due consideration to the interests of Roundup litigants in timely accessing these documents without duplicating discovery and prolonging their cases. *See Cordero*, --- F.4th ---, 2025 WL 1902292, at *5 (9th Cir. July 10, 2025) (stating that courts must "balance the relevant interests against any potential harm" of disclosure). It should not be lost that these are claims asserted by people alleging that they or their loved ones have developed cancer or died because of a harmful product, and that many juries and courts have vindicated claims of this kind.

Bayer fails to identify any prejudice or reliance interest that reasonable "restrictions on use and disclosure" would not adequately protect. *Foltz*, 331 F.3d at 1133. The Motion should be granted subject to these restrictions.

**IV.    Intervention Is Timely.**

Proposed Intervenors have timely moved to intervene in this matter. Proposed Intervenors reached out to counsel to seek a consented stipulation to modify the protective order on May 9, 2025. Greenwald Decl., Dkt. 256-1, ¶ 13. This was less than three weeks after the parties' preliminary settlement approval motion papers, dated April 23, 2025, publicly disclosed the existence of the pertinent discovery materials. *Id.* When these efforts were unsuccessful, Proposed Intervenors filed the Motion on June 23, 2025, just two months after public disclosure.

When considering a request to intervene for the purpose of modifying a protective order, courts routinely find that intervention is timely after a case has closed, sometimes years afterwards. *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 782 (1st Cir. 1988) ("[P]ostjudgment intervention is not altogether rare. Numerous courts have allowed third parties to intervene in cases directly analogous to this one, many involving delays measured in years rather than weeks"); *see San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1100 (9th Cir. 1999) (observing that the Ninth Circuit "affirm[ed] intervention 2 years after settlement" in *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992)). Proposed

Intervenors are well within these limits: they seek intervention in an open case, which will remain open for at least several months pending settlement administration proceedings.

Bayer advances several unavailing arguments why intervention is not timely. First, Bayer argues that Proposed Intervenors have been generally aware that this case existed since it was filed five years ago, as evidenced by the 2020 Submission. Opp., Dkt. 262 at 9. But it does not follow from the fact that a case has been filed that meaningful discovery has been conducted in that case. Bayer's reliance on *ABM Industries* is misplaced. *Id.* There, the case had been "settled and closed for about 29 months," the intervenor's counsel had been notified by defense counsel "of the need to modify the protective order regarding the use of discovery in this action," and the intervenor "failed to seek intervention until nearly the eve of trial" in the case in which she sought to use certain materials. *U.S. E.E.O.C. v. ABM Indus. Inc.*, No. 1:07-CV-01428-LJO, 2013 WL 1455510, at *2–3 (E.D. Cal. Apr. 9, 2013). Here, this is an open case, defense counsel did not urge earlier intervention, and there is no lack of diligence on Proposed Intervenors' part.

Bayer claims that Proposed Intervenors engaged in "sustained negligence," because they "neglected to monitor the docket of this case" and failed to "notice any of the filings publicizing discovery in this action." *Id.* (emphasis in original). It is unclear what filings Bayer is referring to apart from Judge Kim's ruling on the privilege dispute. Bayer cites no authority for a supposed duty to intervene as soon as there is a publicized discovery dispute in another active case. Imposing such a duty on litigants would be more, not less, likely to "complicate the issues and prolong the litigation" – precisely the outcome that Rule 24's timeliness requirements aim to avoid. *See United States v. State of Wash.*, 86 F.3d 1499, 1504 (9th Cir. 1996).

Finally, Bayer argues that it would be prejudiced by permitting intervention because it has already produced materials in reliance on the Protective Order, including the materials at issue in the discovery dispute concerning privilege, and accuses Proposed Intervenors of "swooping in at the last moment to scoop up this fully developed record." Opp., Dkt. 262 at 10 (citing *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*, 62 F.3d 1217, 1220 (9th Cir. 1995)). This prejudice argument largely duplicates the reliance interest argument

addressed above, and lacks merit for the same reason. Here too, the correct remedy is not to deny modification or intervention, but rather to grant both while imposing the "same restrictions on use and disclosure contained in the original protective order." *Foltz*, 331 F.3d at 1133.

The *Empire Blue Cross* case relied upon by Bayer is not to the contrary. There, a health insurer was closely monitoring another insurer's litigation, and had "repeatedly been in contact" with a lawyer involved in that case, who regularly kept it apprised of the case status and sent it nonconfidential case documents. 62 F.3d at 1219. The same day the parties to the other case reached an "oral settlement agreement (a material part of which was that all discovery would be sealed pursuant to a protective order)," the nonparty insurer filed suit, and it then sought modification of the protective order in the since-settled case. *Id.* Here, Proposed Intervenors have not engaged in similar gamesmanship. There is no evidence that the settlement agreement in this case – a class action settlement subject to public disclosure and Court approval, and not a private business settlement like in *Empire Blue Cross* – is conditioned in any way on the sealing of documents, or that such a condition would be proper under Rule 23 or Local Rule 79-5. Bayer's extraordinary charge that Proposed Intervenors have "laid back purposefully, hoping to freeload" on the time and money spent by others lacks support. Opp., Dkt. 262 at 14. Here, with all respect due to class counsel for diligently prosecuting this case, it is the Roundup MDL that was at the vanguard. The operative complaint in this action itself heavily relies on facts and legal proceedings developed at the cost of substantial time, labor, and financial resources spent over nearly a decade in the Roundup MDL and other Roundup cases.

The Court should accordingly grant Proposed Intervenors' timely intervention request.

**V.    Proposed Intervenors May Properly Intervene to Seek Modification of the Protective Order in Their Roles as MDL Co-Lead Counsel.**

Proposed Intervenors seek to intervene in this matter in their role as Court-appointed Co-Lead Counsel in MDL No. 2741. The order appointing them in this role "vest[ed] co-lead counsel with the responsibility for coordinating and overseeing MDL activities for the plaintiffs," including the authority and duty to "[c]oordinate and conduct discovery on behalf of

the plaintiffs," and to "perform such other duties as the co-lead counsel deem necessary, in order to advance the litigation[.]" Dkt. 256-3 at 1–3.

Bayer contends that Proposed Intervenors cannot "establish[] common issues of fact that could justify intervention" because they are merely "counsel to Roundup litigants," and are not the party-litigants themselves. Opp., Dkt. 262 at 15. Bayer also alludes generally to a supposed lack of "vicarious standing to personally intervene in collateral litigation." *Id.* The Ninth Circuit's recent *Cordero* decision disposes of this line of argument: there, the court held that a legal services organization aggrieved by an overly restrictive protective order indeed had standing to appeal its entry, and rejected the argument that only specific clients could challenge it. *Cordero*, --- F.4th ---, 2025 WL 1902292, at *3–4.

Bayer also fails fully to reckon with both the responsibilities specifically vested in Proposed Intervenors by the MDL case management order, and the flexible application of Rule 24(b)'s standards for permissive intervention where the would-be intervenor seeks only modification of a protective order. In the context of such a motion, a "strong nexus of fact or law" is not required to satisfy the "common questions of law or fact" prong of Rule 24(b). *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992) (citing *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990)). As for standing, courts "routinely f[ind] . . . that third parties have standing to challenge protective orders and confidentiality orders in an effort to obtain access to information or judicial proceedings." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994) (footnote omitted).

The authority cited by Bayer has no bearing on these issues. Opp., Dkt. 262 at 10 & n.11. In *Moreno v. AutoZone, Inc.*, one of the problems identified by Judge Chen was not that "lawyers . . . attempted to intervene in place of their clients," as Bayer claims, Opp., Dkt. 262 at 10, but rather that a *plaintiff* represented by the same lawyer as the "real parties in interest" in two other cases against AutoZone did not establish that she herself could seek relief on behalf of the plaintiffs in those cases. *Moreno*, No. 3:05-cv-04432-CRB, 2008 WL 1701871 (N.D. Cal. Apr. 10, 2008). Here, Proposed Intervenors can seek this relief by virtue of their role as MDL Co-

Lead Counsel. In *Callahan v. Brookdale Senior Living Communities*, another "plaintiff in an overlapping PAGA case" sought to intervene and to object to a PAGA settlement. *Callahan*, 42 F.4th 1013, 1016 (9th Cir. 2022). Substantive intervention of this kind to participate in a case is distinct from "limited intervention for the purpose of challenging a protective order." *Beckman Indus., Inc.*, 966 F.2d at 473. And in *Universal Entertainment Corp. v. Aruze Gaming America, Inc.*, one of several interrelated cases involving patent infringement and business torts, the court declined to allow defendants to intervene and seek modification on behalf of "current or former subsidiaries, affiliates, employees, or agents (all of whom are unnamed), or even for other parties in this case." *Universal Entertainment Corp.*, No. 2:18-cv-00585-RFB-NJK, 2020 WL 2308226, at *3 (D. Nev. May 8, 2020). This is wholly unlike MDL counsel seeking modification of a protective order for the benefit of similarly situated plaintiffs harmed by the same product.

For these reasons, Propose Intervenors may properly intervene to seek modification of the Protective Order. If the Court is otherwise inclined to grant the Motion but believes that individual Roundup litigants would be better suited to intervene, Proposed Intervenors request leave to substitute others in their places for this purpose.

## CONCLUSION

Proposed Intervenors respectfully request that their Motion be granted.

Dated: July 25, 2025

Respectfully submitted,

*/s/ Robert J. Quigley*

David Dickens
(*pro hac vice* anticipated)
The Miller Firm LLC
108 Railroad Ave
Orange, VA 22960
ddickens@millerfirmllc.com

Robert J. Quigley
Weitz & Luxenberg, PC
1880 Century Park East, Suite 700
Los Angeles, CA 90067
rquigley@weitzlux.com

Robin Greenwald
(*pro hac vice* anticipated)
Weitz & Luxenberg, PC
700 Broadway
New York, NY 10003
rgreenwald@weitzlux.com

*Counsel for Proposed Intervenors Co-Lead Counsel in MDL No. 2741*

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2025, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system, which sent notice of the filing to all appearing parties of record.

*/s/ Robert J. Quigley*
Robert J. Quigley
