UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEET METAL WORKERS NATIONAL PENSION FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BAYER AKTIENGESELLSCHAFT, et al.,<br><br>Defendants. | Case No. 20-cv-04737-RS<br><br>**ORDER GRANTING MOTION TO INTERVENE AND GRANTING IN PART REQUEST TO MODIFY PROTECTIVE ORDER** |

**I. INTRODUCTION**

Plaintiffs' Counsel from a separate multi-district litigation over Monsanto's Roundup product ("Roundup MDL") request permission to intervene in this securities class case against Monsanto's parent company, Bayer Aktiengesellschaft ("Bayer") and individual officers and board members ("Bayer Defendants"). Movants here ("Proposed Intervenors") contend the discovery taken by the securities Plaintiffs, who have reached a preliminary settlement with Bayer, is relevant to cases within and related to the MDL. Therefore, Proposed Intervenors seek a modification of the Protective Order in this matter to allow Roundup plaintiffs access to documents and depositions produced by Bayer in this case. For the following reasons, the motion is granted as modified.

**II. BACKGROUND**

Two parallel cases are relevant to this motion. First, in 2016, the Judicial Panel on Multidistrict Litigation transferred the first cases in MDL No. 2741 to a court in this district. The Roundup MDL consolidated plaintiffs who claimed Monsanto's product causes cancer. Proposed

Intervenors are the co-lead counsels appointed by the MDL court to coordinate and oversee plaintiffs' activity in that action. These Intervenors also represent plaintiffs in ongoing state court cases, as well as previously settled Roundup claims. While some cases within the MDL have already been tried, many remain on hold. Additionally, a multitude of individual cases are currently proceeding through state courts throughout the country. Bayer did not produce discovery in the consolidated MDL proceedings and has largely avoided participation in the non-MDL cases.

Separately, Plaintiffs in the above-captioned matter brought a putative class action in this Court asserting violations of the Securities Exchange Act of 1934 (the "Exchange Act") in relation to Bayer's acquisition of Monsanto. The case, first filed in 2020, centers on what Bayer knew about and communicated to investors regarding the risk Bayer shouldered by acquiring Monsanto. The Plaintiffs assert the Bayer Defendants misrepresented the legal liability it was taking on with the acquisition.

After Plaintiffs in this case defeated a motion to dismiss, parties exchanged fact and expert discovery. Of relevance to this motion, Plaintiffs deposed several Bayer executives with knowledge of the Monsanto acquisition and received documentation of Bayer's due diligence on Monsanto, as well as information Monsanto provided to Bayer after the acquisition. After the close of discovery, the parties reached a settlement agreement, and the Court granted preliminary approval in June 2025.

Proposed Intervenors assert they became aware of potentially relevant evidence when the parties in this case filed their motion for preliminary approval of their settlement. They argue that because Bayer did not participate in the MDL and has otherwise avoided discovery in those cases, a modification of the protective order in this matter is the only way Roundup plaintiffs can access relevant evidence and avoid duplicative discovery.

Proposed Intervenors seek permission to intervene for the sole purpose of accessing relevant discovery materials. They assert these materials are relevant to Roundup cases and will be used subject to reasonable safeguards for confidential and privileged information. They seek access to the following potentially relevant sets of documents detailed in the securities Plaintiffs'

motion for preliminary approval:

- "60 requests for documents related to Bayer's acquisition of Monsanto, due diligence, and litigation risks associated with Monsanto's Roundup product," which "encompassed internal communications, board minutes, advisory reports, acquisition agreements, financial and reputational risk assessments, and documents on Bayer's . . . investor communications,"
- Interrogatories seeking "information on Bayer's review of documents concerning glyphosate and Roundup during due diligence for the Monsanto acquisition,"
- The Court-ordered production, over Bayer's objection, of "certain due diligence documents identified in [Defendants'] interrogatory responses," which related to Bayer's defense that "Plaintiffs' claims are barred, in whole or in part, because Defendants relied in good faith on the representations, reports, expert opinions, and advice of others whom Defendants believed to be reliable and competent in the matters presented";
- The depositions of "eleven fact witnesses, including Bayer's current and former senior executives, board members, and general counsels,"
- The translation pursuant to the parties' stipulation of certain German-language documents and testimony; and
- Several expert reports and depositions.

Dkt. 253-2 at ¶¶ R–CC.

Discovery in this action was conducted pursuant to a Stipulated Confidentiality and Protective Order. Dkt. 138. The Protective Order requires parties and others to adhere to certain safeguards and procedural requirements in order to use "Protected Material," which is defined to mean "any Disclosure or Discovery Material that is designated as Confidential, Highly Confidential, Highly Confidential – Attorneys' Eyes Only, or Foreign Confidential Personal Data." *Id*. at 6, § 2.22. The Protective Order further provides that parties receiving protected material may use it "only for prosecuting, defending, or attempting to settle this litigation." *Id*. at 13, § 7.1.

Intervenors propose a modification to the current Protective Order, which would allow Roundup litigants to use the discovery materials from this case to prosecute, defend, or settle their own actions. Intervenors' proposed order expands the current Protective Order to include "Glyphosate Injury Actions" – or Roundup cases – and would require parties to those cases to agree to be bound by the relevant terms of the Protective Order in this case to make use of such protected material. The proposal defines Roundup cases as including: (1) the Roundup MDL; (2) cases that have been or will be originally filed in, removed to, or transferred to the Roundup MDL; (3) actions brought in state or federal court by or on behalf of a former user of Monsanto glyphosate-containing products, such as Roundup, alleging injuries or other damages therefrom; and (4) certain actions, claims, causes of action, or adversary proceedings brought by former Roundup users in connection with a possible bankruptcy, insolvency, or similar proceeding of Monsanto or its affiliates. The third of these categories, concerning actions brought in state or federal court by former Roundup users, is modeled on the provision in the Roundup MDL Protective Order that has facilitated the use of MDL discovery materials in many non-MDL cases. Proposed Intervenors explain that the fourth category, concerning certain bankruptcy or insolvency-related claims, is included strictly as a precaution due to recent news reporting that Bayer is considering placing Monsanto in bankruptcy. In order to use protected material in these actions, litigants and certain related individuals (such as attorneys and expert witnesses) would need to agree to the pertinent Protective Order terms governing the treatment of that material. Additionally, nothing in the proposed modification would guarantee the discoverability or admissibility of the materials in a Roundup matter.

Proposed Intervenors attempted unsuccessfully to reach a stipulation on this intervention and modification of the Protective Order. Bayer opposes this intervention, while the securities Plaintiffs take no position.

### III. INTERVENTION

**A. Legal Standard**

A nonparty seeking to modify a protective order to pursue discovery may properly intervene to seek this relief under Rule 24(b). *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). Federal Rule of Civil Procedure 24(b) provides that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." In order to intervene in a case, a movant must show that three requirements are met: "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022) (citation omitted).

### B. Discussion

Proposed Intervenors meet the standard to intervene for the limited purpose of pursuing discovery.

#### 1. Jurisdiction

A proposed intervenor who seeks to modify a protective order need not show an independent jurisdictional basis. This is because the proposed intervenor "ask[s] the court only to exercise that power which it already has, i.e., the power to modify the protective order. For that reason, no independent jurisdictional basis is needed." *Beckman Indus., Inc.*, 966 F.2d at 473. Bayer does not dispute this Court's jurisdiction to grant the requested modification. Therefore, Proposed Intervenors meet the jurisdictional requirement.

#### 2. Timeliness

Intervention is timely under the "three primary factors" that courts assess to determine timeliness: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 836 (9th Cir. 2022) (citation omitted).

Proposed Intervenors argue intervention is conveniently timed because the parties have completed discovery and reached a settlement. They also argue any prejudice put forward by Bayer is merely Bayer's preference that these materials never be used, rather than some real

prejudice in litigation, given Bayer has already reached a settlement in this action. Moreover, Proposed Intervenors assert any prejudice is nullified by requiring new parties using this material to abide by the same rules as the original Protective Order. Finally, Proposed Intervenors argue they have been diligent in seeking this relief.

### a. Delay and Stage of Litigation

Proposed Intervenors did not unduly delay filing this motion after settlement of the litigation. If Proposed Intervenors had sought access to these materials earlier, Bayer may well have argued such an imposition would interfere with ongoing discovery proceedings or settlement negotiations. The parties completed discovery in early 2025. Proposed Intervenors assert they were only put on notice by the settlement announcement made in April 2025. Given that Intervenors filed their motion in June, only two months after being made aware of these documents, Intervenors were timely.

Bayer argues Proposed Intervenors have unduly delayed because they should have been on notice as to these materials while litigation was ongoing. Bayer points to multiple filings in this matter publicizing discovery and discovery-related disputes. *See W. Watersheds Project*, 22 F.4th at 839 (delay is measured "by reference to the point at which the intervenor knew or reasonably should have known" of the basis for intervention). Bayer argues that Proposed Intervenors are attempting to "swoop in" at the eleventh hour and benefit from the completed record in this unrelated case. While Proposed Intervenors could certainly have tracked the litigation more closely, some of the relevant depositions were not completed until late 2024. Therefore, although Intervenors could have sought this relief earlier, they have adequately explained their decision to file now, less than a year after discovery ended in this matter. Moreover, the Ninth Circuit has approved motions to intervene filed years after a case has concluded. By comparison, this motion is clearly timely. *See Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013) (collecting cases).

### b. Prejudice

Bayer primarily contends the timing of Proposed Intervenors' Motion prejudices it.

Bayer's arguments sound in contract—at oral argument, Bayer emphasized its reliance on the Protective Order in striking agreements to produce documents. However, this is not exactly right. Bayer can certainly argue it would have fought more vigorously against certain requests for production, but it cannot point to any decision it would have made differently, if Intervenors had only filed their motion earlier. *See, e.g.*, *Blum*, 712 F.3d at 1354 (rejecting a general reliance interest in the Protective Order).

Relatedly, the post-settlement stage of litigation undermines Bayer's claims of prejudice. The Ninth Circuit has found relevant that when a third-party seeks to intervene after a settlement or adjudication has been reached, that intervention has "little effect on the original parties' underlying rights, particularly when that intervention is for a purpose collateral to challenging the merits of an adjudication. *See id.* (relying on *United Nuclear,* 905 F.2d at 1427).

Bayer asserts the intervention is specifically prejudicial with regards to to due diligence documents ordered produced by the assigned Magistrate Judge. *See* Dkt. 199. Bayer explains that, earlier in this securities litigation, it was forced to choose between producing privileged diligence materials and abandoning its good-faith reliance defense on the diligence performed by its lawyers. The Magistrate Judge, in ordering Bayer to produce due diligence documents to Plaintiffs, found implied waiver for fairness reasons, but allowed Bayer to produce the due diligence documents under an "Attorneys' Eyes Only" designation. *See* Dkt. 199 (relying on *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003).

In Bayer's view, granting intervention and modification with regards to the due diligence documents would cause specific prejudice. Bayer argues such an order would deprive it of the informed choice to assert that defense because now the stakes are greater, given the threatened wider use of these documents. Bayer again cites its reliance interest in producing these documents subject to the very narrow finding of implied waiver made by the Magistrate Judge. However, Bayer cannot convincingly assert it would have abandoned its good-faith defense given this potential exposure. Moreover, Bayer did not strike some sort of bargain with the Magistrate Court because it did not "agree" to produce these documents based on the Court's assurances. Instead, it

1   was subject to an adverse discovery ruling after the Magistrate Judge found implied waiver. As
2   discussed below, nothing in this Order modifies the Magistrate Judge's narrow finding of implied
3   waiver for the purposes of this case. Bayer's arguments as to prejudice are unpersuasive because
4   Bayer is still able to assert this privilege in future proceedings.

   **3. Common Question of Law and Fact**

6   This case concerns the truthfulness of Bayer's representations regarding its due diligence
7   into Monsanto's significant legal liability related to Roundup. Proposed Intervenors assert the
8   interests of people who have been harmed by Roundup, and whose claims against Monsanto
9   expose the company to legal liability. The common questions of law and fact center on Bayer's
10  and Monsanto's knowledge of Roundup's allegedly harmful effects.

11  A "strong nexus of fact or law [is] not required where [an] intervenor merely seeks to
12  challenge a Protective Order." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.--N. Dist. (San Jose)*,
13  187 F.3d 1096, 1100 (9th Cir. 1999) (citing *Beckman Indus., Inc.*, 966 F.2d at 473–74). The Ninth
14  Circuit and numerous Courts of Appeal have afforded the common question requirement
15  "considerable breadth when the movant seeks to intervene for the collateral purpose of challenging
16  a confidentiality order." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1047 (D.C. Cir.
17  1998) (collecting cases). All that is needed to make the necessary showing is a "sufficient common
18  issue between the underlying suit and the intervenors' suits." *Beckman Indus., Inc.*, 966 F.2d at
19  473 (citing *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990)).

20  This Court has acknowledged the link between this case and the Roundup MDL. As
21  outlined in the order denying Bayer's most recent motion to dismiss, Plaintiffs allege not just that
22  Bayer misled investors as to the links between cancer and Roundup but also misled investors as to
23  the litigation risks related to Monsanto. Further, a verdict in any of the MDL cases against
24  Monsanto implies that a link between Roundup and cancer was sufficiently credible to find in
25  favor of the plaintiff. Adverse litigation decisions disclosed to investors that Monsanto faced a
26  serious risk in litigation. What Bayer knew, investigated, said, and did not say to investors about
27  Monsanto's potential legal liability related to Roundup raises numerous common legal and factual

issues with the underlying Roundup litigation. Additionally, information Monsanto shared with Bayer during the acquisition process has bearing on both Monsanto and Bayer's knowledge and culpability.

Bayer does not directly challenge the link between these two cases. Instead, Bayer argues that Proposed Intervenors are improper intervening parties for two reasons. First, Intervenors are merely counsel for MDL plaintiffs, not themselves parties to Roundup cases. However, Proposed Intervenors seek to intervene in this matter in their role as court-appointed co-lead counsel in MDL No. 2741. The order appointing them in this role "vest[ed] co-lead counsel with the responsibility for coordinating and overseeing MDL activities for the plaintiffs," including the authority and duty to "[c]oordinate and conduct discovery on behalf of the plaintiffs," and to "perform such other duties as the co-lead counsel deem necessary, in order to advance the litigation[.]" Dkt. 256-3 at 1–3. Moreover, in a different posture, the Ninth Circuit has held that an entity needs only to show it is aggrieved by a Protective Order to have standing to appeal its entry. *See Cordero v. Stemilt AG Servs., LLC,* No. 23-3548, --- F.4th ---, 2025 WL 1902292, at *3–4 (9th Cir. July 10, 2025) (vacating portion of Protective Order that placed limits on use "in other advocacy [of] information obtained in discovery" in response to motion by third party legal organization) (citation omitted). None of Bayer's cited cases finding against intervention are persuasive here, given the specialized role of MDL lead counsels, who are empowered to stand in the shoes of many plaintiffs. Therefore, Proposed Intervenors have standing to represent the interests of at least the MDL plaintiffs.

Second, Bayer asserts Intervenors have essentially waived their right to file this motion. Bayer claims Proposed Intervenors, acting as MDL lead counsel, conceded in 2020 that documents in this matter were not relevant to the MDL cases. Shortly after the initial complaint in the above-captioned case was filed in July 2020, Plaintiffs' counsel filed an administrative motion to consider whether this case should be related to the Roundup MDL pursuant to Local Rules 3-12(b) and 7-11.4 *See* Dkt. 262-2. The MDL leadership at that time, including two of the moving attorneys here, signed onto a response to that motion, which "d[id] not take a position regarding

ORDER ON MOTION TO INTERVENE
CASE NO. 20-cv-04737-RS

9

whether the Court should decide that the case is, or is not, related to the personal injury cases pending in the MDL." Dkt. 262-4 at 2. This response acknowledged that "in some respects the cases have related, overlapping issues, yet in other respects they are materially different." *Id.* at 3. At that point in 2020, MDL leadership believed "that inquiry [into Bayer's knowledge prior to the acquisition] was not relevant to the personal injury cases as against either Monsanto or Bayer." *Id.* at 2.

Bayer's argument reads far too much into a short response to a related-case administrative motion five years ago. It strains credulity to read this statement as a concession or express admission. Proposed Intervenors are well within their rights to change their position on the relevance of these materials after five years and multiple bellwether cases. As they explain, the cases active in 2020, many of which began before Bayer acquired Monsanto, have almost all resolved. Therefore, the current "wave" of MDL cases includes a greater share of individuals who were exposed to Roundup after Bayer's acquisition of Monsanto. Proposed Intervenors also represent that in 2020, they believed Bayer may offer a global settlement amount to the MDL plaintiffs after purchasing Monsanto. In sum, Proposed Intervenors reasonably did not foresee as of mid-2020 that there would still be a significant volume of Roundup cases, or that these future cases would need to address the changed reality on the ground of Bayer's ownership and active involvement in Monsanto's Roundup business in intervening years.

## IV. MODIFICATION OF PROTECTIVE ORDER

Having established the basis for intervention, Proposed Intervenors must next establish the grounds for modification of the Protective Order. This is a high bar to clear, given that the proposed modification would permit parties in thousands of pending and future lawsuits to access Bayer's documents.

### A. Legal Standard

"Ninth Circuit precedent strongly favors disclosure to meet the needs of parties in pending litigation." *Beckman Indus., Inc.*, 966 F.2d at 475. When a party to related or collateral litigation requests modification of a Protective Order to use the relevant material in that litigation subject to

"reasonable restrictions," the modification request "should generally be granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003) (citations omitted). "Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Id*. at 1131.

To warrant modification of the Protective Order, Proposed Intervenors must first demonstrate "the relevance of the protected discovery to the collateral proceedings and its general discoverability therein," in order to show that "a substantial amount of duplicative discovery will be avoided by modifying the Protective Order." *Id*. at 1132. At this stage, the Protective Order court makes only a "rough estimate of relevance," and it need not decide "disputes over the ultimate discoverability of specific materials covered by the Protective Order[,]" which are left to be resolved by the court overseeing the related litigation. *Id*. at 1133.

Next, the court must "weigh [Defendants'] countervailing reliance interest . . . against the policy of avoiding duplicative discovery." *Id*. A party opposing modification bears the burden of "making a 'particular showing' of good cause" and establishing "specific prejudice or harm now." *Id*. at 1131 (citation omitted). Any reliance interest "will be less with a blanket [protective] order, because it is by nature overinclusive[,]" *id*. at 1133, and therefore "[a]ny legitimate interest . . . in continued secrecy as against the public at large can be accommodated by placing [the collateral litigants] under the same restrictions on use and disclosure contained in the original Protective Order." *Id*. (alterations in original) (citations omitted). Thus, where the discovery materials sought are "relevant to the collateral suit" and any interest in confidentiality may be protected by placing intervenors "under the same use and disclosure restrictions contained in the original Protective Order[,]" modification of the Protective Order should be granted. *Id*. at 1134.

**B. Discussion**

While Proposed Intervenors establish the relevance and general discoverability of the materials sought, Bayer has a weighty reliance interest counseling against modification.

1. **Relevance**

Proposed Intervenors more than meet their burden to show that materials currently covered

by the Protective Order in this matter are "sufficiently relevant to" Roundup litigation "that a substantial amount of duplicative discovery will be avoided by modifying the Protective Order." *Foltz*, 331 F.3d at 1132. For many of the same reasons that inform the intervention analysis above, this securities case and the Roundup cases raise an intertwined set of factual and legal issues. Proposed Intervenors highlight materials produced in response to requests related to Bayer's acquisition of Monsanto, due diligence, and litigation risks associated with Roundup, including reports, expert opinions, and advice used by Bayer before and after acquisition. Proposed Intervenors also seek access to the deposition of eleven fact witnesses, including current and former senior Bayer executives, board members, and general counsels.

Because Bayer did not participate in the MDL and has largely evaded discovery in Roundup litigation, and Monsanto has objected to numerous Bayer-related document requests and refused to produce responsive documents, these are documents previously inaccessible in Roundup litigation. Therefore, the modification of the Protective Order would avoid "wasteful duplication of discovery." *Foltz*, 331 F.3d at 1131.

These documents are potentially relevant for many issues within Roundup cases. Many Roundup cases assert claims for failure to warn, defective design, and negligence, among other causes of action. Monsanto and Bayer's knowledge, motives, and assessment of the exposure associated with potential Roundup litigation before, during, and after merger due diligence bears directly on whether they knew of risks about which they were obligated to warn plaintiffs in Roundup cases. *See Hardeman v. Monsanto Co.*, 997 F.3d 941, 969–70 (9th Cir. 2021) (finding that, under California law, the plaintiff was "required to prove that the link between Roundup and cancer was 'known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution[,]'" and rejecting Monsanto's argument that it was entitled to judgment as a matter of law because it "did not know and could not have known that glyphosate caused cancer in 2012"), *cert. denied*, 142 S. Ct. 2834 (2022).

Monsanto and Bayer's knowledge, motives, and assessment of the exposure associated with potential Roundup litigation directly inform their potential liability for defective design and

negligence. *See Pilliod v. Monsanto Co.*, 67 Cal. App. 5th 591, 619 & n.14 (2021) (finding that "the question [of] whether Monsanto knew or should have known that Roundup or glyphosate were carcinogenic" is probative of whether they are defectively designed); *Hardeman*, 997 F.3d 955 ("California common law requires a manufacturer to warn . . . [of] those risks 'a reasonably prudent manufacturer would have known and warned about' (in negligence).").

While it is true that different Roundup cases have been filed and resolved over many years, apparently without obtaining these materials, that does not defeat their facial relevance. Bayer argues throughout ten years of Roundup litigation, including tens of thousands of cases and dozens of trials, no plaintiff has sought access to the documents at issue here. However, most of these depositions did not exist until fact discovery was completed earlier this year. While the documents certainly existed, Proposed Intervenors have explained their previous focus on Monsanto, rather than Bayer, as the culpable party. Moreover, many plaintiffs harmed by Roundup and glyphosate-containing products have not yet had their day in court. The relevance of these documents for those future cases is not diminished by the choices made in prior proceedings brought by separate plaintiffs.

Bayer is on stronger footing when it argues these documents are not discoverable because they constitute privileged or protected as opinion work product.[1] As the Ninth Circuit acknowledged in *Foltz*, "a collateral litigant has no right to obtain discovery materials that are privileged or otherwise immune from eventual discovery in the collateral litigation," 331 F.3d at 1134. Here, Proposed Intervenors seek broad access to otherwise-privileged documents that Bayer was compelled to produce after a finding of implied waiver. Such "waivers by implication differ materially from the more traditional express waivers," requiring access to be "closely tailored . . . to the needs of the opposing party in litigating the [claim] in question." *Bittaker*, 331 F.3d at 719.

---

[1] The Ninth Circuit has not offered the exact standard for discoverability contemplated by *Foltz*. Proposed Intervenors contend the criteria of Federal Rule of Civil Procedure 26 should govern. *See* Fed. R. Civ. P. 26(b)(1) (describing the scope of discovery in federal litigation, which, similar to state litigation, does not require information "within [the] scope of discovery [to] be admissible in evidence to be discoverable"). This Order accepts this proposition as true.

Under this principle, where "a party complies with the court's conditions and turns over privileged materials, it is entitled to rely on the contours of the waiver the court imposes, so that it will not be unfairly surprised in the future by learning that it actually waived more than it bargained for in pressing its claims." *Id.* at 721. The assigned Magistrate Judge in this case found implied waiver, ordering a protected disclosure of Bayer's due diligence materials with a designation of "attorneys' eyes only".

For purposes of this Motion, the Court is tasked with "mak[ing] only a rough estimate of relevance," considering the "overlap in facts, parties, and issues between the suit covered by the Protective Order and the collateral proceedings." *Foltz*, 331 F.3d at 1132–33. Bayer has strong arguments these documents and depositions are not admissible in future proceedings. However, they are still potentially relevant and therefore "generally discoverable." While Bayer may have to work to protect its interests in other proceedings, this argument goes to prejudice, rather than to the relevance of the discovery materials. Said another way, Bayer can certainly dispute the admissibility of these documents in other proceedings but cannot dispute their relevance as to Bayer and Monsanto's knowledge of potential wrongdoing.

Proposed Intervenors have adequately explained the efficiency gains from modification of the Protective Order. Bayer's executives and corporate headquarters are in Europe, making document transfer and deposition scheduling difficult. Furthermore, the parties here have already expended resources translating large numbers of corporate documents from German into English. Finally, Proposed Intervenors appeal to the efficiency inherent in the MDL form. Intervenors' proposed modification streamlines discovery in hundreds if not thousands of proceedings.

**2. Countervailing Interests**

At this stage, it becomes clear that the relevance and efficiency gains put forth by modifying the Protective Order are too slender of a reed to support the massive relief sought by Intervenors. If Proposed Intervenors have their way, Bayer will be forced to bear the burden of policing the ongoing compliance of an enormous population of dispersed litigants, in perpetuity. Bayer estimates Intervenors seek expansion of the Protective Order to include over 67,000 pending lawsuits.

Proposed Intervenors argue the prejudice to Bayer is minimized because all recipients will be bound by the "same restrictions on use and disclosure contained in the original Protective Order." Motion at 16 (quoting *Foltz*, 331 F.3d at 1133). However, this expansion is an altogether different proposition from monitoring the docket of a single lawsuit, because it increases both the burden of supervision and the risk of non-compliance. *See In re SRAM Antitrust Litig.*, No. 4:07-md-01819-CW, 2011 WL 5193479, at *3 (N.D. Cal. Nov. 1, 2011) (denying modification of Protective Order that would "burden [the producing party] by requiring [it] to continue policing access to confidential information disclosed in the present case"). Proposed Intervenors do not cite to any case awarding such expansion. *See Sherwin-Williams Co.* v. *JB Collision Servs., Inc.*, No. 3:13-cv-01946-LABWVG, 2017 WL 6027005 (S.D. Cal. Dec. 5, 2017) (expanding access to one additional lawsuit); *Hernandez* v. *Cnty. of Monterey*, No. 5:13-cv-02354-BLF, 2021 WL 2166211 (N.D. Cal. May 27, 2021) (same); *Optronics Techs., Inc.* v. *Ningbo Sunny Elec. Co.*, No. 5:16-cv-06370-EJD, 2021 WL 2645804 (N.D. Cal. June 28, 2021) (permitting documents produced in a class action to be reproduced in two related class actions).

Proposed Intervenors argue that such relief is warranted because Monsanto stipulated to a Protective Order in the Roundup MDL that permits equivalent document-sharing. Monsanto, however stipulated to those protections long before it was acquired, Bayer is not Monsanto, and Bayer produced its documents subject to the Protective Order — not the much laxer stipulation that governs the Roundup MDL. Thus, the terms that Monsanto agreed to years ago have no bearing on whether Bayer will suffer prejudice from modification of the Protective Order in this case. Furthermore, when Bayer agreed to the Protective Order in this case, it contemplated only a limited, sealed disclosure to the securities Plaintiffs. Bayer persuasively argues the requested modification would go miles beyond the agreement set forth in the previous Protective Order. While Proposed Intervenors can justify modification as to Roundup MDL plaintiffs, modifying the protective order to allow any past, present, and future plaintiffs bringing a Roundup case to use these materials would too greatly prejudice Bayer.

## V. CONCLUSION

Proposed Intervenors' motion to intervene is granted. Additionally, Proposed Intervenors'

request to modify the Protective Order is granted as follows. The Protective Order is modified to permit the use of protected material, subject to reasonable restrictions, in MDL No. 2741. Proposed Intervenors, as Co-Lead Counsel, are not the proper party to seek such a modification on behalf of every Roundup plaintiff in the country. Therefore, the relief granted is limited to plaintiffs within the MDL.

Nothing in this Order should be interpreted to rule on the specific discoverability or admissibility of protected material in individual cases. In particular, this Order does not address any potential waiver of privilege by Bayer Defendants. In order to use the protected material in a collateral action, a party in the Roundup MDL must agree to the relevant restrictions and requirements for handling protected discovery material, as laid out by the original Protective Order. *See* Dkt. 138.

Proposed Intervenors are ordered to meet and confer with Bayer Defendants and subsequently file a proposed Protective Order, modified pursuant to this Order. Such a proposed Protective Order should be filed no later than November 13, 2025, notwithstanding any requested modification of this deadline for good cause.

**IT IS SO ORDERED**.

Dated: August 15, 2025

_____
RICHARD SEEBORG
Chief United States District Judge