Carol V. Gilden (*admitted pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
200 S. Wacker Drive, Suite 2375
Chicago, IL 60606
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
Email: cgilden@cohenmilstein.com

*Lead Counsel for Plaintiffs and the Class*
[Additional Counsel on Signature Page]

Nicole Lavallee (SBN 165755)
Alexander S. Vahdat (SBN 284963)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
         avahdat@bermantabacco.com

*Liaison Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| SHEET METAL WORKERS' NATIONAL PENSION FUND and INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 710 PENSION FUND, individually and as Lead Plaintiffs on behalf of all others similarly situated, and<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS PENSION FUND OF EASTERN PENNSYLVANIA AND DELAWARE, individually and as Named Plaintiff, on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>    vs.<br><br>BAYER AKTIENGESELLSCHAFT, WERNER BAUMANN, WERNER WENNING, LIAM CONDON, JOHANNES DIETSCH, and WOLFGANG NICKL,<br><br>              Defendants. | Case No. 3:20-cv-04737-RS<br><br>CLASS ACTION<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        October 30, 2025<br>Time:       1:30 p.m.<br>Judge:     Richard Seeborg<br>Courtroom:  3 — 17th Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................II

NOTICE OF MOTION.......................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED .................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 2

PRELIMINARY STATEMENT ............................................................................ 2

PRELIMINARY APPROVAL AND NOTICE...................................................... 4

ARGUMENT ......................................................................................................... 5

I.      THE SETTLEMENT WARRANTS FINAL APPROVAL.............................. 5

     A.    Plaintiffs and Lead Counsel Have Adequately Represented the Class.................. 7

     B.    The Settlement Was Reached After Arm's-Length Negotiations with the Assistance of an Experienced Mediator and Following Substantial Fact and Expert Discovery.................................................................................. 9

     C.    The Relief Provided by the Settlement Is Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors .......... 11

        1.   The Risks of Recovering on a Judgment and Establishing Liability and Damages Support Approval of the Settlement................................................. 12

        2.   The Costs and Delays of Continued Litigation Support Approval of the Settlement..................................................................................... 15

        3.   All Other Factors Set Forth in Rule 23(e)(2)(C) Support Approval of the Settlement.................................................................................. 16

     D.    The Settlement Treats Class Members Equitably Relative to Each Other ........... 18

     E.    The Reaction of the Class to the Settlement ........................................................ 18

II.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED ...................................................................... 19

III.    NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS ......................................................................... 21

CONCLUSION.................................................................................................... 22

APPENDIX A...................................................................................................... 24

1

# TABLE OF AUTHORITIES

**Page(s)**

2

3 **Cases**

4 *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
    568 U.S. 455 (2013)........................................................................................7

5

6 *In re Apple Inc. Device Perf. Litig.,*
    2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) ........................................17

7

8 *In re Aqua Metals, Inc. Sec. Litig.,*
    2022 WL 612804 (N.D. Cal. Mar. 3, 2022)......................................11, 14

9 *In re Bluetooth Headset Prod. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ...................................................................10

10

11 *Campbell v. Facebook, Inc.,*
    951 F.3d 1106 (9th Cir. 2020) ...................................................................6

12 *In re Carrier IQ, Inc. Consumer Privacy Litig.,*
    2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ......................................17

13

14 *Chavez v. Converse, Inc.,*
    2020 WL 4047863 (N.D. Cal. July 8, 2020)...........................................9

15

16 *Cheng Jiangchen v. Rentech, Inc.,*
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019).........................................9

17 *Churchill Vill., L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) .....................................................................6

18

19 *Cruz v. Sky Chefs, Inc.,*
    2014 WL 7247065 (N.D. Cal. Dec. 19, 2014).......................................18

20

21 *In re CV Therapeutics, Inc. Sec. Litig.,*
    2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) (30%) .............................17

22 *Destefano v. Zynga,*
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ........................................22

23

24 *Dudum v. Carter's Retail, Inc.,*
    2016 WL 7033750 (N.D. Cal. Dec. 2, 2016).........................................21

25

26 *Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974).................................................................................21

27 *In re Extreme Networks, Inc. Sec. Litig.,*
    2019 WL 3290770 (N.D. Cal. July 22, 2019)..........................10, 12, 14, 18

28

*Fleming v. Impax Lab'ys Inc.*,
   2022 WL 2789496 (N.D. Cal. July 15, 2022) ...................................................14

*In re Google Location History Litig.*,
   2024 WL 1975462 (N.D. Cal. May 3, 2024) ...................................................15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................6, 10, 11

*Harris v. Vector Mktg. Corp.*,
   2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ...................................................6

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................................................7, 8

*Hunichen v. Atonomi LLC*,
   2021 WL 5854964 (W.D. Wash. Nov. 12, 2021) ...................................................9

*Hunt v. Bloom Energy Corp.*,
   2024 WL 1995840 (N.D. Cal. May 6, 2024) ...................................................11, 22

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ...................................................5

*Karl v. Zimmer Biomet Holdings, Inc.*,
   2022 WL 658970 (N.D. Cal. Mar. 4, 2022) ...................................................6

*In re LinkedIn User Priv. Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ...................................................15

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...................................................7, 17

*Moore v. Verizon Commc'ns Inc.*,
   2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) ...................................................15

*In re Netflix Privacy Litig.*,
   2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...................................................9

*Nguyen v. Radient Pharms. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014) ...................................................14, 19

*In re Nuvelo, Inc. Sec. Litig.*,
   2011 WL 2650592 (N.D. Cal. July 6, 2011) (30%) ...................................................17

*In re NVIDIA Corp. Deriv. Litig.*,
   2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ...................................................9

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...............................................11, 15, 17, 19

*Redwen v. Sino Clean Energy, Inc.*,
    2013 WL 12129279 (C.D. Cal. Mar. 13, 2013) ....................................................12

*Rieckborn v. Velti PLC*,
    2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ..........................................................19

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...................................................................5, 14, 15

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
    2022 WL 409702 (N.D. Cal. Feb. 10, 2022) ..........................................................8

*In re Splunk, Inc. Sec. Litig.*,
    2024 WL 923777 (N.D. Cal. Mar. 4. 2024)................................................6, 12, 15

*In re Stable Road Acquisition Corp.*,
    2024 WL 3643393 (N.D. Cal. Apr. 23, 2024) ..........................................7, 16, 17

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ..........................................................................5

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2016 WL 6248426 (N.D. Cal. Oct. 25, 2016)...................................................10, 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2019 WL 2077847 (N.D. Cal. May 10, 2019) .........................................................8

*Weeks v. Kellogg Co.*,
    2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ...................................................13, 14

**Statutes**

15 U.S.C. § 77z-1(a)(4)...........................................................................................18

PSLRA ....................................................................................................2, 8, 18, 22

**Other Authorities**

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................... *passim*

Rule 30(b)(6) .....................................................................................................8

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on October 30, 2025 at 1:30 p.m., or as soon thereafter as counsel may be heard before the Honorable Richard Seeborg, United States District Judge, at the United States District Court, Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, Courtroom 3 – 17th Floor, San Francisco, California 94102, Plaintiffs, on behalf of themselves and the other members of the certified Class, will and do hereby move, pursuant to Federal Rule of Civil Procedure 23(e)(2), for entry of (1) a judgment granting final approval of the proposed settlement of the above-captioned securities class action; and (2) an order granting approval of the proposed plan for allocating the net settlement proceeds.[1]

This Motion is made pursuant to the Court's June 27, 2025 Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 260) ("Preliminary Approval Order") and is based upon: (1) this Notice of Motion; (2) the supporting Memorandum of Points and Authorities set forth below; (3) the accompanying Declaration of Carol V. Gilden and the exhibits attached thereto; (4) the Stipulation and Agreement of Settlement dated April 23, 2025, and the exhibits attached thereto, filed previously with the Court (ECF No. 253-2); (5) the pleadings and records on file in this action; and (6) other such matters and argument as the Court may consider at the hearing of this Motion.

Pursuant to the Preliminary Approval Order, any objections to the Settlement or proposed Plan of Allocation must be received by October 9, 2025. To date, no objections have been received. A proposed Order Granting Final Approval of the Settlement and Plan of Allocation ("Final Approval Order") will be submitted with Plaintiffs' reply submission, which will be filed on October 23, 2025, after the deadline for objections has passed.

Defendants do not oppose the Motion, and the Parties agree that it may be decided on the

---

[1] Unless otherwise indicated, capitalized terms herein will have their meaning as defined in the Stipulation or in the Declaration of Carol V. Gilden in Support of (I) Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (the "Gilden Declaration" or "Gilden Decl."), filed herewith. In this memorandum, citations to "¶ __" refer to paragraphs in the Gilden Declaration and citations to "Ex. __" refer to exhibits to the Gilden Declaration.

papers, should the Court conclude that a hearing is not required.

<u>**STATEMENT OF ISSUES TO BE DECIDED**</u>

1.      Whether the Court should approve the proposed Settlement of the Action as fair, reasonable, and adequate pursuant to Rule 23(e)(2).

2.      Whether the Court should approve the proposed Plan of Allocation as fair and reasonable.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

In accordance with Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and the certified Class, respectfully submit this memorandum of points and authorities in support of their motion for final approval of (1) the proposed Settlement resolving the Action for the payment of $38,000,000 in cash for the benefit of the Class, and (2) the proposed Plan of Allocation of the proceeds of the Settlement. The Settlement is with all Defendants.

**PRELIMINARY STATEMENT**

Subject to Court approval, Plaintiffs have agreed to settle the Action in exchange for a cash payment of $38,000,000, pursuant to the terms set forth in the Settlement Agreement. Plaintiffs respectfully submit that the Settlement is a strong recovery for the Class. As detailed in the accompanying Declaration and summarized below, the Parties reached the Settlement only after more than five years of hard-fought litigation and extensive arm's-length negotiations before a highly regarded mediator, Miles N. Ruthberg, Esq., of Phillips ADR Enterprises, P.C. (the "Mediator").[2] The Parties reached an agreement in principle to settle the Action for the amount that the Mediator proposed, and the Mediator has endorsed the Settlement as an outcome that is "reasonable and fair for the Class and all parties involved." Ex. 1 ¶ 16.

The Settlement also has the full support of Plaintiffs, who are sophisticated institutional

---

[2] The Gilden Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, among other things: the history of the Action (¶¶ 14–76); the nature of the claims asserted (¶¶ 12–13); the negotiations leading to the Settlement (¶¶ 77–81); the risks and uncertainties of continued litigation (¶¶ 88–100); and the terms of the Plan of Allocation of the Net Settlement Fund (¶¶ 108–122).

investors with significant experience serving as lead plaintiffs under the PSLRA and overseeing counsel in complex litigation, including in securities class actions. *See* Declaration of Lori Wood on behalf of Sheet Metal Workers' National Pension Fund, Ex. 2; Declaration of Michael O'Malley on behalf of International Brotherhood of Teamsters Local No. 710 Pension Fund, Ex. 3; Declaration of John Heenan on behalf of the International Union of Operating Engineers Pension Fund of Eastern Pennsylvania and Delaware ("IUOE"), Ex. 4. Plaintiffs actively participated in the Action and the settlement negotiations and closely supervised the work of Lead Counsel throughout the litigation.

That work was extensive, complex, and time-intensive. During the course of the litigation, Plaintiffs, among other things: (i) drafted two detailed amended complaints; (ii) defeated two motions to dismiss; (iii) moved successfully for class certification; (iv) researched, drafted, propounded, and responded to voluminous and complex document requests, interrogatories, and requests for admission; (v) reviewed approximately 32,185 documents (roughly 200,000 pages) produced by Defendants, including a subset of documents written in German, and approximately 4,953 documents produced by twenty-eight third parties; (vi) served forty-seven subpoenas; (vii) took eleven fact depositions; (viii) litigated numerous discovery disputes; (ix) consulted with experts in the fields of due diligence, mergers and acquisitions, extraterritoriality, and loss causation and damages; (x) took or defended seven depositions related to class certification, including depositions of three of Plaintiffs' Rule 30(b)(6) representatives and of four experts; (xi) served and analyzed 20 expert reports, between class certification and expert discovery; (xii) took four and defended six expert depositions; (xiii) drafted four detailed mediation statements; and (ix) participated in two arm's-length full-day mediations as well as numerous informal discussions with a highly respected mediator. At the time of the settlement, the Parties had completed a three-year fact discovery period and nearly all of expert discovery and were beginning to prepare for summary judgment and *Daubert* motion briefing. *See* ¶¶ 70, 76.

Plaintiffs' thorough and vigorous work gave them a comprehensive understanding of the strengths and weaknesses of their claims. While Plaintiffs maintain that their claims are meritorious and strong, continued litigation and trial would pose considerable risk to the Class's

recovery, as discussed below and in the Gilden Declaration. Throughout the litigation, Defendants vehemently disputed scienter, loss causation, and damages, and challenged the materiality and falsity of the alleged misstatements, in addition to arguing that Plaintiffs' and the class's transactions were extraterritorial and therefore not covered by the Exchange Act. At summary judgment and trial, Defendants would likely rely on the extensive discovery record to continue to argue, for example, that investors did not interpret the alleged misstatements as providing an implied assurance about the scope of Bayer's due diligence on the Roundup Litigation, and that the statements that did address due diligence provided only that Bayer had conducted "customary" diligence. Defendants would also put forward highly qualified experts on each of these issues and would need to prevail only on one core defense to defeat the entire Action. Plaintiffs would also face the risk that the Class would be decertified before trial or on appeal. The Settlement avoids these risks, as well as the additional time and expense that continuing to litigate the case would require, by securing a significant and immediate benefit.

In addition, the Parties have agreed to a Plan of Allocation for the distribution of the proceeds of the Settlement. Lead Counsel developed the Plan with the assistance of Plaintiffs' damages expert and is a fair and reasonable method for distributing the Net Settlement Fund.

Based on these considerations and the relevant factors discussed below, Plaintiffs submit that the Settlement is fair, reasonable, and adequate and satisfies all the standards for final approval under Rule 23 and the Plan of Allocation is a fair and reasonable method for allocating the Net Settlement Fund to Class Members who submit valid and timely Claim Forms. Accordingly, Plaintiffs respectfully request that the Court enter (1) a judgment granting final approval of the Settlement; and (2) an order granting approval of the Plan of Allocation.

## PRELIMINARY APPROVAL AND NOTICE

On June 27, 2025, the Court entered an order preliminarily approving the Settlement and approving the proposed forms and methods of providing notice to Class Members. ECF No. 260. Beginning on July 21, 2025, the Court-appointed Claims Administrator A.B. Data, Ltd. ("A.B. Data") caused the Notice Packet to be mailed by first-class mail or by email to potential Class Members, pursuant to the Preliminary Approval Order. As detailed in the Mailing Declaration,

A.B. Data has mailed or emailed a total of 223,953 Notice Packets to Class Members or Nominees. Declaration of Adam D. Walter ("Mailing Declaration" or "Mailing Decl."), Ex. 5 ¶ 9. Also on July 21, 2025, A.B. Data published the Claim Form and long-form Settlement Notice on the website it created for the Action, www.BayerADRSecuritiesLitigation.com. *Id.* The Case Website also provides downloadable copies of relevant case documents and information about important dates and deadlines, including for lodging objections or requesting to opt back into the class. On July 21, 2025, A.B. Data published the Summary Notice in *The Wall Street Journal* and transmitted it over *PR Newswire*. *Id.* ¶ 11.

The Notice is written in plain language and sets out the essential terms of the Settlement. The Notice informs potential Class Members of, among other things, their right to object to any aspect of the Settlement, the procedure for submitting Claim Forms, and for any potential Class Members who opted out of the Settlement in connection with the Class Notice, the procedure for opting back into the Settlement. This information is also published on Cohen Milstein's Case Website.

To date, Lead Counsel has not received any objections to the Settlement or Plan of Allocation. The deadline to object to the Settlement is October 9, 2025, so Plaintiffs will address any objections that may arise in their reply papers, which are due by October 23, 2025.

## ARGUMENT

## I.    THE SETTLEMENT WARRANTS FINAL APPROVAL

The Ninth Circuit recognizes a "strong judicial policy that favors settlement[]" of disputed claims among private litigants. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("This circuit has long deferred to the private consensual decision of the parties." (citation omitted)). This policy is particularly strong where, as here, "complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).

Federal Rule of Civil Procedure 23(e) provides the standard for judicial approval of any compromise or settlement of class action claims. A court should approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To make that determination, Rule

23(e) instructs courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including the timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Ninth Circuit has identified eight factors relevant to approval of a settlement in addition to the four articulated in Rule 23(e)(2). *See* Fed. R. Civ. P. 23 Advisory Committee Notes to 2018 Amendments, Subdivision (e)(2) (explaining that the Rule 23(e)(2) are not intended to "displace" any court-adopted analysis but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal"). The Ninth Circuit's factors include:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *see also, e.g.*, *In re Splunk, Inc. Sec. Litig.*, 2024 WL 923777, at *3 (N.D. Cal. Mar. 4. 2024) (acknowledging *Hanlon* factors and applying same). "District courts may consider some or all of these factors." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (citing *Rodriguez*, 563 F.3d at 963).[3]

The Court found at the preliminary approval stage that it would "likely be able to finally

---

[3] The Court need not consider the seventh *Hanlon* factor because no government entity participated in the Action. *See, e.g.*, *Karl v. Zimmer Biomet Holdings, Inc.*, 2022 WL 658970, at *3 (N.D. Cal. Mar. 4, 2022) (deeming the factor "neutral" where there was no governmental participant); *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *16 (N.D. Cal. Apr. 29, 2011) (finding the factor "inapplicable").

approve the Settlement under Rule 23(e)(2) as being fair, reasonable, and adequate to the Class." ECF No. 260 ¶ 2. The Court should now finally approve the Settlement as fair, reasonable, and adequate because it satisfies each of the Rule 23(e)(2) and Ninth Circuit factors.

### A.    Plaintiffs and Lead Counsel Have Adequately Represented the Class

In determining whether to approve a class action settlement, courts consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "[A]dequacy of representation . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000)). Here, Plaintiffs and Lead Counsel adequately represented the Settlement Class.

First, Plaintiffs and Lead Counsel share the interests of the other class members. Plaintiffs' claims are based on the same alleged conduct by Defendants as all other Class Members and are typical of all other Class Members. If Plaintiffs were to prove their claims at trial, they would also prove the Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (the investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions"). As the Court found in its order certifying the Class, Plaintiffs and Lead Counsel were "adequate to represent the class" because "Plaintiffs have all purchased Bayer ADRs and have an adequate stake in seeing this case to resolution." ECF No. 175 at 12. *see also, e.g.*, *In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *6 (N.D. Cal. Apr. 23, 2024) (finding lead plaintiff adequately represented the class where plaintiff's claims were typical of and coextensive with the class's claims with no antagonistic interests).

Second, Plaintiffs and Lead Counsel have adequately represented the Class by vigorously prosecuting the Action and negotiating the Settlement. As discussed in further depth in the Gilden Declaration, since their appointment, Plaintiffs and Lead Counsel have, among other things: (i) conducted an extensive investigation of the Action's claims and defenses; (ii) drafted two detailed amended complaints; (iii) defeated two motions to dismiss; (iv) successfully moved for

class certification; (v) engaged in extensive, complex, and cross-border fact and expert discovery; (vi) litigated multiple discovery disputes; (vii) worked closely with experts in the fields of due diligence, mergers and acquisitions, extraterritoriality, and loss causation and damages; and (viii) exchanged extensive mediation briefing. *See generally* Gilden Decl. This zealous prosecution of the Action gave Plaintiffs and Lead Counsel "sufficient information to make an informed decision about settlement," *Hefler*, 2018 WL 6619983, at *6, which they did after two full-day mediations and numerous informal discussions with Ruthberg, an experienced mediator. The Settlement aligns with outcomes in similar cases, as discussed in Plaintiffs' preliminary approval motion, ECF No. 253 at 21–22; ECF No. 253-4 at 34–36, which "further indicat[es] that counsel 'had an adequate information base' when negotiating the settlement," *Hefler*, 2018 WL 6619983, at *6 (quoting Fed. R. Civ. P. 23 Advisory Committee Notes to 2018 Amendments, Subdivision (e)(2)(A)–(B)). Lead Counsel have "continued to represent the Class's interests by diligently complying with the notice plan and other settlement procedures." *Id.*

Lead Plaintiffs and additional Plaintiff IUOE worked closely with and oversaw the work of Lead Counsel throughout the litigation. Plaintiffs are sophisticated institutional investors and are familiar with the obligations of serving as lead plaintiffs and class representatives under the PSLRA and overseeing counsel in complex litigation, including in securities class actions. *See, e.g.*, ECF No. 23 at 14–15. As discussed further in their declarations (Exs. 2–4), Plaintiffs' representatives played active roles in this Action by regularly communicating with Lead Counsel, reviewing material court filings and decisions, gathering and producing relevant documents in response to Defendants' discovery requests, and preparing and sitting for Rule 30(b)(6) depositions in connection with Plaintiffs' class certification motion. Plaintiffs' representatives also participated in the formal mediation sessions as well as numerous informal conversations with Lead Counsel and the Mediator during the course of their efforts to mediate and negotiate the Settlement. *Id.* Plaintiffs agreed to the Settlement based on their informed understanding of the facts of the case and merits of the claims.

Moreover, Lead Counsel "has significant experience in securities litigation and a successful track record of representing investors in cases of this kind." *In re Volkswagen "Clean*

*Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (finding settlement procedurally fair partly on this basis). Due to their extensive prosecution of the Action and others like it (*see generally* Gilden Decl.), Lead Counsel had an informed view of the strengths and weaknesses of Plaintiff's claims and of the risks of continuing to prosecute them. On this basis, Lead Counsel determined that the Settlement was fair, reasonable, and adequate. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 2022 WL 409702, at *7 (N.D. Cal. Feb. 10, 2022) ("Class counsel . . . is experienced in securities litigation so their support behind the settlement carries weight."); *In re NVIDIA Corp. Deriv. Litig.*, 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement.").

Accordingly, Plaintiffs and Lead Counsel have adequately represented the Class. This factor supports final approval of the Settlement.

### B. The Settlement Was Reached After Arm's-Length Negotiations with the Assistance of an Experienced Mediator and Following Substantial Fact and Expert Discovery

In weighing approval of a class action settlement, courts also consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). "Courts have afforded a presumption of fairness and reasonableness . . . where th[e settlement a]greement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013). Additionally, in considering this factor, courts recognize that "[t]he assistance of an experienced neutral mediator during the settlement process supports [a] conclusion that [a settlement a]greement is non-collusive." *Chavez v. Converse, Inc.*, 2020 WL 4047863, at *2 (N.D. Cal. July 8, 2020); *see also Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019) (finding that "the Settlement [was] the product of serious, informed, non-collusive negotiations performed at arms-length" where the parties attended "'an all-day, in-person' [private mediation] session that included 'hard-fought negotiations'" after engaging in "vigorous[]" litigation).

As explained above and in the Gilden Declaration, the Parties reached a settlement only

after two formal, full-day mediations, held five months apart.[4] The mediations included the exchange of robust mediation statements and were followed by additional informal negotiations with the assistance of the Mediator. During the mediation sessions, Lead Counsel and Defendants' Counsel—a well-regarded law firm with deep expertise in defense of securities class actions— vigorously asserted arguments about liability and damages. After the second mediation, unable to bridge the gap between their respective settlement positions, the Parties continued to engage in negotiations through multiple one-on-one discussions with the Mediator, who ultimately issued a $38 million Mediator's Proposal to resolve all of Plaintiffs' claims. The Parties ultimately accepted the Mediator's proposal following further discussion and consideration. The Mediator has since endorsed the Settlement "in all respects" and agrees that the Settlement "was in the best interests of the Parties that they avoid the burdens and risks associated with taking a case of this size and complexity to trial." Ex. 1 ¶ 16.

Throughout this process, Plaintiffs were actively involved, attending the mediations remotely and/or in person and participating in numerous telephone calls with Lead Counsel, including a call with Lead Plaintiffs, the Mediator and Lead Counsel. At all times, the negotiations were adversarial and at arm's length, and were conducted by capable and experienced counsel with the assistance of an experienced, neutral mediator. Accordingly, this factor favors final approval of the Settlement.

This Rule 23(e)(2) factor, as well as the "adequate representation" factor discussed above, "overlap[s] with certain *Hanlon* factors, such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019). The Settlement has none of the indicia of possible collusion identified by the Ninth Circuit, such as a "clear-sailing" fee agreement or a provision that would allow settlement proceeds to revert to Defendants. *See In re Bluetooth*

---

[4] "A breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature." *Hunichen v. Atonomi LLC*, 2021 WL 5854964, at *6 (W.D. Wash. Nov. 12, 2021) (citation omitted), *report and recommendation adopted*, 2022 WL 4131590 (W.D. Wash. Sept. 12, 2022).

*Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). As discussed in Plaintiffs' preliminary approval motion, the Settlement is not a claims-made settlement and there is no reversion. ECF No. 253 at 8; *see also* Stipulation ("Stip."), ECF No. 253-2 at 25 ¶ 17.

Additionally, the extent of discovery and stage of the proceedings also favor final approval. "[E]xtensive review of discovery materials indicates [that Lead Counsel] had sufficient information to make an informed decision about the Settlement . . . [which] favors approving the Settlement." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016). Here, Plaintiffs took extensive discovery that enabled them and Lead Counsel to evaluate comprehensively the strength of their claims and the risks of continued litigation. Before settling, Plaintiffs completed fact discovery, which included propounding numerous document requests to Defendants, serving 47 subpoenas, reviewing over 200,000 pages of documents, and deposing 11 fact witnesses, among other things. The Parties also nearly completed expert discovery—only one expert deposition remained after the exchange of 13 expert reports and six other expert depositions—and were preparing to brief summary judgment and *Daubert* motions when the Settlement was reached. In addition to discovery, Plaintiffs briefed numerous successful dispositive motions and prepared for and participated in two mediations.

The advanced stage of this Action, including the near-completion of discovery, gave Plaintiffs and Lead Counsel sufficient familiarity with the facts of the case to allow them to "make an informed decision regarding the merits of the Settlement." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008); *see also, e.g.*, *Volkswagen*, 2016 WL 6248426, at *13–14 (finding that these factors supported final approval at an earlier stage of litigation than in this Action). These *Hanlon* factors therefore support final approval of the Settlement.

C.    **The Relief Provided by the Settlement Is Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors**

As part of the Rule 23(e)(2) analysis, courts also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). This Rule 23(e)(2) factor encompasses at least three of the additional *Hanlon* factors: "the strength of the case"; "the risk, expense,

complexity, and likely duration of further litigation and the risk of maintaining class action status throughout the trial"; and "the settlement amount." *Hanlon*, 150 F.3d at 1027.

The $38 million Settlement Amount is an excellent recovery for the Class. The Settlement recovers over 9% of the potential $417,000,000 maximum damages amount, as estimated by Plaintiffs' damages expert. Courts regularly approve settlements with equal or lower percentage recoveries. *See, e.g.*, *Omnivision*, 559 F. Supp. 2d at 1042 (finding a 9% recovery a "substantial achievement on behalf of the class"); *In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *6 (N.D. Cal. Mar. 3, 2022) (approving settlement that recovered approximately 7.3% of likely recoverable damages, which was "in line with comparable class action settlements"); *Hunt v. Bloom Energy Corp.*, 2024 WL 1995840, at *6 (N.D. Cal. May 6, 2024) (approving settlement recovering 5.2% of estimated damages); *see also* Cornerstone Research, *Securities Class Action Settlements: 2024 Review and Analysis* 21 (2024), https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf (last visited Aug. 19, 2025) (2024 median and average settlements of securities class actions as a percentage of calculated total statutory damages were 7.1% and 8.0%, respectively).

The Settlement is also adequate because it provides the Class with a certain and immediate recovery that continued litigation would put at risk. Although Plaintiffs believe that their claims are strong, "[s]ecurities actions in particular are often long, hard-fought, complicated, and extremely difficult to win." *Extreme Networks*, 2019 WL 3290770, at *8; *see also Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12129279, at *5 (C.D. Cal. Mar. 13, 2013) ("[S]ecurities class actions present hurdles to proving liability that are difficult for plaintiffs to clear."). This case is no exception.

### 1. The Risks of Recovering on a Judgment and Establishing Liability and Damages Support Approval of the Settlement

As discussed in detail in the Gilden Declaration and below, continued prosecution of the Action presented numerous risks to establishing liability and damages and, therefore, to securing any recovery for the Class. "Approval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'" *Splunk Inc.*, 2024 WL 923777,

at *5 (quoting *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010)). The Settlement provides a significant, immediate, and "adequate" relief for the Class that avoids these "significant barriers." *Id.*

Specifically, Defendants strenuously asserted various arguments disputing the falsity and materiality of the alleged misstatements, as well as the required elements of scienter, loss causation, and damages.[5] Defendants were certain to continue to propound these arguments through summary judgment, trial, post-trial motions, and appeals.

**_Falsity and Materiality._** Defendants would have argued that the record does not support Plaintiffs' contention that investors interpreted Defendants' statements from before the verdict in the first Roundup trial as providing an implied assurance that Bayer had performed an investigation of Monsanto's internal documents and correspondence concerning the legal risks inherent to the Roundup Litigation. Rather, Defendants would contend, these statements did not refer to the legal risks at all. For the other statements, Defendants would argue that they were not false or misleading but rather statements of opinion that Bayer had conducted "customary" and "appropriate" due diligence.

Defendants retained an expert witness to testify against Plaintiffs' experts on these issues, and signaled to Plaintiffs that they would move to exclude Plaintiffs' experts. Even if Plaintiffs defeated Defendants' *Daubert* motions, "[t]he fact that th[ese] issue[s], which [are] at the heart of [P]laintiffs' case, would have been the subject of competing expert testimony" at trial "suggests that plaintiffs' ability to prove liability was somewhat unclear; this favors a finding that the settlement is fair." *Weeks v. Kellogg Co.*, 2013 WL 6531177, at *13 (C.D. Cal. Nov. 23, 2013) (citing *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007)).

**_Scienter._** Defendants would also likely argue that Plaintiffs would not be able to prove scienter because the Individual Defendants testified that they had no direct knowledge of Bayer's due diligence on the Roundup Litigation, had no experience in the customs and practices of merger

---

[5] Defendants also vigorously asserted several affirmative defenses, including that Plaintiffs' and Class members' transactions in Bayer ADRs were structured so as to be extraterritorial and beyond the reach of U.S. federal securities laws.

1    due diligence on U.S. litigation, and their statements were reviewed by the Company's lawyers.

2    ___**Loss Causation.**___ Defendants would also challenge Plaintiffs' theory of loss causation,

3    disputing that the market did not discover the alleged deficiencies in Bayer's due diligence until

4    Monsanto began losing jury trials in Roundup Litigation cases in mid-2018. Instead, Defendants

5    would contend, information about the extent of Bayer's due diligence into the Roundup Litigation

6    had become public long before the jury verdicts—through, for example, the public release of

7    internal Monsanto documents in March 2017. Defendants might also have questioned the legal

8    basis for Plaintiffs' loss causation theory, taking the position that the Ninth Circuit has never

9    adopted the materialization-of-the-risk theory. During expert discovery, Defendants put forward

10   an expert to rebut Plaintiffs' expert's loss causation methodologies, which would make a favorable

11   jury verdict for Plaintiffs uncertain. *Weeks*, 2013 WL 6531177, at *13.

12   ___**Damages.**___ Defendants' expert also lodged several credible challenges to Plaintiffs'

13   damages expert's damages calculation. Plaintiffs' damages expert estimated that based on a

14   standard constant-dollar out-of-pocket damages methodology, Plaintiffs' maximum possible

15   damages in the case was approximately $417 million. Defendants would continue to argue,

16   however, that Plaintiffs' damages expert's methodology was unreliable and inappropriate because,

17   among other reasons, it relied on implausible assumptions and improperly omitted the price impact

18   of certain events. Defendants also would also argue that a significant percentage of the Class

19   suffered no actual out-of-pocket loss because they acquired Bayer ADRs in exchange for equally

20   valued Bayer stock. Rather than Plaintiffs' expert's estimate of $417 million, Defendants planned

21   to assert that the total damages if liability were otherwise proven was instead $24.5 million.

22   Defendants' proposed damages amount would represent a significantly smaller recovery for

23   Plaintiffs—assuming that Plaintiffs could prove liability in the first place.

24   Proving and calculating damages at trial would require the jury to undertake a complex

25   analysis of the contrasting damages methodologies presented in a "battle of the experts," the

26   outcome of which is "inherently difficult to predict and risky." *Nguyen v. Radient Pharms. Corp.*,

27   2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014). The "risks inherent in a 'battle of the experts'

28   of complex economic theories in a jury trial" favor final approval of the settlement. *Extreme*

1    *Networks*, 2019 WL 3290770, at *8.

2         Defendants' aggressive, multifaceted attack on Plaintiffs' case would be challenging to

3    overcome at trial, particularly because Plaintiffs would have to prove all elements of their claims

4    to prevail while Defendants would only need to prove one core defense to defeat the entire Action.

5    Plaintiffs would also face the additional risk that the Class would be decertified, or the Class Period

6    shortened, before trial or on appeal. *See Aqua Metals*, 2022 WL 612804, at *6 ("class certification

7    orders are 'inherently tentative'" (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160

8    (1982))); *Rodriguez*, 563 F.3d at 966 ("A district court may decertify a class at any time.");

9    *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *6 (N.D. Cal. July 15, 2022) ("[T]here is

10   always a risk of decertification—especially when . . . Plaintiffs must overcome causation and

11   damages defenses."). Potential decertification is an "inescapable and weighty risk that weighs in

12   favor of a settlement." *In re Google Location History Litig.*, 2024 WL 1975462, at *6 (N.D. Cal.

13   May 3, 2024).

14        Ultimately, while Plaintiffs maintain that their case is strong, the uncertainty of recovery

15   due to these significant risks cautions against proceeding to litigate the case and supports

16   approving the Settlement. *See Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *6 (N.D.

17   Cal. Aug. 28, 2013) (finding that the strength of plaintiff's case favored settlement because

18   plaintiff admitted that it would face hurdles in establishing class certification, liability, and

19   damages); *Splunk*, 2024 WL 923777, at *5 (same).

20                   **2.    The Costs and Delays of Continued Litigation Support Approval of
                            the Settlement**

21

22        Continuing to litigate this Action would require substantial additional costs and

23   significantly delay any recovery for the Class. Absent the Settlement, obtaining a recovery for the

24   Class would require, among other things: (i) litigating the motion to substitute Plaintiff's due

25   diligence expert, which was pending when the Parties filed the Notice of Settlement; (ii) defeating

26   Defendants' motions for summary judgment; (iii) overcoming *Daubert* motions that Defendants

27   have already signaled they would file; (iv) briefing and responding to motions *in limine*;

28   (v) prevailing at trial; and (v) defeating any post-trial motions. Additionally, regardless of the

outcome at trial, it is near certain that the Action would be appealed, given that the case has been vigorously litigated for over five years. *See Rodriguez*, 563 F.3d at 966 ("[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years," which "favor[ed] the settlement").

The foregoing would impose significant costs on the Class—including increased attorneys' fees and litigation expenses—and delay the Class's ability to recover—assuming that Plaintiffs would ultimately prevail on all their claims. The Settlement, "which offers an immediate and certain award for a large number of potential class members, appears a much better option." *Omnivision*, 559 F. Supp. 2d at 1042. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015). Final approval is preferable here, where the Settlement is plainly adequate.

### 3. All Other Factors Set Forth in Rule 23(e)(2)(C) Support Approval of the Settlement

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)–(iv). Each of these factors further supports approval of the Settlement or is neutral to the analysis.

First, the proposed methods for processing Class Members' claims and distributing the proceeds of the Settlement to Authorized Claimants are reasonable and effective procedures that have been used widely in securities class action litigation. The Net Settlement Fund will be distributed to Class Members who submit eligible Claim Forms with required documentation to the Court-appointed Claims Administrator A.B. Data, an independent company with extensive experience handling class action settlement administration, including in securities actions. The Court previously appointed A.B. Data to disseminate the Class Notice. A.B. Data will process the Claim Forms under Lead Counsel's supervision, provide claimants with an opportunity to cure

1   any deficiencies in their claims or request review of the denial of their claims by the Court, and

2   then mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund after Court

3   approval. This type of claims processing is "standard in securities class action settlements" and

4   "has been long found to be effective, as well as necessary," because neither Plaintiffs nor

5   Defendants "possess the individual investor trading data required for a claims-free process to

6   distribute the Net Settlement Fund." *Stable Road*, 2024 WL 3643393, at *7 (approving settlement

7   with a near-identical distribution process).

8         Second, the relief provided for the Class is also adequate when considering the terms of

9   the proposed award of attorneys' fees. As discussed further in the accompanying Motion for

10  Attorneys' Fees, the proposed attorneys' fees of 27% of the Settlement Fund, to be paid upon

11  approval by the Court (Stip. ¶ 20), are fair and reasonable in light of, among other things, the

12  efforts of Lead Counsel, the successful result achieved for the Class, and the risks in the litigation.

13  This fee request is consistent with those in many other securities cases, in which courts have

14  approved attorneys' fee awards that exceed the 25% "benchmark" because of "the circumstances

15  of [the] case." *In re Apple Inc. Device Perf. Litig.*, 2023 WL 2090981, at *12 (N.D. Cal. Feb. 17,

16  2023); *see also, e.g.*, Order Granting Motion for Attorneys' Fees and Litigation Expenses ¶ 5,

17  *Boston Ret. Sys. v. Uber Techs., Inc.*, No. 3:19-cv-06361 (N.D. Cal. Dec. 4, 2024) (Seeborg, J.),

18  ECF No. 481 (approving fee award of 29% of the settlement fund); *Mego Fin.*, 213 F.3d at 463

19  (33.3%); *Omnivision*, 559 F. Supp. 2d at 1047 (28%); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL

20  2650592, at *3 (N.D. Cal. July 6, 2011) (30%); *In re CV Therapeutics, Inc. Sec. Litig.*, 2007 WL

21  1033478, at *1 (N.D. Cal. Apr. 4, 2007) (30%). Additionally, approval of the proposed attorneys'

22  fees award is separate from approval of the Settlement, and the Settlement may not be terminated

23  based on any ruling with respect to attorneys' fees. Stip. ¶ 23.

24        Finally, the only other agreement entered into by the Parties is a standard Supplemental

25  Agreement that allowed Defendants to terminate the Settlement if a specific, agreed-upon number

26  of Class Members opted out of the Settlement. *Id.* ¶ 46. However, because the Preliminary

27  Approval Order declined to reopen the opt out period (ECF No. 260 ¶ 12), the Supplemental

28

1  Agreement is moot.[6]

2      **D.    The Settlement Treats Class Members Equitably Relative to Each Other**

3      The Settlement treats all Class Members equitably. As discussed below, pursuant to the

4  Plan of Allocation, Authorized Claimants will receive their *pro rata* shares of the recovery based

5  on their Recognized Losses in Bayer ADRs. Plaintiffs will receive the same level of *pro rata*

6  recovery (as calculated under the Plan of Allocation) as all other Class Members. *See*

7  ECF No. 253-2 at 80–85. Courts have found similar plans that award *pro rata* shares to each class

8  member to be fair and reasonable. *See, e.g.*, *Extreme Networks*, 2019 WL 3290770, at *8

9  (approving plan of allocation using *pro rata* basis of distribution); Order Approving Plan of

10  Allocation, *Uber Techs.*, ECF No. 482 (same).

11      As discussed in the accompanying Motion for Attorneys' Fees, Plaintiffs request

12  reimbursement of their reasonable costs and expenses directly related to their participation in the

13  Action. Reimbursement would not constitute preferential treatment, as such awards are explicitly

14  contemplated by the PSLRA as supplemental to Plaintiffs' *pro rata* recovery. *See* 15 U.S.C. § 78u-

15  4(a).

16      **E.    The Reaction of the Class to the Settlement**

17      "A court may appropriately infer that a class action settlement is fair, adequate, and

18  reasonable when few class members object to it." *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at

19  *5 (N.D. Cal. Dec. 19, 2014). In accordance with the Preliminary Approval Order and discussed

20  in greater detail below, A.B. Data disseminated the Notice and Claim Form to potential Class

21  Members and nominees via mail and email and caused the Summary Notice to be transmitted over

22  *PR Newswire* and published in *The Wall Street Journal*. *See* Ex. 5 ¶¶ 5–11. The Notice provided

23  the essential terms of the Settlement and informed potential Class Members of, among other things,

24

---

25      [6] Even if the Supplemental Agreement were not moot, it would not undermine the fairness
or reasonableness of the Settlement. "This type of agreement is standard in securities class action
26  settlements and has no negative impact on the fairness of the [s]ettlement." *Stable Road*, 2024
WL 3643393, at *7 (quoting *Christine Asia Co., Ltd. v. Ma*, 2019 WL 5257534, at *1 (S.D.N.Y.
27  Oct. 16, 2019)); *see also In re Carrier IQ, Inc. Consumer Privacy Litig.*, 2016 WL 4474366, at
*5 (N.D. Cal. Aug. 25, 2016) ("[O]pt-out deals are not uncommon as they are designed to ensure
28  that an objector cannot try to hijack a settlement in his or her own self-interest.").

their right to object to any aspect of the Settlement as well as the procedure for submitting Claim Forms. To date, A.B. Data has received 3,015 claims, of which 2,509 include Bayer ADRs and 506 are ineligible. *Id.* ¶ 9.

Lead Counsel has received no objections to the Settlement or the Plan of Allocation. However, the October 9, 2025 deadline set by the Court for Class Members to object to the Settlement has not yet passed. Plaintiffs will therefore address any objections that may be received in their reply papers, due by October 23, 2025.[7]

## II.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

In addition to seeking final approval of the Settlement, Plaintiffs also seek final approval of the Plan of Allocation. A plan for allocating settlement proceeds should be approved if it is fair, reasonable, and adequate, "the same standard[] of review applicable to approval of the settlement as a whole." *Omnivision*, 559 F. Supp. 2d at 1045 (citing *Class Pls. v. City of Seattle*, 955 F.2d 1268, 1284–85 (9th Cir. 1992)). "[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Rieckborn v. Velti PLC*, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015) (quoting *Nguyen*, 2014 WL 1802293, at *5). "[A] plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *Id.* (quoting *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994)).

The proposed Plan of Allocation provides a fair, reasonable, and adequate method for equitably allocating the Net Settlement Fund among Class Members who submit valid and timely Claims Forms. Lead Counsel developed the Plan in consultation with Plaintiffs' damages expert,

---

[7] The Notice also informed potential Class Members of their right to opt back into the Settlement. After the Court granted Plaintiffs' motion for class certification, Plaintiffs worked with A.B. Data to disseminate Class Notices, which summarized the Action and provided potential Class Members the opportunity to request exclusion from the Class. *See* ECF No. 200. Only 11 requests for exclusion from the Class were received. In light of the extensive Class Notice program, Plaintiffs submitted, and the Court agreed, that a second opportunity to request exclusion was not necessary, as discussed above. ECF No. 253 at 14; ECF No. 260 ¶ 12. As a result, the maximum number of requests to opt out of the Settlement is 11. Class Members who previously opted out of the Class have until October 9, 2025 to opt back in.

Chad Coffman, a financial economist, initially of Global Economics Group LLC and later of Peregrine Economics LLP. ¶ 106. The Plan provides that the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their recognized losses. ECF No. 253-2 at 80 ¶¶ 1, 4. However, if the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant. *Id.* ¶ 4.

To determine Authorized Claimants' Recognized Losses, Plaintiffs' expert calculated the amount of estimated artificial inflation in the price of Bayer ADRs during the Class Period that was proximately caused by Defendants' false and misleading statements by considering the price changes in Bayer ADRs in reaction to the alleged corrective disclosures, adjusting for price changes attributable to market and industry factors. ¶ 110. The Plan of Allocation provides that a Recognized Loss will be calculated for each purchase or acquisition of Bayer ADRs during the Class Period that is listed in the Claim Form and for which adequate documentation is provided. ECF No. 253-2 at 81 ¶ 6(1). In general, the Recognized Loss Amount will be the lesser of: (a) the difference between the amount of alleged artificial inflation in Bayer ADRs at the time of purchase or acquisition and the time of sale, or (b) the difference between the purchase price and the sale price for the ADRs. Claimants who purchased and sold all their shares before the first alleged corrective disclosure will have no Recognized Loss under the Plan of Allocation with respect to those transactions because the level of artificial inflation is the same between the corrective disclosures and any loss suffered on those sales would not be the result of the alleged misstatements. *See id.* ¶ 6(2). The Plan of Allocation also applies the PSLRA's damages limitation to the calculation of Recognized Losses. *Id.* at 81 n.6.

The Plan of Allocation provides recovery only for publicly traded Bayer ADRs. *Id.* at 82 ¶ 11. Option contracts to purchase or sell Bayer ADRs are not securities eligible to participate in the Settlement; however, Bayer ADRs purchased or sold through the exercise of an option are eligible to participate. *Id.* The purchase/sale date and price of such shares are the exercise date and price of the option. *Id.*

If the sum total amount of Recognized Claims of all Authorized Claimants who are entitled

to receive settlement proceeds is greater than the Net Settlement Fund, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. The *pro rata* share will be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *Id.* at 82–83 ¶ 13. If the Net Settlement Fund exceeds the sum total amount of Recognized Claims, the excess amount will be distributed *pro rata* to all Authorized Claimants. *Id.* at 83 ¶ 14. After such distribution, any balance that remains in the Net Settlement Fund that is not feasible or economical to reallocate, after payment of fees, taxes, and expenses, will be contributed to the Council for Institutional Investors ("CII"),[8] or such other organization approved by the Court. *Id.* ¶ 15.

Based on the above and the additional provisions detailed in the Plan, Lead Counsel believe that the Plan of Allocation provides a fair, reasonable, and adequate method to allocate the Net Settlement Fund equitably among the Class Members who suffered losses because of the conduct alleged in the Action. To date, Plaintiffs have received no objections to the proposed Plan of Allocation. ¶ 119.

## III.    NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Rule 23 requires "the best notice" to Class Members "that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also id.* 23(e)(1) (requiring notice of a settlement to be made in "a reasonable manner"); *Dudum v. Carter's Retail, Inc.*, 2016 WL 7033750, at *3 (N.D. Cal. Dec. 2, 2016). Notice must also satisfy due process requirements by being "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v.*

---

[8] As explained in Plaintiffs' Motion for Preliminary Approval (ECF No. 253 at 15 n.3), CII is a nonprofit, nonpartisan association of benefit funds, foundations, and endowments that seeks to educate its members, policymakers, and the public about corporate governance, shareowner rights, and related investment issues. *See, e.g.*, Order Granting Plan of Allocation, *Uber Techs.*, ECF No. 482 (granting plan of allocation that designates CII as *cy pres* recipient in securities class action); Order Authorizing Distribution of Net Settlement Fund to Authorized Claimants and Related Relief, *Vancouver Alumni Asset Holdings Inc. v. Daimler AG*, No. 2:16-cv-02942 (C.D. Cal. Mar. 13, 2023), ECF No. 346 (same).

*Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

Both the substance of the Notice and the method of its dissemination to potential Class Members satisfied these standards. The Court-approved Notice includes all the information required by Federal Rule of Civil Procedure 23(c)(2)(B), the PSLRA, and the Northern District of California Procedural Guidance for Class Action Settlements. A.B. Data, the Court-approved Claims Administrator, began mailing or emailing copies of the Notice Packet to potential Class Members on July 21, 2025 and, as of September 18, 2025, had disseminated over ~~223,953~~278,976 copies of the Notice Packet to potential Class Members and nominees. *See* Ex. 5 ¶ 9.[9] A.B. Data published copies of the Notice, Claim Form, Stipulation, and other pertinent case filings on the Case Website, www.BayerADRSecuritiesLitigation.com, on July 21, 2025, and copies of the Notice and Claim Form were also available on Plaintiffs' Counsel's websites. *See id.* ¶ 13. In addition, A.B. Data caused the Summary Notice to be transmitted over *PR Newswire* and published in *The Wall Street Journal* on July 21, 2025. *Id.* ¶ 11. A.B. Data also maintained a toll-free telephone number for potential Class Members to call to learn about the Settlement. *Id.* ¶ 12.

Mailing Notice Packets to all Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over the newswire, and published on internet websites, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, Final Order and Judgment ¶ 3, *Uber Techs.*, ECF No. 480 (finding that dissemination of notice pursuant to similar notice plan satisfied the notice requirements of Rule 23, the Due Process Clause, and the PSLRA); *Hunt*, 2024 WL 1995840, at *4 (same); *Destefano v. Zynga*, 2016 WL 537946, at *7 (N.D. Cal. Feb. 11, 2016) (same).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement and the Plan of Allocation for distribution of the Net Settlement Fund.

---

[9] To date, 1,030 Notice Packets were returned to A.B. Data as undeliverable. Ex. 5 ¶ 10.

Dated: September 25, 2025

Respectfully submitted,

*/s/ Carol V. Gilden*

Carol V. Gilden (*pro hac vice*)
cgilden@cohenmilstein.com
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
200 S. Wacker Drive, Suite 2375
Chicago, IL 60606
Telephone: (312) 357-0370
Facsimile: (312) 357-0369

Steven J. Toll (*pro hac vice*)
stoll@cohenmilstein.com
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
1100 New York Ave NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Chris Lometti (*pro hac vice*)
clometti@cohenmilstein.com
Benjamin F. Jackson (*pro hac vice*)
bjackson@cohenmilstein.com
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
88 Pine Street, Fourteenth Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

*Lead Counsel for Plaintiffs and the Class*

Nicole Lavallee (SBN 165755)
nlavallee@bermantabacco.com
Alexander S. Vahdat (SBN 284963)
avahdat@bermantabacco.com
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

*Liaison Counsel for Plaintiffs*

*Attorneys for Lead Plaintiffs Sheet Metal
Workers' National Pension Fund and
International Brotherhood of Teamsters
Local No. 710 Pension Fund, and Named
Plaintiff International Union of Operating
Engineers Pension Fund of Eastern
Pennsylvania and Delaware*

**APPENDIX A**

**United States District Court for the Northern District of California
Procedural Guidance for Class Action Settlements – Final Approval**

| Procedural Guidance | Where Guidance Is Addressed |
|---|---|
| **1) Class Members' Response** | |
| The motion for final approval should include information about: | |
| a) The number of undeliverable class notices and claim packets; | Motion at 21 n.7; Mailing Decl. ¶ 10 |
| b) The number of class members who submitted valid claims; | Motion at 18; Mailing Decl. ¶ 9 |
| c) The number of class members who opted out; and | Motion at 19 n.6 |
| d) The number of class members who objected to or commented on the settlement. | Motion at 5, 19 |
| In addition, the motion for final approval should respond to any objections. | Motion at 5, 19 |
| **2) Attorneys' Fees** | |
| All requests for approval must include detailed lodestar information, even if the requested amount is based on a percentage of the settlement fund. Declarations of class counsel as to the number of hours spent on various categories of activities related to the action by each biller, together with hourly billing rate information may be sufficient, provided that the declarations are adequately detailed. Counsel should be prepared to submit copies of detailed billing records if the court orders. | Exs. 6A, 6B, 7A, 7B |
| Regardless of when they are filed, requests for attorneys' fees must be noticed for the same date as the final approval hearing. If the plaintiffs choose to file two separate motions, they should not repeat the case history and background facts in both motions. The motion for attorneys' fees should refer to the history and facts set out in the motion for final approval. | *See generally* Motion for Attorneys' Fees |
| **3) Service Awards** | |
| All requests for service awards must be supported by evidence of the value provided by the proposed awardees, the risks they undertook in participating, the time they spent on the litigation, and any other justifications for the awards. | Exs. 2–4 |
| **4) Electronic Versions** | |
| Electronic versions (Microsoft Word or Word Perfect) of all proposed orders and judgments should be submitted to the presiding judge's Proposed Order (PO) email address at the time they are filed. | To be done upon filing |