Carol V. Gilden (*admitted pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
200 S. Wacker Drive, Suite 2375
Chicago, IL 60606
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
Email: cgilden@cohenmilstein.com

*Lead Counsel for Plaintiffs and the Class*
[Additional Counsel on Signature Page]

Nicole Lavallee (SBN 165755)
Alexander S. Vahdat (SBN 284963)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
        avahdat@bermantabacco.com

*Liaison Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| SHEET METAL WORKERS' NATIONAL PENSION FUND and INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 710 PENSION FUND, individually and as Lead Plaintiffs on behalf of all others similarly situated, and<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS PENSION FUND OF EASTERN PENNSYLVANIA AND DELAWARE, individually and as Named Plaintiff, on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>BAYER AKTIENGESELLSCHAFT, WERNER BAUMANN, WERNER WENNING, LIAM CONDON, JOHANNES DIETSCH, and WOLFGANG NICKL,<br><br>　　　　　Defendants. | Case No: 3:20-cv-04737-RS<br><br>CLASS ACTION<br><br>**LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:　　　　October 30, 2025<br>Time:　　　　1:30 p.m.<br>Judge:　　　Richard Seeborg<br>Courtroom:　3 — 17th Floor |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. I

TABLE OF AUTHORITIES ......................................................................................................... II

NOTICE OF MOTION ................................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 2

PRELIMINARY STATEMENT .................................................................................................... 2

ARGUMENT ................................................................................................................................... 4

I.     THE COURT SHOULD APPROVE PLAINTIFFS' COUNSEL'S REQUEST
FOR ATTORNEYS' FEES OF 27% OF THE SETTLEMENT FUND ........................... 4

     A.    The Court Should Award Attorneys' Fees Based on a Reasonable
Percentage of the Settlement Fund ...................................................................... 5

     B.    The Requested Attorneys' Fees Are a Reasonable Percentage of the
Settlement Fund ..................................................................................................... 6

     C.    The *Vizcaino* Factors Support Plaintiffs' Counsel's 27% Fee Award ................ 7

          (1)    Excellent Result Achieved ........................................................................ 7

          (2)    Substantial Risks of Continued Litigation ............................................... 8

          (3)    Complexity of the Case and Skill Required............................................. 10

          (4)    Contingent Nature of the Litigation ........................................................ 12

          (5)    Reaction of the Class to Date .................................................................. 12

     D.    The Lodestar Cross-Check Confirms that the 27% Fee Is Reasonable ............... 13

     E.    The Requested Fee Is Consistent with the Notice ............................................... 14

II.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE
NECESSARILY INCURRED TO ACHIEVE THE RESULT OBTAINED.................... 15

III.   PLAINTIFFS' REQUESTS FOR REIMBURSEMENT PURSUANT TO 15
U.S.C. 78U-4(A)(4) ARE REASONABLE ...................................................................... 16

CONCLUSION.............................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aboudi v. T-Mobile USA, Inc.*,
   2015 WL 4923602 (S.D. Cal. Aug. 18, 2015) ...................................................................14

*In re American Apparel, Inc. S'holder Litig.*,
   2014 WL 10212865 (C.D. Cal. 2014)..............................................................................11

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)................................................................17

*In re Apple Inc. Device Performance Litig.*,
   2021 WL 1022866 (N.D. Cal. Mar. 17, 2021)...................................................................5

*In re Apple Inc. Device Performance Litig.*,
   2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) ......................................................5, 11, 12, 14

*In re Aqua Metals, Inc. Sec. Litig.*,
   2022 WL 612804 (N.D. Cal. Mar. 3, 2022)......................................................................8

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985).......................................................................................................4

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015).............................................................................12, 17

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .......................................................................................4, 5

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)........................................................................................................4

*Chang v. Wells Fargo Bank, N.A.*,
   2023 WL 6961555 (N.D. Cal. Oct. 19, 2023)................................................................17

*Cosby v. KPMG LLP*,
   2022 WL 4129703 (E.D. Tenn. July 12, 2022) .............................................................14

*In re CV Therapeutics, Inc. Sec. Litig.*,
   2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) ...................................................................6

*Destefano v. Zynga*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .......................................................6, 10, 14

*EK Vathana v. Everbank*,
  2016 WL 3951334 (N.D. Cal. July 20, 2016) ..........................................................6

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
  2018 WL 6168013 (S.D.N.Y. Nov. 26, 2018) ..........................................................8

*Ferraro Family Found., Inc. v. Corcept Therapeutics Inc.*,
  2024 WL 4578734 (N.D. Cal. Sept. 6, 2024) ..........................................................13

*Fleming v. Impax Lab'ys Inc.*,
  2022 WL 2789496 (N.D. Cal. July 15, 2022) ..........................................................10

*Hardy v. Embark Tech., Inc.*,
  2024 WL 1354416 (N.D. Cal. Mar. 29, 2024) ..........................................................15

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ..........................................................15, 16

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..........................................................8

*In re Heritage Bond Litig.*,
  2005 WL 1594389 (C.D. Cal. June 10, 2005) ..........................................................6, 12

*Hicks v. Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..........................................................16

*Hunt v. Bloom Energy Corp.*,
  2024 WL 1995840 (N.D. Cal. May 6, 2024) ..........................................................4, 6, 8, 11

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. May 31, 2007) ..........................................................17

*In re ImmunityBio, Inc. Sec. Litig.*,
  2025 WL 1686263 (S.D. Cal. June 16, 2025) ..........................................................5

*Katz-Lacabe v. Oracle Am., Inc.*,
  2024 WL 4804974 (N.D. Cal. Nov. 15, 2024) ..........................................................7, 12

*In re LendingClub Sec. Litig.*,
  2018 WL 4586669 (N.D. Cal. Sept. 24, 2018) ..........................................................5

*Lowery v. Rhapsody Int'l, Inc.*,
  75 F.4th 985 (9th Cir. 2023) ..........................................................7

*In re MacBook Keyboard Litig.*,
  2023 WL 3688452 (N.D. Cal. May 25, 2023) ..........................................................6

*Martínek v. Amtrust Fin. Servs., Inc.*,
  2022 WL 16960903 (S.D.N.Y. Nov. 16, 2022)................................................13

*In re Nexus 6P Prods. Liab. Litig.*,
  2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ............................................13

*Nguyen v. Radient Pharms. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ..............................................5

*In re Nuvelo, Inc. Sec. Litig.*,
  2011 2650592 (N.D. Cal. July 6, 2011) .................................................6

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .........................................*passim*

*Ontiveros v. Zamora*,
  303 F.R.D. 356 (E.D. Cal. 2014) ...........................................15

*Patel v. Trans Union*,
  2018 WL 1258194 (N.D. Cal. Mar. 11, 2018)..........................................6

*In re Portal Software, Inc. Sec. Litig.*,
  2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) .....................................9, 14

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................10, 16

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ...........................................6

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .........................................4, 5

*Tait v. BSH Home Appliances Corp.*,
  2015 WL 4537463 (C.D. Cal. July 27, 2015)..........................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..........................................4

*Vincent v. Hughes Air W., Inc.*,
  557 F.2d 759 (9th Cir. 1977) ...........................................4

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2022 WL 17730381 (N.D. Cal. Nov. 9, 2022) ..........................................6

*In re Volkswagen "Clean Disel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)..........................................13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ............................................................4

*Weeks v. Kellogg Co.*,
    2013 WL 6531177 (C.D. Cal. Nov. 23, 2013)..................................9

*Wong v. Arlo Techs., Inc.*,
    2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ...............................14

*Zepeda v. PayPal, Inc.*,
    2017 WL 1113293 (N.D. Cal. Mar. 24, 2017)................................11

**Statutes**

15 U.S.C. § 78u-4(a)(4) .....................................................................2, 16

15 U.S.C. § 78u4-(a)(6) ..........................................................................5

**Other Authorities**

Fed. R. Civ. P. 23 ...............................................................................1, 4

1

### NOTICE OF MOTION

2    PLEASE TAKE NOTICE that on October 30, 2025 at 1:30 p.m., or as soon thereafter as

3    counsel may be heard before the Honorable Richard Seeborg, United States District Judge, at the

4    United States District Court, Northern District of California, San Francisco Courthouse, 450

5    Golden Gate Avenue, Courtroom 3 – 17th Floor, San Francisco, California 94102, Lead Counsel

6    Cohen Milstein Sellers & Toll PLLC, on behalf of itself and Liaison Counsel Berman Tabacco,

7    will move this Court for an Order, pursuant to Rules 23(h) and 54(d) of the Federal Rules of Civil

8    Procedure: (i) awarding attorneys' fees in the amount of 27% of the Settlement Fund; (ii) awarding

9    Litigation Expenses in the amount of $3,281,973.16, plus accrued interest; and (iii) granting

10   Plaintiffs' requests for payment of their costs and expenses (including lost wages) related to their

11   efforts on behalf of the Class, pursuant to the Private Securities Litigation Reform Act of 1995, 15

12   U.S.C. § 78u-4(a)(4).

13   This motion is made pursuant to the Court's June 27, 2025 Order Preliminarily Approving

14   Settlement and Providing for Notice (ECF No. 260) ("Preliminary Approval Order") based upon:

15   (1) this Notice of Motion; (2) the supporting Memorandum of Points and Authorities set forth

16   below; (3) the accompanying Declaration of Carol V. Gilden in Support of (I) Plaintiffs' Motion

17   for Final Approval of Settlement and Plan of Allocation and (II) Lead Counsel's Motion for

18   Attorneys' Fees and Litigation Expenses ("Gilden Declaration" or "Gilden Decl."), and the

19   exhibits attached thereto; (4)  the pleadings and records on file in this action; and (5) other such

20   matters and argument as the Court may consider at the hearing of this Motion.

21   Pursuant to the Preliminary Approval Order, any objection to the motion for attorneys' fees

22   and litigation expenses must be received by October 9, 2025. To date, no objections have been

23   received. A proposed order will be submitted with Lead Counsel's reply brief, which will be filed

24   on October 23, 2025, after the deadline for objections has passed.

25   Defendants do not oppose the Motion, and the Parties agree that it may be decided on the

26   papers, should the Court conclude that a hearing is not required.

27

28

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court should approve Lead Counsel's request, on behalf of Plaintiffs' Counsel, for an award of attorneys' fees in the amount of 27% of the Settlement Fund.

2.      Whether the Court should approve Lead Counsel's request for payment of litigation expenses incurred by Plaintiffs' Counsel in the amount of $3,281,973.16.

3.      Whether the Court should award Plaintiffs $31,485.14, in the aggregate, pursuant to 15 U.S.C. § 78u-4(a)(4), for reimbursement of their reasonable costs and expenses (including lost wages) related to their representation of the Class.

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Counsel Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein" or "Lead Counsel") and Liaison Counsel Berman Tabacco ("Berman Tabacco" or "Liaison Counsel" and, together with Cohen Milstein, "Plaintiffs' Counsel") respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees in the amount of 27% of the Settlement Fund. Lead Counsel also seek $3,281,973.16 for Plaintiffs' Counsel's Litigation Expenses and $31,485.14 for costs incurred by Plaintiffs, as authorized by the PSLRA.[1]

## PRELIMINARY STATEMENT

The proposed Settlement, if approved by the Court, will fully resolve this securities class action in exchange for a cash payment of $38,000,000. This significant recovery for the Class is the result of Plaintiffs' Counsel's tireless prosecution of this Action, which was undertaken for more than five years without any compensation and on a fully contingent basis. Plaintiffs' Counsel—nationally recognized securities litigators—expended extensive time (14,762.30 hours of professional time) and resources to secure the best possible recovery for Class Members, despite the litigation's substantial risks and Defendants' Counsel's vigorous advocacy. As detailed in the Gilden Declaration,[2] Plaintiffs' Counsel, among other things, drafted two detailed amended

---

[1] Unless otherwise indicated, capitalized terms herein will have their meaning as defined in the Stipulation or in the Gilden Declaration, filed herewith. In this memorandum, citations to "¶ __" refer to paragraphs in the Gilden Declaration and citations to "Ex. __" refer to exhibits to the Gilden Declaration.

[2] The Gilden Declaration is an integral part of this motion and is incorporated herein by

complaints; defeated two motions to dismiss; moved successfully for class certification; and built an extensive case record through fact and expert discovery, which entailed, among other things, reviewing roughly 200,000 pages of documents produced by Defendants, including a subset of documents written in German, taking and defending 24 depositions in the United States and Europe, and serving and analyzing 20 expert reports; and negotiated aggressively against a premier defense firm.

As compensation for these efforts, Plaintiffs' Counsel respectfully request an award of attorneys' fees constituting 27% of the Settlement Fund, including accrued interest. This requested fee award is within the range typically awarded in similar cases in the Ninth Circuit and represents a reasonable and justifiable upward adjustment from the 25% benchmark invoked in this Circuit. The 27% fee, amounting to $10,260,000, provides a negative multiplier on Plaintiffs' Counsel's lodestar of $13,367,091.50, and as such is a fair compensation for Counsel's work on behalf of the Class. Plaintiffs' Counsel also seek reimbursement of the out-of-pocket litigation expenses they incurred in prosecuting this Action in the amount of $3,281,973.16, plus accrued interest. These expenses are reasonable both in scope and magnitude given the complexity and longevity of this Action. Plaintiffs have each approved the requested fee and expenses. *See* Exs. 2–4. Finally, Lead Counsel respectfully request reimbursement in the total amount of $31,485.14 to Plaintiffs, pursuant to the PSLRA, for their essential and substantial efforts on behalf of the Class. These efforts kept Plaintiffs' staff from fulfilling their regular duties and therefore represented a cost to Plaintiffs.

For the reasons set forth more fully below, Lead Counsel respectfully submit that the requested attorneys' fees and expenses are fair and reasonable under applicable legal standards, especially in light of the contingency risk undertaken, the immense time and effort expended, and lack of a viable alternative recovery, and should therefore be awarded by the Court.

---

reference. To avoid repetition, the Court is respectfully referred to the Declaration for a detailed description of, among other things: the history of the Action (¶¶ 14–76); the nature of the claims asserted (¶¶ 12–13); the negotiations leading to the Settlement (¶¶ 77–81); and the risks and uncertainties of continued litigation (¶¶ 88–100).

**ARGUMENT**

I.    **THE COURT SHOULD APPROVE PLAINTIFFS' COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 27% OF THE SETTLEMENT FUND**

It is well settled that attorneys are "entitled to an award of reasonable attorneys' fees and reimbursement of litigation expenses from [a] common fund they created for the benefit of a class." *Hunt v. Bloom Energy Corp.*, 2024 WL 1995840, at *7 (N.D. Cal. May 6, 2024). The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the funds as a whole," *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), as has the Ninth Circuit, *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) (finding that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees").

This rule, known as the "common fund doctrine," is based on the principle that "those who benefit from the creation of [a] fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). The common fund doctrine also serves to incentivize skilled counsel to represent those who seek redress for violations of the securities laws. Indeed, the Supreme Court has highlighted the utility of private securities actions as "'a most effective weapon in the enforcement' of the securities laws and . . . 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission.").

Courts have an "independent obligation" to assess the proposed attorneys' fee award. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Fee awards must be found "fundamentally fair, adequate, and reasonable" to warrant approval. Fed. R. Civ. P. 23(e); *Staton*

*v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). Plaintiffs' Counsel's requested fee award of 27% of the common fund meets this standard.

**A.     The Court Should Award Attorneys' Fees Based on a Reasonable Percentage of the Settlement Fund**

In cases like this one where the settlement creates a common fund for distribution to the class, courts have "discretion to use either a percentage or lodestar method" for evaluating the reasonableness of the requested fee award. *In re LendingClub Sec. Litig.*, 2018 WL 4586669, at *1 (N.D. Cal. Sept. 24, 2018) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003)). In the Ninth Circuit, the percentage-of-the-fund method "is the prevailing practice," *In re Apple Inc. Device Performance Litig.*, 2023 WL 2090981, at *12 (N.D. Cal. Feb. 17, 2023), especially in common fund cases where "the benefit to the class is easily quantified," *Bluetooth*, 654 F.3d at 942. The advantages of a percentage-of-the-fund method include "consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires." *In re Apple Inc. Device Performance Litig.*, 2021 WL 1022866, at *2 (N.D. Cal. Mar. 17, 2021) (quoting *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463, at *11 (C.D. Cal. July 27, 2015)).

The percentage-of-the-fund method also squares with the statutory language of the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *see also Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable."); *In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 1686263, at *13 (S.D. Cal. June 16, 2025) (applying the percentage-of-recovery method partly because of the PSLRA's language).

For these reasons, the Court should award attorneys' fees based on the percentage-of-the-fund method.

**B.     The Requested Attorneys' Fees Are a Reasonable Percentage of the Settlement Fund**

The requested fee amount is reasonable under the percentage-of-the-fund method. Courts in the Ninth Circuit recognize 25% as the "benchmark percentage" for attorneys' fees calculated pursuant to this method but allow for a departure from this "starting point" in "special circumstances." *EK Vathana v. Everbank*, 2016 WL 3951334, at *2 (N.D. Cal. July 20, 2016) (Seeborg, J.). Such special circumstances include, for example, "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases. *Patel v. Trans Union*, 2018 WL 1258194, at *6 (N.D. Cal. Mar. 11, 2018); *see also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (endorsing departure from the benchmark when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors").

Fee awards in common fund cases regularly "exceed[] th[e] benchmark." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *see also Destefano v. Zynga*, 2016 WL 537946, at *16 (N.D. Cal. Feb. 11, 2016) ("In common fund cases in the Ninth Circuit, the 'benchmark' award is 25 percent of the recovery obtained, with 20-30 percent as the usual range." (citations omitted)); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2022 WL 17730381, at *11 (N.D. Cal. Nov. 9, 2022) ("courts in this Circuit often award fees at or exceeding 30 percent, and such awards are routinely upheld" (citation omitted)).

The 27% fee requested here falls within that "usual range," and aligns with fee awards made in comparable securities cases. *See, e.g.*, *Omnivision*, 559 F. Supp. 2d at 1048 (awarding 28% of the common fund in securities class action); *Hunt*, 2024 WL 1995840, at *8 (30%); *In re Nuvelo, Inc. Sec. Litig.*, 2011 2650592, at *3 (N.D. Cal. July 6, 2011) (30%); *In re CV Therapeutics, Inc. Sec. Litig.*, 2007 WL 1033478, at *1 (N.D. Cal. Apr. 4, 2007) (30%). The fee award also conforms with the percentage of fees awarded in cases with similar settlement amounts. *See, e.g.*, *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *14 (N.D. Cal. May 25, 2023) (awarding 30% of $50 million common fund); *In re Heritage Bond Litig.*, 2005 WL 1594389, at *17 (C.D. Cal. June 10, 2005) (33.33% of $27,783,000).

## C.     The *Vizcaino* Factors Support Plaintiffs' Counsel's 27% Fee Award

In assessing the reasonableness of a fee award and whether a departure from the 25% benchmark is justified, courts consider a number of factors, including "(1) the results achieved, (2) the risk of litigation, (3) the complexity of the case and skill required, (4) the contingent nature of the litigation, and (5) awards made in similar cases." *Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 4804974, at *3 (N.D. Cal. Nov. 15, 2024) (Seeborg, J.) (citing *Omnivision*, 559 F. Supp. 2d at 1046; *Vizcaino*, 290 F.3d at 1048−50). These factors, known as the "*Vizcaino* factors," are not exhaustive; rather, courts must "take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d 1043, 1048 (9th Cir. 2002).

Each of the *Vizcaino* factors weighs in favor of granting Plaintiffs' Counsel's requested attorneys' fee award.[3]

### (1)     Excellent Result Achieved

The "overall result and benefit to the class from the litigation is the most critical" factor to the Court's analysis. *Katz*, 2024 WL 4804974, at *3 (quoting *Omnivision*, 559 F. Supp. 2d at 1046); *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988 (9th Cir. 2023) ("The touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class."). Plaintiffs' Counsel respectfully submits that the $38 million Settlement Amount is an excellent result for the Class, both as a percentage of Plaintiffs' potential maximum damages and in light of the risk of a lesser (or no) recovery if the litigation continued through summary judgment, trial, and appellate proceedings.

As explained in Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval of the Proposed Class Action Settlement and Plan of Allocation (the "Settlement Memorandum"), the $38 million Settlement Amount recovers over 9% of the potential $417 million maximum damages amount, representing a significant recovery for the class. Courts regularly approve settlements with equal or lower percentage recoveries. *See, e.g.*, *Omnivision*, 559 F. Supp. 2d at 1046 (finding "a total [settlement] award of approximately 9% of the possible

---

[3] The fifth factor, "awards made in similar cases," is discussed *infra* at Part I.B.

damages" to be a "substantial achievement"); *In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *6 (N.D. Cal. Mar. 3, 2022) (approving settlement that recovered approximately 7.3% of likely recoverable damages, which was "in line with comparable class action settlements"); *Hunt*, 2024 WL 1995840, at *6 (approving settlement recovering 5.2% of estimated damages); *see also* Cornerstone Research, *Securities Class Action Settlements: 2024 Review and Analysis* 21 (2024), https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf (last visited Aug. 19, 2025) (2024 median and average settlements of securities class actions as a percentage of calculated total statutory damages were 7.1% and 8.0%, respectively).

The Parties reached the Settlement following extensive and complex negotiations between experienced counsel, which included two mediation sessions overseen by Miles N. Ruthberg, Esq., of Phillips ADR Enterprises, P.C., an experienced mediator of securities class actions and other complex litigation. The $38 million Settlement Amount, based on Mr. Ruthberg's recommendation, provides a certain and immediate recovery to the Class that continued litigation would put at risk. Ex. 1 ¶ 16. The recovery achieved here, therefore, weighs in favor of an upward adjustment from the benchmark to a 27% fee.

### (2)   Substantial Risks of Continued Litigation

The Class's excellent recovery must also be "considered in light of the significant risks that Plaintiffs would face in further litigation," including "the risk that further litigation might result in Plaintiffs not recovering *at all*." *Hunt*, 2024 WL 1995840, at *8 (citing *Vizcaino*, 290 F.3d at 1048). As an initial matter, courts have recognized the "substantial risks in pursuing [securities class actions], given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PSLRA." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) (citing *Omnivision*, 559 F. Supp. 2d at 1046); *see also In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 2018 WL 6168013, at *15 (S.D.N.Y. Nov. 26, 2018) ("Courts have recognized that, in general, securities actions are highly complex and that securities class litigation is notably difficult and notoriously uncertain." (cleaned up and citations omitted)).

This case is no different. As discussed in the Settlement Memorandum and the Gilden

Declaration, Plaintiffs' Counsel confronted, and would continue to confront if the litigation continued, a number of significant legal and factual challenges during the course of the litigation that would have put recovery at serious risk. In addition to risks to establishing scienter and loss causation, Plaintiffs' arguments as to the falsity of the alleged misstatements met stiff resistance from Defendants. Specifically, Defendants would continue to contend that the statements from the first two years of the Class Period did not address Bayer's due diligence on the Roundup Litigation at all, and that later statements that did refer to Roundup Litigation diligence were accurate in describing Bayer's "customary" and "appropriate" due diligence process. These issues "would have been the subject of competing expert testimony" at trial, which "suggests that [P]laintiffs' ability to prove liability was somewhat unclear." *Weeks v. Kellogg Co.*, 2013 WL 6531177, at *13 (C.D. Cal. Nov. 23, 2013) (citing *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007)). If the Court agreed with Defendants that the statements from the first two years of the Class Period were not actionable, Plaintiffs' damages would drop substantially, as much of the claimed loss comes from that time period.

Further complicating the litigation of this issue is the fact that Plaintiffs' expert on due diligence customs and practices can no longer serve as a testifying expert due to life-threatening health conditions requiring surgery and ongoing treatment. Shortly before reaching the Settlement, the Parties briefed Plaintiffs' motion to amend the case management schedule to substitute their expert, but the Court had not ruled on the motion. *See* ECF Nos. 234, 238, 239. Accordingly, if the litigation were to continue, Plaintiffs would face the risk of not being able to replace the expert with their preferred substitute, which would significantly weaken their ability to prosecute the case.

Defendants and their experts would also continue to argue that any recoverable damages should be much lower than the $417 million in potential damages estimated by Plaintiffs' damages expert, if not zero. For example, Defendants would argue that Plaintiffs' damages expert's methodology requires the implausible assumption that the entirety of Bayer's ADR price decline derived from market revelations about Bayer's diligence, pointing to confounding events that

Plaintiffs' expert omitted from his calculations. Based on this and other arguments challenging Plaintiffs' damages calculation, Defendants would continue to argue that the maximum damages available was $24.5 million—significantly less than the Settlement Amount—assuming that Plaintiffs could prove liability in the first place.[4]

Plaintiffs' Counsel would have to address many, if not all, of these issues in summary judgment motions, while at the same time briefing multiple *Daubert* motions contesting the admissibility of the proffered experts' testimony. Given the fact-intensive nature of the issues, the case likely would not be resolved at summary judgment, and the Parties would have proceeded to trial, where Plaintiffs' Counsel would have had to present complex and nuanced information to the Court and a jury with no certainty on the outcome. Regardless of the trial outcome, the litigation would likely continue with post-trial motions and appeals—a process that could extend for years and might lead to a smaller recovery, or no recovery at all. Throughout this process, Plaintiffs' Counsel would have to defend against any challenges to the Class's certification. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time."); *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *6 (N.D. Cal. July 15, 2022) ("[T]here is always a risk of decertification—especially when . . . Plaintiffs must overcome causation and damages defenses.").

Plaintiffs' Counsel appropriately calculated that continued litigation to potentially achieve a larger damages amount for the Class was not worth these significant and costly risks. Under these circumstances, the requested fee is fair and reasonable.

### (3)    Complexity of the Case and Skill Required

The "prosecution and management of a complex [] class action requires unique legal skills and abilities" that courts consider when evaluating fee requests. *Omnivision*, 559 F. Supp. 2d at 1047. Counsel's skill and experience is particularly relevant in "securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss."

---

[4] In addition, Defendants would also continue to press their affirmative defenses and argue that Plaintiffs' and Class members' transactions in Bayer ADRs were structured so as to be extraterritorial and beyond the reach of U.S. federal securities laws.

*Id.*; *see also Zynga*, 2016 WL 537946, at *17 (same).

The quality and rigor of the work of Plaintiffs' Counsel—experienced and skilled securities litigators who have secured billions of dollars for its institutional investor clients (Exs. 6, 7)—is reflected in the excellent recovery obtained for the Class. Given the complexity of the issues presented in this Action, only skilled, diligent counsel with extensive experience in securities litigation could have obtained this recovery. Plaintiffs' Counsel were required to understand and explain complex factual and legal issues, engage in expansive and cross-border fact and expert discovery, and work with experts to deliver intricate loss causation and damages methodologies, among other things. *See* Gilden Decl. Plaintiffs' Counsel completed fact discovery and left no stone unturned in their effort to obtain factual support for the Class's claims, taking depositions of 11 senior Bayer officials in the United States and Europe under logistically and linguistically challenging conditions. In a notable example, Plaintiffs' Counsel secured the deposition of Bayer's former General Counsel—crucial for Plaintiffs' scienter argument—only after months of coordination with German authorities under the Hague Convention. The deposition, held before a German judge, involved certified translations, live interpretation, and the physical presence of both parties' legal teams.

Accordingly, the quality of the legal services that Plaintiffs' Counsel provided over the course of the past five years, as well as their extensive experience in complex securities class actions, enabled Plaintiffs' Counsel to obtain the Settlement and support a modest upward adjustment of the benchmark to 27%. *See, e.g.*, *Hunt*, 2024 WL 1995840, at *8 (granting 30% fee request where "counsel conducted an extensive investigation, engaged in substantial and voluminous fact discovery, and defended against three simultaneous motions to dismiss"); *Apple*, 2023 WL 2090981, at *14 (finding an above-benchmark fee appropriate where counsel "diligently developed the facts, propounded discovery, took depositions, and engaged a damages consultant, all of which was of great benefit to the Class"); *Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017) ("Given the contentious nature of the action, the Court finds that the result achieved in this matter would have been unlikely if entrusted to counsel of lesser experience

1    or capability.").

2       "Courts also consider 'the quality of opposing counsel as a measure of the skill required to

3    litigate the case successfully.'" *Apple*, 2023 WL 2090981, at *14 (quoting *In re American Apparel,*

4    *Inc. S'holder Litig.*, 2014 WL 10212865, at *22 (C.D. Cal. 2014)). Defendants were represented

5    by skilled and experienced lawyers at Wachtell, Lipton, Rosen & Katz, a "national, highly

6    respected law firm[]" with significant success in defending complex civil cases like this one. *Id.*

7    That Plaintiffs' Counsel secured a favorable recovery for the Class in the face of Defendants'

8    Counsel's vigorous advocacy further supports the reasonableness of the requested fee award.

9              **(4)    Contingent Nature of the Litigation**

10      "The risk of non-payment assumed by Class Counsel is a factor in determining counsel's

11   appropriate fee award." *Katz-Lacabe*, 2024 WL 4804974, at *4; *Vizcaino*, 290 F.3d at 1048–50.

12      The contingent nature of Plaintiffs' Counsel's representation of the Class supports a 27%

13   award. Plaintiffs' Counsel assumed significant risk "by prosecuting this case on a purely

14   contingent basis and advancing all necessary expenses" over the course of five years without any

15   certainty that they would be compensated. *Id.*, 2024 WL 4804974, at *4; *see also* ¶¶ 88–100,

16   137–40. As discussed in the Gilden Declaration, Plaintiffs' Counsel spent over 14,762 hours

17   litigating the case, defending against two motions to dismiss, securing class certification, and

18   engaging in substantial, cross-border fact and expert discovery. A modest upward adjustment from

19   the benchmark to a 27% fee is therefore appropriate. *Nuvelo*, 2011 WL 2650592, at *2 (approving

20   30% fee award partly because "[c]ounsel represented Plaintiffs on a contingency basis for four

21   years"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015) ("When

22   counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment

23   after years of litigation justifies a significant fee award.").

24             **(5)    Reaction of the Class to Date**

25      The Class's support for Plaintiffs' Counsel's requested attorneys' fee award further

26   supports its approval. *See Heritage Bond*, 2005 WL 1594389, at *15 ("The presence or absence of

27   objections . . . is also a factor in determining the proper fee award.").

28      First, all three Plaintiffs authorized the fee request. Plaintiffs individually evaluated

Plaintiffs' Counsel's performance and determined that a 27% fee was reasonable in light of the circumstances of the case. The sign-off of Plaintiffs, experienced institutional investors who worked closely with Plaintiffs' Counsel throughout the prosecution of the action, favors approval of the fee. *See, e.g.*, *Ferraro Family Found., Inc. v. Corcept Therapeutics Inc.*, 2024 WL 4578734, at *1–2 (N.D. Cal. Sept. 6, 2024) (approving requested fee partly because "Lead Plaintiff approved the amount of attorneys' fees awarded as fair and reasonable"); *Martínek v. Amtrust Fin. Servs., Inc.*, 2022 WL 16960903, at *1 (S.D.N.Y. Nov. 16, 2022) (approval was appropriate where the requested fee of 33.33% "had been reviewed and approved as reasonable by Lead Plaintiff, who is an experienced investor, and who closely supervised the prosecution and Settlement of the Action"); *see also In re Volkswagen "Clean Disel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at *4 (N.D. Cal. Mar. 17, 2017) (finding that the "strong, positive response from the class[] support[ed] Class Counsel's requested fees" where "[o]nly four Class Members out of a class of approximately 475,000 objected to the proposed fee award");.

Second, to date, Lead Counsel has not received any objections to the fee request (or to the Settlement or Plan of Allocation). Although the deadline to object to the Settlement is October 9, 2025, it is likely that many of the potential Class Members are aware of the proposed fee award. A total of 223,953 Notice Packets reporting the maximum amount of the attorneys' fee and expense award have been sent to potential Class Members and their brokers, banks, and other nominees. *See* Declaration of Adam D. Walter Regarding (A) Mailing of the Notice Packets and (B) Publication of the Summary Notice, Ex. 5 ("Mailing Decl.") at ¶ 9. The long-form Settlement Notice and Claim Form, along with the Stipulation and other relevant documents, have been available on a website dedicated to the litigation since July 21, 2025. *Id.* ¶ 13. In addition, Class Members may have seen the Summary Notice published on July 21, 2025 in *The Wall Street Journal* or transmitted over the internet via *PR Newswire* the same day. *Id.* ¶ 11.

Should any objections arise after the filing of this motion and before the October 9, 2025 deadline, Lead Counsel will address them in their reply papers, which are due by October 23, 2025.

### D.     The Lodestar Cross-Check Confirms that the 27% Fee Is Reasonable

"As a final check on the reasonableness of requested attorneys' fees, courts often compare

the amount counsel would receive under the percentage-of-recovery method with the amount counsel would have received under the lodestar method." *In re Nexus 6P Prods. Liab. Litig.*, 2019 WL 6622842, at *13 (N.D. Cal. Nov. 12, 2019) (citing *Omnivision*, 559 F. Supp. 2d at 1047); *Vizcaino*, 490 F.3d at 1050 ("[T]he lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted . . . [and] may provide a useful perspective on the reasonableness of a given percentage award."). "The aim is to 'do rough justice, not to achieve auditing perfection.'" *Apple*, 2023 WL 2090981, at *16 (quoting *Vizcaino*, 290 F.3d at 1050).

"Based on the current usual and customary hourly billing rates" of Lead Counsel and Liaison Counsel, Plaintiffs' Counsel's total lodestar is $13,367,091.50. Exs. 6, 7 (counsel's fee declarations).[5] This represents a negative multiplier of 0.8. "Courts have found that '[m]ultipliers of 1 to 4 are commonly found to be appropriate in common fund cases.'" *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *11 (N.D. Cal. Apr. 19, 2021) (quoting *Aboudi v. T-Mobile USA, Inc.*, 2015 WL 4923602, at *7 (S.D. Cal. Aug. 18, 2015)). In securities cases specifically, "courts have applied multipliers ranging from 1.25 up to 4." *Zynga*, 2016 WL 537946, at *21 (collecting cases). The negative multiplier here "suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by [Plaintiffs' Counsel]." *Portal Software*, 2007 WL 4171201, at *16.

### E.    The Requested Fee Is Consistent with the Notice

The Notice, approved by the Court in the Preliminary Approval Order, advised Class Members that Lead Counsel intended to apply to the Court for attorneys' fees of an amount up to 27% of the Settlement Fund, the same amount Lead Counsel is seeking now. *See* ECF No. 253-2 ¶ 5, 43. As mentioned above, to date, no Class Members have filed objections to this request.

---

[5] Federal courts in various districts have determined that Cohen Milstein's rates in securities cases are reasonable for purposes of the lodestar cross-check analysis. *See, e.g.*, *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, No. 19-cv-128, slip op. at 2 (D. Utah Feb 5, 2025), ECF No. 293; *In re Wells Fargo & Co. Sec. Litig.*, No. 20-cv-4494, slip op. at 2 (S.D.N.Y. Sept. 8, 2023), ECF No. 206; *Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, No. 16-cv-3591, slip op. at 2–3 (S.D.N.Y. Nov. 21, 2022), ECF No. 303; *Cosby v. KPMG LLP*, 2022 WL 4129703, at *2 (E.D. Tenn. July 12, 2022); *In re GreenSky Sec. Litig.*, No. 18-cv-11071, slip op. at 3 (S.D.N.Y. Oct. 22, 2021), ECF No. 211.

II.    **PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE RESULT OBTAINED**

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Hardy v. Embark Tech., Inc.*, 2024 WL 1354416, at *10 (N.D. Cal. Mar. 29, 2024) (quoting *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014)). Attorneys may recover reasonable "out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Those expenses may include, for example, costs of "service of summons and complaint, service of trial subpoenas, fee for defense expert at deposition, postage, investigator, copying costs, hotel bills, meals, messenger service and employment record reproduction." *Id.*

As set forth in Exhibits 6C, 7C, and 8, Plaintiffs' Counsel have paid or incurred a total of $3,281,973.16 in Litigation Expenses in connection with the prosecution of this Action. These expense items are billed separately by Lead Counsel and Liaison Counsel, and the charges are not duplicated in Plaintiffs' Counsel's hourly rates.

Of the total amount of expenses, $2,606,381.00 was expended for the retention of experts and consultants. As discussed in the Gilden Declaration, Lead Counsel retained five well-qualified experts on topics such as ADR transaction structures, due diligence standards, merger incentives, loss causation, and damages for purposes of class certification and merits expert discovery. In total, Plaintiffs' experts prepared 13 reports, and four of the five experts sat for depositions. ¶ 145.

Another major component of expenses was for the retention of professional services, totaling $146,362.30. These professional services included the class and claims administration services of A.B. Data ($2,711.46); forensic analysis services ($517.98); and the retention of a German law firm, Wach Und Meckes ($123,970.44), to assist with securing and administering a deposition of Bayer's former general counsel through the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters. *Id.* ¶ 66.

Another substantial component of Plaintiffs' Counsel's expenses was the cost of court reporters, videographers, interpreters, translators, and transcripts in connection with court hearings and the depositions that Lead Counsel took or defended during the course of the Action. These

charges amounted to $222,807.71. *Id.* ¶ 147.

Another large component of the Litigation Expenses was for online legal research, which included research necessary to prepare the Complaint, research the law pertaining to the claims asserted in the Action, oppose Defendants' motions to dismiss, move for class certification, prepare to move for summary judgment and oppose Defendants' anticipated motion for summary judgment, and research various discovery issues, among other similar tasks. The charges for online legal research amounted to $91,153.94. *Id.* ¶ 148.

Lead Counsel also incurred $80,675.00 in connection with the extensive mediation efforts of Mr. Ruthberg. *Id.* ¶ 149.

Further, expenses include $85,869.28 for work-related transportation expenses, meals, and lodging related to, among other things, traveling in connection with court hearings, depositions, and the mediations. *Id.* ¶ 150.

The other expenses for which Plaintiffs' Counsel seek reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, court fees, process server fees, express mail and courier services, working meals, and investigative services. *Id.* ¶ 151; *see Harris*, 24 F.3d at 19. These expenses were reasonable and necessary to the successful litigation of the Action and have been approved by Plaintiffs. *See* Exs. 2–4.

The expenses also comply with the Notice, which informed potential Class Members that Plaintiffs' Counsel would apply for reimbursement of Litigation Expenses in an amount not to exceed $3,550,000. ECF No. 253-2 ¶ 5.

## III.    PLAINTIFFS' REQUESTS FOR REIMBURSEMENT PURSUANT TO 15 U.S.C. 78U-4(A)(4) ARE REASONABLE

The PSLRA allows the Court to approve an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4); *see also Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases."). These awards serve to "provide an incentive for such plaintiffs to remain involved in the litigation and incur such expenses in the first

place." *Hicks v. Stanley*, 2005 WL 2757792, at \*10 (S.D.N.Y. Oct. 24, 2005). Here, Plaintiffs request a reasonable aggregate award of $31,485.14 to reimburse the costs and expenses they incurred related to their representation of the Class over the past five years.

Courts have regularly granted similar requests for "reasonable payments to compensate class representatives for the time, effort, and expenses devoted to litigating on behalf of [a] class." *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at \*10 (C.D. Cal. Oct. 25, 2016) (awarding class representative $30,983.99 for the time it dedicated to the case); *Omnivision*, 559 F. Supp. 2d at 1049 (awarding lead plaintiffs collectively $29,913.80); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1173–74 (S.D. Cal. May 31, 2007) (awarding lead plaintiff $40,000); Order at 4, *In re Intuitive Surgical Sec. Litig.*, No. 5:13-cv-01920 (N.D. Cal. Dec. 20, 2018), ECF No. 317 (awarding $49,754.18 and $9,100.00 to class representatives); Order at 4, *Hatamian v. Advanced Micro Devices, Inc.*, No. 4:14-cv-00226 (N.D. Cal. Mar. 2, 2018), ECF No. 364 (awarding $14,875.00 and $8,348.25 to two class representatives).

"In this district," "awards typically range from $2,000 to $10,000," though "[h]igher awards are sometimes given in cases involving . . . larger settlement amounts." *Bellinghausen*, 306 F.R.D. at 266. Plaintiffs' requested reimbursement amount of $31,485.14—comprising the SMW Pension Fund's request of $15,765.24, Local 710's request of $10,845.00, and IUOE's request of $4,845.00—is reasonable given their service to the class, significant investment of time, and proportionate to the Settlement Amount. *Chang v. Wells Fargo Bank, N.A.*, 2023 WL 6961555, at \*9–10 (N.D. Cal. Oct. 19, 2023). Pursuant to the Northern District of California Guidelines, Plaintiffs have submitted declarations describing the time and effort they dedicated to bringing the Class's claims in this Action over the past five years. *See* Exs. 2–4. As the declarations detail, Plaintiffs maintained regular contact with counsel, reviewed court filings, attended mediation sessions and participated in informal mediation discussions, consulted with counsel during the course of the mediation process, and approved of the settlement. *Id.* Plaintiffs' representatives also prepared and sat for depositions and engaged in the discovery process. This work on the Action kept Plaintiffs' representatives from their day-to-day responsibilities and therefore represented a

(content)