EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SHEET METAL WORKERS' NATIONAL PENSION FUND and INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 710 PENSION FUND, individually and as Lead Plaintiffs on behalf of all others similarly situated, and<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS PENSION FUND OF EASTERN PENNSYLVANIA AND DELAWARE, individually and as Named Plaintiff, on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>BAYER AKTIENGESELLSCHAFT, WERNER BAUMANN, WERNER WENNING, LIAM CONDON, JOHANNES DIETSCH, and WOLFGANG NICKL,<br><br>　　　　　Defendants. | Case No. 3:20-cv-04737-RS<br><br>CLASS ACTION<br><br>**DECLARATION OF MILES N. RUTHBERG IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT**<br><br>Ctrm:　3 – 17th Floor<br>Judge:　Richard Seeborg |

[No. 3:20-CV-04737-RS] DECL. OF MILES N. RUTHBERG ISO FINAL APPROVAL OF SETTLEMENT

I, Miles N. Ruthberg, declare as follows:

1.    I submit this Declaration in my capacity as the mediator in the above-captioned securities class action ("Action") and in connection with the proposed settlement of claims asserted in the Action (the "Settlement").[1] I make this Declaration based on personal knowledge and am competent to so testify.

2.    While the mediation process is confidential, the Parties to the Settlement have authorized me to inform the Court of the matters set forth in this Declaration in support of final approval of the Settlement. My statements and those of the Parties during the mediation process are subject to a confidentiality agreement and Federal Rule of Evidence 408, and there is no intention on either my or the Parties' part to waive the agreement, the protections of Rule 408, or any other mediation and/or settlement privilege.

## I.    BACKGROUND AND QUALIFICATIONS

3.    I am a former litigation partner with the law firm of Latham & Watkins LLP and currently serve as a mediator at the alternative dispute resolution company Phillips ADR Enterprises ("Phillips ADR"), which is based in Corona Del Mar, California. I am a member of the bars of California, New York, and the District of Columbia.

4.    I earned a Bachelor of Arts from Yale University summa cum laude (with an award for the highest grade point average) and a J.D. magna cum laude from Harvard Law School. While in law school I served as a Developments Editor on the Harvard Law Review, and edited a lengthy and widely-cited student-written article on Developments in the Law – Class Actions. After law school, I clerked for Justice Thurgood Marshall on the United States Supreme Court and before that for Judge Carl McGowan on the United States Court of Appeals for the District of Columbia Circuit. After practicing for 18 years with Tuttle & Taylor and then Heller Ehrman White & McAuliffe, I joined Latham & Watkins in 1996, where for more than 25 years I represented many major companies

---

[1] Unless otherwise stated or defined in this Declaration, all capitalized terms used herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated as of April 23, 2025. ECF No. 253-2.

in their most important litigation, including securities law, class actions, and complex commercial disputes with a particular emphasis on accounting and financial issues. I served in a number of management positions at Latham & Watkins, including as the Global Chair of the firm's Litigation & Trial Department and Chair of the Securities Litigation & Professional Liability Practice.

5. While at Latham, I achieved many successes at trial and on appeal, including successfully litigating numerous multibillion dollar securities class action claims and successfully renegotiating the then-largest class action settlement in mass tort history. I also handled dozens of mediations and arbitrations.

6. I retired from the partnership in 2019 and have served as a mediator with Phillips ADR for almost three years. I have successfully mediated numerous securities class actions as well as other complex commercial cases, which have involved claims ranging from millions to many billions of dollars of exposure.

## II.    THE PARTIES' ARMS-LENGTH SETTLEMENT NEGOTIATIONS

7. On August 22, 2024, the parties and their counsel participated in a full-day, in-person mediation before me in New York, New York. The participants in the mediation included: (i) attorneys from Lead Counsel for Plaintiffs, Cohen Milstein Sellers & Toll PLLC ("Lead Counsel"); (ii) attorneys from counsel for Defendants, Wachtell, Lipton, Rosen & Katz ("Wachtell"); (iii) representatives of each of the three Plaintiffs; (iv) representatives of Bayer; and (v) representatives of Defendants' insurance carriers.

8. In advance of the mediation, the Parties exchanged and submitted to me detailed mediation statements and reply briefs addressing liability and damages. The mediation briefs addressed specific evidence and legal arguments each side believed supported their respective claims and defenses. The work that went into the mediation briefs and competing presentations and arguments was substantial.

9. I found these mediation statements to be extremely valuable in helping me to understand the relative merits of each party's positions and to identify the issues that were likely to serve as the primary drivers and obstacles to achieving a settlement. Counsel for both parties

presented compelling arguments regarding their clients' positions, and it was apparent to me that both sides possessed strong, non-frivolous arguments, and that neither side was assured of victory.

10. During the August 2024 mediation session, counsel for Plaintiffs and Defendants discussed with me the legal and factual merits of their positions regarding liability and damages, and I engaged in extensive discussions with counsel on both sides in an effort to find common ground between the Parties' respective positions. In these discussions, I challenged each of the Parties to separately address the weaknesses in each of their positions and arguments. In addition to vigorously arguing their positions, the Parties exchanged multiple rounds of settlement demands and offers. The Parties were not able to reach an agreement during this session.

11. About five months later, the Parties scheduled a second in-person mediation session with me for January 31, 2025. The participants in the second mediation session included (i) Lead Counsel; (ii) Defendants' attorneys from Wachtell; (iii) representatives of the Lead Plaintiffs; (iv) representatives of Bayer; and (v) representatives of Defendants' insurance carriers. In advance of that session, the Parties exchanged and submitted to me detailed supplemental mediation statements addressing liability and damages. I also received a mediators'-eyes-only submission from Plaintiffs, which later was shared with Defendants with Plaintiffs' approval.

12. On January 31, the Parties met for a full-day mediation session and again discussed with me the merits of their positions regarding liability and damages. I again engaged in extensive discussions with counsel on both sides. The arguments presented by counsel at this mediation session were similarly vigorous, complex, and adversarial.

13. While no agreement was reached at the January 2025 mediation, I continued to oversee settlement negotiations between the parties over the course of several weeks. On February 20, 2025, I issued a mediator's recommendation proposing that the case be settled for $38 million, which the Parties ultimately accepted. The Parties then documented their agreement to resolve the Action in a term sheet and a final settlement agreement.

14. The mediation process was an extremely hard-fought negotiation from beginning to end and was conducted by experienced and highly skilled counsel on both sides. Throughout the

mediation process, the negotiations between the Parties were vigorous and conducted at arm's length and in good faith.

15.    Because the Parties submitted their mediation statements and arguments in the context of a confidential mediation process pursuant to Federal Rule of Civil Procedure 408, I cannot reveal their content. I can say, however, that the arguments and positions asserted by all involved were the product of much hard work, and they were complex and highly adversarial, and reflected an in-depth understanding of the strengths and weaknesses of the claims and issues in this case.

## III.    CONCLUSION

16.    Based on my experience as a litigator and a mediator, I believe that this Settlement represents an outcome that is reasonable and fair for the Class and all parties involved. I further believe that it was in the best interests of the Parties that they avoid the burdens and risks associated with taking a case of this size and complexity to trial. I fully support the Court's approval of the Settlement in all respects.

17.    Lastly, the advocacy on both sides of the case was excellent. Counsel are nationally recognized for their work prosecuting and defending large, complex securities class actions such as this. They displayed the highest level of professionalism in zealously and capably representing their respective clients. The settlement is the direct result of all counsel's experience, reputation, and ability in these types of complex class actions.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of September, 2025, at New York, New York.

Miles N. Ruthberg

[No. 3:20-CV-04737-RS] DECL. OF MILES N. RUTHBERG ISO FINAL APPROVAL OF SETTLEMENT        4