UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEET METAL WORKERS' NATIONAL PENSION FUND and INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 710 PENSION FUND, individually and as Lead Plaintiffs on behalf of all others similarly situated, and<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS PENSION FUND OF EASTERN PENNSYLVANIA AND DELAWARE, individually and as Named Plaintiff, on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BAYER AKTIENGESELLSCHAFT, WERNER BAUMANN, WERNER WENNING, LIAM CONDON, JOHANNES DIETSCH, and WOLFGANG NICKL,<br><br>Defendants. | Case No. 20-cv-04737-RS<br><br>**ORDER GRANTING ATTORNEYS' FEES AND EXPENSES AND PSLRA AWARDS** |

## I. INTRODUCTION

Plaintiffs have filed a motion for attorneys' fees, reimbursement of expenses, and plaintiffs' costs and expenses. Dkt. 269. The fairness hearing was held on October 30, 2025, and the motion for attorneys' fees and reimbursement of expenses is granted as set forth below.

## II. BACKGROUND

The factual background of this litigation has been thoroughly discussed in prior orders and

need not be recounted at length here. *See, e.g.*, Dkts. 90, 175. To recap, in 2020 Plaintiffs, pension funds that collectively purchased close to 600,000 Bayer American Depositary Receipts, or "ADRs," which represent ownership shares of Bayer, brought securities claims against Defendants based on averred misrepresentations made by Bayer in connection with the company's acquisition of the agrochemical company Monsanto (the "Action").

In May 2023, the Court certified a class of all persons or entities, subject to certain exclusions,[1] that purchased or otherwise acquired Bayer's publicly traded ADRs from May 23, 2016 to July 6, 2020 (the "Class"). Cohen Milstein Sellers & Toll PLLC was appointed as class counsel ("Class Counsel"), and Plaintiffs Sheet Metal Workers' National Pension Fund and International Brotherhood of Teamsters Local No. 710 Pension Fund (collectively, "Lead Plaintiffs") and additional plaintiff International Union of Operating Engineers Pension Fund of Eastern Pennsylvania and Delaware (collectively with Lead Plaintiffs, "Plaintiffs") were appointed as class representatives ("Class Representatives").

On April 23, 2025, Plaintiffs, on behalf of themselves and the Class, and Defendants entered into the Stipulation and Agreement of Settlement, dated April 23, 2025 (the "Stipulation"), which provides for a complete dismissal with prejudice of the claims asserted in the Action on the terms and conditions set forth in the Stipulation, subject to the approval of this Court (the "Settlement") in exchange for a $38 million payment. On September 25, 2025, Lead Counsel and Liaison Counsel Berman Tabacco (together with Lead Counsel, "Plaintiffs' Counsel") moved for reasonable attorneys' fees of 27% of the settlement fund; reimbursement for $3,281,973.16 in expenses; and $31,485.14, in the aggregate, pursuant to 15 U.S.C. § 78u-4(a)(4), for reimbursement of Class

---

[1] Excluded from the Class are (1) Defendants; (2) members of the immediate family of each of the Individual Defendants; (3) any subsidiary or affiliate of Bayer, including its employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); (4) the directors and officers of Bayer during the Class Period, as well as the members of their immediate families; and (5) the legal representatives, heirs, successors, and assigns of any such excluded party. Dkt. 175. Also excluded from the Class are any persons or entities who excluded themselves by submitting a request for exclusion in connection with the Class Notice that has been accepted by the Court and who did not opt back into the Class in connection with the Settlement Notice.

Representative's reasonable costs and expenses (including lost wages) related to their representation of the Class.

### III. ATTORNEYS' FEES

**A. Legal Standard**

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that, after a class has been certified, the court may award reasonable attorneys' fees and nontaxable costs. "[C]ourts have an independent obligation to ensure that the [attorneys' fee] award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset*, 654 F.3d 935, 941 (9th Cir. 2011). When deciding to award attorneys' fees and costs in a common fund case, courts have discretion to choose to award based on either (1) the lodestar method, multiplying the number of hours reasonably spent by a reasonable hourly rate, or (2) a percentage of the settlement fund. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Awarding fees as a percentage of the common settlement fund may be appropriate where "the benefit to the class is easily quantified." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015) (quoting *Bluetooth*, 654 F.3d at 942).

In this circuit, "twenty-five percent of the recovery [is the] 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach," but "[a] district court may depart from the benchmark" if it "ma[kes] clear… how it arrives at the figure ultimately awarded." *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) (cleaned up and citations omitted). The selection of a percentage must "take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. When assessing the reasonableness of a fee award under the common fund theory, courts consider factors such as (1) the results achieved, (2) the risk of litigation, (3) the complexity of the case and skill required, (4) the contingent nature of the litigation, and (5) awards made in similar cases. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008); *Vizcaino*, 290 F.3d at 1048–50.

**B. Discussion**

Plaintiffs' Counsel here seek reasonable attorneys' fees of 27% of the fund. Based on the Net Settlement Fund, this amounts to $9,365,366.[2] Courts in the Ninth Circuit recognize 25% as the "benchmark percentage" for attorneys' fees calculated pursuant to this method but allow for justified departures. *Powers v. Eichen*, 229 F.3d at 1256–57.

The result achieved here weighs in favor of the requested upward adjustment. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[The] most critical factor is the degree of success obtained."). The $38 million Settlement Amount recovers over 9% of the potential $417 million maximum damages amount, representing a significant recovery for the class. This is consistent with or better than other federal securities class action settlements. *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (finding a 9% recovery of maximum potential damages a "substantial achievement on behalf of the class"); *In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *6 (N.D. Cal. Mar. 3, 2022) (approving settlement that recovered approximately 7.3% of likely recoverable damages, which was "in line with comparable class action settlements"); *Hunt v. Bloom Energy Corp.*, 2024 WL 1995840, at *6 (N.D. Cal. May 6, 2024) (approving settlement recovering 5.2% of estimated damages). The recovery represents a strong recovery especially considering the risks and costs of continued litigation as discussed in this Court's order granting final approval of the Settlement.[3] *See Vizcaino v. Microsoft Corp.*, 290

---

[2] The requested fees should be calculated based on the Net Settlement Fund as opposed to the gross settlement amount. Here, the Net Settlement Fund is $34,686,542 ($38,000,000 less expenses advanced by Counsel, $3,281,973.16, and Class Representatives' expenses and costs, $31,485.14). Calculating the award based on the net fund as compared to the gross settlement amount represents a $894,634 difference.

[3] Such as establishing falsity and materiality—subjects of competing expert testimony; scienter; establishing that the market discovered Bayer's alleged due diligence deficiency through jury trial losses rather than earlier public releases (i.e., loss causation); proving damages in an amount, $417 million, reflecting the entirety of the ADR price decline despite other potential price decline causes and with Defendants arguing maximum damages of only $24.5 million; and overcoming Defendants' affirmative defenses including that the Bayer ADR transactions were beyond the reach of U.S. federal securities law.

F.3d 1043, 1048 (9th Cir. 2002) ("Risk," along with the results achieved, "is a relevant circumstance.").

The quality and rigor of the work of Class Counsel, complexity of securities litigation, and contingent nature of the litigation also weigh in favor of the requested upward adjustment. For example, Class Counsel completed fact discovery, taking depositions of eleven senior Bayer officials in the United States and Europe, requiring in some cases live translations and months of negotiation with foreign authorities. In taking on this work, Class Counsel assumed significant risk. They litigated this case on a purely contingent basis and advancing all necessary expenses over the course of five years without any certainty that they would be compensated.

The reaction of the Class to date also weighs in favor of a 27% award. The Notice advised Class Members that Lead Counsel intended to apply for attorneys' fees of an amount up to 27% of the Settlement Fund, and as of October 24, 2025, two weeks after the objection deadline, Lead Counsel had not received any objections to the fee request (or to the Settlement or Plan of Allocation).

Finally, the requested upward adjustment is consistent with awards by other federal courts in securities class actions. *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1048; (awarding 28% of the common fund in securities class action settlement with a recovery of 9% maximum potential damage); *Hunt v. Bloom Energy Corp.*, 2024 WL 1995840, at *8 (N.D. Cal. May 6, 2024) (awarding 30% of the common fund in a securities class action settlement with a recovery of 5.2% the estimated maximum damages, noting that "[c]ourts in this district have awarded similar fees in comparable securities cases"); *In re Nuvelo, Inc. Sec. Litig.*, 2011 2650592, at *3 (N.D. Cal. July 6, 2011) (awarding 30% in a securities class action with a recovery of 2% of estimated damages against an insolvent defendant); *In re CV Therapeutics, Inc. Sec. Litig.*, 2007 WL 1033478, at *1 (N.D. Cal. Apr. 4, 2007) (30%). The fee award also conforms with the percentage of fees awarded in cases with similar settlement amounts. *See, e.g.*, *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *9, *14 (N.D. Cal. May 25, 2023) (awarding 30% of $50 million common fund which was 9% and 28% of maximum and minimum estimated

damages respectively); *In re Heritage Bond Litig.*, 2005 WL 1594389, at *12, *17 (C.D. Cal. June 10, 2005) (33.33% of $27,783,000 common fund which represented 36% of the class' estimated net losses).

A cross-check of the award using the lodestar method shows it is reasonable. Class Counsel's total lodestar is $13,367,091.50, which represents a negative multiplier of 0.7 using Plaintiffs' proposed "customary hourly billing rates." Dkt. 269 at 14.

## IV. LITIGATION EXPENSES

Class Counsel are entitled to reimbursement of reasonable out-of-pocket costs advanced for the Class. *See* Fed. R. Civ. P. 23(h); 18 U.S.C. § 2520(b)(3); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Class Counsel request $3,281,973.16 for reimbursement of expenses advanced for the Class. This amount reflects accounted-for expenses of categories that are usually reimbursed, including over $2.6 million for retention of experts and consultants on matters such as ADR transaction structures, due diligence standards, merger incentives, loss causation, and damage.

## V. PLAINTIFFS' REQUESTS PURSUANT TO 15 U.S.C. 78U-4(A)(4)

The Private Securities Litigation Reform Act ("PSLRA") allows courts to approve an award of "reasonable costs and expenses (including lost wages) directly relating to the representation of the class". 15 U.S.C. § 78u-4(a). Here, Plaintiffs request $31,485.14 to reimburse the costs and expenses they incurred related to their representation of the Class over the past five years. Courts have regularly granted similar requests for "reasonable payments to compensate class representatives for the time, effort, and expenses devoted to litigating on behalf of [a] class." *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *10 (C.D. Cal. Oct. 25, 2016) (awarding class representative $30,983.99 for the time it dedicated to the case). *See e.g., Omnivision*, 559 F. Supp. 2d at 1049 (awarding lead plaintiffs collectively $29,913.80); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1173−74 (S.D. Cal. May 31, 2007) (awarding lead plaintiff $40,000).

## VI. CONCLUSION

For the foregoing reasons, the Plaintiffs' motion is granted. Class Counsel are awarded reasonable attorneys' fees of 27% of the Net Settlement Fund, amounting to $9,365,366, and $3,281,973.16 in expenses. Class Representatives are awarded $31,485.14, in the aggregate, pursuant to 15 U.S.C. § 78u-4(a)(4) for reimbursement of their reasonable costs and expenses (including lost wages) related to their representation of the Class as set out in their declarations, Dkts. 270-2, 270-3, 270-4.

Within sixty (60) calendar days following the completed distribution of the Net Settlement Fund, Class Counsel shall submit to the Court a post-distribution report. A template of such a report may be obtained from the Court's website.

**IT IS SO ORDERED**.

Dated: October 30, 2025

RICHARD SEEBORG
Chief United States District Judge