UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEET METAL WORKERS' NATIONAL PENSION FUND and INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 710 PENSION FUND, individually and as Lead Plaintiffs on behalf of all others similarly situated, and<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS PENSION FUND OF EASTERN PENNSYLVANIA AND DELAWARE, individually and as Named Plaintiff, on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BAYER AKTIENGESELLSCHAFT, WERNER BAUMANN, WERNER WENNING, LIAM CONDON, JOHANNES DIETSCH, and WOLFGANG NICKL,<br><br>Defendants. | Case No. 20-cv-04737-RS<br><br>**FINAL APPROVAL ORDER AND JUDGMENT** |

## I. INTRODUCTION[1]

On September 25, 2025, Plaintiffs, on behalf of themselves and the Class, moved for final approval of their stipulation and settlement agreement with defendants Bayer Aktiengesellschaft ("Bayer"), Werner Baumann, Werner Wenning, Liam Condon, Johannes Dietsch, and Wolfgang

---

[1] Unless otherwise defined herein, all capitalized words contained herein shall have the same meanings as they have in the Stipulation, unless otherwise specified.

Nickl (collectively with Bayer, "Defendants"). Having held a hearing on October 30, 2025 and considered the motion and related briefing, and good cause appearing, Class Plaintiffs' motion for final approval is granted, and Judgment is entered in accordance with the terms of this Order effective as of this date.

## II. BACKGROUND

The factual background of this litigation has been thoroughly discussed in prior orders and need not be recounted at length here. *See, e.g.*, Dkts. 90, 175. To recap, Plaintiffs are pension funds that collectively purchased close to 600,000 Bayer American Depositary Receipts ("ADRs"), which represent ownership shares of Bayer. In 2020, Plaintiffs brought securities claims against Defendants based on averred misrepresentations made by Bayer in connection with the company's acquisition of the agrochemical company Monsanto (the "Action").

Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, a class was certified in May 2023 of all persons or entities, subject to certain exclusions,[2] that purchased or otherwise acquired Bayer's publicly traded ADRs from May 23, 2016 to July 6, 2020 (the "Class"). At that time, plaintiffs Sheet Metal Workers' National Pension Fund and International Brotherhood of Teamsters Local No. 710 Pension Fund (collectively, "Lead Plaintiffs") and additional plaintiff International Union of Operating Engineers Pension Fund of Eastern Pennsylvania and Delaware (collectively with Lead Plaintiffs, "Plaintiffs") were appointed as class representatives ("Class Representatives"). Cohen Milstein Sellers & Toll PLLC was appointed as class counsel ("Class Counsel").

On April 23, 2025, Plaintiffs, on behalf of themselves and the Class, and Defendants entered

---

[2] Excluded from the Class are (1) Defendants; (2) members of the immediate family of each of the Individual Defendants; (3) any subsidiary or affiliate of Bayer, including its employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); (4) the directors and officers of Bayer during the Class Period, as well as the members of their immediate families; and (5) the legal representatives, heirs, successors, and assigns of any such excluded party. Dkt. 175. Also excluded from the Class are any persons or entities who excluded themselves by submitting a request for exclusion in connection with the Class Notice that has been accepted by the Court and who did not opt back into the Class in connection with the Settlement Notice.

into the Stipulation and Agreement of Settlement, dated April 23, 2025 (the "Stipulation"), which provides for a complete dismissal with prejudice of the claims asserted in the Action on the terms and conditions set forth in the Stipulation, subject to the approval of this Court (the "Settlement"). On June 27, 2025, the Court preliminarily approved the Settlement and appointed A.B. Data Group as the Claims Administrator.[3]

### III. LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy that favors settlements" in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). A court may approve a proposed class action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate considering" the factors mentioned above. Fed. R. Civ. P. 23(e)(2). Specifically, Rule 23(e) instructs courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including the timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

The Ninth Circuit has identified eight factors relevant to approval of a settlement in addition to the four articulated in Rule 23(e)(2):

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

---

[3] Consistent with the guidelines, Plaintiffs solicited bids from five class administration vendors, including A.B. Data Group.

## IV. SETTLEMENT APPROVAL

For the reasons set forth below, the proposed settlement is fair, reasonable, and adequate under the Rule 23(e)(2) factors.

### A. Adequate Representation by Plaintiffs and Lead Counsel

Plaintiffs and Lead Counsel adequately represent the Class. Plaintiffs are sophisticated institutional investors and are familiar with the obligations of serving as lead plaintiffs and class representatives under the Private Securities Litigation Reform Act ("PSLRA"). *See e.g.,* Dkt. 23 at 14-15. Lead Counsel "has significant experience in securities litigation and a successful track record of representing investors in cases of this kind." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (finding settlement procedurally fair partly on this basis). Plaintiffs, Counsel, and other Class members do not have conflicts of interest but rather share interests. Plaintiffs have all purchased Bayer ADRs and their claims, as with the Class', rely on proving the same alleged conduct by Defendants. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (The investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions,"). Class Counsel's request for attorneys' fees do not create a conflict because the Settlement is not contingent on attorneys' fees. Further, since their appointment over two years ago, Plaintiffs and Lead Counsel have vigorously litigated the action by, among other things, conducting an extensive investigation of the Action's claims and defenses, drafting two amended complaints, defeating two motions to dismiss, successfully moving for class certification, and engaging in extensive, often contested, cross-border fact and expert discovery.

### B. Arms-Length Negotiation

The Settlement negotiation was arms-length and non-collusive, informed by the parties' extensive litigation efforts discussed above, including complete fact discovery, near complete expert discovery,[4] dispositive motions, and significant preparation for summary judgment and

---

[4] Only one expert deposition remained after the exchange of 13 expert reports and six expert

1  *Daubert* motions that were upcoming when settlement was reached. Agreement followed two

2  formal full-day mediations, held five months apart, before experienced mediator Miles N.

3  Ruthberg, Esq., of Phillips ADR Enterprises, P.C. and a subsequent series of one-on-one

4  discussions with Ruthberg when the full-day mediations did not yield agreement. Ultimately,

5  Ruthberg issued a proposal to resolve all of Plaintiffs' claims for $38 million which the Parties

6  accepted.

### C.  Adequate Relief

The $38 million Settlement Amount is adequate relief, representing over 9% of the maximum damages expert by Plaintiffs' damages expert. This is consistent with other federal securities class action settlements. *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (finding a 9% recovery of maximum potential damages a "substantial achievement on behalf of the class"); *In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *6 (N.D. Cal. Mar. 3, 2022) (approving settlement that recovered approximately 7.3% of likely recoverable damages, which was "in line with comparable class action settlements"); *Hunt v. Bloom Energy Corp.*, 2024 WL 1995840, at *6 (N.D. Cal. May 6, 2024) (approving settlement recovering 5.2% of estimated damages).

Further, this recovery is adequate in light of the risks and costs of continued litigation. "Securities actions in particular are often long, hard-fought, complicated, and extremely difficult to win." *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019). Here, Plaintiffs faced a series of litigation challenges such as establishing falsity and materiality—subjects of competing expert testimony; scienter; that the market discovered Bayer's alleged due diligence deficiency through jury trial losses despite earlier public releases (i.e., loss causation); and damages in an amount, $417 million, reflecting the entirety of the ADR price decline despite other potential price decline causes and with Defendants arguing maximum damages of only $24.5 million. Plaintiffs also would have faced Defendants' affirmative defenses

---

depositions.

including that the Bayer ADR transactions were beyond the reach of U.S. federal securities law. Litigating these issues in pre-trial and post-trial motions, at trial, and on appeal would require significant additional attorneys' fees and litigation expenses.

Lastly, the recovery is adequate in light of the method of distributing relief to the class. The Net Settlement Fund will be distributed to Class Members who submit eligible Claim Forms with required documentation to the Court-appointed Claims Administrator A.B. Data, an independent company with extensive experience handling class action settlement administration, including in securities actions. A.B. Data will process the Claim Forms under Lead Counsel's supervision, provide claimants with an opportunity to cure any deficiencies in their claims or request review of the denial of their claims by the Court, and then mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund after Court approval.

### D. Equitable Treatment of Class Members

The Settlement treats all Class Members equitably. Pursuant to the Plan of Allocation, Authorized Claimants will receive their *pro rata* shares of the recovery based on their Recognized Losses in Bayer ADRs. Plaintiffs will receive the same level of *pro rata* recovery (as calculated under the Plan of Allocation) as all other Class Members. While Plaintiffs request reimbursement of their reasonable costs and expenses in a separate motion, reimbursement would not constitute preferential treatment as such awards are explicitly contemplated by the PSLRA as supplemental to Plaintiffs' *pro rata* recovery. *See* 15 U.S.C. § 78u-4(a) (limiting additional awards to class representatives in securities actions to "reasonable costs and expenses (including lost wages) directly relating to the representation of the class").

### E. Reaction of the Class

The reaction of the Class reflects that this relief is adequate and weighs in favor of approval. As October 24, 2025, A.B. Data had received 153,097 claims, and the deadline for

objections had passed with no objections to the Settlement, Plan of Allocation, or fee and expense request having been filed.[5]

### F. Scope of Release

A fair, reasonable, and adequate settlement agreement may only release claims whose scope is consistent with the claims or factual predicates underlying those in the settled class action. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir.2010) (*quoting Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir.2008)) (The released claims must be "'based on the identical factual predicate as that underlying the claims in the settled class action.'"). Here, the scope of the Released Plaintiffs' Claims is consistent with those in the underlying action. The claims are limited to those against Defendants' Released Persons that arise out of or "relate in any way" to the claims, allegations, or facts in the Second Amended Complaint and relate to the purchase, acquisition, sale, or holding of Bayer ADRs during the Class Period. Dkt. 253-2, Stipulation and Agreement of Settlement, ¶ 1(ff).

## V. PLAN OF ALLOCATION APPROVAL

The standard for approval of a plan of allocation in a class action under Rule 23 is the same as the standard applicable to the settlement as a whole—the plan must be fair, reasonable, and adequate. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992). "*Pro rata* distribution is generally a reasonable and fair way to compensate classes[.]" *In re Telescopes Antitrust Litig.*, No. 5:20-CV-03639-EJD, 2025 WL 1093248, at *6 (N.D. Cal. Apr. 11, 2025). "A *pro rata* allocation treats all Settlement Class Members fairly because their recovery is tied to the volume and cost of their purchases, the number of other qualified Settlement Class Members making claims against the settlement fund, and the size of the overall fund." *Id.*

The proposed Plan of Allocation here, developed in consultation with Plaintiffs' damages expert, provides a fair, reasonable, and adequate method for equitably allocating the Net

---

[5] Thirteen Class Members who previously opted out of the Class did not seek to opt back into the class.

FINAL APPROVAL ORDER AND JUDGMENT
CASE NO. 20-cv-04737-RS

7

1  Settlement Fund among Class Members who submit valid and timely Claims Forms. The Plan

2  provides that the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata*

3  basis based on the relative size of their recognized losses. The Recognized Loss Amount will be

4  the lesser of the difference between the amount of alleged artificial inflation in Bayer ADRs at the

5  time of purchase or acquisition and the time of sale, or the difference between the purchase price

6  and the sale price for the ADRs. If the prorated payment to any Authorized Claimant calculates to

7  less than $10.00, it will not be included in the calculation and no distribution will be made to that

8  Authorized Claimant. When it is no longer feasible or economical to make additional distributions,

9  the unclaimed balance of the Net Settlement Fund will be contributed to the Council for

10 Institutional Investors ("CII").[6]

## VI. NOTICE TO THE CLASS

Under Rule 23, "the best notice" to Class Members "that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" is required. Fed. R. Civ. P. 23(c)(2)(B). Notice of the Settlements here satisfies this requirement. It includes all the information required by Rule 23(c)(2)(B), the PSLRA, and the Northern District of California Procedural Guidance for Class Action Settlements, and over 278,000 copies of the Notice Packet were mailed or emailed to potential Class Members and nominees; copies of the Notice, Claim Form, Stipulation, and other pertinent case filings were published on the Case Website; copies of the Notice and Claim Form were also available on Plaintiffs' Counsel's websites; the Summary Notice was transmitted over *PR Newswire* and published in *The Wall Street Journal* on July 21, 2025; and a toll-free telephone was made available for potential Class Members to call to learn about the Settlement.

---

[6] CII is a nonprofit, nonpartisan association of benefit funds, foundations, and endowments that seeks to educate its members, policymakers, and the public about corporate governance, shareowner rights, and related investment issues. Lead Counsel is a member at large of CII.

# VII. CONCLUSION

For the foregoing reasons, the Court certifies the Settlement Class and grants final approval of the Settlements and enters Judgment in accordance with the terms of this Order as of the date of this Order. The Court directs consummation of the Settlements pursuant to their terms. The Action is dismissed with prejudice and without costs and the Court's judgment is final.

**IT IS SO ORDERED**.

Dated: October 30, 2025

_____
RICHARD SEEBORG
Chief United States District Judge